# Exhibit 45

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)
PROPOSED ATTORNEYS FOR DEBTOR

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>              Debtor. | Chapter 11<br><br>Case No.: 21-30589 (MBK)<br><br>Judge:  Michael B. Kaplan<br><br>**Hearing Date and Time:**<br>January 11, 2021 at 10:00 a.m. |
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>              Plaintiffs,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000,<br><br>              Defendants. | Adv. Pro. No. 21-03032 (MBK) |

---

[1]      The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**SECOND SUPPLEMENTAL DECLARATION OF JOHN K. KIM
IN SUPPORT OF DEBTOR'S SUPPLEMENTAL MEMORANDUM OF LAW IN
SUPPORT OF THE PRELIMINARY INJUNCTION MOTION**

John K. Kim, being first duly sworn, deposes and states as follows:

1.        I am the Chief Legal Officer of LTL Management LLC, a North Carolina

limited liability company (the "Debtor") and the debtor in the above captioned chapter 11 case.  I

have held this position with the Debtor since its formation on October 12, 2021.

2.        I am employed by Johnson & Johnson Services, Inc. ("J&J Services"), a

non-debtor affiliate of the Debtor and a subsidiary of the Debtor's ultimate non-debtor parent

company, Johnson & Johnson ("J&J").  Just prior to my role as the Chief Legal Officer of the

Debtor, I was J&J's Assistant General Counsel, Practice Group Lead for the Product Liability

Litigation Group.  I began my employment with J&J and its affiliates in 2001 as a Senior

Counsel in the Litigation Group, handling a variety of cases ranging from commercial disputes

and international arbitrations to product liability litigation.  In these roles, I became familiar with

the types of documents described below in this Declaration and am capable of testifying about

them.

3.        The facts and statements set forth in this Declaration are based on:  (a) my

personal knowledge; (b) information supplied to me by other members of management,

professionals, or employees; (c) my review of relevant documents; and/or (d) my opinion based

upon my experience and knowledge.  If called upon to testify, I could and would testify to

the facts and opinions set forth in this Declaration.

4.        A true and correct copy of J&J's 1981 Annual Report is attached as

Exhibit A.  This document (i) is more than 20 years old, (ii) is in the form and condition of like

legal records from this period and is to the best of my knowledge regular on its face with no

signs of text alterations, and (iii) was stored in a location where I would expect legal documents of its kind to be located in the regular course of legal document retention.

5.      A true and correct copy of excerpts from Dr. Joanne Waldstreicher's sworn deposition testimony in (i) Ingham v. Johnson & Johnson, No. 1522-CC10417, on April 19, 2018, in the Circuit Court of the City of St. Louis in the State of Missouri, and (ii) Leavitt v. Johnson & Johnson, No. RG-17-882401, on September 14, 2018, in the Superior Court of California, County of Alameda, is attached as Exhibit B.

6.      A true and correct copy of excerpts from Dr. Susan Nicholson's sworn deposition testimony in Prudencio v. Johnson & Johnson, No. RG20061303, on June 4, 2021 in the Superior Court of California, County of Alameda, is attached as Exhibit C.

7.      A true and correct copy of a September 17, 1965 document entitled Amendment to the Articles of Incorporation of Docrom, Inc. that was produced in the underlying talc litigation is attached as Exhibit D.

8.      A true and correct copy of a July 30, 1965 Plan and Agreement of Reorganization between J&J and Eastern Magnesia Talc Co., Inc. is attached as Exhibit E.  This document (i) is more than 20 years old, (ii) is in the form and condition of like legal records from this period and is to the best of my knowledge regular on its face with no signs of text alterations, and (iii) was stored in a location where I would expect legal documents of its kind to be located in the regular course of legal document retention.

9.      A true and correct copy of a October 2, 1967 Amendment of the Articles of Association of the Eastern Magnesia Talc Co., Inc. is attached as Exhibit F.  This document (i) is more than 20 years old, (ii) is in the form and condition of like legal records from this period and is to the best of my knowledge regular on its face with no signs of text alterations, and (iii)

was stored in a location where I would expect legal documents of its kind to be located in the

regular course of legal document retention.

