# **Exhibit 46**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LTL MANAGEMENT LLC,[1] | : | Case No. 21-30589 (JCW) |
| | : | |
| Debtor. | : | |
| | : | |
| | : | |
| LTL MANAGEMENT LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adv. Pro. No. 21-03032 (JCW) |
| | : | |
| THOSE PARTIES LISTED ON | : | |
| APPENDIX A TO COMPLAINT | : | |
| and JOHN AND JANE DOES 1-1000, | : | |
| | : | |
| Defendants. | : | |

**DECLARATION OF ADAM LISMAN**
**IN SUPPORT OF DEBTOR'S COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF AND RELATED MOTIONS**

I, Adam Lisman, declare as follows:

1.      I am the Vice President and Assistant Corporate Controller at Johnson & Johnson ("J&J"), the ultimate parent company of LTL Management LLC, a North Carolina limited liability company (the "Debtor") and the debtor in the above-captioned chapter 11 case and plaintiff in the above-captioned adversary proceeding.

2.      I began my employment with J&J and its affiliates in October 2018 as a Senior Director in the Corporate Controller group, and I have been in my current role since

---

[1]      The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

professionals or employees; (c) my review of relevant documents; and/or (d) my opinion based upon my experience and knowledge of J&J, Old JJCI and the Debtor.  If called upon to testify, I could and would testify to the facts and opinions set forth in this declaration.

### Payment and Accounting of Talc-Related Claims

7.      In my capacity as Assistant Corporate Controller, I am responsible for the consolidated accounting and financial reporting for J&J, including the required public company reports filed with the U.S. Securities and Exchange Commission ("SEC").  I also serve in a consultation capacity for all of J&J's domestic and foreign subsidiaries on technical matters and judgments, including legal-related reserves, revenue recognition and tax reserves.  I am also familiar with the accounting treatment of claims and liabilities asserted against J&J and Old JJCI in connection with talc products.

8.      Prior to the Petition Date, except where there was insurance coverage available, all costs associated with litigation concerning any talc products—including defense costs, settlements and any verdict amounts—were borne by Old JJCI.  J&J and Old JJCI used an integrated, centralized cash management system to collect, manage, and disburse funds.  Pursuant to company policy, cash collected by Old JJCI was generally swept to J&J's concentration account on a daily basis.  For administrative convenience and pursuant to company policy, J&J initially paid costs associated with litigation concerning talc products from its concentration account and then charged 100% of those costs to Old JJCI through intercompany charges.

9.      These intercompany charges are reflected on Old JJCI's general ledger.  Since 2007, Old JJCI has used SAP accounting software to maintain its general ledger electronically.  Old JJCI's debit entries in its general ledger from 2007 to the present confirm that

Old JJCI has been charged through intercompany payables all defense costs and any settlement or verdict amounts related to litigation concerning talc products.

10.    For example, Annex A, attached hereto, includes a journal entry from Old JJCI's general ledger related to a jury verdict in a case known as *Ingham* that involves personal injury claims related to talc. This journal entry shows that a legal settlement of $2,562,859,121.16 was paid by J&J, which is identified in the journal entry by the code 1410. It also shows that Old JJCI, which is identified by the code 6101, owes J&J an intercompany payable in the same amount.

11.    Middlesex Insurance Company ("Middlesex"), a captive insurance company that is a wholly-owned subsidiary of J&J, issued policies that covered both J&J and Old JJCI for talc-related costs. Prior to 2019, Middlesex paid such costs incurred by Old JJCI. By 2019, the aggregate limits under the Middlesex policies were exhausted and, thereafter, litigation costs related to talc products were charged to Old JJCI.

12.    J&J reports its financial statements on a consolidated basis with all of its subsidiaries. J&J's consolidated financial statements reflect a reserve for defense and indemnity costs for Old JJCI associated with personal injury claims related to talc. Although the reserve is reported on a consolidated basis, it is allocated by segment, as required by Generally Accepted Accounting Principles and SEC reporting requirements. The talc-related reserve in J&J's consolidated financial statements is allocated to the consumer segment, which includes Old JJCI.

13.    I declare under penalty of perjury that the foregoing is true and correct.

Dated:  November 2, 2021

Adam Lisman