UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
ANDREW R. VARA
UNITED STATES TRUSTEE, REGIONS 3 & 9
Jeffrey M. Sponder, Esq.
Lauren Bielskie, Esq.
One Newark Center, Suite 2100
Newark, NJ  07102
Telephone: (973) 645-3014
Fax: (973) 645-5993
E-mail:	jeffrey.m.sponder@usdoj.gov
	lauren.bielskie@usdoj.gov

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 23-12825 (MBK) |
| LTL Management LLC,[1] | Chapter 11 |
| Debtor. | The Honorable Michael B. Kaplan, Chief Judge |
| LTL Management LLC, | |
| Plaintiff, | Adv. No.: 23-01092 (MBK) |
| THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000, | |
| Defendants. | Hearing Date: April 18, 2023 at 10:00 a.m. |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S MOTION FOR AN ORDER (I) DECLARING THAT THE AUTOMATIC STAY APPLIES OR EXTENDS TO CERTAIN ACTIONS AGAINST NON-DEBTORS, (II) PRELIMINARILY ENJOINING SUCH ACTIONS, AND (III) GRANTING A TEMPORARY RESTRAINING ORDER EX PARTE <u>PENDING A HEARING ON A PRELIMINARY INJUNCTION</u>**

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

Andrew R. Vara, the United States Trustee for Regions 3 and 9 (the "U.S. Trustee"), by his undersigned counsel, and in furtherance of his duties pursuant to 28 U.S.C. §§ 586(a)(3) and (5), respectfully submits this objection ("Objection") to the Debtor's Motion for an Order (i) Declaring that the Automatic Stay Applies or Extends to Certain Actions Against Non-Debtors, (ii) Preliminarily Enjoining Such Actions, and (iii) Granting a Temporary Restraining Order Ex Parte Pending a Hearing on a Preliminary Injunction (the "PI Motion") (Adv. No. 23-01092, Dkt. 2), filed by debtor LTL Management, LLC ("LTL"), and respectfully represents as follows:

## PRELIMINARY STATEMENT

On January 30, 2023, the United States Court of Appeals for the Third Circuit ruled that LTL's previous chapter 11 case had not been filed in good faith and remanded that case to this Court with instructions to dismiss the petition. *In re LTL Mgmt. LLC*, 58 F.4th 738 (3d Cir. 2023), *amended and superseded*, __ F.4th __, 2023 WL 2760479 (3d Cir. Mar. 31, 2023). Pursuant to the Third Circuit's mandate, on April 4, 2023, at 1:49 p.m., this Court dismissed LTL's prior chapter 11 case (the "2021 case").

At 4:00 p.m. that same day—and just 131 minutes after it exited bankruptcy—LTL filed this case, based on largely the same underlying facts and strategy as its dismissed 2021 case. Among the pleadings filed by LTL with its petition were an adversary complaint and accompanying PI Motion, which seek to enjoin tens of thousands of personal injury lawsuits against LTL's non-debtor affiliates and various other parties for the duration of this case. The PI Motion replicates a motion that was granted (over considerable opposition) in LTL's 2021 case and seeks to reinstate a sweeping non-debtor injunction from that case (the "2021 PI Motion").

The U.S. Trustee objects to the PI Motion. Although the literal terms of the PI Motion appear unchanged, the factual and legal circumstances underlying it are now considerably

2

different than they were two years ago.  In particular, the following events have occurred since the Court granted the 2021 version of the PI Motion, which weigh strongly in favor of an opposite outcome here:

- As a result of the Third Circuit's decision on good faith, which ordered dismissal of LTL's 2021 case, there are now substantial and possibly insurmountable obstacles to the viability of LTL's refiled case.  And while the Court's decision granting the 2021 version of the PI Motion was premised on its belief that its injunction would allow LTL to successfully reorganize in bankruptcy, LTL's prospect for reorganization—and with it, the practical justification for any kind of injunction—is now highly doubtful.  Sometime before filing this case, and apparently to circumvent the Third Circuit's ruling that it was not financially distressed, LTL slashed the value of its payment rights from its affiliates from $60 billion to $10 billion.  Other independent grounds for bad faith raised by the objectors in the 2021 case remain unaddressed. And given the hostility already expressed in this nascent case, it is doubtful LTL will achieve the necessary ratification of affected tort creditors.

