# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re<br><br>LTL MANAGEMENT LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 21-30589 (JCW) |

## INFORMATIONAL BRIEF OF LTL MANAGEMENT LLC

Gregory M. Gordon
Dan B. Prieto
Amanda Rush
JONES DAY
2727 N. Harwood Street
Dallas, Texas 75201

Brad B. Erens
Caitlin K. Cahow
JONES DAY
77 West Wacker
Chicago, Illinois 60601

C. Richard Rayburn, Jr.
John R. Miller, Jr.
RAYBURN COOPER & DURHAM, P.A.
227 West Trade Street, Suite 1200
Charlotte, North Carolina 28202

Kristen R. Fournier
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036

Kathleen A. Frazier
SHOOK, HARDY & BACON L.L.P.
JPMorgan Chase Tower
600 Travis Street, Suite 3400
Houston, TX 77002

Dated: October 14, 2021

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1519748187

100 or so new cases per year,[192] mesothelioma filings against J&J/Old JJCI have more than made up the difference with 257 cases filed in 2017, 371 cases filed in 2018, 326 cases filed in 2019, 271 cases filed in 2020, and over 120 cases filed in 2021 (to-date).

### 2. The Asbestos Mass Tort Bar Adjusts Its Strategy to Talc.

As cosmetic talc litigation ramped up, the plaintiff bar adjusted its strategy to ensure that this new mass tort would endure as traditional asbestos litigation began to subside. From January 2016 through September 2020, 61.5% of the mesothelioma cases filed against J&J/Old JJCI were mixed exposure cases, meaning that the J&J defendants were simply added as an additional defendant to a mesothelioma case that also alleged exposure to traditional asbestos-containing products. 71% of these mixed exposure cases were filed in Madison County, Illinois—historically, a plaintiff-favored jurisdiction for asbestos litigation where most cases end in settlement.

However, as the cosmetic talc litigation continued, plaintiffs began filing more and more "talc-only" mesothelioma cases in other jurisdictions. Over the last year, only 32% of the new mesothelioma cases filed against J&J/Old JJCI have been mixed exposure cases; meaning, the vast majority of the cosmetic talc cases filed against J&J/Old JJCI are now "talc-only" cases. The reason for this shift in filing practices is purely strategic. By focusing the case on talc-only allegations and minimizing plaintiffs' exposure to traditional asbestos products (examples of which are further described below), plaintiffs strip talc defendants like Old JJCI of alternative exposure defenses, which are key in mesothelioma cases. As a result, Old JJCI was forced to undertake extensive and expensive investigations to uncover information regarding a plaintiff's alternative asbestos exposures. Moreover, these "talc-only" cases are perceived to be insulated

---

[192]    *Id.*

-49-

from the threat that traditional asbestos companies may disappear from active tort litigation.

The following are just a few examples of the sorts of cases filed to implement the "talc-only" strategy:

- In one trial, plaintiff's counsel and experts focused their case on allegedly sub-trace levels of asbestos in Johnson's Baby Powder, despite the fact that the plaintiff had for years smoked Kent asbestos-containing cigarettes. Each Kent cigarette that the plaintiff smoked would have contained 80 billion fibers of the deadliest type of asbestos, crocidolite.

- In another trial, neither side disputed that the plaintiff had handled asbestos-containing brakes, had been present when her husband removed and sanded those brakes, and that she then laundered his asbestos-covered clothes. Plaintiff expert Dr. Longo had previously testified in traditional asbestos litigation that sanding brakes, which he alleged were designed to contain 80% asbestos, was "like hitting a pinata of dust." But now with J&J/Old JJCI as the primary litigation target, Dr. Longo downplayed the brake exposures, opining that the allegedly sub-trace levels of asbestos in Johnson's Baby Powder resulted in higher exposure levels. Ultimately, in that trial, the jury returned a verdict of $25.75 million against J&J and Old JJCI, finding that they were 67% at fault.

- One of the most frequent plaintiff causation experts in mesothelioma cases is Dr. Jacqueline Moline. In one case, Dr. Moline issued a report with her opinion that Johnson's Baby Powder caused a particular plaintiff's mesothelioma, but did not conduct the most basic of investigations, which would have revealed that the plaintiff lived, went to school, and worked 1.5 kilometers from an asbestos cement factory.

