CONFIDENTIAL EXHIBIT
23
Wuesthoff, Robert 12/22/21 KLJ

# MINUTES OF BOARD OF MANAGERS

## LTL MANAGEMENT LLC,
### a North Carolina limited liability company

The Board of Managers (the "Board") of LTL Management LLC, a North Carolina limited liability company (the "Company"), met on Thursday, October 14, 2021 by means of internet communications equipment whereby all persons participating in the meeting were able to see and hear each other. All members of the Board – Russell Deyo, Robert Wuesthoff, and Richard Dickinson – were in attendance.

At the invitation of the Board, John Kim (the Chief Legal Officer and Secretary of the Company), participated in the meeting. Mr. Kim presided at, and acted as secretary for, the meeting.

In addition, at the invitation of the Board, lawyers from Jones Day, the Company's outside counsel, participated in the meeting. The participating Jones Day lawyers were Ann Bomberger, Brad Erens, Jim Jones, Troy Lewis and Dan Prieto.

### (INTRODUCTORY REMARKS AND CALL TO ORDER)

Mr. Kim welcomed the members of the Board and other meeting participants. Mr. Kim then took a roll call, and it was confirmed that a quorum of the Board was present and the meeting could be called to order.

Following the roll call, Mr. Kim called the meeting to order and reviewed the agenda, indicating that: (1) first, there would be a review of certain effects of the restructuring of Johnson & Johnson Consumer Inc., a New Jersey corporation ("Old JJCI"), which was completed on October 12, 2021 (the "Restructuring"); (2) then, Jones Day would make a presentation regarding certain protocols and guidelines commended to the Company in connection with the post-Restructuring governance and operation of the Company; (3) then, there would be a presentation regarding the Company's assets and its history with talc-related liabilities; (4) then, Mr. Kim, with the assistance of Jones Day, would review potential strategic options for addressing current and future talc claims; (5) then, Jones Day would make a presentation concerning the potential bankruptcy option, including the possible creation of a qualified settlement fund (the "QSF"); and (6) finally, Mr. Kim would ask the Board to act on resolutions

authorizing the Company to file a voluntary petition for relief under chapter 11 of the Bankruptcy Code and a motion to approve the QSF (the "Proposed Resolutions").

Mr. Kim confirmed that the Company's managers and officers had received the confidential memorandum regarding post-Restructuring protocols and guidelines (the "Privileged Memo"), drafts of the informational brief and first day declaration prepared in support of the potential chapter 11 filing, a draft of the trust agreement governing the potential QSF, and a draft of the Proposed Resolutions, each of which had been circulated to them in advance of the meeting.

Mr. Kim then introduced Mr. Prieto of Jones Day and asked that he proceed with a review of certain effects of the Restructuring.

### (REVIEW OF CERTAIN EFFECTS OF THE RESTRUCTURING)

Mr. Prieto then began with a brief overview of the Restructuring and its effects, including the cessation of existence of Old JJCI and the creation of the Company and its wholly-owned subsidiary, Royalty A&M LLC, a North Carolina limited liability company. Mr. Prieto reviewed the assets and liabilities allocated to the Company in the Restructuring, and identified the Company's legal counsel.

Mr. Prieto then provided a brief overview of the three topics addressed in the Privileged Memo to be reviewed in the Jones Day presentation – corporate governance, privileged communications and practical considerations for electronic communications. After confirming there were no questions regarding the effects of the Restructuring, Mr. Prieto then introduced Ms. Bomberger, asking her to begin the Jones Day presentation on post-Restructuring protocols and guidelines.

### (REVIEW OF POST-RESTRUCTURING PROTOCOLS AND GUIDELINES SET FORTH IN PRIVILEGED MEMO)

Ms. Bomberger summarized the corporate governance guidelines set forth in the Privileged Memo. After Ms. Bomberger confirmed there were no questions regarding the corporate governance guidelines, Mr. Prieto introduced Mr. Jones to continue the Jones Day presentation.

