# Exhibit 1

1 | Joseph D. Satterley (C.S.B. #286890)
jsatterley@kazanlaw.com
2 | Denyse F. Clancy (C.S.B. #255276)
dclancy@kazanlaw.com
3 | Ian A. Rivamonte (C.S.B. #232663)
irivamonte@kazanlaw.com
4 | KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation
5 | Jack London Market
55 Harrison Street, Suite 400
6 | Oakland, California 94607
Telephone: (510) 302-1000
7 | Facsimile: (510) 835-4913

8 | Attorneys for Plaintiff

FILED
ALAMEDA COUNTY

SEP 2 4 2019

CLERK OF THE SUPERIOR COURT
By _____
Deputy

9 | SUPERIOR COURT OF CALIFORNIA

10 | COUNTY OF ALAMEDA

| | |
|---|---|
| 11 SUSAN JEAN BADER, on behalf of the successors in interest to PATRICIA 12 SCHMITZ, | Case No. RG18923615 |
| 13          Plaintiff, | Assigned for All Purposes to Judge Frank Roesch, Department 17 |
| 14      v. | [PROPOSED] AMENDED JUDGMENT ON SPECIAL VERDICT |
| 15 JOHNSON & JOHNSON, et al., | Case Filed:    October 5, 2018 Trial Date:    April 8, 2019 |
| 16          Defendants. | |

18 | This action came on for trial in Department 17 of the above-entitled Court, the Honorable

19 | Frank Roesch presiding. The parties appeared by their respective counsel of record. Plaintiff is

20 | Patricia Schmitz. Defendants are Colgate-Palmolive Company, Johnson & Johnson, and Johnson

21 | & Johnson Consumer Inc.

22 | A jury of 12 persons was impaneled and sworn. Witnesses were sworn and testified.

23 | Documentary evidence was admitted. The jury was instructed on the law. The cause was

24 | submitted to the jury with directions to return a verdict on special issues. The jury deliberated and,

25 | on June 12, 2019, returned its verdict. A true and correct endorsed-filed copy of the verdict is

26 | attached as **Exhibit 1** hereto and is incorporated fully herein by reference.

27 | The jury found in favor of Patricia Schmitz, and against Colgate-Palmolive Company,

28 | Johnson & Johnson, and Johnson & Johnson Consumer Inc., on the following causes of action:

*(left margin, rotated)* Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1   (1) Negligence; (2) Strict Product Liability – Design Defect; (3) Strict Product Liability – Failure

2   to Warn; and (4) Concealment.

3          On the cause of action for Intentional Misrepresentation against Johnson & Johnson and

4   Johnson & Johnson Consumer Inc., the jury was unable to reach a verdict. On June 12, 2019,

5   Plaintiff voluntarily dismissed that cause of action against those defendants with prejudice. The

6   Court thereafter entered in the minutes that Plaintiff has dismissed the cause of action for

7   Intentional Misrepresentation as to both Johnson & Johnson and Johnson & Johnson Consumer

8   Inc. with prejudice.

9          On the claim for punitive damages against Johnson & Johnson and Johnson & Johnson

10  Consumer Inc., the jury was unable to reach a verdict. On June 19, 2019, the Court declared a

11  partial mistrial and ordered a partial retrial as to (1) whether Johnson & Johnson and Johnson &

12  Johnson Consumer Inc. acted with malice, fraud, or oppression in the conduct upon which the jury

13  based their finding of liability (Question No. 24 of the Special Verdict Form), (2) whether the

14  conduct constituting malice, fraud, or oppression was committed or authorized by one or more of

15  those defendants' officers, directors, or managing agents (Question No. 25 of the Special Verdict

16  Form), and (3) should the jury answer in the affirmative to both these issues, the amount of

17  punitive damages. A true and correct endorsed-filed copy of the order is attached as **Exhibit 2**

18  hereto and incorporated fully herein by reference.

19         On July 12, 2019, Plaintiff filed her voluntary dismissal with prejudice of her claim for

20  punitive damages against Johnson & Johnson and Johnson & Johnson Consumer Inc. A true and

21  correct endorsed-filed copy of the dismissal is attached as **Exhibit 3** hereto and incorporated fully

22  herein by reference.

23         It is now appearing by reason of said verdict, and by reason of this Court's orders on the

24  parties' post-trial motions regarding the fraud finding against Colgate Palmolive Company, the

25  judgment, applicability of Proposition 51, settlement-related credits, and costs of suit, that Plaintiff

26  Patricia Schmitz is entitled to judgment against Defendants Colgate-Palmolive Company, Johnson

27  & Johnson, and Johnson & Johnson Consumer Inc., jointly and severally, as follows:

28         Defendants Colgate-Palmolive Company, Johnson & Johnson, and Johnson & Johnson

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1751242.3

2

(Proposed) Amended Judgment on Special Verdict

1  Consumer Inc. are initially jointly and severally liable for all of Plaintiff's economic and non-

2  economic damages in the amount of $12,003,006. That amount consists of the following damages

3  that the jury found, all of which are subject to joint and several liability based on each defendant's

4  status as an intentional tortfeasor (per the jury's finding of liability for intentional concealment):

5      •    $150,000 for past medical expenses;

6      •    $75,000 for future medical expenses;

7      •    $1,287,552 for past and future income loss;

8      •    $490,454 for past and future household services;

9      •    $3,500,000 for past noneconomic harm; and

10     •    $6,500,000 for future noneconomic harm.

11     But Defendants Colgate-Palmolive Company, Johnson & Johnson, and Johnson & Johnson

12 are entitled to a settlement-related credit in the amount of $900,000.

13     And Plaintiff is entitled to costs of suit in the amount of $380,755.49.

14     NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that said Plaintiff

15 Patricia Schmitz recovers from Defendants Colgate-Palmolive Company, Johnson & Johnson, and

16 Johnson & Johnson Consumer Inc. the sum of **$11,483,761.49** with interest thereon at the rate of

17 10 percent per annum from the date of entry of this judgment until paid.

18     This Court retains jurisdiction to determine appropriate judgment credits and enforce

19 settlement agreements until further order of the Court. Additionally, there shall be no double-

20 recovery of the damages and costs for which Colgate-Palmolive Company, Johnson & Johnson,

21 and Johnson & Johnson Consumer Inc. are jointly and severally liable.

22     This judgment is entered nunc pro tunc to July 12, 2019.

23

24 DATED: Sept 24, 2019

25

26           _Frank Roesch_

27           Judge Frank Roesch

28

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1751242.3

3

(Proposed) Amended Judgment on Special Verdict

## PROOF OF SERVICE

*Patricia Schmitz v. Johnson & Johnson, et al.*
**Alameda County Superior Court Case No. RG18923615**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Alameda, State of California. My business address is Jack London Market, 55 Harrison Street, Suite 400, Oakland, CA 94607.

On September 23, 2019, I served true copies of the following document(s) described as:

**[PROPOSED] AMENDED JUDGMENT ON SPECIAL VERDICT**

on the interested parties in this action as follows:

### SEE ATTACHED SERVICE LIST

**BY ELECTRONIC SERVICE:** I electronically served the document(s) described above via File & ServeXpress, on the recipients designated on the Transaction Receipt located on the File & ServeXpress website (https://secure.fileandservexpress.com) pursuant to the Court Order establishing the case website and authorizing service of documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on September 23, 2019, at Oakland, California.

Kristine Harrison

---

*Kazan, McClain, Satterley & Greenwood*
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1

1

**SERVICE LIST**

2

BARNES & THORNBURG LLP
2029 Century Park East, Suite 300
Los Angeles  CA 90067
Telephone: (310)284-3880
Facsimile: (310)284-3894
FOR: JOHNSON & JOHNSON , JOHNSON & JOHNSON CONSUMER INC. sii  JOHNSON & JOHNSON CONS COMPANIES , JOHNSON & JOHNSON CONSUMER, INC.

DENTONS US LLP
One Market Plaza
Spear Tower, 24 th Floor
San Francisco  CA 94105
Telephone: (415)267-4000
Facsimile: (415)267-4198
FOR: IMERYS TALC AMERICA, INC. fka LUZENAC AMERICA, INC., fka CYPRUS TALC, IMERYS TALC AMERICA, INC. fka LUZENAC AMERICA sii CYPR WINDSOR MINERAL, IMERYS TALC AMERICA, INC. fka LUZENAC AMERICA sii CYPRUS IND MINERALS , IMERYS TALC AMERICA, INC. fka LUZENAC AMERICA sii CYPRUS MINES CORP, IMERYS TALC VERMONT, INC.

FOLEY & MANSFIELD, PLLP
300 Lakeside Drive
Suite 1900
Oakland CA 94612
Telephone: 510-590-9500
Facsimile: 510-590-9595
FOR: COLGATE-PALMOLIVE CO.

HAWKINS PARNELL  & YOUNG LLP
345 California Street
Suite 2850
San Francisco CA 94104-2606
Telephone: 415-766-3200
Facsimile: 415-766-3250
FOR: AVON PRODUCTS, INC.

KING & SPALDING LLP
633 West  5th Street, Suite 1700
Suite 1700
Los Angeles  CA 90071
Telephone: 213-443-4355
Facsimile: 213-443-4310
FOR: JOHNSON & JOHNSON , JOHNSON & JOHNSON CONSUMER INC. sii  JOHNSON & JOHNSON CONS COMPANIES , JOHNSON & JOHNSON CONSUMER, INC.

KIRKLAND & ELLIS LLP
333 South Hope Street, 29th Floor
Los Angeles CA 90071
Telephone: 213-680-8400
Facsimile: 213-680-8500
FOR: JOHNSON & JOHNSON , JOHNSON & JOHNSON CONSUMER INC. sii  JOHNSON & JOHNSON CONS COMPANIES

LEWIS BRISBOIS BISGAARD & SMITH LLP
333 Bush Street
Suite 1100
San Francisco CA 94104
Telephone: (415) 362-2580
Facsimile: (415) 434-0882
FOR: AVON PRODUCTS, INC.

ORRICK, HERRINGTON, & SUTCLIFFE LLP
51 West 52nd Street
New York  NY 10019-6142
Telephone: (212)506-3752
FOR: JOHNSON & JOHNSON , JOHNSON & JOHNSON CONSUMER INC. sii  JOHNSON & JOHNSON CONS COMPANIES , JOHNSON & JOHNSON CONSUMER, INC.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1   QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
2   50 California Street, 22nd Floor
    San Francisco  CA 94111
3   Telephone: (415)875-6600
    Facsimile: (415)875-6700
4   FOR: COLGATE-PALMOLIVE CO.

SPANOS PRZETAK
475 14th St. Ste. 550
Oakland CA 94612
Telephone: (510) 250-0200
Facsimile: (510) 380-6354
FOR: DESIGNATED DEFENSE COUNSEL

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

# Exhibit 1

Case 23-01092-MBK    Doc 54-2    Filed 04/17/23    Entered 04/17/23 16:54:04    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 9 of 63

21047836

ORIGINAL

## Verdict Form

*Patricia Schmitz v. Johnson & Johnson; Johnson & Johnson Consumer, Inc.;*
*and Colgate-Palmolive Company*
**Alameda County Superior Court Case No. RG18923615**

FILED
ALAMEDA COUNTY

JUN 1 2 2019

CLERK OF THE SUPERIOR COURT

By _____

Deputy

**Negligence**

1.    Was defendant negligent?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes ll | No l |
| Johnson & Johnson | Yes ll | No l |
| Johnson & Johnson Consumer Inc. | Yes ll | No l |

*If "Yes" as to any defendant  answer the next question as to that defendant.  If "No" as to all*
*defendants, go to question 3.*

2.    Was defendant's negligence a substantial factor in contributing to Patricia Schmitz' risk
of developing mesothelioma?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes ll | No l |
| Johnson & Johnson | Yes ll | No l |
| Johnson & Johnson Consumer Inc. | Yes ll | No l |

*Answer the next question.*

**Strict Product Liability – Design Defect**

3.    Did defendant's product fail to perform as safely as an ordinary consumer would expect
when used in an intended or a reasonably foreseeable way?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes ll | No l |
| Johnson & Johnson | Yes ll | No l |
| Johnson & Johnson Consumer Inc. | Yes ll | No l |

*If "Yes" as to any defendant answer the next question as to that defendant.  If "No" as to all*
*defendants, go to question 5.*

1734695.1                                1

4.  Was defendant's product's failure to perform safely a substantial factor contributing to
    Patricia Schmitz' risk of developing mesothelioma?

