# Exhibit 1

1   Joseph D. Satterley (C.S.B. #286890)
      jsatterley@kazanlaw.com
2   Denyse F. Clancy (C.S.B. #255276)
      dclancy@kazanlaw.com
3   Ian A. Rivamonte (C.S.B. #232663)
      irivamonte@kazanlaw.com
4   KAZAN, McCLAIN, SATTERLEY & GREENWOOD
    A Professional Law Corporation
5   Jack London Market
    55 Harrison Street, Suite 400
6   Oakland, California 94607
    Telephone: (510) 302-1000
7   Facsimile: (510) 835-4913

8   Attorneys for Plaintiffs

9                    SUPERIOR COURT OF CALIFORNIA

10                       COUNTY OF ALAMEDA

11  TERESA ELIZABETH LEAVITT and DEAN      Case No. RG17882401
    J. MCELROY,
12                                          Assigned for All Purposes to
            Plaintiffs,                     Judge Brad Seligman, Department 23
13
        v.                                  **NOTICE OF ENTRY OF AMENDED
14                                          JUDGMENT ON SPECIAL VERDICT**
    JOHNSON & JOHNSON, et al.,
15
            Defendants.                     Case Filed:    November 14, 2017
16                                          Trial Date:    December 10, 2018

17          PLEASE TAKE NOTICE that on November 1, 2019, the Court in the above-entitled

18  action filed its Amended Judgment on Special Verdict. Attached as Exhibit A is a true and correct

19  endorsed-filed copy of that amended judgment.

20

21  DATED:  November 1, 2019         KAZAN, McCLAIN, SATTERLEY & GREENWOOD
                                     A Professional Law Corporation
22

23

24                                   By:  _____

                                          Ian A. Rivamonte
25
                                     Attorneys for Plaintiffs
26

27

28

1762000.1                                    1
                    Notice of Entry of Amended Judgment on Special Verdict

**ENDORSED
FILED
ALAMEDA COUNTY**

**NOV 01 2019**

CLERK OF THE SUPERIOR COURT
By _____
                              Deputy

*(left margin, vertical)* Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

## PROOF OF SERVICE

*Teresa Elizabeth Leavitt and Dean J. McElroy v. Johnson & Johnson, et al.*
**Alameda County Superior Court Case No. RG17882401**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Alameda, State of California. My business address is Jack London Market, 55 Harrison Street, Suite 400, Oakland, CA 94607.

On November 1, 2019, I served true copies of the following document(s) described as:

**NOTICE OF ENTRY OF AMENDED JUDGMENT ON SPECIAL VERDICT**

on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY ELECTRONIC SERVICE:** I electronically served the document(s) described above via File & ServeXpress, on the recipients designated on the Transaction Receipt located on the File & ServeXpress website (https://secure.fileandservexpress.com) pursuant to the Court Order establishing the case website and authorizing service of documents.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 1, 2019, at Oakland, California.

Kristine Harrison

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1

# SERVICE LIST

ALSTON & BIRD LLP
333 South Hope Street, 16th Floor
Los Angeles CA 90071
Telephone: (213)576-1000
Facsimile: (213)576-1100
FOR: CYPRUS AMAX MINERALS
COMPANY, IMERYS TALC AMERICA INC
sii LUZENAC AMERICA sii CYPRUS
INDUST MINERALS, IMERYS TALC
AMERICA, INC., IMERYS TALC
AMERICA, INC. fka LUZENAC AMERICA
INC., IMERYS TALC AMERICA, INC.sii
AMERICAN TALC COMPANY , IMERYS
TALC VERMONT, INC. , IMERYS USA INC
ind and as alter ego of IMERYS TALC
AMERICA fka LUZENA

ALSTON & BIRD LLP
FOR: IMERYS TALC AMERICA, INC.sii
METROPOLITAN TALC CO. INC

ALSTON & BIRD LLP
FOR: IMERYS TALC AMERICA, INC.sii/
CHARLES MATHIEU INC., IMERYS TALC
AMERICA, INC.sii/WINDSOR MINERALS,
INC.

DENTONS US LLP
One Market Plaza
Spear Tower, 24 th Floor
San Francisco  CA 94105
Telephone: (415)267-4000
Facsimile: (415)267-4198
FOR: IMERYS TALC AMERICA, INC. fka
LUZENAC AMERICA INC., IMERYS TALC
AMERICA, INC.sii AMERICAN TALC
COMPANY , IMERYS TALC AMERICA,
INC.sii METROPOLITAN TALC CO. INC,
IMERYS TALC AMERICA, INC.sii/
CHARLES MATHIEU INC., IMERYS TALC
AMERICA, INC.sii/WINDSOR MINERALS,
INC., IMERYS TALC VERMONT. INC.

KING & SPALDING LLP
633 West  5th Street, Suite 1700
Suite 1700
Los Angeles  CA 90071
Telephone: 213-443-4355
Facsimile: 213-443-4310
FOR: JOHNSON & JOHNSON , JOHNSON &
JOHNSON CONSUMER COMPANIES, INC.
, JOHNSON & JOHNSON CONSUMER INC.
sii  JOHNSON & JOHNSON CONS
COMPANIES

ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco CA 94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
FOR: JOHNSON & JOHNSON , JOHNSON &
JOHNSON CONSUMER, INC.

SPANOS PRZETAK
475 14th St. Ste. 550
Oakland CA 94612
Telephone: (510) 250-0200
Facsimile: (510) 380-6354
FOR: DESIGNATED DEFENSE COUNSEL

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation
Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

2

# Exhibit A

1  Joseph D. Satterley (C.S.B. #286890)
2  Denyse F. Clancy (C.S.B. #255276)
   dclancy@kazanlaw.com
3  KAZAN, McCLAIN, SATTERLEY & GREENWOOD
   A Professional Law Corporation
   Jack London Market
4  55 Harrison Street, Suite 400
   Oakland, California 94607
5  Telephone: (510) 302-1000
   Facsimile: (510) 835-4913
6
7  Attorneys for Plaintiffs



ENDORSED
FILED
ALAMEDA COUNTY

NOV 0 1 2019

CLERK OF THE SUPERIOR COURT
By ___Jhalisa Castaneda___
                    Deputy

8              SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF ALAMEDA

10  TERESA ELIZABETH LEAVITT and DEAN       Case No. RG17882401
    J. McELROY,
11                                          Assigned for All Purposes to
              Plaintiffs,                   Judge Brad Seligman, Department 23
12
        v.                                  [PROPOSED] AMENDED JUDGMENT
13                                          ON SPECIAL VERDICT
    JOHNSON & JOHNSON, et al.,
14                                          Trial Date:    December 10, 2018
              Defendants.                   Action Filed:  November 14, 2017
15

16          This action came on for trial in Department 23 of the above-entitled Court, the Honorable

17  Brad Seligman presiding. The parties appeared by their respective counsel of record.

18          The plaintiffs who are affected by this judgment are: (1) Teresa Elizabeth Leavitt; and

19  (2) Dean J. McElroy (collectively, "Plaintiffs").

20          The defendants who are affected by the judgment are: (1) Johnson & Johnson ("J&J"); and

21  (2) Johnson & Johnson Consumer Inc. ("J&J Consumer Inc.").

22          The trial was conducted in one phase. A jury of 12 persons was impaneled and sworn.

23  Witnesses were sworn and testified. Documentary evidence was admitted. The jury was instructed

24  on the law. The cause was submitted to the jury with directions to return a verdict on special

25  issues. The jury deliberated and, on March 13, 2019, returned its verdict. On the cause of action

26  for Intentional Misrepresentation only, the jury was unable to reach a verdict, and the Court thus

27  entered a mistrial on that single cause of action.

28          The Court then entered the jury's verdict on all other causes of action and claims for

*(Side margin, vertical text):* Kazan, McClain, Satterley & Greenwood  A Professional Law Corporation  Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607  (510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax: (510) 835-4913 • www.kazanlaw.com

1  damages. This verdict awarded damages totaling (1) $2,491,000 to Teresa Leavitt in economic

2  damages, (2) $22,000,000 to Teresa Leavitt in non-economic damages, and (3) $5,000,000 to

3  Dean McElroy in non-economic damages. A copy of the verdict is attached as **Exhibit 1** hereto

4  and incorporated herein by reference. After the verdict was reached, Plaintiffs dismissed their

5  cause of action for Intentional Misrepresentation against J&J and J&J Consumer Inc., with

6  prejudice. A copy of this dismissal is attached as **Exhibit 2** hereto and incorporated herein by

7  reference.

8  　　　Plaintiffs have represented that, prior to the jury's verdict, they did not (1) enter into any

9  settlements with any other defendant, (2) receive any settlement monies, and (3) receive any

10  payment or promise of payment from anyone (whether or not a defendant) for any of the damages,

11  illness, injury, or loss addressed in this case.

12  　　　After the verdict and entry of judgment on March 22, 2019, Plaintiffs settled with

13  Defendant Cyprus Mines Corporation. As a result, J&J and J&J Consumer Inc. are entitled to a

14  settlement-related credit in the amount of $1,470,000.

