Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, New York 10022
(212) 605-6200
*Counsel for Paul Crouch, Individually and as
Executor and as Executor Ad Prosequendum of
the Estate of Cynthia Lorraine Crouch*

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 23-12825 (MBK) |
| Debtor. | Adv. Pro. No. 23-01092 (MBK) |
| | Honorable Michael B. Kaplan |
| LTL MANAGEMENT, LLC, | **Hearing date: April 18, 2023** |
| Plaintiff, | |
| v. | |
| THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000, | |
| Defendants. | |

**OBJECTION TO THE DEBTOR'S PRELIMINARY INJUNCTION MOTION AND JOINDER OF PAUL CROUCH, INDIVIDUALLY AND AS EXECUTOR AND AS EXECUTOR AD PROSEQUENDUM OF THE ESTATE OF CYNTHIA LORRAINE CROUCH TO THE BRIEFS IN OPPOSITION**

Paul Crouch, Individually and as Executor and as Executor Ad Prosequendum of the Estate of Cynthia Lorraine Crouch, files this Joinder in the Briefs in Opposition to the Debtor's Preliminary Injunction Motion filed by (1) the Official Committee of Talc Claimants, (2) Maune, Raichle, Hartley, French & Mudd, LLC, and (3) the United States Trustee, and states as follows:

1. The Debtor has the burden of establishing the legal and factual basis to support its request for a preliminary injunction in this case and to establish generally that this petition was filed in

1

good faith as defined by the Third Circuit in, among other cases, *In re LTL Management, LLC*, 58 F.4th 738 (3rd Cir. 2023). That proof must demonstrate not only that the Court has the authority to grant permanent relief regarding the subject of the Motion, but also the significantly higher burden that there is a reasonable probability that the Debtor will ultimately prevail.

2. For the reasons set forth in the briefing in Opposition to the Debtor's Preliminary Injunction Motion filed by the Official Committee of Talc Claimants and by Maune, Raichle, Hartley, French & Mudd, LLC, and for the reasons set forth by the Third Circuit in *In re LTL Management, LLC*, Mr. Crouch asserts that the debtor has not established and cannot establish the necessary legal and factual basis for entering the sweeping preliminary injunction requested in the instant Motion.

3. Distilled to its most simple form, and without limitation, there is no dispute that non-debtor Johnson & Johnson is not in financial distress and could not file its own petition for bankruptcy to obtain the ultimate relief sought for non-debtor Johnson & Johnson in this case. *In re SGL Carbon*, 200 F.3d 154 (3rd Cir. 1999); *In re LTL Mgmt., LLC*, 58 F.4th 738 (3rd Cir. 2023).

4. Simiarly, under controlling Third Circuit precedent, solvent, non-distressed, non-debtor Johnson & Johnson cannot boostrap 524(g)/105 relief for its own, non-derivative liability under any circumstances, let alone through a conditional and collusive arrangement with a dominated fall-guy subsidiary created for the purpose of isolating a single class of creditors using the bankruptcy code to coordinate litigation. *See, e.g., In re Combustion Eng'g*, 391 F.3d 190 (3rd Cir. 2004); *In re W.R. Grace*, 591 F.3d 164 (3rd Cir. 2009).

5. Nor can alleged agreements of the debtor to indemnify Johnson & Johnson create related to jurisdiction to allow either permanent or preliminary injunctive relief that the debtor and non-debtor Johnson & Johnson seek to provide to non-debtor Johnson & Johnson. This Court has

2

already found the alleged 1979 indemnity agreement to be "ambiguous" with respect to whether the 1979 Agreement included Johnson & Johnson's independent, non-derivative liability for personal injury claims arising from Johnson & Johnson's talc-containing products. *In re LTL Mgmt.*, 638 B.R. 291, 310 (Bankr. D.N.J., February 25, 2022)("In point of fact, this Court finds the 1979 Agrement to be ambiguous as to the status and treatement of future liability."); Docket 4, Kim Declaration, April 4, 2023 @ Annex A – 1979 Agreement.  The Third Circuit similarly held with respect to the Johnson & Johnson's post-1979 conduct: "it is not obvious LTL must indemnify J&J for the latter's independent, post-1979 conduct that is the basis of a verdict rendered against it." *In re LTL Mgmt.*, 58 F.4th at 761, n. 16

