Stephen V. Gimigliano
John Maloney
Robin Rabinowitz
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360

Andrew T. Frankel
Michael H. Torkin (*pro hac vice* pending)
Kathrine A. McLendon (*pro hac vice* pending)
Jonathan Mitnick (*pro hac vice* pending)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
(212) 455-2000

Counsel to Travelers Casualty and Surety Company
(f/k/a The Aetna Casualty and Surety Company)

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,<br><br>Debtor.[1] | Case No. 23-12825 (MBK)<br><br>Chapter 11<br><br>Hon. Michael B. Kaplan, U.S.B.J. |
| LTL MANAGEMENT LLC,<br><br>Plaintiff,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000,<br><br>Defendants. | Adv. Pro. No. 23-01092 (MBK)<br><br>Hearing: April 18, 2023, at 10:00 a.m. (ET) |

**CERTAIN INSURERS' LIMITED OBJECTION AND RESERVATION OF RIGHTS TO
DEBTOR'S PRELIMINARY INJUNCTION MOTION**

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

Travelers Casualty and Surety Company ("Travelers"), by its undersigned counsel, along with the additional insurers identified herein (collectively, the "Insurers"),[2] hereby submit this limited objection and reservation of rights (this "Objection") regarding Debtor's proposed Preliminary Injunction Order [Adv. Pro. Dkt. 3] (the "Proposed PI Order"). If the Court enters a preliminary injunction in this proceeding, Insurers request that it be made clear that the injunction does not apply to the Insurers in the coverage action styled *Atlanta International Insurance Company, et al. v. Johnson & Johnson, et al.*, Case No. MID-L-003563-19, currently pending in the Superior Court of New Jersey (the "NJ Coverage Action").[3]

## PRELIMINARY STATEMENT

For almost four years, Insurers have sought a determination of their state-law rights and responsibilities with respect to insurance coverage for talc-related claims under insurance policies issued to Johnson & Johnson and certain affiliates (collectively, "J&J"). The NJ Coverage Action proceeded in New Jersey state court for two years before Debtor filed for bankruptcy the first time. Since Debtor's first filing in October 2021, the NJ Coverage Action has been stayed other than as to third-party discovery as permitted by this Court, and during the two-hour window before the second filing. A preliminary injunction was issued in the first bankruptcy, which applied only to

---

[2] The insurers joining this Objection in addition to Travelers are: AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania); AIU Insurance Company; Atlanta International Insurance Company (as successor in interest to Drake Insurance Company); Employers Insurance Company of Wausau; Granite State Insurance Company; Lexington Insurance Company; National Casualty Company; National Union Fire Insurance Company of Pittsburgh, PA; New Hampshire Insurance Company; Republic Indemnity Company of America; Sentry Insurance Company (as assumptive reinsurer of Great Southwest Fire Insurance Company); Starr Indemnity & Liability Company (as successor in interest to Republic Insurance Company); The Insurance Company of the State of Pennsylvania; and The North River Insurance Company.

[3] Insurers do not contend in this Objection that they are not bound by the automatic stay in this action, nor move at this time to lift the stay, should it apply. However, any preliminary injunction order should conform to the preliminary injunction order entered in the prior case, *In re LTL Management LLC*, No. 21-30589 (MBK) [Dkt. 1635], and not be extended to the NJ Coverage Action.

prevent the underlying talc claimants from prosecuting actions against non-debtor affiliates of Debtor and did not extend to the NJ Coverage Action.

Debtor apparently now seeks a broader preliminary injunction than was in place during the first bankruptcy case, one that by its terms could be read to apply to the NJ Coverage Action. Although Insurers will seek relief, if appropriate, from the automatic stay to pursue the NJ Coverage Action, additional injunctive relief is not warranted, as Debtor will argue is needed for the talc claimants. Insurers file this Objection to ask the Court to deny Debtor's motion for a preliminary injunction to the extent it covers the NJ Coverage Action.

