Levy Konigsberg, LLP
800 Third Avenue, 11th Floor
New York, New York 10022
(212) 605-6200
*Counsel for Paul Crouch, Individually and as*
*Executor and as Executor Ad Prosequendum of*
*the Estate of Cynthia Lorraine Crouch*

## IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC, | Case No. 23-12825 (MBK) |
| | Adv. Pro. No. 23-01092 (MBK) |
| Debtor. | |
| | Honorable Michael B. Kaplan |
| LTL MANAGEMENT, LLC, | **Hearing date: April 18, 2023** |
| Plaintiff, | |
| v. | |
| THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000, | |
| Defendants. | |

### PAUL CROUCH'S SUPPLEMENTAL OBJECTION AND DESIGNATION OF DEPOSITION TESTIMONY IN OPPOSITION TO THE DEBTOR'S PRELIMINARY INJUNCTION MOTION

Paul Crouch, Individually and as Executor and as Executor Ad Prosequendum of the Estate of Cynthia Lorraine Crouch, files the following Supplemental Objection and Designation of Deposition Testimony in Opposition to the Debtor's Preliminary Injunction Motion:

1. Mr. Crouch submits the following designations of testimony related to his argument yesterday before the Court.

2. Additionally, Mr. Crouch is appreciative of the Court's extended trial day yesterday. As the Court is aware, the two lengthy presentations of the Debtor and the presentations of the

numerous stakeholders opposed to the Debtor's Motion consumed the allotted time before Mr. Crouch was able to present his argument. Mr. Crouch thanks the Court for the opportunity provided to him to present abbreviated argument yesterday and submits the following brief additional argument here that were omitted yesterday due to the time constraints of the hearing.

3. **Designations of Testimony:**

   a. **John Kim, LTL's Chief Legal Officer**

**Mr. Kim Admits LTL Has Same Ability to Fund Talc Claims as Before 2021 Restructuring (Two-Step)**

Q. "As I mentioned above, the design of the 2021 corporate restructuring ensures that the debtor has at least the same, if not greater, ability to fund talc-related claims and other liabilities as Old J -- JJCI had before the restructuring." Do you see that?

A. I do see that.

Q. And is that true today?

A. I'm sorry, is --

Q. Is it true today that the debtor, LTL, has at least the same, if not greater, ability to fund talc-related claims and other liabilities as Old JJCI had before the prior restructuring?

A. I believe it is.

Kim Deposition[1] p. 64.

**Mr. Kim Contends It Was in Financial Distress in LTL1 (Notwithstanding 3rd Circuit Decision) And Contends It Still in Financial Distress Based on the Same Clearly Erroneous Factual Findings Already Rejected by the Third Circuit**

Q. Mr. Kim, I believe earlier today you testified that LTL continues to believe that it was in financial distress prior to the Third Circuit's ruling, is that correct?

A. We -- we do.

Q. All right. So even under Funding Agreement One, the 2021 funding agreement, LTL believes even today that it was in financial distress?

---

[1] "Kim Deposition" refers to the deposition of John Kim taken in this second LTL bankruptcy on April 14, 2023.

2

    A.  It does.

    Q.  Okay. And -- and LTL believes under Funding Agreement Two that it is not insolvent, but that it remains in financial distress?

    A.  It does.

Kim Deposition p. 201.

    Q.  Okay. So what is the imminent – what is the factual basis for the imminent financial distress of LTL given the fact that it's backed by Holdco which has a market value of somewhere around $30 billion and LTL's own considerable entity?

    A.  So I would rely on the testimony from the last proceeding that -- where the court found that we were in financial distress just based – based upon when -- when it was -- when we had New JJCI funding agreement.

    Q.  All right.

    A.  It's the same -- the same -- the same basis.

And, in fact, I think our liabilities probably have increased since then because of the -- you know, the -- the -- the passage of time. And so I think based upon all -- all the factors that were in the prior proceeding would be applicable to the current proceeding.[2]

    Q.  Okay. Mr. Kim, the court that you just referred to in that answer is the bankruptcy court, Judge Kaplan, correct?

    A.  That is.

Kim Deposition p. 205-6.

---

[2] The Third Circuit's decision made clear that the *number* of claims is irrelevant to the question of imminent financial distress. Without any evidence-based evaluation of the likelihood that some (or any) of those claims would result in payment or other expenses in the tort system ***and*** an evaluation of when any such payments might need to be made, the mere *number* of claims is simply a shiny ball LTL has placed in front of the Court as a diversion. Indeed, Mr. Watts has merely provided a list of names, with no confirmation of any medical diagnoses and no information about J&J talc product exposure. And, sticking just by way of example, with Mr. Watts, of his approximate 16,000 clients, precisely ZERO have a case pending in the tort system. So, LTL is not facing any costs of defense regarding those claims – or any other of the nearly 40,000 unfiled "claimants" it asserts support this regurgitated version of LTL's first failed bankruptcy.

