| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel to the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>Eric R. Goodman, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>egoodman@brownrudnick.com<br>Seven Times Square<br>New York, NY  10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA  02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC  20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br><br>*Proposed Special Counsel for the Official Committee of Talc Claimants* | **OTTERBOURG P.C**.<br>Melanie L. Cyganowski, Esq.<br>Richard G. Haddad, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>David A. Castleman, Esq.<br>mcyganowski@otterbourg.com<br>rhaddad@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>dcastleman@otterbourg.com<br>230 Park Avenue<br>New York, NY  10169<br>Tel: (212) 661-9100<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for Official Committee of Talc Claimants* |

|  |  |
|---|---|
| In re:<br><br>**LTL MANAGEMENT LLC,**[1]<br><br>     Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |
| **LTL MANAGEMENT LLC**,<br><br>     Plaintiff,<br><br> v.<br><br>**THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT** and **JOHN AND JANE DOES 1-1000**,<br><br>     Defendants. | Adv. Pro. No. 23-01092 (MBK) |

**REQUEST OF OFFICIAL COMMITTEE OF TALC CLAIMANTS
FOR ORDER CERTIFYING DIRECT APPEAL OF
PRELIMINARY INJUNCTION ORDER OF APRIL 20, 2023
TO THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT**

  The Official Committee of Talc Claimants (the "TCC") in the above captioned case, by and through its undersigned counsel, respectfully moves under 28 U.S.C. § 158(d)(2)(B) and Bankruptcy Rule 8006 for certification of direct appeal to the U.S. Court of Appeals for the Third Circuit the Order of April 20, 2023 granting in part the Debtor's motion for preliminary injunction ("PI Order"), and granting a preliminary injunction prohibiting the commencement or continuation of any trial against any of the protected parties identified in Appendix B to the verified complaint

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

2

in Adversary Case No. 23-01092 (MBK), as amended, through and including June 15, 2023, and in support thereof state as follows:

## INTRODUCTION

1.  This Court is familiar with the statutory standards for certifying direct appeals to the Third Circuit, which the Court previously applied in the Debtor's first bankruptcy to certify its orders denying the motions to dismiss the bankruptcy[2] and granting a preliminary injunction against talc claimants.[3] There is even more reason to certify the direct appeal of this Court's PI Order. The Third Circuit has a strong interest in enforcing its mandate and in preventing the Debtor from flouting its prior decision. Time is critical, because more claimants will die in the interim if an appeal languishes in the district court rather than proceeding directly to the Third Circuit. And the Debtor threatens to outrun the appellate process by rushing a plan through before the Third Circuit can provide appellate review.

2.  Because of the time pressure created by the Debtor—including its stated intent to propose a plan by May 14, 2023—the TCC plans to seek emergency relief in the Third Circuit unless this Court certifies the PI Order for immediate appeal on or before April 27, 2023.

3.  In the Debtor's first bankruptcy, the Third Circuit unanimously held that the Debtor's bankruptcy petition had to be dismissed because it failed to satisfy the good faith requirement of the Bankruptcy Code. *In re LTL Management, LLC*, --- F.4th ---, 2023 WL 2760479 (Mar. 31, 2023) (amended opinion). The Third Circuit opined: "Our ground for dismissal is LTL's lack of financial distress. . . . ***And we cannot currently see how its lack of financial distress could be overcome***." *Id.* at \*17 (emphasis added). The Third Circuit foresaw and

---

[2] *In re LTL Management, LLC*, 637 B.R. 396 (Bankr. D.N.J. 2022).

[3] *In re LTL Management, LLC*, 638 B.R. 291 (Bankr. D.N.J. 2022).

3

preempted any effort by LTL to "render itself fit for a renewed filing" by "part[ing]" with resources available to it under the 2021 "Funding Agreement." *Id.* at *16 n.18.  It would constitute a fraudulent transfer under "11 U.S.C. §548(a)," the Third Circuit warned, if LTL were to "forgo[ ] its rights under the [2021] Funding Agreement" without "receiv[ing] reasonably equivalent value in exchange." *Id.*

4.  The Debtor sought rehearing.  Not a single judge on the Third Circuit voted for rehearing.  The Debtor moved to stay the mandate, supposedly to enable LTL to pursue Supreme Court review – review that the Debtor apparently had no intention of pursuing.[4]  The Debtor represented to the Third Circuit that, without a stay of the mandate, "in courts across the country, claimants and LTL will need to move cases forward once more," "the complex mass-tort machinery could swiftly spring to life in dozens upon dozens of courts across the country," and "[e]ach of these cases would suddenly spring back into activity and proceed towards trial absent a stay."[5]

