NOT FOR PUBLICATION

<table>
<tr><td>
UNITED STATES BANKRUPTCY COURT<br>
DISTRICT OF NEW JERSEY<br>
**Caption in Compliance with D.N.J. LBR 9004-2(c)**
</td><td></td></tr>
</table>

| | |
|---|---|
| LTL Management, LLC,<br>        Debtor. | Case No. 23-12825 (MBK) |
| LTL Management, LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>Those Parties Listed on Appendix A to the Complaint and John and Jane Does 1-1000,<br><br>       Defendants. | Adv. Pro. No. 23-01092 (MBK)<br><br>Chapter 11<br><br>Hearing Date:  April 18, 2023 |

*All Counsel of Record*

## MEMORANDUM OPINION

This matter comes before the Court by way Debtor's bankruptcy case (Case No. 23-12825) and subsequent adversary proceeding (Adv. Pro. No. 23-01092) and motion ("Motion") (ECF No. 2 in Adv. Pro. No. 23-01092)[1] filed by Plaintiff LTL Management, LLC ("LTL" or "Debtor") seeking an Order (I) Declaring That the Automatic Stay Applies or Extends to Certain Actions Against Non-Debtors, (II) Preliminarily Enjoining Such Actions, and (III) Granting a Temporary

---

[1] Unless otherwise specified, all ECF Nos. will refer to docket entries in the instant adversary proceeding (the "Second Talc Adversary Proceeding"), Adv. Pro. No. 23-01092.

Restraining Order Ex Parte Pending a Hearing on a Preliminary Injunction Filed by LTL

Management LLC.  The Court has fully considered the submissions of the parties and the

arguments set forth on the record at a hearing held on April 18, 2023.  The Court also takes judicial

notice of prior rulings and documents filed in this and in the prior bankruptcy case (Case No. 21-

30589) and the related adversary proceedings.[2]  For the reasons set forth below, the Court grants

Debtor's Motion in part and denies the Motion in part and enters a limited preliminary injunction

(the "Preliminary Injunction").[3]  Specifically—with the exception of the Multi-District Litigation

("MDL")—the limited Preliminary Injunction will prohibit *only* the commencement or

continuation of any *trial* and appellate practice against any of the parties identified in Appendix B

to the Verified Complaint, as amended[4] (the "Protected Parties"), through and including June 15,

2023, a period of approximately 60 days.  No parties are enjoined or restrained from filing new

complaints against non-debtor third parties, or from engaging in any ongoing discovery or other

pre-trial matters.  On the May 22, 2023 omnibus date, the Court will revisit the continuation and/or

modification of the Preliminary Injunction as it relates the MDL pending before Judge Shipp.  The

---

[2] *See In re Davis*, 597 B.R. 770, 773 (Bankr. M.D. Pa. 2019) ("Federal Rule of Evidence 201 allows a federal court to take judicial notice of facts that are not subject to reasonable dispute. A bankruptcy court may take judicial notice of the docket entries in a case and the contents of the bankruptcy schedules to determine the timing and status of case events, as well as facts not reasonably in dispute."); *see also In re Washington Mut. Inc.*, 741 F. App'x 88, 89 n.1 (3d Cir. 2018) (citing *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) and taking judicial notice of documents, "including matters of public record and judicial opinions").

[3] The Court also grants in part and denies in part Mr. Satterley's Motion for Stay Relief (ECF No. 71 in Case No. 23-12825).  Although he may not proceed to trial, Mr. Satterley is granted limited stay relief against Debtor for purposes of taking discovery against Debtor related to the underlying state litigation.  The Court has entered an Order to this effect in the main bankruptcy case. *April 25, 2023 Order*, ECF No. 298 in Case No. 23-12825.

[4] As discussed on the record on April 20, 2023, Janssen Pharmaceuticals, Inc. and Kenvue Inc. are excluded, and the Preliminary Injunction does not extend to those entities.

Court issues the following findings of fact and conclusions of law as required by FED. R. BANKR. P. 7052.[5]

## I.      Venue and Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the Bankruptcy Court.  As explained in detail below, this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (G). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.     Background

The parties are familiar with the factual background and procedural history of this case. LTL, which is an indirect subsidiary of Johnson & Johnson ("J&J"), traces its roots back to Johnson & Johnson Baby Products, Company, a New Jersey company incorporated in 1970 as a wholly owned subsidiary of J&J. *Declaration of John K. Kim in Support of First Day Pleadings* ("*Kim Decl.*") ¶¶ 13-15, ECF No. 4 in Case No. 23-12825.  A thorough discussion of the history of J&J and its talc products can be found in this Court's February 25, 2022 Opinion Denying the Motions to Dismiss and the Court will limit its recitation of the factual background here. *See In re LTL Mgmt., LLC*, 637 B.R. 396 (Bankr. D.N.J. 2022).  In relevant part, in 1979, J&J transferred all its assets associated with the Baby Products division to J&J Baby Products Company (the "1979 Agreement").  Thereafter, as the result of intercompany transactions, one of J&J's corporate

---

[5] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

subsidiaries, Johnson & Johnson Consumer Inc. ("Old JJCI") assumed responsibility for all claims alleging that J&J's talc-containing products caused ovarian cancer and mesothelioma. *Kim Decl.* ¶¶ 16-21, ECF No. 4 in Case No. 23-12825.

On October 12, 2021, Old JJCI engaged in a series of transactions pursuant to the Texas divisional merger statute, *See* Tex. Bus. Orgs. Code Ann. §§ 10.001 *et seq.* (the "2021 Corporate Restructuring") through which it ceased to exist and two new companies, LTL and Johnson & Johnson Consumer Inc. ("New JJCI"), were formed. *Kim Decl.* ¶ 24, ECF No. 4 in Case No. 23-12825. The alleged purpose of this restructuring was to "globally resolve talc-related claims through a chapter 11 reorganization without subjecting the entire Old JJCI enterprise to a bankruptcy proceeding." *Kim Decl.* ¶ 29, ECF No. 4 in Case No. 21-30589. As a result of the restructuring, LTL assumed responsibility for all of Old JJCI's talc-related liabilities. *Id.* Through the restructuring, LTL also received rights under a funding agreement (the "2021 Funding Agreement"). *Kim Decl.* ¶ 32, ECF No. 4 in Case No. 23-12825. Under the 2021 Funding Agreement, J&J and New JJCI were obligated to pay, *inter alia*, the "Payee's Talc-Related Liabilities", as well as "any and all costs and expenses" LTL incurs during its bankruptcy case, "including the costs of administering the Bankruptcy Case" to the extent necessary. *Funding Agreement* 6*, Annex 2 to Kim Decl. in Support of First Day Pleadings*, ECF No. 5 in Case No. 21-30589; *see also Kim Decl.* ¶ 32, ECF No. 4 in Case No. 23-12825.

