**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re: | Chapter 11 |
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |
| LTL MANAGEMENT LLC, | |
| Plaintiff, | |
| v. | Adv. No.: 23-01092 (MBK) |
| THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000, | **Hearing Date and Time:** **May 9, 2023 at 11:30 a.m.** |
| Defendants. | |

# DEBTOR'S OMNIBUS OBJECTION
# TO MOTIONS FOR AN ORDER CERTIFYING DIRECT APPEAL
# OF PRELIMINARY INJUNCTION ORDER TO THE THIRD CIRCUIT

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

LTL Management LLC, the debtor in the above-captioned case (the "Debtor"), files this omnibus objection (the "Objection") to the motions (the "Motions") filed by the following parties (the "Movants"): (i) the Official Committee of Talc Claimants (the "Committee") [Adv. Dkt. 84] (the "TCC Motion"); (ii) the Ad Hoc Group of Mesothelioma Claimants [Adv. Dkt. 88]; and (c) Paul Crouch [Adv. Dkt. 89].[2] All three seek certification for a direct appeal to the Third Circuit of this Court's opinion and order granting in part and denying in part Debtor's motion for stay and temporary injunctive relief (the "PI Opinion") [Adv. Dkt. 91, 94].

## PRELIMINARY STATEMENT

This Court in its PI Opinion issued an "extremely limited" preliminary injunction, which extends for only 60 days, enjoins only trials against the Protected Parties, and permits all other pretrial activity in tort system cases to proceed. Based on its limited ruling, the Court found "the Talc Claimants will not be harmed."[3] PI Op. 22, 25; *see id.* at 28–29.

The Court issued the injunction after extensively discussing and applying the Third Circuit's recent precedential decision in LTL's prior bankruptcy case—recognizing that, on the one hand, the Court was "constrained" by that decision on questions of good faith and financial distress but noting that, on the other hand, the Third Circuit did not address issues relating to the issuance of a temporary injunction. *See* PI Op. 6, 12, 13, 15 n.8, 17–23, 24–25, 27.

Nonetheless, the Court faces three motions to certify its limited PI Opinion for direct appeal under 28 U.S.C. § 158(d)(2). It should deny them, as not remotely satisfying the statutory standards.

---

[2]   Capitalized terms not otherwise defined herein have the meanings given to them in the Motions.

[3]   On May 3, 2023, the Court lifted the automatic stay and modified its PI Order to permit trial to proceed on the Valadez claim. *See* May 3, 2023 Hrg Tr. 120:3-8 ("So I am lifting the stay and I am modifying the injunction to allow the matter to go forward to trial, not to enforcement or of any judgment against any defendant because I don't – I'm not prepared to gauge the impact."). No other claimant has asked to lift the stay and modify the PI Order to permit a trial to proceed during the 60-day period.

The Movants consist of a group of plaintiff firms, conflicted by financial interests,[4] that represent a minority of claimants in this case. Their Motions ignore the paramount purpose of section 158(d)(2), which is to accelerate the development of controlling bankruptcy precedent. They actually argue the *opposite* of what its standards require, hammering on their view that the Third Circuit's decision *is controlling* and this Court's PI Opinion violated it. But no one disputes that the Third Circuit's decision is relevant precedent. And section 158(d)(2) is not a tool to correct mere "error" under circuit precedent. TCC Mot. 5. For that, Movants have recourse to the normal appellate route under § 158(a). In addition, as the issues they emphasize in their Motions bear far more on the pending motions to dismiss, those motions (including any appeals from a ruling on them) provide Movants a more direct means of litigating the Court's alleged error in applying the Third Circuit's decision.

