| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** | |
| **GENOVA BURNS LLC** <br> Daniel M. Stolz, Esq. <br> Donald W. Clarke, Esq. <br> Gregory S. Kinoian, Esq. <br> dstolz@genovaburns.com <br> dclarke@genovaburns.com <br> gkinoian@genovaburns.com <br> 110 Allen Road, Suite 304 <br> Basking Ridge, NJ 07920 <br> Tel: (973) 467-2700 <br> Fax: (973) 467-8126 <br><br> *Proposed Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP** <br> David J. Molton, Esq. <br> Jeffrey L. Jonas, Esq. <br> Michael S. Winograd, Esq. <br> dmolton@brownrudnick.com <br> jjonas@brownrudnick.com <br> mwinograd@brownrudnick.com <br> Seven Times Square <br> New York, NY 10036 <br> Tel: (212) 209-4800 <br> Fax: (212) 209-4801 <br><br> and <br><br> Sunni P. Beville, Esq. <br> sbeville@brownrudnick.com <br> One Financial Center <br> Boston, MA 02111 <br> Tel: (617) 856-8200 <br> Fax: (617) 856-8201 <br><br> *Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **OTTERBOURG PC** <br> Melanie L. Cyganowski, Esq. <br> Adam C. Silverstein, Esq. <br> Jennifer S. Feeney, Esq. <br> mcyganowski@otterbourg.com <br> asilverstein@otterbourg.com <br> jfeeney@otterbourg.com <br> 230 Park Avenue <br> New York, NY 10169 <br> Tel: (212) 661-9100 <br> Fax: (212) 682-6104 <br><br> *Proposed Co-Counsel for the Official Committee of Talc Claimants* | **MASSEY & GAIL LLP** <br> Jonathan S. Massey, Esq. <br> Rachel S. Morse, Esq. <br> jmassey@masseygail.com <br> rmorse@masseygail.com <br> 1000 Maine Ave. SW, Suite 450 <br> Washington, DC 20024 <br> Tel: (202) 652-4511 <br> Fax: (312) 379-0467 <br><br> *Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| In re: <br><br> LTL MANAGEMENT, LLC,[1] <br><br>                 Debtor. | Chapter 11 <br><br> Case No.: 23-12825 (MBK) <br><br> Honorable Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

7451996.2

| |  |
|---|---|
| LTL MANAGEMENT LLC,<br><br>           Plaintiff,<br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000,<br><br>           Defendants. | Adv. No.: 23-01092 (MBK) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF TALC CLAIMANTS TO MOTION OF AD HOC COMMITTEE OF SUPPORTING COUNSEL TO INTERVENE**

The Official Committee of Talc Claimants, duly appointed by the Office of the United States Trustee (the "TCC"), by and through its above-captioned proposed counsel, respectfully submits this Objection (the "Objection") to the motion [Dkt. 104] (the "Motion") filed by the Ad Hoc Committee of Supporting Counsel (the "Ad Hoc Committee") to intervene in the above-captioned adversary proceeding (the "Adversary Proceeding").

**PRELIMINARY STATEMENT**

The TCC objects to the Ad Hoc Committee's intervention in the Adversary Proceeding because, among other reasons, the Ad Hoc Committee—an informal group of law firms—does not in its pleadings or otherwise purport to consist of a group of creditors acting in concert to advance their common interests. While the law firms may purport to represent talc claimants, the Ad Hoc Committee does not. The law firms themselves do not have claims against the Debtor, and thus, will not be entitled to vote on any proposed plan. The Ad Hoc Committee identifies no legally protected interest of the law firms that could be affected by the Adversary Proceeding. Put simply, the law firms are not proper parties in interest and do not have standing to intervene in the Adversary Proceeding. If, however, the Ad Hoc Committee is permitted to intervene in the

2

Adversary Proceeding as a representative of talc claimants, it must at a minimum comply with Bankruptcy Rule 2019.

## BACKGROUND

1. This case does not begin with a blank slate. On October 14, 2021, the Debtor first filed a voluntary petition for Chapter 11 relief in the Western District of North Carolina. On November 16, 2021, the North Carolina Bankruptcy Court transferred venue of the first case to the District of New Jersey.

2. On January 30, 2023, a unanimous panel of the Third Circuit, in a precedential opinion, found that LTL's bankruptcy was not filed in good faith. On March 22, 2023, with no reported dissents, the Third Circuit rejected a petition for *en banc* review, and on March 31, 2023, the Third Circuit issued an order that incorporated its January 30 opinion and certified the opinion as the mandate to this Court. On April 4, 2023, in compliance with the Third Circuit's directive, this Court dismissed the Debtor's first bankruptcy case.

