| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>PAUL HASTINGS LLP<br>200 Park Avenue<br>New York, New York 10166<br>Kris Hansen (*admitted pro hac vice*)<br><br>PAUL HASTINGS LLP<br>71 South Wacker Drive, Suite 4500<br>Chicago, Illinois 60606<br>Matthew M. Murphy (*admitted pro hac vice*)<br>Matthew Micheli (*admitted pro hac vice*)<br><br>COLE SCHOTZ P.C.<br>Court Plaza North<br>25 Main Street<br>P.O. Box 800<br>Hackensack, New Jersey 07602-0800<br>Michael D. Sirota<br>Warren A. Usatine<br>Seth Van Aalten *(admitted pro hac vice)*<br>Justin Alberto *(admitted pro hac vice)*<br><br>PARKINS & RUBIO LLP<br>700 Milam, Suite 1300<br>Houston, Texas 77002<br>Lenard M. Parkins (*admitted pro hac vice*)<br>Charles M. Rubio (*admitted pro hac vice*)<br><br>*Counsel to Ad Hoc Committee of Supporting Counsel* | |
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>               Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge: Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

LEGAL_US_E # 170267173.2

| | |
|---|---|
| LTL MANAGEMENT LLC,<br><br>                Plaintiff,<br><br>v.<br><br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000,<br><br>                Defendants | Adv. No.: 23-01092 (MBK)<br><br>**Hearing Date and Time:<br>May 9, 2023 at 1:00 pm ET** |

**OMNIBUS OBJECTION OF THE AD HOC COMMITTEE OF SUPPORTING COUNSEL TO MOTIONS FOR CERTIFICATION OF DIRECT APPEAL**

The Ad Hoc Committee of Supporting Counsel (the "AHC of Supporting Counsel"), by and through its counsel, Paul Hastings LLP, Cole Schotz P.C., and Parkins & Rubio LLP, hereby submits this objection (the "Objection") to the *Request of Official Committee of Talc Claimants for Order Certifying Direct Appeal of Preliminary Injunction Order of April 20, 2023 to the United States Court of Appeals for the Third Circuit* [ECF No. 84] (the "TCC Motion"); *Ad Hoc Group of Mesothelioma Claimants' Motion for Order Certifying Direct Appeal of Preliminary Injunction Order of April 20, 2023 to the United States Court of Appeals for the Third Circuit* [ECF No. 88] (the "Meso. Motion"); and *Paul Crouch's Motion and Joinder for Order Certifying Direct Appeal of Preliminary Injunction Order of April 20, 2023 to the United States Court of Appeals for the Third Circuit* [ECF No. 89] ("Crouch Motion" and with the TCC Motion, the Meso. Motion, and the Crouch Motion, the "Motions"[2] of the moving parties, the "Movants"), and in support of this Objection, the AHC of Supporting Counsel respectfully states as follows:

---

[2] All three Motions seek certification of a direct appeal to the Third Circuit of the PI Order (as defined below). The Motions rely heavily on the Third Circuit's recent decision to dismiss the Debtor's bankruptcy case filed in 2021 (the "2021 Chapter 11 Case"), *In re LTL Management*, No. 22-2011 (3d Cir. Mar. 31, 2023) (the "Third Circuit Dismissal Decision").

2

**PRELIMINARY STATEMENT[3]**

The AHC of Supporting Counsel believes this chapter 11 case (the "Chapter 11 Case") is at the precipice of being resolved through a legitimate chapter 11 plan process. The plan will provide for prompt payment to talc victims through confirmation of a plan that complies with the requirements of section 524(g) of the Bankruptcy Code. The outcome will be of enormous benefit to the talc victims, who will have the opportunity to vote on that plan, as opposed to having those claimants suffer through the delays and risks of recovery associated with pursuing their claims through the tort system.

