**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re:<br>LTL MANAGEMENT LLC,[1]<br>                            Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge: Michael B. Kaplan |
| LTL MANAGEMENT LLC,<br>                            Plaintiff,<br>v.<br>THOSE PARTIES LISTED ON APPENDIX A TO COMPLAINT and JOHN AND JANE DOES 1-1000,<br>                            Defendants. | Adv. No. 23-01092 (MBK) |

**DEBTOR'S MOTION FOR A BRIDGE ORDER CONFIRMING THE AUTOMATIC STAY APPLIES TO CERTAIN ACTIONS ASSERTED AGAINST AFFILIATES OR TEMPORARILY EXTENDING THE STAY AND PRELIMINARY INJUNCTION TO SUCH ACTIONS PENDING A FINAL HEARING ON THE REQUESTED RELIEF**

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

The above-captioned debtor (the "Debtor") moves the Court for the entry of a bridge order: (i) confirming that certain actions asserting Debtor Talc Claims[2] wholly or principally under theories of successor liability against certain of the Debtor's affiliates are automatically stayed pursuant to section 362(a)(3) of title 11 of the United States Code (the "Bankruptcy Code"); or (ii) temporarily extending the stay and preliminarily enjoining such actions pending a final hearing, currently scheduled for June 13, 2023, on the Debtor's forthcoming request to modify and extend the preliminary injunction currently in effect in the above-captioned chapter 11 case (the "Chapter 11 Case"). In support of this Motion, the Debtor incorporates the *Declaration of Daniel J. Merrett* (the "Counsel Declaration"),[3] filed contemporaneously herewith, and respectfully represents as follows:

**Preliminary Statement**

No sooner had the Court granted the Debtor's narrowly targeted request for a temporary restraining order on April 5, 2023 [Dkt. 9] (as amended, the "TRO") than the plaintiff's bar started trying to evade it. The TRO temporarily prohibited and enjoined named and prospective plaintiffs in talc-related lawsuits from commencing or continuing to prosecute Debtor Talc Claims against four affiliates of the Debtor (collectively, the "Protected Affiliates")[4] as well as various retailers and other indemnified parties. TRO, ¶ 2. The four Protected Affiliates were selected because, as of the commencement of the Debtor's chapter 11 case

---

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the *Debtor's Verified Complaint for Declaratory and Injunctive Relief (I) Declaring that the Automatic Stay Applies or Extends to Certain Actions Against Non-Debtors, (II) Preliminarily Enjoining Such Actions, and (III) Granting a Temporary Restraining Order Ex Parte Pending a Hearing on a Preliminary Injunction* [Dkt. 1] (the "Complaint").

[3] All citations herein to exhibits refer to the exhibits attached to the Counsel Declaration.

[4] The Protected Affiliates consist of: Johnson & Johnson ("J&J"); Johnson & Johnson Consumer Inc. ("Old JJCI"); Johnson & Johnson Holdco (NA) Inc. f/k/a Johnson & Johnson Consumer Inc. ("Holdco"); and Johnson & Johnson Inc. See App'x B to Compl. [Dkt 1-3].

(the "Chapter 11 Case") on April 4, 2023 (the "Petition Date"), they were the only affiliates of the Debtor that were parties to pending lawsuits asserting Debtor Talc Claims.

The Debtor's good-faith efforts to limit the universe of Protected Affiliates were not rewarded and have now culminated in claimants seeking apex depositions of the Chief Executive Officer and Chief Financial Officer of one of the Debtor's affiliates. On April 5, 2023, the day after the Petition Date and the same day that the Court entered the original TRO, plaintiffs' attorneys sued—for the first time—two affiliates that were not covered by the TRO's terms: Janssen Pharmaceuticals, Inc. ("Janssen"); and Kenvue Inc. ("Kenvue"). A string of substantively identical lawsuits followed close behind the April 5 filing (all such lawsuits collectively, the "Successor Liability Actions").[5] Each of the Successor Liability Actions was filed in the Superior Court of New Jersey, Middlesex County (the "Middlesex County Court"). Additionally, Janssen or Kenvue have now been named as defendants in dozens of both ovarian cancer and mesothelioma cases all across the country, and they have already been served with multiple discovery requests. The Court previously stated that it would review application of the stay to the Successor Liability Actions if it became relevant. It is now relevant—indeed, exigent.

