MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
Clayton L. Thompson, Esq.
cthompson@mrhfmlaw.com
Suzanne M. Ratcliffe, Esq.
sratcliffe@mrhfmlaw.com
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922

*Counsel for Mesothelioma Plaintiff Katherine Tollefson
and Certain Mesothelioma Plaintiffs*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LTL MANAGEMENT LLC, | ) | BK Case: 23-12825-MBK |
| | ) | |
| Debtor. | ) | Adv. Pro. Case: 23-01092-MBK |

**MRHFM'S OBJECTION TO DEBTOR'S MOTION (I) TO EXTEND AND MODIFY THE PRELIMINARY INJUNCTION ORDER AND (II) FOR CONFIRMATION THAT SUCCESSOR LIABILITY ACTIONS ARE SUBJECT TO THE AUTOMATIC STAY**

There can be no injunctive relief for Johnson & Johnson or its non-debtor affiliates because there is *zero* probability of a successful "reorganization." Whether by this Court in three weeks or under mandate from the Third Circuit, this case will be dismissed because J&J forced LTL Management to file in bad faith, *again*.

LTL 2.0 admits it can—just as the Circuit found LTL 1.0 could—pay "all current and future claimants in full." *LTL Mgmt., LLC*, 64 F.4th 84, 109 (3d Cir. 2023). *See* Ex. 1,

1

Kim Dep., 6/1/23, 229.[1] LTL's Chief Financial Officer (Richard Dickinson) admits LTL 2.0 has the same ability to pay its bills as LTL 1.0. Ex. 2, Dickinson Dep., 4/17/23, 160–63. LTL's President (Robert Wuesthoff) says the value of the 2021 and 2023 Funding Agreements is the *same*. Ex. 3, Wuesthoff Dep., 5/30/23, 43–44. And John Kim, the Debtor's Chief Legal Officer, admits LTL can manage talc liabilities in the tort system for all time for less than $30 billion; LTL has sufficient funding to pay all its liabilities outside of bankruptcy. *See* Ex. 1, Kim Dep., 213–14, 218–20. *No* distress=*no* relief.

The Debtor says an injunction is "critical" to LTL's reorganization because without one, "the purpose of this chapter 11 case" would be defeated. *See* Debtor Motion, Adv. Pro. Dkt. 163-1, pg. 2.[2] What's the *purpose* of *LTL2*? The *same* as in *LTL1*: to "try to get in bankruptcy an equitable, efficient, full resolution of the talc liabilities." Ex. 1, Kim Dep., 33; Ex. 3, Wuesthoff Dep., 48–49 ("to permanently, equitably, and efficiently resolve all current and future talc cases—claims.").

The Third Circuit already rejected this *purpose*, holding that a desire to "comprehensively resolve litigation" is not grounds to access bankruptcy's safe harbor in

---

[1] Mr. Kim testified as follows when read the Third Circuit's opinion (Kim Dep., 228–29): "Q: 'This comports with the theme LTL proclaimed in this case from day one: it can pay all current and future talc ·claimants in full.' Did I read that correctly? A: You did read that correctly. Q: And, sir, do you recall that that part, or at least the second part of that that I've highlighted, that was one of the additions that the Third Circuit made in its·amendment to its opinion on March 31st? Do you remember that? A.·I do. Q.·And you would agree with me that LTL 2.0 can also pay all current and future claimants in full, correct? A.·I agree."
[2] MRHFM's plaintiffs join the objections of the Office of the United States Trustee (Adv. Pro. Dkt. 170) and TCC (Adv. Pro. Dkt. 169), and adopt all arguments and evidence therein.

the absence of financial distress. *LTL Mgmt.*, 64 F.4th at 93. Good faith is required, and Johnson & Johnson and LTL don't have any.

The Debtor—which owes a fiduciary duty to the Estate—stridently asserts it has all liability for all talc products for all time, regardless of what New Jersey law says. LTL likewise insists it must hurt its own financial position by indemnifying Johnson & Johnson for the latter's independent non-derivative state tort liability.[3] Now, LTL adds that claims against non-debtors Kenvue, Janssen, and HoldCo ("Affiliates") must also be enjoined because the Debtor is liable for those, too. After all, says Mr. Kim, "it would make no sense" for the Debtor to resolve its talc liabilities "without a complete resolution of all claims against J&J [ ] and other parties." Ex. 1, Kim Dep., 127–28.

That's not how fiduciary duties work. If Johnson & Johnson or the Affiliates have separate liability for Johnson's Baby Powder—as the cancer plaintiffs claim—any recovery from those non-debtors would *reduce* what LTL owes to claimants in this bankruptcy and thus increase the value of the Estate. But the Debtor doesn't care about creditors, it does as it's told by Johnson & Johnson. LTL gave up its rights under the 2021

---

[3] Mr. Dickinson, the CFO, didn't bother to do any analysis of what portion of the alleged $8.9 billion "settlement" reflects LTL's liability or J&J's, he just insists that LTL must pay the bill. Ex. 4, Dickinson Dep., 5/31/2023, 108–11. The Debtor didn't perform any analysis on this issue before its second bad faith bankruptcy. Ex. 1, Kim Dep., 226. Nor did LTL seek to have non-debtor retailers, who also have independent liability, contribute funding to a trust. Kim Dep., 192. LTL doesn't care what state law says—how it apportions fault between co-defendants, for example—it's "all one liability" as far as the Debtor is concerned. Kim Dep., 168, 192–93.

