**Exhibit B**



## \*\* CONFIDENTIAL \*\*

## Deposition of
## Michelle Ryan

**Date:** January 27, 2022

**RE: LTL MANAGEMENT LLC**

**No.** 21-30589 (MBK)

**Court Reporter:** CHERYL L. SANDECKI, CSR, RPR

Paszkiewicz Court Reporting
Phone: 618-307-9320
Toll-Free: 855-595-3577
Fax: 618-855-9513
Email: sarah@spreporting.com

Page 1

OFFICE OF THE UNITED STATES TRUSTEE
FOR THE DISTRICT OF NEW JERSEY


IN RE:

LTL MANAGEMENT LLC                No. 21-30589 (MBK)

   Debtor.


   VIDEOTAPED DEPOSITION OF MICHELLE RYAN, produced, sworn, and examined on behalf of the Talc Creditor Committee, January 27, 2022, between the hours of 9:02 a.m. EST and 5:03 p.m. EST of that day, before Cheryl L. Sandecki, Certified Shorthand Reporter.


         A P P E A R A N C E S:


   APPEARING VIRTUALLY:  New Jersey Action Insurers was represented by Ms. Wallis Granat of the law firm of Mendes & Mount, LLP, 750 7th Avenue, New York, NY 10019.

   APPEARING VIRTUALLY:  The Talc Creditor Committee was represented by Mr. John A. Bougiamas, as Co-Counsel, of Otterbourg PC, 230 Park Avenue, New York, NY 10169.

   APPEARING VIRTUALLY:  The Talc Creditor Committee was represented by Mr. Brian A. Glasser of the law firm of Bailey Glasser, LLP, 1055 Thomas Jefferson Street NW, Suite 540, Washington, DC 20007.

1                    (Whereupon, Ryan Deposition
2                    Exhibit 130 was marked for
3                    identification.)
4                    EXAMINATION
5    BY MR. KAHN:
6        Q.   And if I could have that scanned
7    through.
8             And my question is to you, Ms. Ryan, is
9    if you've ever seen this document before.  If
10   you go to the next page, please.  More.
11       MS. BROWN:  Can you see it, Michelle?
12       MR. KAHN:  There you go.  That should be
13   visible.
14       THE WITNESS:  Yes, I've seen this before.
15   BY MR. KAHN:
16       Q.   Okay.  And it's an announcement on
17   November 12th of 2021 of a potential spinoff of
18   JJCI business.  Would that be a fair statement
19   of what this document is?
20       **A.   Yeah, it was a press release to**
21   **announce our planned separation of our global**
22   **consumer business.**
23       Q.   And that would include JJCI's business?
24       **A.   Yes, that would include JJCI.**
25       Q.   When was the first time you heard of

```
 1   this proposed spinoff?
 2       A.   May 2019.
 3       Q.   So it's been sitting around for quite a
 4   while?
 5       A.   It's been analyzed for quite a while.
 6       Q.   When did you hear, if you did hear,
 7   that it looks like the spinoff is going to be a
 8   go?
 9       A.   Our board formally approved it in
10   October and I think probably after -- in about
11   -- throughout this year it started to become
12   more and more probable that it would happen.
13       Q.   When you say "this year," do you mean
14   2022 or --
15       A.   2020 -- I'm sorry, 2021.
16            Throughout 2021, as we had more
17   conversations internally and conversations were
18   had with our board, there seemed to be growing
19   acceptance or growing alignment that this was --
20   this was a good course of action for us.
21       Q.   Do you have an understanding as to why
22   it was believed within J&J that this was a good
23   course of action?
24       A.   Well, I think this document, although I
25   don't have it all totally known, but right there
```

| | |  |
|---|---|---|
| HIGHLY | Michelle Ryan | HIGHLY |
| CONFIDENTIAL | January 27, 2022 | CONFIDENTIAL |

Page 297

1  [as read]:  The separation designed to enhance
2  operational performance and strategic
3  flexibility, benefiting patients and consumers
4  and unlocking value for all stakeholders.
5          So it was a strategic decision as our
6  innovative healthcare businesses in
7  pharmaceuticals and medical device have really
8  gone down a different path.  I mean, 30 years
9  ago pharmaceuticals were mainly chemical drugs
10 and our consumer business had a -- had -- a
11 pretty large portion of that was OTC drugs.  So
12 there were synergies there.
13         But our pharmaceutical business has
14 gone more and more toward biologics and things
15 like that.  And the synergies that exist between
16 the two businesses have become much less and the
17 -- just the overall business models have really
18 diverged.  And so it was a belief that
19 separation was best for both companies and would
20 lead to the best outcomes ultimately for our
21 shareholders as well.
22    Q.   And you say that this was formally
23 approved in October of 2021.  Was this before --
24    A.   I think, I'm not positive.  I think.
25 I'm not sure when the formal approval was.

1    Q.   Okay.  Did it look like it was going to
2  be a go before you signed the documents that
3  were involved with the corporate restructuring
4  we've been talking about?
5    A.   Oh, yes, yeah.  Yes.  I -- yes.  We
6  were on the path -- there were two very distinct
7  work streams and discussions.  But the
8  separation of our consumer group was -- was on
9  the track and moving down the track and kind of
10 irrespective of the restructuring and LTL and
11 all of that.
12   Q.   Was one of the purposes of the
13 corporate restructuring formation of LTL and
14 capping talc liabilities, in part, to enhance
15 the value of the global consumer business?
16   A.   No, no, not at all.  It -- because
17 really J&J had choices on how to manage the talc
18 liability, and so it was -- again, they were two
19 irrespective pieces.
20        So, no, it wasn't -- it -- the -- the
21 restructuring and LTL and, you know, what it
22 ultimately -- would we have -- would LTL be
23 bankrupt, that was not part of any of the
24 discussions that we had as we talked about the
25 separation of consumer.

HIGHLY                         Michelle Ryan                          HIGHLY
CONFIDENTIAL                  January 27, 2022                   CONFIDENTIAL

Page 311

1     OFFICE OF THE UNITED STATES TRUSTEE
          FOR THE DISTRICT OF NEW JERSEY
2

3
   IN RE:
4
   LTL MANAGEMENT LLC              No. 21-30589 (MBK)
5
        Debtor.
6

7

8

9

10        I, MICHELLE RYAN, being first

11   administered an oath, say that I am the deponent

12   in the aforesaid deposition taken on

13   January 27, 2022; that I have read the foregoing

14   transcript of my deposition, and affix my

15   signature to same.

16
                    MICHELLE RYAN
17

18

19
   Subscribed and sworn to
20 before me this         day
   of                  , 2022.
21

22

23 Notary Public

24

25

Page 312

1  CERTIFICATE OF CERTIFIED SHORTHAND REPORTER

2

3             I, Cheryl L. Sandecki, the officer
4  before whom the foregoing deposition was taken,
5  do hereby certify that the foregoing transcript
6  is a true and correct record of the testimony
7  given; that said testimony was taken by me
8  stenographically and therefore reduced to
9  typewriting under my direction; that reading and
10 signing was requested; and that I am neither
11 counsel for, related to, nor employed by any of
12 the parties to this case and have no interest,
13 financial or otherwise, in its outcome.
14             IN WITNESS WHEREOF, I have here unto
15 set my hand this 28th day of January, 2022.

16

17        _____
18        CHERYL L. SANDECKI, RPR, CSR, CLR
          CERTIFIED SHORTHAND REPORTER
19        NEW JERSEY CCR NO.:  30XI00241500

20

21

22

23

24

25