**Exhibit F**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| Caption in Compliance with D.N.J. LBR 9004-1(b)<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Local Counsel to the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael Winograd, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY  10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Sharon I. Dwoskin, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>sdwoskin@brownrudnick.com<br>One Financial Center<br>Boston, MA  02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **BAILEY GLASSER LLP**<br>Brian A. Glasser, Esq.<br>Thomas B. Bennett, Esq.<br>bglasser@baileyglasser.com<br>tbennett@baileyglasser.com<br>105 Thomas Jefferson St. NW, Suite 540<br>Washington, DC  20007<br>Tel: (202) 463-2101<br>Fax: (202) 463-2103<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* | **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY  10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |

| **PARKINS LEE & RUBIO LLP**<br>Leonard M. Parkins, Esq.<br>Charles M. Rubio, Esq.<br>lparkins@parkinslee.com<br>crubio@parkinslee.com<br>Pennzoil Place<br>700 Milan St., Suite 1300<br>Houston, TX  77002<br>Tel: (713) 715-1666<br>*Proposed Special Counsel to the Official Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>jmassey@masseygail.com<br>100 Main Ave. SW, Suite 450<br>Washington, DC  20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Special Counsel for the Official Committee of Talc Claimants* |
|---|---|
| In Re:<br><br>**LTL MANAGEMENT, LLC,**<br><br>                                   Debtor. | Chapter 11<br><br>Case No.:  21-30589(MBK)<br><br>Honorable Michael B. Kaplan<br><br>Hearing: ***February 15, 2022, at 10:00 a.m***, |

# MOTION OF THE OFFICIAL COMMITTEE OF
# TALC CLAIMANTS TO DISMISS DEBTOR'S CHAPTER 11 CASE

The Official Committee of Talc Claimants (the "Committee") of LTL Management LLC, ("LTL" or the "Debtor"), by and through its undersigned proposed counsel, respectfully moves to dismiss the Debtor's Chapter 11 case for cause, pursuant to Section 1112(b) of the Bankruptcy Code (the "Motion").  In support of this Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.  Johnson & Johnson[1] ("J&J") created this Debtor on the eve of its bankruptcy filing and initiated and prosecutes this Chapter 11 case for one purpose and one purpose alone—to manage the litigation associated with J&J's decades-long manufacture and sale of a carcinogenic

---

[1]  Unless otherwise indicated, capitalized terms used herein but not defined shall have the meaning ascribed to them in the *Declaration of John K. Kim in Support of First Day Pleadings* [D.I. 5] (the "Kim Declaration") or in the Informational Brief of LTL Management LLC [D.I. 3] (the "Debtor's Information Brief").

2

preference to file bankruptcy in this district, likely due to the Fourth Circuit's two-prong dismissal standard . . . .").

25.  Immediately upon the commencement of its case, the Debtor began a campaign to halt all ongoing litigation against its non-debtor affiliates, including direct claims against J&J.  On October 18, 2021, LTL filed the *Debtor's Emergency Motion to Enforce the Automatic Stay Against Talc Claimants Who Seek to Pursue Their Claims Against the Debtor and Non-Debtor Affiliates* [D.I. 44] (the "Emergency Stay Motion"), seeking entry of interim and final orders applying the Section 362(a) automatic stay to all talc-related claims asserted against J&J and New JJCI.  The Emergency Stay Motion entirely ignores the direct liability of J&J and JJCI, and states incorrectly that "the commencement or continuation of the talc claims against Old JJCI or J&J is for the purpose of liquidating and recovering claims against the Debtor."  Id. at 2.  Just one day later, before its first-day hearing (and before the Debtor had been granted any injunctive relief), J&J filed a Form 8-K misrepresenting the automatic stay and preemptively announcing that "*all pending cosmetic talc cases will be stayed*" as a result of the Debtor's filing (emphasis added).[9]  Even before the North Carolina Court entered any injunctive relief, J&J filed notices of the automatic stay in courts across the country.  This callous disregard for dying victims who in their final days seek justice and help in taking care of their families they soon will leave behind is truly beyond the pale.

