**Exhibit I**

# THE NEW TEXAS BUSINESS CORPORATION ACT MERGER PROVISIONS

## CURTIS W. HUFF*

|     |                                                                    |     |
| --- | ------------------------------------------------------------------ | --- |
| I.   | Introduction                                                      | 110 |
| II.  | General Statutory Framework                                       | 112 |
| III. | Mergers with Multiple Surviving Corporations                      | 114 |
|      | A. General Information and Purpose of Statute                     | 114 |
|      | B. Procedures for Effecting Mergers with Multiple Survivors or Divisions | 117 |
|      | C. Creditor's Rights in Mergers with Multiple Survivors           | 122 |
|      |    1. General Background                                          | 122 |
|      |    2. UFTA, UFCA and Bankruptcy Code Protections                  | 126 |
|      | D. Current and Future Applications                                | 134 |
| IV.  | Share Exchanges                                                   | 134 |
| V.   | Mergers and Share Exchanges with Entities Other Than Business Corporations | 139 |
| VI.  | Changes in Voting Requirements for Mergers                        | 145 |
|      | A. Elimination of Voting Rights of Nonvoting Shares in a Merger   | 145 |
|      | B. Elimination of Vote of Shareholders Where 20% or Less of Outstanding Participating and Voting Shares Are Issued in the Merger | 148 |
|      | C. Increase by the Board of Directors of the Required Vote for a Merger | 150 |
| VII. | Elimination of Dissenters' Rights for Certain Mergers             | 150 |
| VIII.| Effective Time of Merger                                          | 154 |
| IX.  | Approval of Board of Directors of Plan of Merger                  | 155 |
| X.   | Downstream Short-Form Mergers                                     | 156 |

---

* B.A., J.D., University of New Mexico; LL.M., New York University School of Law; Attorney at Law, Fulbright & Jaworski, Houston, Texas.

*ST. MARY'S LAW JOURNAL* [Vol. 21:109

C. *Creditor's Rights in Mergers with Multiple Survivors*

1. General Background

While the provisions permitting multiple surviving entities in a merger were intended to provide corporations with greater flexibility in structuring acquisition and restructuring transactions, they were not intended to have any material effect on the existing rights of creditors of the parties to a merger. The legislative history with respect to the 1989 TBCA amendments, as reflected in the bill analysis of the merger amendments of both the House and Senate of the Texas Legislature, notes that "[c]reditor's rights would not be adversely affected by the proposed amendment, and creditors would continue to have the protection afforded by the Uniform Fraudulent Transfer Act and other existing statutes that protect the rights of creditors."[43] To reflect this intent, the Legislature adopted an amendment to Article 5.15 of the TBCA which specifically states that "nothing contained in Part 5 of this Act shall ever be construed as affecting, nullifying or repealing the Anti-trust laws or as abridging any right or rights of any creditor under existing laws."[44]

The fact that the new merger provisions were not intended to materially affect the existing rights of creditors does not mean that creditors will not be affected by a merger under the TBCA. To the contrary, as in any merger or restructuring transaction involving the distribution to shareholders of cash, property, or indebtedness or in any other transaction involving distributions to shareholders of assets or obligations through stock purchases, dividends, or other distributions, a merger or restructuring transaction under the new merger provisions may alter and reduce the pool of assets to which a creditor may look to for repayment.[45] In this regard, if a claim of a creditor of

---

43. HOUSE BUS. & COM. COMM., BILL ANALYSIS, Tex. H.B. 472, 71st Leg. (1989); SENATE ECON. & DEV. COMM., BILL ANALYSIS, Tex. S.B. 608 71st Leg. (1989).

44. TEX. BUS. CORP. ACT ANN. art. 5.15 (Vernon Supp. 1990).

45. For example, many merger and acquisition transactions involve the acquisition of a corporation through what is commonly referred to as a leveraged buyout. In these transactions, the acquiring corporation generally will have nominal assets compared to the assets of the corporation to be acquired. The consideration for the shares acquired in the merger will in effect come from or be financed with the assets of the acquired corporation itself through existing cash or additional incurrences of indebtedness. An illustration of the economic effect to a creditor of an acquired corporation in this type of transaction would be as follows: An acquiring corporation forms an acquisition subsidiary with $1,000,000 in cash and no other assets or source of income. The corporation to be acquired has assets of $10,000,000 consisting of $3,000,000 in cash and $7,000,000 in fixed assets and unsecured liabilities of $3,000,000.

