**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

| | |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge: Michael B. Kaplan |

**DEBTOR'S OBJECTION TO MOTION SEEKING
RELIEF FROM THE AUTOMATIC STAY, TEMPORARY
RESTRAINING ORDER AND ANTICIPATED PRELIMINARY INJUNCTION**

The above-captioned debtor (the "Debtor") files this objection to the *Motion by Movant Anthony Hernandez Valadez for an Order (I) Granting Relief from the Automatic Stay, Second Amended Ex Parte Temporary Restraining Order, and Anticipated Preliminary Injunction, and (II) Waiving the Fourteen Day Stay Under Federal Rule of Bankruptcy*

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

NAI-1536599960

*Procedure 4001(a)(3)* [Dkt. 71] (the "Motion") filed by Anthony Hernandez Valadez, now known as Emory Valadez (the "Movant").[2]

**Preliminary Statement**

The Debtor commenced this chapter 11 case with the support of thousands of talc claimants and an agreement on the material terms of a plan of reorganization that would permanently resolve all its current and future talc-related claims. That agreement is reflected in a series of plan support agreements (collectively, the "Plan Support Agreements") among the Debtor, Johnson & Johnson ("J&J"), the Debtor's direct parent company ("Holdco"), and counsel representing thousands of talc claimants. Pursuant to the Plan Support Agreements, the Debtor, J&J and Holdco have committed to fund $8.9 billion net present value to a trust for the benefit of talc-related claims under a plan of reorganization—which, if approved, would be the largest settlement ever reached in an asbestos bankruptcy case.[3] They have further agreed to move quickly to seek confirmation of the proposed plan and, in particular, use commercially

---

[2] The Debtor understands that the Movant has changed the Movant's name to Emory Valadez and prefers the pronouns they/them/their.

[3] Compare In re All Matters Related to N. Am. Refractories Co., 647 B.R. 466, 473 (Bankr. W.D. Pa. 2022) (North American Refractories Co. trust valued at $6.32 billion as of the trust's effective date); Form 8-K filed by USG Corp. on Dec. 21, 2006, EX-99.1 (value of fully funded trust $3.95 billion); Mt. McKinley Ins. Co. v. Pittsburgh Corning Corp., 518 B.R. 307, 314 (W.D. Pa. 2014) ("Fully funded [ ] trust will control assets worth more than $3 billion."); *Annual Report and Account of the WRG Asbestos PI Trust for the Fiscal Year Ending December 31, 2014*, Ex. 1, at 9, In re W.R. Grace & Co., No. 01-01139 [Dkt. 32559], (Bankr. D. Del. Apr. 29, 2015) (as of trust's effective date, trust valued at $3.1 billion); *Notice of Filing of the DII Industries LLC Asbestos PI Trust's Annual Report for the Year Ending December 31, 2006*, Ex. 1.A, at 3, In re Mid-Valley, Inc., No. 03-35592 [Dkt. 2686], (Bankr. W.D. Pa. Apr. 30, 2007) (trust received $2.5 billion in assets at trust's inception); see also, Lloyd Dixon, et al., RAND Institute for Civil Justice, Asbestos Bankruptcy Trusts: *An Overview of Trust Structure and Activity with Detailed Reports on the Largest Trusts* (2010) (showing value of trust for every active and proposed section 524(g) trust and indicating that the following asbestos trusts received the largest amounts of funding: (1) the North American Refractories Company Asbestos Personal Injury Settlement Trust ($6.32 billion) (id. at 137); (2) the United States Gypsum Asbestos Personal Injury Settlement Trust ($3.96 billion) (id. at 169); (3) the Pittsburgh Corning Corporation Asbestos Personal Injury Settlement Trust ($3.41 billion) (id. at 149); (4) the WRG (W.R. Grace & Co.) Asbestos PI Trust ($2.98 billion) (id. at 183); and (5) the DII Industries, LLC Asbestos PI Trust ($2.51 billion) (id. at 91). The Debtor is unaware of any section 524(g) trust established since the report's publication that received a larger amount of funding.

Document    Page 3 of 19

reasonable efforts to finalize and file a plan consistent with the terms of the Plan Support Agreements by May 14, 2023 (less than four weeks from now), or as soon thereafter as is feasible. Given its unprecedented commitment to fund a trust and the significant claimant support it already has received, the Debtor is optimistic that the proposed plan will be confirmed.

