UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

IN RE: . Case No. 23-12825(MBK)
.
. Clarkson S. Fisher U.S.
LTL MANAGEMENT LLC, . Courthouse
. 402 East State Street
. Trenton, NJ 08608
Debtor. .
. April 11, 2023
. . . . . . . . . . . . . . . . 9:59 a.m.

TRANSCRIPT OF MOTION BY MOVANT ANTHONY HERNANDEZ VALADEZ FOR AN ORDER (I) GRANTING RELIEF FROM THE AUTOMATIC STAY, SECOND AMENDED EX PARTE TEMPORARY RESTRAINING ORDER, AND ANTICIPATED PRELIMINARY INJUNCTION, AND (II) WAITING THE FOURTEEN DAY STAY UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(A)(3) [71]; DEBTOR'S MOTION FOR AN ORDER EXTENDING THE TIME WITHIN WHICH IT MUST FILE ITS (I) SCHEDULES OF ASSETS AND LIABILITIES AND (II) STATEMENT OF FINANCIAL AFFAIRS [14]; DEBTOR'S MOTION FOR AN ORDER: (I) APPROVING THE CONTINUED USE OF ITS BANK ACCOUNT AND BUSINESS FORMS AND (II) AUTHORIZING THE DEBTOR'S BANK TO CHARGE CERTAIN FEES AND OTHER AMOUNTS [13]; DEBTOR'S APPLICATION PURSUANT TO 28 U.S.C. § 156(C) AND 11 U.S.C. § 105(A) FOR ENTRY OF AN ORDER AUTHORIZING THE APPOINTMENT OF EPIQ CORPORATE RESTRUCTURING, LLC AS CLAIMS AND NOTICING AGENT NUNC PRO TUNC TO THE PETITION DATE [11]; DEBTOR'S APPLICATION FOR DESIGNATION AS COMPLEX CHAPTER 11 CASE [6]; DEBTOR'S MOTION FOR AN ORDER SUSPENDING ENTRY AND SERVICE OF STANDARD NOTICE OF COMMENCEMENT [5]; DEBTOR'S MOTION FOR AN ORDER: (I) AUTHORIZING IT TO FILE A LIST OF THE TOP LAW FIRMS WITH TALC CLAIMS AGAINST THE DEBTOR IN LIEU OF THE LIST OF THE 20 LARGEST UNSECURED CREDITORS; (II) APPROVING CERTAIN NOTICE PROCEDURES FOR TALC CLAIMANTS; AND (III) APPROVING THE FORM AND MANNER OF NOTICE OF COMMENCEMENT OF THIS CASE [10]; DEBTOR'S MOTION PURSUANT TO 11 U.S.C. § 1505 FOR AN ORDER AUTHORIZING IT TO ACT AS FOREIGN REPRESENTATIVE ON BEHALF OF THE DEBTOR'S ESTATE [12]
BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE

Audio Operator: Wendy Quiles

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail: jjcourt@jjcourt.com**

**(609) 586-2311 Fax No. (609) 587-3599**

APPEARANCES:

For the Debtor:
Jones Day
By: GREGORY M. GORDON, ESQ.
DAN B. PRIETO, ESQ.
AMANDA S. RUSH, ESQ.
2727 North Harwood Street, Suite 500
Dallas, TX 75201

Skadden Arps Slate Meagher & Flom, LLP
By: ALLISON M. BROWN, ESQ.
One Manhattan West
New York, NY 10001

Various Talc Personal Injury Claimants:
Watts Guerra LLP
By: MIKAL C. WATTS, ESQ.
5726 W. Hausman Road, Suite 119
San Antonio, TX 78249

For Ad Hoc Committee of Certain Talc Claimants and Ad Hoc Committee of Creditors:
Genova Burns LLC
By: DANIEL M. STOLZ, ESQ.
494 Broad Street
Newark, NJ 07102

Brown Rudnick
By: JEFFREY L. JONAS, ESQ.
DAVID J. MOLTON, ESQ.
7 Times Square
New York, NY 10036

Otterbourg PC
By: MELANIA CYGANOWSKI, ESQ.
230 Park Avenue
New York, NY 10169-0075

For Anthony Hernandez Valadez:
Kazan McClain Satterley & Greenwood
By: JOSEPH SATTERLEY, ESQ.
55 Harrison St. Suite 400
Oakland, CA 94607

For the Office of the United States Trustee:
Office of the United States Trustee
By: LINDA RICHENDERFER, ESQ.
JEFF SPONDER, ESQ.
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801

