| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>**GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ  07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Robert J. Stark, Esq.<br>Michael S. Winograd, Esq.<br>Eric R. Goodman, Esq.<br>dmolton@brownrudnick.com<br>rstark@brownrudnick.com<br>mwinograd@brownrudnick.com<br>egoodman@brownrudnick.com<br>Seven Times Square<br>New York, NY  10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>One Financial Center<br>Boston, MA  02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>jmassey@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC  20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br><br>*Proposed Special Counsel for the Official Committee of Talc Claimants* | **OTTERBOURG P.C.**<br>Melanie L. Cyganowski, Esq.<br>Richard G. Haddad, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>David A. Castleman, Esq.<br>mcyganowski@otterbourg.com<br>rhaddad@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>dcastleman@otterbourg.com<br>230 Park Avenue<br>New York, NY  10169<br>Tel: (212) 661-9100<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |

|  |  |
|---|---|
| In re:<br><br>**LTL MANAGEMENT LLC,** [1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

### OFFICIAL COMMITTEE OF TALC CLAIMANTS' OBJECTION TO DEBTOR'S MOTION FOR AN ORDER APPOINTING RANDI S. ELLIS AS LEGAL REPRESENTATIVE FOR FUTURE TALC CLAIMANTS

The Official Committee of Talc Claimants ("TCC") appointed in the above-captioned chapter 11 case, by and through its undersigned counsel, hereby submits this objection ("Objection") to the *Debtor's Motion for an Order Appointing Randi S. Ellis as Legal Representative for Future Talc Claimants* (the "Motion") [Docket No. 87]. In support of this Objection, the TCC respectfully states as follows:

### PRELIMINARY STATEMENT

1. As the TCC has repeatedly argued to this Court, the officers and directors of LTL Management LLC (Johnson & Johnson ("J&J")'s made-for-bankruptcy shell company), and their advisors, breached their fiduciary duties to the estate's creditors—talc claimants—leading up to and through the serial bankruptcy petitions made by LTL ("LTL 1.0" and "LTL 2.0").

2. The TCC was surprised and shocked to discover that the Future Claims Representative (the "FCR"), another "estate fiduciary" from LTL 1.0, whose role is subject to an even "heightened standard" of **independence** from a debtor, would engage in acts to assist J&J in

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

2

planning to file LTL 2.0 while still appointed in LTL 1.0. The TCC respectfully submits that Ms. Ellis's independence has been impaired (if not wholly destroyed), thereby requiring denial of her appointment as FCR in LTL 2.0.

3. Based on uncontroverted facts revealed in LTL 2.0 thus far, ███████

4. ███████ Ms. Ellis ultimately decided not to file a declaration.

5. First party discovery has not been taken from Ms. Ellis, but it is not needed. The already adduced facts are fatal to her appointment under prevailing Third Circuit law. No explanation from Ms. Ellis can resolve the undisputed facts already in the record, and the TCC respectfully submits that the Debtor's motion to grant her appointment as FCR should be denied.

## OBJECTION

6. For more than a year and a half J&J, through its special purpose liability vehicle, the Debtor, has stated that it wants to confirm a chapter 11 plan that resolves all present and future talc liability pursuant to section 524(g) of the Bankruptcy Code.

7.      Section 524(g) makes it possible for a tortfeasor with asbestos liability to confirm a plan that channels present and future asbestos liability to a trust. For this reason, section 524(g) represents a key tool in good-faith asbestos bankruptcy cases.

8.      In addition to having a debtor that petitions in good-faith, Congress has conditioned the availability of this tool on the satisfaction of a myriad of interconnected elements. The system enacted by Congress as codified in section 524(g) is absolute— failure to satisfy even one element prohibits access to any relief.

9.      One such element is the court's appointment of a legal representative to protect the rights of future claimants who are not yet known and are *per se* incapable of advocating on their own behalf prior to manifestation of an injury caused by exposure to a debtor's products. This concept is so critical that Congress has required not only the appointment of an individual to such role, but a specific finding by the Court that a plan including a section 524(g) injunction be fair and equitable to present and future claimants.

