MAUNE RAICHLE HARTLEY FRENCH & MUDD, LLC
Clayton L. Thompson, Esq.
cthompson@mrhfmlaw.com
Suzanne M. Ratcliffe, Esq.
sratcliffe@mrhfmlaw.com
150 West 30th Street, Suite 201
New York, NY 10001
Tel: (800) 358-5922

*Counsel for Mesothelioma Plaintiff Katherine Tollefson*
*and Certain Mesothelioma Plaintiffs*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| LTL MANAGEMENT LLC, | ) | Lead BK Case No: 23-12825-MBK |
| | ) | |
| Debtor. | ) | **Hearing Date: May 3, 2023** |

## MRHFM'S OPPOSITION TO DEBTOR'S MOTION TO APPOINT RANDI S. ELLIS AS FUTURE TALC CLAIMANTS' REPRESENTATIVE

Randi S. Ellis may be an accomplished mediator, special master, and trustee, but she's unfit to represent future talc plaintiffs in this bad faith bankruptcy that's destined for dismissal. The Debtor—undeterred by a record that compels Ms. Ellis' disqualification—insists she be appointed as FCR, and the sooner the better. MRHFM must oppose the Debtor's Motion because the evidence demands it.

The United States Court of Appeals for the Third Circuit found LTL Management filed its petition in bad faith, was not in financial distress, and critically, could pay *all*

claims—current and *future*—in **full**. *In re LTL Mgmt., LLC,* 64 F.4th 84 (3d Cir. 2023). Yet, despite the Circuit's decision, Ms. Ellis remained committed to binding future talc victims to a "compromise" they aren't party to with a Defendant (LTL) worth at least $61 billion. MRHFM objected to Ms. Ellis' fee applications for January and February on related grounds.[1]

The appearance of impropriety is overwhelming based on the testimony at the hearing on April 18th alone. After the Third Circuit decision and before *LTL1* was dismissed on April 4th, Ms. Ellis, all while owing fiduciary duties to future talc victims in her capacity as the FCR, appears to have:

1. consulted LTL's & non-debtor J&J's lawyers and expressed support for a second bankruptcy in defiance of the Third Circuit's determination that the first petition must be dismissed (Tr. 4/18/23, pgs. 95-96, 141-44);

2. agreed to terms that capped the liability of not only LTL, but also that of solvent, non-distressed non-debtor J&J—which has independent non-derivative liability—at $9 billion collectively, after the Circuit found that LTL, by itself, had at least $61 billion available to pay claims against it alone (Tr. 4/18/23, pgs. 145-46) (Mr. Kim discussing the amount to be placed in the trust, which presumably, Ms. Ellis supported);

3. approved allocating no more than 1/3 of the trust corpus to future victims over the next 25 years, compared to 2/3 of the value going to current claimants (and their lawyers), claimants who may or may not have cancer and whose cancer may or may not be linked to J&J's talc (Tr. 4/18/23, pg. 135, 137-38);

4. sought and/or accepted a role as claims administrator in exchange for her support of a second bankruptcy, in which position she would be allocating

---

[1] *See* Case No. 21-30589-MBK ("*LTL1*"), Dkts. 3806 & 3940.

proceeds between existing and future claimants (and be paid to do so) (Tr. 4/18/23, pgs. 88-89, 135, 137-38).

***None*** of this information was included in Ms. Ellis' Declaration in support of the Debtor's Motion for her appointment, signed on April 10th. *See* Case No. 23-12825-MBK (*"LTL2"*), Dkt 87-2. She ***did*** include a request for an additional $72,766.90 in fees that remain outstanding. *Id.* at ¶ 6(a).[2]

Ms. Ellis says she will act "in accordance with a duty of independence from the Debtor" and with "undivided loyalty to the future talc claimants" in *LTL2*. Ellis Decl., ¶ 4. But there is more than sufficient evidence that she failed to act in accordance with these duties in *LTL1* to disqualify her from consideration as FCR in *LTL2*.

## I.    NO FCR IS NEEDED IN *LTL2*

Until this Court addresses the challenges to its subject matter jurisdiction, an FCR should not be appointed. *See* TCC Mot. Dismiss, *LTL2*, Dkt. 286-1.[3] While the Court expressed the benefits of a 524(g) trust for all parties in its opinions in *LTL1* on February 25, 2022,[4] the Third Circuit rejected these benefits as basis for the exercise of jurisdiction:

---

[2] This is apparently for some of the work she did referenced above in March. She has already been paid $868,443.60.