10.     A true and correct copy of the October 29, 1983 deposition transcript of

Roger Miller in <u>Westfall v. Whitaker, Clark, & Daniels et al.</u>, CA79-0269 (D.R.I. 1982).  is

attached as Exhibit G.

11.     A true and correct copy of an April 9, 1965 letter to the shareholders

reflecting Emil Esckilsen as President is attached as Exhibit H.  This document (i) is more than

20 years old, (ii) is in the form and condition of like legal records from this period and is to the

best of my knowledge regular on its face with no signs of text alterations, and (iii) was stored in

a location where I would expect legal documents of its kind to be located in the regular course of

legal document retention.

12.     A true and correct copy of an April 5, 1967 State of Vermont Annual

Report of Eastern Magnesia Talc Co., Inc., which lists Emil Esckilsen as President, is attached as

Exhibit I.  This document (i) is more than 20 years old, (ii) is in the form and condition of like

legal records from this period and is to the best of my knowledge regular on its face with no

signs of text alterations, and (iii) was stored in a location where I would expect legal documents

of its kind to be located in the regular course of legal document retention.

13.     A true and correct copy of the November 28, 1967 Windsor Minerals Inc.

Board Minutes is attached as Exhibit J.  This document (i) is more than 20 years old, (ii) is in the

form and condition of like legal records from this period and is to the best of my knowledge

regular on its face with no signs of text alterations, and (iii) was stored in a location where I

would expect legal documents of its kind to be located in the regular course of legal document

retention.

-4-

14.     A true and correct copy of a January 14, 1975 letter regarding a January 1, 1975 Windsor Minerals ore/asbestos study is attached as Exhibit K.  This document (i) is more than 20 years old, (ii) is in the form and condition of like legal records from this period and is to the best of my knowledge regular on its face with no signs of text alterations, and (iii) was stored in a location where I would expect legal documents of its kind to be located in the regular course of legal document retention.

15.     A true and correct copy of a December 8, 1978 memo regarding Asbestiform Mineral Analysis and the Sampling Procedure for Hammondsville Cosmetic Ore is attached as Exhibit L.  This document (i) is more than 20 years old, (ii) is in the form and condition of like legal records from this period and is to the best of my knowledge regular on its face with no signs of text alterations, and (iii) was stored in a location where I would expect legal documents of its kind to be located in the regular course of legal document retention.

16.     A true and correct copy of the June 26, 1979 talc specification from J&J subsidiaries is attached as Exhibit M.  This document (i) is more than 20 years old, (ii) is in the form and condition of like legal records from this period and is to the best of my knowledge regular on its face with no signs of text alterations, and (iii) was stored in a location where I would expect legal documents of its kind to be located in the regular course of legal document retention.

17.     A true and correct copy of the January 6, 1989 Stock Purchase Agreement between J&J and Cyprus Mines Corp. is attached as Exhibit N.  This document (i) is more than 20 years old, (ii) is in the form and condition of like legal records from this period and is to the best of my knowledge regular on its face with no signs of text alterations, and (iii) was stored in

a location where I would expect legal documents of its kind to be located in the regular course of legal document retention.

18. A true and correct copy of a 1989 Supply Agreement between Windsor and J&J Baby Products is attached as Exhibit O. This document (i) is more than 20 years old, (ii) is in the form and condition of like legal records from this period and is to the best of my knowledge regular on its face with no signs of text alterations, and (iii) was stored in a location where I would expect legal documents of its kind to be located in the regular course of legal document retention.

19. A true and correct copy of accounting records from the Personal Product Company for the year ended December 31, 1978. This document (i) is more than 20 years old, (ii) is in the form and condition of like legal records from this period and is to the best of my knowledge regular on its face with no signs of text alterations, and (iii) was stored in a location where I would expect legal documents of its kind to be located in the regular course of legal document retention.

20. I declare under penalty of perjury that the foregoing is true and correct.

Dated: December 8, 2021     */s/ John K. Kim*
             John K. Kim