- On its merits, the legal rationale for the PI Motion should be reexamined based on the extensive and well-reasoned analysis of *3M Occupational Safety LLC v. Those Parties Listed on Appendix A to the Complaint (In re Aearo Technologies, LLC)*, 642 B.R. 891 (Bankr. S.D. Ind. 2022), No. 22-2206 (7th Cir. argued Apr. 4, 2023), a factually similar case that had not yet been decided when the Court considered the prior PI Motion.

- Finally, the balance of equities has shifted.  For nearly eighteen months, tens of thousands of cancer victims and other personal injury plaintiffs have been barred

3

from pursuing their rights against a wide range of non-debtor defendants, all for the benefit of a chapter 11 case that the Third Circuit ruled never should have been filed. To subject these victims to any additional delay would be unconscionable, especially when balanced against LTL's slim to nonexistent prospects for reorganization.

The Court approved the 2021 PI Motion based, in part, on its belief that LTL was working in good faith toward a confirmable plan of reorganization. Two years later, following the failure of its first bankruptcy case, LTL can no longer be given the benefit of doubt. Under present circumstances, LTL cannot demonstrate that its PI Motion is a legitimate step toward reorganization, rather than a litigation tactic designed to further delay and frustrate the rights of its creditors for the benefit of its non-debtor parent. The PI Motion should be denied.

## BACKGROUND

### A. The 2021 Case and 2021 PI Motion

This case is LTL's second attempt at chapter 11 reorganization in two years, following the 2021 case, which was filed in the Western District of North Carolina in October 2021, transferred to this District, and ultimately dismissed. The principal purpose of both the 2021 case and the present case is to resolve LTL's tort liability for personal injuries allegedly caused by exposure to talc, a liability that LTL inherited from (and may continue to share with) its ultimate corporate parent, Johnson & Johnson, and numerous other non-debtor affiliates (collectively, "J&J"). *See generally* Declaration of John K. Kim in Support of First Day Pleadings (Dkt. 4) (the "Kim Declaration"). These liabilities have resulted in what LTL characterizes as "astronomical" indemnity and defense costs, for which J&J was paying approximately $10 to 20 million per month immediately before LTL's bankruptcy. *See* Kim Decl. ¶ 36; *LTL*, 2023 WL 2760479 at *3.

Somewhat uniquely, LTL has been a chapter 11 debtor for all but two days of its entire two-year corporate existence. LTL was created on the eve of its 2021 case, as part of a series of internal corporate transactions referred to by LTL as the "2021 Corporate Restructuring," by the Third Circuit as the "Divisional Merger," and more pejoratively by other parties as the "Texas Two-Step." *Id.* Under the Divisional Merger, LTL became solely responsible for J&J's talc liabilities but did not acquire its related assets, which were allocated to other J&J subsidiaries. Following the Divisional Merger, LTL's principal asset was its right under a funding agreement with its affiliates (the "2021 Funding Agreement"). That agreement provided that outside of bankruptcy, J&J was obligated to pay LTL for its talc-related costs and ordinary business expenses. Upon the filing of a bankruptcy case (just two days after LTL's creation), J&J's obligation was transformed into one to pay the costs of the bankruptcy case, as well as an obligation to fund a trust to satisfy the rights of present and future talc claimants. The value of these obligations was capped at an amount not less than $61.5 billion. *See id.* at *4.

Shortly after it filed its petition in the 2021 case, and as it has done here, LTL filed an adversary proceeding against several thousand personal injury plaintiffs who had asserted talc claims against J&J. *See* Adv. No. 21-03032. Although these plaintiffs' claims against LTL itself were already automatically stayed upon LTL's bankruptcy filing by 11 U.S.C. § 362(a), the adversary proceeding sought to extend this protection to several hundred parties that were not bankruptcy debtors, including J&J and its affiliates (the "Protected Parties"). To accomplish this, and as it has done here, LTL filed a motion in the adversary proceeding seeking a declaration from the court that actions against the Protected Parties were also stayed under section 362 or, alternatively, requesting that the court exercise its powers under 11 U.S.C. § 105(a) to extend the stay to the Protected Parties. (Adv. No. 21-03032, Dkt. 2).