B.    **The Lack of Support for Ovarian Cancer Claims Caused by Talc**

1.    **What is Ovarian Cancer?**

Ovarian cancer comprises several distinct diseases, which are categorized into separate subtypes. These different types of ovarian cancer develop in different types of cells, they look different under a microscope, they involve mutations of different genes, and they have different risk factors and causes. Notably, in the largest prospective analysis of ovarian cancer risk factors ever conducted—pooling individual data for more than 1.3 million women from 21 studies—researchers who considered 14 risk factors found that "[e]ach subtype [of ovarian cancer] had a qualitatively unique pattern of associations" and that "[o]nly parity and height were associated

-50-

And, there is little doubt that cosmetic talc litigation will only continue to grow, and the extraordinary costs continue to mount. Beyond the sudden influx of ovarian cancer claims being filed, while the company disputes that its cosmetic talc products contain any asbestos, plaintiff experts estimate that the latency period for mesothelioma can be as high as 60 years—and, similarly, have begun to allege extended latency periods for ovarian cancer allegedly caused by asbestos exposure.[466] This means that, even though Old JJCI stopped selling its talc-based Johnson's Baby Powder in North America in 2020, individuals who develop mesothelioma in 2080 and beyond may still sue J&J-related defendants, potentially drawing out the litigation to the end of this century.

## VI.    The Debtor Currently Faces Overwhelming On-Going Litigation Claims.

### A.    Ovarian Cancer Claims

As a result of the onslaught of litigation, currently the Debtor is facing approximately 38,000 ovarian cancer claims. Approximately 35,000 of those plaintiffs' suits are pending in the MDL, nearly 3,300 claims are pending in multiple state court jurisdictions across the country, with roughly 2,200 of those claims consolidated in formal state court proceedings in California and in New Jersey. More than the sheer number of pending lawsuits, the acceleration of ovarian cancer claims has been staggering. In 2014, J&J/Old JJCI were served with 46 ovarian cancer complaints. In 2017—just three years later—that number was nearly 5,000. This extraordinary acceleration in ovarian cancer claims asserted against J&J/Old JJCI has shown no signs of abating. As of the petition date, J&J/Old JJCI had been served with *over 12,300* ovarian cancer complaints in just the first ten and a half months of 2021.

---

[466]    *See, e.g.*, Expert Report of Jaqueline Moline (November 4, 2019).

NAI-1519748187

| Year | Ovarian Cancer Complaints | Number of Plaintiffs |
|---|---|---|
| 2014 | 46 | 426 |
| 2015 | 131 | 907 |
| 2016 | 325 | 2,082 |
| 2017 | 4,824 | 6,300 |
| 2018 | 5,745 | 6,328 |
| 2019 | 4,425 | 4,727 |
| 2020 | 9,856 | 9,856 |
| 2021[467] | Over 12,300 | Approximately 13,000 |

To put the pace of this litigation in perspective, from 2017 through 2019, the company was served on average with one or more ovarian cancer complaints *every other hour of the day, every single day of the week*. From January 2020 to the present, however, the company has been served on average with one or more ovarian cancer complaints *every hour of the day, every single day of the week*.

With roughly 21,000 new ovarian cancer diagnoses each year,[468] and little preventing the plaintiff bar from alleging that the company's products were at fault, there is no end to the claims that may be asserted against the Debtor.

    **B.**    **Mesothelioma Claims**

In addition, as of the petition date, there were more than 430 mesothelioma cases pending against J&J/Old JJCI nationwide, nearly all of which were pending in state court.[469] The majority of these cases (well over 250) are pending in Middlesex County Superior Court in New Jersey. However, a substantial number of cases are pending in state courts in New York, Illinois, California, Missouri, and Ohio, with the remainder of the cases pending in various state court

---

[467] Numbers listed for 2021 are as of the petition date.

[468] SEER Data.

[469] At no time has there been more than five mesothelioma cases pending in federal courts across the country.