Mr. Jones then summarized guidelines for privileged communications and guidelines for the use of email and other electronic communications set forth in the Privileged Memo. After responding to questions regarding these guidelines, Mr. Jones confirmed there were no additional

NAI-1522287543v2

LTL 0019185

questions and returned the floor to Mr. Kim. Thereupon, Mr. Kim thanked Mr. Jones for his presentation and Mr. Jones left the meeting.

### (REVIEW OF THE COMPANY'S ASSETS AND HISTORY WITH TALC-RELATED LIABILITIES)

To begin, Mr. Kim asked Mr. Prieto to address the Company's assets. Mr. Prieto first noted his earlier presentation regarding assets allocated to the Company in the Restructuring and then provided a brief overview of the Company's insurance assets. Mr. Kim then reviewed the Company's history with talc-related liabilities. Mr. Kim's presentation addressed, among other things, the use of talc in products of the Company's predecessors, the evolution of talc-related lawsuits in the tort system, the experience of the Company's predecessors in the tort system, challenges faced by the Company's predecessors in the tort system, and historical and forecasted costs and expenses of the Company's predecessors and the Company, respectively, associated with talc-related lawsuits.

After confirming there were no questions regarding the presentation, Mr. Kim began a review of potential strategic options for addressing current and future talc claims against the Company.

### (REVIEW OF POTENTIAL STRATEGIC OPTIONS FOR ADDRESSING CURRENT AND FUTURE TALC CLAIMS)

Mr. Kim then reviewed options available to the Company with respect to the resolution of current and future talc claims, including the potential use of the Bankruptcy Code. Mr. Kim then asked Mr. Erens and Mr. Prieto to review the potential use of the Bankruptcy Code as a mechanism to resolve current and future talc claims.

Mr. Erens, with the assistance of Mr. Prieto and Mr. Lewis, then reviewed the potential use of the Bankruptcy Code as a mechanism to finally resolve current and future talc claims. As part of the presentation, Mr. Prieto reviewed section 524(g) of the Bankruptcy Code relating to asbestos, and Mr. Lewis reviewed the potential QSF. Throughout the presentation, Mr. Erens responded to comments and questions from members of the Board regarding the potential use of the Bankruptcy Code to resolve current and future talc claims.

As part of the discussion, Mr. Kim noted for the members of the Board that ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

NAI-1522287543v2

LTL 0019186

██████████████████████████████████████

### (REVIEW OF AND ACTION ON PROPOSED RESOLUTIONS)

At the request of Mr. Kim, Ms. Bomberger then reviewed the Proposed Resolutions, and confirmed there were no further questions from the members of the Board. Mr. Kim then asked members of the Board for a motion to adopt the Proposed Resolutions. Upon a motion, duly made and seconded, the following resolutions, which are identical to the form of the Proposed Resolutions circulated to members of the Board in advance of the meeting, were then adopted by the unanimous vote of the members of the Board:

#### Chapter 11 Filing

**WHEREAS**, the board of managers (the "Board") of LTL Management LLC, a limited liability company organized and existing under the laws of the State of North Carolina (the "Company") has: (1) carefully reviewed the materials and other information presented by the management and the advisors of the Company regarding the Company's talc-related liabilities, and other relevant information; (2) thoroughly evaluated the Company's strategic alternatives, including a possible bankruptcy filing; (3) conferred with the Company's management and advisors regarding these matters; and (4) determined that the filing of a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") is in the best interests of the Company and its stakeholders; and

**NOW, THEREFORE, BE IT RESOLVED**, that in the judgment of the Board, it is desirable and in the best interests of the Company, its creditors and other interested parties that the Company seek relief under the Bankruptcy Code;

**FURTHER RESOLVED**, that the Company be, and it hereby is, authorized to file a voluntary petition (the "Petition") for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Case") in the United States Bankruptcy Court for the Western District of North Carolina or such other court as any of the managers of the Company, the officers of the Company and their designees (collectively, the "Authorized Persons") may determine to be necessary, desirable or appropriate (the "Bankruptcy Court") and perform any and all such other acts as any Authorized Person may determine to be necessary, desirable or appropriate to effect any of the foregoing, with the filing of such Petition or performance of such other act to be conclusive evidence of such determination; and