    Colgate-Palmolive Company              Yes |l      No _l_

    Johnson & Johnson                      Yes |l      No _l_

    Johnson & Johnson Consumer Inc.        Yes |l      No _l

*Answer the next question.*

### Strict Product Liability – Failure to Warn

5.  Did defendant's product have potential risks that were known or knowable in light of the
    scientific and medical knowledge that was generally accepted in the scientific community
    available at the time of manufacture, distribution or sale?

    Colgate-Palmolive Company              Yes |l      No _l_

    Johnson & Johnson                      Yes |l      No _l_

    Johnson & Johnson Consumer Inc.        Yes |l      No _l_

*If "Yes" as to any defendant answer the next question as to that defendant.  If "No" as to all
defendants, go to question 10.*

6.  Did the potential risks present a substantial danger to persons using the product in an
    intended or reasonably foreseeable way?

    Colgate-Palmolive Company              Yes |l      No _l_

    Johnson & Johnson                      Yes |l      No _l_

    Johnson & Johnson Consumer Inc.        Yes |l      No _l_

*If "Yes" as to any defendant answer the next question as to that defendant.  If "No" as to all
defendants, go to question 10.*

7.    Would ordinary consumers have failed to recognize the potential risks of defendant's
product?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes ‖ | No / |
| Johnson & Johnson | Yes ‖ | No ( |
| Johnson & Johnson Consumer Inc. | Yes ‖ | No ( |

*If "Yes" as to any defendant answer the next question as to that defendant. If "No" as to all defendants, go to question 10.*

8.    Did defendant fail to adequately warn of the potential risks?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes ‖ | No ( |
| Johnson & Johnson | Yes (( | No ( |
| Johnson & Johnson Consumer Inc. | Yes ‖ | No ( |

*If "Yes" as to any defendant answer the next question as to that defendant. If "No" as to all defendants, go to question 10.*

9.    Was the lack of sufficient warning a substantial factor in contributing to Patricia Schmitz'
risk of developing mesothelioma?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes ‖ | No ( |
| Johnson & Johnson | Yes ‖ | No ( |
| Johnson & Johnson Consumer Inc. | Yes (( | No ( |

*Answer the next question.*

## Concealment

10.  Did defendant disclose some facts to Patricia Schmitz, but intentionally failed to disclose other facts, making the disclosure deceptive?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes 10 | No 1 |
| Johnson & Johnson | Yes 10 | No 1 |
| Johnson & Johnson Consumer Inc. | Yes 10 | No 1 |

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to question 14.*

11.  Did defendant intend to deceive Patricia Schmitz by concealing the fact?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes 11 | No 1 |
| Johnson & Johnson | Yes 11 | No 1 |
| Johnson & Johnson Consumer Inc. | Yes 11 | No 1 |

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to question 14.*

12.  Had the omitted information been disclosed, would Patricia Schmitz reasonably have behaved differently?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes 11 | No 1 |
| Johnson & Johnson | Yes 11 | No 1 |
| Johnson & Johnson Consumer Inc. | Yes 11 | No 1 |

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to question 14.*

13. Was defendant's concealment a substantial factor in contributing to Patricia Schmitz' risk of developing mesothelioma?

Colgate-Palmolive Company          Yes _9_      No _3_

Johnson & Johnson                  Yes _9_      No _3_

Johnson & Johnson Consumer Inc.    Yes _9_      No _3_

*Answer the next question.*

## Intentional Misrepresentation

14. Did defendant make a false representation of a fact to Patricia Schmitz?

Johnson & Johnson                  Yes _9_      No _3_

Johnson & Johnson Consumer Inc.    Yes _9_      No _3_

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question 19.*

15. Did defendant know the representation was false, or did the defendant make the representation recklessly and without regard for its truth?

Johnson & Johnson                  Yes _7_      No _5_

Johnson & Johnson Consumer Inc.    Yes _7_      No _5_   IMPASSE

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question 19.*

16. Did defendant intend that Patricia Schmitz rely on the representation?

Johnson & Johnson                  Yes ___      No ___

Johnson & Johnson Consumer Inc.    Yes ___      No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question 19.*

17.    Did Patricia Schmitz reasonably rely on defendant's representation?

    Johnson & Johnson               Yes ___      No ___

    Johnson & Johnson Consumer Inc.     Yes ___      No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question 19.*

18.    Was Patricia Schmitz' reliance on defendant's representation a substantial factor in contributing to Patricia Schmitz's risk of developing mesothelioma?

    Johnson & Johnson               Yes ___      No ___

    Johnson & Johnson Consumer Inc.     Yes ___      No ___

*If you answered "YES" as to any defendant for Questions 2, 4, 9, 13, or 18, answer the next question. If you answered "NO" for all defendants as to Questions 2, 4, 9, 13, or 18, the presiding juror should sign and date the form and return it to the Court Attendant.*

### Economic Damages

19.    A.    As a result of her mesothelioma, what is the total amount of Patricia Schmitz' economic damages for past medical expenses?

$      *150,000*

    B.    As a result of her mesothelioma, what is the total amount of Patricia Schmitz' economic damages for future medical expenses?

$      *75,000*

*Answer the next question.*

20.    As a result of her mesothelioma, what is the total amount of Patricia Schmitz' economic damages for the present value of past and future income loss?

$      *1,287,552*

21.    As a result of her mesothelioma, what is the total amount of Patricia Schmitz' economic damages for the present value of past and future household services?

$      *490,454*

**Plaintiff Patricia Schmitz**

22.    A.    What are Patricia Schmitz' damages for past physical pain, mental suffering, loss of enjoyment of life, physical impairment, inconvenience, anxiety, and emotional distress, disfigurement, and humiliation?

$   3.5 Million

B.    What are Patricia Schmitz' damages for future physical pain, mental suffering, loss of enjoyment of life, physical impairment, inconvenience, anxiety, and emotional distress, disfigurement, and humiliation?

$   6.5 Millions

*Answer the next question.*

23.    What percentage of responsibility, if any, for Patricia Schmitz' mesothelioma do you assign to each of the following?  (The total must equal 100%):

| | | |
|---|---|---|
| Avon Products, Inc. | 20 | % |
| Colgate-Palmolive Company | 40 | % |
| Johnson & Johnson | 30 | % |
| Johnson & Johnson Consumer Inc. | 10 | % |
| TOTAL | 100% | |

*If you answered "Yes," as to defendant(s) for question 2, 4, 9, 13, or 18, then answer question 24 as to that defendant(s).  If you did not answer "Yes" as to any defendant in question 2, 4, 9, 13, or 18, then answer no further questions and have the Presiding Juror sign and date this form.*

24.    Has the plaintiff proven by clear and convincing evidence that defendant acted with malice, fraud or oppression in the conduct upon which you base your finding of liability?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes 1 | No 11 |
| Johnson & Johnson | Yes 6 | No 6 |
| Johnson & Johnson Consumer Inc. | Yes 5 | No 7 |

IMPASSE

*If "Yes," as to any defendant answer the next question as to that defendant.*

25.    Do you find by clear and convincing evidence that the conduct constituting malice, oppression, or fraud was committed or authorized by one of more of the officers, directors, or managing agents of defendant, acting on behalf of defendant?

Colgate-Palmolive Company              Yes ____     No ____

Johnson & Johnson                      Yes ____     No ____

Johnson & Johnson Consumer Inc.        Yes ____     No ____

*Please have the presiding juror sign and date this form and return it to the Court Attendant.*

DATED: __June 12, 2019__          __Carmen Best_____

                                  Presiding Juror

# Exhibit 2

Case 23-01092-MBK   Doc 54-2   Filed 04/17/23   Entered 04/17/23 16:54:04   Desc
Exhibit Exhibits 1-4 to Satterley Declaration   Page 18 of 63

21047899

1 | Joseph D. Satterley (C.S.B. #286890)
Denyse F. Clancy (C.S.B. #255276)
2 | Ian A. Rivamonte (C.S.B. #232663)
  irivamonte@kazanlaw.com
3 | KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation
4 | Jack London Market
55 Harrison Street, Suite 400
5 | Oakland, California 94607
Telephone: (510) 302-1000
6 | Facsimile: (510) 835-4913

F I L E D
ALAMEDA COUNTY

JUN 19 2019

CLERK OF THE SUPERIOR COURT
By_____
                    Deputy

7 | Attorneys for Plaintiff

8 | SUPERIOR COURT OF CALIFORNIA

9 | COUNTY OF ALAMEDA

10 | PATRICIA SCHMITZ,

11 |              Plaintiff,

12 |      v.

13 | JOHNSON & JOHNSON, et al.,

14 |              Defendants.

Case No. RG18923615

Assigned for All Purposes to
Judge Frank Roesch, Department 17

[PROPOSED] ORDER GRANTING
PARTIAL RETRIAL

Case Filed:   October 5, 2018
Trial Date:   April 8, 2019

16 |     Plaintiff Patricia Schmitz's application for partial retrial came on for hearing on June 18, 2019

17 | in Department 17 of the above-entitled court before Judge Frank Roesch. Plaintiff and Defendants

18 | Johnson & Johnson and Johnson & Johnson Consumer Inc. appeared through their respective counsel

19 | of record. Having considered the evidence and the oral and written argument of the parties, the Court

20 | hereby rules as follows:

21 |     1.    This Court accepts the special verdicts on the following causes of action for which the

22 | jury was able to reach as to Defendants Colgate-Palmolive Company, Johnson & Johnson, and

23 | Johnson & Johnson Consumer Inc.: (i) Negligence; (ii) Strict Product Liability – Design Defect; (iii)

24 | Strict Product Liability – Failure to Warn; and (iv) Concealment. This Court also accepts the special

25 | verdicts on Plaintiff's award of compensatory damages against Colgate-Palmolive Company, Johnson

26 | & Johnson, and Johnson & Johnson Consumer Inc.

27 |     2.    This Court declares a partial mistrial as to the issue of whether Defendants Johnson &

28 | Johnson and Johnson & Johnson Consumer Inc. acted with malice, fraud, or oppression in the conduct

*Kazan, McClain, Satterley & Greenwood*
*A Professional Law Corporation*
*Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607*
*(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com*

1 | upon which the jury based their finding of liability, as set forth in Question No. 24 of the Special

2 | Verdict Form, attached hereto as Exhibit "A."

3 |     3.       The Court orders a partial retrial as to the issue of whether Defendants Johnson &

4 | Johnson and Johnson & Johnson Consumer Inc. acted with malice, fraud, or oppression in the conduct

5 | upon which the jury based their finding of liability, as set forth in Question No. 24 of the Special

6 | Verdict Form, and whether the conduct constituting malice, fraud, or oppression was committed or

7 | authorized by one or more of Defendants' officers, directors, or managing agents (Question No. 25 of

8 | the Special Verdict Form), and should the jury answer in the affirmative to both these issues, the

9 | amount of punitive damages.