15  　　　And Plaintiffs are entitled to costs of suit in the amount of $541,226.57.

16  　　　It is now appearing by reason of said verdict, and by reason of this Court's orders on the

17  motions of J&J and J&J Consumer Inc. for judgment notwithstanding the verdict and new trial or

18  remittitur, and Plaintiffs' motions for costs of suit and settlement-related credit, that Plaintiffs

19  Teresa Leavitt and Dean J. McElroy are entitled to judgment against J&J and J&J Consumer Inc.

20  　　　NOW, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Plaintiffs

21  Teresa Leavitt and Dean J. McElroy are entitled to judgment against J&J and J&J Consumer Inc.

22  as follows:

23  　▪　J&J: $22,622,226.57, consisting of:

24  　　1.　　$1,021,000 to Teresa Leavitt for economic damages, reflecting a settlement
25  　　　　　credit of $1,470,000 to the economic-damages award of $2,491,000, based
　　　　　　on joint and several liability;

26  　　2.　　$17,160,000 to Teresa Leavitt for noneconomic damages, reflecting J&J's
27  　　　　　78% responsibility for Teresa Leavitt's mesothelioma, based on several
　　　　　　liability pursuant to Civil Code section 1431.2;

28  / / /

1758031.1

2

(~~Proposed~~) Amended Judgment on Special Verdict

3.  $3,900,000 to Dean McElroy for noneconomic damages, reflecting J&J's 78% responsibility, based on several liability; and

4.  $541,226.57 for costs of suit.

- J&J Consumer Inc.: $6,962,226.57, consisting of:

1.  $1,021,000 to Teresa Leavitt for economic damages, reflecting a settlement credit of $1,470,000 to the economic-damages award of $2,491,000, based on joint and several liability;

2.  $4,400,000 for to Teresa Leavitt for noneconomic damages, reflecting J&J Consumer Inc.'s 20% responsibility for Teresa Leavitt's mesothelioma, based on several liability pursuant to Civil Code section 1431.2;

3.  $1,000,000 to Dean McElroy for noneconomic damages, reflecting J&J Consumer Inc.'s 20% responsibility, based on several liability; and

4.  $541,226.57 for costs of suit.

The amounts to which the parties are entitled under this judgment shall bear interest at the rate of 10 percent per annum from the date of entry of this judgment, or earlier under Civil Code section 3291, until the date it is satisfied.

This Court retains jurisdiction to determine appropriate judgment credits and enforce settlement agreements until further order of the Court. Additionally, there shall be no double-recovery of the damages and costs for which J&J and J&J Consumer Inc. are jointly and severally liable.

This judgment is entered nunc pro tunc to March 22, 2019.

DATED: 12/31/19

_____
Judge Brad Seligman

(Proposed) Amended Judgment on Special Verdict

Kazan, McClain, Satterley & Greenwood
A Professional Law Corporation

Jack London Market • 55 Harrison Street, Suite 400 • Oakland, California 94607
(510) 302-1000 • Fax (510) 835-4913 • www.kazanlaw.com

# Exhibit 1

20908622

Alameda County Superior Court
Case No. RG17882401

F I L E D
ALAMEDA COUNTY

MAR 1 3 2019

OF THE SUPERIOR COURT
_____ Deputy

Negligence

1.  Was defendant negligent?

    Cyprus Mines Corporation              Yes  X       No ___

    Johnson & Johnson                     Yes  X       No ___

    Johnson & Johnson Consumer Inc.       Yes  X       No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all
defendants, go to question 3.*

2.  Was defendant's negligence a substantial factor in contributing to Teresa Leavitt's risk of
    developing mesothelioma?

    Cyprus Mines Corporation              Yes  X       No ___

    Johnson & Johnson                     Yes  X       No ___

    Johnson & Johnson Consumer Inc.       Yes  X       No ___

*Answer the next question.*

1718493.1                                    1                                    EXHIBIT __1__

<u>Strict Product Liability – Design Defect</u>

3.     Did defendant's product fail to perform as safely as an ordinary consumer would have
expected it to perform when used in an intended or a reasonably foreseeable way?

| | | |
|---|---|---|
| Cyprus Mines Corporation | Yes ___ | No ✗ |
| Johnson & Johnson | Yes ✗ | No ___ |
| Johnson & Johnson Consumer Inc. | Yes ✗ | No ___ |

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all
defendants, go to question 5.*

4.     Was defendant's product's failure to perform safely a substantial factor contributing to
Teresa Leavitt's risk of developing mesothelioma?

| | | | |
|---|---|---|---|
| Cyprus Mines Corporation | Yes ___ | No ___ | n/a |
| Johnson & Johnson | Yes ✗ | No ___ | |
| Johnson & Johnson Consumer Inc. | Yes ✗ | No ___ | |

*Answer the next question.*

<u>Strict Product Liability – Failure to Warn</u>

5.     Did defendant's product have potential risks that were known or knowable in light of the
scientific and medical knowledge that was generally accepted in the scientific community
available at the time of manufacture, distribution or sale?

| | | |
|---|---|---|
| Cyprus Mines Corporation | Yes ✗ | No ___ |
| Johnson & Johnson | Yes ✗ | No ___ |
| Johnson & Johnson Consumer Inc. | Yes ✗ | No ___ |

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all
defendants, go to the instructions prior to question 10.*

6.    Did the potential risks present a substantial danger to persons using the product in an intended or reasonably foreseeable way?

Cyprus Mines Corporation          Yes X          No ___

Johnson & Johnson                Yes X          No ___

Johnson & Johnson Consumer Inc.   Yes X          No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question 10.*

7.    Would ordinary consumers have failed to recognize the potential risks of defendants' products?

Cyprus Mines Corporation          Yes X          No ___

Johnson & Johnson                Yes X          No ___

Johnson & Johnson Consumer Inc.   Yes X          No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question 10.*

8.    Did defendant fail to adequately warn of the potential risks?

Cyprus Mines Corporation          Yes X          No ___

Johnson & Johnson                Yes X          No ___

Johnson & Johnson Consumer Inc.   Yes X          No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question 10.*

9.    Was the lack of sufficient warnings a substantial factor in contributing to Teresa Leavitt's risk of developing mesothelioma?

Cyprus Mines Corporation          Yes ___        No X

Johnson & Johnson                Yes X          No ___

Johnson & Johnson Consumer Inc.   Yes X          No ___

*If you answered "Yes" as to Cyprus Mines Corporation for question number 9, answer the next question. Otherwise, go to question No. 12.*

<u>Sophisticated Intermediary – Applicable only to Cyprus Mines Corporation</u>

10.    Did Cyprus Mines Corporation know that Johnson & Johnson and Johnson & Johnson Consumer, Inc. were aware of, or should have been aware of, potential risks of Cyprus Mines Corporation's product?

Yes____    No____    n/a

*If "Yes" answer the next question.  If "No," go to question No. 12.*

11.    Did Cyprus Mines Corporation actually and reasonably rely on Johnson & Johnson and Johnson & Johnson Consumer, Inc. to convey adequate warnings of the particular risks in the use of its product to those who, like Teresa Leavitt, might encounter the risks in Cyprus Mines Corporation's product?

Yes____    No____    n/a

*Answer the next question.*

## Concealment

12.   Was Teresa Leavitt a buyer of a product sold by defendant?

Johnson & Johnson                            Yes  X      No ___

Johnson & Johnson Consumer Inc.              Yes  X      No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to question No. 17.*

13.   Did defendant disclose some facts to Teresa Leavitt, but intentionally failed to disclose other facts, making the disclosure deceptive?

Johnson & Johnson                            Yes  X      No ___

Johnson & Johnson Consumer Inc.              Yes  X      No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to question No. 17.*

14.   Did defendant intend to deceive Teresa Leavitt by concealing the fact?

Johnson & Johnson                            Yes  X      No ___

Johnson & Johnson Consumer Inc.              Yes  X      No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to question No. 17.*

15.   Had the omitted information been disclosed, would Teresa Leavitt reasonably have behaved differently?

Johnson & Johnson                            Yes  X      No ___

Johnson & Johnson Consumer Inc.              Yes  X      No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to question No. 17.*

16.   Was defendant's concealment a substantial factor in contributing to Teresa Leavitt's risk of developing mesothelioma?

Johnson & Johnson                              Yes X̲    No ___

Johnson & Johnson Consumer Inc.                Yes X̲    No ___

*Answer the next question.*

Intentional Misrepresentation  — unable to reach a verdict

17.   Did defendant make a false representation of a fact to Teresa Leavitt?

Johnson & Johnson                              Yes ___    No ___

Johnson & Johnson Consumer Inc.                Yes ___    No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question No. 22.*

18.   Did defendant know the representation was false, or did it make the representation recklessly and without regard for its truth?

Johnson & Johnson                              Yes ___    No ___

Johnson & Johnson Consumer Inc.                Yes ___    No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question No. 22.*

19.   Did defendant intend that Teresa Leavitt rely on the representation?

Johnson & Johnson                              Yes ___    No ___

Johnson & Johnson Consumer Inc.                Yes ___    No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question No. 22.*

20.   Did Teresa Leavitt reasonably rely on defendant's representation?

Johnson & Johnson                           Yes ___      No ___ .

Johnson & Johnson Consumer Inc.             Yes ___      No ___

*If "Yes" as to any defendant, answer the next question as to that defendant. If "No" as to all defendants, go to the instructions prior to question No. 22.*

21.   Was Teresa Leavitt's reliance on defendant's representation a substantial factor in contributing to Teresa Leavitt's risk of developing mesothelioma?

Johnson & Johnson                           Yes ___      No ___

Johnson & Johnson Consumer Inc.             Yes ___      No ___

*If you answered "YES" to any defendant for Question 2, 4, 9, 16, or 21, answer the next question. If you answered "NO" for all defendants for Questions 2, 4, 9, 16, or 21, the presiding juror should sign and date this form and return it to the Court Attendant.*

22.   **Economic Damages**

A.   As a result of her mesothelioma, what is the total amount of Teresa Leavitt's economic damages for past medical expenses?

*fix the "2"*    $ ~~$8.91,000~~   $291,000

B.   As a result of her mesothelioma, what is the total amount of Teresa Leavitt's economic damages for future medical expenses?