6. The Debtor has a fiduciary obligation to maximize the assets of the estate for the benefits of its creditors.  It is the *obligation* of the Debtor under the Code to contest the validity of this contract, which this court has deermined is "ambiguous", so as to maximize the assets of the estate, irrespective of any non-binding alleged course of conduct between Old JJCI and Johnson & Johnson.  The Third Circuit's decision made crystal clear that the law does not allow the Debtor and its corporate overlord, Johnson & Johnson to use the divisive merger as a sword and a shield. The Debtor has no course of conduct with Johnson & Johnson and its obligations are to the estate, not its corporate family members.

7. Moreover, and more importantly, as Mr. Crouch argued in the prior iteration of the Debtor's bankruptcy, New Jersey law strongly disfavors indemnity agreements that cover the independent liability of the indemnitee. *See e.g., Cozzi v. Owens-Corning Fiber Glass Corp.*, 164 A.2d 69 (N.J. Super. 1960); *Mantilla v. NC Mall Assoc.*, 770 A.2d 1144 (NJ 2001).  As a result, New Jersey requires specific and express language indisputably not present in the 1979 agreement. *Id.*  The 1979 Agreement is controlled by New Jersey law.  It was executed in New Jersey by New

3

Jersey corporations and does not contain a choice of law provision opting for some other state law. This issue is determinative as a matter of law and demonstrates that there is no liability of the Debtor for claims against Johnson & Johnson, let alone *automatic* liability.

8. Finally, New Jersey law prohibits indemnification agreements for wanton and reckless conduct, *Johnson & Johnson v. Aetna*, 667 A.2d 1087 (N.J. Super. 1995); *Tyranowski v. Lodi Bd. Of Educ.,* 643 A.2d 1057 (N.J. Super 1994), which numerous juries have found non-debtor Johnson & Johnson perpetrated in connection with talc products. *See, e.g., Ingham v. Johnson & Johnson*, 608 S.W.3d 663, 701-02 (Mo. App. 2020), *cert. denied*, 2021 WL 2194948 (June 1, 2021) (affirming approximately 20 ovarian cancer jury verdicts answered separately as to J&J and JJCI, as well as punitive damages imposed separately as to each, with a greater amount of punitive damages imposed on J&J). As such, the question of validity of any indemnity contract would depend upon the finding of the jury in any particular case – at best – for Johnson & Johnson and the Debtor.  Again, no automatic liability.

9. Accordingly, there is no legal or factual basis to allow the Court to conclude that any indemnification claim by non-debtor Johnson & Johnson against the Debtor is so automatically valid that the existence of a claim against non-debtor Johnson & Johnson for its own independent non-derivative liability constitutes a claim against the debtor.  To the contrary, in addition to there being a need for additional litigation regarding the validity and enforcibility of any such indemnity – there is ample evidence that such a claim would be invalid as a matter of law.

10. Similarly, with respect to the retailer non-debtors for whom the Debtor seeks to extend preliminary injunctive relief, the Debtor concedes that there is not automatic common law liability of the Debtor for any such claim.  Docket 4, Kim Declaration April 4, 2023, Paragraph 51 ("…to the extent a Retailer is held liable for a claim arising out fo the products manufactured and/or sold

4

by Old JJCI, and not by independent actions of the Retailers, certain state laws **could** require the Debtor to indemnify Retailers for these liabilities.")(italics added).

11. And the later alleged contractual agreements between the retailers and the Debtor's predecessor are expressly conditional, a fact also admitted by the Debtor. As argued by Mr. Crouch on July 26, 2022 before this Court, the effect of the conditional nature of this agreement means that the question of whether the Debtor would have any indemnity liability under it in an particular case cannot be ascertained without consideration of the specific allegations and jury determinations in that case.  Accordingly, because indemnity is not automatic, these claims are not claims against the Estate and cannot receive either preliminary or permanent relief.