As defined in the Proposed PI Order, "Debtor Talc Claims" shall mean "any talc-related claims against the Debtor, including all claims relating in any way to talc or talc-containing materials that formerly were asserted against (or that could have been asserted against) the former Johnson & Johnson Consumer Inc. ('Old JJCI') on any theory of liability (whether direct, derivative, joint and several, successor liability, vicarious liability, fraudulent or voidable transfer or conveyance, alter ego or otherwise)." Proposed PI Order at ¶ A. In paragraph 3 of the Proposed PI Order, Debtor asks the Court to "declare[] that the commencement or continued prosecution of any Debtor Talc Claim against any of the Protected Parties while the Chapter 11 Case remains pending… would violate the automatic stay imposed by sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code and therefore are prohibited." *Id.* at ¶ 3.

Paragraph 3 of the Proposed PI Order differs from paragraph C of the Proposed PI Order, which states "Debtor seeks…an order prohibiting *the Defendants* from continuing or commencing against any of the Protected Parties…any Debtor Talc Claims." *Id.* at ¶ C (emphasis added). "Defendants" are defined as "those parties listed on Appendix A to the Complaint, as well as John and Jane Does 1-1000." *Id*. at ¶ B. These parties are the underlying claimants who have brought

3

suit, and claimants who have not yet filed suit. *See* Appendix A, *Debtor's Verified Complaint for Declaratory and Injunctive Relief (I) Declaring That the Automatic Stay Applies or Extends to Certain Actions Against Non-Debtors, (II) Preliminarily Enjoining Such Actions, and (III) Granting a Temporary Restraining Order Ex Parte Pending a Hearing on a Preliminary Injunction* [Dkt. 8].

The language in Paragraph C of the Proposed PI Order, which limits the scope of the Proposed PI Order to underlying claimants, also aligns with the language in the preliminary injunction entered by the Bankruptcy Court in North Carolina in the first case and continued by this Court. *See In re LTL Management LLC*, No. 21-30589 (MBK) [Dkt. 1635] at ¶ 3. ("[T]he Court finds and declares that the commencement or continued prosecution of any Enjoined Talc Claim by any Defendant against any of the Protected Parties…would violate the automatic stay imposed by sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code and therefore are prohibited.").

Debtor's inconsistently broadened language may simply be an error, in which case the relief sought in this Objection should be non-controversial. However, if the Debtor actually intended to include the NJ Coverage Action within the scope of the requested injunction, such extension lacks an evidentiary basis in the Kim Declaration and was not requested in the motion or articulated in the supporting memorandum of law, and should therefore be denied. The Proposed PI Order should be modified to include the qualifier "the Defendants" in all applicable provisions to limit application of the injunction to the tort complaints. For the reasons set out below, the preliminary injunction should not include the NJ Coverage Action.

**ARGUMENT**

A preliminary injunction "is an extraordinary remedy, which should be granted only in limited circumstances." *Instant Air Freight Co. v. C.F. Air Freight Inc.,* 882 F.2d 797, 800 (3d Cir. 1989). Courts consider the following factors in determining whether a preliminary injunction is appropriate: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary injunction will be in the public interest." *LTL Mgmt., LLC v. Those Parties Listed on Appendix A to the Complaint* (*In re LTL Mgmt., LLC*), 638 B.R. 291, 320 (Bankr. N.J. 2022) (quoting *McTernan v. City of York, Pa.,* 577 F.3d 521, 527 (3d Cir. 2009)). The Court first "determine[s] whether the first two threshold prongs are established, and if so, only then does it proceed to consider the third and fourth factors." *In re Philadelphia Newspapers, LLC*, 423 B.R. 98, 106 n.11 (E.D. Pa. 2010). The party moving for the preliminary injunction has the burden of demonstrating that the injunction it seeks should be issued. *Kos Pharmaceuticals Inc. v. Andrex Corp.,* 369 F.3d 700, 708 (3d Cir. 2004).