**Mr. Kim Cannot Provide Any Evidence LTL Cannot Fund Liabilities In Tort System**

Q. Whatever that number was, can we agree, Mr. Kim, that if the court dismisses this bankruptcy ten days from now and LTL returns to the court system, for the foreseeable future backed with its own assets, the stream of royalty payments and the other assets that you described, and backed with the funding agreement with Holdco, LTL will be able to manage its asbestos talc liabilities for the next three years?

A. Yeah, I can't -- I can't answer that.

Kim Deposition p. 203-4

    b. **Mr. Dickinson – Chief Financial Officer of LTL**

**Mr. Dickinson Has No Factual Basis to Contradict Mr. Kim's Testimony that the 2023 Restructuring Does Not Impair LTL's Ability to Fund Its Talc Liabilities**

Q. Okay. So if Mr. Kim, your colleague, testified that the 2023 restructuring did not impair LTL's ability to fund its talc liabilities, you have no factual information to contradict that testimony. Fair?

A. That is fair.

Dickinson Deposition[3] p. 159.24-160.7.

**Mr. Dickinson Has No Evidence That Terminating the 2021 Funding Agreement on April 4, 2023 Placed LTL In Imminent Financial Distress**

Q. Mr. Dickinson, as the Chief Financial Officer of LTL, can you identify anything that was different about LTL's financial condition on April 3, 2023, as compared to April 4, 2023?

A. I cannot.

Dickinson Deposition p. 138.2-138.7.

Q. Mr. Dickinson, can you, personally, identify any financial consequence to LTL from terminating the 2021 Funding Agreement, yes or no?

A. No, I cannot.

Dickinson Deposition p. 136.21-136.25.

---

[3] "Dickinson Deposition" refers to the deposition of Richard Dickinson taken in this second LTL bankruptcy on April 17, 2023.

4

> Q. Mr. Dickinson, as the Chief Financial Officer for LTL, do you have an opinion as to whether LTL's termination of the 2021 Funding Agreement left LTL in a better or worse financial position, yes or no?
>
> A. I don't have an opinion.

Dickinson Deposition p. 137.13-137.23.

### LTL Was Able to Meet Its Liabilities As They Came Due Both Before and After Terminating The 2021 Funding Agreement

> Q. On April 3 of 2023, was LTL able to meet its liabilities as they came due?
>
> A. Yes.
>
> Q. All right.· On April 4, after the restructuring, was LTL able to meet its liabilities as they came due?
>
> A. Yes.

Dickinson Deposition p. 162.11-162.17.

### LTL Did Not Evaluate How Much Money it Would Take to Fund LTL's Talc Litigation In The Tort System – Precluding Any Claim Of Imminent Finanical Distress

> Q. With respect to the dismissal of the first bankruptcy, after the dismissal order was entered on January 30th, I believe, of 2023, did LTL perform any evaluation as to how much money it would take to fund a return to litigating talc claims in the tort system over the following 12 months?
>
> A. I didn't see any written estimation or nor do I know of any.
>
> Q. All right. And would that – that would be the same with respect to if I expanded that period over the next – did LTL, after the January 30 dismissal order from the Third Circuit, did LTL perform any evaluation of how much cash flow it would require to manage its talc liabilities in the tort system over the next three years?
>
> A. I didn't see anything in writing, nor did I do it.

5

**LTL Did Not Evaluate The Expected Cash Flow Demands Of Returning Talc Cases to the Tort System – Precluding Any Claim Of Imminent Financial Distress**

Q. All right. And you are not aware of any evaluation that was performed -- you, the CFO of LTL, are not aware of any evaluation that was performed to ascertain what the expected cash flow demands would be of returning these cases to the tort system. Fair?

A. That is fair, Mr. Ruckdeschel.

Dickinson Deposition p. 162.21-163.23.

4. **Frustration of Purpose:**

    a. A foundational argument presented by the Debtor in this proceeding is that the dismissal of LTL1 by the Third Circuit for lack of financial distress was unforeseeable and that the dismissal therefore made the 2021 Funding Agreement ("FA1") "void or voidable." Mr. Kim testified yesterday that – notwithstanding the plain language of FA1 and the repeated affirmative arguments of LTL to this Court and the Third Circuit holding that FA1 unconditionally applied both inside and outside bankruptcy, even if LTL1 was dismissed – there was a secret, unexpressed caveat to the contract that conditioned J&J's unequivocal agreement to honor FA1 at "any time" that no bankruptcy proceeding was pending.

    b. The Debtor's argument appears to be that FA1 (i) was limited by this secret purpose that J&J would only be required to provide funding if the case was not dismissed, (ii) that this secret purpose was frustrated by the allegedly unforeseeable dismissal of the case, and (iii) that FA1 thus became "void or voidable" because J&J's secret purpose was now frustrated. Not only is this argument facially absurd, if it is true, then LTL has an obligation to bring an immediate $61.5 billion malpractice action against all counsel that participated in the drafting and execution of FA1 for LTL.