5.  Just 2 hours and 11 minutes after this Court issued its April 4, 2023 dismissal order enforcing the Third Circuit's mandate, the Debtor filed a second bankruptcy petition.  The only thing that changed during that brief window of time was that J&J and LTL colluded to strip LTL of its most valuable asset—the 2021 Funding Agreement.  In a transparent effort to manufacture financial distress and "render itself fit for a renewed filing," LTL did precisely what the Third Circuit warned it not to do.  2023 WL 2760479, at *16 n. 18.  It gave up its rights under the 2021 Funding Agreement, which was worth over $60 billion and backed by J&J as well as New JJCI,

---

[4] Bankr. Case No. 21-30589-MBK, Doc. 3939.

[5] LTL Motion to Stay Mandate, Third Circuit No. 22-2203, Doc. 173, at 3, 19.

4

and entered into a new agreement worth substantially less and backed by New JJCI only, all in an fraudulent effort to manufacture financial distress.

6. The Court has now issued a PI Order, which will protect from trial nondebtor J&J and hundreds of third parties who are not in bankruptcy themselves. 4-20-23 Tr. at 11:9-12:13. In doing so, this Court opined that it had "more questions than answers." *Id.* at 6:5-6. This Court wondered whether the Debtor might face an increased volume of claims since its initial filing in October 2021—"Maybe. Maybe not." *Id.* at 7:7. The evidence at the PI hearing "provided more speculation than answers." *Id.* at 7:5.

7. This Court observed that the reduction in funding available to LTL "certainly appears manufactured by the debtor, Holdco, and J&J in response to the Third Circuit's ruling" and noted the possibility of a fraudulent conveyance at the heart of the second bankruptcy filing. *Id.* at 7:18-8:19. This Court acknowledged that the Debtor's liabilities are "not anywhere close to being fixed," that the Debtor has "an uphill battle," and that the Court is "skeptical" of the Debtor's ability to successfully reorganize. *Id.* at 8:5-6, 9:10, 9-22. Yet this Court awarded stay relief anyway because "the Court cannot reach a determination that there is **no possibility** of a successful reorganization." *Id.* at 9:10-13 (emphasis added). That was error.

8. This Court improperly flipped the burden of proof, placing it on objectors rather than the Debtor, and held that the objectors failed to negate the elements of an injunction and failed to prove that there is no chance of a successful reorganization. But under *Philadelphia Newspapers*, a preliminary injunction is extraordinary relief and the burden of proof is on the movant, i.e., the Debtor, to establish, by clear and convincing evidence, each of the necessary elements. *See In re Phila. Newspapers, LLC*, 407 B.R. 606, 616-17 (E.D. Pa. 2009) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (a preliminary injunction "should not be granted

5

unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting 11A Wright, Miller & Kane, Federal Practice and Procedure § 2948, p. 129-30 (1995); *see also Winter v. Natural Resources Defense Counsel, Inc*., 555 U.S. 7, 22 (2008) (injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"); *Phar-Mor, Inc., Securities Litig*.,164 B.R. 903, 907 (W.D. Pa. 1994) (movant has the burden of justifying the need for an injunction "by clear and convincing circumstances outweighing potential harm to the party against whom [the injunction would be] operative."); *In re FPSDA I, LLC*, No. 10-75439, 2012 WL 6681794, at *8 (Bankr. E.D.N.Y. Dec. 21, 2012), as corrected (Dec. 26, 2012) ("[E]xtensions of the stay to protect non-debtor parties are the exception, not the rule, and are generally not favored. Thus, the movant must show by 'clear and convincing evidence' that extension of the stay is warranted."). The PI Order fails to comply with that legal standard.