On October 14, 2021, LTL filed its initial voluntary petition for chapter 11 relief in the United States Bankruptcy Court for the Western District of North Carolina. *Petition*, ECF No. 1 in Case No. 21-30589. One week after the chapter 11 filing, Debtor initiated an adversary

proceeding (the "Talc Adversary Proceeding"), seeking declaratory and injunctive relief against plaintiffs (the "Talc Claimants") who had filed federal and state actions against Debtor's affiliates and other entities for talc-related claims (the "Talc Actions"). *Complaint*, ECF No. 1 in Adv. Pro. No. 21-03032.  By way of the Talc Adversary Proceeding, the Debtor sought an order declaring that the automatic stay applies to those actions against nondebtors or, in the alternative, to enjoin such actions and grant a temporary restraining order pending a final hearing.   Debtor simultaneously filed a motion requesting a preliminary injunction enjoining the prosecution of actions outside of the chapter 11 case on account of the same talc claims that exist against the Debtor in the chapter 11 case. *Motion*, ECF No. 2 in Adv. Pro. No. 21-03032.  Ultimately, the chapter 11 and related adversary proceeding case were transferred to the District of New Jersey. Following a five-day evidentiary hearing—during which the Court contemporaneously heard arguments on pending motions to dismiss—the Court denied the motions to dismiss in the underlying bankruptcy case and granted the motion for preliminary injunction in the Talc Adversary Proceeding. *See In re LTL Mgmt., LLC*, 637 B.R. 396 (Bankr. D.N.J. 2022) (denying motions to dismiss); *In re LTL Management, LLC*, 638 B.R. 291, 297 (Bankr. D.N.J. 2022) (granting preliminary injunction).  Several other adversary proceedings followed wherein Debtor sought similar relief. *See Securities Adversary Proceeding*, Adv. Pro. No. 22-01073; *Consumer Protection Adversary Proceeding*, Adv. Pro. No. 22-01231.  This Court likewise granted the motion for preliminary injunction and extended the automatic stay to nondebtor defendants in those actions. *See In re LTL Mgmt., LLC*, No. 22-01073, 640 B.R. 322 (Bankr. D.N.J. 2022); *In re LTL Mgmt., LLC*, 645 B.R. 59 (Bankr. D.N.J. 2022).

Meanwhile, several parties appealed this Court's denial of the motions to dismiss and its imposition of a preliminary injunction in the Talc Adversary Proceeding. While the appeals were pending, New JJCI—which had continued operations—changed its name to Johnson & Johnson Holdco (NA) Inc. ("Holdco") in December 2022. *Kim Decl.* ¶ 26, ECF No. 4 in Case No. 23-12825. Holdco is the direct parent of the Debtor. *Id.* at ¶ 27. In early January 2023, Holdco transferred its Consumer Business assets to its parent entity. *Id.* at ¶ 26.

On January 30, 2023, the Third Circuit ruled on the pending appeals and issued an opinion directing this Court to dismiss the 2021 Chapter 11 Case (the "Third Circuit Opinion"). *See In re LTL Mgmt., LLC*, 58 F.4th 738 (3d Cir. 2023) as amended by 2023 WL 2726441 (3d Cir. Mar. 31, 2023). Specifically, the Third Circuit ruled that the case was not filed in good faith due to Debtor's lack of financial distress. The Debtor filed a petition for rehearing and rehearing en banc with the Third Circuit, which the circuit court denied on March 22, 2023. The Debtor then filed a motion seeking a stay of the Third Circuit's mandate pending appeal to the United States Supreme Court, which the circuit court denied on March 31, 2023. This Court entered an order dismissing the initial chapter 11 bankruptcy case on April 4, 2023. *Dismissal Order*, ECF No. 3938 in Case No. 21-30589. Approximately two hours later, Debtor initiated the instant bankruptcy case. *Petition*, ECF No. 1 in Case No. 23-12825. In conjunction with the Petition, Debtor filed "support agreements (collectively, the "Plan Support Agreements") that have been executed and delivered by counsel on behalf of over 60,000 claimants and signed by the Debtor, Holdco and J&J[,]" which Debtor states demonstrates support for "an agreement with thousands of claimants on a broad outline of terms for a plan of reorganization, including financial terms, that, if confirmed and

consummated, would fully resolve all the Debtor's liability for talc-related claims." *Kim Decl.* ¶ 72, ECF No. 4 in Case No. 23-12825.  Debtor also terminated the 2021 Funding Agreement and entered into "new financing arrangements." *Id.* at ¶ 78.  The new funding agreement (the "2023 Funding Agreement") "obligates Holdco to provide funding to the Debtor to pay for costs and expenses of the Debtor incurred in the normal course of its business" to the extent Debtor is unable to do so. *Id.* at ¶ 79.  Debtor, Holdco and J&J entered into a separate agreement (the "J&J Support Agreement"), which operates only in the chapter 11 case and "obligates J&J to provide the trust funding Holdco is required to provide under the 2023 Funding Agreement but only if Holdco fails to provide the funding." *Id.* at ¶¶ 80, 81.

Shortly after filing the Petition, Debtor commenced the instant Adversary Proceeding and filed the Motion, which is the subject of this Opinion.  The Court issued an ex parte Temporary Restraining Order (ECF No. 9), which was thrice amended (ECF Nos. 15, 16, and 20), and, at the parties' request, the Court kept this matter on a tight timeframe, scheduling a hearing for April 18, 2023.  Multiple interested parties (collectively, the "Objecting Parties") filed Objections to the Debtor's Motion.[6]  At the hearing on April 18, 2023, the parties presented argument, testimony,

---

[6] *See* Objections filed by: Arnold & Itkin LLP (ECF No. 37); United States Trustee (ECF No. 38); Official Committee of Talc Claimants ("TCC") (ECF No. 39); John M. August on behalf of Kristie Lynn Doyle (ECF No. 43); John M. August on behalf of Trevor Barkley (ECF No. 46); John M. August on behalf of Alison Daugherty (ECF No. 51); John M. August on behalf of Marlin Lewis Eagles (ECF No. 53); John M. August on behalf of Susan Jean Bader (ECF No. 54); John M. August on behalf of Dean McElroy (ECF No. 56); Jerome Howard Block on behalf of Paul Crouch (ECF No. 57); Joinder filed by E. Richard Dressel on behalf of Evan Plotkin (ECF No. 58); Suzanne Ratcliffe on behalf of Various Talc Claimants, Katherine Tollefson (ECF No. 60); a Limited Objection by John Maloney on behalf of Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company) ("Travelers") (ECF No. 61). Several parties also filed joinders and/or supplemental objections following the April 18, 2023 hearing. *See* Supplemental Objection filed by Jerome Howard Block on behalf of Paul Crouch (ECF No. 62); Supplemental Objection filed by Clay Thompson on behalf of Katherine Tollefson, Various Talc Claimants (ECF No. 65); Joinder of TCC's Objection filed by Christopher M. Placitella on behalf of Justin Bergeron (ECF No. 80).