At bottom, Movants are seeking to misuse certification as part of a multi-pronged scorched-earth strategy to deny talc claimants the opportunity to vote for themselves on a plan of reorganization that has the support of law firms representing tens of thousands of claimants. They are already seeking dismissal in this Court through motions to dismiss and in the Third Circuit through a misuse of a petition for writ of mandamus, and they apparently seek to improperly use certification to provide themselves with yet a third option to seek dismissal. The Court should not countenance this plainly improper use of certification to lodge another proceeding in the Third Circuit on the same issues that are already before it (albeit improperly as

---

[4] The Movants include firms that stand to lose hundreds of millions of dollars in legal fees if the plaintiffs' ovarian cancer claims are not resolved in the tort system and firms seeking to protect their business models. *See* Birchfield Dep. 18:8–31:16 (certain firms stand to lose hundreds of millions of dollars from a common benefit fund established in the MDL if their clients' claims are resolved in bankruptcy); Dec. 20, 2022 Hrg Tr. 21:14-18 ("There's not going to be a global resolution for Maune Raichle's clients in this or any other two step. It's unconstitutional. And that position is not going to change no matter what's in his report, no matter what he leaks to us in February."). These interests conflict with the Movants' duty to their clients.

well) through the recently-filed petition for writ of mandamus. The Court should reject Movants' groundless invocation of section 158(d)(2).

## OBJECTION

The direct-appeal pathway for a bankruptcy-court order under section 158(d)(2) was enacted to "foster the development of coherent bankruptcy-law precedent" by facilitating "guidance on pure questions of law" from the circuit courts. *Weber v. United States*, 484 F.3d 154, 158–59 (2d Cir. 2007). It is generally reserved for gaps or conflicts in precedent—when the order "involves a question of law as to which there is no controlling decision" or "involves a question of law requiring resolution of conflicting decisions." § 158(d)(2)(A)(i), (ii); *see also Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015) (describing § 158(d)(2) as a "useful safety valve[] for promptly correcting serious errors and addressing important legal questions" like the "pure question of law" at issue there) (citation and quotations omitted). Certification may also be granted for an order that "involves a matter of public importance" or for which immediate appeal "may materially advance the progress of the case," § 158(d)(2)(A)(i), (iii), but courts construe these secondary provisions "narrowly." *Polk 33 Lending LLC v. THL Corp. Fin., Inc. (In re Aerogroup Int'l, Inc.)*, 2020 WL 757892, at *5 (D. Del. Feb. 14, 2020).

Courts in this circuit have recognized that certifying due to pure legal questions accords with the precedent-building purpose of section 158(d)(2). *See, e.g.*, *Troisio v. Erickson (In re IMMC Corp.)*, 2016 WL 356026, at *5 (D. Del. Jan. 28, 2016) ("whether bankruptcy courts are included in the definition of 'courts' under § 610 for purposes of § 1631 is a pure question of law" with "no controlling decision"). Circuit courts have special competency in answering such pure legal questions, over which they exercise "plenary review." *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 148 (3d Cir. 2017) (citation omitted). In contrast, certification is inappropriate when there is little or no opportunity to build additional precedent

-4-

because the lower court's order involves questions of fact, mixed questions of fact and law, or application of admittedly controlling law to a set of facts. *See Weber*, 484 F.3d at 158 ("Congress believed direct appeal would be most appropriate … to resolve a question of law not heavily dependent on the particular facts of a case").

Here, the Motions emphasize that a ***controlling decision*** of the Third Circuit ***does exist*** on the law that governs the ***fact-intensive issue*** on which they focus, and they thus defeat themselves: They focus their fire on LTL's preliminary showing of good faith, including financial distress, in obtaining the temporary relief, yet none of them claims that those topics need guidance from the Third Circuit—after all, the Third Circuit just published a decision on those topics. Mr. Crouch alone renews the question of this Court's jurisdiction to enter preliminary injunctive relief, yet this Court repeatedly has held that there is sufficient controlling law, *e.g.*, Hr'g Tr. of Mar. 30, 2022, at 73 [No. 21-30589, Dkt. 1926]; the Third Circuit has passed on an opportunity to consider that question; and this Court in its PI Opinion (at 8, 12) recognized that nothing in the Third Circuit's decision in *LTL* or otherwise "changes that analysis." Nor is there any other basis under § 158(d)(2) for certifying the PI Opinion.