3. Just over two hours after its first Chapter 11 case was dismissed, LTL filed a second voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the District of New Jersey. The Debtor's professed intent is to use the protections of the Bankruptcy Code to fully and permanently resolve all current and future talc-related claims against LTL and its non-debtor corporate affiliates, including Johnson & Johnson. As the Ad Hoc Committee states in its Motion, the Debtor's primary interest is to reach a resolution through bankruptcy while "**paying as little as possible to do so**." Motion at 11 (emphasis supplied).

4. The Debtor Commenced this Adversary Proceeding on April 4, 2023.

5. On April 14, 2023, the United States Trustee for Region 3 filed the Notice of Appointment of Official Committee of Talc Claimants [Dkt. 162].

6. The TCC, a group of individual claimants appointed to represent the interests of all talc claimants—known and unknown—moved to intervene in the Adversary Proceeding on April 17, 2023.[2] The TCC's motion was unopposed and was granted at the April 18, 2023 hearing.

7. On April 20, 2023, the Court entered a limited preliminary injunction that enjoined the commencement or continuation of trials against Johnson & Johnson, the Debtor, and all other parties listed on Appendix B to the Adversary Complaint (with the exception of two non-debtor corporate affiliates that had been added to Appendix B on April 17) for a period of sixty days but permitted pretrial activities in filed cases and the commencement of new talc cases in the state courts but not in the federal Multidistrict Litigation pending in the District of New Jersey.

8. The TCC and other parties appealed the Court's preliminary injunction ruling on April 21, 2023 and requested certification of the appeal directly to the Third Circuit. On May 1, 2023, the TCC filed a *Petition for Writ of Mandamus* with the Third Circuit. By a Text Order entered on May 3, 2023, the Third Circuit directed the Debtor to file an answer to the *Petition for Writ of Mandamus* no later than 4:00 p.m. on May 8, 2023.

## **OBJECTION**

### I. **The Ad Hoc Committee Members Are Not Entitled To Intervene Pursuant to Fed.R.Civ.P. 24(a)(1) and Bankruptcy Code Section 1109(b)**

9. Rule 24 of the Federal Rules of Civil Procedure Rule (made applicable here by Bankruptcy Rule 7024) allows intervention only in the event certain requirements can be satisfied.

---

[2] Unlike the Ad Hoc Committee, as an official committee, the TCC has an unconditional right to intervene in the Adversary Proceeding pursuant to section 1109(b) of the Bankruptcy Code. *See Official Unsecured Creditors' Comm. v. Michaels (In re Marin Motor Oil, Inc.)*, 689 F.2d 445, 450-51 (3d Cir. 1982) (recognizing an unqualified right to intervene in an adversary proceeding under Section 1109(b) of the Bankruptcy Code and holding that the term "case" as used in Section 1109(b) includes adversary proceedings); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1241 (3d Cir. 1994) (refusing to limit the holding of Marin and finding that it applies even in non-core, "related to" proceedings before a federal district court); *In re First Interregional Equity Corp.*, 218 B.R. 731, 735 (Bankr. D.N.J. 1997) ("The Third Circuit has interpreted the language of § 1109(b) to confer upon a creditor's committee the absolute right to intervene in an adversary proceeding.")

Pursuant to Rule 24(a)(1), intervention of right is permitted only where a potential intervenor "is given an unconditional right to intervene by a federal statute." Fed.R.Civ.P. 24(a)(1). Such an unconditional right to intervene in this Adversary Proceeding is provided to "parties in interest" pursuant to Section 1109(b) of the Bankruptcy Code, which provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b); footnote 2, *supra*. In defining parties in interest, the statute refers to "creditors" and committees of "creditors." But the Ad Hoc Committee is not composed of creditors. It is composed only of law firms who profess to represent claimants (chiefly claimants with unfiled cases).

10. The Third Circuit has defined "party in interest" as one who "has a sufficient stake in the proceeding so as to require representation." *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (quoting *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985)). As a "helpful amplification" of this definition, the Third Circuit has adopted the Seventh Circuit's test, which defines a party in interest as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding." *See id.* at 210-11 (citing *In re James Wilson Assocs.*, 965 F.2d 160, 169 (7th Cir. 1992)).