There is nothing novel about this Court's issuance of the preliminary injunction in this Chapter 11 Case. Preliminary injunction orders are often entered at the commencement of a chapter 11 case to stay litigation that is determined to have an adverse impact on the Debtor's estate and its reorganization efforts. In truth, the Motions here are not primarily directed at the preliminary injunction, rather the Motions are a tactic to allow the Movants to argue for dismissal of this Chapter 11 Case to the Third Circuit. This tactic, however, is procedurally flawed and should not be rewarded given the pending motions to dismiss before this Court. At that time, the issue will become ripe for appellate review.

The injunction under the PI Order was issued in accordance with controlling Third Circuit law and simply maintains the status quo for a limited duration as this case progresses. Allowing for direct appeal of the preliminary injunction order will just encourage the Movants to try to deny the Debtor, and other significant parties in this Chapter 11 Case, a fair and appropriate opportunity to defend against dismissal while allowing the Movants to escalate the issue of dismissal to the Third Circuit, an appellate forum the Movants obviously consider will be favorably disposed to

---

[3] Capitalized terms used but not defined in this introductory section have the meanings given below.

them.[4]  This attempt to circumvent the Court's own process to consider dismissal of this Chapter 11 Case, which is tentatively scheduled to go to hearing in June 2023, in and of itself is reason to deny the Motions.

The Motions also fail to meet the standards for direct certification under 28 U.S.C. § 158(d)(2).  The injunction under the PI Order is limited in duration and was entered by this Court only after it expressed concerns about "whether the Debtor had an adequate opportunity to respond" to the motions to dismiss filed by the Movants.  *See* PI Opinion at 21.  That injunction is narrowly tailored to give the Debtor an opportunity to establish a record to address the many "unanswered questions" that are dispositive for the motions to dismiss.  *See id.* at 23.  The Court's ruling on the PI Order is supported by established Third Circuit legal standards and the Movants fail to satisfy the legal standards for direct appeal.

The Motions rely heavily on the first prong of 28 U.S.C. § 158(d)(2): that the order involves a "matter of public importance."  The case law and history of that provision show that it meant to provide a mechanism for purely legal issues not heavily dependent on the particular facts of a case to be decided.  The PI Order, which is outlined in a fact-intensive decision through the PI Opinion, is not within that intended scope.  The PI Opinion rests on the particular facts of this Chapter 11 Case, and it does not come close to presenting purely legal issues.  The temporary relief under the PI Order is unlikely to be of precedential importance for litigants in other cases.

The Motions are equally unavailing on whether the PI Order involves a "question of law as to which there is no controlling decision."  There is no dispute that the Third Circuit's decisions are controlling, and this Court recognized as much and, to its credit, went out its way to make clear

---

[4] The Movants' offensive against this Chapter 11 Case and their attempt to circumvent this Court is taking place on other fronts.  On May 2, 2023, the TCC filed its *Public Petition for Writ of Mandamus of Official Committee of Talc Claimants* with the United States Court of Appeals for the Third Circuit [ECF No. 387].

4

LEGAL_US_E # 170267173.2

that the PI Decision operates within the confines of the Third Circuit Dismissal Decision. The Movants are not able to establish that the PI Order does not follow controlling law of the Third Circuit with respect to issuance of an injunction. Instead, the Movants try to obscure the two separate concepts of injunctive relief and dismissal to argue that the issuance of the injunction violates the Third Circuit Dismissal Order. This argument fails. This Court acknowledged that it is bound by the Third Circuit Dismissal Decision and it applied appropriate controlling law in issuing the PI Order.

And though the Movants wish to skip the percolation of the appeal, only the standard progression of appeals will materially advance the progress of this proceeding. Courts have long cautioned about the risks of intervention by appellate courts when things remain in flux. Not only are all of those risks present here, but the circumstances here are ripe for gamesmanship by clever litigants seeking to divest trial courts of control over their cases. The Motions should be denied.