---

[5] See, e.g., *Complaint and Demand for Jury Trial*, Pressler v. Johnson & Johnson, No. MID-L001944-23, (N.J. Super. Ct. Apr. 5, 2023) ¶¶ 1-5, 7; *Complaint and Jury Demand*, Cruz v. Kenvue, No. MID-L-002093-23, (N.J. Super. Ct. April 13, 2023) (the "Cruz Complaint") ¶¶ 1-3, 6-9; *Complaint and Jury Demand*, Bergeron v. Kenvue Inc., No. MID-L-002089-23, (N.J. Super. Ct. Apr. 13, 2023) ¶¶ 1-3, 6-9; *Complaint and Jury Demand*, Dumas v. Kenvue, Inc., No. MID-L-002090-23, (N.J. Super. Ct. Apr. 13, 2023) ¶¶ 1-3, 6-9; *Complaint and Demand*, El-Ramadi v. Kenvue, Inc., No. MID-L-002092-23, (N.J. Super. Ct. Apr. 13, 2023) ¶¶ 1-3, 6-9; *Complaint and Jury Demand*, Boyle v. Kenvue, Inc., No. MID-L-002094-23 (N.J. Super. Ct. Apr. 13, 2023) ¶¶ 1-4, 7-10; *Complaint and Jury Demand*, Drolet v. Kenvue Inc., No. MID-L-002095-23, (N.J. Super. Ct. Apr. 13, 2023 ¶¶ 1-3, 6-9; *Complaint and Demand for Jury Trial*, Magee v. Janssen Pharms., Inc., No. MID-L-002268-23 (N.J. Super. Ct. Apr. 21, 2023) ¶¶ 1-5, 10-11.

A copy of the Cruz Complaint, which is representative of the other complaints in the Successor Liability Actions, is attached for the Court's reference as Exhibit 1 to the Counsel Declaration. To avoid discovery restrictions under applicable local rules, the discovery demands discussed herein were issued under a pre-existing case, Naranjo v. Johnson & Johnson, No. MID-L-6108-21AS, in which Successor Liability Action Janssen and Kenvue were previously not even named as defendants.

The Successor Liability Actions are doomed to fail and are brought solely to harass the Debtor's affiliates and their management. There is no basis for Janssen or Kenvue having direct talc-related liabilities. Janssen is the parent of Holdco, a Protected Affiliate that, as a result of the 2021 Corporate Restructuring that created it, has no cosmetic-talc liability by operation of Texas law. Kenvue is a public company launched in 2023 (following public announcements reaching back to 2021) to take ownership of Holdco's consumer health business. Neither of these entities ever manufactured or distributed cosmetic-talc products in North America. In fact, sales of talc-based Johnson's Baby Powder in North America were discontinued before Kenvue (or Holdco) even existed.[6] There are thus no reasonable grounds beyond bare opportunism for asserting that either Janssen or Kenvue has liability for its own manufacture or sale of cosmetic-talc products in North America.[7]

The plaintiffs' attorneys instead focus on meritless successor-liability theories based on the transfer of consumer-health-business assets from Holdco to Janssen and then Kenvue, and the defendants' subsequent distribution of talc-free products in North America. See, e.g., Ex. 2 (Apr. 18, 2023, Hr'g Tr., argument of Mr. Placitella), at 165:19-166:4 ("The purpose is to demonstrate here that Johnson and Johnson, while the Third Circuit's decision was pending, was moving assets out of Old JJCI – out of New JJCI into Janssen with the intention of then moving those assets again to Kenvue. . . . And my client, Justin Bergeron, under New Jersey law, has every right to proceed against Janssen and Kenvue in the chain of distribution of those assets.").

---

[6] See *Declaration of John K. Kim in Support of First Day Pleadings* [Case No. 23-12825; Dkt. 4]. ¶ 42.

[7] Upon information and belief, no plaintiff in any of the Successor Liability Actions has alleged that he or she sustained injuries as a result of exposure to cosmetic talc products outside North America after the consumer health business was transferred to Janssen and Kenvue.

The complaints in the Successor Liability Actions blindly assume that any talc-related liabilities of Old JJCI transferred to Holdco, notwithstanding the 2021 Corporate Restructuring, and then to Janssen and Kenvue. See, e.g., Ex. 1 (Cruz Compl.), ¶ 29 ("Accordingly, under New Jersey law, Janssen is a successor to Old JJCI and responsible for the contractual undertakings and tortious conduct of Old JJCI."). But any such liabilities could not pass from Holdco to Janssen and Kenvue unless Holdco held them in the first place. And they could not transfer from Old JJCI to Holdco unless the effect of the 2021 Corporate Restructuring is ignored. Thus, only by attacking the foundation of the 2021 Corporate Restructuring—which this Court has already ruled was lawful and which created and conclusively vested all talc-related claims against Old JJCI in the Debtor by operation of Texas law—can the claimants hope to succeed in their claims.