Funding Agreement for no consideration; giving away $61 billion disqualifies LTL's officers and lawyers from managing the Estate. *See* 11 U.S.C. § 1104.

LTL says a 90-day extension of the injunction would be consistent with this Court's practice in *LTL1* and is "critical" for resolving the case. Motion, ¶ 13. As to "consistency with this Court's practice," that argument would be more persuasive in a case where this Court's practice didn't spark categorical reversal on appeal.

As to the Debtor's vague assurances about "progress," LTL is delusional at best and lying at worst. The Debtor says it's "continuing to make substantial progress in pursuing a fair and equitable resolution of talc-related claims." Motion, ¶ 15. Erik Haas, J&J's Worldwide Vice President of Litigation, publicly disparages the "small minority" of "plaintiffs' firms" that oppose the Company's Plan (Dkt. 525) on the ironically named "FactsAboutTalc" website. But when asked who qualifies as a "talc claimant" and how much an individual "talc claimant" would receive under the Plan, Mr. Haas prefers to scold rather than answer.[4] Mr. Kim can't provide specifics either.

On the Plan's face, it's unknowable what individual plaintiffs will receive until *after* the Trust is established (Dkt. 525-13, 36):

---

[4] Mr. Haas' deposition transcript will be filed after confidentiality designations are provided. The same is true for the deposition of Mr. Onder.

4

> **7.1.2 Description & Application of Points Valuation System**
>
> **A.    In General**
>
> Promptly after the Trust is established, the Trustees, with the consent of the Payor, the TAC, and the FCR, shall establish an initial Point Value for Individual Claims (the "Initial Point Value"). This Initial Point Value shall be calculated on the basis of the initial trust claim submissions, an estimate of future submissions, and the claim valuation procedures outlined in these TDP. The Trust was established with the goal of achieving a Point Value of one dollar ($1) per point and the Debtors believe the Initial Point Value will be between fifty cents ($0.50) and two dollars ($2) per point. Given the uncertainty associated with Individual Claims, and in recognition of the fact that the Trust may increase the Point Value in the future, the Trust shall take a conservative posture in setting the Initial Point Value, and may set a separate Point Value for Mesothelioma and Ovarian Cancer claims.

This means an individual plaintiff, today, *cannot* know what he/she would receive under the Plan because the Debtor "believes" the dollar range per point would be $0.50 to $2.00. That's a 400% variance, and if more claims are filed than anticipated—almost certainly to happen with tort system hurdles removed—a dip below $0.50 per point is likely.

No wonder members of the Ad Hoc Group of Supporting Counsel ***don't*** support this Plan. Majed Nachawati, who purportedly represents close to 5,000 "claimants" (Dkt. 470-1) (but who doesn't know how many of these are ovarian cancer or non-ovarian gynecological cancers) testified that the AHC and J&J are "working with the issues with the idea of a pathway to resolution that I can support and recommend to my clients…" Ex. 5, Nachawati Dep., 5/24/2023, 164. Will he recommend this Plan to his clients? Mr. Nachawati can't "fortune tell." *Id.*, 165. James Onder, who represents over 21,000 "claimants" (Dkt. 470-1), testified that the filed Plan will ***not*** be voted on. That's 26,000

5

"claimants" removed from the "supporting" category (putting aside what disease, exposure, and confirming medical evidence any of them do or do not have).

The Debtor says the New Jersey state court "indicated that it would not dismiss the meritless claims asserted" against the Affiliates. Motion, 9 n.12. Superior Court Judge Ana Viscomi[5] determined, under New Jersey state law, that "a full record must be developed based on appropriate discovery as to the successor liability issue." Ex. 6, Order on Motion to Dismiss, 3. *See also* Ex. 7, Order on Depositions. Whether New Jersey companies have state tort liability under New Jersey law belongs before a New Jersey state court judge of general jurisdiction.

LTL says the FCR and mediators have been appointed and a mediation protocol is in place "for the parties to address all issues in this case, including the Debtor's proposed plan." The appointment of an FCR, even one interested in protecting future plaintiffs (which Ms. Ellis isn't), doesn't cure bad faith. Nor do mediators. The Debtor's tired trope of "progress" being made is objectively untrue and does not bestow subject matter jurisdiction on this Court.

Jones Day has been touting "progress" for sixty-four months in Bestwall. But the only notable effects on the American justice system are a pause on Constitutionally-

---

[5] Judge Viscomi has overseen several mesothelioma trials involving J&J's talc (including both plaintiff and defense verdicts), and is in the process of consolidating a group of twenty plaintiffs with pleural mesothelioma for a jury trial, if not enjoined by this Court. Large consolidations such as these cut directly against Johnson & Johnson's risible "thousands of years" talking point.

protected state tort litigation and sowing chaos in America's bankruptcy courts. This Court must end the chaos.

Sincerely:

**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**

_____

Clayton L. Thompson, Esq.
**MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC**
150 W. 30th Street, Suite 201
New York, NY 10001
(800) 358-5922
cthompson@mrhmflaw.com