26.  The United States Bankruptcy Court for the Western District of North Carolina (the "North Carolina Court") denied the Emergency Stay Motion and directed the Debtor to proceed

---

[9]  Johnson & Johnson Current Report on Form 8-K, filed on October 19, 2021, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/200406/000020040621000067/jnj-20211019.htm.

by adversary proceeding[10] and to file a complaint seeking the injunctive relief requested in the Emergency Stay Motion, and on October 21, LTL filed its complaint [Adv. D.I. 1] (the "Complaint").  The Complaint seeks to stay all talc-related claims against 490 non-debtor affiliates, including J&J and New JJCI (along with retailers and insurers), and seeks a preliminary injunction and a temporary restraining order against talc claimants.

27.    On November 12, 2021 (just two days after the North Carolina Court transferred the Chapter 11 case to this Court), J&J announced[11] a plan to spin off its Consumer Health business (largely New JJCI) from J&J, creating additional barriers between tort claimants and the assets that should be available to satisfy their claims.  This second spin-off also throws into question which of New JJCI and J&J should be the primary obligor under the Funding Agreement, which will likely lead to additional complications under the Funding Agreement.

## RELIEF REQUESTED

28.    The LTL Chapter 11 case is not a legitimate good faith filing.  The Official Committee seeks an order of this Court dismissing the Debtor's Chapter 11 case, with prejudice, pursuant to Section 1112(b) of the Bankruptcy Code.

---

[10]    Adv. Pro. No. 21-03032.  Pleadings and submissions filed in the preliminary injunction adversary proceeding shall be referenced as "Adv. D.I."  The Committee has asked the United States District Court for the District of New Jersey to withdraw the reference of the adversary proceeding.

[11]    Johnson & Johnson, Current Report on Form 8-K, filed on November 15, 2021, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/200406/000020040621000072/jnj-20211115.htm.

13

the Debtor filed this Chapter 11 case to take advantage of a particular provision in the Bankruptcy Code, that is, the section 524(g) channeling injunction. The desire to use a particular provision in the Bankruptcy Code is insufficient *by itself* to establish good faith to survive dismissal, as the Third Circuit has held:

> The Bankruptcy Court did not hold that Integrated's desire to take advantage of the § 502(b)(6) cap established ***good*** faith. Instead, the Bankruptcy Court held that "it does not establish ***bad*** faith for a debtor to file a chapter [11] case for the purpose of taking advantage of provisions which alter pre-petition rights, including altering the rights of a landlord under State law." We agree. Indeed, we believe it to be a truism that it is not bad faith to seek to avail oneself of a particular protection in the Bankruptcy Code–Congress enacted such protections with the expectation that they would be used. In re James Wilson Assocs., 965 F.2d 160, 170 (7th Cir.1992) ("It is not bad faith to seek to gain an advantage from declaring bankruptcy–why else would one declare it?") . . . ***The far more relevant question is whether a desire to take advantage of a particular provision in the Bankruptcy Code, standing alone, establishes good faith. We hold that it does not.***

Id. at 127 (emphasis added).

49.     In other words, the desire to use Section 524(g) is not by itself a "valid bankruptcy purpose" sufficient to establish good faith. LTL bears the burden of establishing good faith, and gesturing toward a channeling injunction is not sufficient.

### D. Debtor's And J&J's Actions And Admissions Demonstrate Subjective Bad Faith.

50.     "While the good faith inquiry is more an objective analysis of whether the debtor has crossed the equitable limitations on bankruptcy filings, a debtor's subjective intent may also be relevant in considering the totality of the circumstances." In re Rent-A-Wreck of America, Inc., 580 B.R. 364, 382 (Bankr. D. Del. 2018). Although discovery is underway, the following actions and admissions demonstrate subjective bad faith:

27

- J&J improperly used the Texas Business Organizations Code's divisive merger provisions to establish LTL for the purpose of hindering and delaying a single group of creditors for its own benefit.