1989] NEW TBCA MERGER PROVISIONS 123

one corporation in a merger with multiple surviving entities is allocated to a different or new corporation in the merger, that creditor will generally only be entitled to look to the corporation or entity to which its claim is allocated and not to each surviving entity.[46] This result follows from the express language in Article 5.06 of the TBCA, which provides that, except as provided in the plan of merger or otherwise provided by law or contract, the party to which an obliga-

---

The acquiring corporation and the corporation to be acquired agree that the acquisition subsidiary will merge with the corporation to be acquired with the acquiring corporation's shareholders receiving $7,500,000 and the acquiring corporation receiving all the shares in the surviving corporation. To finance the merger, the acquisition subsidiary borrows $7,500,000 from a financial institution through a short-term "bridge" loan to be refinanced upon the consummation of the merger. Upon the consummation of the merger, the surviving corporation repays $2,000,000 of the bridge loan, refinances the remaining $5,500,000 of the bridge loan on a long-term basis and grants a mortgage on all of its assets to secure the repayment of the refinanced loan. As a result of the merger and the leveraged financing thereof, the combined net worth of the surviving corporation is reduced from $7,000,000 to $500,000 with the new creditors having a prior interest over the previous creditors and the shareholders of the acquired corporation receiving $7,500,000 from the assets of the acquired corporation. Although the acquired corporation's assets still exceed the existing claims against it, the transaction reduces the protective margin for the previous creditors and the cash or assets available for the operation of the business of the surviving corporation. Similar reductions in the assets available for the payment of creditors occur when a corporation spins off to its shareholders segments of its businesses having material assets or engages in a financial restructuring through substantial purchases of stock, extraordinary cash dividends or spin-offs of assets. The only difference in these situations from that of the leveraged buyout example above is that the assets distributed to shareholders are provided directly from the corporation, and the corporation itself borrows the funds that are distributed to shareholders rather than a third party. The effect on creditors, however, is the same in each case in that the pool of assets available for the payment of prior creditors is reduced. Although creditors are affected in each of these cases, their legal rights are not and the protections provided to them are those covenants and agreements which they may have negotiated to limit such transactions and material changes in the business of the corporation.

46. One significant exception to this result is where a liability of a corporation that survives a merger is allocated to another corporation. In this case, absent a novation by the creditor against the surviving corporation, both the surviving corporation and the entity to which the liability is allocated will be liable for the payment of the obligation. This result follows by virtue of the express language of articles 5.06 and 5.15 of the TBCA. These articles provide, in effect, that the existing rights of creditors will not be affected by the merger and a liability of a continuing entity to a creditor will not be extinguished as a result of a merger absent the consent of the creditor. However, as between the original debtor corporation and the entity to which the liability is allocated, the entity to which the liability is allocated will be the primary obligor. Thus, any repayment of the obligation by the original debtor corporation will be subject to a right of subrogation and repayment against the corporation to which liability was allocated and primarily liable by virtue of the merger. *See* TEX. BUS. CORP. ACT ANN. arts. 5.06A(3), 5.15 (Vernon Supp. 1990).

tion is allocated will be the party liable for that obligation.[47] That is not to say that the merger will adversely affect the legal rights of such a creditor or that the rights of that creditor would have been materially different if the transaction had been executed through a conveyance of assets and merger under prior law.[48] Rather, the creditor will continue to possess all the rights available to it under law and contract, including all interests in the property of the debtor securing the payment of the creditor's claim.[49] Additionally, all negative cove-

---

47. *Id.* art. 5.06A(3); *cf.* PA. CONS. STAT. ANN. § 1957(b)(2) (Purdon's 1989 Pamphlet). The Pennsylvania statute states:

[R]esulting corporations shall be free of the liabilities of the dividing corporation to the extent, if any, specified in the plan, if no fraud of corporate creditors, or of minority shareholders or shareholders without voting rights or violation of law shall be effected thereby, and if all applicable provisions of 13 Pa. Cons. Stat. Div. 6 (relating to bulk transfers) and all other applicable provisions of law are complied with.

PA. CONS. STAT. ANN. § 1957(b)(2) (Purdon's 1989 Pamphlet). The exceptions provided for in the Pennsylvania statute are implicit in the TBCA and are in effect incorporated therein through the laws prohibiting fraudulent transfers and conveyances. Consideration should be given, however, in the next legislative session to incorporate language in the TBCA similar to the above language in the Pennsylvania statute to remove any ambiguity as to such matters.