Despite this significant progress towards an equitable and efficient resolution of the Debtor's talc-related claims, the Movant once again seeks to lift the stay to proceed to an immediate trial of the Movant's talc claim in counsel's favored forum of Alameda County, California while all other claimants remained stayed. The Movant sought essentially the same relief through a variety of motions, applications, status reports and other briefs filed in the Debtor's prior chapter 11 case (the "2021 Chapter 11 Case"). See, e.g., No. 21-30589, Dkts. 2348, 2469, 2736, 2979, 3489, 3545, 3698, 3741. The Court ultimately granted the Movant's lift stay motion only after the Third Circuit issued its opinion directing this Court to dismiss the 2021 Chapter 11 Case. See No. 21-30589, Dkt. 3771. At that time, in the Court's view, the "pendulum had swung" away from the Debtor in terms of the likelihood of a successful reorganization in that case. No. 21-30589, Hr'g Tr., Feb. 14, 2023, at 41:12-22.

The circumstances are starkly different now. The pendulum has swung firmly back in favor of providing the Debtor with an opportunity to resolve this chapter 11 case through a plan of reorganization because of the breadth of support for a plan that contains the terms set forth in the Plan Support Agreements, including unprecedented trust funding. Lifting the stay to permit the Movant to proceed with trial would disrupt and potentially jeopardize the Debtor's reorganization efforts for the several reasons set forth herein. Thus, relief from the automatic

NAI-1536599960

stay, the temporary restraining order or any preliminary injunction entered by this Court should be denied.[4]

## Relevant Background

*The 2021 Chapter 11 Case and the Post-Dismissal Lift Stay Motion and Order*

1. On October 14, 2021, the Debtor commenced the 2021 Chapter 11 Case. On January 30, 2023, a panel of the Third Circuit issued an opinion directing this Court to dismiss the 2021 Chapter 11 Case. See In re LTL Mgmt., LLC, 58 F.4th 738 (3d Cir. 2023) (the "Third Circuit Opinion"). On February 2, 2023, the Movant's counsel filed the Movant's *Memorandum of Law in Support of His Motion for an Order Granting Relief from the Automatic Stay and Preliminary Injunction, Filed on May 24, 2022, and Status Report* ("Post-Dismissal Lift Stay Motion") [No. 21-30589, Dkt. 3698] seeking substantially the same relief sought by the Motion. On February 13, 2023, the Debtor filed its objection to the Post-Dismissal Lift Stay Motion. On February 14, 2023, the Court held a hearing on the Post-Dismissal Lift Stay. At the hearing the Court stated:

> The pendulum has swung. And in balancing the harms, the Court is less deferential to the reorganization needs of the debtor and must be in light of the concerns—whether or not the Court agrees with the circuit, but with the concerns laid out in the circuit's opinion. So, when this Court now weighs the balance of the harms and takes into account the burdens placed on this particular plaintiff versus the need for the continued stay in support of continued reorganization efforts, the burden now has shifted a bit, and in so doing, the Court deems it appropriate to grant stay relief to the plaintiff in this regard.

No. 21-30589, Hr'g Tr., Feb. 14, 2023, at 41:12-22. The Court went on to note:

> Should en banc review be made available, should the matter proceed to the Supreme Court, the debtor or interested parties or J&J are free to come back to me–again, the pendulum then shifts again–to seek

---

[4] The remainder of the Motion contains wholesale attacks on the power of this Court to grant the Debtor injunctive relief or extend the automatic stay, which are irrelevant to a lift stay request and ignore this Court's prior rulings and Third Circuit precedent.

-4-

> a further stay with respect to this litigation. And I'm only ruling on this litigation at this point. So with those reservations and precautions, I believe the matter is resolved.

No. 21-30589, Hr'g Tr., Feb. 14, 2023, at 43:14-22.

2. On February 17, 2023, this Court entered an order granting the Movant's Post-Dismissal Lift Stay Motion (the "Post-Dismissal Lift Stay Order"). [No. 21-30589, Dkt. 3771].