APPEARANCES CONT'D:

| | |
|---|---|
| For Various Talc Claimants: | Maune Raichle Hartley Frency & Mudd, LLC<br>By: CLAYTON L. THOMPSON, ESQ.<br>150 West 30th Street, Suite 201<br>New York, NY 10001 |
| | Levy Konigsberg, LLP<br>By: JEROME H. BLOCK, ESQ.<br>MOSHE MAIMON, ESQ.<br>101 Grovers Mill Road, Suite 105<br>Lawrence Township, NJ 08648 |
| | Simon Greenstone Panatier, PC<br>By: LEAH CYLIA KAGAN, ESQ.<br>1201 Elm Street, Suite 3400<br>Dallas, TX 75720 |
| For Claimant Alishia Landrum: | Beasley Allen<br>By: ANDY BIRCHFIELD, ESQ.<br>218 Commerce Street<br>Montgomery, AL 36104 |
| For Arnold & Itkin: | Pachulski Stang Ziehl & Jones LLP<br>By: LAURA DAVIS JONES, ESQ.<br>919 North Market Street<br>17th Floor<br>Wilmington, DE 19801 |
| For Paul Crouch, individually and on behalf of Estate of Cynthia Lorraine Crouch: | Ruckdeschel Law Firm, LLC<br>By: JONATHAN RUCKDESCHEL, ESQ.<br>8357 Main Street<br>Ellicott City, MD 21043 |
| For the Ad Hoc Committee of Attorney Generals: | Womble Bond Dickinson<br>BY: ERICKA JOHNSON, ESQ.<br>1313 North Market Street<br>Suite 1200<br>Wilmington, DE, US 19801 |

\- - - - -

(Proceedings commenced at 9:59 a.m.)

THE COURT: We have new technology here. Everything is supposed to work better, more enhanced. Not just for you all.

Well, okay. Good morning, again. This is the LTL Management LLC matter and -- log in.

All right. We have a full plate on for today. A number of matters. If I may, I'd like to take the liberty of making a few preliminary comments.

My goal today is really to listen. Listen to presentations, listen to arguments from all parties. Because that's the intent, I am going to be somewhat generous in allowing the use of the PowerPoints, the presentations, the hyperbole, all of it. I want to hear from you all about this case and the respective positions.

I've read a lot. We hear a lot. But this is where it's important. In that regard, I'm cognizant that there's been a significant amount of vitriol, ad hominem attacks, lawyer versus lawyer, lawyers versus the Court, directed at Johnson and Johnson, directed at groups. That's unfortunate.

I think we all need to a degree to have a bit of a thin skin. I like to think the Court has a thick -- a thin skin -- a thicker skin. Wrong analogy. A thicker skin. Some may be familiar. I was a mayor of a small town in North Jersey and there came a point in time when I would say more than half

J&J Consumer, Inc., well known as old JJCI, prior to the first bankruptcy filing. So I don't plan to go over those things again today.

But I did want to provide an update on corporate structure. And what I wanted to focus on was the fact that, and Your Honor probably saw this in the papers that we filed, in December of last year, the debtor's parent company, J&J Consumer, Inc., which we were referring to in the old case as New JJCI, changed its name to Johnson and Johnson HoldCo (NA), Inc., which I'll refer to today as HoldCo.

And in early January 2023, HoldCo distributed its consumer business, it's consumer health business, that is, to its parent company. So that is a change that's occurred with respect to corporate structure. And although that business, as Your Honor knows I think, represented a substantial portion of HoldCo's assets, HoldCo does continue to have significant value. And we mentioned in the papers that, among other things, it holds $400 million in cash. It also holds interest in foreign subsidiaries that have a material value. And it seems, based on the papers we've seen filed in the last few days, that the other parties are overlooking the fact that that other value exists.

Then I want to address, Your Honor, why LTL has filed for bankruptcy a second time. And as with the first case, Your Honor, I would say the purpose of the filing remains the same.

The Code conspicuously does not contain any particular insolvency requirement. LTL is financially distressed. As a result, bankruptcy is available to it. LTL is not insolvent. As a result, there is no basis for a fraudulent transfer claim.

So to conclude, Your Honor, the second Chapter 11 case, this case, has drawn substantial support. It's supported by the unprecedented $8.9 billion financial commitment by LTL and J&J. It's supported by over 60,000 claimants who have signed and delivered plan support agreements, and support is continuing to come in. This claimant's support validates the good faith basis of this filing. It validates the proper purpose of this proceeding.