10.      The relative import of the role of an FCR in any section 524(g) case is obvious. Equally apparent is the need for that individual to be far beyond reproach to adequately serve in such a fiduciary capacity.[2] In other words, a representative of the interests of future claimants cannot, in any way, be influenced—**or perceived to be influenced**—by the will of the Debtor or any other party in interest and must be able to unequivocally advocate with undivided loyalty on behalf and in furtherance of the interests of future claimants.[3]

---

[2]  *See In re Imerys Talc America, Inc.*, 38 F.4th 361, 376 (3d Cir. 2022) ("We presume, therefore, that when Congress employed that term in § 524(g), it anticipated that the FCR would serve as fiduciary to the future claimants. Indeed, legal representatives and their attendant fiduciary duties are central to the bankruptcy process.").

[3]  *See id.* at 374 (identifying a heightened standard beyond disinterestedness).

11. The Debtor has submitted Randi Ellis for consideration to serve as the FCR in LTL's second bankruptcy. Although Ms. Ellis served in such a role in LTL's prior bankruptcy case, the facts surrounding this case and its genesis—███████████████████—are meaningfully different and prohibit her subsequent appointment to the role under section 524(g) and case law from the Third Circuit.

12. While the TCC does not object to the fact that appointment of an FCR would be appropriate in a legitimate, good faith case implicating section 524(g) (the TCC's motion to dismiss, filed and teed up for hearing on May 22, 2023, demonstrates that this case, like its predecessor, is a bad faith filing), the TCC submits that on the discovered facts to date, Ms. Ellis candidacy should not be considered, let alone approved by this Court irrespective of disposition of the TCC's pending motion to dismiss, and therefore the TCC objects to the Motion.

I. **The Third Circuit Requires FCRs Be More Than Disinterested; They Must Be Beyond Reproach**

13. Section 524(g) of the Bankruptcy Code was enacted by the Bankruptcy Reform Act of 1994[4] and modeled on the injunction entered in the *Johns-Manville*[5] case. Section 524(g) establishes a procedure for the bankruptcy court to enter a sweeping injunction, enjoining present and future personal injury claims against the debtor in chapter 11 reorganization cases based on exposure to products containing asbestos.

14. Asbestos liabilities in bankruptcy pose a unique challenge due to the long latency period—often multiple decades—of asbestos-related diseases. In enacting section 524(g), Congress recognized that "a central element of the [*Johns-Manville*] case was how to deal with future claimants—those who were not yet before the court, because their disease had not yet

---

[4] *See* Pub. L. No. 103-394 § 111 (1994).
[5] *See Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).

manifested itself."[6] To ensure that viable companies can reorganize, Congress codified the *Johns-Manville* trust structure, which channeled present and future asbestos claims to a trust in conjunction with an injunction barring future claims against the emerging debtor company.[7]

15. Because of the far reaching and powerful nature of a section 524(g) injunction, including its ability to bind future claimants whose injuries have not yet manifested, Congress conditioned such relief on satisfaction of the following stringent conditions:

  i. <u>Notice and Hearing</u>. The injunction may be entered only after notice and a hearing and only in connection with an order confirming a chapter 11 plan of reorganization (11 U.S.C. § 524(g)(1)(A));

  ii. <u>Establishment of a Trust</u>. There must be a trust established that will assume the liabilities of a debtor for damages caused by exposure to asbestos (11 U.S.C. § 524(g)(2)(B)(i)(I));

  iii. <u>Funded with Securities of the Debtor</u>. The trust must be funded in whole or in part by the securities of a debtor (11 U.S.C. § 524(g)(2)(B)(i)(II));

  iv. <u>Majority Ownership in the Debtor</u>. The trust must own a majority of the voting shares of each debtor, the parent corporation of each debtor, or a subsidiary of each debtor (11 U.S.C. § 524(g)(2)(B)(i)(III));

  v. <u>Substantial Future Demands</u>. The court must determine that the debtor is likely to be subject to substantial future demands for payment arising out of the conduct that gave rise to the asbestos-related claims (11 U.S.C. § 524(g)(2)(B)(ii)(I));

  vi. <u>Unpredictability of Claims</u>. The court must find that the actual amounts, numbers and timing of the demands cannot be predicted (11 U.S.C. § 524(g)(2)(B)(ii)(II));

  vii. <u>Threat to Future Demands Absent Procedures</u>. The court must find that pursuit of the demands in the absence of the plan's procedures is likely to threaten the plan's ability to deal equitably with claims and future demands (11 U.S.C. § 524(g)(2)(B)(ii)(III));

---

[6] 140 Cong. Rec. 27630 (1994).