[3] MRHFM supports the TCC's Motion.

[4]This view was shared by Ms. Ellis and her lawyers in *LTL1*: "[G]lobal resolution with a fully funded trust [is] the optimal result for future claimants." The Court "should be guided by what would best facilitate a global resolution in connection with continued mandatory mediation efforts." FCR Position Statement, Conclusion, *LTL1*, Dkt. 2724.

"absent financial distress, there is no reason for Chapter 11 and no valid bankruptcy purpose." *LTL Mgmt.,* 64 F.4th at 101-02.[5] "Given Chapter 11's ability to redefine fundamental rights of third parties, only those facing financial distress can call on bankruptcy's tools to do so." *Id.* at 110.

These tools might include appointing a legal representative for future claimants, estimation, and a channeling injunction in a good faith bankruptcy. But **none** of these tools are available to this Court in this case given the Circuit's holding in *LTL1*, especially with a pending motion challenging this Court's subject matter jurisdiction brought by the TCC. LTL Management is not entitled to enter bankruptcy's "safe harbor" because it was not and is not in distress and has not filed in good faith. *LTL Mgmt.,* 64 F.4th at 93. Moreover, the Third Circuit made clear in *In re Combustion Eng'g* that the rights of future claimants against solvent, non-distressed non-debtors in the tort system cannot be set aside by the votes of other claimants—no matter how many—or the "approval" of an FCR. *See* Paul Crouch Objection, *LTL2*, Dkt. 318.

In good faith 524(g) bankruptcies, where the company faces overwhelming asbestos liabilities and there is a limited fund for present and future claimants, a legal

---

[5] "Courts, therefore, have consistently dismissed ... petitions filed by financially healthy companies with no need to reorganize under the protection of Chapter 11.... [I]f a petitioner has no need to rehabilitate or reorganize, its petition cannot serve the rehabilitative purpose for which Chapter 11 was designed." *Citing In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 122 (3d Cir. 2004) (*quoting SGL Carbon,* 200 F.3d 154, 166 (3d Cir. 1999)).

4

representative is required to ensure future claimants are protected and compensated equitably with current claimants. That's *not* *LTL1* or *LTL2,* where if a limited fund exists, it was only through the machinations of an ersatz "debtor" and its corporate parent.

Moreover, even assuming *LTL2* was filed in good faith and not ripe for dismissal, Ms. Ellis cannot be appointed. Her conduct in *LTL1* and her secret and still largely hidden involvement in *LTL2* pre-petition, at a bare minimum, creates a fatal appearance of impropriety and lack of independence that requires denial of the Debtor's desperate plea that she be re-appointed.

## II.    Ms. Ellis is Unfit to be the FCR in *LTL2*

If the Court is disposed to appoint an FCR in LTL's second bad faith bankruptcy, it cannot be Randi Ellis.

### A.    <u>The Duties Ms. Ellis Owed Future Plaintiffs as the FCR in *LTL1*.</u>

As the Third Circuit wrote last year "a reorganization plan that [does] not address future claimants would fail to provide adequately for all parties with an interest in the debtor's assets." *In re Imerys Talc America, Inc.*, 38 F.4th 361, 365-366 (3d Cir. 2022). "Provided that [a] trust meets certain statutory requirements"—i.e., a financially distressed debtor, overwhelmed by asbestos liabilities that subjects itself to the jurisdiction of the bankruptcy court (*see* MRHFM Opp. Prelim. Inj., *LTL1*, Dkt. 2564, pgs. 10-16)—a channeling injunction can be issued. *Id.* at 366.

When there is a *legitimate* (rather than deliberately manufactured) limited fund of assets available to current and future plaintiffs, the potential for a "natural adversity" between the two types of claimants warrants the appointment of a representative to "protect[] the rights" of future claimants "in order for the trust and channeling injunction to be valid and enforceable." *Imerys*, 38 F.4th at 367, *quoting* 11 U.S.C. § 524(g)(4)(B), 524(g)(4)(B)(i); *citing* H.R. Rep. No. 114-352, at 10; *see also In re: The Fairbanks Company*, 601 B.R. 831, 838-839 (N.D. Georgia, 2019) ("The essence of due process is the right to participate in judicial proceedings that affect property interests. Because future claimants, by definition, cannot participate in the process of negotiating the terms of the plan, trust, and channeling injunction, they must have a representative."). This concept is not new to the law, but its validity depends on the existence of an actual limited fund.