The 2021 PI Motion was approved by the North Carolina bankruptcy court on a temporary, 60-day basis. Following the transfer of the 2021 case, this Court granted the 2021 PI Motion over the objections of numerous parties, including two official committees and various plaintiffs and insurers. *LTL Mgmt, LLC v. Those Parties Listed on Appendix A to Complaint (In re LTL Mgmt., LLC)*, 638 B.R. 291 (Bankr. D.N.J. 2022) (the "2022 PI Decision"). Although the Court generally agreed with the legal and statutory arguments of LTL, its approval of the PI Motion was not unconditional. Rather, as the Court repeatedly emphasized, it was "working from the baseline that the bankruptcy was filed in good faith," *id.* at 305, and its willingness to enjoin tens of thousands of tort plaintiffs was contingent on LTL's "progress in good faith towards mediation and plan formation." *Id.* at 324.

B. **The Third Circuit Orders Dismissal of LTL's 2021 Case**

The objecting parties eventually appealed the 2022 PI Decision to the Third Circuit, along with another decision that had denied a motion to dismiss the 2021 case filed by most of the same parties. *In re LTL Mgmt., LLC*, 637 B.R. 396 (Bankr. D.N.J. 2022) (the "LTL Dismissal Decision"). On January 30, 2023, the Third Circuit reversed the LTL Dismissal Decision and remanded the case to this Court with instructions to dismiss.[2] *LTL*, 2023 WL 2760479. In pertinent part, the Third Circuit ordered LTL's case dismissed based on its conclusion that LTL, with its rights under the 2021 Funding Agreement, was not in "financial distress" and that it consequently had not filed bankruptcy in good faith. *Id.* at *16; *see also id.* at *8 (stating that good faith in chapter 11 requires that the debtor demonstrate both that its petition "serves a valid bankruptcy purpose" and that it was not "filed merely to obtain a tactical litigation advantage") (internal citations omitted).

---

[2] The Third Circuit's decision was originally reported as 58 F.4th 738. On March 31, 2023, the Third Circuit issued an amended version of its decision.

Because the Third Circuit decided the appeal based on the threshold issue of LTL's financial distress, it did not address other arguments raised by LTL's creditors in support of dismissal, including arguments based on the allegedly abusive nature of the Divisional Merger. *See id.* at *17 (argument regarding Divisional Merger is "a call that awaits another day and another case"). Similarly, the Third Circuit acknowledged that its ruling on dismissal mooted the appeal of the 2022 PI Decision, and it consequently did not address the merits of that decision. *See id.*

### C. **LTL Refiles Bankruptcy and Seeks a Renewed PI Injunction**

Following unsuccessful efforts by LTL to stay the Third Circuit's mandate or to obtain en banc rehearing, the Court dismissed the 2021 case in an order that was timestamped at 1:49 p.m. on April 4, 2023 (Case No. 21-30589, Dkt. 3938). Barely two hours later—at 4:00 p.m. that same afternoon—LTL filed its chapter 11 petition commencing the present case. (Dkt. 1).

As described in the "Informational Brief" filed with its petition (Dkt. 3) (the "LTL Informational Brief"), LTL intends to pursue the exact same strategy that it pursued in its dismissed 2021 case. With respect to the Third Circuit's ruling dismissing its 2021 case, the Informational Brief identifies three changed facts that allegedly make its current case distinguishable. First, LTL states that it has entered into plan support agreements under which J&J and it will pay "up to" $8.9 billion to fund a trust for the payment of talc claims. Second, LTL states that certain plaintiff firms, allegedly representing 60,000 clients, have pledged their support for LTL's plan. Finally, LTL reports that it has terminated the 2021 Funding Agreement, which was formerly its principal asset, and replaced it with a renegotiated and substantially less valuable funding agreement (the "2023 Funding Agreement") that reduces the

7

value of LTL's payment rights from its affiliates from $60 billion to $10 billion. *See* LTL Informational Brief at 2, 6; Kim Decl. Annex E.[3]

As it did in its 2021 case, LTL also commenced an adversary proceeding against several tens of thousands of talc plaintiffs, and within that adversary proceeding, it filed the PI Motion, which seeks essentially the same relief and is based on the same facts and arguments as the 2021 PI Motion. Specifically, the PI Motion seeks two forms of relief: (i) a declaratory judgment that sections 362(a)(1) and (a)(3) of the Bankruptcy Code automatically stay any prosecution of talc claims against the Protected Parties and (ii), alternatively, an order under section 105(a) extending the automatic stay to the Protected Parties as an exercise of the Court's equitable powers. As in the prior 2021 PI Motion, the "Protected Parties" against whom actions will be stayed include J&J itself, numerous non-debtor J&J affiliates, as well as J&J's retailers and insurers.