**FURTHER RESOLVED**, that the Authorized Persons be, and each of them hereby is, authorized, directed and empowered, in the name and on behalf of the Company, to: (1) execute, acknowledge, deliver and verify, and cause to be filed with the Bankruptcy Court, the Petition and all other ancillary documents, with each in such form, as any Authorized Person may determine to be necessary, desirable or appropriate to carry out the intent and accomplish the purposes of these resolutions; (2) execute, acknowledge,

NAI-1522287543v2

**LTL 0019187**

deliver, verify and file, or cause to be filed, all petitions, schedules, statements, lists, motions, complaints, declarations, applications, notices and other papers or documents, with each in such form, as any Authorized Person may determine to be necessary, desirable or appropriate in connection with the foregoing; and (3) execute, acknowledge, deliver and verify any and all other documents, with each in such form, as any Authorized Person may determine to be necessary, desirable or appropriate in connection therewith and to administer the Chapter 11 Case, including by executing, acknowledging, delivering, verifying and filing, or causing to be filed, such petitions, schedules, statements, lists, motions, complaints, declarations, applications, notices and other papers or documents as may be determined to be necessary, desirable or appropriate in connection with the Chapter 11 Case; all with the taking of any such action, including any such execution, acknowledgment, delivery, verification or filing, to be conclusive evidence of such determination.

### Retention of Professionals

**RESOLVED**, that the Authorized Persons be, and each of them hereby is, authorized, directed and empowered, in the name and on behalf of the Company, to retain (1) Jones Day, (2) Rayburn Cooper & Durham, P.A., (3) King & Spalding LLP, (4) Shook, Hardy & Bacon L.L.P., (5) McCarter & English, LLP, (6) Bates White, LLC, (7) AlixPartners, LLP and (8) such additional professionals, including attorneys, accountants, financial advisors, actuaries, consultants or agents (together with the foregoing identified firms, the "Professionals"), as any Authorized Person may determine to be necessary, desirable or appropriate in connection with the Chapter 11 Case and other related matters, and to execute, deliver and perform retention agreements with the Professionals in such form and reflecting such terms as any Authorized Person may approve, all with the retention of any Professional to be conclusive evidence of such determination and approval; and

**FURTHER RESOLVED**, that the law firms of Jones Day and Rayburn Cooper & Durham, P.A. and any additional special or local counsel selected by any Authorized Persons be, and each of them hereby is, authorized, directed and empowered to represent the Company, as debtor and debtor in possession, in connection with any chapter 11 case commenced by or against the Company under the Bankruptcy Code, including the Chapter 11 Case.

### QSF Settlement Facility

**WHEREAS**, the Company intends to commence the Chapter 11 Case in the Bankruptcy Court in accordance with the foregoing resolutions;

**WHEREAS**, the Company, as payee, and Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc. ("JJCI"), as payors, are parties to that certain Amended and Restated Funding Agreement, dated as of October 12, 2021 (the "Funding Agreement"), which Funding Agreement is available to provide the Company with funding for, among other things, the funding of one or more trusts established under the Bankruptcy Code for the benefit of current and future talc claimants as provided in a plan of reorganization for the Company to the extent the Company's other assets are insufficient to satisfy the

Company's liabilities in connection with such plan and subject to the limitations set forth therein;

**WHEREAS**, the Company desires, with the support of J&J and JJCI, to create a "qualified settlement fund" under section 468B of the Internal Revenue Code of 1986, as amended, for the purpose of resolving and satisfying current and future talc-related claims asserted against or related to the Company (the "Settlement Facility"), with J&J and JJCI to provide the Settlement Facility with aggregate funding of $2 billion in cash; and

**WHEREAS**, the Debtor desires to provide for the creation, funding and administration of the Settlement Facility in accordance with the terms of the settlement facility agreement, in substantially the form presented to the Board, with J&J, JJCI and the trustee thereunder (the "Settlement Facility Agreement").