10 |     4.       The Court reserves judgment as to Johnson & Johnson and Johnson & Johnson

11 | Consumer, Inc. until the issues set forth in paragraph number 3 above are resolved.

12 | **IT IS SO ORDERED.**

13 |

14 | DATED: June 1?, 2019

15 |

16 | *Frank Roesch* (signature)

17 | Judge Frank Roesch

18 |

*Kazan, McClain, Satterley & Greenwood*
*A Professional Law Corporation*
*Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607*
*(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com*

# Exhibit A

21047836

**ORIGINAL**

## Verdict Form

*Patricia Schmitz v. Johnson & Johnson; Johnson & Johnson Consumer, Inc.;*
*and Colgate-Palmolive Company*
**Alameda County Superior Court Case No. RG18923615**

FILED
ALAMEDA COUNTY

JUN 1 2 2019

CLERK OF THE SUPERIOR COURT
By_____
                              Deputy

### Negligence

1.      Was defendant negligent?

   Colgate-Palmolive Company              Yes $\text{II}$       No $\text{I}$

   Johnson & Johnson                      Yes $\text{II}$       No $\text{I}$

   Johnson & Johnson Consumer Inc.        Yes $\text{II}$       No $\text{I}$

*If "Yes" as to any defendant answer the next question as to that defendant. If "No" as to all defendants, go to question 3.*

2.      Was defendant's negligence a substantial factor in contributing to Patricia Schmitz' risk of developing mesothelioma?

   Colgate-Palmolive Company              Yes $\text{II}$       No $\text{I}$

   Johnson & Johnson                      Yes $\text{II}$       No $\text{I}$

   Johnson & Johnson Consumer Inc.        Yes $\text{II}$       No $\text{I}$

*Answer the next question.*

### Strict Product Liability – Design Defect

3.      Did defendant's product fail to perform as safely as an ordinary consumer would expect when used in an intended or a reasonably foreseeable way?

   Colgate-Palmolive Company              Yes $\text{II}$       No $\text{I}$

   Johnson & Johnson                      Yes $\text{II}$       No $\text{I}$

   Johnson & Johnson Consumer Inc.        Yes $\text{II}$       No $\text{I}$

*If "Yes" as to any defendant answer the next question as to that defendant. If "No" as to all defendants, go to question 5.*

1734695.1                                      1

4.     Was defendant's product's failure to perform safely a substantial factor contributing to Patricia Schmitz' risk of developing mesothelioma?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes ‖ | No ∣ |
| Johnson & Johnson | Yes ‖ | No ∣ |
| Johnson & Johnson Consumer Inc. | Yes ‖ | No ∣ |

*Answer the next question.*

## Strict Product Liability – Failure to Warn

5.     Did defendant's product have potential risks that were known or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community available at the time of manufacture, distribution or sale?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes ‖ | No ∣ |
| Johnson & Johnson | Yes ‖ | No ∣ |
| Johnson & Johnson Consumer Inc. | Yes ‖ | No ∣ |

*If "Yes" as to any defendant answer the next question as to that defendant. If "No" as to all defendants, go to question 10.*

6.     Did the potential risks present a substantial danger to persons using the product in an intended or reasonably foreseeable way?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes ‖ | No ∣ |
| Johnson & Johnson | Yes ‖ | No ∣ |
| Johnson & Johnson Consumer Inc. | Yes ‖ | No ∣ |

*If "Yes" as to any defendant answer the next question as to that defendant. If "No" as to all defendants, go to question 10.*

7.    Would ordinary consumers have failed to recognize the potential risks of defendant's
product?

Colgate-Palmolive Company            Yes __ll__        No __/__

Johnson & Johnson                    Yes __ll__        No __l__

Johnson & Johnson Consumer Inc.      Yes __ll__        No __l__

*If "Yes" as to any defendant answer the next question as to that defendant. If "No" as to all
defendants, go to question 10.*

8.    Did defendant fail to adequately warn of the potential risks?

Colgate-Palmolive Company            Yes __ll__        No __l__

Johnson & Johnson                    Yes __ll__        No __l__

Johnson & Johnson Consumer Inc.      Yes __ll__        No __l__

*If "Yes" as to any defendant answer the next question as to that defendant. If "No" as to all
defendants, go to question 10.*

9.    Was the lack of sufficient warning a substantial factor in contributing to Patricia Schmitz'
risk of developing mesothelioma?

Colgate-Palmolive Company            Yes __ll__        No __l__

Johnson & Johnson                    Yes __ll__        No __l__

Johnson & Johnson Consumer Inc.      Yes __ll__        No __l__

*Answer the next question.*

### Concealment

10. Did defendant disclose some facts to Patricia Schmitz, but intentionally failed to disclose other facts, making the disclosure deceptive?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes 10 | No 2 |
| Johnson & Johnson | Yes 10 | No 2 |
| Johnson & Johnson Consumer Inc. | Yes 10 | No 2 |

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to question 14.*

11. Did defendant intend to deceive Patricia Schmitz by concealing the fact?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes 11 | No 1 |
| Johnson & Johnson | Yes 11 | No 1 |
| Johnson & Johnson Consumer Inc. | Yes 11 | No 1 |

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to question 14.*

12. Had the omitted information been disclosed, would Patricia Schmitz reasonably have behaved differently?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes 11 | No 1 |
| Johnson & Johnson | Yes 11 | No 1 |
| Johnson & Johnson Consumer Inc. | Yes 11 | No 1 |

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to question 14.*

13.    Was defendant's concealment a substantial factor in contributing to Patricia Schmitz' risk of developing mesothelioma?

Colgate-Palmolive Company               Yes 9        No 3

Johnson & Johnson                       Yes 9        No 3

Johnson & Johnson Consumer Inc.         Yes 9        No 3

*Answer the next question.*

**Intentional Misrepresentation**

14.    Did defendant make a false representation of a fact to Patricia Schmitz?

Johnson & Johnson                       Yes 9        No 3

Johnson & Johnson Consumer Inc.         Yes 9        No 3

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question 19.*

15.    Did defendant know the representation was false, or did the defendant make the representation recklessly and without regard for its truth?

Johnson & Johnson                       Yes 7        No 5

Johnson & Johnson Consumer Inc.         Yes 7        No 5   [IMPASSE]

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question 19.*

16.    Did defendant intend that Patricia Schmitz rely on the representation?

Johnson & Johnson                       Yes ___      No ___

Johnson & Johnson Consumer Inc.         Yes ___      No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question 19.*

17.   Did Patricia Schmitz reasonably rely on defendant's representation?

Johnson & Johnson                                    Yes ____      No ____

Johnson & Johnson Consumer Inc.                      Yes ____      No ____

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all
defendants, go to the instructions prior to question 19.*

18.   Was Patricia Schmitz' reliance on defendant's representation a substantial factor in
contributing to Patricia Schmitz's risk of developing mesothelioma?

Johnson & Johnson                                    Yes ____      No ____

Johnson & Johnson Consumer Inc.                      Yes ____      No ____

*If you answered "YES" as to any defendant for Questions 2, 4, 9, 13, or 18, answer the next
question. If you answered "NO" for all defendants as to Questions 2, 4, 9, 13, or 18, the
presiding juror should sign and date the form and return it to the Court Attendant.*

### Economic Damages

19.   A.   As a result of her mesothelioma, what is the total amount of Patricia Schmitz'
economic damages for past medical expenses?

$ _____ 150,000 _____

B.   As a result of her mesothelioma, what is the total amount of Patricia Schmitz'
economic damages for future medical expenses?

$ _____ 75,000 _____

*Answer the next question.*

20.   As a result of her mesothelioma, what is the total amount of Patricia Schmitz' economic
damages for the present value of past and future income loss?

$ _____ 1,287,552 _____

21.   As a result of her mesothelioma, what is the total amount of Patricia Schmitz' economic
damages for the present value of past and future household services?

$ _____ 490,454 _____

**Plaintiff Patricia Schmitz**

22.   A.   What are Patricia Schmitz' damages for past physical pain, mental suffering, loss of enjoyment of life, physical impairment, inconvenience, anxiety, and emotional distress, disfigurement, and humiliation?

$___3.5 Million_____

B.   What are Patricia Schmitz' damages for future physical pain, mental suffering, loss of enjoyment of life, physical impairment, inconvenience, anxiety, and emotional distress, disfigurement, and humiliation?

$___6.5 Millions_____

*Answer the next question.*

23.   What percentage of responsibility, if any, for Patricia Schmitz' mesothelioma do you assign to each of the following?  (The total must equal 100%):

| | | |
|---|---|---|
| Avon Products, Inc. | 20 | % |
| Colgate-Palmolive Company | 40 | % |
| Johnson & Johnson | 30 | % |
| Johnson & Johnson Consumer Inc. | 10 | % |
| TOTAL | 100% | |

*If you answered "Yes," as to defendant(s) for question 2, 4, 9, 13, or 18, then answer question 24 as to that defendant(s).  If you did not answer "Yes" as to any defendant in question 2, 4, 9, 13, or 18, then answer no further questions and have the Presiding Juror sign and date this form.*

24.   Has the plaintiff proven by clear and convincing evidence that defendant acted with malice, fraud or oppression in the conduct upon which you base your finding of liability?

| | | |
|---|---|---|
| Colgate-Palmolive Company | Yes 1 | No 11 |
| Johnson & Johnson | Yes 6 | No 6 |
| Johnson & Johnson Consumer Inc. | Yes 5 | No 7 |

IMPASSE

*If "Yes," as to any defendant answer the next question as to that defendant.*

25.   Do you find by clear and convincing evidence that the conduct constituting malice,
      oppression, or fraud was committed or authorized by one of more of the officers,
      directors, or managing agents of defendant, acting on behalf of defendant?

|  |  |  |
|---|---|---|
| Colgate-Palmolive Company | Yes ___ | No ___ |
| Johnson & Johnson | Yes ___ | No ___ |
| Johnson & Johnson Consumer Inc. | Yes ___ | No ___ |

*Please have the presiding juror sign and date this form and return it to the Court Attendant.*

DATED: _June 12, 2019_

_____Carmen Best_____
Presiding Juror

**PROOF OF SERVICE**

*Patricia Schmitz v. Johnson & Johnson, et al.*
**Alameda County Superior Court Case No. RG18923615**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Alameda, State of California. My business address is Jack London Market, 55 Harrison Street, Suite 400, Oakland, CA 94607.

On June 21, 2019, I served true copies of the following document(s) described as:

**NOTICE OF ENTRY OF ORDER GRANTING PARTIAL RETRIAL**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY ELECTRONIC SERVICE:** I electronically served the document(s) described above via File & ServeXpress, on the recipients designated on the Transaction Receipt located on the File & ServeXpress website (https://secure.fileandservexpress.com) pursuant to the Court Order establishing the case website and authorizing service of documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 21, at Oakland, California.