$ $1,000,000

*Answer the next question.*

23.   As a result of her mesothelioma, what is the total amount of Teresa Leavitt's economic damages for the present value of past and future income loss and past and future household services?

$ $1,200,000.00

<u>Plaintiff Teresa Leavitt</u>

24. A.   What are plaintiff Teresa Leavitt's damages for past physical pain, mental suffering, loss of enjoyment of life, physical impairment, inconvenience, anxiety, and emotional distress, disfigurement, and humiliation?

   $    $7,000,000

   B.   What are plaintiff Teresa Leavitt's damages for future physical pain, mental suffering, loss of enjoyment of life, physical impairment, inconvenience, anxiety, and emotional distress, disfigurement, and humiliation?

   $    $15,000,000

*Answer the next question.*

<u>Plaintiff Dean J. McElroy</u>

25. A.   What are plaintiff Dean McElroy's damages for past loss of plaintiff Teresa Leavitt's love, companionship, comfort, care, assistance, protection, affection, society, moral support, and sexual relations?
   $    $2,000,000

   B.   What are plaintiff Dean McElroy's damages for future loss of plaintiff Teresa Leavitt's love, companionship, comfort, care, assistance, protection, affection, society, moral support, and sexual relations?

   $    $3,000,000

*Answer the next question.*

26. What percentage of responsibility, if any, for Teresa Leavitt's mesothelioma do you assign to each of the following? (The total must equal 100%):

| | |
|---|---|
| Cyprus Mines Corporation | 2 % |
| Flintkote | 0 % |
| Imerys Talc America | 0 % |
| Johnson & Johnson | 78 % |
| Johnson & Johnson Consumer Inc. | 20 % |
| W.R. Grace/California Zonolite | 0 % |
| TOTAL | 100% |

*If you answered "Yes," as to Johnson & Johnson and/or Johnson & Johnson Consumer Inc. in question 2, 4, 9, 16, or 21, then answer question 27 as to that defendant. If you did not answer "Yes" as to Johnson & Johnson and/or Johnson & Johnson Consumer Inc. in question 2, 4, 9, 16, or 21, then answer no further questions and have the Presiding Juror sign and date this form.*

27. Have the plaintiffs proven by clear and convincing evidence that defendant acted with malice, fraud or oppression in the conduct upon which you base your finding of liability?

| | | |
|---|---|---|
| Johnson & Johnson | Yes ___ | No X |
| Johnson & Johnson Consumer Inc. | Yes ___ | No X |

*If "Yes," as to any defendant answer the next question as to that defendant.*

28. Do you find by clear and convincing evidence that the conduct constituting malice, oppression, or fraud was committed or authorized by one or more of the officers, directors, or managing agents acting on behalf of defendant?

| | | | |
|---|---|---|---|
| Johnson & Johnson | Yes ___ | No ___ | n/a |
| Johnson & Johnson Consumer Inc. | Yes ___ | No ___ | |

*If "Yes," as to any defendant answer the next question as to that defendant.*

29. What amount of punitive damages, if any, do you award?

| | |
|---|---|
| Johnson & Johnson | n/a |
| Johnson & Johnson Consumer Inc. | n/a |

9

*Please have the presiding juror sign and date this form and return it to the Court Attendant.*

DATED:  3/13/19 _____            ___ Jenea Haws ___ ___

<span style="margin-left:5em;">Presiding Juror</span>

# Exhibit 2

CIV-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Denyse F. Clancy, Esq (CSB #255276) Ted W. Pelletier, Esq (CSB #172938) KAZAN, McCLAIN, SATTERLEY & GREENWOOD 55 Harrison Street, Suite 400 Oakland, CA 94607 | |

TELEPHONE NO  (510) 302-1000     FAX NO *(Optional)* (510) 835-4913
E-MAIL ADDRESS *(Optional)*  DClancy@kazanlaw com
ATTORNEY FOR *(Name)*:  Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS:  1225 Fallon Street
MAILING ADDRESS:  1225 Fallon Street
CITY AND ZIP CODE:  Oakland, 94612
BRANCH NAME:  Rene C. Davidson Alameda County Courthouse

PLAINTIFF/PETITIONER: TERESA ELIZABETH LEAVITT and DEAN J. MCELROY

DEFENDANT/RESPONDENT: JOHNSON & JOHNSON, et al

*ENDORSED FILED ALAMEDA COUNTY*

*MAR 1 8 2019*

*CLERK OF THE SUPERIOR COURT By. MICHELLE BANKS*

| REQUEST FOR DISMISSAL | CASE NUMBER: RG17882401  Deputy |
|---|---|

A conformed copy will not be returned by the clerk unless a method of return is provided with the document.

This form may not be used for dismissal of a derivative action or a class action or of any party or cause of action in a class action. (Cal. Rules of Court, rules 3.760 and 3.770.)

1. TO THE CLERK: Please dismiss this action as follows:
   a. (1) X With prejudice    (2) ☐ Without prejudice
   b. (1) ☐ Complaint    (2) ☐ Petition
   (3) ☐ Cross-complaint filed by *(name)*:     on *(date)*:
   (4) ☐ Cross-complaint filed by *(name)*:     on *(date)*:
   (5) ☐ Entire action of all parties and all causes of action
   (6) X Other *(specify)*: * Cause of Action for Intentional Misrepresentation ONLY against Johnson & Johnson and Johnson & Johnson Consumer Inc

2. *(Complete in all cases except family law cases.)*
   The court ☐ did    X did not waive court fees and costs for a party in this case. *(This information may be obtained from the clerk. If court fees and costs were waived, the declaration on the back of this form must be completed.)*

Date: March 15, 2019

Ted W. Pelletier ▶ *(SIGNATURE)*
TYPE OR PRINT NAME OF  X ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

Dismissal requested is of specified parties only of specified causes of action only, or of specified cross-complaints only, so state and identify the parties, causes of action, or cross-complaints to be dismissed.

Attorney or party without attorney for
X Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

TO THE CLERK: Consent to the above dismissal is hereby given.**
Date.

▶ *(SIGNATURE)*
TYPE OR PRINT NAME OF  ☐ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

* If a cross-complaint – or Response (Family Law) seeking affirmative relief – is on file, the attorney for cross-complainant (respondent) must sign this consent if required by Code of Civil Procedure section 581 (i) or (j).

Attorney or party without attorney for:
☐ Plaintiff/Petitioner    ☐ Defendant/Respondent
☐ Cross-Complainant

*(To be completed by clerk)*
4. ☑ Dismissal entered as requested on *(date)*: 3/18/19
5. ☐ Dismissal entered on *(date)*:    as to only *(name)*:
6. ☐ Dismissal not entered as requested for the following reasons *(specify)*:

7. a. ☐ Attorney or party without attorney notified on *(date)*:
   b. ☐ Attorney or party without attorney not notified. Filing party failed to provide
   ☐ a copy to be conformed    ☐ means to return conformed copy

Date: 3/18/19    Clerk, by _____, Deputy

Form Adopted for Mandatory Use
Judicial Council of California
CIV-110 (Rev Jan 1, 2013)
17195RR 1

REQUEST FOR DISMISSAL

Code of Civil Procedure, § 581 et seq;
Gov Code, § 68637(c)  Cal Rules of Court, rule 3.1390
www.courts.ca.gov

EXHIBIT 2

CIV-110

| PLAINTIFF/PETITIONER: TERESA ELIZABETH LEAVITT and DEAN J. MCELROY | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: JOHNSON & JOHNSON, et al. | RG17882401 |

---

**COURT'S RECOVERY OF WAIVED COURT FEES AND COSTS**

If a party whose court fees and costs were initially waived has recovered or will recover $10,000 or
more in value by way of settlement, compromise, arbitration award, mediation settlement, or other
means, the court has a statutory lien on that recovery. The court may refuse to dismiss the case until
the lien is satisfied. (Gov. Code, § 68637.)

---

### Declaration Concerning Waived Court Fees

1. The court waived court fees and costs in this action for *(name):*

2. The person named in item 1 is *(check one below):*
   a. ☐ not recovering anything of value by this action.
   b. ☐ recovering less than $10,000 in value by this action.
   c. ☐ recovering $10,000 or more in value by this action. *(If item 2c is checked, item 3 must be completed.)*

3. ☐ All court fees and court costs that were waived in this action have been paid to the court *(check one):* ☐ Yes  ☐ No

I declare under penalty of perjury under the laws of the State of California that the information above is true and correct.

Date: _____

▶ _____

_____
(TYPE OR PRINT NAME OF ☐ ATTORNEY ☐ PARTY MAKING DECLARATION)                      (SIGNATURE)

American LegalNet, Inc.

# Exhibit 2

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 24 of 177

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

KeyCite Red Flag - Severe Negative Treatment
Unpublished/noncitable   August 5, 2021

2021 WL 3418410
Not Officially Published
(Cal. Rules of Court, Rules
8.1105 and 8.1110, 8.1115)
Only the Westlaw citation
is currently available.

California Rules of Court, rule 8.1115,
restricts citation of unpublished
opinions in California courts.

Court of Appeal, First District,
Division 5, California.

Teresa Elizabeth LEAVITT et
al., Plaintiffs and Respondents,
v.
JOHNSON & JOHNSON et
al., Defendants and Appellants.

A157572, A159021
|
Filed 8/5/2021

(Alameda County Super. Ct. No.
RG-17882401)

**Attorneys and Law Firms**

Joseph D. Satterley, Denyse F. Clancy, Michael
T. Stewart, Kazan, McClain, Satterley &
Greenwood & Oberman, 55 Harrison Street,
Suite 400, Oakland, CA 94607, for Plaintiff and
Respondent.