12. Finally, these issues are jurisdictional.  This Court cannot exercise related to jurisdiction over claims of individuals against Johnson & Johnson or the retailers.  There are no facts that would allow the Court to find that the Debtor has met its high burden in this regard.  Mr. Crouch recognizes that the Court has, from the outset of LTL1, reasonably hoped that the Debtor and its related companies could reach a consensual, global and permanent resolution of the talc litigation through use of the tools available under the Code.  The Third Circuit noted this Court's comments and hopes in this regard in its decision. *In re LTL Mgm't*, 58 F.4th at 751-52.  But, in the end, the Third Circuit conlusively determined that this Court's "strong conviction that the bankruptcy court is the optimal venue for redressing the hams of both present and future talc claimants in one case" (*Id.* at 752) could not create subject matter jurisdiction which continues to be lacking in this case.

13. While settlements are certainly favored in cases *properly before the Court*, jurisdictional defects cannot be cured by settlement.  As noted by the Eleventh Circuit: "the prospects of a successful reorganization, do not override, as a matter of law, the finding of bad faith in this case or compel, as a matter of fact, a contrary finding." *In re Phoenix Piccadilly*, 849 F.2d 1393, 1394

5

(11th Cir. 1988)(*cited* in *In re SGL Carbon*, 200 F.3d at 161 & 165). The fatal flaws of the Debtor's Motion specifically and this petition generally cannot be cured by agreement or by any vote of potential claimants.

14. Since the amendment of the Code in 1978, the role of the judge in Bankruptcy Court has been narrowly constrained to calling balls and strikes. *In re Timbers of Inwood Forest Assoc., LLC,* 808 F.2d 363, 373-74 (5th Cir. 1987)(when legitimate purposes of the code are not furthered by the petition or the automatic stay, it is "incumbent upon the bankruptcy judge to effectuate the provisions of the Bankrutpcy Code for the protection of creditors lest the judge keep the Code's word of promise to the ear of crediotrs and break it to their hope.")(*cited* in *In re SGL Carbon*, 200 F.3d at 166). It is not the role of this Court to make policy decisions, or to favor one outcome (restructuring) over the other (dismissal).

15. And because the Debtor and Johnson & Johnson "can't get there from here" it is incumbent on this Court to "meet head on [its] obligation to decide, fairly and impartially, the hard questions." *Id.* The decision of the Third Circuit that the prior case was filed in bad faith and had to be dismissed explicitly rejected the non-Code considerations that led this Court to deny dismissal of LTL1. The significance of that decision cannot be casually brushed aside as the Debtor and Johnson & Johnson attempt to do.

16. Nor is a temporary delay of deciding "the hard question" in the hopes of fostering settlement an appropriate use of the Court's discretion. To the contrary, the Ninth Circuit, in a decision heavily cited and relied upon by the Third Circuit in *SGL Carbon*, specifically noted that it was an abuse of discretion to delay the effect of jurisdictional findings. *In re Marsch,* 36 F.3d 825 (9th Cir. 1994)(holding abuse of discretion to delay dismissal for bad faith for 60 days to allow for more orderly liquidation of debtor's assets)(*cited* and *relied upon* in *In re SGL Carbon*, 200

F.3d 154, 161, 162, 163, 165 & 166). The time is now to carry through, to make the "hard decision" and to end this deliberate, improper manipulation of the Code and this Court.

WHEREFORE, Ms. Crouch requests that the Court **DENY** the Debtor's Preliminary Injunction Motion.

Dated: April 17, 2023
/s/ *Jerome H. Block*
Jerome H. Block (I.D. 272002018)
LEVY KONIGSBERG, LLP
605 Third Avenue, 33rd FL
New York, NY 10158
Tel: (212) 605-6200
Fax: (212) 605-6290
Email: jblock@levylaw.com
*Attorneys for Talc Claimant*
*Paul Crouch, Individually and as Executor*
*and as Executor Ad Prosequendum of the*
*Estate of Cynthia Lorraine Crouch*

and

JONATHAN RUCKDESCHEL
The Ruckdeschel Law Firm, LLC
8357 Main Street
Ellicott City, Maryland 21043
Email: ruck@rucklawfirm.com
*Attorneys for Talc Claimant*
*Paul Crouch, Individually and as Executor*
*and as Executor Ad Prosequendum of the*
*Estate of Cynthia Lorraine Crouch*
*Admitted Pro Hac Vice