Debtor fails to establish a right to injunctive relief as to the NJ Coverage Action. There are, of course, substantial questions as to whether Debtor is entitled to bankruptcy relief at all, and whether Debtor can show a reasonable probability of "success on the merits" in this action. Regardless, as the coverage issues at stake do not implicate core bankruptcy issues and Debtor does not have rights under the policies and has not itself sought coverage, Debtor will not be irreparably injured if the motion for a preliminary injunction is denied with respect to the NJ Coverage Action. Finally, the remaining factors also favor denying the motion for a preliminary injunction with respect to the NJ Coverage Action, as Insurers are harmed by being prevented from

5

receiving much-needed clarity on their state law rights and responsibilities under the policies, and Debtor cannot show that such a preliminary injunction would be in the public interest.

## I. DEBTOR CANNOT SHOW THAT IT WILL SUFFER AN IRREPARABLE INJURY ABSENT AN INJUNCTION OF THE COVERAGE ACTION

Whether or not Debtor can show a reasonable likelihood of success on the merits,[4] Debtor cannot demonstrate that it would suffer an irreparable injury should the preliminary injunction not apply to the NJ Coverage Action. In the bankruptcy context, the relevant inquiry for whether irreparable injury would occur is "whether the litigation could interfere with the reorganization of the debtor." *In re LTL Management LLC*, 640 B.R. at 336 (quoting *In re W.R. Grace & Co.,* 115 F. App'x 565, 570 (3d Cir 2004)). Here, there is no such possibility: the NJ Coverage Action concerns insurance coverage for non-Debtor J&J, not Debtor, and can be resolved without creating any new monetary claims against the Debtor's estate.[5] The Debtor itself does not appear to have any direct rights under the insurance policies, and has not sought coverage nor asserted any claims against Travelers or J&J's other insurers. Moreover, based on the limited information disclosed to date about the material terms of a proposed plan of reorganization, the forthcoming plan that Debtor intends to propose will not be dependent on insurance.

Further, as noted above, the prior preliminary injunction entered in the first bankruptcy did not apply to the NJ Coverage Action, but rather it only applied to the underlying talc claimants. Debtor did not suffer any injury as a result, much less the "irreparable injury" required for Debtor

---

[4] By not addressing Debtor's likelihood of successfully reorganizing—an issue that need not be addressed for purposes of this Objection—Insurers should not be deemed to have admitted or waived any rights or defenses.

[5] Because New JJCI (now Holdco) is responsible for pursuing any insurance claims that may be determined to be assigned to the Debtor, the Debtor and its professionals will not be distracted or burdened by participation in the NJ Coverage Action. *See In re LTL Mgmt. LLC*, 21-03032 (MBK), [Adv. Pro. Dkt. 135-24, at 6] (Dec. 20, 2021) (Plan of Divisional Merger, LTL0001331) ("Chenango Two will use commercially reasonable efforts to pursue, at Chenango One's cost, coverage under such Chenango Two Policy for such Chenango One Liabilities through negotiation, mediation, arbitration, and/or litigation if necessary, and Chenango One will fully cooperate with such efforts").

to obtain a preliminary injunction with respect to the NJ Coverage Action. As Debtor cannot show that it will suffer an "irreparable injury" should a preliminary injunction with respect to the NJ Coverage Action not be entered, the motion for a preliminary injunction should be denied with respect to the NJ Coverage Action. Finally, if the Debtor wanted a preliminary injunction to cover the NJ Coverage Action, the Kim Declaration (as defined below) does not include any evidentiary support for such expansive relief.