6

    c.   The Debtor provides no legal authority or factual support that would permit this Court to find that the unequivocal language of FA1 contained an unspoken caveat, contrary to the plain language of the contract, regarding J&J's "purpose" and allowing it to void FA1. None.

    d.   Further, FA1 is governed by North Carolina law. In making this specious claim about "frustration of purpose," LTL ignores controlling North Carolina law that, in a commercial context, the doctrine applies "when the Parties could not reasonably have protected themselves by the terms of the contract against contingencies that later arose." *WRI Raleigh L.P. v. Shaikh*, 644 S.E.2d 245, 254 (2007)(*quoting Brenner v. School House, Ltd.,* 210, 274 S.E.2d 206, 209 (N.C. 1981)). As reflected by the 2023 Funding Agreement and related documents, there can be no dispute that J&J – one of the most wealthy and sophisticated companies in the world, with legions of lawyers from the largest law firms in the world – could "reasonably have protected [itself] by the terms of the contract" against this contingency.

    e.   The Debtor ignores this controlling North Carolina law, ignores the plain language of FA1, ignores its own repeated affirmative representations about the unconditional applicability of FA1 outside of bankruptcy, and ignores the Third Circuit's binding holding regarding the legal effect of FA1 and brazenly asks this Court to do the same. That must not be allowed.

**5. Retailer Indemnity:**

    a.   The Debtor bears the burden of proof of all facts necessary to entitle it to the relief sought in the Motion. The Debtor seeks a blanket injunction regarding the Retailers that which would freeze *all lawsuits*, no matter the factual allegations and no matter the state law controlling those claims. Because the Debtor has chosen to frame its request in this blanket manner, it is required to demonstrate that – as a matter of law – no matter what the facts of any underlying case,

7

no matter what state law controls, the alleged contractual indemnity allegedly granted by the Debtor to each retailer automatically and unconditionally applies.

      b. Not only has the Debtor failed to even attempt to do so, its admissions in Mr. Kim's declaration that common law indemnity "could" apply to a particular case, depending on the state law that controls, preclude such a finding regarding common law indemnity. And the contractual indemnity documents submitted by the Debtor are facially conditional. The Debtor's arguments and evidence simply fail to establish the proof needed to grant it the relief sought – which is not case-specific or contract-specific.

      c. While the Debtor could have gone, retailer by retailer, case by case, and set forth the specific factual and legal basis for its argument, it chose to not do so. That is on the Debtor. The injunction sought would bar dying individuals from pursuing their Constitutional rights to seek compensation from non-debtor tortfeasors. There is no "well it would be hard" exception for allowing reduced proof when a party seeks to deny others their Constitutional rights, let alone when a party seeks to deny others their Constitutional rights against independent third parties.

      d. The real reason the Debtor did not produce actual proof regarding any case is that, when one looks past the glib arguments of the Debtor, it cannot meet its burden. So it just ignores that burden and asks the Court to grant it relief anyway. That is wrong. This Court must not be a party to the Debtor's cavalier dismissal of the burden of proof and the Constitutional significance of the requested relief.

**WHEREFORE**, Mr. Crouch requests that the Court DENY the Debtor's Motion for Preliminary Injunction.

Dated: April 19, 2023

/s/ *Jerome H. Block*
Jerome H. Block (I.D. 272002018)
Audrey Perlman Raphael
LEVY KONIGSBERG, LLP
605 Third Avenue, 33rd FL
New York, NY 10158
Tel: (212) 605-6200
Fax: (212) 605-6290
Email: jblock@levylaw.com
*Attorneys for Talc Claimant*
*Paul Crouch, Individually and as Executor*
*and as Executor Ad Prosequendum of the*
*Estate of Cynthia Lorraine Crouch*

and

JONATHAN RUCKDESCHEL
The Ruckdeschel Law Firm, LLC
8357 Main Street
Ellicott City, Maryland 21043
Email: ruck@rucklawfirm.com
*Attorneys for Talc Claimant*
*Paul Crouch, Individually and as Executor*
*and as Executor Ad Prosequendum of the*
*Estate of Cynthia Lorraine Crouch*
**Admission for Pro Hac Vice Admission Pending.*