9. The Third Circuit made clear that, "[o]nce at issue, the burden to establish good faith is on the debtor." 2023 WL 2760479, at *8. LTL cannot establish good faith, because its alleged financial distress was manufactured by LTL's surrender of its rights under the 2021 Funding Agreement. The justifications for that transaction are utterly pretextual. LTL's theory is that the Third Circuit's decision, by finding that LTL lacked financial distress due to the support available under the 2021 Funding Agreement, rendered that agreement "void or voidable." Dkt.1, Ex. A at 3. But the Third Circuit clearly did not think its decision would make the 2021 Funding Agreement "void or voidable" when it warned that the Debtor would need to "receive reasonably equivalent value in exchange" if it were to "forgo[] its rights under the [2021] Funding Agreement" post-dismissal. 2760479, at *16 n. 18. Moreover, the 2021 Funding Agreement expressly applies both inside and outside bankruptcy, as both the Third Circuit and this Court

6

found. *Id.* at *8; *In re LTL Mgmt.*, 637 B.R. 396, 423 n.27 (Bankr. D.N.J. 2022). LTL previously told this Court the 2021 Funding Agreement would apply even in the event the bankruptcy were dismissed: "Whether there was no case filed or ***whether the case is filed or dismissed***, the money's available for that purpose. . . . So this is there to protect the claimants. ***It's there to assure this isn't treated or consider a fraudulent conveyance***. The idea was and the intent was the claimants are covered either way in bankruptcy or outside." Tr. Feb. 18, 2022, at 61:7-20 (emphasis added). And if the Funding Agreement and divisional merger that spun off Old JJCI's talc liabilities into LTL were part of a single "integrated transaction"—as the Debtor repeatedly insisted during the first bankruptcy—then voiding the 2021 Funding Agreement, would also void the merger as well. There is no basis for selectively unwinding only half what LTL has always described as an "integrated" transaction.

10. This Court should certify the TCC's appeal directly to the Third Circuit.

**ARGUMENT**

11. 28 U.S.C. § 158(d)(2)(A)–(B) "allow a broader range of interlocutory decisions [from bankruptcy courts] to make their way to the courts of appeals." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015). Sections 158(d)(2)(A)–(B) provide that this Court "shall" certify a direct appeal to the Third Circuit if it finds that any of the following four factors is present:

> (1) the order "involves a question of law as to which there is no controlling decision of the [Third Circuit] or of the Supreme Court";
> (2) the order "involves a matter of public importance";
> (3) the order "involves a question of law requiring resolution of conflicting decisions"; or
> (4) "an immediate appeal from the . . . order . . . may materially advance the progress of the case."

*Id.* § 158(d)(2)(A); *see also In re Essar Steel Minn. LLC*, No. 19-cv-397, 2020 WL 3574743, at *3–4 (D. Del. July 1, 2020). "Certification is mandatory where a single condition is

7

satisfied under 28 U.S.C. § 158(d)(2)(B)." *In re Tribune Media Co.*, No. 15-1116, 2016 WL 1451161, at *4 (D. Del. Apr. 12, 2016).

12. In this case, at least three factors are met: the PI Order involves matters of paramount public importance, as well as key questions of law. Further, an immediate appeal would materially advance the progress of the case because an appeal to the Third Circuit is inevitable, and an intermediate appeal to the district court is not practical, given the accelerated schedule Debtor proposes for its plan.

**I.     The PI Order Involves Matters of Public Importance.**

13. In its prior decision certifying its previous orders to the Third Circuit, this Court recognized the public importance of this case. Dkt. 1926 in No. 21-bk-30589, at 74-76 (Tr. 74:21-76:12). It involves "tens of thousands of litigants," "billions upon billions of dollars, and tens upon tens upon tens of thousands of potential claimants." *Id.* at 75 (Tr. 75:5, 16-18). That importance remains. As this Court has observed, "the world is watching." 4-20-23 Tr. 6:1-2.

14. The PI Order presents yet another issue of importance: the Third Circuit has a strong interest in enforcing fealty to its decision and mandate in the Debtor's first bankruptcy. This Court "must implement ***both the letter and spirit*** of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *EEOC v. Kronos Inc.*, 694 F.3d 351, 361 (3d Cir. 2012) (emphasis added; internal quotation marks and citation omitted). The Court of Appeals has explained that the requirement that a lower court "comply in full with our mandate has several important purposes," including "preserv[ing] the proper allocation of authority within the tiered federal court structure set up by Congress and the Constitution" and "safeguard[ing] stability in the administration of justice, for the orderly functioning of the judiciary would no doubt crumble if trial judges were free to disregard appellate rulings." *Id.* at 362 (emphasis added and

8

internal quotation marks omitted). "Post mandate maneuvering" in the lower courts "would undermine the authority of appellate courts and create a great deal of uncertainty in the judicial process." *United States v. Kennedy*, 682 F.3d 244, 253 (3d Cir. 2012) (internal quotation marks omitted).