and admitted evidence into the record.  To accommodate the parties' request that the Court rule on this matter as soon as possible, the Court read an oral ruling into the record on April 20, 2023. This written Opinion is intended to clarify and supplement the oral opinion, the transcript of which is available on the docket at ECF No. 82 and is hereby incorporated by reference.

## III.    Discussion

### A.  Authority and Standard for Extension of Stay to Nondebtors

The Court discussed its authority to stay litigation against nondebtor third parties in its Opinions granting preliminary injunctions in the prior bankruptcy case. *See In re LTL Mgmt., LLC*, 645 B.R. 59 (Bankr. D.N.J. 2022); *In Re LTL Mgmt., LLC*, 640 B.R. 322 (Bankr. D.N.J. 2022); *In re LTL Management, LLC*, 638 B.R. 291 (Bankr. D.N.J. 2022).  The Court will not repeat the lengthy discussions therein and, instead, incorporates them by reference.  In sum, the Court concludes that § 362(a), §105(a), or a court's inherent powers can each serve as independent bases for extension of a stay to nondebtor third parties.  Nevertheless, because certain courts in this circuit still view the source of authority to extend the automatic stay as an open-ended question, this Court will utilize the same three-step inquiry outlined in its prior decision to address the instant Motion.  Namely, in determining whether to extend the automatic stay to nondebtor third parties, the Court considers: (1) whether it has jurisdiction to issue the injunction; (2) whether extension of the automatic stay under § 362(a) to the nondebtors is appropriate; and (3) whether the Court should, in its discretion, issue the injunction. *In re LTL Mgmt., LLC*, 638 B.R. at 301 (citing *In re Philadelphia Newspapers, LLC*, 423 B.R. 98, 102 (E.D. Pa. 2010)) (other citations omitted).

### 1.  Subject Matter Jurisdiction

The Objecting Parties contend that the Debtor has failed to establish that this Court has subject matter jurisdiction to enjoin the Talc Actions.  The Objecting Parties' arguments in this respect are premised primarily on their contention that the instant bankruptcy was filed in bad faith and, thus, this Court does not have subject matter jurisdiction to enter *any* orders in this case. *See e.g., Objection by TCC* 16, ECF No. 39 (stating that "LTL's failure to show financial distress or good faith [among other things] . . . deprives this Court of subject matter jurisdiction to enter the relief requested by this Motion")[7]; *Objection by Maune Raichle Hartley French & Mudd, LLCR* 3, 5, 11-15, ECF No. 60 (positing that this Court lacks subject matter jurisdiction because the bankruptcy was not filed in good faith); *id.* at 14 ("Therefore, this Court accordingly has no jurisdiction over LTL's instant Petition.").  For reasons that will be discussed, this Court determines that it cannot, at this juncture, find that the petition was filed in bad faith sufficient to establish cause to dismiss.  Accordingly, this Court again concludes that it has the authority to examine and determine the scope of a substantive right afforded under the Bankruptcy Code.

"Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11." *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006), as amended (Mar. 17, 2006) (citing 28 U.S.C. § 1334(b) and *In re Combustion Eng'g, Inc.*, 391

---

[7] The TCC also challenges this Court's jurisdiction to enter an injunction under § 105, arguing that the Court the bankruptcy court does not have core or related-to jurisdiction over the claims in the tort cases sought to be enjoined. *See e.g.*, TCC's Objection 54, ECF No. 39.  As an initial matter, this Court disagrees with the TCC's position regarding a bankruptcy court's authority to extend the automatic stay under § 362

F.3d at 225 (citations omitted)).   "The first three categories are considered 'core' proceedings, whereas the fourth category, 'related to' proceedings, are considered 'non-core' proceedings." *In re E. Orange Gen. Hosp., Inc.*, 587 B.R. 53, 71 (D.N.J. 2018) (citing *In re Resorts Int'l, Inc.*, 372 F.3d 154, 162 (3d Cir. 2004)).   A bankruptcy court has the power to hear, decide and enter final orders and judgments in the first three categories of proceedings. 28 U.S.C. §157(b)(1); *In re Roggio*, 612 B.R. 655, 660 (Bankr. M.D. Pa. 2020).

A proceeding "arise[s] under" the Bankruptcy Code when the Bankruptcy Code creates the cause of action or provides the substantive right being invoked. *Stoe v. Flaherty*, 436 F.3d at 217. A proceeding "arise[s] in" a case when it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case. *Id.* at 216 (quoting *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 166 F.3d 552, 556 (3d Cir. 1999) and explaining that a proceeding arises in a bankruptcy case if it has "no existence outside of the bankruptcy").   Finally, "a claim falls within the bankruptcy court's 'related to' jurisdiction if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Winstar Commc'ns, Inc.*, 554 F.3d 382, 405 (3d Cir. 2009) (internal quotations and citations omitted); *see also In re W.R. Grace & Co.*, 591 F.3d 164.   "What will or will not be sufficiently related to a bankruptcy to warrant the exercise of subject matter jurisdiction is a matter that must be developed on a fact-specific, case-by-case basis." *In re W.R. Grace & Co.*, 591 F.3d at 174 n.9.

Here, Debtor's Motion unquestionably implicates § 362(a), which is a substantive right under the Code.   This Court certainly has jurisdiction to determine § 362(a)'s applicability and scope in this bankruptcy case, and—more specifically—whether it is appropriate to extend the

substantive rights afforded under § 362(a) to nondebtors. *See, e.g.*, *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1100 (9th Cir. 2005) (holding that lower court had jurisdiction to determine whether the automatic stay of the Texas bankruptcy court applied to the Attorney General's suit). Therefore, the instant matter is decidedly a proceeding over which this Court has "core" jurisdiction. *See LTL Mgmt., LLC v. Those Parties Listed on Appendix A to Complaint*, 2022 WL 190673, at *4 (collecting cases).