1. **The Motions identify no question of law involved in the Court's PI Opinion for which controlling precedent is *lacking*—but rather emphasize the *existence* of precedent.**

    A. **To the extent that the PI Opinion depends on issues of good faith and financial distress, recent Third Circuit precedent exists—as the Committee itself argues.**

The focus of the Committee's certification motion, which the other motions adopt by reference, is LTL's purported inability to show good faith in filing its second bankruptcy case. But controlling precedent is hardly lacking on *that* subject, given that the Third Circuit just issued a precedent addressing legal and evidentiary standards for demonstrating good faith, including financial distress, a decision featuring these same parties. Although LTL disagrees

-5-

with the Committee that this case must be dismissed under those standards, there is no doubt that that decision provides binding guidance for evaluating the pending motions to dismiss. That is why the Court in its PI Opinion, to the extent it considered good faith (as bearing on the factor of likelihood of success on the merits, under the traditional four-factor preliminary-injunction standard as adapted for bankruptcy), engaged in seven pages of analysis and application of the Third Circuit's decision. PI Op. 17–23. The Court emphasized that it was "constrained to apply the Third Circuit's ruling to the facts of the present case." *Id.* at 22. (And on other issues, the Court further engaged with the Third Circuit's decision and recognized that it simply did not change anything. *See* PI Op. 12, 13, 15 n.8, 24–25, 27.) That is the *opposite* of a lack of a controlling decision.

The Committee's own Motion emphasizes this, and thus defeats itself. Instead of claiming "there is no controlling decision," its heading for Section II contends that the Third Circuit's recent decision "is indeed controlling." TCC Mot. 9. True to that heading, the Committee argues at length that LTL's new bankruptcy case suffers from the same "defects" that the Third Circuit just addressed. *Id.* at 11. And the Committee argues that the "numerous questions of law" relevant to good faith have already been "settled by the Third Circuit." *Id.* at 9–10. At no point does the Committee suggest that further precedential guidance is warranted. The Committee's pursuit of certification of the PI Opinion is merely a stalking horse for the Committee's pending direct challenge to LTL's good faith via its motion to dismiss.

And it is a poor stalking horse for that purpose. Even if there might be occasion to further develop Third Circuit precedent on good faith and financial distress (as opposed to simply pursuing "error" correction, TCC Mot. 5) notwithstanding the Third Circuit's recent, extensive treatment, the PI Opinion is hardly the vehicle for doing so, because it only indirectly

presents the issues the Committee raises. As this Court observed, a movant seeking preliminary injunctive relief need only show a "reasonable likelihood," and not a "certainty," of successful reorganization, and here the Court considered even that question, among others, "on a tight timeframe … at the parties' request." PI Op. 7–8, 16; *see also id.* at 28 ("an extremely truncated timetable"). The Court's reasoning reflects that preliminary status, holding that LTL established a "reasonable likelihood" of a successful reorganization based on a "limited record" but that the proceedings raised questions to be answered at the time of the "anticipated motion to dismiss." Hr'g Tr. of Apr. 20, 2023, at 8–9; *see* PI Op. 16 ("*At this juncture*, Debtor has met its burden.") (emphasis added). Any evaluation of the Movants' arguments on appeal would likewise be constrained to that preliminary context.

Meanwhile, multiple motions to dismiss have been filed and are in process. That is why, in its PI Opinion, the Court pointed out that the Committee's motion to dismiss was "the more appropriate vehicle to directly address this issue [of good faith] and develop the necessary factual record." PI Op. 22 n.11. There is no reason to certify the Injunction Opinion as a *collateral* attack on a *hypothetical* order denying the motions to dismiss.