11. A party that seeks to assert a right that is purely derivative of another party's rights is not a "party in interest" within the meaning of section 1109(b). *See In re Vantage Drilling International*, 603 B.R. 538, 545-46 (D. Del. 2019) (shareholder of non-debtor that was itself a shareholder of a debtor was not a party in interest in debtor's bankruptcy case); *Krys v. Official Comm. of Unsecured Creditors (In re Refco, Inc.)*, 505 F.3d 109, 117 (2d Cir. 2007) (investors in

party entering into settlement with debtor were not parties in interest with standing under section 1109(b) to object to settlement in debtor's bankruptcy case).

12. The Ad Hoc Committee's Motion is unequivocally clear. The Ad Hoc Committee does not claim to directly represent any talc claimants who have claims against the Debtor. The Ad Hoc Committee states that it represents various law firms that claim to represent talc claimants. *See Motion* at 2, 6. That is, the Ad Hoc Committee consists of a group of law firms. The law firms do not have claims against the Debtor. The law firms do not have a right to vote on any proposed plan. Rather, this group of law firms support the Debtor's plan term sheet and wish to have a forum to express their support. But the law firms have no legal interest in the outcome of the Adversary Proceeding. The law firms' purported clients may have such interests, but the law firms do not.

13. At best, the law firms have a contingent interest in attorneys' fees pending the outcome of the Chapter 11 case. However, such a derivative interest is not a sufficient legal interest to confer party-in-interest standing in the Adversary Proceeding. *See Vantage Drilling*, 603 B.R. at 545-46.

14. As neither the Ad Hoc Committee nor its law firm members have a legally protected interest in the Adversary Proceeding, the TCC respectfully requests that the Ad Hoc Committee not be permitted to intervene in the Adversary Proceeding.

## II. The Ad Hoc Committee Members Are Also Not Entitled to Intervene As of Right Under Rule 24(a)(2) of the Federal Rules of Civil Procedure

15. Rule 24(a)(2) of the Federal Rules of Civil Procedure provides a right to intervene "as of right" to anyone who "claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair

or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed.R.Civ.P. 24(a)(2).

16. Under Rule 24(a)(2), a person is entitled to intervene if "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987). "Although these requirements are intertwined, each must be met to intervene as of right." *Id*. Intervention as a matter of right presents a situation where "[t]he facts assume overwhelming importance in [the] decision." *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998). The Ad Hoc Committee plainly fails to satisfy the requirements of Rule 24(a)(2).

17. The Ad Hoc Committee's stated "interest" in the Adversary Proceeding is to support the Debtor. The Ad Hoc Committee claims that it represents a majority of the talc claimants who will outvote the "loud minority" represented by "the TCC and the other opposition parties" when the Debtor solicits its Chapter 11 plan. Motion at 2-3. This claim is completely unsupported. As discussed below, the Ad Hoc Committee has not filed the required Bankruptcy Rule 2019 disclosures in this case. Not only does the Ad Hoc Committee itself not represent any claimants, only law firms, but those law firms have not introduced any evidence that they in fact represent "tens of thousands of talc claimants."

18. Several of the law firms on the Ad Hoc Committee have only recently entered this case. They have not previously filed suits against the Debtor's predecessor or affiliates. They did not file proofs of claim or even make appearances in the Debtor's first bankruptcy case. They did not file proofs of claim in the related *Imerys* bankruptcy. Instead, they came out of the woodwork,

suddenly publicly emerging in support of the Debtor's plan and purporting to represent "tens of thousands" of previously unknown talc claimants—many of whom may suffer from the types (or subtypes) of cancer that have not been identified as scientifically linked to talc in a Daubert finding in any talc related litigation.

19. The Ad Hoc Committee claims that "the AHC of Supporting Counsel maintains a unique interest in maximizing its claimant-constituents recovery" but that is factually incorrect. Motion at 11. The law firms on the Ad Hoc Committee have all signed a Plan Support Agreement (PSA) with the Debtor and J&J that contractually *binds* them to support any plan that comports with the terms of the secret Term Sheet and *prevents* them from supporting any other plan—even if it is a higher and better offer—despite being fiduciaries for their purported clients.

20. The Supporting Counsel have contracted away any ability to "maximize claimant-constituent recovery" against the Debtor and they have locked themselves into a maximum aggregate settlement value of $8.9 billion and the grid values contained in the still confidential Exhibit A to the Term Sheet, values that are woefully deficient to compensate ovarian cancer and mesothelioma victims.