## **OBJECTION**

1. By their Motions, the Movants ask this Court to certify the appeal of the PI Order[5] for direct review by the Third Circuit pursuant to 28 U.S.C. § 158(d)(2). That statute provides that the appropriate court shall certify a direct appeal to the applicable court of appeals when:

   (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

   (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or

   (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken.

---

[5] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the TCC Motion.

5

28 U.S.C. § 158(d)(2)(A). Courts have generally analyzed section 158(d)(2)(A) as containing four disjunctive factors, breaking out the first prong of the statute into two subparts: "no controlling decision" and "matter of public importance." *See In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 708 (Bankr. D. Del. 2016) (finding 28 U.S.C. § 158(d)(2)(A) actually provides "four disjunctive criteria as subpart (i) sets forth two separate benchmarks for certification," namely no controlling decision, matter of public importance, resolution of conflicting decisions, and material advancement of the case). "The twin purposes of th[is] provision [are] to expedite appeals in significant cases and to generate binding appellate precedent in bankruptcy, whose case law has been plagued by indeterminacy." *In re Pacific Lumber Co.*, 584 F.3d 229, 241-42 (5th Cir. 2009) (*citing* H.R.Rep. No. 109–31 pt. I, at 148 (2005)). In their Motions, the Movants argue that at least three factors are present and thus direct certification should be granted. However, for the following reasons, the Motions do not satisfy *any* of the requisite factors.

**I.     This Court Properly Applied Controlling Decisions of the Third Circuit.**

2.      Under the first prong of the 28 U.S.C. § 158(d)(2)(A) analysis, the order being appealed must involve "a question of law as to which there is no controlling decision."

3.      The Third Circuit has issued controlling decisions that govern the granting of injunctions, and this Court applied that controlling law in its PI Decision. The Third Circuit Dismissal Decision, on the other hand, governs motions to dismiss. These two categories of Third Circuit authority—one category governing injunctions and one governing motions to dismiss—address two entirely different types of relief. Nonetheless, the Movants ambitiously seek to misdirect this Court into applying the Third Circuit Dismissal Decision to adjudicate the

6

injunction—the conceit of the Motions is to reframe the longstanding law governing injunctive relief. This Court has already rejected this as an exercise in misdirection.[6]

4.      The Movants labor mightily to conflate the two separate concepts of a "preliminary injunction" and a "motion to dismiss." This is intended to detract attention from the limited effects of the injunction under the PI Order that prohibits nothing other than certain trials and appellate practice for only sixty days. *See* PI Order at ¶ 3. That temporary relief is not subject to the Third Circuit Dismissal Decision. Instead, the Third Circuit Dismissal Decision adjudicated the initial motions to dismiss, which constituted wholly independent relief that permanently disposed of the 2021 Chapter 11 Case.

5.      The Movants nonetheless argue that the Third Circuit needs to establish that its decision on dismissal is controlling, reasoning that the Debtor "refuses to accept the Third Circuit's decision." *See* TCC Motion at ¶ 21. To be clear, the AHC of Supporting Counsel does not contend that the Third Circuit Dismissal Decision is not controlling. To the contrary, the Third Circuit Dismissal Decision is meaningful authority for the standards that must be applied by courts presented with a motion to dismiss in a bankruptcy case. And the Third Circuit Dismissal Decision did just that—it applied the standards to the particular facts presented to it in the 2021 Chapter 11 Case and then, and only then, did the Third Circuit dismiss the 2021 Chapter 11 Case. The import of that decision is clearly confined to the facts of the 2021 Chapter 11 Case, and those facts are readily distinguishable from this Chapter 11 Case. *See Opinion Dissolving Temporary Restraining*

---

[6] Recognizing the Movants' attempt to distract attention away from the narrow relief set forth in the PI Order, this Court carefully crafted its PI Opinion—it is scattered with references to the Third Circuit Dismissal Decision that only reaffirm this Court's alignment with the Third Circuit Dismissal Decision. *See* PI Opinion at 12-13 ("Nothing presented in . . . the Third Circuit's Opinion changes that analysis" and "Nothing offered in the Third Circuit's Opinion . . . compels deviation from this Court's prior ruling"); *id.* at 13-14 (explaining that "the Third Circuit's Opinion does not demand reconsideration of this matter"); *id.* at 22 (explaining that "this Court is constrained to apply the Third Circuit's ruling to the facts of the present case"); *id.* at 25 ("nothing in the Third Circuit's decision regarding Debtor's financial distress precludes this Court from concluding . . . ").