After the briefing and argument in the Successor Liability Actions, it has become plain that the plaintiffs are trying to nullify the 2021 Corporate Restructuring and the effect of Texas's divisional merger law. Mr. Placitella argued that "[t]he mere fact that J&J assigned liability to LTL to decide who ultimately is going to pay inside their little world has no impact on the responsibility to their parties." Ex. 4 (May 24, 2023 Hr'g Tr., Naranjo v. Johnson & Johnson, et al., Case No. L-6108-21AS, Volume 1), at 24:5-8. He even argued that Janssen and Kenvue "are the *same company* and share the same identity for purposes of product liability as JJCI." Id. at 23:12-14 (emphasis added). Ms. Long also presented on behalf of plaintiffs. Despite her protestations that "it's not that plaintiffs are attempting to undo or ignore the Texas Two Step," she argued in the same breath that "when corporations attempt to put their liabilities off and sell a business absent and clear from all liability, that that – those corporate machinations *may not be binding on plaintiffs* under New Jersey law." Id. at 51:12-52:6 (emphasis added).

Moreover, it is black-letter law that successor-liability claims are property of the Debtor's estate. Any effort to assert them is thus already prohibited by section 362(a)(3) of the Bankruptcy Code as an attempt to exercise control over property of the estate. The claimants' continued prosecution of successor-liability claims against Janssen and Kenvue during the pendency of this Chapter 11 Case, therefore, is a clear violation of the automatic stay.

Ahead of the April 18, 2023, hearing on the Debtor's request for a preliminary injunction to replace the TRO, the Debtor sought to cut off the wave of Successor Liability Actions that was clearly arriving by supplementing the proposed schedule of Protected Affiliates to include Janssen and Kenvue.[8] Although the Court denied the Debtor's request at that time, the Court acknowledged that the parties "didn't vet these arguments" that "the basis for the claims is successor in interest, which would be property of the estate, and therefore those claims would be barred by the automatic stay." Ex. 3 (Apr. 20, 2023 Hr'g Tr.), at 22:4-6, 14-15. And the Court was clear that it would "preserve the Debtor's right to come back before me to include [Janssen and Kenvue] at a later date if it becomes relevant." See id. at 20:15-19; see also id. at 19:10-20:14; Ex. 2 (Apr. 18, 2023 Hr'g Tr.), at 322:14-323:14.

The protection of Janssen and Kenvue from the Successor Liability Actions has now become imperative. At a hearing on the Successor Liability Actions that occurred on May 24, 2023, the Middlesex County Court indicated that it would not dismiss the meritless claims asserted therein. See Ex. 4 (May 24, 2023 Hr'g Tr., Naranjo v. Johnson & Johnson, et al., Case No. L-6108-21AS, Volume 1), at 69:13-14 ("The Court is satisfied that this is not a case that should be dismissed"). Instead, the Middlesex County Court ruled that it would allow

---

[8] See *Notice of Filing of Supplemented Appendices to Debtor's Verified Complaint for Declaratory and Injunctive Relief* [Dkt. 55].

discovery to proceed and consolidate the Successor Liability Actions. Ex. 5 (May 24, 2023 Hr'g Tr., Naranjo v. Johnson & Johnson, et al., Case No. L-6108-21AS, Volume 2), at 34:10-12 ("I'm ordering discovery. I'm putting together consolidation [of the Successor Liability Actions], that's going to require discovery.").

The plaintiffs in the Successor Liability Actions have sought to begin that discovery by issuing harassing subpoenas for apex depositions of the Chief Executive Officer and Chief Financial Officer of Kenvue, based solely on these parties' signatures of Kenvue's public filings. See Ex. 6 (subpoenas issued to Thibaut Mongon, Chief Executive Officer and Director of Kenvue, and Paul Ruh, Chief Financial Officer of Kenvue).[9] Although the defendants moved to quash those subpoenas, the Middlesex County Court has not granted the motions to quash and has indicated that it will rule imminently and would deny any requested stay pending appeal if the motions to quash are denied. See Ex. 5 (May 24, 2023 Hr'g Tr., Naranjo v. Johnson & Johnson, et al., Case No. L-6108-21AS, Volume 2), at 33:9-10 (THE COURT: "But it's not going to—I'm not going to take that much time"); id. at 35:9-12 (MR. GARDE: "Then there would be an application for a stay." THE COURT: "Understood, which the Court would deny if the Court denies the Motion to Quash.").