- Just last year, J&J moved for relief from the automatic stay in the Imerys cases in order to continue litigating in the tort system, stating "J&J, of course, has the financial wherewithal to defend these claims and satisfy any successful talc claim in full." See In re Imerys Talc America, Inc. et al., Case No. 19-10289 (Bankr. D. Del. Mar. 20, 2020) (LSS), *Johnson & Johnson's Motion Pursuant to 11 U.S.C. § 362(d)(1), Fed. R. Bankr. P. 4001, and Local Bankruptcy Rule 4001-1 for Entry of Order Modifying the Automatic Stay to Permit J&J to Send Notice Assuming Defense of Certain Talc Claims and Implement Talc Litigation Protocol* [D.I. 1567], ¶¶ 4, 41, 45. Subsequently, J&J reiterated its demand to defend talc claims against Imerys at trial because J&J "prefers to defend the safety of its products (and the core causation issues) in open court." See In re Imerys Talc America, Inc. et al., Case No. 19-10289 (Bankr. D. Del. May 19, 2020) (LSS), *Johnson & Johnson's Omnibus Reply in Support of J&J's Motion for Entry of Order Modifying Automatic Stay to Implement Talc Litigation Protocol* [D.I. 1769], ¶¶ 2-4. Now, after the Supreme Court refused to reconsider the Ingham verdict, the Debtor and J&J have changed their tune.

- J&J "killed" Old JJCI and "resurrected" an identical New JJCI to give the appearance that no surviving entity would remain to be secondarily liable on the liability assigned to LTL.

28

- The Debtor misrepresents that the Funding Agreement "ensure[s] that [LTL] has at least the same, if not greater, ability to fund talc-related claims and other liabilities as Old JJCI had before the restructuring." This is not accurate, as described above.

- The Debtor and J&J have repeatedly misrepresented the scope of the automatic stay, and the orders of the North Carolina Court in its securities filings and in the notices of automatic stay that the Debtor filed in courts around the country:

  o On October 19, 2021, before its first-day hearing and before the Debtor had applied for, let alone been granted, any injunctive relief, J&J filed a Form 8-K misrepresenting the automatic stay and preemptively announcing that "*all pending cosmetic talc cases will be stayed*" as a result of the Debtor's filing.[22]

  o As but one example of the Debtor's and J&J's misrepresentations, in <u>Mississippi v. Johnson & Johnson</u>[23], the Mississippi chancery court ordered briefing on the applicability of the Debtor's automatic stay to an action brought by the Mississippi Attorney General against J&J. The Debtors and J&J filed a *Supplement to Reply in Support of Defendant's Notice of Bankruptcy Filing*, in which they specifically represent that "the Bankruptcy court held the automatic stay applied to prohibit the commencement or continuation of any action seeking to hold LTL, Old JJCI, J&J and a number of other entities liable on account of the Enjoined Talc Claims." To the contrary, the North Carolina

---

[22] Nov. 4, 2021 Hr'g Tr. at 269:6-270:9; Johnson & Johnson Current Report on Form 8-K, filed on October 19, 2021.

[23] Case No. 25CH1:14-cv-01207 [Docket No. 393] (Miss. Ch. Nov. 26, 2021).

Court's *Order Granting the Debtor's Request for Preliminary Injunctive Relief* [Adv. D.I. 102] (at ¶ 7) expressly ruled that "governmental units . . . are not Defendants in this proceeding. The relief granted herein . . . shall not apply to restrict or enlarge the rights of the Debtor or any governmental unit under applicable bankruptcy law and all such rights are hereby preserved."

- The Debtor wrongfully contends that, as a result of the divisive merger, it alone bears the entirety of the liability for talc-related personal injury cases. See, e.g., *Debtor's Motion for an Order (I) Declaring that the Automatic Stay Applies to Certain Actions Against Non-Debtors or (II) Preliminarily Enjoining Such Actions and (III) Granting a Temporary Restraining Order Pending a Final Hearing* [Adv. D.I. 2] at 13, 14 (describing the "Debtor Talc Claims" by stating: "Old JJCI is responsible for all claims alleging that Johnson's Baby Powder and other talc-containing products cause cancer or other disease" and that the "Debtor Talc Claims are asserted in virtually every case against both the Debtor and J&J . . . [and] seek to hold the Debtor and J&J jointly and severally liable for the Debtor Talc Claims."). In fact, and as described in the Committee Initial Statement, juries have repeatedly found that J&J has individual and direct tort liability, separate and apart from Old JJCI. See, e.g., Ingham, 68 S.W.3d 663.