48. *See supra* note 45. The provisions of article 5.06 of the TBCA permitting the allocation of liabilities among multiple surviving entities in a merger is one of the most revolutionary aspects of the new Texas merger provisions and presents the possibility for structuring a broader range of transactions than were previously possible. A creditor whose liability is allocated to another corporation in a merger with multiple survivors could argue that the allocation of its liability to another entity adversely affects its interest. Such a creditor, however, is no more affected by such a merger than it would have been in a transaction where a portion of the assets of the corporation are sold or transferred to another entity and the liabilities of the corporation other than the liabilities owed to that creditor are paid by the corporation or assumed by another entity in connection with the transfer. The new merger provisions permit this type of transaction to occur directly without the necessity of having multiple conveyances of assets and assumptions of liabilities. In analyzing the rights of a particular creditor in a merger with multiple survivors, the transaction should not be viewed as a transfer of that creditor's claim to another entity. Rather, the transaction should be seen as an allocation and transfer of certain assets of the original corporation and the assumption of certain of the claims of other creditors by another entity with the entity to which the creditor's liability is allocated being considered for purposes of the creditor as the successor of the original corporation. Thus, as to any particular creditor, the effect of the merger is the same as if there were transfers of assets and payments of indebtedness by a single corporation. The protections that will be provided to a creditor in such a merger will include the applicable fraudulent transfer and conveyance laws as well as any covenants or agreements negotiated by such creditor with respect to mergers, dispositions of assets, changes in the character of the corporation's business and corporate existence, and the maintenance of minimum financial requirements by the corporation.

49. *See* TEX. BUS. CORP. ACT ANN. art. 5.06A(2) (Vernon Supp. 1990). Article 5.06A(2) of the TBCA provides that property allocated pursuant to a plan of merger will be allocated subject to any existing lien thereon. *Id.* Accordingly, notwithstanding the fact that an entity may not be allocated a particular liability, if that entity is allocated an asset which is

1989]                NEW TBCA MERGER PROVISIONS                125

nants and agreements relating to mergers and dispositions of assets, material changes in businesses and maintenance of corporate existence,[50] and all laws protecting the rights of creditors with respect to fraudulent conveyances, preferences and insolvency will remain in force and apply.[51]

---

subject to a lien securing the payment of that liability, the asset will remain subject to the lien and the creditor's rights with respect thereto. *Cf.* PA. CONS. STAT. ANN. § 1957(b) (Purdon's 1989 Pamphlet)(liens upon property of dividing corporation not impaired by division).

50. The primary protection provided to a creditor concerned about a possible diminution of assets through a distribution to shareholders, whether it be through a merger, spin-off, dividend, restructuring or leveraged buyout, is through the negotiation of adequate covenants and agreements restricting sales of assets and distributions and material changes in the business of the corporation and financial covenants assuring that the corporation will maintain minimum ratios sufficient to protect the interests of the creditor. While a negative covenant that solely restricts the sale of assets may not be breached if the corporation's assets are allocated pursuant to a merger, a covenant that would restrict the sale, conveyance or "other disposition" of an asset, would likely be violated through an allocation of assets to another entity in a merger. *See infra* note 69. Similarly, a covenant restricting mergers unless the successor corporation expressly assumes the liability owed to the creditor would not be violated solely by virtue of there being multiple survivors in the merger as long as one of the surviving entities assumes the liability in the merger. A violation, however, would occur if the successor corporation to which the liability is allocated does not satisfy the minimum requirements to be met by the "successor corporation." A merger in which different businesses of a corporation are split up among multiple entities or in which a surviving entity is an entity other than a corporation likely would violate a traditional covenant restricting material changes in the corporation's business. In the case of the creation of a noncorporate entity, the traditional covenant requiring the corporation to maintain its corporate existence would likely be violated. Thus, although existing contractual restrictions with respect to sales of assets, corporate existence and distributions and mergers should be reviewed in light of the possibility of multiple surviving corporations and entities in mergers, such restrictions generally should provide protection to creditors in a merger with multiple survivors to substantially the same extent such provisions would have provided them with protection had the same transaction been effected in a different form. Of course situations will exist where a transaction may be able to be effected through a merger with multiple survivors that could not have otherwise been effected as a sale of assets or a distribution to shareholders under the creditor's agreement with the debtor. These situations, however, are likely to be the exception rather than the rule.