3. On April 4, 2023, at the direction of the Third Circuit, the Court entered the *Order (I) Dismissing Debtor's Chapter 11 Case Pursuant to § 1112(b); (II) Establishing Procedures With Respect to Requests for Compensation; and (III) Granting Related Relief* [No. 21-30589, Dkt. 3938].

***The PI Motion and the TRO***

4. On April 4, 2023 (the "Petition Date"), the Debtor commenced the above-captioned chapter 11 case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtor is continuing in possession of its property and is managing its business, as a debtor in possession, pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Further information regarding the Debtor, its history, its assets and liabilities and the events leading to the commencement of this Chapter 11 Case can be found in the *Declaration of John K. Kim in Support of First Day Pleadings* [Dkt. 4] (the "First Day Declaration"), which was filed on the Petition Date.

5. On the Petition Date, the Debtor commenced an adversary proceeding in the Chapter 11 Case and filed a motion [Adv. Pro. No. 23-01092, Dkt. 2] (the "PI Motion")[5]

---

[5] Capitalized terms not otherwise defined herein have the meanings given to them in the PI Motion.

NAI-1536599960

seeking a stay of litigation of the Debtor Talc Claims against certain parties (collectively, the "Protected Parties") and preliminarily enjoining the prosecution of such Debtor Talc Claims.

6. The Debtor also sought a related TRO. See id. On April 5, 2023, the Court entered the TRO [Adv. No. 23-01092, Dkt. 9].[6] A hearing to consider the PI Motion will occur on April 18, 2023.

*The Plan Support Agreements*

7. The Debtor commenced this Chapter 11 Case with the support of tens of thousands of talc claimants,[7] reflected in Plan Support Agreements entered into by the Debtor, J&J and Holdco and certain plaintiff law firms. First Day Decl. ¶¶ 8, 72. By the Plan Support Agreements, the parties have agreed to work together to finalize and seek confirmation of a plan of reorganization that would fund $8.9 billion net present value to a trust for the benefit of talc-related claims. Id. ¶ 73. The Plan Support Agreements require that the Debtor use commercially reasonable efforts to finalize and file a plan consistent with the terms contained therein in less than four weeks, by May 14, 2023, or as soon thereafter as is feasible. Id.

*The Motion*

8. On April 10, 2023, the Movant filed the Motion, which, as set forth above, seeks relief substantially similar to that sought by the Movant in the 2021 Chapter 11 Case.[8] On April 10, 2023, the Court granted the Movant's application to shorten [Dkt. 72] filed in connection with the Motion, and on April 11, 2023, the Court held a hearing on the Motion (the "Hearing"). Following argument with respect to the Motion at the hearing, the Court

---

[6] The Court has amended the TRO three times. The current TRO was entered on April 10, 2023 [No. 23-01092, Dkt. 20].

[7] These claimants include individuals who did not have filed claims as of the commencement of the 2021 Chapter 11 Case.

[8] See, e.g., No. 21-30589, Dkts. 2348, 2469, 2736, 2979, 3489, 3545, 3698, 3741.

indicated that it would continue the hearing to April 18, 2023. Hr'g Tr., Apr. 11, 2023 at 207:9-15.

## Objection

9. The Motion devotes only a few pages to the standard for relief from stay. Mot. ¶¶ 87-99. This is not surprising given that all of the relevant Mid-Atlantic factors weigh heavily in favor of maintaining the stay, the TRO and any preliminary injunction.

**I.    The Mid-Atlantic Factors Weigh Heavily in Favor of Denying the Motion.**

10. The automatic stay of section 362 has been described as "one of the fundamental debtor protections provided by the bankruptcy laws." Mid-Atlantic Nat'l. Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986) (citation omitted). The automatic stay, however, is not absolute and, in appropriate instances, relief may be granted. See In re SCO Grp., Inc., 395 B.R. 852, 856 (Bankr. D. Del. 2007). Thus, section 362(d)(1) provides that:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—(1) for cause . . . .

11 U.S.C. § 362(d)(1). "Cause" is a flexible concept and a bankruptcy court is granted wide discretion to determine whether to lift the automatic stay for cause. See In re Mid-Atlantic Handling Sys., LLC, 304 B.R. 111, 130 (Bankr. D.N.J. 2003).