The Court should not permit a group of firms who represent a minority of the claimants to hijack this case before it can even begin. That is especially the case given the utter absence of factual support for the inflammatory and defamatory accusations this group of firms is making.

Thank you, Your Honor.

THE COURT: Thank you, Mr. Gordon. Before we hear from the Ad Hoc group and other plaintiffs, is there anyone supporting the debtor's position as far as an introductory statement?

MR. WATTS: Good morning, Your Honor.

THE COURT: Good morning.

Trustee's Office, and we'll make sure that you can get a copy of it.

We are moving as quickly as quickly as we can, Your Honor. With any luck, we'll have at least a Tort Claimants Committee by the next hearing which is on the 18th, but I can't promise that. And I have no unsecured creditor information yet from the debtor, so I don't know when that committee, if one will be appointed. It may be that there's no interest; I don't know. But I do know there were a lot of parties who never got paid in the first case before it was dismissed.

The interviewing in fact is going to start tomorrow just so people are aware of that.

Your Honor, I think that's leading up to my first point that I did want to make before the Court was that we are very concerned about their request to move forward to appoint the FCR and the mediators by the April 18th hearing or I guess on the April 18th hearing when we will not yet have a formal committee yet formed.

And so I don't know whether the request is going to be heard later today or not. I didn't meant to jump ahead if it is, but we would request that the FCR, the mediators, that that be delayed until after we can get a committee in place who can also be heard on those topics which are extremely important.

Your Honor, I think that they are very important, and

I'm ad libbing here a little bit because from what I'm hearing today about the timetable, there seems to have been some activity during the first case that is now being carried over that really benefitted the second case. And I think that we're going to have to get some clearer understanding of where the first case ended and where the second case started because it doesn't seem like the first case ended at 1:49 on April 4th and that the second case started 2 hours and 11 minutes later. It seems like there was a large overlap, a month, two months. To me, that's still a large overlap between the two cases.

Your Honor, we are told that I think Mr. Gordon said two-thirds of the claimants are represented by parties that have signed on to plan support agreements. I think it was two-thirds, so we'll say 66 percent. And it was 60- or 70,000 claimants.

Your Honor, I'm struggling with reconciling that because I've gone back and there are 18 firms that were listed in the first case as part of the top 30 firms that are not listed for the second case. And there are of the top 30 firms that were listed in the first case, only five of them are purported signatories to this plan or this support agreement, whatever it's being called. I'm not quite sure.

And I think that of the top 18 that were identified in this case, there are 11 who purportedly are not part of any

plan support agreement or whatever it is that they're calling it. Your Honor, my point is this, that we heard several times Mr. Gordon state that it's this large majority of the claimants and that it's two-thirds of the claimants.

Your Honor, I don't know how the math works out. I really don't. And I will tell you this, that Mr. Watts' firm didn't appear in the first list. Now all of a sudden, it's on the second list. Mr. Watts also made statements about being involved in the Imerys case. Your Honor may or may not know that I along with one of my other trial attorneys in the Delaware office have been the trial attorneys from the United States Trustee's Office on that case since day one. He did not vote. He had no claimants that voted in that case when the first plan was up.

I don't know what positions he's playing in these cases. I did hear him identify a number of claimants which is one of the concerns of the U.S. Trustee's Office. Where are these claimants coming from and who are these claimants? Because we just can't reconcile them with the numbers that we had that we were discussing and that were in front of us in the first case. And I can't reconcile some of the statements with things that I know about from the Imerys case.

I know the attorneys there very well. I know who's involved in that case. I know who voted in that case. I myself checked. There were no votes that were made in that

case on the first plan, which eventually was not -- I think it fell short by three percent. But there were no votes submitted on behalf of his firm, so I don't know what his role is in all of this.

But I will say this, I don't know where the 67 or 60,000 or 70,000 come from. It's certainly something that we'll be looking into when we vote to form the Talc Claimants Committee here. I wonder where the numbers are. And I was very interested in the math that was just done because that's presuming that all 60- or 70,000 of these claimants that we're told are represented by these firms. It's assuming that they're going to get past the stage of filling out the questionnaire that they'll have to get through.

And I don't know because most of those claimants evidently did not file a lawsuit because otherwise they would have been accounted for in the first case, in the list of top 30 law firms. So I don't know where these other law firms are coming from. I have asked debtors to give us a list of the complete top 30 which is what we normally get. I believe they're working on it. I don't have it yet, though. And we're marching forward. And Your Honor will be hearing from us later when we get to certain motions that are before Your Honor today.