[7] *See* 11 U.S.C. § 524(g); *see also* 140 Cong. Rec. 27630 (1994).

    viii.    <u>75% Acceptance</u>. Any class of claimants whose claims are to be addressed by the trust must vote, by at least 75 percent, to approve the plan (11 U.S.C. § 524(g)(2)(B)(ii)(IV)(bb));

    ix.    <u>Appointment of FCR</u>. The court must appoint a legal representative to protect the rights of persons that might subsequently assert future claims against the debtor (11 U.S.C. § 524(g)(4)(B)(i)); and

    x.    <u>Injunction is Fair to Future Claimants</u>. The court must determine that the injunction with respect to future claims is fair and equitable (11 U.S.C. § 524(g)(4)(B)(ii)).

16. The appointment of a legal representative of the interest of future claimants is a critical component of the section 524(g) trust/injunction structure.

17. As highlighted in items "ix" and "x" above, Congress included the appointment of "a legal representative for the purpose of protecting the rights of persons that might subsequently assert [future] demands" and required that the court find that the injunction is fair and equitable to future claimants.[8] Congress noted that "this special representative was centrally involved [in *Johns-Manville*] in formulating the plan and negotiating support for it among the other creditors."[9]

18. The Third Circuit has similarly recognized the importance of the role of an FCR in good-faith asbestos bankruptcy cases in light of the "naturally conflicting interests" of present and future claimants.[10] The Third Circuit remarked that "[i]n light of this natural adversity and to protect the due process rights of the future claimants in bankruptcy proceedings, § 524(g) includes a requirement that the bankruptcy court appoint a legal representative for the purpose of protecting the rights of future claimants—the FCR—in the reorganization proceedings in order for the trust and channeling injunction to be valid and enforceable."[11]

---

[8] 11 U.S.C. § 524(g)(4)(B)(i), (ii).

[9] 140 Cong. Rec. 27630 (1994).

[10] *See In re Imerys Talc America, Inc.*, 38 F.4th at 366 (discussing natural tension between present and future claimants in asbestos bankruptcy cases.).

[11] *Id*. at 367 (internal quotations omitted).

19. Although Congress did not expressly provide the standard for appointment of an FCR, just last year, the Third Circuit in *Imerys* determined that a heightened standard beyond disinterestedness is required. As the Third Circuit held, the "FCR standard requires more than disinterestedness. *An FCR must be able to act in accordance with a duty of independence from the debtor and other parties in interest in the bankruptcy, a duty of undivided loyalty to the future claimants, and an ability to be an effective advocate for the best interests of the future claimants.*"[12] In so holding, the Third Circuit clarified that the standard is "*akin* to those employed for guardians *ad litem*".[13]

20. The Third Circuit further explained that its finding of a heightened standard beyond that for a "disinterested person,"[14] followed consideration of: (i) the Bankruptcy Code, (ii) the legislative history, (iii) the standards governing creditors' committees, and (iv) the administrability of the fiduciary standard. Specifically, the Third Circuit found that: (a) section 524(g) includes a term of art, "legal representative," which refers to "one who owes fiduciary duties to his absent, represented constituents;"[15] (b) the "history [of 524(g)] as concerns the disinterested person standard is at best inconclusive;"[16] (c) the standard for a creditor committee is analogous to that for an FCR "who functions, in effect, as a creditors' committee of one";[17] and (d) that "the question

---

[12] *Id.* at 374 (emphasis added).

[13] *Id.* at fn. 9.

[14] As defined in 11 U.S.C. § 101(14).

[15] *See In re Imerys Talc America, Inc.*, 38 F.4th at 375-76.

[16] *Id.* at 377.

[17] *Id.* at 378.

of whether a conflict exists is less relevant to an appointment than the nature of the conflict and importance of the conflict to the future claimants' interests."[18]

### II. Ms. Ellis Cannot Act Independent Of The Debtor, Nor Can She Advocate For Future Claimants With The Undivided Loyalty Required

21.     As the Third Circuit clearly articulated, a representative of the interests of future claimants must be more than disinterested—**such individual must be independent of the debtor and other parties in interest and act with undivided loyalty to effectively advocate for the best interests of future claimants**.  The Motion asks this Court[19] to appoint Ms. Ellis as FCR, citing in support Ms. Ellis's prior experience in LTL 1.0 and her general familiarity with the facts at issue.  Notwithstanding her role as FCR in LTL 1.0, on the facts discovered to date **in this case** ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████, Ms. Ellis cannot meet that heightened standard in LTL 2.0 and should not be considered by this Court for the role of FCR in this case.