The FCR's primary role is to "participate in the negotiation of the reorganization plan and object to terms that unfairly disadvantage future claimants." *Imerys*, 38 F.4th at 367. "Due process is meaningless if [the FCR] is unwilling to advocate their interests diligently, competently, and loyally." *Id.*; *see also "The Future Claims Representative In Prepackaged Asbestos Bankruptcies: Conflicts Of Interest, Strange Alliances, And Unfamiliar*

*Duties For Burdened Bankruptcy Courts,"* Plevin, Epley, and Elgarten, 2006 NYU Annual

Survey of American Law, Volume 62:271, Issue 2, at 278.[6]

That an FCR must be "more than merely disinterested, [but is] instead . . . able to

fulfill the heightened duties owed by fiduciaries" cannot be understated.  *Imerys*, 38 F.4th

at 376.  Section 524(g) "requires the Court to determine that a channeling injunction under

a plan is 'fair and equitable' with regard to future claimants before confirming it."

*Fairbanks*, 601 B.R. at 838-839. "The 'fair and equitable' statutory language is meaningful

only if the FCR is an objective and effective advocate for the unknown claimants whose

interest the statute protects." *Id*.

For this reason, "[a]n FCR must be able to act in accordance with a duty of

independence from the debtor and other parties in interest in the bankruptcy, a duty of

undivided loyalty to the future claimants, and an ability to be an effective advocate for

the best interests of the future claimants."  *Imerys*, 38 F.4th at 374.

---

[6] "The need for an independent representative of future claimants, loyal only to future claimants, arose
from the recognition that the interests of all the other parties, including the debtor and current claimants,
were adverse to the interests of the future claimants." (*citing Johns-Manville Corp.*, 36 B.R. 743, 759 (Bankr.
S.D.N.Y. 1984)).

**B.** **Ms. Ellis Breached Her Duties to Future Plaintiffs Even _Before_ the Third Circuit Decided this Case.**

The Court appointed Ms. Ellis "Legal Representative for Future Talc Claimants" ("the FCR") in _LTL1_ on March 18, 2022. _See_ Dkt. 1786. The Debtor argues that because the TCC was in favor of Ms. Ellis' appointment at the time, that means all plaintiffs must abide by Ms. Ellis' actions since that time. Debtor Mot., pg. 5. Ms. Ellis' conduct since her appointment are cause for her not to be appointed again. What the parties may or may not have said in March of 2022 means nothing.

The record was full of support for protecting the Constitutional rights of future plaintiffs well before the FCR issued her "Position Statement" on July 15th (Dkt. 2724). _See eg.,_ MRHFM Opp. Prelim. Inj., Dkts. 2564 (filed June 22nd). Ms. Ellis ignored it. In late June, she focused on "estimation research" (2.5 hours), "asbestos and ovarian cancer epidemiology" (2.6 hours), "pending bankruptcies with similar facts and proceedings" (3.6 hours), and the "facts regarding science and liability of civil cases" (3.5). _See_ Dkt. 2697-3, entries for June 22-24, 26 & 28. She did read the briefs filed with the Circuit by the appellants, the DOJ, and _amici_ in early July.[7]

---

[7] The FCR reviewed appellate briefing by the TCC for 1.0 hour (0.6 hours on June 30 (Dkt. 2688-3, June Fee App.)) and 0.4 hours on July 2, Arnold & Itkin for 0.2 (July 2), Aylstock for 0.2 (July 2), the Ad Hoc of Mesothelioma Claimants 0.4 (July 2), the United States Trustee for 0.3 (July 2) and spent an additional 0.5 reviewing appellate briefs in general on July 3 (Dkt 2872-3, July Fee App.). 1.0 + 0.2 + 0.2 + 0.4 + 0.3 + 0.5= 2.6 hours.

But rather than *protect* the rights of future plaintiffs, Ms. Ellis wholly adopted and

advocated for LTL's and J&J's claimed value judgments about the jury system, instead.

Statement, ¶ 4. In her "Position Statement" (Dkt. 2724) Ms. Ellis expressed the following:

1) A "court-approved global settlement embodied in a consensual confirmed plan is in the best interests of future claimants and is the preferable path forward for resolution of this bankruptcy case." ¶ 1.