On April 5, 2023, the Court entered an ex parte restraining order that temporarily stayed claims subject to the PI Motion through April 18, 2023. (Adv. No. 23-12825, Dkt. 31).

## ARGUMENT

A. **Standing and Interest of the U.S. Trustee**

The U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of the Bankruptcy Code. 28 U.S.C. § 586. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and

---

[3] Although not directly relevant to the matter presently before the Court, the U.S. Trustee has concerns that the LTL Informational Brief references major non-ordinary course transactions and transfers by LTL that were never disclosed to creditors or approved by the Court, even though LTL remained a debtor in possession until 1:49 p.m. on April 4, 2023. *See* 11 U.S.C. §§ 362(b), 549. The United States Trustee reserves his rights with respect to any unauthorized transactions, including his right to challenge the effectiveness of such transactions and to seek any other remedies as may be appropriate.

8

interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (stating the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest). Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding, including matters within this adversary proceeding.

### B. Legal Standard

Under section 362(a)(1) of the Bankruptcy Code, the filing of a bankruptcy petition operates as a stay of "the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor" that arose or could have been commenced before the commencement of the case. In addition, section 362(a)(3) stays any "act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

Section 105(a) of the Bankruptcy Code allows the Court to issue "any order, process or judgment that is necessary to carry out the provisions of" chapter 11, or to "enforce or implement court orders or rule, or to prevent an abuse of process." But in exercising its powers under section 105, the Court may not "contravene specific statutory provisions." *Law v. Siegel*, 571 U.S. 415, 421 (2014).

The Court may issue a preliminary injunction in an adversary proceeding. Fed. R. Bankr. P. 7065(a). Under Third Circuit law, to obtain a preliminary injunction, the moving party must first show (i) a reasonable probability of eventual success in the litigation and (ii) irreparable injury if relief is not granted. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017). Should the movant satisfy that burden, the Court must

9

next consider (iii) the possibility of harm to other interested persons from the grant or denial of the injunction and (iv) the public interest. *Id.*

### C. The PI Motion Should be Denied Because LTL's Reorganization Efforts are Futile

As a threshold matter, although LTL relies on various arguments in support of the PI Motion, each of those arguments ultimately is premised on its assertion that it will eventually propose and confirm a plan of reorganization. *See, e.g.,* PI Motion at 4, 48, 59. But in light of the Third Circuit's decision regarding LTL's lack of good faith in its prior bankruptcy—which is now binding precedent in this case—there is little reason to expect that LTL will fare any differently in its second visit to chapter 11 or that this case will have any outcome other than yet another dismissal (which may not occur, however, until LTL's creditors have been subjected to considerable additional and unnecessary delay and expense).

Notably, the structure, background, and circumstances of LTL's current bankruptcy case are in most respects no different than those of its 2021 case—a case that the Third Circuit determined was filed in bad faith and without any valid bankruptcy purpose. *LTL*, 2023 WL 2760479 at *16. Although LTL confidently asserts that it has "resolve[d] the concerns that led the Third Circuit to conclude that [LTL's] first chapter 11 case had to be dismissed," PI Motion at 7, this contention appears to be based on nothing more than the fact that LTL surrendered its most valuable asset, replacing it with an instrument far less valuable—$52 billion less valuable to be precise—in a transaction that its creditors have already characterized as "the largest fraudulent conveyance in the history of the United States." *See* Informational Brief of the Ad Hoc Committee of Certain Talc Claimants (the "AHC Informational Brief") (Dkt. 79). And it may be that LTL did so without authorization if that transaction—far outside the ordinary course of business—occurred before 1:49 p.m. on April 4, 2023. *See* 11 U.S.C. § 363(b) (requiring

notice, a hearing, and court approval before using, selling, or leasing estate property outside the ordinary course of business).