**NOW, THEREFORE, BE IT RESOLVED**, that it is desirable and in the best interest of the Company, its creditors and other interested parties that the Company enters into the Settlement Facility Agreement;

**FURTHER RESOLVED**, that the Settlement Facility Agreement, and all of the terms and provisions thereof and transactions contemplated thereby, be, and each of them hereby is, approved by the Board;

**FURTHER RESOLVED**, that the Authorized Persons be, and each of them hereby is, authorized, in the name and on behalf of the Company, to file with the Bankruptcy Court in the Chapter 11 Case a motion to approve the Settlement Facility Agreement and the establishment of the Settlement Facility pursuant thereto and perform any and all such other acts as are reasonable, advisable, expedient, convenient, proper or necessary to establish the Settlement Facility pursuant to the Settlement Facility Agreement, with the performance of such acts to constitute conclusive evidence of the reasonableness, advisability, expedience, convenience, propriety or necessity thereof; and

**FURTHER RESOLVED**, that, subject to the approval of the Settlement Facility Agreement and the establishment of the Settlement Facility by the Bankruptcy Court, the Authorized Persons be, and each of them hereby is, authorized to execute, deliver and perform, in the name and on behalf of the Company, the Settlement Facility Agreement, with such modifications thereto as any Authorized Person may determine to be reasonable, advisable, expedient, convenient, proper or necessary, with the execution and delivery of the Settlement Facility Agreement to be conclusive evidence of such determination.

### General Authority

**RESOLVED**, that the Authorized Persons be, and each of them hereby is, authorized and empowered to execute and deliver such additional agreements, instruments and documents, and to take such other actions (including the payment of costs and expenses), in the name and on behalf of the Company, in each case, as any Authorized Person may determine to be necessary, desirable or appropriate to implement the purposes and intent

NAI-1522287543v2

LTL 0019189

of the foregoing resolutions, with the execution and delivery of any such agreement, instrument or document or taking of any such action by any Authorized Person to be conclusive evidence of such determination;

**FURTHER RESOLVED**, that the Authorized Persons be, and each of them hereby is, authorized and empowered to certify and furnish to any person or entity such copies of the resolutions set forth herein, and to certify to any person or entity that the resolutions set forth herein have been duly adopted by the Board, are in full force and effect and are in conformity with the Articles of Organization and Conversion of the Company and the Operating Agreement of the Company, as any Authorized Person may determine to be necessary, desirable or appropriate to implement the purposes and intent of the foregoing resolutions, with the certification and furnishing of such copies or the certification of such matters to be conclusive evidence of such determination; and

**FURTHER RESOLVED**, that, in the event that any Authorized Person determines a specific form of resolutions is necessary or advisable in connection with the implementation of the purposes and intent of the foregoing resolutions, resolutions in such form be, and they hereby are, adopted by the Board as if such resolutions were expressly set forth herein and that any Authorized Person be, and each of them hereby is, authorized and empowered to certify and furnish to any person or entity copies of such resolutions, and to certify to any person or entity that such resolutions have been duly adopted by the Board, are in full force and effect and are in conformity with the Articles of Organization and Conversion of the Company and the Operating Agreement of the Company, with the certification and furnishing of such copies or the certification of such matters to be conclusive evidence of such determination.

### Ratification

**RESOLVED**, that all actions taken in the name and on behalf of the Company prior to the adoption of these resolutions that would have been authorized by the foregoing resolutions had they been taken after the adoption of these resolutions be, and each of them hereby is, approved, adopted, ratified and confirmed in all respects.

### (ADJOURNMENT)

Having no other business to consider, Mr. Kim thanked the participants for their participation, and the meeting was adjourned.

*[Signature]*

John Kim,
Chief Legal Officer and Secretary

NAI-1522287543v2