Paula Katayanagi

1739566.1

2

Notice of Entry of Order Granting Partial Retrial

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

## SERVICE LIST

1

2  BARNES & THORNBURG LLP                    KING & SPALDING LLP
   2029 Century Park East, Suite 300         633 West 5th Street, Suite 1700
3  Los Angeles CA 90067                      Suite 1700
   Telephone: (310)284-3880                  Los Angeles CA 90071
4  Facsimile: (310)284-3894                  Telephone: 213-443-4355
   FOR: JOHNSON & JOHNSON , JOHNSON &        Facsimile: 213-443-4310
5  JOHNSON CONSUMER INC. sii JOHNSON         FOR: JOHNSON & JOHNSON , JOHNSON &
   & JOHNSON CONS COMPANIES ,                JOHNSON CONSUMER INC. sii JOHNSON
6  JOHNSON & JOHNSON CONSUMER, INC.          & JOHNSON CONS COMPANIES ,
                                             JOHNSON & JOHNSON CONSUMER, INC.
7

8  KIRKLAND & ELLIS LLP                      SPANOS PRZETAK
   333 South Hope Street, 29th Floor         475 14th St. Ste. 550
9  Los Angeles, CA 90071                     Oakland CA 94612
   Tel: 213.680.8400                         Telephone: (510) 250-0200
10 Fax: 231.680.8500                         Facsimile: (510) 380-6354
   FOR: JOHNSON & JOHNSON , JOHNSON &        FOR: DESIGNATED DEFENSE COUNSEL
11 JOHNSON CONSUMER INC. sii JOHNSON
   & JOHNSON CONS COMPANIES ,
12 JOHNSON & JOHNSON CONSUMER, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1739566.1

# Exhibit 3

CIV-110

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Ian A. Rivamonte (C.S.B. #128225)
Kazan McClain Satterley & Greenwood, A Professional Law Corporation
55 Harrison Street, Suite 400
Oakland, CA 94607

TELEPHONE NO.: (510) 302-1000    FAX NO. *(Optional):* (510) 835-4913
E-MAIL ADDRESS *(Optional):* irivamonte@kazanlaw.com
ATTORNEY FOR *(Name):* Plaintiff Patricia Schmitz

FOR COURT USE ONLY

ENDORSED
FILED
ALAMEDA COUNTY

JUL 1 2 2019

CLERK OF THE SUPERIOR COURT
By: *Lian Sigel-kwong*    *Deputy*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland, 94612
BRANCH NAME: Rene C. Davidson Alameda County Courthouse

PLAINTIFF/PETITIONER: Patricia Schmitz

DEFENDANT/RESPONDENT: Johnson & Johnson, et al.

| REQUEST FOR DISMISSAL | CASE NUMBER: RG18923615 |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please **dismiss** this action as follows:
   a. (1) ☒ With prejudice    (2) ☐ Without prejudice
   b. (1) ☐ Complaint    (2) ☐ Petition
      (3) ☐ Cross-complaint filed by *(name):*                        on *(date):*
      (4) ☐ Cross-complaint filed by *(name):*                        on *(date):*
      (5) ☐ Entire action of all parties and all causes of action
      (6) ☒ Other *(specify):** Claim for punitive damages **ONLY** against Johnson & Johnson and Johnson & Johnson Consumer Inc.
      DUE TO HEALTH OF PLAINTIFF *IR*
2. *(Complete in all cases except family law cases.)*
   The court ☐ did ☒ did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed).*

Date: July 12, 2019

Ian A. Rivamonte
_____
(TYPE OR PRINT NAME OF ☒ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

▶ _____ (SIGNATURE)

*If dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for:
☒ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

**TO THE CLERK:** Consent to the above dismissal is hereby given.**
Date:

_____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY WITHOUT ATTORNEY)

▶ _____ (SIGNATURE)

** If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*
4. ☑ Dismissal entered as requested on *(date):* 7/12/19
5. ☐ Dismissal entered on *(date):*                    as to only *(name):*
6. ☐ Dismissal **not entered** as requested for the following reasons *(specify):*

7. a. ☐ Attorney or party without attorney notified on *(date):*
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
      ☐ a copy to be conformed    ☐ means to return conformed copy

Date: 7/12/19                    Clerk, by _____, Deputy

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 [Rev. Jan. 1, 2013]

**REQUEST FOR DISMISSAL**

Code of Civil Procedure, § 581 et seq.,
Gov. Code, § 68637(c); Cal. Rules of Court, rule 3.1390
www.courts.ca.gov

CIV-110

| | |
|---|---|
| PLAINTIFF/PETITIONER: Patricia Schmitz | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Johnson & Johnson, et al. | RG18923615 |

---

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or more in value by way of settlement, compromise, arbitration award, mediation settlement, or other means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until the lien is satisfied. (Gov. Code, § 68637.)

---

**Declaration Concerning Waived Court Fees**

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is (*check one below*):
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):* ☐ Yes   ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

_____        ▶ _____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                    (SIGNATURE)

American LegalNet, Inc.
www.FormsWorkFlow.com

# Exhibit 2

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 4

Office of the County Clerk
Alameda County Superior Court   -   Main
1225 Fallon Street, Room G4
Oakland, CA 94612

SUSAN JEAN BADER,
Plaintiff and Respondent,
v.
JOHNSON & JOHNSON et al.,
Defendants and Appellants.

A158868
Alameda County Super. Ct. No. RG18923615

### * * REMITTITUR * *

I, Charles D. Johnson, Clerk of the Court of Appeal of the State of California, for the First Appellate District, do hereby certify that the attached is a true and correct copy of the original opinion or decision entered in the above-entitled cause on December 23, 2022 and that this opinion has now become final.

___Appellant _x_Respondent to recover costs
___Each party to bear own costs
___Costs are not awarded in this proceeding
___See decision for costs determination

Witness my hand and the Seal of the Court affixed at my office this April 14, 2023.

Very truly yours,
Charles D. Johnson
Clerk of the Court

Deputy Clerk



rem1

Court of Appeal, First Appellate District
Charles D. Johnson, Clerk/Executive Officer
Electronically FILED on 4/14/2023 by C. Hoo, Deputy Clerk

# CALIFORNIA COURT OF APPEAL
## FIRST APPELLATE DISTRICT
## DIVISION FOUR

SUSAN JEAN BADER,
    Plaintiff and Respondent,
    v.
JOHNSON & JOHNSON et al.,
    Defendants and Appellants.

A158868
Alameda County
Sup. Ct. No. RG18923615

BY THE COURT:

    Appellants' "APPLICATION TO STAY THE
REMITTITUR," filed April 13, 2023, is denied.

    The California Supreme Court having denied the petitions
for review on April 12, 2023, the clerk of this court shall
concurrently file this order and issue the remittitur.  (Cal. Rules
of Court, rule 8.272(b)(1)(A).)

    (Brown, P.J., Streeter, J., and Goldman, J. joined in the
decision.)

Date:\_\_\_04/14/2023\_\_\_\_\_   \_\_\_\_Brown, P.J._____P.J.

# Exhibit 3

1  Joseph D. Satterley, Esq. (C.S.B. #286890)
      jsatterley@kazanlaw.com
2  Denyse F. Clancy, Esq. (C.S.B. #255276)
      dclancy@kazanlaw.com
3  Michael T. Stewart, Esq. (C.S.B. #253851)
      mstewart@kazanlaw.com
4  KAZAN, McCLAIN, SATTERLEY & GREENWOOD
   A Professional Law Corporation
5  Jack London Market
   55 Harrison Street, Suite 400
6  Oakland, California 94607
   Telephone: (510) 302-1000
7  Facsimile: (510) 835-4913

8  Attorneys for Plaintiffs

9               SUPERIOR COURT OF CALIFORNIA

10                  COUNTY OF ALAMEDA

11

12  ASHLEY LEIGH SCHMITZ;                    Case No. **RG 20048957**

13  ROBERT EVAN SCHMITZ;                     **COMPLAINT FOR WRONGFUL DEATH**

14  KATERINA GIANNIKOS, a minor, by her      **DEMAND FOR JURY TRIAL**
    Guardian Ad Litem SUSAN JEAN BADER;
15
    ARIANA GIANNIKOS, a minor, by her
16  Guardian Ad Litem SUSAN JEAN BADER;

17  ARGEREOS GIANNIKOS, a minor, by his
    Guardian Ad Litem SUSAN JEAN BADER;
18  and

19  FOTINI GIANNIKOS, a minor, by her
    Guardian Ad Litem SUSAN JEAN BADER;
20
            Plaintiffs,
21
        vs.
22
    JOHNSON & JOHNSON;
23
    JOHNSON & JOHNSON CONSUMER INC.
24  (sued individually and as successor-in-interest
    to JOHNSON & JOHNSON CONSUMER
25  COMPANIES, INC.);

26  COLGATE-PALMOLIVE COMPANY;

27  AVON PRODUCTS, INC.;

28  LONGS DRUG STORES CALIFORNIA,

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

ENDORSED
FILED
ALAMEDA COUNTY

JAN - 2 2020

CLERK OF THE SUPERIOR COURT
                        Deputy
MARGARET J. DOWNIE

L.L.C. (sued individually, as alter-ego of, and as successor-in-interest to LONGS DRUG STORES CALIFORNIA, INC.); and

FIRST DOE through ONE HUNDREDTH DOE,

                 Defendants.

## **GENERAL BACKGROUND**

### **I**.

**The Plaintiffs**: Decedent Patricia Schmitz (Patricia) died from malignant mesothelioma on July 14, 2019.  Patricia's mesothelioma was caused by her cumulative lifetime dose of asbestos, asbestiform fibers, and asbestiform talc – collectively referred to herein as asbestos – including the asbestos exposures for which Defendants bear responsibility.

Ashley Leigh Schmitz (Ashley) and Robert Evan Schmitz are Patricia's children.

Katerina Giannikos, Ariana Giannikos, Argereos Giannikos, and Fotini Giannikos – collectively referred to herein as the grandchildren – are Ashley's children, and Patricia's grandchildren.  The grandchildren are minors, and their guardian ad litem is Susan Jean Bader.  At the time of Patricia's death, the grandchildren resided for the previous 180 days in Patricia's household and were dependent on Patricia for one-half or more of their support.

Patricia has no other wrongful-death heirs.

### **II**.

**The Defendants**: All Defendants are listed in the case caption.  The true names of the Defendants sued as DOE's are unknown to Plaintiffs.  Each Defendant was the agent, employee, or joint venturer of its co-defendants, and was acting in the full course and scope of the agency, employment, or joint venture.

### **III**.

**Alternate Entities**: All Defendants are individually liable for their own defective products and wrongful conduct; and some Defendants are liable for the defective products and wrongful conduct of their alternate entities.  Each such Defendant is liable for the torts of each of its alternate entities because:

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

- there were express or implied agreements between the companies to transfer and assume the liabilities;

- the transactions between the companies amounted to a consolidation or merger;

- the purchasing company is a mere continuation of the seller;

- the transfer of assets to the purchasing company was for the fraudulent purpose of escaping liability for the seller's debts;

- strict products liability was transferred because (1) there was a virtual destruction of Plaintiffs' remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor has the ability to assume the original manufacturer's risk-spreading role, and (3) it is fair to require the successor to assume responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business; and

- the companies are alter egos because (1) there is such a unity of interest, ownership, and business operations between the companies that their separate personalities do not in reality exist, and (2) there would be an inequitable result if the torts in question were treated as those of one company alone.

The identities of the Defendants and their alternate entities are as follows:

| Defendants | Alternate Entities |
|---|---|
| JOHNSON & JOHNSON CONSUMER INC. | JOHNSON & JOHNSON CONSUMER COMPANIES, INC. |
| LONGS DRUG STORES CALIFORNIA, L.L.C. | LONGS DRUG STORES CALIFORNIA, INC. |

**IV**.

**Venue**: Venue is proper in Alameda County because Patricia's exposures to Defendants' asbestos, and Patricia's resulting mesothelioma and death, occurred in Alameda County.

**V**.

**The Products**: Defendants manufactured, sold, distributed, designed, formulated, developed standards for, prepared, processed, assembled, tested, listed, certified, marketed, advertised, packaged and labeled, and otherwise placed into the stream of commerce, talc products that contain asbestos, asbestiform fibers, and asbestiform talc.