Paul R. Johnson, Amy Zumsteg, Alexander G.
Calfo, Matthew K. Ashby, King & Spalding
LLP, 633 W. 5th St., Ste. 1600, Los Angeles,
CA 90071-2030, Nathan Craig Dullum, Orrick
Herrington & Sutcliffe LLP, The Orrick
Bldg, 405 Howard St, San Francisco, CA
94105-2669, Upnit K. Bhatti, Robert M.
Loeb, Tiffany R. Wright, Orrick Herrington
& Stufcliffe LLP, 1152 15th Street, NW,
Washington, DC 20005, for Defendant and
Appellant.

**Opinion**

BURNS, J.

**\*1** Teresa Elizabeth Leavitt and her
husband, Dean J. McElroy (collectively,
plaintiffs), asserted negligence, strict product
liability, and fraud claims against Johnson &
Johnson and Johnson & Johnson Consumer
Inc. (collectively, defendants), alleging that
Johnson's Baby Powder was contaminated with
asbestos and that Leavitt's long-term use of
the product caused her mesothelioma. After
a nine-week trial, the jury returned a special
verdict in plaintiffs' favor on all claims except
for intentional misrepresentation. Defendants
appeal, contending that the trial court made
evidentiary and instructional errors, and that
substantial evidence does not support the jury's
causation findings. We conclude defendants
have not demonstrated prejudicial error and
affirm.

**BACKGROUND**

**A.**

A plaintiff seeking to hold a manufacturer
liable for asbestos-related latent injuries must
satisfy a two-part causation test. (Rutherford

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 25 of 177

*v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 982–983 (*Rutherford*).) Specifically, "the plaintiff must first establish some threshold *exposure* to the defendant's defective asbestos-containing products, *and* must further establish in reasonable medical probability that a particular exposure or series of exposures was a 'legal cause' of his injury, i.e., a substantial factor in bringing about the injury." (⚑*Id.* at p. 982, some italics omitted.)

When the plaintiff alleges she developed mesothelioma because of exposure to asbestos-contaminated talc, the plaintiff must satisfy the first prong (exposure) with evidence that supports an inference of probability—that it is more likely than not the talc product was contaminated with asbestos when the plaintiff used it. (⚑*LAOSD Asbestos Cases* (2020) 44 Cal.App.5th 475, 489; ⚑*Berg v. Colgate-Palmolive Co.* (2019) 42 Cal.App.5th 630, 635 (*Berg*).) A mere possibility that the plaintiff was exposed to a defendant's asbestos-contaminated product is insufficient. (*Berg, supra,* at p. 635.)

With respect to the second prong, plaintiff need not prove that "fibers from the defendant's particular product were the ones, or among the ones, that actually produced the malignant growth." (⚑*Rutherford, supra,* 16 Cal.4th at pp. 976–977, italics omitted.) Rather, a plaintiff can demonstrate legal causation by proving that his or her "exposure to defendant's asbestos-containing product in reasonable medical probability was a substantial factor in contributing to the aggregate dose of asbestos the plaintiff or decedent inhaled or ingested, and hence to the risk of developing asbestos-

related cancer." (*Ibid.*, italics omitted.) In other words, "a particular asbestos-containing product is deemed to be a substantial factor in bringing about the injury if its contribution to the plaintiff or decedent's risk or probability of developing cancer was substantial." (⚑*Id.* at p. 977, italics omitted.) The substantial factor standard is relatively broad, requiring only that the contribution of the exposure be "more than negligible or theoretical." (⚑*Id.* at p. 978.) Factors relevant to that assessment include "the length, frequency, proximity and intensity of [asbestos] exposure, the peculiar properties of the individual product, [and] any other potential causes to which the disease could be attributed." (⚑*Id.* at p. 975.)

**B.**

**\*2** Leavitt was born in the Philippines in 1966. When she was an infant, Leavitt's mother and other caretakers applied Johnson's Baby Powder to her after diaper changes and baths. After Leavitt moved to the United States in 1968, she continued to regularly use the product after bathing and then, as a teenager, began applying it to her face, as a powder, and to her hair, as a dry shampoo. She stopped using Johnson's Baby Powder in approximately 1998.

In 2017, at the age of 51, Leavitt was diagnosed with mesothelioma—a rare type of cancer that is primarily caused by exposure to asbestos. The average time between exposure and mesothelioma diagnosis is 30 to 35 years.

Johnson's Baby Powder is made of talc. Talc is a very soft mineral that is mined from the earth

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 26 of 177

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

and ground up for use in cosmetic products. There are two kinds of talc – "fibrous" talc and "platy" talc. Fibrous talc is long, thin, and has parallel sides, whereas platy talc is disc-shaped. During the relevant time period, Johnson & Johnson sourced its cosmetic talc sold in the Philippines from talc mines in South Korea. Defendants sourced cosmetic talc sold in the United States from mines in Vermont (except for a very brief period of time when talc was sourced from Italy).

"Asbestos" generally refers to a group of minerals that, when occurring in an "asbestiform habit," are federally regulated: chrysotile, amosite, crocidolite, tremolite, anthophyllite, and actinolite. (See, e.g., 15 U.S.C. § 2642(3) [Asbestos Hazard Emergency Response Act].) Plaintiffs' experts testified that there is also a "public health" definition of asbestos, which focuses on whether a particular substance is harmful because its individual fibers have aerodynamic dimensions that can penetrate the alveoli, deep in the lungs. Although they are not included in the federal government's definition, plaintiffs' experts opined that winchite-richterite and fibrous talc are also asbestiform structures that cause mesothelioma.

### C.

Leavitt and her husband filed suit for personal injury and loss of consortium against, among other defendants, Johnson & Johnson and Johnson & Johnson Consumer Inc., each of which manufactured and distributed Johnson's Baby Powder during the time Leavitt used it. Plaintiffs alleged that Leavitt's exposure to

asbestos in Johnson's Baby Powder caused her mesothelioma.

The following causes of action were eventually tried and submitted for the jury's consideration on a special verdict form: (1) strict products liability (design defect and failure to warn of risk); (2) negligence; and (3) fraud (concealment and intentional misrepresentation).

### D.

Although there is no dispute that exposure to asbestos causes mesothelioma, plaintiffs' and defense experts disagree about whether that relationship depends on the dose. Plaintiffs' epidemiology expert testified that there is no safe level of exposure to asbestos, whereas defense experts testified that asbestos exposure must exceed a threshold (or be above "background" levels found in ambient air) to cause disease. The jury was also tasked with resolving many other disputed issues — what structures are correctly identified as asbestos, whether it is more likely than not that the Johnson's Baby Powder used by Leavitt contained asbestos, and, if it did, whether Leavitt's use of Johnson's Baby Powder substantially contributed to her risk of developing mesothelioma. (⚑ *Rutherford, supra*, 16 Cal.4th at pp. 976-977.)

### E.

Plaintiffs presented expert testimony from, among other witnesses, materials scientist

William Longo, Ph.D.; two pathologists—Jerrold Abraham, M.D. and Ronald Dodson, Ph.D.; and occupational and preventive medicine physician and epidemiologist David Egilman, M.D.

 **\*3** Plaintiffs sought to establish Leavitt's exposure to asbestos primarily through Dr. Longo, who is a former materials science professor and current consultant. He testified that he found asbestos contamination in multiple samples of Johnson's Baby Powder. Dr. Longo did not obtain any samples from containers Leavitt possessed or find asbestos in a bottle of Johnson's Baby Powder that came directly from a store shelf in 2016.

However, Dr. Longo found asbestos in Johnson's Baby Powder samples produced by defendants. In six out of seven of such samples that were originally sourced from Korean mines, he detected tremolite-actinolite asbestos. In those six samples, Dr. Longo testified that asbestos levels ranged from below 0.1 up to 0.3 percent by weight, which amounted to between 29,000 and 65,000 asbestos fibers per gram of talc. Dr. Longo also found asbestos, including tremolite asbestos and anthophyllite asbestos, in 25 of the 41 Vermont-sourced cosmetic talc samples produced by defendants. Asbestos concentration levels in these Vermont-sourced samples did not exceed 95,000 asbestos fibers per gram.

Before obtaining the defense-produced samples, Dr. Longo also tested samples from "vintage" Johnson's Baby Powder containers, which were obtained by plaintiffs' lawyers from various "collectors." Samples from these containers, which had been previously opened at some unidentified point between manufacture and testing, showed the highest levels of asbestos contamination.

Based on the results he obtained solely from testing the defense-produced samples as well as his review of discovery and published literature, Dr. Longo opined that Johnson's Baby Powder, sourced from Korean and Vermont mines, and sold between 1966 and 1998, contained asbestos and that Leavitt was exposed to asbestos through her use of such products.

Dr. Dodson and Dr. Abraham examined tissue specimens taken from Leavitt's lymph nodes and lungs, using electron microscopy and x-ray spectrum analysis. They found chrysotile asbestos, tremolite asbestos, and either anthophyllite or fibrous talc in her lymph node tissue. They found platy talc, winchite-richterite, plus either anthophyllite or fibrous talc in her lung tissue. Plaintiffs' experts opined that the asbestiform structures could not have come from background exposure because anthophyllite and tremolite fibers are not found in commercial asbestos products that might otherwise have been the source.

Both of plaintiffs' expert pathologists, as well as Dr. Egilman, testified that Leavitt's exposure to asbestos and asbestiform fibers in Johnson's Baby Powder was a substantial factor contributing to her risk of developing mesothelioma.