## II. INSURERS WOULD BE HARMED BY THE ISSUANCE OF THE PRELIMINARY INJUNCTION

### A. Insurers are Harmed by Being Further Prevented From Seeking Much-Needed and Long-Delayed Clarification of the Parties' State-Law Rights and Responsibilities

With respect to the third factor, granting preliminary relief will result in greater harm to Insurers than would result to Debtor should the motion for a preliminary injunction with respect to the NJ Coverage Action be granted. Insurers are harmed by being prevented from seeking much-needed clarification of the parties' state-law rights and responsibilities in the state court forum, which has been delayed by Debtor and J&J for the past 19 months. Discovery in the NJ Coverage Action was proceeding prior to Debtor's original bankruptcy filing: the parties served and responded to extensive document requests and interrogatories and produced millions of pages of documents prior to a deadline for substantial completion of document production that occurred a month before the first bankruptcy was filed. At the time of the stay, the court had appointed a Special Discovery Master to resolve any discovery disputes and the parties were in the process of scheduling initial depositions. However, the NJ Coverage Action was abruptly halted by the filing of the initial bankruptcy. Thereafter, on September 7, 2022, the Court allowed third-party discovery to proceed in the NJ Coverage Action, recognizing the prejudice to Insurers of a complete standstill. Now, the NJ Coverage Action has again ground to a complete halt.

The NJ Coverage Action is complex, involving hundreds of insurance policies collectively purportedly covering decades-long periods of time. Among the issues to be decided in the NJ Coverage Action are (i) whether Insurers owe coverage for voluntary payments, pre-tender costs, punitive damages awards, and damages arising from injuries that were expected or intended by J&J, (ii) whether talc claims trigger the relevant insurance policies, and (iii) whether any other exclusions and coverage defenses apply, including J&J's failure to cooperate, among other issues. Further, the presence of Middlesex, J&J's captive insurer, further complicates the case, as (i) Insurers contend that J&J has attempted to improperly exclude certain Middlesex policies from responsibility for J&J's talc liabilities, (ii) Insurers intend to contest that J&J and Middlesex (J&J's wholly owned subsidiary) have improperly sought to retroactively extinguish potentially billions of dollars of Middlesex coverage, in an apparent effort to shift the costs of its talc liabilities to J&J's other insurers, and (iii) J&J contends that Middlesex's coverage for the talc liabilities is exhausted.

These coverage issues do not implicate core bankruptcy matters. *See, e.g., In re G-I Holdings, Inc.*, 278 B.R. 376, 384-85 (Bankr. D.N.J. 2002) (holding that a coverage action was not a core proceeding because the insurance proceeds were not "essential to the effort to reorganize this Debtor"); *In re John A. Rocco Co. Inc.,* No. 10-18799, 2015 WL 1727474, at *4 (Bankr. D. N.J. Apr. 13, 2015) ("Because the issue of coverage under an insurance policy is a question of state law that routinely arises outside the context of a bankruptcy case, claims for insurance coverage are typically considered non-core."). Moreover, the NJ Coverage Action can completely resolve outstanding coverage issues and provide needed clarity regarding the extent of insurance available to non-debtor J&J without creating new claims against the bankruptcy estate. Delaying resolution of these non-core claims does nothing to advance this chapter 11 bankruptcy case.

8

Therefore, especially because no harm will result to Debtor should the preliminary injunction not be ordered with respect to the NJ Coverage Action, Insurers will suffer a greater harm than Debtor should such injunction be ordered.

**B. J&J's and Debtors' Decision to Keep J&J's Insurers in the Dark About These Proceedings Further Exacerbates the Insurers' Harm.**

Under virtually all of the insurance policies issued to J&J, J&J is obligated to, among other things, cooperate with Insurers in the defense and settlement of claims for which it seeks coverage. Yet, Debtor and J&J have failed to keep Insurers apprised of key developments. For example, Debtor and J&J have asserted that this bankruptcy filing is "supported by law firms on behalf of more than 60,000" talc claimants, who have "entered into Plan Support Agreements pursuant to which the parties have agreed to work together to finalize and seek confirmation of a plan of reorganization" which will act as a global resolution to the underlying talc claims. *Declaration of John K. Kim In Support of First Day Pleadings* [Dkt. 4] ("Kim Declaration") at ¶ 7. This global resolution is allegedly based upon certain material terms described in Appendix B of the Plan Support Agreement. However, J&J not only excluded Insurers from these discussions (and even the fact that they were happening); it also refuses to disclose those terms to J&J's own insurers.[6] Insurers, therefore, have been left in the dark as to how the supposed agreement in principle on a plan that J&J negotiated could impact the parties' contractual rights and obligations.