15. In this case, the Third Circuit's Judgment is particularly clear, perhaps anticipating the potential for post-appeal maneuvering by LTL. The Judgment specifically provides that this Court is bound **by the Third Circuit's Opinion in its entirety**, not merely by the specific actions on remand directed by the Court of Appeals. The Judgment provided that "the order of the Bankruptcy Court entered March 2, 2022 is reversed and the case is remanded with the instruction to dismiss Appellee's Chapter 11 petition. The order of the Bankruptcy Court entered March 4, 2022 is vacated as moot. . . . **All of the above in accordance with the Opinion of this Court**." Judgment, Third Circuit Case No. 22-2003, Doc. 151-1 (emphasis added). "Where the reviewing court in its mandate prescribes that the court shall proceed in accordance with the opinion of the reviewing court, such pronouncement operates to make the opinion a part of the mandate as completely as though the opinion had been set out at length." *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949 (3d Cir. 1985) (internal quotation marks omitted).

16. This Court is bound to respect and implement every aspect of the Third Circuit's opinion, and the enforcement of an appellate mandate is by definition an important issue of law.

**II.    Certification is Appropriate So That The Third Circuit Can Establish that Its Decision Is Indeed Controlling.**

17. In issuing the PI Order, this Court identified numerous questions of law and legal challenges that the Debtor faces, including whether a reduction in funding manufactured by the Debtor can provide a basis for finding financial distress and good faith; whether the Debtor can side-step a constructive fraudulent conveyance claim as outlined by footnote 18 of the Third

Circuit's decision by claiming that it is not insolvent, and yet in financial distress; whether the Debtor is subject to a claim of actual fraudulent conveyance in light of its admitted intent to surrender the 2021 Funding Agreement so that "its pre-filing financial condition" would be "sufficiently distressed to satisfy the standard established by the Third Circuit" (Kim First-Day Decl. in LTL 2.0 ¶ 83); and whether the 2021 Funding Agreement was "void or voidable" because the Third Circuit decision supposedly "changed the law" (4-14-23 Kim Dep. Tr. 78:14), rather than (as the Third Circuit itself explained) resting on decades of precedent and established bankruptcy law.

18.     In the TCC's view, all of these issues were settled by the Third Circuit. This Court was "skeptical" that the Debtor could overcome the myriad hurdles it faces, 4-20-23 Tr. at 9:22, and noted that "[t]here are unresolved issues such as the voidability of the 2021 funding agreement" and "the potentially largest fraudulent transfer undertaken in history." *Id.* at 9:10-13. LTL's transparent attempt to circumvent the Third Circuit's decision demonstrates the need for prompt appellate review, so the Court of Appeals can render an authoritative decision addressing LTL's latest gambit.

19.     Moreover, the 2021 Funding Agreement was only part of the reason that the Third Circuit concluded that LTL had failed to show sufficient financial distress. It also concluded that LTL could not show "immediate" financial difficulty. 2023 WL 2760479, at *9. "The 'attenuated possibility' that talc litigation may require it to file for bankruptcy in the future does not establish its good faith as of its petition date. At best the filing was premature." *Id.* at *16. The Third Circuit drew comparisons to other mass tort litigation, such as the Johns Manville case, where the debtor faced true financial distress, including "'forced liquidation of key business segments.'" *Id*. at *11 (citation omitted). The Third Circuit opined that further litigation in the tort system would

help, not hinder, LTL's reorganization: "the progression of multidistrict litigation on a separate track would continue to sharpen all interested parties' views of mutually beneficial settlement values." *Id.* at *14. It noted that in the Dalkon Shield bankruptcy, "the Court and stakeholders had the benefit of data from 15 years of tort litigation by A.H. Robins before its filing." *Id.* at *14 n.13.

20. The Third Circuit also pointed to the flaws in Debtor's post hoc, lawyer-driven estimates of its talc exposure and held they were not credible. *Id.* at *15-16. Those facts have not changed. Nothing happened in the intervening 2 hours and 11 minutes on April 4—between dismissal of the first bankruptcy and filing of the second bankruptcy—to cure the impermissibly speculative "forecasts" of LTL's talc liability that the Third Circuit rejected. 2023 WL 2760479, at *15. Indeed, in issuing the PI Order, this Court noted that much uncertainty and conjecture remains regarding the Debtor's liabilities and that the evidence at the PI hearing "provided more speculation than answers." 4-20-23 Tr. at 7:5. This Court explained that "[t]he Third Circuit specifically cautioned and admonished against casual calculations and back of the envelope forecasts. Given the limited record here, this Court cannot make an informed determination or comparison of the assets and liabilities of this debtor in this bankruptcy, which according to the Third Circuit, is where the inquiry should be focused." *Id.* at 8:7-12.