Having found "core" jurisdiction over the instant Adversary Proceeding, there is no need for a secondary source of jurisdiction. *See In re Essar Steel Minnesota, LLC*, 47 F.4th 193 (3d Cir. 2022) (discussing *In re Shenango Group, Inc.*, 501 F.3d 338, 342–44 (3d Cir. 2007), and holding that where a court finds one type of jurisdiction, it need not go further in its jurisdictional inquiry). Nevertheless, given the lack of clarity regarding the appropriate authority to enjoin third party actions, the Court offers the following analysis and again determines that, at a minimum, it has "related to" jurisdiction.  As discussed in prior opinions, continued litigation of talc claims against the Protected Parties—especially to the point of liquidation of a claim through trial—has a "conceivable effect" on the bankruptcy estate because it effectively seeks to collect and liquidate claims against Debtor, could deplete available insurance coverage, and could trigger indemnification obligations.  More to the point, verdicts outside of bankruptcy will set a dollar amount to liability, and—whether those verdicts are in favor of Debtor or of individual claimants— they will certainly impact claims valuations, estimation, insurance, and mediation efforts inside this bankruptcy.

In sum, this Court previously held that there is an identity of interests between the Protected Parties and the Debtor, that the parties share insurance coverage, that there exist potential indemnification obligations, and that continued litigation has a potential adverse impact on a debtor's estate and prospect of reorganization. *See In re LTL MANAGEMENT, LLC*, 638 B.R. at 303-306. (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d at 999; *see also McCartney*, 106 F.3d at 510); *see also In re Boy Scouts of Am. & Delaware BSA, LLC,* No. 20-10343-LSS, 2023 WL 2662992 (D. Del. Mar. 28, 2023) (finding related-to jurisdiction based on identity of interest, shared insurance coverage, and indemnification obligations).  Nothing presented in opposition to the instant Motion or in the Third Circuit's Opinion changes that analysis.  Therefore, the Court again concludes that it has subject matter jurisdiction.

### 2.  The Automatic Stay Under § 362(a)

The Court must next examine whether extension of the stay to nondebtors is appropriate given the circumstances.  Section 362(a) provides, in relevant part, that

> a petition filed under section 301, 302, or 303 of this title . . . operates as a stay applicable to all entities, of—
>
> > (1) the commencement or continuation, . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> >
> > . . .
> >
> > (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(1), (3).

### (a) § 362(a)(1)

The Court previously held that the Talc Claims are, fundamentally, an attempt to liquidate and recover claims against the Debtor.  As this Court's prior opinions observe, Debtor is responsible for any and all liabilities associated with the talc products by virtue of the 1979 Agreement and the 2021 Corporate Restructuring.  Accordingly, this Court previously concluded that the claims in the Talc Actions constitute "action[s] or proceeding[s] against the debtor," for which the Debtor is entitled to protection under § 362(a)(1).  Nothing offered in the Third Circuit's Opinion or in the parties' arguments compels deviation from this Court's prior ruling.

### (b) § 362(a)(3)

"It has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate." *ACandS, Inc. v. Travelers Cas. & Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) (collecting cases); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 148–49 (D. Del. 2012), *aff'd sub nom. In re WR Grace & Co.*, 729 F.3d 332 (3d Cir. 2013).  Here, it is undisputed that the Protected Parties and Debtor share insurance policies.  Although, certain coverage is disputed, and no definitive determination has been made as to exhaustion, the shared policies— which are undeniably part of the bankruptcy estate—may be impacted by any judgment obtained by the Talc Claimants against the Protected Parties outside of bankruptcy. *See In re Boy Scouts of Am. & Delaware BSA, LLC,* 2023 WL 2662992, at *22-24.   These same circumstances led this Court to extend the automatic stay to the Protected Parties in the initial bankruptcy case.  The Objecting Parties do not present a persuasive argument that warrants alteration of this Court's previous finding.  Likewise, the Third Circuit's Opinion does not demand reconsideration of this

matter. Accordingly, the Court again concludes that an extension of the automatic stay under §
362(a)(3) is appropriate.

### (c) "Unusual Circumstances"

The Third Circuit has recognized that § 362(a)'s protection is applicable to nondebtors
where "unusual circumstances" exist. *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d
Cir. 1997) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), cert. denied, 479
U.S. 876, 107 S. Ct. 251, 93 L.Ed.2d 177 (1986)); *see also In re Philadelphia Newspapers, LLC*,
423 B.R. at 104. When deciding to extend the stay to nondebtors, the Court follows the Third
Circuit's guidance and considers the "unusual circumstances" present in the instant case—namely,
the identity of interests between Debtor and the Protected Parties and the potential prejudicial
impact of Talc Action verdicts outside of bankruptcy on Debtor's reorganizational efforts. *See In
re Philadelphia Newspapers, LLC*, 407 B.R. 606, 616 (E.D. Pa. 2009) (explaining that unusual
circumstances exist warranting extension of the stay to nondebtors when: "(i) the non-debtor and
debtor enjoy such an identity of interests that the suit of the non-debtor is essentially a suit against
the debtor; or (ii) the third-party action will have an adverse impact on the debtor's ability to
accomplish reorganization"); *see also In re LTL Management, LLC*, No. 21-30589, 2022 WL
586161, at *9 (explaining that "a critical factor in deciding whether to extend the stay is the
potential adverse impact on a debtor's estate and prospect of reorganization").

The Court's analysis of the potential harm to the bankruptcy estate from trials in the Talc
Actions mirrors the jurisdictional analysis previously discussed—particularly, the Court's findings
regarding "related to" jurisdiction. *See In re Boy Scouts of Am. & Delaware BSA, LLC,* 2023 WL

2662992, at *18-24.    Those same considerations supporting subject matter jurisdiction also support the conclusion that "unusual circumstances" exist warranting extension of § 362(a)'s automatic stay protection to the nondebtor defendants in the Talc Actions.[8]

### 3.  § 105(a) Injunction

The Court next turns to address the parties' competing positions as to whether an injunction under § 105(a) is appropriate.  Pursuant to § 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  "The issuance of an injunction under section 105(a) is governed by the standards generally applicable to the issuance of injunctive relief in non-bankruptcy contexts." *In re Philadelphia Newspapers, LLC*, 423 B.R. at 105.  In determining whether a preliminary injunction is appropriate, the Court considers the following factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*McTernan v. City of York, Pa.,* 577 F.3d 521, 527 (3d Cir. 2009) (quoting *United States v. Bell,* 414 F.3d 474, 478 n.4 (3d Cir. 2005)); *see also ADP, Inc. v. Levin*, No. 21-2187, 2022 WL 1184202, at *1 (3d Cir. Apr. 21, 2022) (citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), as amended (June 26, 2017)).  "A preliminary injunction is an 'extraordinary

---

[8] In the Third Circuit Opinion, the circuit court held that "unusual circumstances" were not present in the Debtor's prior bankruptcy case. *In re LTL Mgmt., LLC*, 64 F.4th 84, 110-111 (3d Cir. 2023).  However, this finding was made in different context—specifically, in the context of examining dismissal under § 1112(b)—and not in examining extension of the automatic stay, which is the issue presently before this Court.

remedy, which should be granted only in limited circumstances.' " *Kos Pharmaceuticals Inc. v. Andrex Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)).