Finally, the Committee wrongly contends that the Court flipped the burden of persuasion in deciding LTL's motion. The Court's understanding of the burden in the Third Circuit was clear from its prior opinions. *E.g. In re LTL Mgmt., LLC*, 638 B.R. 291, 320 (Bankr. D.N.J. 2022). And the PI Opinion makes it doubly clear. PI Op. 16 n.9.

### B.    There is no lack of precedent regarding this Court's authority to stay actions against third parties during a bankruptcy case.

Mr. Crouch briefly raises the issue of the Court's jurisdiction to extend the automatic stay to non-debtor third parties. This time around, however, the Committee pointedly omitted that issue from its motion. That issue does not merit certification, because it does not lack for

controlling precedent, as this Court has held repeatedly. And indeed, the Third Circuit avoided the opportunity presented by the previous appeal to provide additional guidance.

This Court has several times explained, with no difficulty, how LTL's adversary proceedings seeking preliminary relief are proceedings both arising "under" title 11 and arising "in" a case under title 11 and that the Court has "related to" jurisdiction at a minimum, in an inquiry that "district courts have used and re-used." *In re LTL Mgmt., LLC*, 638 B.R. at 301–03; *In re LTL Mgmt., LLC*, 640 B.R. at 331; *In re LTL Mgmt., LLC*, 645 B.R. 59, 67–71 (Bankr. D.N.J. 2022). In support, the Court has cited the controlling decision in *McCartney*, in which the Third Circuit extended the automatic stay to a nondebtor because to do otherwise "would defeat the purpose of § 362." *In re LTL Mgmt., LLC*, 638 B.R. at 300–01 (quoting *McCartney v. Integra Nat'l Bank North* 106 F.3d 506, 510 (3d Cir. 1997)). In the PI Opinion, the Court simply followed again that same, well-worn path, incorporating its prior analyses "by reference." PI Op. 8; *see id.* at 8–12.

The Court has already determined that the jurisdictional issue does not merit certification.[5] When various parties moved to certify the Court's prior preliminary-injunction order, the Court found it "difficult to identify controlling issues that have not been addressed," because "the *McCartney* decision does address the issues." Hr'g Tr. of Mar. 31, 2022, at 73–74. The Court certified only because it had separately found its order denying dismissal to merit certification, and saw no reason to have the two appeals on separate tracks. *Id.* at 74. Later,

---

[5] This Court in its PI Opinion identified the distinct question of whether Debtor's purported bad-faith failing eliminated subject-matter jurisdiction over "this case." PI Op. 9. Although the Court simply rejected the argument's premise of a bad-faith filing, *id.*, the argument also fails on the law, because eligibility to be a debtor is not a jurisdictional question. *E.g., In re Trusted Net Media Holdings, LLC*, 550 F.3d 1035, 1044 (11th Cir. 2008) (subject matter jurisdiction concerns only the "statutorily conferred power of the court to hear a class of cases"); *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 839 n.3 (4th Cir. 2007) ("Whether a bankruptcy court may exercise subject matter jurisdiction over a proceeding is determined by reference to 28 U.S.C. § 1334."). Indeed, the Third Circuit in *LTL* had no trouble finding that this Court "had jurisdiction of the bankruptcy case." 64 F.4th 84, 99 (3d Cir. 2023).

when New Mexico and Mississippi similarly moved to certify a similar stay, the Court again opined that it "did not, and does not, believe that the issues involved in the preliminary injunction litigation rise to the level warranting direct Circuit review," although the Court certified that stay on unrelated grounds involving the States' exercise of their police powers. Hr'g Tr. of Dec. 1, 2022, at 6-8.