21. The centerpiece of this "agreement" is the Term Sheet attached to the Plan Support Agreements – which state that it contains the material terms of the "agreement". The Term Sheet provides for a cap of $8.9 billion – and splits that $8.9 billion between ovarian cancer cases, mesothelioma cases, and governmental cases (totally ignoring third party payor claims and indemnity claims). It also splits the funds allocated to personal injury claims between "existing" and "future" claimants – remarkably making the entire agreement contingent on "the Future Claims Representative's agreement that she will not assign more than 1/3 of the Trust corpus to qualifying future claims." Finally, for ovarian cancer claims, the Term Sheet sets a date delineating

between "existing" and "future" claimants of April 1, 2023. While this term ensures that the value of the cases represented by J&J's Plan Support Agreement partners (including all the law firm members of the Ad Hoc Committee) is not diluted, it also deprives any woman diagnosed with ovarian cancer after April 1, 2023 - or even if diagnosed before then but having retained an attorney after that date - and before plan confirmation, of her right to vote on any Plan.

22.    The Ad Hoc Committee is committed in its support of this Term Sheet. In other words, the Ad Hoc Committee is serving as a foil for the Debtor and J&J—its members are contractually obligated to lend their support for the Debtor's proposal.[3] Importantly, the purported *clients* of the law firms in the Ad Hoc Committee are *already* parties to the Adversary Proceeding. Thus, allowing the Ad Hoc Committee to intervene in the Adversary Proceeding does not further the interest of claimants that are already party to the proceeding—but it does effectively give the Debtor two seats at the table.

### III.    The Ad Hoc Committee Members Are Also Not Entitled to Intervene Under Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure

---

[3] Precisely what motivated the law firms on the Ad Hoc Committee to sign the PSA is unclear because Exhibit A to the PSA Term Sheet – significantly, the grid that shows the values for the talc claims – remains confidential. It does not take much to surmise the likely motivation, however. Many of the claims that the law firms on the Ad Hoc Committee purport to represent are not the ovarian cancer and mesothelioma cases that have been the focus of the MDL and state court litigation against J&J since 2016. Instead, they purport to represent clients with other types of "gynecological cancer" that lack a proven scientific link to talc. The Debtor is able to acquire the support of these law firms by proposing a plan that offers a modest, no-look type quick payment to certain types of claims irrespective of the scientific evidence supporting those claims. Such a payment would allow the law firms that represent these dubious claims to collect a contingency fee on "tens of thousands of talc claimants," which in aggregate would be substantial (and which would reduce the recovery for legitimate talc-related cancer victims).

Simply put, the firms who are the members of the Ad Hoc Committee are now contractually bound to attempt to flood the ballot box. Even assuming that all the claims attributed to the law firms on the Ad Hoc Committee had a scientific link to talc, they still do not have the required votes. The Ad Hoc Committee has shown no evidence that they speak for anything close to the 75% supermajority necessary for the entry of a channeling injunction under section 524(g). Without such a channeling injunction, a plan here is futile.

23. Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure provides a right to intervene "permissively" to anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed.R.Civ.P. 24(b)(1)(B).

24. As the Motion correctly recites, in assessing permissive intervention, courts "consider various factors, including whether the proposed intervenors will add anything to the litigation and whether the proposed intervenors' interests are already represented in the litigation." *Worthington v. Bayer Healthcare LLC*, Civ. No. 11-2793, 2011 WL 6303999, at *8 (D.N.J. Dec. 15, 2011) (citing *Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982)).

25. For the same reasons set forth immediately above, the Ad Hoc Committee cannot satisfy this standard. Intervention of the Ad Hoc Committee will not "add anything" here, given that its only interest in this litigation is to support the arguments of the Debtor, which interest is already adequately represented in the matter.

### IV.  If the Claimants Are Ad Hoc Committee Members Then Disclosures Required By Bankruptcy Rule 2019 Must Be Made

26. The Ad Hoc Committee offers no cases that confer standing on law firms acting on behalf of themselves.[4]

27. In its letter to the Court dated May 5, 2023 regarding participation in the mediation, the Ad Hoc Committee attempts to identify the Coalition of Abused Scouts for Justice in the *Boy Scouts of America* chapter 11 case as an example of such an ad hoc committee of law firms. But this reference is misguided. *See In re Boy Scouts of America and Delaware BSA, LLC* (Bankr. D.

---

[4] The cases cited by the Ad Hoc Committee are inapposite—those courts address the intervention rights of either official committees (*Phar-Mor, Inc. v Coopers & Lybrand*) or legal representatives appointed by order of the bankruptcy court--*e.g.*, a future claims representative (*In re G-I Holdings*). The Ad Hoc Committee is neither an official committee nor a court-appointed legal representative.