LEGAL_US_E # 170267173.2

*Order, Extending the Automatic Stay, and Granting Limited Preliminary Restraints* ("PI Opinion") [Adv. ECF No. 94] at 17 ("this Court believes the focus should be on whether anything changed in the debtor's financial picture"); *id.* at 22 (explaining that "the question of financial distress remains an open one for now" and "the Debtor's financial circumstances have changed since the time of the last filing"). The relief granted under the PI Order, the Movants seem to argue, has the effect of "flouting" the Third Circuit Dismissal Decision. *See* TCC Motion at ¶ 1. The Movants blithely overlook the reason why this Court entered the PI Order in the first place.

6. The PI Order provides for a limited injunction against certain trials and appellate practice, and it does so only for a period of sixty days. *See* PI Order ¶ 3. The essence of this procedural device is to maintain the status quo in order to give the Debtor an opportunity to resolve the substantive issue on the merits—it is intended to prevent actions that could moot the need for the hearing that the injunction is intended to facilitate. That substantive issue is whether to dismiss this Chapter 11 Case, and this Court will hear that issue in less than six weeks.[7]

7. The Movants' only way around this is to conflate the limited relief under the PI Order with the substantive relief of dismissal. Ironically, the Motions are filled with facts and analyses that belong in the motion to dismiss briefing. *See* PI Opinion at 9 ("the Objecting Parties' arguments in this respect are premised primarily on their contention that the instant bankruptcy was filed in bad faith"); *id.* at 22 n. 11 ("the Court notes that the TCC has already filed a Motion to Dismiss . . . and perceives that as the more appropriate vehicle to directly address the issue and develop the necessary factual support").[8]

---

[7] As this Court explained, the record for that substantive issue was not developed at the time of entry of the PI Order, and the Debtors are entitled to an adequate opportunity to address that issue. *See* PI Opinion at 19-21.

[8] Undaunted, the Movants argue that this Court flipped the burden of proof. *See* TCC Motion at ¶ 8. This cannot be further from the truth—the PI Opinion emphasized that the burden rests on the Debtor, consistent with Third Circuit authority. *See* PI Opinion at 16 n. 9. There can be no doubt that this Court followed the Third Circuit's controlling authority on issuing a preliminary injunction. *See* PI Opinion at 15 (relying on *McTernan v. City of York, Pa.*, 577 F.3d 521, 527 (3d Cir. 2009)).

8. The relief sought by the Movants is misguided for another reason: the PI Order rests on extensive factual findings from a copious record. This alone makes the appeal inappropriate to certify for direct review. *See In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009) ("[I]ssues that are specifically linked to the Bankruptcy Court's decision are, in the Court's view at this juncture, mixed questions that implicate the particular circumstances of this case, and as such, they are not pure legal questions warranting direct certification."); *In re Tribune Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) ("The issue . . . is not a pure legal issue; it is not appropriate for direct appeal."). The Movants have not shown that this is a "discrete, controlling question of law" that can be settled by an appellate court "relatively quickly." *See Weber v. United States*, 484 F.3d 154, 158 (2d Cir. 2007); *see also In re Trib. Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) (same).