The Debtor intends to present its full arguments in support of staying the Successor Liability Actions in connection with its request to extend and modify the preliminary injunction currently in effect in this Chapter 11 Case, which request is scheduled to be heard on June 13, 2023 (the "PI Extension Hearing"). An urgent need for interim relief staying the

---

[9] On May 30, 2023, this Court denied discovery into Kenvue regarding its spinoff. See Ex. 7 (May 30, 2023 Hr'g Tr.), at 40:7-41:15. The **very next day**, Plaintiffs submitted a letter in Naranjo with further argument supporting their request for the apex depositions of Kenvue's CEO and CFO. See Ex. 8 (May 31, 2023, Letter from Mr. Placitella to the Middlesex County Court in Naranjo). Those depositions are simply an attempt to seek out an alternative forum for their arguments when they do not receive their preferred result here.

-7-

Successor Liability Actions against Janssen and Kenvue has arisen in advance of the PI Extension Hearing, however, in light of the imminent prospect of unnecessary and abusive discovery contemplated by the plaintiffs in the Successor Liability Actions, including the apex depositions that the Middlesex County Court appears willing to allow.  To prevent the unjust and unnecessary harassment of Janssen and Kenvue and their senior management, the Debtor requests that the Court enter an emergency bridge order confirming that the automatic stay applies to the Successor Liability Actions or extending the stay and preliminary injunction to the prosecution of the Successor Liability Actions against Janssen and Kenvue pending further argument on the issues discussed herein at the PI Extension Hearing.

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.) (the "Standing Order of Reference").  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtor is authorized to continue to manage its property and operate its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The statutory predicates for the relief requested herein are sections 105(a) and 362(a) of the Bankruptcy Code.

## Relief Requested

3. By this Motion, the Debtor requests that the Court enter a bridge order, pursuant to sections 362(a) and 105(a) of the Bankruptcy Code, confirming that the continuation of the Successor Liability Actions and the commencement of any similar litigation asserting

derivative claims against Janssen and/or Kenvue are automatically stayed or otherwise temporarily prohibited and enjoined pending the Court's ruling following the PI Extension Hearing.

**Basis for Relief Requested**

4. Pursuant to section 541 of the Bankruptcy Code, the Debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located and by whomever held. 11 U.S.C. § 541(a)(1). Thus, "'[a] cause of action [becomes] property of the estate if the claim existed at the commencement of the [bankruptcy] filing and the debtor could have asserted the claim on his own behalf under state law.'" Artesanias Hacienda Real S.A. DE C.V. v. N. Mill Cap., LLC (In re Wilton Armetale, Inc.), 968 F.3d 273, 280 (3d Cir. 2020) (quoting Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir. 2002)); see also Butner v. United States, 440 U.S. 48, 54 (1979). Such causes of action include alter-ego or successor-liability claims. See, e.g., In re Emoral, Inc., 740 F.3d 875, 880-82 (3d Cir. 2014) (holding that personal injury claimants' successor liability claims against transferee were property of the debtor's estate); Steyr-Daimler-Puch of Am. Corp. v. Pappas, 852 F.2d 132, 135 (4th Cir. 1988) (creditor's alter ego claim against debtor's principal and affiliate was cause of action that debtor could assert under state law and thus was "'property of the estate' within the meaning of § 541(a)(1)"); Tsai v. Bldgs. by Jamie, Inc. (In re Bldgs.by Jamie, Inc.), 230 B.R. 36, 43 (Bankr. D.N.J. 1998) (holding that trustee succeeded to debtor's right to assert alter ego claim because corporate debtor's interest in its alter ego's assets is property of the estate).

5. Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities, of . . . (3) any act . . . to exercise control over property of the estate . . ." 11 U.S.C. § 362(a). Accordingly, when claims against a

-9-

non-debtor "are property of the estate under section 541(a), any similar extraneous lawsuits brought by individual creditors will be subject to the automatic stay provision of 11 U.S.C. § 362(a)(3)." Baillie Lumber Co., LP v. Thompson (In re Icarus Holding, LLC), 391 F.3d 1315, 1319 (11th Cir. 2004); see also Steyr, 852 F.2d at 136 ("Since the alter ego claim . . . is 'property of the estate' within the meaning of § 541(a)(1) . . . the automatic stay applies" and "the trustee is given full authority over it.") (citations omitted).