- After this Chapter 11 case was transferred to less favorable (for J&J) venue, J&J announced a new plan to spin off its Consumer Health Business, creating additional delays and hurdles for tort claimants. See Johnson & Johnson, Current Report on Form 8-K, filed on November 15, 2021. This spin-off throws into question which of New

30

JJCI and J&J should be the primary obligor under the Funding Agreement, creating a new delay and hindrance to payments under the Funding Agreement.

### E. Equitable Principles Weigh In Favor Of Dismissal.

51. In determining that this Chapter 11 case was not filed in good faith, this Court may also apply "the principles and rules of equity jurisprudence." See Pepper v. Litton, 308 U.S. at 304. A controlling stockholder, such as J&J, is a fiduciary:

> Their dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside.

Id. at 306-07 (citations omitted). In Pepper, the debtor's insider used technically legal maneuvers (including filing its own claim) to thwart the claim of a judgment creditor. The district court, exercising its equitable powers as a court of bankruptcy, disallowed the insider's claim on equitable grounds. The Supreme Court upheld that judgment, finding that "where on the facts the bankrupt has been used merely as a corporate pocket of the dominant stockholder", id. at 309, disallowance of a claim on equitable grounds is appropriate.

52. LTL is the "corporate pocket" into which J&J has purported to deposit all of its and Old JJCI's talc liability by means of the Texas Two-Step. J&J's corporate machinations involved no arm's-length negotiations or bargains, no independent directors or managers, and were done without consulting the talc claimants who are the only creditors being affected by these transactions. Thus, when evaluating with "rigorous scrutiny" the facts and circumstances

31

surrounding the Texas Two-Step and LTL's bankruptcy filing, the Court should apply equitable principles and conclude that this Chapter 11 case was not filed in good faith.

## II. Dismissal Is In The Best Interests of Creditors.

53. Once cause is established, "a bankruptcy court *shall* convert a case to Chapter 7 or dismiss the case 'unless the court determines that the appointment under section 1104(a) of a trustee or examiner is in the best interests of the creditors and the estate.'" In re Dr. R.C. Samanta Roy Inst. of Sci. Tech. Inc., 465 F. App'x 93, 96-97 (3d Cir. 2011) (quoting 11 U.S.C. § 1112(b)(1)). Here, dismissal, rather than the appointment of a trustee or examiner, is in the best interest of the Debtor's creditors, some of whom are literally dying as they wait to have their day in court. The vast majority of claims against the Debtor, New JJCI, and J&J are being administered through the MDL, and Chief District Court Judge Freda L. Wolfson has overseen that proceeding for more than five years. Dismissal would ensure not only that creditors be able to see that proceeding (and other proceedings) through, but also that any tort claimant who secures a judgment against J&J or New JJCI can enforce that judgment on assets held by those companies without being subject to the roadblocks and limitations of the Funding Agreement.

54. Because LTL is merely a special purpose vehicle created days before the Chapter 11 case was filed, for the purpose of sheltering its non-debtor affiliates, there is no benefit to be obtained by the appointment of an examiner or a trustee that could not also be served by dismissing the case. Given the short period of time in which LTL has existed, there is unlikely to be any role for an examiner. A trustee in this case would pursue estate claims against J&J and JJCI for the benefit of LTL's creditors, but LTL's creditors could pursue such claims on their own behalf if the case were dismissed.

Case 23-00622-MBK    Doc 682-7    Filed 08/06/23    Entered 08/06/23 23:29:28    Desc
Application of the Official Committee of Tort Claimants to Dismiss Debtors    Page 33 of 33
Exhibit T alc Page 12 of 12

## CONCLUSION

Based on the foregoing, the Committee respectfully requests that the Court dismiss the Debtor's Chapter 11 case with prejudice, and grant such other and further relief as appropriate.

Respectfully submitted,

**GENOVA BURNS, LLC**

*/s/ Daniel M. Stolz*
By: _____

Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 533-0777
Facsimile: (973) 467-8126
Email: dstolz@genovaburns.com
Email: dclarke@genovaburns.com

*Local Counsel to the Official Committee
of Tort Claimants of LTL Management, LLC*