51. In this regard, it should be noted that in the author's view the primary purpose of corporation laws should be to provide a flexible structure under which capital may be obtained and business organizations operated and not to provide additional protection for creditors. The protection of creditors' rights should be left to other statutes outside of the corporation laws that have been specifically adopted for that purpose. The imposition of restrictions in corporation laws aimed at protecting creditors whose interests are otherwise protected by contract and other statutes only results in undue restrictions on the organization and operations of corporations and the creation by corporations and investment bankers of complex transactions that ultimately avoid those restrictions. *See* Garrett, *Merger Meets the Common Law*, 63 TEX. L. REV. 1509, 1521 (1985). It is for these reasons that modern corporation laws generally have eliminated many of the provisions that were originally adopted to protect creditors. Examples include the elimination of the concept of par value and the requirement that dividends and distributions may only be paid from earned surplus. *See, e.g.*, TEX. BUS. CORP. ACT ANN.

ST. MARY'S LAW JOURNAL [Vol. 21:109

2. UFTA, UFCA and Bankruptcy Code Protections

Principal among the laws available to protect creditors in mergers with multiple survivors are the Uniform Fraudulent Transfer Act (the "UFTA"),[52] the Uniform Fraudulent Conveyance Act (the "UFCA")[53] and the United States Bankruptcy Code of 1978, as amended (the "Bankruptcy Code").[54] Currently 20 states, including Texas,[55] have adopted the UFTA,[56] 14 states have adopted the UFCA,[57] and the others have retained older forms of statutes patterned on the Statute of Elizabeth.[58]

Although the specific standards vary between the UFTA, the UFCA, and the Bankruptcy Code as to when a transaction will constitute a fraudulent transfer or conveyance, a transfer or conveyance of assets, or the incurrence of an obligation, will generally be subject to challenge as a fraudulent transfer or conveyance under three circumstances. First, if the debtor transfers assets or incurs an obliga-

---

arts. 2.38-1 to -4 (Vernon Supp. 1989)(changes in corporate share dividends and surplus requirements); DEL. CODE ANN. tit. 8, §§ 154, 170 (1974 & Supp. 1989)(corporate requirement changes); REVISED MODEL BUSINESS CORP. ACT § 6.01, 6.40 (1985)(authorized shares and distribution to shareholders).

52. UNIF. FRAUDULENT TRANSFER ACT, 7A U.L.A. 639 (1985) [hereinafter UFTA].

53. UNIF. FRAUDULENT CONVEYANCE ACT, 7A U.L.A. 427 (1985) [hereinafter UFCA].

54. 11 U.S.C. §§ 101-1330 (1982 & Supp. V 1987). Section 548 of the Bankruptcy Code relates and applies to fraudulent conveyances. *Id.* § 548.

55. *See* TEX. BUS. & COM. CODE ANN. §§ 24.001-.013 (Vernon 1987). Although the Texas UFTA version differs in certain respects from the UFTA, such differences are not material for purposes of the analysis of its application to merger transactions. Accordingly, references in this article to the application of the UFTA to various merger transactions shall be equally applicable to the application of the Texas version of such act.

56. UFTA table of jurisdictions wherein the UFTA has been adopted, 7A U.L.A. 120, 120 (Supp. 1989).

57. UFCA table of jurisdictions wherein the UFCA has been adopted, 7A U.L.A. 100, 100 (Supp. 1989).

58. The Statute of Elizabeth generally condemns conveyances by debtors as fraudulent only when made with the "intent" to "hinder, delay or defraud" creditors. However, many conveyances may harm creditors where there does not exist an actual intent to defraud on the part of the debtor. Thus, the courts in those jurisdictions which have adopted a form of the Statute of Elizabeth have utilized presumptions of law as to intent for circumstances that may not in fact warrant a finding of an intent to defraud. It is for this reason, that the drafters of the UFCA and the UFTA have sought to delineate those transactions which may harm creditors but which may not involve an actual fraud against creditors. *See* UFTA, 7A U.L.A. 427, 428 (1985); *see also* COLO. REV. STAT. § 38-10.117 (1982); CONN. GEN. STAT. ANN. § 52-552 (West 1960); ILL. ANN. STAT. ch. 59, ¶ 4 (Smith-Hurd Supp. 1989)(statutes which contain form of Statute of Elizabeth).