11. Because of this flexibility, courts often rely upon the twelve factors set forth in Mid-Atlantic to determine whether to grant a motion for relief from the automatic stay to permit litigation to proceed. Id. "All twelve factors are not necessarily present in a particular case, and a court need not rely on any plurality of factors in deciding whether to lift the automatic stay." Id. The twelve Mid-Atlantic factors are:

1. Impact of the stay on the parties and the balance of the harms;
2. Whether relief would result in a partial or complete resolution of the issues;

NAI-1536599960

3. Lack of any connection with or interference with the bankruptcy case;
4. Whether the other proceeding involves the debtor as a fiduciary;
5. Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
6. Whether the debtor's insurer has assumed full responsibility for defending it;
7. Whether the action primarily involves third parties;
8. Whether litigation in another forum would prejudice the interests of other creditors;
9. Whether the judgment claim arising from the other action is subject to equitable subordination;
10. Whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor;
11. The interests of judicial economy and the expeditious and economical resolution of litigation; and
12. Whether the parties are ready for trial in the other proceeding.

Id.

12. As set forth below, consideration of the Mid-Atlantic factors here demonstrates that the Motion should be denied.[9]

### A. Impact of the Stay on the Parties and the Balance of the Harms.

13. The balance of harms weighs in favor denying the Motion. For the reasons set forth in the PI Motion, the Debtor would be irreparably harmed by the continuation of talc litigation against the Protected Parties, and the Valadez case in particular.[10] PI Motion at 8, 63-66, 77-80, 86-89. The Debtor has a short window of time to finalize and pursue confirmation of a plan that contains the terms set forth in the Plan Support Agreements. See First Day Decl. ¶ 73. In fact, the Plan Support Agreements provide that the parties must use commercially reasonable efforts to file a plan by May 14 or as soon thereafter as feasible. Id.

---

[9] Certain of the Mid-Atlantic factors—whether the other proceeding involves the debtor as a fiduciary, whether the judgment claim arising from the other action is subject to equitable subordination, and whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor— are not relevant here and are not discussed below.

[10] The Movant argues that talc litigation has no effect on J&J's financial condition. Mot. ¶¶ 73-78. J&J's condition, however, is not at issue except insofar as J&J may be required to support the funding of a chapter 11 plan.

NAI-1536599960

During this time, the Debtor intends to continue building consensus toward a consensual resolution of this case.

14. But, the Movant asks this Court to permit them to try their case during this critical stage of this Chapter 11 Case. Motion ¶¶ 5, 99. Despite representations to the contrary in the Motion and in the Movant's prior pleadings and representations to the Court, the Movant's case is far from being ready for trial, as the Debtor demonstrated at the Hearing. First Day Decl. ¶ 111; Hr'g Tr., Apr. 11, 2023, at 184:18-25; 199:18-22; 193:14-25, 195:10-25, 200:1-17. For example, fact discovery is not yet complete. And, even the Movant's admission that **16 depositions** still need to be taken or completed omits others. Mot. ¶ 17; First Day Decl. ¶ 111; Hr'g Tr., Apr. 11, 2023, at 199:18-22. Sargon hearings following expert depositions will be required to examine the foundation of experts' conclusions. First Day Decl. ¶ 111; Hr'g Tr., Apr. 11, 2023 at 193:14-25, 195:10-25, 200:1-17. Trial briefs and motions to compel expert materials must be filed, and counters to deposition designations by both sides must be submitted and/or ruled upon. Id.; First Day Decl. ¶ 111. Additionally, witness lists, exhibit lists and jury instructions must be prepared. Id.; Hr'g Tr., Apr. 11, 2023 at 193:14-25, 195:10-25, 200:1-17. Furthermore, the Debtor and the Protected Parties are challenging the prejudicial request by Trailblazer TV studio, supported by the Movant, to film the trial. First Day Decl. ¶ 113; Hr'g Tr., Apr. 11, 2023 at 188:22-189:23. All of this will put a heavy burden on the Debtor ahead of trial. First Day Decl. ¶ 111-14.