I just want to make those points and make sure that

this case, that we don't get off on some of the tangents and that we look at who the true parties in interest here are, Your Honor and that we hear from them. And as to the 60- or 70,000 claimants, I don't know where that number comes from. I can't reconcile it with what we heard in the first case. Thank you, Your Honor.

THE COURT: I appreciate your concerns. The Court shares much of it. And we'll await.

Mr. Ruckdeschel, I can give you four and a half minutes.

MR. RUCKDESCHEL: Your Honor, thank you very much. Jonathan Ruckdeschel on behalf of Paul Crouch, individually, and as the Executor of his mother's estate. And I will meet that deadline.

Your Honor, the filing as we've heard and I'm going to try and not repeat things that have been said before, but the overall scheme here is taking state law rights of claimants sickened by Johnson & Johnson's asbestos-contaminated products, unrestricted state law rights that had access with respect to Johnson & Johnson Consumer to at least $61 billion of assets and, with respect to Johnson & Johnson, an unlimited pot of assets and to transform them into restricted rights against an artificially limited pot of money that will be created by this plan.

So we would request that they list the top creditors. And we would also, I think, inquire as to how did they create this new list and why are the attorneys -- I mean, really, it makes me think of collusion. The folks that are on this list now are the folks that have met privately over the last few weeks that supposedly got their clients to agree to a deal.

So Mr. Maimon is going to speak more to this point, but we would rely upon our papers and request that the motion be denied and a list of creditors be named.

THE COURT: All right. Thank you.

Ms. Richenderfer, Mr. Maimon, you can go in a circle.

MS. RICHENDERFER: Your Honor, to give some context to the statements that were just made, in the first case, the top 30, 18 of the 30 firms that were listed in the first case are not part of the top 18 that were listed in the second case. If I add 18 -- Your Honor, that takes me way beyond 30, I guess, is what I'm trying to do here, quickly, the math in my head.

So there were eight firms listed in the top 18 for this case that appear nowhere on the list for the first case. So we are rather confused as to where these names are coming from. And I think I stated before, they're talking about other factors that they used to create the list. I don't know what that means. That's why we sent it out to everyone that we could find.

And I would suggest, Your Honor, and I know maybe others may disagree with me, but if there is a judgment out there that has not yet been paid by the debtor, I think that goes on the unsecured creditor list. Or maybe it's a secured creditor. I don't know.

To me, the list of top 30 firms are people who represent claimants who may have filed lawsuits, but they don't have judgments yet. They don't have verdicts. They don't have settlements yet.

If there is something that is -- substantiates a claim, the four corners of a claim, then I think that goes on the unsecured creditors list. So I would suggest that to Your Honor as something maybe to bridge the gap here, because I think somebody that's holding a judgment goes on the unsecured creditors list. Somebody who has a settlement that was never paid goes on the unsecured creditors list as an individual. And that the top law firms are something that's been created when we have these toxic tort cases so that we can get the law firms that have the, hopefully, highest number of claimants involved in the case, get them involved with the matter.

But there is some inconsistency here, Your Honor, in what got put on the top list in the first case and what's even on the 18 list here for the second case.

But to reiterate, it's out there for the entire world. It's on the website. And if anybody has trouble, they

can always call me in the Wilmington U.S. Trustee’s office or Mr. Sponder -- he’s going to kill me -- in the Newark County U.S. Trustee’s office.

Thank you, Your Honor.

THE COURT: All right. Thank you.

MR. MAIMON: Thank you, Your Honor. May it please the Court. My name is Moshe Maimon from the law firm of Levy Konigsberg, and I appreciate the opportunity that Your Honor has given me to address this issue with regard to LTL’s motion to list top law firms with talc claims.

The -- as our papers make clear, the Federal Rules of Bankruptcy, the statutes, the case law require the listing of the 20 largest creditors. And the U.S. Trustee’s office raises an interesting issue, which is the distinction between secured creditors and non-secured creditors, because in this bankruptcy and subject to verdicts and judgments there are both secured creditors and non-secured creditors.

There are plaintiffs, the Johnson plaintiffs out in California, a prime example of an unsecured creditor with a $20 million liquidated claim against Johnson & Johnson, and yet that is nowhere in the debtor’s papers, and they wonder why we don’t like their list.

There are secured creditors verdicts. Mr. Satterley, the heirs of Mrs. Schmitz, the heirs of Mr. Barden, the heirs of Mr. Ronning (phonetic), who are secured creditors, and yet