22.     The TCC unequivocally submits that this case, like LTL 1.0, was filed in bad faith and should be dismissed.  While the TCC does not at this time seek to rehash in detail each of the

---

[18] *Id*. at 378.  The Third Circuit explained further that "[i]n a given instance, a purported ethical conflict might have minimal or no impact on an FCR's ability to successfully represent the future claimants' interests. For instance, the litigation giving rise to the conflict may be long over or subject to effective ethical walls at the FCR's firm. In such cases, the court, in its discretion, may well determine that the proposed FCR still meets the appointment requirements. The comparison to a creditors' committee is again instructive, for those members have some degree of inherent conflict in that they each have their own interests as individual creditors that are arguably adverse to other creditors. Yet they may still serve on the committee if they can act independently of their self-interest and fulfill their fiduciary duties to the creditors as a whole." *Id*. at 378-79.

[19] As an initial matter, the TCC notes that appointment of an FCR is entirely the Court's decision.  *See* 11 U.S.C. § 524(g)(4)(B)(i); *see also In re Imerys Talc America, Inc.*, 38 F.4th at 368 ("appointment of an FCR is ultimately left to the bankruptcy court, not the parties").

reasons why it believes this case was filed in bad faith and therefore should be dismissed,[20] it summarizes its position that, following the Third Circuit's decision in which it instructed this Court to dismiss the first bankruptcy case,[21] LTL (unsuccessfully in the TCC's view) devised a scheme to skirt and frustrate the Third Circuit's ruling and further delay talc claimants and impose inappropriate litigation leverage upon them.

23. The Debtor's scheme included (i) attempting to manufacture the financial distress that the Third Circuit found was absent in LTL 1.0 by terminating the 2021 Funding Agreement based on the Debtor's unsupported and facially absurd representation that it was "was no longer enforceable because it had become void or voidable"[22] (representing what the TCC submits is the largest fraudulent conveyance in United States history), (ii) manufacturing additional, potentially baseless, support for its plan,[23] and (iii) quelling as much potential opposition as possible. It is this third component, quelling opposition, that the TCC believes is informed by the Debtor's push to appoint Ms. Ellis as FCR.

24. In its effort to manufacture support for a plan in this case, at some point prior to filing, the Debtor approached certain plaintiff law firms with a Plan Support Agreement and Term Sheet attached thereto.[24] ███████████████████████████████████████

---

[20] A full description of the TCC's basis for dismissal may be found in the *Motion of the Official Committee of Talc Claimants to Dismiss the Second Bankruptcy Petition of LTL Management, LLC* [Docket No. 286].

[21] *See In re LTL Mgmt., LLC*, 64 F.4th 84 (3d Cir. 2023) (amended opinion).

[22] *See Declaration of John K. Kim in Support of First Day Pleadings* (the "Kim Declaration") [Docket No. 4] at ¶ 78.

[23] *See id.* at ¶ 8; *see also* Ex. 1, 8:24; 9:2; 11:24-12:2; 26:9-11 (Apr. 11, 2023, Hearing Tr.).

[24] *See* Kim Declaration ¶ 72.

██████████████████████████████████████████████████████████████

████████████████████████.

25. **First**, ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

26. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

27. Even assuming *arguendo* that Ms. Ellis was not involved with J&J's scheme—*i.e.*, text messages or emails between Ms. Ellis and J&J's representatives on this topic have not been produced—████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████

28. ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

11

29. ███████████████████████████████████████

███████████████████████████████████████

30. ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

31. **Second**, to make matters even worse, █████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

in the Boy Scouts of America bankruptcy case, Judge Silverstein summarily terminated one of the appointed mediators in that case following disclosure in a plan-related document of his proposed post-confirmation appointment as Special Reviewer in connection with the post-confirmation

---

[25] *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 235 (3d Cir. 2004), (as amended Feb. 23, 2005) ("Certain claims against Basic and Lummus allege independent liability, wholly separate from any liability involving Combustion Engineering. As the plain language of the statute makes clear, § 524(g)(4)(A) does not permit the extension of a channeling injunction to include these non-derivative third-party actions.").