2) Justice would be best served through a court supervised settlement trust arrangement "embodied in a confirmed plan under the Bankruptcy Code where both current and future claimants will be treated in substantially the same manner." ¶ 3.

3) "Present claimants also have ample reason to seek global resolution to avoid the delays and inconsistent results inherent in the tort system. Here, with expedited, possibly existential appeals pending, there is every incentive for the parties to move as quickly as possible to seek compromise." ¶ 4.

4) "[G]lobal resolution with a fully funded trust [is] the optimal result for future claimants." The Court "should be guided by what would best facilitate a global resolution in connection with continued mandatory mediation efforts." ¶ Conclusion.

Appearing by counsel on July 26th, the FCR stated: "Chapter 11, as Your Honor

knows, is in the first instance, a compromise process," "we're seeking compromise." Ex.

1, Tr. 7/26/2022, pg. 76. "As the FCR has noted, at the present time, she sees a global

resolution with a fully funded trust as the optimal result for future claimants and she

takes that role very seriously." *Id.*, pg. 77.

There was no reason to compromise or settle with a Debtor that could pay all

victims in full, *especially* with an "existential appeal" pending. The FCR is unique

because her constituency does not exist until plan confirmation. Therefore, of all the parties-in-interest, Ms. Ellis had zero need to work quickly towards a "settlement" before the Third Circuit could—as it turns out—dismiss the case.

Section 524(g) is not a menu choice for non-distressed billionaires that would prefer to avoid the tort system and cap their liabilities. MRHFM briefed these issues at length in *LTL1*. *See* Dkts. 2564, 2711, 2717, 2968, 3003, and 3117. So did several *amici* and other parties both to this Court and to the Third Circuit.

The fact that LTL can "pay current and future claimants **in full**" inside and outside of bankruptcy should have ended the FCR's analysis. *See LTL Mgmt.*, 64 F.4th at 109 (emphasis). This was the Debtor's representation at the first day hearings, the motion to dismiss trial (Ex. 2, Tr. 2/18/22, pgs. 60-61_), and at oral argument to the Circuit in September ("$61 billion is only a floor, not a ceiling" to pay claims). Ex. 3, Tr. 9/19/22, pg. 65. MRHFM cited the Debtor's appellate court representations to Mr. Feinberg (served on all parties on October 7th) and in objecting (on February 27th) to Ms. Ellis' fee applications for work she performed after the Circuit's decision. *See LTL1*, Dkts. 3117, pgs. 3-4 and 3806, pg. 3.

The FCR was repeatedly on notice of indisputable evidence—from LTL's own lips—that there was an ***unlimited*** fund available to compensate all current and future plaintiffs in full inside or outside of bankruptcy (i.e., the tort system) but she remained

undeterred. Ignoring all of this, Ms. Ellis (1) tried to force her preference for a bankruptcy trust that artificially limited the otherwise unlimited funds available to LTL to satisfy its liabilities and (2) advocated for discharging the independent non-derivative liability of non-debtor Johnson & Johnson. These positions were in direct violation of the admonition of the Third Circuit in a prior 524(g) case that future claimants may well prefer (and thus have the right to elect) tort system recourse against solvent non-debtors instead of pursuing claims against a trust. *See In re Combustion Eng'g,* 391 F.3d 190, 237-238 (3d Cir. 2004).

The FCR had **zero power** to do any of this and she breached her fiduciary duties to future plaintiffs by continually trying. LTL said it was worth at least $61 billion and could pay all plaintiffs in full. Unless and until there was credible evidence that the Debtor's liabilities (not including J&J's independent non-derivative liabilities) *exceeded* $61 billion, Ms. Ellis' only duty under Third Circuit precedent—and state tort law and the Constitution of the United States of America—was to preserve future claimants' rights to full recourse in the tort system. Her actions in *LTL1* before the Third Circuit decision should disqualify her for *LTL2*

. The FCR's job is to maximize what's available to future plaintiffs, not to artificially cap the tortfeasor's liability in a "full pay" case.