Although LTL relinquished its most valuable asset for apparently no consideration to circumvent the Third Circuit's ruling that it was not financially distressed, there is no reason to assume that this maneuver will have the effect that LTL intended. Because of the one-sided nature of LTL's agreement with its parent to terminate the 2021 Funding Agreement—which was presumably negotiated, if not actually consummated, when LTL was subject to the fiduciary and statutory duties of a chapter 11 debtor in possession—there likely now exist significant avoidance actions and other claims that LTL holds against J&J. LTL may simply have replaced a large contractual claim with a smaller contractual claim coupled with a large litigation claim; the net effect, for purposes of the Third Circuit's financial distress analysis, is likely zero.[4]

And this is not the only hurdle that LTL will face before it can propose a reorganization plan. Because the Third Circuit dismissed the 2021 case based on its finding of no financial distress, it never addressed the other independent grounds for bad faith raised by the objectors—including the argument that the Divisional Merger itself constituted bad faith by LTL. Should LTL survive dismissal on financial distress grounds, it would still need to contend with these other arguments, which have seemingly now been bolstered by LTL's questionable conduct in terminating the 2021 Funding Agreement.

Even if LTL overcomes all these obstacles and survives immediate dismissal, its prospects for reorganization are still far from certain. According to LTL, its reorganization objective is the confirmation of a plan that will fund a trust for the resolution of tort claims under

---

[4] Seemingly in anticipation of this point, the Kim Declaration suggests that the 2021 Funding Agreement may have become void as a result of the Third Circuit's dismissal of the 2021 case. Kim Decl. ¶ 78. LTL cites no provision of the 2021 Funding Agreement in support of this remarkable statement that endorses a theory wholly adverse to LTL's own interests.

either section 524(g) or section 105(a) of the Bankruptcy Code. Kim Decl. ¶ 89. Yet one of the requirements to confirm a section 524(g) plan is ratification by at least 75% of the tort creditors affected by the trust. 11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb). Given the extreme acrimony that has existed in the 2021 case and now in this case—and that has been seemingly exacerbated by LTL's recent maneuverings—it is difficult to imagine any circumstance in which this threshold will be met. Although LTL claims to have secured the support of 60,000 creditors—an assertion that is vigorously disputed by other plaintiff representatives, *see* AHC Informational Brief at ¶18—there is no reason to believe that it has now achieved, or is ever likely to achieve, the 75% support necessary to confirm a plan.[5]

Lastly, although LTL's second bankruptcy case likely will be (and should be) dismissed, it is not necessary for the Court to decide that issue to rule on the PI Motion. As the moving party on a motion for a preliminary injunction, LTL bears the burden of showing that it has a "reasonable probability" of success. *Reilly*, 858 F.3d 176. Even if the Court decides that there is a remote possibility that LTL will prevail on a motion to dismiss, LTL's wishful thinking and questionable efforts to distinguish the Third Circuit's prior ruling do not satisfy this burden.

### D. Neither 11 U.S.C. § 362 nor § 105(a) Authorizes the Relief LTL Seeks

In its decision in the prior case, the Court concluded that the talc claims against the Protected Parties were subject to the section 362 automatic stay and, alternatively, that an injunction extending the stay under section 105(a) to those parties was appropriate "given the

---

[5] Of course, this assumes without conceding or deciding that all of the tort claimants may properly be channeled to a section 524(g) asbestos trust given J&J's years-long litigation posture that its powder was not contaminated with asbestos. "Our position on the safety of our cosmetic talc remains unchanged. We stand firmly behind the decades of independent scientific analysis by medical experts around the world that confirms talc-based JOHNSON'S® Baby Powder is safe, does not contain asbestos, and does not cause cancer." J&J Media Statement (Aug. 11, 2022), available at https://www.jnj.com/johnson-johnson-consumer-health-to-transition-global-baby-powder-portfolio-to-cornstarch

circumstances of this case." 2022 PI Decision, 638 B.R. at 322. Two of the circumstances relied on by the Court were LTL's favorable "prospect of reorganization," *see id.* at 306, as well as the Court's determination that LTL had acted in good faith, *see id.* at 320, findings which are no longer tenable following the Third Circuit's decision and LTL's subsequent $52 billion gift to its non-debtor parent in an attempt to create financial distress.

The Court's rulings regarding sections 362 and 105 should also be revisited following the *Aearo* decision, a case involving another mass tort defendant that was decided six months after this Court issued the 2022 PI Decision. Although *Aearo* did not involve a Divisional Merger, in other respects the case is strikingly similar to this one: both have (i) a debtor that is subject to mass tort claims along with its larger and highly solvent non-debtor parent (in Aearo's case, 3M Corporation); (ii) insurance shared between the debtor and its parent; (iii) a funding agreement running from the parent to the debtor; and (iv) a debtor seeking a preliminary injunction barring tort claims against the non-debtor parent.