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

**VI**.

**The Asbestos Exposures**: From Patricia's birth in 1957, through the recent past, Patricia was frequently, regularly, and directly exposed – all in California – to significant elevated levels of hazardous asbestos that was released from Defendants' talc products.  Patricia was exposed to all Defendants' asbestos in California, because of Defendants' asbestos-containing products that were sold in California, and because of Defendants' asbestos-related conduct that occurred in California.  At all times Defendants purposefully availed themselves of California, through marketing and sales.  Additionally, Defendants are "at home" in California, because California is one of their largest if not the largest markets in the United States.  Patricia's exposures to those products occurred approximately as follows:

- •     J&J – 1957 through the 2000's;
- •     Cashmere Bouquet – late 1960's through the 2000's; and
- •     Avon – late 1970's through the 2000's.

**VII**.

**The Harm**: Patricia died from asbestos-related malignant mesothelioma.  As a result of Patricia's untimely and wrongful death, all Plaintiffs have suffered, and will continue to suffer, harm including: (1) the loss of Patricia's love, companionship, comfort, care, assistance, protection, affection, society, moral support, training, and guidance; (2) the loss of financial support, gifts, and other pecuniary benefits that Patricia would have contributed to the family; (3) the loss of Patricia's household services; and (4) costs for Patricia's end-of-life expenses.

Plaintiffs rely upon the liability theories described below.

**VIII**.

**State-of-the-Art Knowledge of Asbestos Hazards**: The following facts are illustrative, but not exhaustive, of the evolution of the knowledge of the health hazards of asbestos and what was known and knowable to Defendants:

1.     Health hazards from asbestos exposure were identified in the 1890's. During this time, the Lady Inspector of Factories in Great Britain noted that individuals working with asbestos were suffering various lung injuries.

2.     Defendants since the early 1900's possessed medical and scientific data that

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

raised concerns regarding the presence of asbestos in talcum powder and that demonstrated the existence of health hazards to those exposed to asbestos-containing talcum powder products. Talc is a hydrous magnesium silicate, an inorganic material that is mined from the earth. Talc is used in the manufacture of goods such as paper, plastic, paint and coatings, rubber, food, electric cable, ceramics, and cosmetics. In its loose form and as used in consumer powder products, talc is known as "talcum powder."

3.      Geologists and mining companies, including Defendants, have long known that the deposits in the earth that are associated with talc are also associated with the formation of asbestos. Asbestos is a commercial and legal term, rather than a geological or scientific term, referring to six now-regulated magnesium silicate minerals that occur in fibrous form, including the serpentine mineral chrysotile, and the amphibole minerals actinolite, anthophyllite, tremolite, amosite, and crocidolite. The United States Geological Survey on Commercial Talc production in 1965, as well as those dating back to the 1800's in the United States, note the presence of tremolite, anthophyllite, and chrysotile commonly among those minerals found within talc deposits.

4.      As early as the 1920's, the term "asbestosis" was used to describe pulmonary fibrosis caused by asbestos exposure. Case reports in Great Britain and the United States detailed asbestosis in various workers.

5.      By 1929, lawsuits for disability related to exposure to asbestos were filed against Johns Manville.

6.      In the late 1930's, case reports were published addressing the relationship between asbestos and cancer.

7.      Several reports, studies, and guidelines published as early as the 1930's, including California's Dust, Fumes, Vapors, and Gases Safety Orders, all recognized that asbestos is a dust which creates health hazards, and that certain precautions are required to mitigate human exposure to dust. Such measures include, but are not limited to, using water to suppress the dust at its source, as well as providing those who might be exposed to dust with adequate ventilation, showers, and changing facilities. These same measures that were recommended to protect workers from asbestos in the 1930's would also have substantially reduced the risk that bystanders, household members, and other persons would contract mesothelioma from inhaling asbestos-containing dust that those who worked with and around asbestos and asbestos-containing products carried into their households on their person and personal effects. Defendants, and each of them, knew or should have known that anyone, including household members of those who used asbestos-containing products were at risk of developing an asbestos-related disease after inhaling dust from such asbestos-containing products.

8.      In 1931, the United Kingdom allowed workers to receive compensation for asbestosis.

9.      In March of 1933, Waldemar C. Dreesen of the United States Public Health Service reported to the National Safety Council the results of a study conducted among tremolite, talc, and slate workers. The study indicated that the talc was a hydrous calcium magnesium silicate, being 45 percent talc and 45 percent tremolite, and the National Safety Council stated, "[t]he

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers."

10.    As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicate of magnesium."

11.    In the September 1935 issue of National Safety News, an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleged exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

12.    In 1936, California's Division of Industrial Safety issued Safety Orders establishing the standard of care for work with asbestos.

13.    Also in 1936, Illinois enacted legislation recognizing asbestosis as a compensable occupational disease under its Occupational Disease Act.

14.    By the 1940's, asbestos carcinogenicity was noted in reviews in fields of industrial medicine, cancer research, and pneumoconiosis.

15.    In 1946, the American Conference of Governmental Industrial Hygienists established a maximum allowable concentration for occupational exposure.

16.    During the 1940's and 1950's, asbestos hazards were discussed in popular magazines, including Scientific American (January 1949) and Newsweek (May 15, 1950), as well as the Encyclopedia Britannica (1952). On April 7, 1959, the Los Angeles Times and Wall Street Journal reported that California health officials did additional research linking asbestos with cancer. Following a number of subsequent reports in the New York Times, Paul Brodeur published a series of articles in the New Yorker.

17.    In addition, beginning in the 1940's and 1950's, it was recognized that individuals who worked with asbestos materials, as well as those who did not work directly with asbestos products but only had relatively brief or intermittent exposures to asbestos products, could develop fatal asbestos diseases.

18.    In 1955, Richard Doll published a study linking asbestos to lung cancer.

19.    In 1960, Chris Wagner published a study linking asbestos to mesothelioma.

20.    DEFENDANT JOHNSON & JOHNSON started selling its Baby Powder in the late 1800's. As the parent company, JOHNSON & JOHNSON made Baby Powder until 1978, when a new subsidiary corporation, now known as JOHNSON & JOHNSON CONSUMER INC., was formed. Both J&J Defendants shared with each other all of their health-and-safety information about the talc products. Throughout this Complaint,

Kazan, McClain, Satterley & Greenwood

A Professional Law Corporation

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

DEFENDANTS JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER INC. are collectively referred to as "J&J."

21. In the 1950's and 1960's, J&J contracted with the Battelle Laboratory in Ohio to examine its talc for the presence of dangerous minerals. Battelle reported back to J&J and William Ashton, a J&J managerial employee, that J&J's talc had tremolite, fibrous tremolite, and fibrous talc. J&J thus had knowledge for many decades that J&J's talc was dangerous to breathe.

22. In the early 1960's, Dr. Irving Selikoff engaged in studies of groups of asbestos workers. By 1965, he had conducted various studies, published several articles, conducted special scientific symposia, been interviewed by the New York Times, and organized the international conference on the "Biological Effects of Asbestos" under the auspices of the renowned New York Academy of Sciences. The results of these presentations were published in Volume 132 of the Annals of the New York Academy of Sciences published in 1965.

23. In 1966, J&J knew of published medical and scientific articles that warned it that breathing talc could lead to asphyxiation and death in infants. J&J knew that this information could hurt its baby products franchise and chose not to warn about the dangers of breathing talc for many decades.

24. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[a]ll of the 22 talcum products analyzed have a...fiber content...averaging 19%. The fibrous material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits...Unknown significant amounts of such materials in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al., *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Am. Ind. Hyg. Assoc. J. 350 (1968).]

25. In 1969, product-liability lawsuits were brought against asbestos manufacturers. Also, under the Walsh Healy Act, federal contractors with contracts of more than $10,000 were required to adhere to a workplace standard of no more than 12 fibers per cubic centimeter of air.

26. In April 1969, J&J medical doctor, Dr. Timothy Thompson, wrote that J&J should consult the law department for potential litigation arising out of breathing tremolite. This J&J medical doctor specifically discussed the risk of cancer and other diseases from inhalation of needle-like tremolite.

27. In the 1970's, J&J knew of the risk of ovarian cancer and never warned regarding any type of cancer. Ovarian cancer occurs via inhalation and translocation of the asbestiform minerals in the body. J&J failed to warn of all Cancer risks, including mesothelioma.

28. In the early 1970's, J&J submitted false information to the FDA claiming J&J's products did not have asbestos in them when J&J had internal documents demonstrating its submission was false. J&J and other companies jointly convinced the FDA to not regulate the issues of asbestos in talc. The FDA allowed the talc industry to self-regulate regarding the health impact of breathing talc.

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

Kazan, McClain, Satterley & Greenwood

A Professional Law Corporation

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

29. J&J claims to have had a facility since the early 1970's to retain samples of each batch of its talc for future analysis. J&J has destroyed those samples and all underlying testing data including photographs, Transmission Electron Microscopy grids, Energy Dispersive X-ray Spectroscopy grids, and Selected Area (Electron) Diffraction grids.

30. In the 1970's, J&J worked jointly with other companies, including members of the Cosmetic, Toiletry & Fragrance Association ("CTFA"), to adopt a testing method that would not find the asbestos in their talc. That method, known as the J4-1, was adopted by the industry in 1976.

31. In the 1970's, J&J misled physicians and nurses into believing that J&J's product was safe and falsely telling them in mailings that there was no asbestos in J&J's Baby Powder.

32. In 1970, OSHA established the first Federal guidelines for workplace asbestos exposure, which took effect in 1971. Those regulations did not identify any known safe level of exposure for asbestos and mesothelioma. The OSHA asbestos regulations were strengthened during the 1970's and 1980's; and by 1986 the regulations explained: (1) the legally "permissible" levels for workplace asbestos exposures, even at just 0.2 f/cc, actually were inadequate to protect people against the risk of mesothelioma and lung cancer; (2) for carcinogens including asbestos, "no safe threshold level was demonstrable"; and (3) mesothelioma and lung cancer developed even after "low cumulative exposures to asbestos." J&J management employees worked to keep fibrous talc and asbestiform minerals in their product from being regulated by OSHA.

33. In 1971, J&J met with scientists at Mt. Sinai Hospital in New York who warned J&J of the risk of asbestos in its products and the risk of disease. J&J knew that fibrous talc and asbestos from talc translocated through the body after inhalation and were found in the ovaries of women.

34. In 1971, the Colorado School of Mines advised J&J managerial employee, Robert S. Russell, that there is fibrous tremolite and actinolite (asbestos), and fibrous talc in J&J samples submitted to them. Later in the mid-1970's, J&J agents and employees, including Mr. Russell, used J&J Baby Powder in a study on live babies, thereby exposing these babies to risk of disease.

35. In 1972, the private American Conference of Governmental Industrial Hygienists listed asbestos as a carcinogen. Those industry standards did not identify any known safe level of exposure for asbestos and mesothelioma.

36. In 1974, J&J employee, Dr. Fuller, told the Food and Drug Administration ("FDA") that the risk of *any* harm would be reason to take J&J's talcum powder off the market. Dr. Fuller and J&J did not live up to their promise to the FDA and falsely reassured the FDA for decades J&J's product was safe.

37. A 1976 follow-up study conducted by researchers at Mt. Sinai concluded that "[t]he presence in these products of asbestiform anthophyllite and tremolite, chrysotile, and quartz indicates the need for a regulatory standard for cosmetic talc...We also recommend that evaluation be made to determine the possible health hazards associated with the use of these products." [Rohl, A.N., et al., *Consumer Talcums and Powders: Mineral and Chemical Characterization*, 2 J. Toxicol. Environ. Health 255 (1976).]