**F.**

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 28 of 177

Plaintiffs also presented evidence from defendants' corporate documents and historical laboratory test reports that suggested defendants knew, from at least the 1960's or 1970's, that their cosmetic talc (sourced from both the Korean and Vermont mines) contained trace amounts of asbestos.

Dr. Seymour Lewin and Dr. Arthur Langer reported, in the 1970's, finding possible asbestos in samples of cosmetic talc, including Johnson's Baby Powder. When independent labs conducted follow-up testing, they found no (or extremely limited) contamination. Dr. Lewin then stated publicly that he found no asbestos in nine of 11 samples of Johnson's Baby Powder and that the results from the other two samples were "inconclusive." Dr. Langer publicly stated that only "trace" amounts of asbestos were detected and that he "may have mistaken long talcum fibers for asbestos fibers."

 *4  In 1991, Alice Blount, Ph.D., documented, in a peer-reviewed and published paper, the existence of trace levels of tremolite asbestos in a sample of Johnson's Baby Powder, sourced from the Vermont mines.

Plaintiffs also suggested that defendants used methods and protocols for testing their cosmetic talc—primarily x-ray diffraction without use of concentration methods or transmission electron microscopy—that they knew were not sufficiently accurate, to avoid detecting trace levels of asbestos (below 0.1 percent by weight).

### G.

The defense offered competing testimony about the validity, significance, and proper interpretation of Dr. Longo's test results, defendants' internal documents, and their historical laboratory reports.

The defense also presented evidence that it lacked notice of any health risk because the Food and Drug Administration concluded, in 1986, that an asbestos warning label was not required on cosmetic talc because "even when asbestos was present, the levels were so low that no health hazard existed."

Defendants offered opinion testimony from their own experts, most notably geologist Matthew Sanchez, Ph.D., pulmonologist David Weill, M.D., epidemiologist Suresh Moolgavkar, Ph.D. & M.B.B.S., and two pathologists, Richard Attanoos, M.B.B.S. and Brooke Mossman, Ph.D.

Dr. Sanchez testified that most, if not all, of the structures found in samples of Johnson's Baby Powder were nonasbestiform versions of tremolite, anthophyllite, and actinolite, which are considered cleavage fragments and are not harmful.

Dr. Weill conceded that asbestos causes mesothelioma but testified that the disease is dose dependent and that a threshold level of exposure to asbestos fibers is needed. According to Dr. Weill, there is a broad scientific consensus that exposure to background levels of asbestos is insufficient to increase the risk of mesothelioma. Similarly,

both Dr. Moolgavkar and Dr. Attanoos agreed that only exposure to asbestos above background levels increases the risk of developing mesothelioma.

Dr. Mossman opined that exposure to talc and cleavage fragments does not cause cancer. Dr. Weill, Dr. Moolgavkar, and Dr. Attanoos also testified that there was no epidemiological evidence linking talc to mesothelioma.

Dr. Attanoos examined samples from Leavitt's lung tissue and opined that Leavitt had not been exposed to asbestos fibers above background levels. He and Dr. Moolgavkar also opined that most cases of mesothelioma in North American women are not attributable to asbestos exposure at all. Most of such cases instead arise "spontaneous[ly]" or because of biological processes such as aging.

## H.

The jury found both Johnson defendants liable on plaintiffs' negligence, design defect, failure to warn, and concealment claims. The jury failed to reach a verdict on plaintiffs' intentional misrepresentation cause of action, and plaintiffs dismissed it after a mistrial was declared. The jury awarded plaintiffs $29.491 million in total compensatory damages, apportioning 98 percent of responsibility to the Johnson defendants. The remaining 2 percent of responsibility was allocated to a former owner of the Vermont talc mines, Cyprus Mines Corporation, with whom plaintiffs later settled. The jury awarded no punitive damages. The trial court entered judgment on the jury's special verdict.

## DISCUSSION

## A.

**\*5** Defendants maintain the trial court abused its discretion by allowing Dr. Longo to testify, over defendants' chain of custody and reliability objections, that he found richterite and other asbestos in certain vintage, unsealed bottles of Johnson's Baby Powder obtained from a "collector." Even if they are correct, defendants fail to meet their burden to demonstrate prejudice.

## 1.

When the issue is beyond the realm of common experience and expert opinion will assist the trier of fact (Evid. Code, § 801, subd. (a)), [1] qualified experts may testify, "with a proper foundation." (Jennings v. Palomar Pomerado Health Systems, Inc. (2003) 114 Cal.App.4th 1108, 1117.) But trial courts are required to act as gatekeepers to exclude speculative or irrelevant expert testimony. (Sargon Enterprises, Inc. v. University of Southern California (2012) 55 Cal.4th 747, 753 (Sargon); § 801.) Before admitting expert testimony, "a court may inquire into, not only the type of material on which an expert relies, but also whether that material actually supports the expert's reasoning. 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.' " (Id. at p. 771; accord, § 802.)

[1] Undesignated statutory references are to the Evidence Code.

But courts should not choose between competing expert opinions. (*Sargon, supra,* 55 Cal.4th at p. 772.) "The court must not weigh an opinion's probative value or substitute its own opinion for the expert's opinion. Rather, the court must simply determine whether the matter relied on can provide a reasonable basis for the opinion or whether that opinion is based on a leap of logic or conjecture. The court does not resolve scientific controversies. Rather, it conducts a 'circumscribed inquiry' to 'determine whether, as a matter of logic, the studies and other information cited by experts adequately support the conclusion that the expert's general theory or technique is valid.' [Citation.] The goal of trial court gatekeeping is simply to exclude 'clearly invalid and unreliable' expert opinion." (*Ibid.*)

Expert testimony regarding a tested specimen or sample may also be excluded on "chain of custody" grounds. (*People v. Catlin* (2001) 26 Cal.4th 81, 134 (*Catlin*); see *Sargon, supra,* 55 Cal.4th at p. 772 ["decisional law ... may also provide reasons for excluding expert opinion testimony"]; *Geffcken v. D'Andrea* (2006) 137 Cal.App.4th 1298, 1308.) When chain of custody is questioned, the party offering the evidence bears the burden of showing that it is reasonably certain the samples were not altered considering all the circumstances, including the ease or difficulty of alteration. (*Catlin, supra,* 26 Cal.4th at p. 134.) The standard of review is abuse of discretion. (*Catlin, supra,* 26 Cal.4th at p. 134; *Sargon, supra,* 55 Cal.4th at p. 773.)

We may only reverse the judgment if appellants meet their burden to affirmatively demonstrate, with an adequate record, both error and a reasonable probability of a more favorable result absent the error. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 (*Soule*); *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 ["a party challenging a judgment has the burden of showing reversible error by an adequate record"]; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*) [judgment challenged on appeal is presumed to be correct and appellant bears burden to affirmatively demonstrate error].) There is no presumption that an evidentiary error is prejudicial. (Code Civ. Proc., § 475; Evid. Code, § 353, subd. (b).)

**2.**

**\*6** Dr. Longo tested two sets of samples. First, he tested samples from "vintage" Johnson's Baby Powder containers obtained by plaintiffs' lawyers from various "collectors." Specifically, Dr. Longo received three unsealed containers from plaintiffs' lawyers (M65228-001, M65208-001, and M6205-001), which plaintiffs' lawyers obtained from a "collector" named Steven Berkness. At trial, Dr. Longo testified specifically about one such sample (M65228-001). He tested this sample, using polarized light microscopy and transmission electron microscopy, and found that it contained tremolite asbestos and winchite-richterite. Dr. Longo also testified,

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 31 of 177

on cross-examination, that samples from these Berkness containers, which had been previously opened at some unidentified point between manufacture and testing, showed the highest levels of asbestos contamination (in excess of 95,000 fibers per gram).

The second set of samples were produced by defendants. When he tested these samples, Dr. Longo testified, he found asbestos contamination in a majority of them. In the defense-produced samples, asbestos concentration levels did not exceed 95,000 asbestos fibers per gram.

Before trial, defendants filed motions in limine that argued Dr. Longo should be precluded from offering opinions based on results obtained from testing both the "collector" talc samples and certain of the subsequently obtained defense-produced samples. They raised both chain of custody and *Sargon*/ reliability objections.

Defendants argued that the absence of a chain of custody was particularly problematic with the Berkness samples because Dr. Longo's test results—especially his finding of richterite —"suggest that the talcum powder may have been contaminated after it was sold." Defendants also argued that Dr. Longo should be precluded from opining, based on these test results, that the Johnson's Baby Powder Leavitt used was contaminated with asbestos. In the alternative, defendants asked the court to hold a 🚩section 402 hearing to determine the reliability of Dr. Longo's testimony under *Sargon*.

In opposing the defense motions in limine, plaintiffs admitted the unsealed, vintage samples from collectors lacked chains of custody before Dr. Longo received them. However, plaintiffs pointed to affidavits and deposition testimony wherein Dr. Longo opined, based on the appearance of interior caps that cannot be removed by hand and would show visible evidence of tampering, that the tested samples are authentic Johnson's Baby Powder. In further support, plaintiffs pointed to Dr. Longo's testimony that the interior cap's small holes cannot be used to refill the bottle. However, plaintiffs and Dr. Longo also admit that a simple technique exists, and is shown in a YouTube video, for refilling such a container through those same small holes.

The trial court denied the defense motions on the basis that plaintiffs had sufficiently shown "authenticity," citing Dr. Longo's testimony regarding the condition of the bottles, the evidence "that it would be extremely difficult, if not impossible, to put material in through the little holes," and Dr. Longo's finding that particle size was consistent in the samples without chains of custody and in a control bottle of Johnson's Baby Powder purchased directly off the shelf. The court did not address the technique shown in the YouTube video.