The problems with this lack of transparency are magnified by the fact that Debtor seeks to compel Insurers to participate in mediation to reach a comprehensive, consensual plan "on the terms set forth in the plan support agreements." *See Debtor's Motion for an Order (I) Appointing*

---

[6] Although Debtor attached an exemplar version of the Plan Support Agreements with its first-day filings, it did not include the exhibits to those agreements, including the material terms of the plan that the parties to those agreements apparently agreed upon and intend to pursue. Travelers requested copies of these agreed-upon material terms, but Debtor responded that it would not share those terms with Travelers, despite providing them in discovery to the Official Committee.

9

*Co-Mediators, (ii) Establishing Mediation Procedures and (III) Grating Related Relief* [Dkt. 107]. J&J cannot possibility expect Insurers to meaningfully participate in such a mediation, when J&J and tens of thousands of claimants know far more than Insurers about the terms Insurers apparently will be asked to support and how the proposed plan may impact existing state-law contract rights and defenses.

### III.  DEBTOR CANNOT DEMONSTRATE THAT A PRELIMINARY INJUNCTION WITH RESPECT TO THE NEW JERSEY COVERAGE ACTION WOULD BE IN THE PUBLIC INTEREST

Finally, Debtor cannot demonstrate that a preliminary injunction with respect to the NJ Coverage Action would be in the public interest. As is the case with the other factors, a litigant seeking a preliminary injunction has the burden of proof of showing that "the public interest favors such relief." *Kos Pharms*., 369 F.3d at 708. Debtor cannot do so here, where whether Insurers owe J&J insurance coverage is a private contractual dispute which does not implicate the public interest. Even if the parties' private, state-law contract dispute were in the public interest, any such interest would favor prompt resolution and clarification from the only court with jurisdiction to provide such relief, the New Jersey state court where the NJ Coverage Action has been pending for four years. J&J's and Debtor's steadfast desire to continue the delay in the parties' ability to obtain such relief is unwarranted.

### CONCLUSION

For the reasons stated above, the undersigned Insurers object to Debtor's proposed form of order for a preliminary injunction to the extent it can be read to apply to the NJ Coverage Action. Insurers respectfully request that, should the Court grant the preliminary injunction, the Court modify the language of the proposed order to limit the injunction to Defendants in the Adversary Action and make clear that it does not apply to the NJ Coverage Action, as was the case with the preliminary injunction ordered in the first bankruptcy.

Dated: April 17, 2023

Respectfully submitted,

*/s/ John Maloney*
Stephen V. Gimigliano
John Maloney
Robin Rabinowitz
GIMIGLIANO MAURIELLO & MALONEY
A Professional Association
163 Madison Avenue, Suite 500
P.O. Box 1449
Morristown, New Jersey 07962-1449
(973) 946-8360
sgimigliano@lawgmm.com
jmaloney@lawgmm.com
rrabinowitz@lawgmm.com

Andrew T. Frankel
Michael H. Torkin (*pro hac vice* pending)
Kathrine A. McLendon (*pro hac vice* pending)
Jonathan Mitnick (*pro hac vice* pending)
SIMPSON THACHER & BARTLETT, LLP
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
afrankel@stblaw.com
michael.torkin@stblaw.com
kmclendon@stblaw.com
jonathan.mitnick@stblaw.com

Counsel to Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company)