21. LTL's second bankruptcy petition does nothing to cure these defects. LTL's general counsel, John Kim, testified at deposition just last week that LTL was asserting the "same basis" for financial distress as it had before. 4-14-23 Kim Dep. Tr. 206:4-5. He added, "I would rely on the testimony from the last proceeding." *Id.* at 205: 23-24. But the Third Circuit rejected that "basis" and that prior testimony. Yet LTL has nothing else. At the February 18, 2023 hearing on stay relief, for example, LTL's counsel trumpeted the same $190 billion figure for talc trial costs,

11

4-18-23 Tr. at 254:5, that the Third Circuit specifically cited as meaningless in rejecting this Court's projections as clearly erroneous. 2023 WL 2760479, at *14-15. LTL simply refuses to accept the Third Circuit's decision.

22. If anything, the Third Circuit's reasoning has only been strengthened by the second bankruptcy filing. In rejecting this Court's previous forecasts, the Third Circuit held that this Court ignored "the possibility of meaningful settlement." 2023 WL 2760479, at *15. The Debtor's assertion that it has reached agreements with tens of thousands of claimants (Kim First-Day Decl. LTL 2.0 ¶ 8), if taken at face value, simply proves the Third Circuit's point that the potential for settlement undermines LTL's claim of financial distress warranting bankruptcy.

23. Nor can speculation about the 60,000 unverified and unsubstantiated (and still unfiled) "claims" purportedly identified by Mr. Murdica and Mr. Watts provide a basis for finding financial distress. Any *filed* cases are already included in the figures that the Third Circuit already considered. The remaining *unfiled* claims have not been subject to any vetting. Mr. Murdica confirmed that he simply accepted the representations of the signing firms at face value.[6] Mr. Murdica did not ask for engagement letters, inquire whether a complaint had been drafted, or ask if the attorney had reviewed a pathology report.[7] Mr. Murdica simply asked the plaintiff law firms for names, dates of birth, the last four digits of Social Security numbers, and self-described "claim type."[8] In an email dated February 26, 2023, Mr. Watts told Mr. Murdica, "As we add law firms, we just get them to sign on page 18 with the number of claimants *they profess to represent*." Mr.

---

[6] Murdica Dep. Tr. 4-16-23 at 34:21-40:16, 41:12.

[7] Murdica Dep. Tr. 4-16-23 at 123:9-124:11, 124:17-24, 127:9-23.

[8] Murdica Dep. Tr. 4-16-23 at 141:5-142:23, 145:11-155:22. *See also* Kim Dep. Tr. 4-14-23 at 121:10-122:16.

12

Kim conceded that the "bona fides" of those claims had not been established and made clear that LTL would never consider paying them without intensive scrutiny and verification.[9]

24. The Third Circuit found that previous calculations were unsupportable; the Debtor's napkin math based on the 60,000 purported claims would be even worse. LTL bears the burden of proving financial distress, and under the Third Circuit's decision it cannot meet that standard.

### III. Certification Will Materially Advance the Progress of the Case.

25. As this Court recognized in certifying the prior appeals to the Third Circuit, certification is appropriate where ultimate resolution in the Court of Appeals is inevitable and where intermediate appeal to the district court would be only a waystation on that journey. Those factors apply here as well.

26. Indeed, an expedient appeal is even more critical now. The Debtor threatens to outrun the appellate process by rushing through a plan—which Debtor has said it will propose on an accelerated basis on May 14—before the Third Circuit has the opportunity to provide appellate review. Claimants have already been forced to wait 18 months while LTL pursued a bankruptcy that the Third Circuit ultimately held was impermissible. The Third Circuit should be given the chance to provide an authoritative resolution of the disputed issues as promptly as possible.

---

[9] 4-14-23 Tr. 50:1-51:2.

## CONCLUSION

27. This Court should certify the PI Order for direct appeal to the U.S. Court of Appeals for the Third Circuit.

Respectfully submitted,

**GENOVA BURNS, LLC**


By: */s/ Daniel M. Stolz*
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 533-0777
Facsimile: (973) 467-8126
Email: dstolz@genovaburns.com
Email: dclarke@genovaburns.com

*Proposed Local Counsel to the Official Committee of Tort Claimants of LTL Management, LLC*