### a. Success on the Merits

"In the bankruptcy context, reasonable likelihood of success is equivalent to the debtor's ability to successfully reorganize." *In re Union Tr. Philadelphia, LLC*, 460 B.R. 644, 660 (E.D. Pa. 2011) (quoting *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 752 (Bankr. E.D. Pa. 1986) (explaining reasonable likelihood of success in terms of a successful reorganization)).    To demonstrate a reasonable likelihood of success, a movant need only show the prospect or possibility that he or she will succeed, and need not prove same with certainty. *See Conestoga Wood Specialties Corp. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 724 F.3d 397 (3d Cir. 2013) (Jordan, J., dissenting) (reversed and remand on other grounds) (collecting cases).  At this juncture, Debtor has met its burden.[9]  Indeed, Debtor has outlined its reorganizational strategy, executed a funding agreement (albeit a new one), and it has come to this bankruptcy court alleging that the plan it intends to file will have the support of nearly 60,000 claimants.  Admittedly, as the Objecting Parties argue, this creditor support is not guaranteed.  However, case law establishes that certainty is not required; a debtor need only show the possibility that it will succeed—a hurdle that this Debtor has cleared given the early stages of this litigation.[10] *See Conestoga*, 724 F.3d 397.

---

[9] As recognized repeatedly in the Court's prior published opinions, the burden rests on the Debtor to establish the likelihood of success.  The to the extent the Court was unclear in articulating the standards in its oral ruling, this Opinion reaffirms and clarifies the law and the Court's finding that the Debtor has satisfied its burden.

[10] The Court notes that during oral argument on April 18, 2023, Counsel for the United States Trustee argued that the "likelihood of success" inquiry should be focused on the non-debtor affiliates. *See* Tr. Apr. 20, 2023 Hrg. 37:10-

### i. Good Faith

The Objecting Parties argue that Debtor has not satisfied its burden of establishing a viable prospect of successful reorganization. Specifically, the Objecting Parties assert that Debtor has no realistic possibility of success because the bankruptcy was not filed in good faith. "Once at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has been filed in 'good faith.'" *In re SGL Carbon Corp.*, 200 F.3d 154, 162 n.10 (3d Cir. 1999) (citations omitted). As stated, Debtor has executed a funding agreement and has outlined its reorganizational strategy for which it alleges it has the support of 60,000 claimants as evidenced by the Plan Support Agreements.

Our Third Circuit has made clear that it views the gateway to good faith as being a determination that a debtor is in financial distress. During oral argument at the hearing on April 18, 2023, counsel for various Objecting Parties argued that this determination should be straightforward. Essentially, they inquired whether anything occurred in the 2 hours and 11 minutes between filings, and after the Third Circuit's ruling, which changed the Debtor's financial situation and created distress. As this Court discussed during its oral ruling on April 20, 2023, the Court does not agree that this is the appropriate inquiry for applying the Third Circuit's financial distress ruling. Rather, this Court believes the focus should be on whether anything changed in

---

12, ECF No. 81 ("Likelihood of success on the merits, remember, this is likelihood of success from the non-debtor affiliates. Not LTL, non-debtor affiliates."). The Court disagrees and believes the United States Trustee conflates the inquiry for purposes of a preliminary injunction in the bankruptcy context. The weight of the case law establishes that when assessing whether to grant a preliminary injunction in bankruptcy, courts should evaluate the reasonable likelihood of a debtor's successful bankruptcy reorganization. *See, e.g.*, *In re G-I Holdings Inc.*, 420 B.R. 216, 281 (D.N.J. 2009) (discussing plan feasibility and describing the first factor in the test for a preliminary injunction as "a reasonable likelihood of a successful plan of reorganization"); *In re Union Tr. Philadelphia, LLC*, 460 B.R. 644, 660 (E.D. Pa. 2011); *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 752 (Bankr. E.D. Pa. 1986).

the debtor's financial picture since October of 2021—the date of the first filing and the period

fixed for purposes of the five-day trial undertaken in February of 2022—and April 4, 2023, the

date of the second filing. This Court observed the following changes, which raise more questions

regarding financial distress and good faith than they answer:

- First, claims against the Debtor have increased from approximately 41,000 to (in all

  likelihood) well over 100,000. It is uncertain whether these new claims are supportable;

  however, the parties offered only speculation in support of their respective positions as to

  viability. Accordingly, the Court cannot make a conclusive determination at this time, and

  it remains unclear whether the increased volume of claims adds to—or creates—financial

  distress for this Debtor.

- Second, since the first bankruptcy filing, the acknowledged floor for the Debtor's talc

  liability has increased from $2 billion to $8.9 billion, with questions remaining as to

  whether this sum would cover the billions claimed due for third-party providers, state

  regulators, Canadian class actions, and indemnified parties, among others. It is unclear

  whether this increased floor of debt adds to—or creates—financial distress for this Debtor.

- Third, since the first filing, the Debtor's funding resources have been reduced from

  approximately $61 billion to potentially upwards of $30 billion. The Court acknowledges

  that the reduction certainly appears to be manufactured by the Debtor, Holdco, and J&J in

  direct response to the Third Circuit's ruling. Nevertheless, it is unclear whether this

  reduction in funding adds to—or creates—financial distress for this Debtor. The Objecting