Nothing has changed, and Mr. Crouch offers no new arguments for why additional Third Circuit guidance is warranted. He contends that the Court has no "jurisdiction" to issue the preliminary injunction because, in his view, the Debtor ultimately will not be able to meet the requirements of 11 U.S.C. § 524(g) to permanently enjoin talc claims against third parties like J&J. Crouch Mot. 4. LTL contests that view (*cf.* PI Op. 3–4, 13 (discussing Debtor's corporate history)), but even if it were right, Mr. Crouch offers no authority (much less a conflict of authority on) tying the § 524(g) *merits* standard for a third-party *permanent* injunction to the Court's *jurisdiction* to issue a *preliminary* injunction just extending the stay during a bankruptcy case. Even on the less attenuated question of the *merits* of the preliminary-injunction inquiry, he is clearly wrong. *See In re W.R. Grace & Co.*, 386 B.R. 17, 33 (Bankr. D. Del. 2008) ("The ACC asserts that Debtors cannot prevail on the merits because BNSF will never be entitled to a § 524(g) injunction on the basis of derivative liability. That, however, is not the test in a bankruptcy reorganization case."); PI Op. 16–17 n.10 (rejecting U.S. Trustee's similar merits argument and citing additional authority). The Court was not required to hold a mini-confirmation hearing (on a plan not yet proposed) in order to grant temporary injunctive relief, much less in order to have jurisdiction to consider granting temporary injunctive relief. Under the relevant precedent, it is enough that an extension of the stay under section 362 or an injunction under section 105 simply to effectuate the stay during a bankruptcy case is a "core"

-9-

bankruptcy proceeding or, at a minimum, that litigation against the third parties during the bankruptcy case will have a "conceivable effect" on the bankruptcy estate. *Id.* at 10. Mr. Crouch's novel argument does not warrant certification.

Furthermore, the Third Circuit has already declined an opportunity to provide further guidance on jurisdiction to stay actions against third parties during a bankruptcy case. In LTL's prior case, some of the parties who appealed the Court's order denying the motions to dismiss also appealed the order granting a preliminary injunction, yielding nine dockets before the Third Circuit. As noted, this Court certified the orders all together, to keep them coordinated and give the Third Circuit options. On appeal, the Committee challenged at length this Court's jurisdiction to enter the preliminary injunction. Brief for Appellant TCC 44–57, *In re LTL Mgmt., LLC*, 64 F.4th 84 (3d Cir. 2023) (No. 22-2003 *et al.*); *see also* 64 F.4th at 99 & n.11 (noting this jurisdictional challenge). If the Third Circuit thought it important to address that question, it could have issued an opinion in the appeals from that order and handled the dismissal order in a subsequent opinion. Instead, it addressed only the dismissal order, allowing the dismissal of the case to "annul[ ] the litigation stay" and "moot the need to decide the issue." 64 F.4th at 111. This Court has suggested that the certification analysis boils down to predicting "which issues would garner or pique the immediate interest of the judges of the Third Circuit." Hr'g Tr. of Dec. 1, 2022, at 6. There is no reason to consider this such an issue.

2. **The PI Opinion involves no "matter of public importance."**

The Injunction Opinion also does not "involve a matter of public importance" under § 158(d)(2)(A)(i). Courts read this basis "narrowly," with a specific meaning. *E.g.*, *Polk 33 Lending*, 2020 WL 757892, at *5; *In re Nortel Networks Corp.*, 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010). Generally, the order must "transcend the litigants *and* involve a legal question, the resolution of which will advance the cause of jurisprudence to a degree that is

-10-

usually not the case." *Polk 33 Lending*, 2020 WL 757892, at *5 (emphasis added) (citation omitted). In contrast, "an issue involving a mixed question of law and fact generally does not constitute a matter of public importance," because such issues "generally do not 'transcend' the parties and advance the cause of jurisprudence to an unusual degree." *Id.* (collecting cases). That an issue is hotly contested and "unqualifiedly important to the parties" is not sufficient. *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 712 (Bankr. D. Del. 2016).