10

Del., Case No. 20-10343 (LSS)). In *Boy Scouts*, the ad hoc committee represented the collective interests of the sexual abuse victims **not** their law firms. Judge Silverstein required the ad hoc committee to provide extensive disclosure under Rule 2019 that specifically identified the *claimants* that *consented* to being represented by the ad hoc committee, including disclosing templates of the law firms' engagement letters with their clients. *See Supplement to Amended Verified Statement of the Coalition of Abused Scouts for Justice Pursuant to Bankruptcy Rule 2019* at BSA Docket No. 1510.[5] Judge Silverstein also required an acknowledgement by the claimant *in writing* regarding how the fees and costs of the ad hoc committee are being paid. *Id*.

28.     Moreover, Judge Silverstein enforced Bankruptcy Rule 2019's required disclosure of: (i) a list of the name and address of represented clients, (ii) amount and type of claims held by represented clients (including cancer type/subtype), and a (iii) copy (or exemplar) of the instrument through which each represented client authorizes a law firm (the relevant engagement letter) ***and*** the ad hoc committee to act on its behalf. Fed. R. Bankr. 2019. *Id*.; *see Order Granting Debtors' Motion to Compel Compliance With Rule 2019 of the Federal Rules of Bankruptcy Procedure* at Docket No. 3088 in *In re Imerys Talc America, Inc., et al.*, Case No. 19-10289 (LSS) (Bankr. D. Del.).

29.     Especially in a case such as this, where the Debtor misleadingly frames the support of certain law firms as being equivalent to the support of a majority of claimants, Bankruptcy Rule 2019 disclosure is critical to ensuring that all parties involved in the present bankruptcy case are aware of the interests represented by all participants. *See In re The Muralo Company Inc.*, 295

---

[5]    *See also*, Orders entered in *In re Boy Scouts of America and Delaware BSA, LLC*, Case No. 20-10343 (LSS) (Bankr. D. Del.), addressing requirements and sufficiency of Rule 2019 Statements required to be filed by an ad hoc committee prior to it being allowed to participate in court-ordered mediation. (BSA Docket Nos. 1435, 1572 and 1573).

B.R. 512, 524 & n.10 (Bankr. D.N.J. 2003) (explaining that Rule 2019 requires counsel who represent more than one creditor in a Chapter 11 case to file a verified statement listing the creditors they represent and explaining the nature of their representation).

30. Notably, the Ad Hoc Committee referred to itself as the Ad Hoc Committee of Supporting Talc Claimants in its *Initial Statement* filed on April 20, 2023 [Dkt. 253] (the "Initial Statement").  Yet, in its letter to the Court dated May 5, 2023, the Ad Hoc Committee refers to itself as the Ad Hoc Committee of Supporting Counsel.  Law firms supporting the Debtor's yet-to-be filed plan are **not** the equivalent of claimant support.  The Debtor's and the Ad Hoc Committee's efforts to interpose the rights of claimants with the rights of their purported law firm representatives should not be countenanced by the Court.

31. The Ad Hoc Committee readily acknowledges the need to file Bankruptcy Rule 2019 disclosures but insists it is an arduous process that requires more time.  Two weeks after the case was commenced, the Ad Hoc Committee (of Supporting Talc Claimants) reported in its Initial Statement that it would submit its Rule 2019 disclosures "as soon as reasonably practicable."  More than two weeks later, in its letter to the Court, the Ad Hoc Committee (of Supporting Counsel) reiterated that it would file such disclosures "in the coming days."  Yet, the law firm members of the Ad Hoc Committee have been participating in this case since even before it was filed, and notwithstanding their purported representation of "tens of thousands of talc claimants," not a single purported claimant has been disclosed to date.  Nonetheless, the Ad Hoc Committee seeks intervention in the Adversary Proceeding, and on shortened notice no less, without satisfying the mandatory disclosures required by the Bankruptcy Rules.

32. In the event the Court determines the Ad Hoc Committee is a proper party in interest and has the requisite standing to intervene in the Adversary Proceeding, the TCC respectfully

requests that the Ad Hoc Committee must be required to comply with Bankruptcy Rule 2019 before being permitted to intervene in the Adversary Proceeding.

## CONCLUSION

For the reasons set forth hereinabove, the TCC respectfully requests that the Court deny the Motion, together with such other and further relief as is just and equitable.

Dated:  May 8, 2023

*/s/ Daniel M. Stolz*
Daniel M. Stolz, Esq.
GENOVA BURNS LLC
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 230-2095
Email: DStolz@genovaburns.com

*Proposed Local Counsel to the Official Committee of Talc Claimants*