## II. The Appeal Does Not Involve a Matter of Public Importance.

9. The Movants' argument on this issue is misplaced and does not meet the standard for direct appeal. The Movants contend that this Court's decision on the PI Order is not "respecting and implementing" the Third Circuit Dismissal Decision (*see* TCC Motion at ¶ 16) and therefore assert that application of the Third Circuit Dismissal Decision to matters in this Chapter 11 Case that are unrelated to dismissal is "by definition" a matter of "public importance." *Id.* In an attempt to obfuscate the flaw in their legal argument, the Movants underscore the involvement of "tens of thousands of litigants" and "billions upon billions of dollars." *Id.* at 13. The Movant's interpretation of "public importance" relating to the number of claims or amount at issue would give any disgruntled litigant in a mass-tort case the remarkable option to bypass trial courts and

9

get ahead of any decision that has even a remote possibility of being adverse to them. It is for this reason that courts construe this provision on public importance narrowly.[9]

10. The PI Order provides for a narrowly-tailored injunction that preserves the status quo and gives the Debtor a chance to adequately address the substantive issues that this Chapter 11 Case presents. This Court has already identified the many "unanswered questions" and the need to provide the Debtor with an "adequate opportunity" to respond to the motions to dismiss. *See* PI Opinion at 21, 23.

11. The Movants' argument, however, seems to contend that a debtor whose previous bankruptcy case is dismissed is barred from seeking any relief in a subsequent bankruptcy case. That is simply not supported by law. Unless this Chapter 11 Case is dismissed, the Debtor is entitled to the protections afforded it in the Bankruptcy Code. The PI Order is an appropriate protection implemented by this Court to provide the Debtor with limited time to prosecute this Chapter 11 Case. "[T]he primary purpose of preliminary injunctive relief is maintenance of the status quo until a decision on the merits of a case is rendered." *See Beacon Sales Acq., Inc. v. Bd. of Tr. of Teamsters Indus. Empl. Pension Fund,* 425 F.Supp.3d 377, 385 (3d Cir. 2019) (*citing Acierno v. New Castle Cty.,* 40 F.2d 645, 647 (3d Cir. 1994)). The Movants seek to subvert this principle by taking this case away from the trial court and directly to the Third Circuit, gambling on judicial solicitude that could have the effect of foreclosing the substantive issue of dismissal from ever being heard on the merits. It is difficult to fathom why the law would provide the Movants with such a right through the backhanded mechanism of a direct appeal.

---

[9] In determining whether to grant certification for an order that "involves a matter of public importance" courts construe this provision "narrowly." *Polk 33 Lending LLC v. THL Corp. Fin., Inc.* (*In re Aerogroup Int'l, Inc.*), 2020 WL 757892, at *5 (D. Del. Feb. 14, 2020).

LEGAL_US_E # 170267173.2

12. In any event, the Movants misunderstand the standard for "public importance." It is not sufficient that members of the public may be interested in the outcome—rather, the issue on appeal must "transcend[] the litigants and *involve[] a legal question* the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. at 44 (emphasis added); *In re Sabine Oil & Gas Corp.*, 551 B.R. 132, 140-42 (Bankr. S.D.N.Y. 2016) (declining to find issue of public importance based on argument that dispute has received substantial news coverage or because industry was watching closely). While this Chapter 11 Case is important for the Debtor and the many claimants involved, and while this Chapter 11 Case has proven newsworthy, a sixty-day stay is hardly a matter that involves a legal question of "public importance," let alone a matter that will advance jurisprudence if resolved.

### III. Certification Will Not Materially Advance the Progress of this Chapter 11 Case.

13. The Motions are part of a sprawling latticework of legal machinations engineered by the Movants with the transparent purpose of wrestling control of this Chapter 11 Case away from this Court in the hope that the Third Circuit will dismiss it before parties have had the opportunity to litigate the issue. This will not progress the case, a showing that is required for relief under 28 U.S.C. § 158(d)(2); it will only progress the agenda of the Movants.[10] The relief sought by the Movants would fully open the floodgates to trial verdicts that "hinder mediation efforts, impact the claims liquidation and estimation processes, and possibly strengthen insurance defenses against coverage." *See* PI Opinion at 24.