6.  Numerous courts in this Circuit and elsewhere have found that successor liability claims such as those asserted in the Successor Liability Actions are property of the debtor's estate. See, e.g., Emoral, 740 F.3d 880-82 and n.3 (personal injury claimants' successor liability claims against transferee were property of the estate under both New York and New Jersey law); accord Wilton, 968 F.3d at 283 (claimant's derivative claims were property of the debtor's estate); Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc), 855 F.3d 84, 104 (2d Cir. 2017) (holding that the alter ego and successor liability claims of 4,300 toxic tort claimants against a non-debtor transferee were property of the debtor's estate under both Pennsylvania and Delaware law) (citing Rosener v. Majestic Mgmt., Inc. (In re OODC, LLC), 321 B.R. 128, 136-37 (Bankr. D. Del. 2005)); Sterne Agee Group, Inc. v. Robinson (In re Anderson & Strudwick, Inc.), No. 14-32679, Adv. No. 14-03175, 2015 WL 1651146, at *5 (Bankr. E.D. Va. Apr. 8, 2015) (holding Virginia law allows corporation to recover against its alleged successor based on the "weight of authority outside this Circuit" that "supports the conclusion that a successor liability claim constitutes property of the bankruptcy estate under Bankruptcy Code § 541(a)(1)"); Mitchell v. Greenberg (In re Creative Entm't, Inc.), No. 99-30485, Adv. No. 00-3114, 2003 Bankr. LEXIS 2468 at *28-29 (Bankr. W.D.N.C. May 27, 2003) (successor liability claim under North Carolina law became property of the estate under section 541(a) when

corporation's chapter 7 case was commenced) (citing In re Keene Corp., 164 B.R. 844, 853 (Bankr. S.D.N.Y. 1994)).

7. Consistent with the foregoing authority, any successor liability or similar "derivative" claims that are being or might be alleged by talc claimants against Janssen and Kenvue seek to exercise control over property of the Debtor's estate and are thus stayed by section 362(a)(3). Prosecution of such derivative claims is not proper without leave of this Court, which plaintiffs in the Successor Liability Actions did not obtain. See Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 570 (3d Cir. 2003) ("If the creditors then believe that a suit or other proper proceeding should be commenced for avoidance or recovery, they have the right to petition the bankruptcy court wherein the proceedings are pending for an order compelling the trustee to act, or for leave to prosecute the suit in the name of the trustee and on behalf of the estate.") (citation omitted). Given the application of the automatic stay to the claims alleged against Kenvue and Janssen in the Successor Liability Actions, the Debtor requests that the Court enter an order so confirming.

8. Even if the Successor Liability Actions were not automatically stayed by operation of section 362(a)(3) of the Bankruptcy Code, it is appropriate for the Court to enter a bridge order staying and enjoining the actions under sections 105(a) and 362(a) of the Bankruptcy Code. The claims asserted in the Successor Liability Actions are clearly Debtor Talc Claims,[10] which the plaintiffs have asserted against Janssen and Kenvue only in an effort to evade the effect of the automatic stay applicable to the Debtor. Moreover, given the imminent prospect of burdensome discovery on the meritless claims asserted in the Successor Liability

---

[10] For the avoidance of doubt, Debtor Talc Claims include all talc personal-injury claims and other talc-related claims allocated to the Debtor from Old JJCI in the documents implementing the 2021 Corporate Restructuring. The Debtor Talc Claims do not include talc-related claims for which the exclusive remedy is provided under workers' compensation statutes and similar laws.

-11-

Actions and numerous other actions throughout the country—***potentially including the imminent apex depositions of Kenvue's most senior executives***—the Debtor requests that the Court enter a bridge order temporarily staying and enjoining prosecution of the Successor Liability Actions against Janssen and Kenvue pending further argument at the PI Extension Hearing in two weeks, and this Court's ruling thereafter on the requested relief.

### Waiver of Memorandum of Law

9.      The Debtor respectfully requests that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtor relies on is incorporated herein and the Motion does not raise any novel issues of law.

### Notice

10.     This Motion has been served on: (a) the U.S. Trustee; (b) proposed counsel to the Talc Committee; (c) counsel to the Debtor's non-debtor affiliates, Holdco and J&J; (d) the legal representative for future talc claimants and her proposed counsel; (d) counsel to the Ad Hoc Group of Supporting Counsel; and (e) any other party entitled to notice. In light of the nature of the relief requested herein, the Debtor respectfully submits that no other or further notice need be provided.

### No Prior Request

11.     No prior request for the relief sought in this Motion has been made to this or any other court in connection with this chapter 11 case.

WHEREFORE, the Debtor respectfully requests that the Court: (a) enter an order, substantially in the form submitted herewith, granting the relief requested herein; and (b) grant such other and further relief to the Debtor as the Court may deem just and proper.

Dated: May 31, 2023	**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

-13-