15. More importantly, the Movant's counsel has made clear that he intends to target the legitimacy of this Chapter 11 Case and the 2021 Chapter 11 Case in the Valadez case, at the same time that the Debtor will be attempting to resolve this Chapter 11 Case. Hr'g Tr., Apr. 11, 2023 188:22-189:23; First Day Decl. ¶ 113. And, lifting the stay will undoubtedly

impede the Debtor's efforts to promptly confirm the proposed plan. Among other things, permitting the Movant's claim to proceed is likely to impede the Debtor's efforts to build support for the proposed plan as some claimants may want to wait until the outcome of the trial to agree to the plan. First Day Decl. ¶ 112-14. And, even when trial is complete, an extreme verdict could disrupt the proposed plan process.

16. There is also the risk that, if permitted to proceed, the Movant's claim will be liquidated, potentially giving rise to *res judicata* or record taint, and jeopardizing the Debtor's access to disputed insurance coverage.[11]

17. By contrast to the harm that granting the Motion would cause the Debtor, this Chapter 11 Case provides the Movant, and all other talc claimants, with the best opportunity for an equitable recovery on the shortest possible timeline.[12] Even if the Motion were granted and the Movant were permitted to proceed to trial, the Movant would have to prevail. That outcome is far from certain given the nature of the Movant's claim, and the lottery-like results achieved by claimants in the tort system generally. Hr'g Tr., Apr. 11, 2023 at 15:15-25; First Day Decl. ¶ 37. Even then, the defendants in the Movant's case (the "Defendants") would likely appeal, which could take years to resolve. By contrast, the Debtor will shortly propose a plan of reorganization that includes an $8.9 billion (net present value) funding commitment and if

---

[11] PI Mot. at 59-62.

[12] See PI Op. 638 B.R. at 48-49 (bankruptcy proceeding "protects the interests of future claimants, prevents a race for proceeds, and promotes equality in distribution."); id. at 49 ("In the state and district courts, talc claimants struggle with the sluggish pace of litigation and face a legitimate possibility that they will not succeed in proving their claims. Should a judgment be awarded, claimants must then endure the appellate process, where—at worst—their judgment is overturned, and—at best—recovery is delayed. Extension of the automatic stay to the Protected Parties, on the other hand, ensures that all claims are reconciled through a bankruptcy trust, which would place reduced evidentiary and causation burdens on claimants. Resolution of claims and payments to claimants can be achieved at a far more expeditious pace in bankruptcy than through uncertain litigation in the tort system. A trust would establish a far simpler and streamlined process than currently available in the tort system."); see also PI Mot. at 73.

confirmed would result in an efficient, equitable resolution of the Debtor's talc-related claims. First Day Decl. ¶ 74.

### B. Whether Relief Would Result in a Partial or Complete Resolution of the Issues.

18. Permitting the Movant to litigate the Movant's claim against the Defendants will not fully resolve the issues, despite the Movant's arguments to the contrary. Mot. ¶ 92. Rather, any resolution of the Movant's claim outside of the Chapter 11 Case would threaten the fundamental purpose of this case: an equitable, **complete** resolution of all the Debtor's talc-related claims. The Movant makes the same essential allegations as the other claimants with pending talc claims against the Debtor. Motion ¶ 59; see PI Motion at 24-25. Granting the Motion would at most resolve the issues only at the trial-court level and only as to one plaintiff out of the approximately 40,000 with pending actions and the many thousands more with unfiled claims. Accordingly, lifting the stay as requested by the Movant will not completely resolve the issues.[13] This factor weighs against lifting the stay.

### C. Lack of Any Connection with or Interference with the Bankruptcy Case.

19. This factor heavily weighs in favor of denying the Motion. The issues to be presented in the Valadez action are at the heart of this Chapter 11 Case and the Debtor's reorganization efforts. First Day Decl. ¶ 110-14. First, the Debtor's liabilities arise exclusively from alleged talc personal injury claims. Id. ¶ 110. The Valadez case is one such claim among

---

[13] Despite the Movant's suggestion to the contrary, J&J and the Protected Parties have not been refusing to negotiate in good faith. Mot. ¶¶ 70-72. The Debtor and J&J are seeking a broad resolution of talc claims through this Chapter 11 Case. Negotiating settlements with individual plaintiffs during that period would undermine that effort for many of the same reasons as litigating individual claims to judgment would be counterproductive.

NAI-1536599960

many tens of thousands. It would be unfair to permit the Movant to proceed while all other mesothelioma and ovarian cancer claimants remain stayed.