Trust Distribution Procedures. As Judge Silverstein remarked, the individual's continued role as mediator is a "nonstarter" as he "now has a stake in the outcome of the mediation."[26] ▮

▮

32.  In sum, the Debtor is seeking the appointment of Ms. Ellis as FCR in LTL 2.0, ▮

▮ All the while, the Debtor attempted to rush her appointment through before an official committee was formed to object,[28] which runs counter to the thoughtful, measured process this Court implemented in LTL 1.0— including nominations by each party, the ability to unilaterally strike a nominee without further explanation, and limited discovery.[29]

33.  The final point that cannot be ignored ▮

---

[26]  *See In re Boy Scouts of America And Delaware BSA, LLC*, (Bankr. D. Del. Case No. 20-10343) (Hr'g. Tr. Dec. 7, 2021, 13:1-8).

[27]  ▮

[28]  *See Application for Order Shortening Time* [Docket No. 88].

[29]  *See Amended Case Management Order Setting Selection Protocol for Future Talc Claims Representative* [Docket No. 1135 in Case No. 21-30589].



34. Maybe there is an innocent explanation here, but any such explanation is not relevant under the applicable standard in *Imerys*. The damage has been done, the taint is manifest, and a clean slate is mandatory in this case. The Third Circuit requires that FCRs act independently from the Debtor and be able to zealously advocate for future claimants. Ms. Ellis, notwithstanding her prior appointment to that role in LTL 1.0, cannot be said to now meet that heightened standard in the instant case in light of the facts discovered. Accordingly, Ms. Ellis is disqualified from serving as the representative of future claimants' interests in this case.

### III. The Debtor's Desired Case Outcome Is Not Relevant To The FCR's Qualifications

35. The Debtor candidly admits that Ms. Ellis is the best candidate for the job and her appointment is otherwise critical to ensure future claimants are well represented because of her relative familiarity with the Debtor by virtue of her role in LTL 1.0 **insofar as such familiarity facilitates the Debtor's desire "to move quickly to obtain additional support for, and pursue confirmation of, a plan of reorganization that contains the terms set forth in the plan support agreements."** *See* Motion at ¶ 14 (emphasis supplied). Of course, the Debtor's desired case outcome is not relevant to the qualifications of the FCR, and the disclosed facts concerning Ms. Ellis renders her second appointment as FCR impermissible under *Imerys*.

---

30 ▮
31 ▮

14

36. **First**, the TCC has little doubt that an alternative, experienced FCR (of which there are several) can get caught up to speed in this case with the necessary alacrity. There is, in other words, no institutional knowledge that Ms. Ellis has by virtue of her participation in LTL 1.0 that cannot be obtained by another seasoned candidate. In LTL 1.0, Ms. Ellis ***never*** produced an analysis or a report in respect of "future" claims, and the TCC has serious doubts that one was even in the near horizon.

37. **Second**, the Debtor's desire to fast track a plan, which has questionable creditor support in a case that has serious concerns of legitimacy in the first place, has nothing to do with the qualifications of a fiduciary to serve the interests of future claimants. The Debtor's wishes simply do not matter here. Further, Mr. Ellis appointment will be met with an appeal, which if successful would place the debtor's plan back at square one. Section 524(g)'s requirements cannot be satisfied by the appointment of an FCR who does not meet the Third Circuit's standard.

38. **Third**, while the existence of an alternative option has no bearing on the qualifications of a particular candidate for the role of FCR, the TCC submits, contrary to the Debtor's assertions, that there are several other suitable candidates for the role in this case and that, if and when appropriate, the Court can utilize the procedures and protocols it utilized in LTL 1.0 to make an informed and appropriate appointment.

## CONCLUSION

For the foregoing reasons, the Motion should be denied.

                                                        Respectfully submitted,

                                                                 **GENOVA BURNS LLC**

Dated: April 26, 2023

                                        By: */s/ Donald W. Clarke*
                                                 Daniel M. Stolz, Esq.
                                                 Donald W. Clarke, Esq.
                                                 110 Allen Road, Suite 304
                                                 Basking Ridge, NJ 07920
                                                 Tel: 973-467-2700
                                                 Fax: 973-467-8126
                                                 Email:   dstolz@genovaburns.com
                                                                          dclarke@genovaburns.com

                                               *Proposed Local Counsel for the*
                                               *Official Committee of Talc Claimants*