C.  **What the Third Circuit Held on January 30th.**

After extensive briefing and hours of oral argument, the Third Circuit issued a thorough point by point rejection of Johnson & Johnson's bankruptcy scheme. The Circuit found Old JJCI to be worth at least $61.5 billion—for its own liabilities and not conditioned on non-debtor J&J obtaining a discharge—that LTL had access to this amount through the Funding Agreement, and that this unconditional access to massive assets dwarfed any future projection of LTL's liability stream in state and federal trial courts. *LTL Mgmt.*, 64 F.4th at 95.

Discussing the progression of talc litigation in the tort system and this Court's "conjectures" of future liability, "we can infer only that LTL, at the time of its filing, was highly solvent with access to cash to meet comfortably its liabilities as they came due for the forseeable future." *Id.* at 108. This meant LTL was not in financial distress, not entitled to bankruptcy protection, and that all plaintiffs could be paid in full in the tort system.

The Circuit discussed at length (and rejected) this Court's, the Debtor's, and J&J's view (shared by Ms. Ellis) that the benefits of a 524(g)-bankruptcy trust compared to

litigation in the tort system made the exercise of bankruptcy court jurisdiction over *LTL1*

appropriate, notwithstanding the factual record:[8]

> The Court ultimately saw the bankruptcy forum as having a superior
> ability, compared to trial courts, to protect the talc claimants' interests,
> viewing this as an "unusual circumstance []" that precluded dismissal…the
> Court provided a full defense of its "strong conviction that the bankruptcy
> court is the optimal venue for redressing the harms of both present and
> future talc claimants in this case."

*Id.* at 99 (internal citations omitted). The Circuit disagreed and reversed. "[R]esort to

Chapter 11 is appropriate **only** for entities facing financial distress," which "ensures that

claimants' pre-bankruptcy remedies—here, the chance to prove to a **jury of their peers**

injuries claimed to be caused by a consumer product—are disrupted only when

necessary." *LTL Mgmt.*, 64 F.4th at 111 (emphasis).

Ms. Ellis attended oral argument before the Circuit in person. *See* Dkt. 3138-3, pg.

5. Tellingly, Judge Fuentes asked "I assume that [future cases being litigated outside of

bankruptcy] would protect people who were exposed years down the road. They would

not be subject to bankruptcy, of course. But they would be protected." Tr. 9/19/2022, pgs.

22-23. Judge Ambro had this revealing exchange with Debtor's counsel:

---

[8] Ms. Ellis wrote in July that a "court-approved global settlement embodied in a consensual confirmed plan
is in the best interests of future claimants and is the preferable path forward for resolution of this
bankruptcy case." See Position Statement, ¶ 1 (*LTL1*, Dkt. 2724).

**Counsel**: Now you had asked before, Your Honor, I just have to slightly correct something. I understand that the funding agreement does have provisions for funding outside of bankruptcy.

**The Court**: Yeah, **that's what I thought**.

**Counsel**: Yes. So I apologize for that. But our—

**The Court**: What are the **opt-outs** that are being considered?

**Counsel**: So the 524(g) process has—

**The Court**: People who can say I don't want to be part of the bankruptcy, I'm going to **opt out** and go forward with respect to **my litigation**.

**Counsel**: Yeah. So, I mean, I think Congress put that into the statute itself saying there has to be a 75 percent requirement for the plan and then, of course, there's two-court review. So there's a lot that has to happen. And I think the most important point about that is—

**Court**: You contemplate that this plan even though it's not yet in place will allow for any type of **opt-out**?

**Counsel**: I don't know that we have gotten that far. *See* Tr. 9/19/2022, pgs. 83-84 (emphasis).

The Third Circuit recognized the way to protect future plaintiffs against a defendant *not* in financial distress is to preserve their unrestricted access to the tort system. Ms. Ellis refused to recognize this, let alone advocate for it.

**D.**  **Ms. Ellis Breached Her Duties to Future Plaintiffs *After* the Third Circuit Decided this Case.**

MRHFM objected to FCR's fee submissions for time entries after the Third Circuit's decision on January 30th. *See LTL1*, Dkts. 3806 & 3937. Rather than support her position with law or facts, the FCR and her lawyers decried MRHFM's objection as "venomous" (Dkt. 3941) and "inflammatory." Dkt. 3816.