Although this Court found that the Protected Parties were subject to section 362(a)(1) and (3) and that they were also entitled to an injunction under section 105(a), the *Aearo* court ruled otherwise, holding that section 362(a)(1) itself contains no independent authority for applying the stay to any entity other than the debtor. *See Aearo*, 642 B.R. at 905. The court in *Aearo* also held that the potential exhaustion of the debtor's shared insurance did not justify imposing the stay under section 362(a)(3) because the debtor was able to look to its funding agreement in lieu of the insurance proceeds, and there was therefore no risk of "inequitable distribution" of those proceeds. *Id.* at 907.

The *Aearo* court also declined to enjoin claims against 3M under section 105(a), holding that the injunction was neither "necessary" nor "appropriate" to Aearo's reorganization. In so

13

ruling, the *Aearo* court noted that it would "focus its analysis on the *actual* economic effect" that a failure to grant the injunction would have on the debtor's estate and its creditors and that it was the debtor's burden to prove such an effect. *Id.* at 910. The court found that this burden was not met because the existence of the funding agreement meant that a failure to grant a stay would have no financial impact on the debtor or its creditors. *Id.*

The same rationale applies here. Even under LTL's far less valuable 2023 Funding Agreement, there is no evidence for why LTL will be unable to administer its bankruptcy case or manage its affairs in the absence of an injunction protecting J&J. And in the absence of any credible prospect of reorganization, the PI Motion cannot affect LTL's (already negligible) ability to confirm a plan. For these reasons, and notwithstanding its earlier decision on the 2021 PI Motion, the Court should decline to approve the PI Motion under sections 362 or 105 of the Bankruptcy Code.

E.     **The Balance of Hardships in this Case Weighs Against an Injunction**

Lastly, and as the final step in its analysis, the Court must consider both the possibility of harm to other parties and the public interest. *Reilly*, 858 F.3d at 176. Here, there can be little question that the balance of hardships weighs strongly against any further injunction. Except for a 131-minute period on the afternoon of April 4, the talc claimants who have asserted claims against J&J have been subject to a continuous stay since October 2021. During that time, they have been unable to advance their cases or to receive compensation, all because of a chapter 11 petition that (according to the Third Circuit) was filed in bad faith and without a valid bankruptcy purpose. And as the AHC Informational Brief points out, as a result of LTL's manipulation of the Bankruptcy Code, many of those claimants have died during the stay without having had their day in court. Over the same period, by LTL's own estimation, J&J has saved

14

tens of millions of dollars per month by not being required to respond to personal injury lawsuits during the stay. *See* Kim Decl. ¶ 36. Even subtracting the costs of their bankruptcy professionals, it therefore seems likely that J&J and LTL have enjoyed a considerable financial benefit as a result of LTL's failed 2021 case.

The reimposition of a stay, even on a temporary basis, is inequitable given the long and unnecessary stay that J&J's tort creditors have already been forced to endure. Although it is expected that the Court will be presented with numerous motions to dismiss this case, resolution of those motions could potentially take a year or longer even if LTL's creditors again ultimately prevail. And even so, there is no assurance that LTL will not return to this Court with a third chapter 11 petition once this case is dismissed. Enough is enough. Even if the Court does not immediately dismiss LTL's serial chapter 11 filing, it should not allow J&J to continue to abuse this Court's processes in order to delay and frustrate its creditors.

WHEREFORE, for the foregoing reasons, the U.S. Trustee respectfully requests that the Court deny the PI Motion and grant such other and further relief that is deemed just and equitable.

Dated: April 17, 2023

        Respectfully submitted,

        ANDREW R. VARA
        UNITED STATES TRUSTEE
        REGIONS 3 & 9

By:   */s/ Jeffrey M. Sponder*
        Jeffrey M. Sponder
        Trial Attorney
        Lauren Bielskie
        Trial Attorney
        United States Department of Justice
        Office of the United States Trustee
        One Newark Center, Suite 2100
        Newark, NJ 07102

        -and-

        Linda Richenderfer
        Trial Attorney
        United States Department of Justice
        Office of the United States Trustee
        J. Caleb Boggs Federal Building
        844 King Street, Suite 2207, Lockbox 35
        Wilmington, DE 19801
        (302) 573-6491 (Phone)
        linda.richenderfer@usdoj.gov