The results of the Mount Sinai study were soon picked up and reported by both the New York Times and the Washington Post that same year. The study and subsequent newspaper articles listed explicitly popular consumer cosmetic talcum powders as containing high percentages of asbestos.

38.    In the early 1970's, the FDA began an inquiry into whether to regulate and require warnings on consumer talcum powder products. Defendants, who were part of an exclusive lobbying and advocacy group representing companies engaged in the cosmetic products industry, repeatedly conspired and worked in concert to block efforts to label and warn consumers regarding the dangers associated with cosmetic talcum powder products.

39.    In the 1970's and 1980's, J&J employee, William Ashton, knowing that fibrous talc and asbestos was dangerous, worked to keep J&J's product from being subject to any industry standards, including joining the American Society for Testing and Materials, and insuring J&J's product would not be subject to scrutiny by the scientific community.

40.    In the 1970's and 1980's, J&J continued to mislead the public by engaging in an anti-warning marketing campaign to tell consumers that J&J's product was "pure" and would "protect" the user of the product. The marketing campaign consisted of print, radio, and television advertisements to falsely reassure the public about the safety of talc.

41.    In 1983, Anthony and Mary Rose Gambino sued J&J for injuries Mr. Gambino sustained from his use of Baby Powder talc. J&J did nothing to preserve evidence of the talc samples it was allegedly testing from the early 1980's forward.

42.    In 1991, J&J knew that Dr. Alice Blount published on the presence of asbestos in its Baby Powder. Dr. Blount told J&J about the asbestos several times in the 1990's, and yet J&J did nothing to warn consumers of the dangers associated with J&J's product.

43.    J&J in the 1990's continued its pattern and practice of marketing talcum powder as safe despite knowing of the "cancer linkage." In 1992, J&J knew its major opportunities would be to market to minorities, but also knew the major obstacles would be the inhalation risk and cancer linkage.

44.    J&J employees were in charge of worldwide testing of talc to determine how much asbestos was in each talc source. They created a testing scheme to appear like there was no asbestos in their talc. However, they knew the testing methods used were inadequate and would not detect the asbestos in the talc.

45.    J&J engaged in a pattern and practice of not warning the public through 2018 when its Chief Executive Officer, Alex Gorsky, falsely told American consumers that J&J's talcum products have always been free of asbestos.

All Defendants failed to place any warning on their talc and talcum powder products or ever disclose the fact that these products contained asbestos, asbestiform fibers, and asbestiform talc at any point, up to and including present day, despite the clear hazard and direct information

Kazan, McClain, Satterley & Greenwood

A Professional Law Corporation

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

that their products *did* contain asbestos, asbestiform fibers, and asbestiform talc.

**IX**.

    **Additional Allegations as to J&J**: The following facts are illustrative, but not exhaustive, of J&J's wrongful conduct.

    J&J knew that the needle-like shape of asbestos fibers, found in some talc deposits, makes the fibers causative of mesothelioma. And J&J knew that babies inhaled the talc, at variable levels, whenever Baby Powder was applied. J&J therefore understood that if its talc contained asbestos, and if that fact were publicized, it would be bad for J&J's business and reputation.

    To avoid the risk of end-users' asbestos exposures, J&J always had the option to use cornstarch, instead of talc, as its Baby Powder's active ingredient. However, J&J waited until 1980 to start selling a cornstarch version alongside the talc version. Thereafter, J&J advertised that its cornstarch version was the "safest powder you can use on your baby." J&J never warned anyone about the asbestos content of its talc.

    Despite admittedly knowing that its talc Baby Powder contained toxic asbestos from at least the 1960's through the 2000's, J&J concealed or otherwise misrepresented that fact from its products' consumers. In part, J&J engaged in the following acts and omissions:

1.    J&J lied to the FDA about the presence of asbestos in the talc used in J&J's products, including Baby Powder. J&J hid these results and, in some cases, asked that these results be altered or destroyed. For example, in January 1974, J&J's managing agents Dr. R. Fuller, Dr. G. Hildick-Smith, and Dr. W. Nashed met with the FDA regarding "Talc/Asbestos." In that meeting, J&J promoted its Baby Powder as the "best talc available," despite knowing the talc's asbestos content. J&J also falsely claimed to the FDA that "substantial asbestos can be allowed safely in a baby powder." J&J further assured the FDA that, if studies showed that the talc was unsafe, J&J "will not hesitate to take it off the market." J&J never took its Baby Powder off the market despite knowing that the product contained asbestos. J&J, itself and through the CTFA, also withheld original documents and reports identifying asbestos in its talc and talc-containing products, including J&J's Baby Powder, and instead falsely reported to the FDA there was no asbestos. After providing this false information to the FDA, the CTFA, including J&J, met privately and congratulated themselves on the "success" of the "presentations" to the FDA, and agreed that they should not bind themselves to having to further update the FDA. Despite its admission that asbestos is a carcinogen, J&J never suggested—or revealed—to the FDA any asbestos in its Baby powder or talc products, including the list of positive asbestos findings in its talc ore, talc, and products throughout the decades.

Kazan, McClain, Satterley & Greenwood

A Professional Law Corporation

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

2.      In or around 1978, J&J and other members of the CTFA destroyed evidence showing positive findings of asbestos in round-robin testing of J&J and other manufacturers' consumer talcum products for asbestos content. The FDA initially proposed regulating the cosmetic talc industry. However, J&J and other members of the CTFA contended that they should be able to self-regulate. As a result, the FDA had no authority to "go into [J&J's] files"; it was up to J&J to voluntarily provide information to the FDA. Because the cosmetic talc industry was self-regulating, the CTFA rejected the FDA's proposal to have CTFA disclose the results of CTFA's respective periodic monitoring for asbestos. At J&J's direction, the CTFA was instructed to "[d]estroy your copy of the table" containing the results of the CTFA Task Force on Round Robin Testing of Consumer Talcum Products for Asbestiform Amphibole Minerals.

3.      J&J fraudulently labeled and advertised its Baby Powder as being pure and protective of health, and free of asbestos fibers. J&J maintained the trust of mothers and other consumers who used its Baby Powder products through print advertisements and other methods. In the 1940's, J&J emphasized that doctors and nurses preferred J&J's Baby Powder because of its effectiveness and alleged purity. J&J described the product as the "purest." J&J also directly promoted its baby powder to medical personnel. J&J provided samples for doctors to distribute. A 1965 brochure for doctors claimed that the powder was safe and had medical benefits. The bottle itself even said, "Purest Protection." Another version of the bottle said, "Good for baby, Good for you." However, J&J well knew that its Baby Powder was not pure because it contained asbestos. J&J also knew that its Baby Powder provided no medical protection or any other medicinal value.

4.      J&J and its officers, directors, and managing agents including, but not limited to, Bill Ashton, Dr. R. Fuller, Dr. G. Hildick-Smith, Dr. Al Goudie, Dr. W. Nashed, and members of J&J's Talc Advisory Group, kept from or otherwise misrepresented to the public test results showing the presence of asbestos and asbestiform fibers in its talcum products, including Baby Powder. For example, in or around October 1972, Dr. Nashed stated to Dr. Goudie that he "thought tremolite was mistakenly identified in view of similarity to Na [sodium] sesquicitrate!" Dr. Goudie replied, "There are trace quantities present confirmed both by McCrone & Bill Ashton. Levels are extremely low but occasionally can be detected optically. *This is not new*." In or around June 1973, the University of Minnesota lab reported to J&J that its Shower to Shower talc powder contained "1/100th of 1 percent asbestos," as shown by electron microscopy, both in the material from J&J and from Dr. Lewin's sample. Shortly thereafter, J&J and the McCrone lab authored their own report in which they misquoted the University of Minnesota lab's report by using misleading ellipses that concealed the asbestos findings. In its November 1974 letter to a concerned consumer in California, J&J (i) falsely claimed that it used only the "purest talc available," (ii) described contrary articles as "sensational and scary," and (iii) claimed to be "highly ethical and responsible" because its products were safe.

**FIRST CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY**

**I.**

**Design Defect**: All Defendants, and the 1st through 100th Doe Defendants, are strictly liable, under the consumer-expectations test, for placing defectively designed products into the stream of commerce, ultimately exposing Patricia to asbestos from these products.  First, Defendants designed, manufactured, supplied, marketed, distributed, and sold the products.  Second, each product did not perform as safely as an ordinary consumer would have expected it to perform when used or misused in an intended or reasonably foreseeable way, because each product caused hazardous asbestos to become airborne, exposing Patricia to asbestos.  Third, Patricia developed fatal mesothelioma.  Fourth, each product's failure to perform safely was a substantial factor in causing Patricia's fatal mesothelioma.

**II.**

**Failure-to-Warn Defect**: All Defendants, and the 1st through 100th Doe Defendants, are strictly liable for placing products with failure-to-warn defects into the stream of commerce, ultimately exposing Patricia to asbestos from these products.  First, Defendants designed, manufactured, supplied, marketed, distributed, and sold the products.  Second, each product had potential risks that were known or knowable in light of the scientific and medical knowledge that was generally accepted in the scientific community at the time of design, manufacture, supply, marketing, distribution, and sale.  Third, the potential risks presented a substantial danger when each product was used or misused in an intended or reasonably foreseeable way, because each product caused hazardous asbestos to become airborne.  Fourth, ordinary consumers would not have recognized the potential risks.  Fifth, Defendants failed to adequately warn or instruct of the potential risks.  Sixth, Patricia developed fatal mesothelioma.  Seventh, the lack of sufficient warnings or instructions was a substantial factor in causing Patricia's fatal mesothelioma.

**SECOND CAUSE OF ACTION FOR NEGLIGENCE**

**I.**

**General Negligence**: All Defendants, and the 1st through 100th Doe Defendants, are liable for their general negligence.  First, Defendants failed to use reasonable care to prevent harm to

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1   others, because they caused hazardous asbestos to become airborne, through Defendants' active

2   participation and contribution to specific activities that caused asbestos to become airborne.

3   Second, Defendants did so by unreasonably acting and failing to act.  They acted in ways that a

4   reasonably careful person would not do in the same situation, and failed to act in ways that a

5   reasonably careful person would do in the same situation.  Third, Patricia developed fatal

6   mesothelioma.  Fourth, each Defendant's general negligence was a substantial factor in causing

7   Patricia's fatal mesothelioma.

8                                              **II**.

9           **Negligence Per Se**: All Defendants, and the 1st through 100th Doe Defendants, are liable

10  for negligently violating the applicable state and federal asbestos regulations.  Defendants

11  negligently violated those regulations by failing to properly label asbestos-containing products;

12  failing to monitor for the presence of asbestos dust; failing to provide changing facilities and

13  showers to exposed persons; allowing exposures of asbestos to exceed permissible exposure

14  limits; failing to warn as to the presence of asbestos; and failing to implement industrial hygiene

15  practices to eliminate or decrease exposures to asbestos.  Those violations were a substantial factor

16  in causing Patricia's exposures to asbestos, and in causing Patricia's fatal mesothelioma.  The

17  regulations were designed to prevent overexposure to asbestos dust, and Patricia was within the

18  class of persons that the regulations were designed to protect.  Accordingly, because Defendants

19  violated the regulations, Defendants' conduct is presumed to have been negligent.

20                                             **III**.