At trial, Dr. Longo opined that Johnson's Baby Powder, sourced from Korean and Vermont mines, and sold between 1966 and 1998, contained asbestos and that Leavitt was exposed to asbestos through her use of such products.

Dr. Longo also testified that he performed an exposure study, wherein a consumer's use

Leavitt v. Johnson & Johnson, Not Reported in Cal. Rptr. (2021)

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 32 of 177

of Johnson's Baby Powder was simulated, and airborne asbestos exposure levels were measured. Relying on the results of this study, among other things, Dr. Longo opined, over defendants' objection, that Leavitt was significantly exposed to asbestos by using Johnson's Baby Powder. Finally, Dr. Longo also opined, offering little in the way of explanation, that Leavitt's "range of exposures ... range from approximately 0.1 regulated asbestos fibers per cc to 1.0 regulated asbestos fibers per cc."

### 3.

**\*7** We assume, without deciding, that defendants preserved their chain of custody and *Sargon* objections to Dr. Longo's testimony regarding the Berkness sample testing results. [2] We also assume that defendants are right—that the trial court abused its discretion in admitting this evidence because, without reasonable certainty that the Berkness samples were unaltered samples of Johnson's Baby Powder, the Berkness test results could not offer any reliable support for Dr. Longo's opinion that Leavitt used Johnson's Baby Powder contaminated with asbestos. Nonetheless, defendants fail to meet their burden to establish prejudice.

[2]    Defendants have abandoned their argument (raised below) that some subset of the defense-produced samples were also an unreliable basis for Dr. Longo's opinions. (See ⚐ *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294 [disregarding "loose and

disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument"].)

In addition to the "collector" talc samples, Dr. Longo tested numerous other Johnson's Baby Powder samples, including those that were produced directly by defendants and to which defendants have not preserved any evidentiary challenge on appeal. Some of those defense-produced samples were determined to contain no detectable asbestos, but Dr. Longo detected asbestos in a majority of them (both Korean-sourced and Vermont-sourced samples). It was *these* results alone (from the *defense-produced* samples) on which Dr. Longo relied to opine that the Korean-sourced and Vermont-sourced Johnson's Baby Powder contained asbestos at the relevant time.

Furthermore, this evidence was corroborated by Dr. Blount's peer-reviewed research documenting, in the 1990's, trace asbestos contamination of Johnson's Baby Powder. Dr. Webber also opined, based on his review of historical test results, that Johnson's Baby Powder, sourced from Vermont during the relevant time, was contaminated with asbestos. Accordingly, we cannot conclude, without more, that it is reasonably probable the jury would have reached a different result in the absence of Dr. Longo's challenged testimony. (See ⚐ *Soule, supra,* 8 Cal.4th at p. 574.)

### 4.

Defendants also contend that another opinion by Dr. Longo—that Leavitt was significantly exposed to asbestos through her use of

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 33 of 177

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

asbestos-contaminated Johnson's Baby Powder —should also have been excluded on chain of custody and reliability grounds. The record does not support defendants' assertions that the trial court abused its discretion or that any error was prejudicial.

Defendants maintain that the trial court's admission of this evidence, over defendants' objection, was an abuse of discretion because Dr. Longo's significant exposure opinion relied on his exposure study, which in turn used an "outlier" Berkness sample (M65205-001) to test asbestos exposure levels after a simulated application. Dr. Longo admitted at trial that he identified asbestiform structures in that sample in a *far* higher concentration than in any other sample.

However, defendants cannot show an abuse of discretion. Dr. Longo's "significant exposure" opinion was not based solely on his exposure study, and, indeed, the record does not indicate that the opinion turns on the Berkness sample (M65205-001). In addition to his exposure study and unspecified "test results," Dr. Longo testified that he based his quantification opinions on exposure estimates from Johnson & Johnson and others, Leavitt's and her mother's testimony about the frequency of Leavitt's Baby Powder use, Dr. Abraham's examination of Leavitt's tissue, and the "published literature." Defendants did not ask Dr. Longo, on cross-examination, to specify the sample used in his exposure study. Nor do the exposure quantification numbers that Dr. Longo provided at trial match the exposure levels Dr. Longo reported in the exposure study that defendants cite to us.

**\*8** In short, defendants cite nothing in the record to support their contention that Dr. Longo based his quantification opinions solely on results from the Berkness sample or that his opinion would have been different had he been precluded from relying on that outlier sample. Without a link between the purportedly unreliable basis and Dr. Longo's "significant exposure" opinion, we cannot say that the trial court abused its discretion in admitting it.

In any event, any error was harmless. The defense presented testimony from their own exposure assessment expert. This defense expert's "worst case" cumulative exposure estimates were based on assumed exposure levels that appear to be *higher* than those estimated by Dr. Longo at trial. Dr. Longo also testified that hypothetical use of cosmetic talc products with asbestos concentration levels lower than the outlier Berkness sample and —consistent with those found in the defense-produced Baby Powder samples, *not* the Berkness sample—would result in substantial exposure to asbestos. Defendants have failed to carry their burden to establish that any assumed evidentiary error was prejudicial.

**B.**

Defendants also contend that the trial court abused its discretion by admitting a purportedly unsupported opinion from Dr. Egilman— that fibrous talc itself causes mesothelioma —without testing its reliability. Defendants forfeited this argument and fail to demonstrate an abuse of discretion.

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 34 of 177

## 1.

In a motion in limine addressing many aspects of Dr. Egilman's anticipated testimony, defendants made a conclusory argument that one of his opinions—that fibrous talc causes mesothelioma—should be excluded because it lacked scientific support. In support, defendants' motion appears to have attached excerpts from various deposition transcripts as well as other exhibits, but the exhibits themselves are not included in the appellate record. The trial court provisionally denied the motion, making clear that its ruling did not preclude further objection or a motion to strike.

After plaintiffs' opening statement, defendants filed a motion for mistrial, arguing that the defense lacked notice of the plaintiffs' theory—that fibrous talc causes mesothelioma—because it was not pled. In denying that motion, the trial court referenced defendants' earlier motion in limine, which showed that the defendants were on notice. Defendants suggested a 🚩section 402 hearing was required. The trial court denied that request—because plaintiffs' case in chief was already underway—but indicated that defendants could file a motion to strike if cross-examination demonstrated that any opinion lacked support.

Dr. Dodson testified that "abestiform talc" is found in Johnson's Baby Powder, that he knows of no other place Leavitt would have been exposed to the causative entity for mesothelioma, and that exposure to Johnson's Baby Powder caused Leavitt's mesothelioma. Defense counsel unsuccessfully objected and moved to strike this testimony, but only on the ground that it was beyond the scope of Dr. Dodson's expertise.

During a break in Dr. Dodson's testimony, defense counsel stated, "with respect to the issue we raised in the mistrial motion, I just want to make sure that we have it preserved because ... the Court's ruling was we're going to wait and see what the witness says. There's been no foundation laid for his opinion that asbestiform talc ... cause[s] mesothelioma." The trial court said "your objection ... is preserved" but, pointing out that no questions were pending, asked if counsel was making a motion. Defense counsel did not make a motion to strike.

*9 Defense counsel asked Dr. Dodson, on cross-examination, about his prior deposition testimony—wherein Dr. Dodson conceded that fibrous talc had not been studied as a cause of mesothelioma. But, again, defense counsel made no motion to strike. Without objection from the Johnson defendants, Dr. Abraham also testified that "asbestiform talc" causes cancer. When Dr. Egilman testified that fibrous talc is itself carcinogenic and can cause mesothelioma, the Johnson defendants objected only on section 352 and "cumulative" grounds.

In support of his opinion, Dr. Egilman stated the International Agency for Research on Cancer (part of the World Health Organization) "considers [fibrous talc] a carcinogen." He briefly explained that fibrous talc's shape allows it to enter the deep lungs where it can persist for decades and induce the release of cytokines, and he alluded to published articles

by "Churg and Roggli" indicating that "fibrous talc is a cause of mesothelioma."

### 2.

We agree with plaintiffs that defendants forfeited the argument they now raise on appeal.

Defendants' motion in limine did not preserve a *Sargon* challenge because it was conclusory and not directed to identifiable evidence. (See *People v. Morris* (1991) 53 Cal.3d 152, 189 (*Morris*) [ruling on motion in limine preserves argument for appeal if specific, "directed to an identifiable body of evidence" and "advanced at a time when the trial judge could give fair consideration to the admissibility of the evidence in its context"], disapproved on other grounds by *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn.1; *People v. Whalen* (2013) 56 Cal.4th 1, 85 [appellant's failure to provide an adequate record requires resolution against her].)

Furthermore, the trial court denied defendants' motion in limine *without prejudice*. It also made clear it intended to address any *Sargon* issue only when the evidence was presented and it had sufficient context to properly consider the issue. (See *Morris, supra,* 53 Cal.3d at p. 189.) And it specifically invited defendants to develop the issue on cross examination and make a motion to strike. Thus, to preserve their *Sargon* challenge for appeal, it was necessary for defendants to object to (or to move to strike) plaintiffs' experts' opinions and press for a ruling at the evidentiary phase of trial. (See *id.* at pp. 189-190; *People v. Holloway* (2004) 33 Cal.4th 96, 133.) Having failed to do so on the same grounds they press on appeal, defendants' argument was forfeited. (§ 353, subd. (a); *Holloway, supra,* at pp. 132-133; *Morris, supra,* 53 Cal.3d at pp. 190-191.)