  Parties assert that the manner in which these transactions were undertaken gives rise to

independent bases for a bad faith finding. However, the record is not developed as to this issue. For example, it remains unclear whether the transactions give rise to fraudulent transfer liability for the benefit of the Debtor's creditors. Indeed, constructive fraud generally under the Bankruptcy Code and state law requires a determination of insolvency. *See* 11 U.S.C. § 548(a)(1)(B)(ii)(I). The Court is unable to conclude on this record that the Debtor's liabilities exceed its assets. Indeed, the extent of the liabilities has not been anywhere close to being fixed. The Third Circuit specifically cautioned and admonished against "casual[] . . . calculations" and "back-of-the envelope forecasts." *In re LTL Mgmt., LLC*, 64 F.4th at 108. Given the limited record, this Court cannot make an informed determination, calculation, or comparison of the assets and liabilities of *this* Debtor, which—the Third Circuit instructs—is the entity upon which the inquiry should be focused. *See id.* at 105-106. The Objecting Parties likewise admit uncertainty exists as to the true value of Debtor's liabilities compared to its assets. *See, e.g.* Tr. Apr. 18, 2023 Hrg. 280:13-16 ("I'm not sure that the Third Circuit Court of Appeals would accept that if in fact the total claims are 15 billion and they have the wherewithal of 30 billion, *I don't know if that's financial distress*.") (emphasis added); *Id.* at 281:23 – 282: 3 ("The point is there's a lot [of liability], you've got to look under the hood a little bit. And yes, there's more, you know there's more there. I can't, and I'm not here to tell you exactly what that number is and I'm not here to necessarily say as against $30 billion that's evidence of financial distress.").

As to actual fraud, this Court is unable to conclude on this record whether there has been an actual intent to hinder, delay, and defraud creditors. *See* 11 U.S.C. § 548(a)(1)(A).

19

This inquiry requires the Court to determine Debtor's subjective intent—a task rendered nearly impossible without knowing the extent of the liabilities and whether it is reasonable to believe that the Debtor's remaining assets are sufficient to cover such liabilities.

- Finally, the Court is troubled by the uncertainty that flows from the loss of value in the funding agreements and the potential impact of this funding loss on the interests of creditors of the estate.  It is unclear what will occur if this case is dismissed.  Undoubtedly, the lawyers that represents the Talc Claimants will fight zealously and tirelessly for their individual clients.  Questions remain, including: "Who will pursue the claims for the possible loss in funding value?"  "Who will fight for the other 100,000 or so claimants to pursue any claims that may arise out of the transactions?"  And, "Outside of a bankruptcy, who will fight to protect the interests of future claimants?"  While not dispositive on their own, these concerns certainly factor into the good faith analysis and the appropriateness of dismissal under § 1112(b), which are the foundations of the Objecting Parties' arguments against reasonable likelihood of this Debtor's successful reorganization.

To be clear, this Court does not doubt its authority to *sua sponte* dismiss a chapter 11 bankruptcy case for bad faith. *See* 11 U.S.C. § 1112(b); *see also, e.g.*, *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997) ("A bankruptcy court may dismiss a bad faith filing on an interested party's motion or *sua sponte*."); *Argus Grp. 1700, Inc. v. Steinman*, 206 B.R. 757, 766 (E.D. Pa. 1997).  However, "[t]he power of the court to act *sua sponte* should be used sparingly and only in emergency situations." 11 U.S.C. § 1112(b) (advisory committee notes).  Moreover, before taking action, a court must satisfy due process rights by providing a debtor with notice of

the issue and an opportunity to address it, and the court must engage in extensive fact-finding. *See, e.g.*, *In re PPI Enterprises (U.S.), Inc.*, 324 F.3d 197, 211 (3d Cir. 2003); *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999).   Here, Debtor was certainly on notice of the issue of dismissal based on the absence of good faith—it was raised, and requested, at the First Day hearings in this bankruptcy case.   However, the Court questions whether Debtor had an adequate opportunity to respond.   Indeed, the Motion presently before the Court and argued at the hearing on April 18, 2023, was devoted primarily to Debtor's request for a preliminary injunction for which Debtor bears the burden.   Undeniably, the issue of good faith was implicated in the context of this Motion. However, the Court questions whether the Debtor—who was focused on satisfying its burden demonstrating entitlement to extension of the automatic stay—was provided with an adequate opportunity to also satisfy its burden of establishing good faith. *See In re SGL Carbon Corp.*, 200 F.3d 154, 162 n.10 (3d Cir. 1999) ("Once at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has been filed in 'good faith.' ") (collecting cases).

In any event, the Court determines—for reasons discussed—that the factual record is too uncertain and undeveloped for this Court to exercise its *sua sponte* dismissal authority, which the Rules themselves advise should be used "sparingly and only in emergency situations." 11 U.S.C. § 1112(b) (advisory committee notes).   As always, the Court acknowledges and appreciates the time-sensitivity of rulings in this case given the health of Talc Claimants.   However, in light of the

extremely limited nature of the preliminary injunction issued, the Court does not view these circumstances as presenting an emergent situation warranting immediate, *sua sponte* dismissal.[11]

In short, this Court is constrained to apply the Third Circuit's ruling to the facts of the present case. The Third Circuit's ruling was limited to a bad faith finding based on the absence of financial distress. As outlined, the Debtor's financial circumstances have changed since the time of the last filing, and the question of financial distress remains an open one for now. In response to the Court's question during oral argument on April 18, 2023, the Objecting Parties conceded that it was uncertain whether Debtor's new financial circumstances—consisting of funding resources of approximately $30 billion and liabilities that the Objecting Parties argue exceed the $8.9 settlement by *billions*—evidence financial distress. *See, e.g.* Tr. Apr. 18, 2023 Hrg. 280:13-16 ("I'm not sure that the Third Circuit Court of Appeals would accept that if in fact the total claims are 15 billion and they have the wherewithal of 30 billion, *I don't know if that's financial distress*.") (emphasis added); *Id.* at 281:23 – 282:3; *see also TCC's Objection* 31, ECF No. 39 (describing Debtor's $8.9 billion settlement as "illusory" because it proposes to settle all present and future Talc Claims as well as "billions of dollars of claims asserted by third-party payors and governmental units, and billions of dollars of claims for indemnification and other damages asserted by co-defendants, retailers, talc suppliers . . . and any drugstore or supermarket that sold J&J's toxic baby-powder," which "will substantially dilute the funds available to pay individual claimants"). The Court further acknowledges the Objecting Parties' contention that Debtor's

---

[11] The Court notes that the TCC has already filed a Motion to Dismiss (ECF No. 286 in Case No. 23-12825) and perceives that as the more appropriate vehicle to directly address this issue and develop the necessary factual record.

"[f]inancial distress stemming from a fraudulent transfer does not satisfy good faith." *Maune Raichle Hartley French & Mudd's Objection* 29-30, ECF No. 60. As discussed, however, the Court cannot make a determination as to whether a fraudulent transfer occurred on this record.