Secondarily, an order might involve "important practical ramifications," such as impacting "a large number of jobs or other vital interest in a community." *Id.* (citation omitted); 1 *Collier on Bankruptcy* ¶ 5.06(4)(b) (16th ed. 2022); *see, e.g.*, *Springfield Hospital, Inc. v. Carranza (In re Springfield Hosp., Inc.)*, 618 B.R. 109, 118 (Bankr. D. Vt. 2020) (order implicating hospitals' access to funds would affect community's access to healthcare during pandemic and large number of jobs). But it is "doubtful" that, even in such circumstances, a case raises a matter of public importance when controlling precedent of the circuit court or Supreme Court exists. 1 *Collier on Bankruptcy* ¶ 5.06(4)(b) (16th ed. 2022). The two considerations appear in the same subsection of § 158(d)(2), with "public importance" following the ground of lack of controlling precedent.

Here, and most importantly, as shown above, the Motions fail to identify any issue of law genuinely involved in the PI Opinion and lacking controlling precedent. The Motions necessarily also fail to identify a legal question that transcends the litigants. Instead, the Motions are devoted to arguing that this Court misapplied the Third Circuit's recent precedent to the particular facts and circumstances of LTL's new bankruptcy case.

The Committee's focus on the importance of LTL's *bankruptcy case as a whole* is misguided. The Court certified its previous dismissal order as publicly important because a

-11-

decision on whether LTL's petition could proceed had implications for "restructurings beyond what's being litigated in this court." Hr'g Tr. of Mar. 31, 2022, at 75. And the large number of claimants and amount of money weighed in favor of allowing the Third Circuit to address "these issues"—the legal issues associated with LTL's petition—early in the case. *Id.* But the PI Order did not adjudicate a motion to dismiss and, again, the preliminary injunction opinion was not separately worthy of certification; the Court certified it only because it did "not make sense" to have the dismissal and preliminary injunction orders pending in different courts. *Id.* at 74.

There is far less reason to certify the PI Opinion here: First, not only is there is no concurrent dismissal order, but (as noted) the PI Opinion addresses questions of good faith and financial distress on only a preliminary basis, on a limited record. Meanwhile, multiple motions to dismiss have been filed, so those issues will receive a full hearing and decision. Second, the PI Opinion here, by contrast to the prior one, is "extremely limited" in time and scope, such that this Court concluded that the Talc Claimants "will not be harmed" by it. PI Op. 22, 25. It only restricts trials, and it only lasts 60 days. *Id.* at 29. Claimants are free to progress through substantial pre-trial proceedings, including discovery. The Committee ignores the injunction actually at issue.

Third, the Committee has filed a petition for writ of mandamus in the Third Circuit that raises the same issues it seeks to raise in the Third Circuit again through its improper use of certification. The petition, albeit also improper, argues that the case should be dismissed and the preliminary injunction order vacated. It raises the same dismissal-type arguments reflected in the Motions. There is no basis or reason to certify an appeal that raises the same issues that are already before the Third Circuit through an improper petition for writ of mandamus filed by one of the Movants.

Finally, the Committee's focus on the Third Circuit's "mandate" makes little sense. The Committee explains that the Third Circuit remanded "with the instruction to dismiss" LTL's previous bankruptcy petition. TCC Mot. 9 (quoting *In re LTL Mgmt., LLC*, 64 F.4th at 111). This Court promptly did so, as it noted in its PI Opinion (at 6). The Committee instead appears to be using the word "mandate" loosely to mean that the Third Circuit's decision remains binding. No one denies this. LTL believes that the filing of this chapter 11 case complies with that precedent, and gave this Court reasons and evidence why (*see* PI Op. 16), and this Court, under the acknowledged "constrain[t] to apply the Third Circuit's ruling to the facts of the present case," was not prepared to reject LTL's showing on a rushed motion for temporary injunctive relief. Whether that was "error" (TCC Mot. 5) has nothing to do with the "mandate." The cases the Committee cites undercut its novel definition of "mandate," because they involve further proceedings in the *same case* on remand. See *EEOC v. Kronos Inc.*, 694 F.3d 351, 361 (3d Cir. 2012) (providing rule for cases "on remand for *further proceedings*" (emphasis added)); *United States v. Kennedy*, 682 F.3d 244, 253 (3d Cir. 2012) (remand "for resentencing").[6]