14. The Movants are pursuing this strategy to prevent the Debtor from using the full panoply of bankruptcy rights to which it is entitled. The hard work of the Debtor has culminated in a groundbreaking settlement that has the support of a majority of claimants. And, contrary to

---

[10] In determining whether to grant certification for an order that "may materially advance the progress of the case," § 158(d)(2)(A)(iii), courts construe this provision "narrowly." *In re Aerogroup Int'l, Inc.*, 2020 WL 757892, at *5.

11

the Movants' suggestions, those claimants have valid claims, which will be supported by evidence.[11] Indeed, sworn testimony makes clear that medical records are "coming in by the tens of thousands" and there is "an army of people that review those records on a systemic basis." Watt's Deposition, 31:17-32:21; 31:17-32:21. Further evidence will also be developed in connection with the motions to dismiss, including fact and expert witnesses.

15. That settlement creates a framework to expedite the recovery for claimants in a single and fair manner and in fact has a far greater chance of advancing this Chapter 11 Case than through direct certification of the PI Order. As this court has explained, a streamlined claim recovery process is a far better result than decades of piecemeal litigation rewarding some but not all claimants. *See* PI Opinion at 27 ("A settlement trust benefits claimants—whose time is valuable and may be limited due to their illness—by streamlining the claim recovery process. Additionally, a bankruptcy trust protects the needs of future talc claimants."). That settlement can only be implemented under the Bankruptcy Code.

16. The Debtor shall have the opportunity establish the record for this Court to make an informed determination as to why this settlement makes this Chapter 11 Case different than the 2021 Chapter 11 Case. *See* PI Opinion at 19 (explaining that "the record is not developed"); *id.* (explaining that "the limited record" makes it difficult to make an "informed determination, calculation, or comparison"); *id.* at 21 (questioning "whether the Debtor had an adequate opportunity to respond" where the hearing "was devoted primarily to Debtor's request for a preliminary injunction"); *id.* at 23 (expressing reservations about making a decision "with so many unanswered questions"). Rather than advance the progress of this Chapter 11 Case, the Movants

---

[11] The AHC of Supporting Counsel is also working diligently to prepare a master Rule 2019 statement that consolidates all required information for the members of the AHC of Supporting Counsel and their clients.

12

seek to create distractions around the substantive issue and bypass this Court. Such tactics do not satisfy section 158(d)(2) and this Court should deny the Motions.

## CONCLUSION

**WHEREFORE**, the AHC of Supporting Counsel respectfully requests that this Court deny the Motions and grant such other and further relief as the Court finds just and appropriate.

Dated: May 8, 2023        **COLE SCHOTZ P.C.**

           */s/ Michael D. Sirota*
Michael D. Sirota (NJ Bar No. 014321986)
Warren A. Usatine (NJ Bar No. 025881995)
Seth Van Aalten (*admitted pro hac vice*)
Justin Alberto (*admitted pro hac vice*)
Court Plaza North, 25 Main Street
Hackensack, NJ 07602-0800
(201) 489-3000
Email:  msirota@coleschotz.com
           wusatine@coleschotz.com
           svanaalten@coleschotz.com
           jalberto@coleschotz.com

– and –

**PAUL HASTINGS LLP**

Kris Hansen (*admitted pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Email:  krishansen@paulhastings.com

Matthew M. Murphy (*admitted pro hac vice*)
Matthew Micheli (*admitted pro hac vice*)
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: (312) 499-6000
Email:  mattmurphy@paulhastings.com
           mattmicheli@paulhastings.com

13

– and –

**PARKINS & RUBIO LLP**

Lenard M. Parkins (*admitted pro hac vice*)
Charles M. Rubio (*admitted pro hac vice*)
700 Milam, Suite 1300
Houston, TX 77002
Telephone: (713) 715-1660
Email:  lparkins@parkinsrubio.com
　　　　crubio@parkinsrubio.com

*Counsel to AHC of Supporting Counsel*