20. Second, the Valadez trial is scheduled to occur during a critical stage of this Chapter 11 Case, when the Debtor will attempt, on an accelerated timeline, to finalize and pursue confirmation of a plan of reorganization on terms that already have garnered the support of tens of thousands of claimants. Id. ¶¶ 110-12. The trial would potentially disrupt the Debtor's ability to obtain additional support for the proposed plan and could interfere with the plan if an extreme verdict is obtained. Id. ¶ 116. Indeed, the Movant's counsel effectively recognizes such interference in the Motion itself. Mot. ¶ 94 ("There is no reason to believe that resuming its trial track would cause any *new* interference.") (emphasis added). Worse, as set forth at the April 11, 2023 hearing, counsel to the Movant already has demonstrated his intent to put the legitimacy of this and the Debtor's 2021 Chapter 11 Case on trial in the California court, including through supporting the filming of the trial for use in a documentary that will be "focused on the ongoing talc bankruptcy saga." See First Day Decl., Annex G, March 6 Letter at 1; First Day Decl., Annex H, March 21 Letter at 2-3; Hr'g Tr., Apr. 11, 2023 at 188:22-189:23.

21. Finally, as described herein, the Movant's case is not trial ready—significant work and preparation, including numerous depositions, still must be undertaken. Hr'g Tr., Apr. 11, 2023, at 199:18-22; First Day Decl. ¶ 111. Proceeding to trial on the Movant's case will be burdensome and would distract the Debtor during this key stage of the bankruptcy case. Id. ¶ 112.

22. It is difficult to imagine a case that could be more intertwined with, and potentially disruptive of, this Chapter 11 Case.

> D. **Whether a Specialized Tribunal with the Necessary Expertise Has Been Established to Hear the Causes of Action.**

23. The Debtor does not dispute that the Superior Court of California has the expertise to hear the Movant's personal injury causes of action. However, as set forth above, this factor does not distinguish the Movant's claim from the Debtor's other talc claims.[14] As this Court and other courts have long recognized, bankruptcy court is the most logical and best-positioned forum for the resolution of mass tort liability. See In re LTL Mgmt. LLC, 638 B.R. 291, 321-22 (Bankr. D.N.J. 2022) (the "PI Opinion"); accord In re Federal-Mogul Glob., Inc., 684 F.3d 355, 359 (3d Cir. 2012) ("Bankruptcy has proven an attractive alternative to the tort system for corporations [facing mass tort claims] because it permits a global resolution and discharge of current and future liability, while claimants' interests are protected by the bankruptcy court's power to use future earnings to compensate similarly situated tort claimants equitably."); S. Elizabeth Gibson, *Judicial Management of Mass Tort Bankruptcy Cases*, Federal Judicial Center, at 1 (2005), https://www.fjc.gov/sites/default/files/2012/GibsJudi.pdf (noting that "bankruptcy courts have become a forum for companies seeking the resolution of pending and threatened mass tort litigation" and that, as of the publication date, "over seventy companies, motivated primarily by their desire to reach a final resolution of their mass tort liabilities, have sought bankruptcy protection").

24. The Debtor's Chapter 11 Case is the only proceeding in which the Debtor can achieve a complete and equitable resolution of its current and future talc-related claims. This factor weighs against granting the Motion.

---

[14] Indeed, it cannot be reasonably disputed that the California court is a favored forum for asbestos plaintiffs.

> **E.     Whether the Debtor's Insurer Has Assumed Full Responsibility for Defending the Movant's Claims.**

25.     Although the Movant does not address this factor, the availability of insurance coverage shared among the Debtor and the other Defendants is disputed. Additionally, as recognized in the PI Opinion, continued litigation against the Protected Parties "effectively seeks to collect and liquidate claims against Debtor and could deplete available insurance coverage." PI Op., 14; see also Jan. 11, 2022, Hr'g Tr. at 89:21-23 ("And of course we go back to the risks of eroding the available insurance to the extent it's -- to the extent there is insurance so available."). As a result, this factor also weighs against granting the Motion.