On February 27, 2023, the FCR's lawyers wrote to this Court:

14

[T]he FCR and its counsel […] must continue to discharge their fiduciary obligations as officers of this Court. Thus, pending further direction or Order of the Court, the FCR and Walsh, along with her experts, will continue to represent the interests of future claimants, as they, in their professional judgment deem necessary, with the goal of maximizing any recovery either by way of **future litigation <u>or</u> settlement**. FCR Letter, 2/27/2022, pg. 1, Dkt. 3816 (emphasis).

Deciding between permitting future Americans with talc caused cancer to vindicate their unambiguous Constitutional rights and to pursue the full measure of state law damages in "future litigation," on the one hand, versus binding them to a bad faith bankruptcy "settlement" on the other, is ***not*** the FCR's role and far beyond her power. MRHFM gave the FCR and her lawyers the opportunity to provide legal support in response to the Firm's objections to her fee submissions, but then, ***as now***, none was provided.

The Third Circuit made significant findings that rendered an FCR superfluous, discussed *supra*, yet Ms. Ellis continued to try and force her value judgments—at $1,000/hour—on tens of thousands of future talc victims in the weeks after the Third Circuit decided this case. Settlements are desirable, but not when crammed down on objecting current plaintiffs and on ***all*** future ones, especially after the appeals court vindicated the rights of all plaintiffs.

Testimony offered on April 18th at the hearing on the preliminary injunction in *LTL2* compel disqualifying Ms. Ellis as a candidate for FCR in this case. John Kim, Chief

Legal Officer for LTL, testified that the term sheet for *LTL2*, prepared in mid-March, said "Randi Ellis shall serve as claims administrator of the Talc Trust for purposes of qualifying claimants and allocating proceeds to be distributed amongst all existing and future qualifying claimants." <u>Ex</u>. 4, Tr. 4/18/23, pgs. 88-89.

At an LTL board meeting on March 16th—six days *before* LTL urged the Circuit to stay the mandate because "important" issues required Supreme Court intervention and it was "reasonable to expect" it would grant certiorari to "bring circuits into alignment"[9]—LTL was secretly hatching its next bad faith bankruptcy. Part of this was "gauging" whether Ms. Ellis would support one. Tr. 4/18/23, pgs. 93-94.

In the term sheet attached to a plan support agreement dated March 21st, a contingency related to a second bankruptcy filing was "the future claims representative agreement that she will **not assign more than one third** of the trust corpus to qualifying future claims." Tr. 4/18/23, pg. 135 (emphasis). Mr. Kim admitted the "future claims representative" referenced was Ms. Ellis. Tr. 4/18/23, pgs. 137-38. He testified this contingency was drafted by James Murdica, outside counsel for Johnson & Johnson, on LTL's behalf. *Id.*

---

[9] Case No. 22-2003,Dkt. 173, Motion to Stay Mandate, Mar. 22, 2023, pg. 22.

On March 28th, *after* eleven Third Circuit judges had unanimously denied rehearing and LTL's motion to stay the mandate was pending, LTL's Board minutes note "separate discussions have occurred with FCR" and that Ms. Ellis *was supportive* of a second bankruptcy if the first was dismissed. Tr. 4/18/23, pgs. 95-96, 141-44.[10] When LTL filed its motion seeking Ms. Ellis' appointment as FCR in *LTL2* (Dkt. 87-1), neither LTL nor Ms. Ellis (Dkt. 87-2) disclosed that she had been listed as a prospective claims administrator whose responsibilities would include allocating proceeds between existing and future claimants (Tr. 4/18/23, pg. 140), let alone her commitment to apportion only 1/3 of the trust corpus to future claims.

In sum, more than reasonable inferences from the evidence testified to by LTL's Chief Legal Officer show that while Ms. Ellis was still serving as the FCR in *LTL1*, she supported a second yet-to-be-filed bankruptcy, she agreed to cap LTL's and J&J's total liability at $9 billion, she committed to signing a declaration in support of a bankruptcy plan, she sought a position as claims administrator, and she was willing to apportion only