21          **Negligent Design, Manufacture, Supply, Testing, Packaging, and Labeling of**

22  **Products**: All Defendants, and the 1st through 100th Doe Defendants, are liable for their negligent

23  design, manufacture, marketing, supply, testing, packaging, and labeling of asbestos-containing

24  talc powder products.  First, these Defendants designed, manufactured, sold, distributed,

25  formulated, developed standards for, prepared, processed, assembled, tested, listed, certified,

26  marketed, advertised, packaged and/or labeled, and/or otherwise placed into the stream of

27  commerce, asbestos-containing talc powder products.  Second, these Defendants were negligent in

28  manufacturing, selling, distributing, developing standards for, processing, assembling, testing,

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1  certifying, marketing, advertising, packaging and/or labeling, and/or otherwise placing into the

2  stream of commerce, asbestos-containing talc powder products because they caused hazardous

3  asbestos to become airborne.  They failed to use the amount of care that a reasonably careful

4  person would use in similar circumstances to avoid exposing others to a foreseeable risk of harm.

5  Third, Patricia developed fatal mesothelioma.  Fourth, each Defendant's negligence was a

6  substantial factor in causing Patricia's fatal mesothelioma.

7  <center>**IV**.</center>

8  **Negligent Failure to Warn about Products**: All Defendants, and the 1st through 100th

9  Doe Defendants, are liable for their negligent failure to warn about their products.  First,

10  Defendants designed, manufactured, supplied, marketed, distributed, and sold the products.

11  Second, Defendants knew or reasonably should have known that each product was dangerous or

12  was likely to be dangerous when used or misused in a reasonably foreseeable manner, because

13  each product caused hazardous asbestos to become airborne.  Third, Defendants knew or

14  reasonably should have known that users would not realize the danger.  Fourth, Defendants failed

15  to adequately warn of the danger or instruct on the safe use of each product.  Fifth, a reasonably

16  careful person under the same or similar circumstances would have warned of the danger or

17  instructed on the safe use of each product.  Sixth, Patricia developed fatal mesothelioma.  Seventh,

18  each Defendant's negligent failure to warn or instruct was a substantial factor in causing Patricia's

19  fatal mesothelioma.

20  <center>V.</center>

21  **Negligent Failure to Recall and Retrofit Products**: All Defendants, and the 1st through

22  100th Doe Defendants, are liable for their negligent failure to recall and retrofit their products.

23  First, Defendants designed, manufactured, supplied, marketed, distributed, and sold the products.

24  Second, Defendants knew or reasonably should have known that each product was dangerous or

25  was likely to be dangerous when used in a reasonably foreseeable manner, because each product

26  caused hazardous asbestos to become airborne.  Third, Defendants became aware of this defect

27  after they placed each product into the stream of commerce.  Fourth, Defendants failed to recall

28  and retrofit each product.  Fifth, a reasonably careful person under the same or similar

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1    circumstances would have recalled and retrofitted each product.  Sixth, Patricia developed fatal

2    mesothelioma.  Seventh, each Defendant's negligent failure to recall and retrofit each product was

3    a substantial factor in causing Patricia's fatal mesothelioma.

4    ### THIRD CAUSE OF ACTION FOR FRAUD

5    ### I.

6    **Fraudulent Concealment (Nondisclosure)**: All Defendants, and the 1st through 100th

7    Doe Defendants, are liable for their fraudulent concealment (nondisclosure).

8    First, each Defendant made affirmative statements that were so misleading (e.g.,

9    misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a

10    specific relationship or transaction as between Defendants and Patricia.  Specifically, Defendants

11    stated that their products could be used safely while concealing that they were in fact lethal

12    because they released asbestos fibers.

13    Second, each Defendant (i) had exclusive knowledge of material facts not known to

14    Patricia, (ii) actively concealed these material facts from Patricia, (iii) made partial representations

15    but also suppressed material facts, and (iv) made factual representations, but did not disclose facts

16    that materially qualified those representations.  Such nondisclosures included Defendants

17    representing their products as safe when used as intended and as fit for the particular purpose for

18    which they were marketed, while not disclosing the facts that these products contained asbestos

19    that would become airborne during the intended and/or foreseeable use of the products, rendering

20    them dangerous and unfit for their intended purpose.

21    Third, each Defendant entered into a relationship and/or a transaction with Patricia

22    sufficient to give rise to a duty to disclose.  For example, Patricia used or otherwise encountered

23    Defendants' products that were purchased either directly from Defendants, Defendants' authorized

24    dealer or supplier, or any other entity upon which Defendants derived a direct monetary benefit.

25    Defendants derived direct monetary benefit from the industry and these individuals' use of these

26    products because Patricia decided to use or purchase Defendants' products.  As for another

27    example, Defendants directly advertised their products to those in California and elsewhere, as a

28    symbol of freshness, cleanliness, and purity.  Defendants advertised and marketed their products

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1   as the "purest protection," as the beacon of "freshness" and "comfort," as eliminating friction on

2   the skin, as absorbing "excess wetness" helping keep skin feeling dry and comfortable, and as

3   "clinically proven gentle and mild."

4         Fourth, Patricia did not know of the concealed facts.

5         Fifth, Defendants intended to deceive Patricia by concealing the facts, and/or by making

6   certain representations without disclosing additional facts that would have materially qualified

7   those representations.

8         Sixth, had the omitted information been disclosed, Patricia reasonably would have behaved

9   differently.

10         Seventh, Patricia developed fatal mesothelioma.

11         Eighth, each Defendant's concealment was a substantial factor in causing Patricia's fatal

12   mesothelioma.

**II.**

14         **Conspiracy to Commit Fraudulent Concealment (Nondisclosure)**: All Defendants, and

15   the 1st through 100th Doe Defendants, are liable for their conspiracy to commit fraudulent

16   concealment.  First, Defendants were aware that their conspirators planned to commit fraudulent

17   concealment against Patricia.  Second, Defendants agreed with their conspirators and intended that

18   the fraudulent concealment be committed.  Third, Patricia developed fatal mesothelioma.  Fourth,

19   each Defendant's participation in the conspiracy was a substantial factor in causing Patricia's fatal

20   mesothelioma.

**III.**

22         **Knowledge of Hazards**: At all times pertinent hereto, all Defendants, and the 1st through

23   100th Doe Defendants, owed Patricia a duty, as provided for in California Civil Code sections

24   1708, 1709, and 1710, to abstain from injuring her person, property, or rights.  In violation of that

25   duty, each Defendant engaged in the acts and omissions when a duty to act was imposed as set

26   forth herein, thereby proximately causing injury and harm to Patricia.  Such acts and omissions

27   consisted of deceit as prohibited by Civil Code section 1710, and more specifically were (i)

28   suggestions of fact which were not true and which the Defendants did not believe to be true, (ii)

**Kazan, McClain, Satterley & Greenwood**
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1 | assertions of fact of that which was not true, which the Defendants had no reasonable ground for

2 | believing to be true, and (iii) the suppression of facts when a duty existed to disclose it, all as are

3 | more fully set forth herein, and the violation of which as to any one such item gave rise to a cause

4 | of action for violation of Patricia's rights as provided for in the above code sections.

5 |         Each of the foregoing acts, suggestions, assertions, and failures to act when a duty existed

6 | to act, Defendants having such knowledge, knowing Patricia did not have such knowledge, was

7 | done falsely and fraudulently and with full intent to induce Patricia to purchase and use

8 | Defendants' dangerous products and to cause her to remain unaware of the true facts, all in

9 | violation of the Civil Code and other applicable law.

## PRAYER FOR DAMAGES

### I.

Plaintiffs pray for judgment against all Defendants, and the 1st through 100th Doe

Defendants, for:

1.    All economic and non-economic compensatory damages in excess of $25,000;

2.    Pre- and post-judgment interest;

3.    Costs of suit; and

4.    Such other relief as is fair, just, and equitable.

## DEMAND FOR JURY TRIAL

### I.

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED:  January 2, 2020                    KAZAN, McCLAIN, SATTERLEY & GREENWOOD
                                           A Professional Law Corporation


By: _____
                                           Michael T. Stewart

                                           Attorneys for Plaintiffs

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

# Exhibit 4

1  Keith M. Ameele (SBN 221927)
   kameele@foleymansfield.com
2  Peter M. Mularczyk (SBN 288329)
   pmularczyk@foleymansfield.com
3  Kimberly L. Rivera (SBN 205528)
   krivera@foleymansfield.com
4  Margaret I. Johnson (SBN 137785)
   mijohnson@foleymansfield.com
5  **FOLEY & MANSFIELD, PLLP**
   300 South Grand Avenue. Suite 2800
6  Los Angeles, CA  90071
   Telephone  (213) 283-2100
7  Facsimile  (213) 283-2101

8  **Attorneys for Defendant**
   **COLGATE-PALMOLIVE COMPANY**

9

10                    **UNITED STATES DISTRICT COURT**

11                   **NORTHERN DISTRICT OF CALIFORNIA**

12  ASHLEY LEIGH SCHMITZ; ROBERT          Case No:
    EVAN SCHMITZ; KATERINA
13  GIANNIKOS, a minor by her Guardian Ad
    Litem SUSAN JEAN BADER; ARIANA        [Removed from the Superior Court of California,
14  GIANNIKOS, a minor by her Guardian Ad County of Alameda,  Case No. RG20048957]
    Litem SUSAN JEAN BADER; ARGEREOS
15  GIANNIKOS a minor by her Guardian Ad
    Litem SUSAN JEAN BADER; and FOTNI    **NOTICE OF REMOVAL OF CIVIL ACTION**
16  GIANNIKOS, a minor by her Guardian Ad **PURSUANT TO 28 U.S.C. §§ 1332(A), 1441(B),**
    Litem SUSAN JEAN BADER,               **AND 1446**
17
                Plaintiffs,
18
            vs.
19
    JOHNSON & JOHNSON; JOHNSON &
20  JOHNSON CONSUMER INC. (sued
    individually, as alter-ego of, and as successor-
21  interest to JOHNSON & JOHNSON
    CONSUMER COMPANIES, INC.);
22  COLGATE-PALMOLIVE COMPANY;
    AVON PRODUCTS, INC.; LONGS DRUG
23  STORES CALIFORNIA, L.L.C. (sued        Case File:      January 2, 2020
    individually, as alter-ego of, and as successor- Trial Date:     None Set
24  interest to LONGS DRUG STORES
    CALIFORNIA, INC.); and FIRST DOE
25  through ONE HUNDREDTH DOE,

26              Defendants.

27

28

TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant COLGATE-PALMOLIVE COMPANY (hereinafter "COLGATE" or "removing Defendant"), hereby removes this civil action from the Superior Court of the State of California for the County of Alameda to the United States District Court for the Northern District of California.

This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a) on the ground that complete diversity exists between plaintiffs and all defendants and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. All defendants consent to this removal. And, this Notice of Removal is timely filed within 30 days of service of the complaint upon the removing Defendant.

As grounds for removal, Colgate respectfully alleges as follows:

## **BACKGROUND**

1. On January 2, 2020, an action was commenced in the Superior Court of the State of California for the County of Alameda with the filing of a Complaint entitled *Ashley Leigh Schmitz; Robert Evan Schmitz; Katerina Giannikos (a minor, by her Guardian Ad Litem Susan Jean Bader); Ariana Giannikos (a minor, by her Guardian Ad Litem Susan Jean Bader); Argereos Giannikos (a minor, by his Guardian Ad Litem Susan Jean Bader); and Fotini Giannikos (a minor, by her Guardian Ad Litem Susan Jean Bader) v. Johnson & Johnson; Johnson & Johnson Consumer Inc. (sued individually and as successor-in-interest to Johnson & Johnson Consumer Companies, Inc.); Colgate-Palmolive Company; Avon Products, Inc.; Longs Drugs Stores California, L.L.C. (sued individually, as alter-ego of, and as successor-interest to Longs Drug Stores California, Inc.); and First Doe through One Hundredth Doe*, Case No. RG20048957 ("the Action"). (A true and accurate copy of the Complaint is attached as Exhibit A.)