Even if their argument was not forfeited, defendants fail to meet their burden on appeal. (*Denham, supra,* 2 Cal.3d at p. 564.) They argue the trial court abdicated its gatekeeping role (*Sargon, supra,* 55 Cal.4th at p. 753), pointing to their own experts' testimony, as well as Dr. Dodson's and Dr. Abraham's admissions on cross-examination, that they were unaware of any studies showing fibrous talc causes mesothelioma on its own. They also contend the monograph by the International Agency for Research on Cancer does not support Dr. Egilman's opinion because it merely classifies " 'talc containing asbestos or other asbestiform fibres' " as a carcinogen without any discussion of the underlying evidence for that statement, and it does not state that inhaled fibrous talc causes the type of cancer at issue here, mesothelioma.

In their opening brief, however, defendants wholly fail to acknowledge, much less address, Dr. Egilman's reliance on published articles from "Churg and Roggli"—articles that purportedly indicate "fibrous talc" is a cause of mesothelioma. We cannot presume— as defendants ask us to do for the first time in their reply brief—that any research by Churg and Roggli does *not* support Dr. Egilman's stated opinion. (See *People v. Whalen, supra,* 56 Cal.4th at p. 85 [appellant's failure to provide an adequate record requires resolution

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 36 of 177

against her]; *Denham, supra*, 2 Cal.3d at p. 564 [judgment challenged on appeal is presumed correct].) The unnamed articles are not before us.

**\*10** We thus have an incomplete record that shows a mere conflict among the experts. Accordingly, defendants cannot demonstrate that the trial court abused its discretion. (See *Sargon, supra*, 55 Cal.4th at p. 772 ["court does not resolve scientific controversies"]; *Davis v. Honeywell Internat. Inc.* (2016) 245 Cal.App.4th 477, 492 ["[i]f [expert] opinion is based on materials on which the expert may reasonably rely on forming the opinion, and flows in a reasoned chain of logic from those materials rather than from speculation or conjecture, the opinion may pass, even though the trial court or other experts disagree with its conclusion"].)

### C.

Defendants insist judgment should be entered in their favor because the jury's causation findings are not supported by substantial evidence. We disagree.

### 1.

As we explained previously, a plaintiff seeking to hold a manufacturer liable for asbestos-related latent injuries must (1) "establish some threshold exposure to the defendant's defective asbestos-containing products," and (2) "further establish in reasonable medical probability that a particular exposure or series

of exposures was a 'legal cause' of his injury, i.e., a substantial factor in bringing about the injury." (*Rutherford, supra*, 16 Cal.4th at pp. 982–983, italics omitted.)

On the second prong inquiry, "*Rutherford* does not require a 'dose level estimation.' Instead, it requires a determination, to a reasonable medical probability, that the plaintiff's ... exposure to the defendant's asbestos-containing product was a substantial factor in contributing to the risk of developing mesothelioma." (*Davis v. Honeywell Internat. Inc., supra*, 245 Cal.App.4th at p. 492.)

### 2.

Viewing the record most favorably to plaintiffs, the jury's implicit first-prong exposure finding —that it is more likely than not that Johnson's Baby Powder was contaminated with asbestos when Leavitt used it—is supported by substantial evidence. (*LAOSD Asbestos Cases, supra*, 44 Cal.App.5th at p. 489; *Berg, supra*, 42 Cal.App.5th at p. 635.) In addition to Dr. Longo's testimony, the plaintiffs also presented Dr. Webber's contamination opinion based on historical test results, and evidence regarding Blount's testing in the 1990's—all of which corroborated Dr. Longo's opinion that Johnson's Baby Powder sourced from the Vermont and Korean mines in the relevant period was contaminated with asbestos.

Defendants suggest Leavitt could not establish exposure to asbestos without test results from samples sourced directly from bottles *she*

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 37 of 177

*actually* used. But we are not aware of any such burden. (See 🚩 *Lyons v. Colgate-Palmolive Co.* (2017) 16 Cal.App.5th 463, 468 ["[t]he absence of the packaging and testing of the very container that plaintiff used is hardly sufficient reason to reject the testimony identifying the product that she used, combined with the expert testimony that all of that product contained 'significant concentrations of airborne asbestos' "].) Here, if the jury believed that Dr. Longo correctly identified asbestos in most of the samples from the same talc mines that produced the talc Leavitt used for decades, they could reasonably infer that Leavitt more likely than not used baby powder that was similarly contaminated. (See 🚩 *id.* at p. 469.)

The jury's implicit causation finding is also supported by substantial evidence. Leavitt, her mother, and Leavitt's college roommate testified that Leavitt used Johnson's Baby Powder almost daily for over 30 years. Dr. Longo testified that a hypothetical normal user of cosmetic talc products, containing trace asbestos concentration levels like those found in the defense-produced samples, would be substantially exposed to asbestos. Dr. Egilman testified that there is *no* safe level of exposure to asbestos. Dr. Abraham testified that Leavitt's cumulative exposure to asbestos throughout her life caused her mesothelioma. Dr. Abraham and Dr. Egilman also opined that the length and type of fibers found in Leavitt's tissues were "fingerprint[s]" that she had been exposed to asbestos from using Johnson's Baby Powder and that exposure was a substantial factor contributing to her mesothelioma. Dr. Dodson reached the same conclusion.

**\*11** Substantial evidence supports the jury's implicit finding that Leavitt's exposure to Johnson's Baby Powder was more than a negligible or theoretical contribution to her injury. (See 🚩 *Rutherford, supra,* 16 Cal.4th at p. 978; 🚩 *Lyons v. Colgate-Palmolive Co., supra,* 16 Cal.App.5th at p. 469.)

### D.

Defendants next contend the trial court was required to grant a mistrial after Dr. Egilman testified that Johnson's Baby Powder had been shown to asphyxiate infants. The trial court did not abuse its discretion in denying defendants' motion. (See 🚩 *People v. Williams* (1997) 16 Cal.4th 153, 210 [standard of review].)

### 1.

A trial court has discretion to declare a mistrial "when 'an error too serious to be corrected has occurred.' " (🚩 *Velasquez v. Centrome, Inc.* (2015) 233 Cal.App.4th 1191, 1214.) However, a curative instruction to disregard improper testimony is generally sufficient to cure prejudice. (🚩 *People v. Navarrete* (2010) 181 Cal.App.4th 828, 834, 836.) "The trial court, 'present on the scene, is obviously the best judge of whether any error was so prejudicial to one of the parties as to warrant scrapping the proceedings up to that point.' [Citation.] A trial court should grant a mistrial only when a party's chances of receiving a fair trial have been irreparably damaged." (*Velasquez, supra,* at p. 1214.)

**2.**

During his direct examination, Dr. Egilman testified, on two separate occasions, that studies showed Johnson's Baby Powder caused infant deaths through asphyxiation. Defense counsel repeatedly objected and moved to strike the testimony, arguing it was irrelevant or more prejudicial than probative (§ 352). The trial court initially overruled defendants' objections and then reserved a ruling on defendants' motion to strike while it obtained briefing. Twelve days later, the trial court struck the testimony and instructed the jury it could not consider Dr. Egilman's testimony regarding asphyxiation studies.

The trial court denied defendants' motion for a mistrial, explaining, "There were two comments in a lengthy examination. This is a highly intelligent and very focused jury that I think will take my instructions seriously. [¶] [T]here was not a motion in limine on this specific issue. [Dr. Egilman] ... did specifically disclose at his deposition that the asphyxiation issue ... was an issue that he had opinions about. [¶] And the fact there wasn't a pretrial motion ... makes me very reluctant to disrupt the trial without a clearer showing of prejudice and I don't find any such showing at this point."

**3.**

A mistrial was not required in this case because defendants' chance of receiving a fair trial was not irreparably damaged.

Defendants point only to the delay between Dr. Egilman's testimony and the court's curative instruction. Here, in contrast to the cases defendants cite (🚩*Velasquez v. Centrome, Inc., supra,* 233 Cal.App.4th at p. 1196; 🚩*People v. Navarrete, supra,* 181 Cal.App.4th at p. 831), defendants failed to file a pretrial motion in limine, despite being on notice of Dr. Egilman's proposed testimony. Given the trial court had no advance warning that the asphyxiation studies would be an issue, we cannot fault it for requesting mid-trial briefing before ruling on the motion to strike.

**\*12** Defendants do not persuade us that this is an exceptional case where the trial court's instruction failed to cure any harm done by Dr. Egilman's stricken testimony. (See 🚩*People v. Wharton* (1991) 53 Cal.3d 522, 566 [rejecting, as speculative, argument that delay between testimony and curative admonition would lead jury to disregard court's instruction]; 🚩*People v. Navarrete, supra,* 181 Cal.App.4th at pp. 834, 836 [juries presumed to obey curative instructions].)

**E.**

Defendants insist the evidence was insufficient to support the trial court's instruction that the jury could draw an adverse inference if it found defendants intentionally concealed or destroyed evidence. We assume error, but, again, defendants do not show prejudice.

**1.**

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

Case 23-01092-MBK   Doc 56-2   Filed 04/17/23   Entered 04/17/23 17:03:51   Desc
Exhibit Exhibits 1-4 to Satterley Declaration   Page 39 of 177

" 'Spoliation' is ' "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." ' " (🚩 *Reeves v. MV Transportation, Inc.* (2010) 186 Cal.App.4th 666, 681.) One remedy for spoliation is an adverse evidentiary inference—allowing the jury to infer that evidence which one party has willfully destroyed or rendered unavailable was unfavorable to that party. (§ 413; 🚩*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 11; CACI No. 204.) Such an instruction may be given only "if there is evidence of willful suppression, that is, evidence that a party destroyed evidence with the intention of preventing its use in litigation." (🚩 *New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1434.)