For these reasons, the Court cannot, at this juncture, *sua sponte* dismiss the case or rely on bad faith as a basis to deny the Preliminary Injunction Motion. That being said, the Court is skeptical and will require well-supported and timely showings by the Debtor that this reorganization continues to have a chance of success. Undoubtedly, Debtor has an uphill battle. In response to a motion to dismiss, Debtor will likely have to address unresolved issues such as the voidability of the 2021 Funding Agreement, the potentially "largest intentional fraudulent transfer in United States history,"[12] and the need to acquire 75% support for its plan. But, at this point, with so many unanswered questions, the Court cannot agree with the Objecting Parties that there is no possibility of a successful reorganization premised upon the bad faith objections of certain claimants—vehement as they may be. As stated, the Debtor comes to this bankruptcy with an estimated 60,000 claimants in support of its proposed settlement. This Court cannot discount those claimants' rights and preferences in favor of others. Notwithstanding, claimants who have had their claims and litigation stalled during the pendency of the prior bankruptcy should not lose more valuable time. Therefore, the Court will replace the TRO with a more limited preliminary injunction discussed in detail in the Section C of this Opinion.

---

[12] *TCC's Objection* 14, ECF No. 39.

### b. Irreparable Injury

The Court next assesses whether Debtor is likely to suffer irreparable injury without the requested relief. In its prior Opinions, this Court discussed in detail the considerations central to the irreparable injury inquiry, summarizing as follows:

> In sum, the Court recognizes that the alleged irreparable harm cannot be too remote—in terms of time—or too speculative—in terms of likeliness to occur. As stated previously, to hold otherwise would contradict developed case law and the Third Circuit's instruction that preliminary injunctions should be granted only in limited circumstances. Nevertheless, this Court concludes that the test for whether irreparable harm has been demonstrated in the context of a bankruptcy case should encompass a broader view of the impact on the debtor and can take into account risks of negative consequences.

*In Re LTL Mgmt., LLC*, 640 B.R. 322, 341 (Bankr. D.N.J. 2022). The Court incorporates the framework previously utilized by reference and employs the same analysis here. For reasons already discussed, this Court concludes that liquidation of individual talc claims via trial verdicts will have an adverse impact on the bankruptcy estate by hindering mediation efforts, impacting the claims liquidation and estimation processes, and possibly strengthening insurance defenses against coverage—all of which will impair reorganization efforts and drain resources and time.

The Objecting Parties contend that Debtor has failed to demonstrate imminent, irreparable harm. Specifically, the TCC asserts that the Third Circuit's Opinion forecloses the Debtor's argument as to irreparable harm. *TCC's Objection* 58, ECF No. 39. The TCC relies on the portion of the Third Circuit's decision wherein it observed that "a longer history of litigation outside of bankruptcy may provide a court with better guideposts when tackling [issues surrounding valuation of claims]." *In re LTL Mgmt., LLC*, 64 F.4th at 103. However, the Third Circuit made those statements in the larger context of discussing the many forms of financial distress that can

24

lead to a hypothetical debtor's chapter 11 bankruptcy filing and the many factors that must be considered. In that same section, the Third Circuit concluded that "[t]he takeaway here is that when financial distress is present, bankruptcy may be an appropriate forum for a debtor to address mass tort liability." *Id.* at 104. Thus, nothing in the Third Circuit's decision regarding Debtor's financial distress precludes this Court from concluding that, in the present circumstances, Debtor will suffer irreparable harm if Talc Claims are allowed to proceed to trial. Again, it is this Court's view that allowing the Talc Claims to be liquidated outside of this bankruptcy will irreparably harm this Debtor because such liquidation will negatively affect mediation, valuation, and claims estimation inside this bankruptcy.

### c. Harm to Nonmoving Party

The Court must also consider whether granting preliminary relief will result in even greater harm to the nonmoving party—here, the Talc Claimants. Given the very limited nature of the Preliminary Injunction, this Court concludes that the Talc Claimants will not be harmed. The Objecting Parties independently cite the postponement of the Talc Claimants' litigation as a "grave injustice" or "extreme prejudice" that can be avoided only by denying Debtor's Motion in its entirety. *See, e.g.*, *TCC's Objection* 59, ECF No. 39; *Maune Raichle Hartley French & Mudd's Objection* 37, ECF No. 60. However, the Court has already ruled that, under the circumstances, Talc Claimants who have had their claims and litigations stalled during pendency of the prior bankruptcy case should not lose more valuable time. Accordingly, as more fully described in the Section C, Talc Claimants may proceed with litigation up to the point of trial. The only exception is that restraints remain in place as to the MDL and, as stated, this Court has agreed with Judge

Shipp that the Preliminary Injunction will be revisited at the Court's Omnibus Hearing scheduled

for May 22, 2023.  Accordingly, the Court does not perceive any harm to the Talc Claimants in

imposing the limited Preliminary Injunction contemplated herein.[13]

### d.  Public Interest

As to the fourth factor, the Court has weighed all competing factors and concludes that

granting the preliminary injunction would be in the public interest.  The Objecting Parties argue

that the public interest is best served by affording the Talc Claimants their day in court and their

constitutional right to a jury trial. *See, e.g.*, *TCC's Objection* 60, ECF No. 39.  They assert that

only the Debtor's interests are served by a preliminary injunction. *See Maune Raichle Hartley*

*French & Mudd's Objection* 38, ECF No. 60.  ("[T]he only benefit advanced by an injunction here

would flow to one group of private corporate affiliates[.]").  However, as discussed, this Court

must also consider the desires and interests of the claimants who purportedly are in support of the

Debtor's reorganization and the settlement proposed therein.  As it did in its prior Opinions, the

Court also considers interests of future talc claimants. *See, e.g.*, *In re LTL MANAGEMENT, LLC*,

638 B.R. 291, 323 (Bankr. D.N.J. 2022).  Further, the Objecting Parties here raise the same policy

---

[13] The Court is mindful of Mr. Satterley's Motion and respects the time-sensitivity of his litigation given the medical condition of his client, Emory Valadez.  As set forth on the record during the hearings on Emory Valadez's Motion for Stay Relief (ECF No. 71 in Case No. 23-12825), Mr. Satterley has approximately 16 remaining depositions to take. *See Affidavit of Joseph Satterley* 12, ECF No. 71-2.  Mr. Satterley confirmed these depositions remained outstanding at the hearing on April 18, 2023, and indicated that it would take approximately "10 days" or "a little bit longer" to complete them. Tr. of Apr. 18, 2023 Hrg. 316:13-15, 24-25.  Based on oral argument on April 11, 2023, it is also the Court's understanding that certain motion practice remains. Tr. of Apr. 11, 2023 Hrg. 200:3-5, 15-24. While the Court has every confidence that Judge Seabolt in California, who is handling the Valadez state litigation, can expeditiously move the matter along, this Court is doubtful that its ruling on Mr. Satterley's Motion—which precludes only trial and will be revisited on May 3, 2023 to consider the progress made in the state case—will have any real-world impact on the Valadez litigation.