3. **An immediate appeal of the PI Opinion will not materially advance the progress of the case.**

On material advancement, the Committee again argues that appeal to the Third Circuit is inevitable, so skipping the district court will save time. Both the logic and the premise of this argument are misguided. And the Committee's worry that this case will somehow escape appellate review makes no sense.

---

[6] The Committee also trots out its favored misreading of footnote 18 of the Third Circuit's opinion. There, the court said in dicta that the "question" whether LTL "need only part with its funding backstop" was "premature" and suggested that, if LTL did so, there could be questions whether "LTL received reasonably equivalent value" as well as whether LTL "became insolvent as a result." 64 F.4th at 109 n.18 (quoting 11 U.S.C. § 548(a)). Although the Third Circuit itself characterizes these as premature questions, the Committee somehow sees definitive answers. And in any event, this Court, citing that same provision, found no insolvency "on this record." PI Op. 19.

-13-

*First*, an assertion that a party will inevitably seek circuit review is insufficient. "Any litigant could maintain that skipping district court review in the appeal process may expedite final resolution." *Polk 33 Lending*, 2020 WL 757892, at *4 (collecting cases). Rather, the litigant must show *why* there is something "extraordinary or urgent about this situation that recommends departing from the standard appellate process." *Stanziale v. Car-Ber Testing, Inc.* (*In re Conex Holdings, LLC*), 534 B.R. 606, 611 (D. Del. 2015). Otherwise, in most cases, "[c]ourts of appeals benefit immensely from reviewing the efforts of the district court." *Weber*, 484 F.3d at 160. Thus, there must be some pressing reason to "short-circuit the normal appellate process." *Official Comm. v. Sabine Oil & Gas Corp.* (*In re Sabine Oil & Gas Corp.*), 2016 WL 6238616, at *2 (S.D.N.Y. Oct. 25, 2016).

The Committee cannot show anything extraordinary or urgent here to justify bypassing the standard appellate process. The preliminary injunction in LTL's prior case was not independently worthy of certification, and this PI Opinion is even less so. As explained above, there is no accompanying dismissal order, the PI Opinion's effect is limited in time and scope and thus also its effect on claimants, and the issues the Movants seek to certify are already before the Third Circuit through the recently-filed petition for writ of mandamus.

*Second*, the Court need not credit the Committee's bald assertion that this dispute over an extremely limited stay on a preliminary record will inevitably make its way to the Third Circuit. Multiple motions to dismiss have already been filed, which more directly present the issues that the Movants claim warrant certification.

*Third*, the Committee's concern that there will be no appellate review of their claimed controlling issues (of good faith and financial distress) if proceedings move quickly is unfounded several times over. If the Court denies the pending motions to dismiss, the Movants could,

-14-

among other things, again seek certification as well as pursuing an appeal to the district court. *See* 28 U.S.C. § 158(a), (d). And if a plan is confirmed, objectors could appeal as of right the plan confirmation order if it affects their rights. As the Second Circuit recognized in the foundational *Johns-Manville* litigation: "The issue of bad faith… will be reflected, to some extent at least, in the plan of reorganization [the debtor] submits to the bankruptcy court," because the Code requires that the plan be "proposed in good faith." *In re Comm. of Asbestos-Related Litigants*, 749 F.2d 3, 5 (2d Cir. 1984) (citing 11 U.S.C. § 1129(a)(3); *see Bullard*, 575 U.S. at 502 (recognizing appealability of confirmation order).

## **CONCLUSION**

The Court should deny the Motions to certify its PI Opinion.

Dated: May 8, 2023                                **WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*