> **F.     Whether the Actions Primarily Involve Third Parties.**

26.     The Movant also declines to address this factor, which weighs in favor of denying the Motion. There effectively are no "third parties" to the Movant's case. The Defendants are the Debtor, J&J and certain retailers, all of whom are Protected Parties subject to the TRO and requested preliminary injunction. See Complaint, Appendix B, No. 23-01092 (MBK) [Dkt. 1]. As the Court has previously found, the Debtor Talc Claims asserted against the non-debtor defendants "implicate the same product, the same time period, the same alleged defect and the same alleged harm" as those asserted against the Debtor. PI Op., 638 B.R. at 317. Moreover, the Debtor is liable for all such claims by virtue of its indemnification obligations described in the First Day Declaration. See First Day Decl. ¶¶ 23, 55-60. Accordingly, the Valadez action involves no third parties not subject to the current and requested stay and, as a practical matter, all of the liabilities asserted in the Valadez action are ultimately the responsibility of the Debtor.

NAI-1536599960

      **G.**    **Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors.**

27.    The Movant asserts that permitting the Movant's action to proceed would not prejudice other creditors. Mot. ¶ 96. But, for the reasons set forth above and by this Court, permitting the Movant's mesothelioma claim to proceed would prejudice the interests of thousands of talc claimants, including numerous claimants holding mesothelioma claims, who are similarly situated yet would remain subject to the stay and injunction. See, e.g., Jan. 11, 2022, Hr'g Tr. at 90:1-7; id. at 91:3-7; PI Op., 21-22. The Debtor is in the process of attempting to fully resolve its talc claims in a short period of time. Permitting this solitary claimant to move forward risks undermining those efforts.

      **H.**    **The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation.**

28.    Contrary to the Movant's assertions (see Mot. ¶¶ 97-98), lifting the stay would not promote judicial economy and the expeditious and economical resolution of the litigation. If the Debtor and the Protected Parties prevail, as the Debtor's litigation history and the circumstances of the Movant's case suggest is reasonably probable,[15] the Debtor still will face tens of thousands of other claims requiring resolution. However, even if the Movant unexpectedly prevails notwithstanding the lack of merit of the Movant's claim, the Defendants would likely exercise their appellate rights, which would significantly delay any payment to the Movant.

29.    As this Court recognized in the 2021 Chapter 11 Case, the most efficient, equitable and economic path is resolution through the bankruptcy process and the creation of a trust, not by piecemeal litigation. See PI Op., 49 ("Extension of the automatic stay to the

---

[15]    First Day Decl. ¶¶ 36-38; Hr'g Tr., Apr. 11, 2023 at 112:6-15, 182:10-186:2.

NAI-1536599960

Protected Parties, on the other hand, ensures that all claims are reconciled through a bankruptcy trust, which would place reduced evidentiary and causation burdens on claimants. Resolution of claims and payments to claimants can be achieved at a far more expeditious pace in bankruptcy than through uncertain litigation in the tort system. A trust would establish a far simpler and streamlined process than currently available in the tort system."). This factor weighs against granting the Motion.

I. **Whether The Parties Are Ready for Trial in the Other Proceedings.**

30. The Movant claims that "all parties had already been preparing for trial to begin on April 17, 2023" Mot. ¶ 99, and "should this Court lift the automatic stay, the State Court action will be able to resume immediately under the full force and effect of the California trial preference statute—with jury selection beginning on April 17, 2023." Mot. ¶ 19. By the Movant's own concession, however, the parties are not ready for trial. The Movant recognizes that the parties still need to take 16 depositions of fact and expert witnesses. Mot. ¶ 17. And, in point of fact **more** than 16 depositions remain. Hr'g Tr., Apr. 11, 2023, at 199:18-22. In addition to the several pending depositions, the parties have yet to brief and argue critical evidentiary issues such as requests for genetic testing, requests for medical records reflecting family medical history, and the admissibility of certain evidence. Id. at 193:14-25, 195:10-25, 200:1-17.

31. This factor, along with each of the foregoing factors, weighs in favor of denying the Motion.

II. **An Extension of the Automatic Stay under Section 362(a) to the Protected Parties, Which Includes the Defendants, Is Warranted.**

32. The Motion primarily attacks the standard that this Court has articulated on three occasions for evaluating the relief requested in the Debtor's motion for an extension of

-16-

the stay and a preliminary injunction. See PI Op., 638 B.R. at 15-18; In re LTL Mgmt. LLC, 645 B.R. 59, 75-79 (Bankr. D.N.J. 2022) (the "AG PI Op."); In re LTL Mgmt. LLC, 640 B.R. 322, 334-35 (Bankr. D.N.J. 2022) (the "Hall PI Op."). These arguments, as well as other arguments related to the PI Motion, are properly reserved for the hearing on the PI Motion. In any event, as set forth in the PI Motion, the extension of the automatic stay under section 362(a) to the Protected Parties is warranted under the circumstances. PI Mot. at 52-66.