---

[10] The group of eleven Third Circuit judges weighing and rejecting LTL's rehearing request included several involved in prior 524(g) bankruptcy rulings. *See In re Imerys Talc America, Inc.*, 38 F.4th 361 (3rd Cir. 2022) (Hon. Krause, Hon. Bibas); *In re W.R. Grace & Co.*, 13 F.4th 279 (3rd Cir. 2021) (Hon. Fuentes, Hon. Krause); *In re Energy Future Holdings Corp*, 949 F.3d 806 (3rd Cir. 2020) (Hon. Krause, Hon. Matey); *In re W.R. Grace & Co.*, 900 F.3d 126 (3rd Cir. 2018) (Hon. Ambro, Hon. Restrepo); *In re W.R. Grace & Co.*, 729 F.3d 311 (3rd Cir. 2013) (Hon. Jordan, Hon. Ambro); *In re Federal-Mogul Global Inc.*, 684 F.3d 355 (3rd Cir. 2012) (Hon. Jordan); *In re Global Indus. Technologies, Inc.*, 645 F.3d 201 (3rd Cir. 2011) (Hon. Jordan, Hon. Fuentes, Hon. Ambro); and *In re Combustion Engineering, Inc.*, 391 F.3d 190 (3rd Cir. 2004) (Hon. Ambro, Hon. Fuentes).

1/3 of the trust value to thousands of future plaintiffs for the next 25 years. Tr. 4/18/23, pg. 144. ***And she did all of this after*** the Third Circuit found that the "fundamental rights" of plaintiffs could not be impaired because LTL filed in bad faith and was not distressed. *LTL Mgmt.*, 64 F.4th at 110.

In all the above, Ms. Ellis breached her fiduciary duties to protect the due process rights of future plaintiffs (*Imerys*, 38 F.4th at 367), to act independently of the Debtor, and to give her undivided loyalty to future victims. *Imerys*, 38 F.4th at 374. It is worth noting that the Debtors' representations of the existence of new current claimants is inherently adverse to the position of undiagnosed future claimants. An FCR should be deeply skeptical as to the new numbers of claimants being bandied about by the law firms who seem to have discovered tens of thousands of claims over the past 18 months. Ms. Ellis ignores this issue, further calling into question whether she intends to represent the interests of future J&J victims, or a liability-free future for Johnson & Johnson.

Johnson & Johnson—which LTL admits controlled all the negotiations related to the scheme to rescind the 2021 Funding Agreement and replace it with the current, conditional, limited, and contingent 2023 Funding Agreement[11]—demands (and Ms. Ellis appears poised to deliver) a discharge of its independent non-derivative liability. And

---

[11] *See* TCC Obj. Prelim. Inj., pgs. 6-10, 14-19 (Case No. 23-01092-MBK, ("*LTL2* Adv. Pro."), Dkt. 39.

the proposal that current plaintiffs receive 2/3 of all trust value reveals J&J's true goal:

pay current claimants—many of whom may or may not have cancers linked to talc—

disproportionately to gain plan approval that shortchanges all future victims for the next

25 years. The FCR's apparent involvement with J&J in this endeavor is indefensible.

All of this must disqualify Ms. Ellis from being the FCR in *LTL2*.

### III.    IF MS. ELLIS IS APPOINTED FCR SHE CANNOT REPRESENT FUTURE PLAINTIFFS AGAINST NON-DEBTOR JOHNSON & JOHNSON

Johnson & Johnson has independent non-derivative tort liability for all J&J's talc

products for all time. This liability stream is wholly separate from LTL's and cannot be

contracted away. *See* MRHFM Opp. Prelim. Inj., pgs. 15-26 (*LTL2* Adv. Pro. Dkt. 60). An

FCR for future plaintiffs against LTL Management cannot also represent future plaintiffs

against Johnson & Johnson. *See Combustion Eng'g,* 391 F.3d at 237-238.[12]

Section 524(g) "provides a special form of supplemental injunctive relief for an

insolvent debtor facing the unique problems and complexities associated with asbestos

liability." *In re W.R. Grace & Co.,* 729 F.3d 311, 319–20 (3d Cir. 2013) (citing *Combustion*

*Eng'g, Inc.,* 391 F.3d at 234; *In re Fed–Mog. Global, Inc.,* 684 F.3d 355, 362 (3d Cir. 2012)).

---

[12] Even if the right to indemnity existed, only if J&J were found liable for its own tortious conduct by a state or Article III federal court and jury, could J&J then press a contractual indemnification claim against LTL. And there is no dispute that prior to 1979, Johnson & Johnson owned and operated the talc products business directly. The pre-1979 independent liability is indisputable and more than sufficient to preclude the FCR from purporting to represent future claimants against solvent non-debtor Johnson & Johnson *and* against the Debtor.