2. This Court has original jurisdiction under 28 U.S.C. §1332. This action may be removed to this Court by Defendant Colgate pursuant to the provisions of 28 U.S.C. §1441 in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

///

---

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332(A), 1441(B), AND 1446

## GROUNDS FOR REMOVAL

3.     Plaintiffs Ashley Leigh Schmitz and Robert Evan Schmitz are domiciled in California.  Plaintiffs and minors, Katerina Giannikos, Ariana Giannikos, Argeros Giannikos, and Fotini Giannikos are also domiciled in <u>California</u>.[1]  The minors' claims are brought by their Guardian Ad Litem, Susan Jean Bader, who is domiciled in <u>Wyoming</u>.[2]

4.     Defendant Colgate-Palmolive Company ("Colgate") was incorporated in <u>Delaware</u> and has its principal place of business in <u>New York</u>.[3] Therefore, Colgate has diversity with Plaintiffs.

5.     Defendants Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively "J&J") were incorporated in New York and have their principal place of business in New Brunswick, <u>New Jersey</u>.[4] Therefore, J&J has diversity with Plaintiffs.  J&J has consented to the removal of the Action under 28 U.S.C. § 1446(b)(2)(A).[5]

6.     Defendant Longs was erroneously served and sued as "Longs Drug Stores California, L.L.C., individually, as alter-ego of, and as successor-interest to Longs Drug Stores California, Inc."[6] Longs Drug Stores California L.L.C.[7] ("Longs") is wholly owned by Longs Drug Stores, L.L.C., a <u>Maryland</u> limited liability company with its principal place of business in <u>Maryland</u>.[8] Longs Drug Stores, L.L.C. is wholly owned by CVS Pharmacy, Inc., a <u>Rhode Island</u> corporation with its principal place of business in <u>Rhode Island</u>.[9]  Therefore, Longs has diversity with Plaintiffs.

---

[1] See Exhibit H (Declaration of Margaret Johnson) para. 2.
[2] See Exhibit H (Declaration of Margaret Johnson) para. 3.
[3] See Exhibit H (Declaration of Margaret Johnson) para. 4.
[4] See Exhibit H (Declaration of Margaret Johnson) para. 5.  For purposes of diversity jurisdiction, a corporation is "deemed to be a citizen of any State by which it has been incorporated" and "of the State where it has its principal place of business."  (28 U.S.C. § 1332(c)(1); *Wachovia Bank v. Schmidt* (2006) 546 U.S. 303, 306.)
[5] *Id.*
[6] See Exhibit I (Declaration of Thomas Moffatt) paras. 2-7.
[7] To determine whether diversity jurisdiction exists, courts treat limited liability companies the same as partnerships and, therefore, they look to the citizenship of each member of the company. (*See Cardon v. Arkoma Assoc.* (1990) 494 U.S. 185; *Johnson v. Columbia Properties Anchorage, LP* (9th Cir. 2006) 437 F.3d 894, 899 ("the citizenship of a limited liability company for purposes of the diversity jurisdiction is the citizenship of all of its members").)
[8] See Exhibit I (Declaration of Thomas Moffatt) paras. 6-7.
[9] See Exhibit I (Declaration of Thomas Moffatt) para. 7.

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332(A), 1441(B), AND 1446

4001056 v1

Longs has consented to the removal of the Action under 28 U.S.C. § 1446(b)(2)(A).[10]

7.    Defendant Avon Products, Inc. ("Avon") was incorporated in <u>New York</u> and has its principal places of business in Rye, <u>New York</u> and London, <u>United Kingdom</u>.[11] Therefore, Avon has diversity with Plaintiffs.  Avon has consented to the removal of the Action under 28 U.S.C. § 1446(b)(2)(A).[12]

8.    The Complaint also names unidentified DOE Defendants.  For purposes of removal, "the citizenship of defendants sued under fictitious names is disregarded."  (28 U.S.C. § 1441(b)(1).

9.    Certain types of claims are likely to exceed the jurisdictional requisite of $75,000. (*See, e.g.*, *Campbell v. Bridgestone/Firestone, Inc.* (E.D. Cal. 2006) 2006 WL 707291, *2-3 (finding an amount in controversy exceeding $75,000 facially apparent where following a car accident, the plaintiff allegedly suffered head trauma, a broken arm, a broken wrist, a deep leg laceration, loss of earning capacity, and hospital and medical expenses); *In re Rezulin Prods. Liab. Litig.*, (S.D.N.Y. 2001) 133 F. Supp. 2d 272, 296 (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000").)  Plaintiffs' wrongful death complaint contains causes of action for strict products liability, negligence, and fraud and alleges that their decedent became ill and passed away as a result of having been exposed to cosmetic talcum powder products manufactured, sold, or supplied by the Defendants which products were allegedly contaminated with asbestos.  (See Exhibit A.)  Without waiving its right to contest the merits of Plaintiffs' claims, Colgate submits that Plaintiffs' complaint demonstrates their alleged claims exceed $75,000, exclusive of interest and costs.[13]

10.    Accordingly, this Court has diversity jurisdiction under 28 U.S.C. §1332 as the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

11.    This Notice of Removal is timely filed as it is filed within 30 days of the January 23, 2020, service of the summons and complaint upon the removing defendant. (28 U.S.C.

---

[10] Exhibit H (Declaration of Margaret Johnson) para. 6.
[11] See Exhibit H (Declaration of Margaret Johnson) para. 7.
[12] *Id.*
[13] See Exhibit H (Declaration of Margaret Johnson) para. 9.

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332(A), 1441(B), AND 1446

4001056 v1

§ 1446(b)(2)(B).)  (See **Exhibit A**.)

12.     In accordance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Colgate in the Action will be filed with the Court. The only pleadings filed/served to date is the summons and complaint for the Action (**Exhibit A**), the Notice of Hearing (Case Management Conference), Civil Case Cover Sheet, Plaintiff's Notice of Posting Jury Fees, Demand for Trial by Jury, and Estimate of Length of Trial, Alternative Dispute (ADR) Information Packet, and (Blank) Stipulation to Attend Alternative Dispute Resolution (attached collectively as **Exhibit B**), Colgate's Answer to Plaintiffs' Complaint (**Exhibit C**), Johnson & Johnson's Answer to Plaintiffs' Complaint (**Exhibit D**), Johnson & Johnson Consumer Inc.'s Answer to Plaintiffs' Complaint (**Exhibit E**), Longs's Answer to Plaintiffs' Complaint (**Exhibit F**), and Avon's Motion to Quash (**Exhibit G**).

13.     In accordance with 28 U.S.C. §1446(d), Defendant Colgate will serve a Notice of Filing of Notice of Removal, together with copies of this Notice and attachments, promptly upon counsel for Plaintiffs and all Defendants and will file copies of same with the Superior Court for the County of Alameda.

## JURISDICTIONAL STATEMENT AND INTRADISTRICT ASSIGNMENT

14.     This Action filed in Alameda County is properly removed to the United States District Court for the Northern District of California, which is "the district and division embracing the place where [the] action is pending."  (28 U.S.C. §1441(a).  See also, 28 U.S.C. §84(a).)

15.     Pursuant to Northern District Civil Local Rule 3-2 (c) and (d), intradistrict assignment to the San Francisco Division is proper as "a substantial part of the events or omissions which give rise to the claim occurred" in Alameda, California.  Plaintiffs' state court Complaint was filed in Alameda County and alleges "[Decedent's] exposures to Defendants' asbestos, and [Decedent's] resulting mesothelioma and death, occurred in Alameda County." [14]

## DEMAND FOR JURY TRIAL

16.     The California state court Answer filed by Colgate prior to the filing of this Notice of

---

[14] See Exhibit A (Complaint) p. 3:20-21.

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332(A), 1441(B), AND 1446

Removal included an express demand for jury trial.  Pursuant to Rule 81(c)(3)(A) of Federal Rules of Civil Procedure, "[a] party who, before removal, expressly demanded a jury trial in accordance with state law need not renew the demand after removal."

### **CONCLUSION**

Colgate intends no admission of fact, law, or liability by this notice, and reserves all defenses, motions, and pleas.  Colgate prays that this action be removed to this Court for determination; that all further proceedings in the state court suit be stayed; and that Colgate obtain all additional relief to which it is entitled.

Dated:  February 21, 2020                      **FOLEY & MANSFIELD, PLLP**

By: _____

Keith M. Ameele
Peter M. Mularczyk
Kimberly L. Rivera
Margaret I. Johnson
**COLGATE-PALMOLIVE COMPANY**

NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332(A), 1441(B), AND 1446

4001056 v1

**PROOF OF SERVICE**

     I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 300 S. Grand Avenue, Suite 2800, Los Angeles, CA  90071.

     On **February 21, 2020**, I served the foregoing document described as:  **NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332(A), 1441(B), AND 1446**.

     ***SEE ATTACHED SERVICE LIST***

☐    ***(BY COURT'S CM/ECF SYSTEM)*** Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF systems, to the parties and/or counsel who are registered CM/ECF Users set forth in the service list that is located on the PACER website.

☐    ***(BY ELECTRONIC SERVICE VIA FILE & SERVEXPRESS)***  Complying with Code of Civil Procedure Section 1010.6, and/or as directed by the Court in this matter, I caused the above-entitled document to be served through File & ServeXpress (formerly LexisNexis) at www.fileandservexpress.com addressed to all parties appearing for the above-entitled case.  If the document is provided electronically by 5:00 p.m., then the document will be deemed served on the date it was provided to File & ServeXpress.  A copy of the File & ServeXpress Filing Receipt will be maintained with the original document in our office.

☒    ***(BY MAIL)***  I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses above and placed the envelope for collection and mailing, following our ordinary business practices.  I am ready familiar with this business's practice for collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

Executed on **February 21, 2020**, Los Angeles, California.

☒    **[FEDERAL]** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Elona C. Conchas

CERTIFICATE OF SERVICE

4001056 v1

**SERVICE LIST**

| | |
|---|---|
| Joseph D. Satterley<br>Denyse F. Clancy<br>Michael T. Stewart<br>KAZAN, McCLAIN, SATTERLEY<br>  & GREENWOOD<br>A Professional Law Corporation<br>Jack London Market<br>55 Harrison Street, Suite 400<br>Oakland, California 94607<br><br>**Attorneys for Plaintiffs** | Alexander G. Calfo<br>Susan V. Vargas<br>Bryan L. King<br>King & Spalding LLP<br>633 W. Fifth St., Suite 1700<br>Los Angeles, CA 90071<br><br>**Attorneys for Johnson & Johnson and<br>Johnson & Johnson Consumer Inc.** |
| Claire C. Weglarz<br>Elizabeth N. Branham<br>Hawkins Parnell Thackston<br>  & Young Llp<br>345 California St., Ste. 2850<br>San Francisco, CA 94104<br><br>**Attorneys for AVON** | SPANOS \| PRZETAK<br>475 14th Street, Suite 550<br>Oakland, CA 94612 |
| PHILLIP BURTON FEDERAL BUILDING<br>    & UNITED STATES COURTHOUSE<br>450 GOLDEN GATE AVENUE, 16TH FL.<br>SAN FRANCISCO, CA 94102 | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CERTIFICATE OF SERVICE

4001056 v1