**2.**

The trial court determined there was sufficient evidence to support an adverse inference instruction in this case. Accordingly, the jury was instructed: "You may consider whether Johnson & Johnson and Johnson & Johnson Consumer, Inc. intentionally concealed or destroyed evidence. If you decide that [they] did so, you may decide that the evidence would have been unfavorable to that party."

**3.**

If the trial court erred in giving the instruction, defendants have not shown that it is reasonably probable the instructional error affected the jury's verdict. (See 🚩 *Soule, supra*, 8 Cal.4th at pp. 574, 580.)

In assessing prejudice, the reviewing court should consider the nature of an instructional error, " 'including its natural and probable effect on a party's ability to place his full case before the jury,' " as well as the likelihood of actual prejudice considering " '(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled.' " (🚩*Rutherford, supra,* 16 Cal.4th at p. 983.)

Here, the instruction did not inform the jury that defendants had intentionally concealed or destroyed evidence. It merely permitted the jury to consider whether defendants had done so and, *if* it so found, that it may (but did not have to) decide that the evidence would have been unfavorable to defendants.

Plaintiffs did refer to the instruction in their closing argument. They argued that the jury could infer defendants' products contained asbestos from the intentional destruction of one document containing a code that revealed which particular products were linked to positive results in blind asbestos testing. The only inference the jury could have drawn—that Johnson's Baby Powder contained asbestos—is not prejudicial. As we have already outlined, abundant evidence supports such a finding. Without the challenged instruction, it is not reasonably probable that the jury would have found otherwise.

Leavitt v. Johnson & Johnson, Not Reported in Cal.Rptr. (2021)

Case 23-01092-MBK    Doc 56-2    Filed 04/17/23    Entered 04/17/23 17:03:51    Desc
Exhibit Exhibits 1-4 to Satterley Declaration    Page 40 of 177

## F.

**\*13** Finally, defendants contend, in a conclusory manner, that the trial court abused its discretion by limiting their direct examination of a former employee—John Hopkins—who was deposed by plaintiffs as defendants' corporate representative. (Code Civ. Proc., § 2025.230 [requiring corporation to designate person most qualified to testify on its behalf at deposition].) At the end of the first day of his deposition, the parties stipulated that, rather than continue Hopkins's deposition before trial, plaintiffs would continue his deposition, in a corporate representative capacity, in their case-in-chief. Defendants forfeit their challenge to the trial court's evidentiary rulings and, in any event, show no error.

To preserve an appellate challenge to an evidentiary ruling, the appealing party must identify the specific ruling and objection at issue (through citation to the record), provide legal argument explaining why the trial court's ruling was in error, and support that argument with citation to pertinent legal authority. (🚩*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074.) Defendants fail to meet that burden here.

In their opening brief on appeal, defendants fail to identify any challenged ruling and focus instead on preliminary comments the trial court made in response to plaintiffs' motion, which sought to limit defendants' questioning of Hopkins to matters within his personal knowledge. Without knowing the specific testimony and context in which defendants

would offer it at trial, the trial court declined to issue a preliminary ruling and made clear it would rule on a question-by-question basis. The court also stated that it did "not think that the same rules for a corporate representative necessarily apply across the board to both sides" and that the defense would have to limit itself to questions calling for information within Hopkins's personal knowledge. In the final few sentences of their argument on this issue in their opening brief, defendants cite to two pages of testimony and vaguely assert that the court erred by barring them from eliciting testimony from Hopkins regarding defendants' historical testing policies and practices.[3] This argument does not meet defendants' burden on appeal.

[3]    The cited pages indicate the trial court sustained plaintiffs' hearsay objections when defense counsel asked Hopkins whether Johnson & Johnson was aware of medical risks raised by use of its Baby Powder and then again when Hopkins was asked about Johnson & Johnson's knowledge regarding asbestos contained in its products.

In any event, defendants fail to demonstrate error in evidentiary rulings requiring Hopkins to testify from his personal knowledge unless a hearsay exception applies. (See §§ 702, subd. (a) [lay witness may only testify about matters within personal knowledge], 1200, subd. (b) ["[e]xcept as provided by law, hearsay evidence is inadmissible"].) Although there is no California authority on this issue, the federal courts have concluded that only an adverse party can use, at trial, a corporate representative's deposition testimony as to

matters within a corporation's knowledge. (*Union Pump Co. v. Centrifugal Tech., Inc.* (5th Cir. 2010) 404 Fed.Appx. 899, 907-908; accord, ⚑*Brazos River Authority v. GE Ionics, Inc.* (5th Cir. 2006) 469 F.3d 416, 433-435.) "[A] corporate representative may not [otherwise] testify to matters outside his own personal knowledge 'to the extent that information [is] hearsay not falling within one of the authorized exceptions.' " (*Union Pump Co., supra*, at pp. 907-908.) Defendants do not persuade us that the trial court abused its discretion.

### DISPOSITION

The judgment is affirmed. Plaintiffs are entitled to their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

We concur:

SIMONS, ACTING P.J.

NEEDHAM, J.

### All Citations

Not Reported in Cal.Rptr., 2021 WL 3418410

---

**End of Document**                     © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit 3

SUPREME COURT
**FILED**

Court of Appeal, First Appellate District, Division Five - No. A157572, A159021

NOV 1 0 2021

**S270886**

Jorge Navarrete Clerk

# IN THE SUPREME COURT OF CALIFORNIA

Deputy

### En Banc

---

TERESA ELIZABETH LEAVITT et al., Plaintiffs and Respondents,

v.

JOHNSON & JOHNSON et al., Defendants and Appellants.

---

AND CONSOLIDATED CASE

---

The requests to appear as counsel pro hac vice are granted.
The motion to strike untimely reply brief is denied.
The petition for review is denied.
The request for an order directing publication of the opinion is denied.

CANTIL-SAKAUYE

*Chief Justice*

# Exhibit 4

COURT OF APPEAL, FIRST APPELLATE DISTRICT
350 MCALLISTER STREET
SAN FRANCISCO, CA 94102
DIVISION 5

Joseph D. Satterley
Kazan McClain Satterley Lyons Greenwood & Oberman
55 Harrison Street, Suite 400
Oakland, CA 94607

TERESA ELIZABETH LEAVITT et al.,
Plaintiffs and Respondents,
v.
JOHNSON & JOHNSON et al.,
Defendants and Appellants.

A157572 / A159021
Alameda County Super. Ct. No. RG17882401

* * REMITTITUR * *

I, Charles D. Johnson, Clerk of the Court of Appeal of the State of California for the First Appellate District, do hereby certify that the decision entered in the above-entitled cause on August 5, 2021 has now become final.

Costs are awarded to respondent.

Witness my hand and the Seal of the Court affixed at my office this November 10, 2021

Charles D. Johnson
Clerk of the Court

V. Pons

Deputy Clerk



# Exhibit 5

# Exhibit 6

# Exhibit 7

# Exhibit 8

# Exhibit 9

# Exhibit 10

# Exhibit 11

# Exhibit 12

# Exhibit 13

# Exhibit 14

# Exhibit 15

# Exhibit 16

# Exhibit 17

# Exhibit 18

# Exhibit 19

# Exhibit 20

# Exhibit 21

# Exhibit 22

# Exhibit 23

# Exhibit 24

# Exhibit 25

# Exhibit 26

# Exhibit 27

# Exhibit 28

# Exhibit 29

# Exhibit 30

# Exhibit 31

# Exhibit 32

# Exhibit 33

# Exhibit 34

# Exhibit 35

# Exhibit 36

# Exhibit 37

# Exhibit 38

# Exhibit 39

# Exhibit 40

# Exhibit 41

# Exhibit 42

# Exhibit 43

# Exhibit 44

# Exhibit 45

# Exhibit 46

# Exhibit 47

# Exhibit 48

# Exhibit 49

# Exhibit 50

# Exhibit 51

# Exhibit 52

# Exhibit 53

# Exhibit 54

# Exhibit 55

# Exhibit 56

# Exhibit 57

# Exhibit 58

# Exhibit 59

# Exhibit 60

# Exhibit 61

# Exhibit 62

# Exhibit 63

# Exhibit 64

# Exhibit 65

# Exhibit 66

# Exhibit 67

# Exhibit 68

# Exhibit 69

# Exhibit 70

# Exhibit 71

# Exhibit 72

# Exhibit 73

# Exhibit 74

# Exhibit 75

# Exhibit 76

# Exhibit 77

# Exhibit 78

# Exhibit 79

# Exhibit 80

# Exhibit 81

# Exhibit 82

# Exhibit 83

# Exhibit 84

# Exhibit 85

# Exhibit 86

# Exhibit 87

# Exhibit 88

# Exhibit 89

# Exhibit 90

# Exhibit 91

# Exhibit 92

# Exhibit 93

# Exhibit 94

# Exhibit 95

# Exhibit 96

# Exhibit 97

# Exhibit 98

# Exhibit 99

# Exhibit 100

# Exhibit 101

# Exhibit 102

# Exhibit 103

# Exhibit 104

# Exhibit 105

# Exhibit 106

# Exhibit 107

# Exhibit 108

# Exhibit 109

# Exhibit 110

# Exhibit 111

# Exhibit 112

# Exhibit 113

# Exhibit 114

# Exhibit 115

# Exhibit 116

# Exhibit 117

# Exhibit 118

# Exhibit 119

# Exhibit 120

# Exhibit 121

# Exhibit 122

# Exhibit 123

# Exhibit 124

# Exhibit 125

# Exhibit 126

# Exhibit 127

# Exhibit 128

# Exhibit 129

# Exhibit 130

# Exhibit 131

# Exhibit 132

# Exhibit 133

# Exhibit 134

# Exhibit 135

# Exhibit 136