considerations and allegations of abusive practices as were raised in oppositions to similar motions in the prior bankruptcy case. There, this Court held:

> Congress implemented § 524(g) and granted the bankruptcy court broad equitable powers under § 105(a) to serve a purpose under a specific set of circumstances. When companies can utilize that statute for their benefit and the benefit of existing and future claimants, they should be permitted to do so. Admittedly, the bankruptcy system—like the mass tort system, or any tool in the proverbial "toolbox"—is susceptible to abuse. However, this Court does not believe that mere potential for abuse requires removal of a tool from the toolbox. Instead, the potential for abuse demands stronger scrutiny. Thus, courts must conduct a fact-specific inquiry in each case and determine—among other things—whether an appropriate set of circumstances are present, whether an entity is in compliance with statutory regulations, whether a valid reorganization purpose exists, and whether innocent third parties will be unduly prejudiced. After considering those factors in the context of this case, the Court determines that extension of the automatic stay to the Protected Parties is warranted. Given that this determination is limited to the unique facts of the case presently before the Court, this ruling will not open the floodgates to an unchecked, unregulated, or inherently abusive method of addressing liability.

*Id.*

Nothing in the Objecting Parties' arguments or in the Third Circuit's Opinion warrant reconsideration. This Court continues to believe that—assuming the bankruptcy is found to be in good faith—claim resolution through the bankruptcy process is in the public interest, especially when it is supported by the talc claimants themselves. *See In re LTL Mgmt., LLC*, 637 B.R. 396. A settlement trust benefits claimants—whose time is valuable and may be limited due to their illness—by streamlining the claim recovery process. Additionally, a bankruptcy trust protects the needs of future talc claimants. Certainly, the chapter 11 bankruptcy and resolution of Talc Claims are of paramount public import.

In conducting this analysis, the Court considers the public policy concerns that underlie every decision made in this case and balances the equities on all sides.  Indeed, as explained above and emphasized in this Court's prior opinions, the Debtor's reorganization and the uniform, timely, and equitable resolution of the Talc Claims for the benefit of injured parties—existing and future— are at the forefront of this Court's mind.  The Talc Actions seek to liquidate talc claims against Debtor, itself, and against Debtor's affiliates.

### B.  Protected Parties

At the request of all parties, the Court considered the instant Motion—including thousands of pages of briefing and exhibits, and hours of oral argument and testimony—on an extremely truncated timetable.  As a result, the Court was unable to conduct a thorough analysis as to the appropriateness of extending the stay to each, individual Protected Party listed on Appendix B. Nevertheless, given the limited scope of the restrictions imposed by way of the Preliminary Injunction, the Court is confident that no Talc Claimants are prejudiced by the broad scope of the parties to whom the Preliminary Injunction applies.  To the extent an interested party objects to the extension of the automatic stay to a particular Protected Party, the Court is certainly willing to revisit the appropriateness of its ruling as to that entity.

### C.  The Limited Preliminary Injunction

For the aforementioned reasons, the Court determines that the TRO formerly in place should be dissolved and replaced with a far more limited preliminary injunction.  Needless to say,

the automatic stay remains in effect as to the Debtor.[14]  The more limited preliminary injunction to be entered will prohibit the commencement or continuation of any trial against any of the Protected Parties identified in Appendix B to the Verified Complaint, as amended,[15] through and including June 15, 2023—a period of approximately 60 days.  The Court is neither enjoining, nor restraining the filing of new complaints against non-debtor third parties, any ongoing discovery, or other pre-trial matters.

### 1.  The MDL

The restraints included in the current, amended Temporary Restraining Order (ECF No. 20) will remain in effect as to the MDL pending before Judge Michael Shipp.  This Court has been in communication with Judge Shipp and we both agree that the continuing restraints as to the MDL will be revisited, along with the continuing appropriateness of the Preliminary Injunction, at the Court's Omnibus Hearing scheduled for May 22, 2023.

### 2.  Tolling

With respect to the Section 108(c) tolling provisions relative to the statute of limitations for unfiled claims, at the Court's suggestion the Preliminary Injunction Order includes language indicating that the automatic stay under § 362(a) remains in effect for unfiled claims unless the claimant, through counsel, notifies the Debtor in writing of his, her or their intent to proceed with filing a complaint. *Preliminary Injunction* ¶¶ 5, 6, ECF No. 91.  The purpose of this language is to

---

[14] With the exception of certain relief having been afforded to Mr. Satterley as the result of his Motion for Stay Relief (ECF No. 71 in Case No. 23-12825), discussed *infra*.

[15] With the exception of Janssen Pharmaceuticals, Inc. and Kenvue Inc., as discussed on the record during the April 20, 2023 hearing.

ensure that such claimants who wish to defer filing a complaint and paying the necessary filing fees while the bankruptcy case unfolds are not placed in the position of having to file.

### 3. Emory Valadez's Motion for Stay Relief

With respect to the Valadez matter, this Court wrestled with the same issue it had to tackle in the prior case; namely, whether it is ever appropriate to start picking and choosing which claimant—among thousands—should be permitted to go forward and liquidate claims, while others abide by the process. As discussed, the record indicates that there remain considerable tasks (including expert discovery and motion practice) which must be completed before the matter is ready for trial. There are no present restraints preventing parties from moving forward in this regard, apart from proceeding to trial. To afford Emory Valadez an opportunity to quickly revisit this issue, the Court has carried the motion to May 3 and, if appropriate, to May 22 to hear where the parties stand with respect to pre-trial matters.

**IV.    Conclusion**

For the reasons set forth above, the Court concludes that "unusual circumstances" are present warranting an extension of the automatic stay to the nondebtor Protected Parties under § 362(a).  To the extent § 362(a) does not serve as an independent basis for extension of the stay to nondebtor parties, the Court determines that a preliminary injunction under § 105(a) extending the stay is appropriate.  In reaching today's ruling, the Court employs its discretion and judgment to balance the interests of the tens of thousands of claimants who wish to go forward outside of the bankruptcy, the interests of the tens of thousands of claimants who wish to pursue settlement within this case, and the interests of the Debtor in pursuing a fair and equitable resolution of these claims through a bankruptcy reorganization.   The parties are directed to settle a proposed form of Order consistent with this Opinion.

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: April 27, 2023