### III. The Court Has Subject Matter Jurisdiction to Extend the Automatic Stay and Issue a Preliminary Injunction.

33. The Movant argues that the Court lacks subject matter jurisdiction to extend the stay and issue the requested preliminary injunction. Mot. ¶¶ 110-18. For all of the reasons previously discussed by the Court in three separate adversary proceedings,[16] and as argued by the Debtor in the PI Motion, PI Mot. at 45-52, the Court has "arising under" and "arising in "jurisdiction as well as, at a minimum, "related-to" jurisdiction to grant relief that preserves and gives effect to the automatic stay of section 362 of the Bankruptcy Code.

### IV. Granting the Motion Will Have an Adverse Impact on the Debtor's Estate.

34. The Motion mostly addresses the PI Motion, arguing that denial of that Motion would have no adverse impact on the Debtor's estate because the Debtor's indemnity obligations do not threaten its assets or reorganization as a result of the existence of the 2023 Funding Agreement.[17] Mot. ¶¶ 119-22. But that argument is wrong. The Debtor is required to first use its own assets to satisfy such claims before funding becomes available under the 2023 Funding Agreement. First Day Decl. ¶ 80. And, in any event, the Debtor has alleged numerous

---

[16] PI Op., 638 B.R. at 301-03; AG PI Op., 645 B.R. at 67-75; Hall PI Op., 640 B.R. at 331-34.

[17] The Movant argues that termination of the prior funding agreement was a constructive fraudulent transfer because the Debtor did not receive reasonably equivalent value for the transaction. Mot. ¶¶ 11-13. As the evidence at the PI Hearing will demonstrate, the transaction was not an actual or constructive fraudulent transfer.

additional potential adverse impacts on its estate aside from any liability for indemnification obligations. These include, for example: (a) risks of res judicata, collateral estoppel or evidentiary prejudice; (b) undermining mediation or settlement negotiations; (c) diverting estate resources to monitor and defend the action; and (d) jeopardizing access to shared insurance coverage. PI Mot. at 7, 49, 52, and 59-63; see supra ¶¶ 17-21, 29.

### V. This Court Has Previously Rejected the Movant's Argument That Claims Against Joint Tortfeasors Cannot Be Stayed or Enjoined.

35. Similarly, the Movant reasserts the argument that joint tortfeasors are not entitled to the benefit of the automatic stay upon a co-defendant's bankruptcy filing. Mot. ¶¶ 123-26. The Movant relies on the Third Circuit's holding in Johns-Manville whereby the Third Circuit declined to extend the stay to joint tortfeasors. Gold v. Johns-Manville Sales Corp., 723 F.2d 1068, 1076 (3d Cir. 1983).

36. Importantly, the Court previously overruled this argument, finding it "misleading." PI Op., 638 B.R. at 307. The authority on which the Movant relies merely stands for the unremarkable proposition that:

> the automatic stay typically applies only to the debtor and, like any other nondebtor third party, does not extend to "joint tortfeasors." Also discussed, there exists an exception to this general rule in that the stay can be extended when the circumstances so warrant. *Thus, even assuming direct liability exists, the analysis for whether an extension of the automatic stay is warranted based on "unusual circumstances" remains unaffected.*

Id. at 308 (emphasis added).

37. J&J is not a mere alleged joint tortfeasor like the co-defendants in Johns-Manville Sale Corp., 723 F.2d at 1076. In fact, unlike the typical codefendant, the claims against J&J are based on the same products, the same alleged defect and same alleged harm as

NAI-1536599960

any claims against Old JJCI or the Debtor.  Accordingly, an extension of the stay, regardless of any direct liability, is warranted.

## Conclusion

For the reasons set forth above, the Debtor respectfully requests that the Court deny the Motion and grant the Debtor such other and further relief as the Court may deem proper.

Dated: April 17, 2023

**WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*