However, the section "provides no specific authority to extend a channeling injunction to include third-party actions against non-debtors where the liability alleged is not derivative of the debtor," and "the general powers of § 105(a) cannot be used to achieve a result not contemplated by the more specific provisions of § 524(g)." *Combustion Eng'g, Inc.*, 391 F.3d at 236-37.[13]

In *Combustion Eng'g*, where non-debtor affiliates with independent liability—like J&J, here—were denied a permanent injunction, the Third Circuit wrote that a ***separate*** future claimants' representative would have been required to even consider giving the non-debtors injunctive relief:

> Neither court here [bankruptcy or District Court] made explicit findings whether the § 524(g) requirements were satisfied with respect to the channeling injunction as applied to the independent, non-derivative claims against Basic and Lummus. Nor did the Bankruptcy Court formally appoint a **separate** representative to act on behalf of future asbestos claimants asserting non-derivative claims against Basic and Lummus…the interests of the future Basic and Lummus asbestos claimants are not necessarily aligned with those of future Combustion Engineering asbestos claimants. The future asbestos claimants of the non-debtors might prefer having recourse against **solvent entities** rather than being limited to proceeding against the Asbestos PI Trust, a **limited fund** subject to depletion by current and future Combustion Engineering asbestos claimants. As such, the channeling injunction against these future asbestos claimants may not have accorded them the **requisite protections**. We will vacate the Basic and Lummus channeling injunction because § 105(a) under these facts cannot

---

[13] The Circuit reasoned that even if "some asbestos claimants here may benefit from an augmented fund, equity does not permit non-debtor affiliated entities to secure the benefits of Chapter 11 in contravention of the plain language of § 524(g)." *Id.* at 237.

be used to circumvent the more specific requirements of § 524(g). *Combustion Eng'g,* 391 F.3d at 237-38 (emphasis).

Therefore, *if* Ms. Ellis is appointed FCR for future plaintiffs against Debtor LTL Management, she cannot represent future plaintiffs against non-debtor Johnson & Johnson or any other non-debtor affiliates for their independent non-derivative liability.

## IV.   IF MS. ELLIS IS APPOINTED FCR SHE MUST PROTECT THE RIGHTS OF FUTURE PLAINTIFFS TO UNCAPPED DAMAGES, JURY TRIALS, AND FULL TORT SYSTEM RECOURSE AGAINST LTL

After the paper shuffling in early April, LTL Management is still *not* in financial distress and all plaintiffs can be paid in full.[14]  Mr. Kim testified: "we believe we have sufficient funds to meet the liability" but (according to him) LTL is allegedly in "financial distress because of the magnitude of the liability." Tr. 4/18/23, pg. 180. There is zero evidence that LTL's liabilities exceed its ability to pay. Mr. Kim admits that—even now—the 2021 Funding Agreement still applies and that it applies *outside* of bankruptcy. *See* Tr. 4/18/2023, pg. 61; TCC Motion to Dismiss, *LTL2,* Dkt. 286-1, pgs. 9-16. Key admissions from Mr. Kim and LTL CFO Richard Dickinson show LTL 2.0 has the same ability to pay talc claims as LTL 1.0. Ex. 5, Paul Crouch Suppl. Obj. and Designation of Testimony (*LTL2* Adv. Pro. Dkt. 62).

---

[14] *See* TCC Obj. Prelim. Inj., pgs. 23-26 (*LTL2* Adv. Pro. Dkt. 39); MRHFM Opp. Prelim. Inj., pgs. 10-14 (*LTL2* Adv. Pro. Dkt. 60); MRHFM Supp. Obj. (*id.,* Dkt. 65).

On these facts, an FCR is ***not*** needed as to the Debtor, especially since challenges to this Court's subject matter jurisdiction are pending. However, if Ms. Ellis is appointed, her duty is to protect full tort system recourse with uncapped damages for all future victims against LTL.

## V.    CONCLUSION

MRHFM's plaintiffs demand to be in the tort system and will accept nothing less. Future plaintiffs, poisoned by J&J's talc, must have these same rights. Ms. Ellis has shown she is unable or unwilling to protect them.

Respectfully submitted:

**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD, LLC**

_____
Clayton L. Thompson, Esq.
**MAUNE RAICHLE HARTLEY**
**FRENCH & MUDD, LLC**
150 W. 30th Street, Suite 201
New York, NY 10001
(800) 358-5922
cthompson@mrhmflaw.com