# **EXHIBIT 4**



```
                                                              1

   UNITED STATES BANKRUPTCY COURT
   DISTRICT OF NEW JERSEY
   ------------------------------------------------X
   In Re:


   LTL MANAGEMENT, LLC,

                                    Debtor.


   Case No. 21-30589 (MBK)
   ------------------------------------------------X

              ***CONFIDENTIAL***




   VIDEOTAPED DEPOSITION OF RICHARD DICKINSON




   DATE:   April 17, 2023

   TIME:   10:02 a.m.

   PLACE:  ***REMOTE***

   BEFORE: Rebecca Schaumloffel, RPR, CCR-NJ

   JOB NO:  2023-893393
```

```
                                                                    2
 1

 2     A P P E A R A N C E S:

 3


 4


 5     BROWN RUDNICK
            Attorneys for the Talc Claimants
 6          7 Times Square
            New York, New York 10036
 7          BY:  LYDELL BENSON, ESQ.
                 MARK S. BALDWIN, ESQ.
 8


 9


10


11
       GENOVA BURNS, LLC
12          Attorneys for Creditors' Committee
            110 Allen Road, Suite 304
13          Basking Ridge, New Jersey
            BY:  DANIEL STOLZ, ESQ.
14


15


16


17     JONES DAY
            Attorneys for the Debtor
18          250 Vesey Street
            Suite 31
19          New York, New York 10281
            BY:  JAMES JONES, ESQ.
20               MARK RASMUSSEN, ESQ.

21


22


23     LEVY KONIGSBERG
            Attorneys for Talc Claimants
24          605 Third Avenue, 33rd floor
            New York, New York 10158
25          BY:  JEROME BLOCK, ESQ.
```

Case 23-12059-MBK Doc 286-5 Filed 04/28/23 Entered 04/28/23 16:20:09 Desc
Exhibit 4 to Exhibit 3 Declaration Page 5 of 20

3

```
 1

 2

 3   Appearances (continued:)

 4

 5

 6     LOWENSTEIN SANDLER
            1251 Avenue of the Americas
 7          New York, New York 10020
            BY:  JENN KIMBLE, ESQ.
 8

 9

10

11     OFFICE OF THE UNITED STATES TRUSTEE
            Attorneys for the United States
12          Department of Justice
            One Newark Center
13          Suite 2100
            Newark, New Jersey 07102
14          BY:  JEFF SPONDER, ESQ.

15

16

17
       PACHULSKI STANG ZIEHL & JONES
18          Attorneys for Arnold & Itkin
            10100 Santa Monica Boulevard
19          13th floor
            Los Angeles, California 90067
20          BY:  KAREN DINE, ESQ.

21

22

23     THE RUCKDESCHEL LAW FIRM, LLC
            Attorneys for Paul Crouch
24          8357 Main Street
            Ellicott City, Maryland 21043
25          BY:  JONATHAN RUCKDESCHEL, ESQ.
```

```
                                                                    4
 1

 2

 3    Appearances (continued:)

 4

 5
      SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
 6         Attorneys for the Debtors
           One Manhattan West
 7         New York, New York 10001
           BY:  (No appearance)
 8

 9

10

11    WHITE & CASE
           Attorneys for Johnson & Johnson
12         767 Fifth Avenue
           New York, New York 10153
13         BY:  JOSHUA WEEDMAN, ESQ.
                KATHRYN KUETHMAN, ESQ.
14

15

16    WOMBLE BOND DICKINSON
           Attorneys for Ad Hoc Committee of
17         States Attorney Generals
           100 Light Street
18         26th floor
           Baltimore, Maryland 21202
19         BY:  LISA TANCREDI, ESQ.

20

21

22    ALSO PRESENT:

23
           Deane Carstensen, Lexitas
24         John Kim, Esq.

25
                *         *         *
```

5

```
1                R. DICKINSON
2         THE VIDEOGRAPHER:  We are now on
3    the record.  Today's date is April 14,
4    2023, and the time right now is
5    10:04 a.m. Eastern Daylight Time.
6         This is the video deposition of
7    Richard Dickinson in the matter of LTL
8    Management, LLC, filed in the United
9    States Bankruptcy Court, District of
10   New Jersey, case number 23-12825
11   (MBK).
12        This deposition is taking place
13   via web video conference with all
14   participants attending remotely.
15        My name is Dean Carstensen.  I'm
16   the videographer representing Lexitas.
17        Counsel will be noted on the
18   stenographic record.
19        And our court reporter today is
20   Rebecca Schaumloffel, also
21   representing Lexitas.
22        The court reporter can now swear
23   in the witness and then we may
24   proceed.
25        THE COURT REPORTER:  And just to
```

```
                                                6
1               R. DICKINSON

2      note:  Today's date is April 17, 2023.

3

4

5   RICHARD DICKINSON, called as a witness,

6   having been first duly sworn by a Notary

7   Public of the States of New York, New

8   Jersey, and Pennsylvania was examined and

9   testified as follows:

10          MR. JONES:  Lydell, excuse me,

11      just for a second.

12          Mr. Dickinson, excuse me, as

13      well.

14          We have a standing agreement

15      with the committee in these cases

16      about provisional confidentiality of

17      the transcript.  It should be marked

18      as confidential pursuant to that

19      agreement.

20          We will be making new

21      designations of confidentiality within

22      24 hours of receiving the final

23      transcript, but anyone on the call now

24      who will not abide by provisional

25      confidentiality should sign off.  I
```

7

```
1                R. DICKINSON
2      know Mr. Sponder is going to make a
3      statement, and that's fine.
4            But, others, please sign off if
5      you're not willing to abide by
6      provisional confidentiality.
7            Thank you very much.
8            MR. SPONDER:  Hi.  This is Jeff
9      Sponder from the office of the United
10     States Trustee.
11           Judge Kaplan made a ruling on
12     this past Thursday carving out the
13     United States Trustee from the
14     District of New Jersey,
15     confidentiality or protective order,
16     and the United States Trustee did not
17     sign on to the prior case, LTL I one
18     Protective Order.
19           Thank you.
20           MR. BENSON:  All right.  I think
21     we can get started.
22  EXAMINATION BY
23  MR. BENSON:
24     Q.    Good morning, Mr. Dickinson.
25     A.    Good morning.
```

```
                                                          8
 1                  R. DICKINSON
 2      Q.   Can you hear me okay?
 3      A.   I can.
 4      Q.   All right.  My name is Lydell
 5   Benson.  I'm an attorney with Brown Rudnick.
 6   Brown Rudnick, we represent the Official
 7   Committee of Talc Claimants.
 8           How are you doing this morning?
 9      A.   I'm doing great.  How are you?
10      Q.   I'm doing well.
11           Are you represented by counsel
12   this morning?
13      A.   I am.
14      Q.   Could you please state your full
15   name for the record?
16      A.   Richard Frank Dickinson.
17      Q.   Mr. Dickinson, you were deposed in
18   connection with LTL's first bankruptcy,
19   correct?
20      A.   That is correct.
21      Q.   By Jeff Jonas, right?
22      A.   And others, correct.
23      Q.   And was that your first
24   deposition?
25      A.   Yes.
```

```
                                                          9
 1                   R. DICKINSON
 2       Q.    Was that the last time you were
 3   deposed?
 4       A.    That is.
 5       Q.    Okay.  Well, given that, let me go
 6   over a few housekeeping matters for today's
 7   deposition.
 8             The court reporter will take down
 9   my questions and your answers, so it's
10   critical that you provide verbal responses to
11   my questions.  Sometimes deponents will nod
12   their head or respond with uh-hum or mh-hmm
13   or hm-hmmm.  I will correct you if that
14   happens, but if you can try your best to give
15   verbal responses, that would be great.
16             It's also critical that only one
17   of us are speaking at a time, including your
18   counsel when we might be engaged in the back
19   and forth.  So I will do my best to allow you
20   to finish answering your question and I would
21   ask that you allow me to finish asking my
22   question before you begin.
23             Is that clear?
24       A.    Yes.  Mr. Benson, it's a little
25   muffled at times to hear you.
```

```
                                                      10
 1                    R. DICKINSON
 2       Q.    How about now?
 3       A.    I think that's better, but...
 4       Q.    Okay, I'll try my best.
 5             THE COURT REPORTER:  I was going
 6       to say the same thing.  You were going
 7       in and out.
 8             MR. BENSON:  Okay.  How about
 9       now?
10             THE COURT REPORTER:  Now seems
11       okay.
12             MR. BENSON:  Okay, good.
13             MR. BLOCK:  If you just keep
14       your voice up, I think that will be
15       fine.
16             MR. BENSON:  Okay, I can do
17       that.
18  BY MR. BENSON:
19       Q.    Mr. Dickinson, if you do not
20  understand a question, please ask for
21  clarification.  If you cannot hear my
22  question or if I'm not speaking loud enough,
23  you know, as you just did, please let me know
24  and I will try my best to raise my voice.
25             I may ask a bad question.  If I
```

```
                                                              11
 1                    R. DICKINSON
 2    do, just let me know; I will try to rephrase
 3    it, have it read back.
 4              You understand that today you are
 5    giving testimony under oath?
 6         A.   I do.
 7         Q.   You understand that means that you
 8    are legally obligated to answer these
 9    questions truthfully?
10         A.   I do.
11         Q.   So we are seeking complete
12    information that encompasses all of your
13    knowledge on the subjects that we will cover
14    today.  And the purpose is for you to provide
15    complete and truthful answers.
16              Is there any reason that you're
17    aware of that you cannot testify completely
18    and honestly today?
19         A.   No.
20         Q.   You are welcome to ask for a
21    break, but I do ask that if I'm in the middle
22    of a question or if I have a pending
23    question, that you just let me finish that
24    before the break.  You don't need to give me
25    a reason why, that's totally fine.
```

12

```
 1                  R. DICKINSON
 2           Is that understood?
 3      A.   Thank you for that, Mr. Benson.
 4   Yes, it's understood.
 5      Q.   All right.  If during the
 6   deposition, you remember something that
 7   changes a previous answer, please -- so you
 8   can correct your prior answer.
 9           Also, you may hear objections to
10   certain questions, which is fine.  In the
11   event that that happens, you should still do
12   the best that you can to answer my question.
13   If you are instructed not to answer, it's up
14   to you to take that advice of counsel.
15           And, again, just to reorient you,
16   just because we are taking a remote
17   deposition, what we'll do is I'll call out
18   documents, for example, tab 1, and the doc
19   tech will put the document on the screen as
20   we went through earlier.
21           THE COURT REPORTER:  Excuse me,
22      whoever is not speaking, please mute
23      yourself.  Thank you.
24           I muted them.
25      Q.   Mr. Dickinson, if I say LTL I or
```

13

|     |                                                          |
| --- | -------------------------------------------------------- |
| 1   | R. DICKINSON                                             |
| 2   | LTL's first bankruptcy, can we agree that I'm            |
| 3   | referring to the bankruptcy filed on                     |
| 4   | October 14, 2021?                                        |
| 5   | A.   Yes.                                                |
| 6   | Q.   And if I say LTL II or LTL second                   |
| 7   | bankruptcy, can we agree that I'm referring              |
| 8   | to the LTL's bankruptcy filed on April 4,                |
| 9   | 2023?                                                    |
| 10  | A.   Yes.                                                |
| 11  | Q.   Great.  Mr. Dickinson, where are                    |
| 12  | you located right now?                                   |
| 13  | A.   I'm in New Brunswick, New Jersey.                   |
| 14  | Q.   Okay.  Is there anyone else in the                  |
| 15  | room with you?                                           |
| 16  | A.   No.                                                 |
| 17  | Q.   I take it you are at your office?                   |
| 18  | A.   I am.                                               |
| 19  | Q.   Okay.  So I assume you have other                   |
| 20  | materials in the room with you, your                     |
| 21  | computer, the mouse, notepads or notes, and              |
| 22  | things like that?                                        |
| 23  | A.   That is correct.                                    |
| 24  | Q.   Do you have any other documents in                  |
| 25  | the room with you right now or at your ready?            |

136

1    R. DICKINSON
2    So...
3        Q.    Sir, could you identify any
4    financial consequence to LTL from terminating
5    the 2021 Funding Agreement?
6        A.    I'm going to defer to Mr. Kim and
7    the legal team for that answer.
8        Q.    So you, personally, cannot
9    identify any financial consequence to LTL
10   from terminating the 2021 Funding Agreement,
11   true?
12           MR. JONES:  Object as asked and
13       answered.
14       A.    No.
15       Q.    No, you cannot?
16       A.    I already answered that question.
17       Q.    Sir, I just don't want to have a
18   double negative.  You said no.  And I was
19   just trying -- so we're going to have to do
20   that again.
21           Mr. Dickinson, can you,
22   personally, identify any financial
23   consequence to LTL from terminating the 2021
24   Funding Agreement, yes or no?
25       A.    No, I cannot.

151

1  R. DICKINSON



5  BY MR. BLOCK:

17  Q. Okay. No businessperson at JJCI
18  or J&J ever told you as a businessperson that
19  the 2021 Funding Agreement was void or
20  voidable, correct?
21  A. That is correct.
22  Q. No businessperson at J&J or JJCI
23  ever told you that they thought the 2021
24  Funding Agreement was unenforceable, correct?
25  MR. JONES: Are you defining

```
                                                    152
 1                  R. DICKINSON
 2      "businesspersons" other than lawyers?
 3           MR. BLOCK:  Let's have the
 4      question read back.
 5           Yes, of course.
 6           MR. JONES:  All right.  There
 7      are business lawyers who are
 8      credentialed with a JD, Mr. Block.
 9           MR. BLOCK:  Let's just have the
10      question read back so we can get a
11      clean answer.
12           Actually, let me it ask again.
13      I think it will be quicker.
14           Sorry, Madam reporter.
15   BY MR. BLOCK:
16      Q.   Sir, can you hear me okay?
17      A.   I can.
18      Q.   Okay.  Mr. Dickinson, no
19   businessperson at J&J or JJCI ever told you
20   that they believed that the 2021 Funding
21   Agreement was unenforceable, correct?
22      A.   Correct.
23           MR. JONES:  Object -- you may
24      share that which is not a privileged
25      communication with counsel, if there
```

162

```
 1                    R. DICKINSON
 2   its liabilities on April 3, 2023?
 3        A.    Mr. Ruckdeschel, with all due
 4   respect, I already answered that question.
 5        Q.    You didn't, sir.  You said --
 6        A.    I did answer that question.  I
 7   just -- I referred you to the document that
 8   you make your own conclusion, you know, from
 9   the document that was within the -- imbedded
10   in the presentation and in our MOR filings.
11        Q.    On April 3 of 2023, was LPL able
12   to meet its liabilities as they came due?
13        A.    Yes.
14        Q.    All right.  On April 4, after the
15   restructuring, was LTL able to meet its
16   liabilities as they came due?
17        A.    Yes.
18        Q.    All right.  Now, sir, with respect
19   to the restructuring -- I'm sorry, strike
20   that question.
21              With respect to the dismissal of
22   the first bankruptcy, after the dismissal
23   order was entered on January 30th, I believe,
24   of 2023, did LTL perform any evaluation as to
25   how much money it would take to fund a return
```

163

1  R. DICKINSON
2  to litigating talc claims in the tort system
3  over the following 12 months?
4  A.   I didn't see any written
5  estimation or nor do I know of any.
6  Q.   All right.  And would that -- that
7  would be the same with respect to if I
8  expanded that period over the next -- did
9  LTL, after the January 30 dismissal order
10 from the Third Circuit, did LTL perform any
11 evaluation of how much cash flow it would
12 require to manage its talc liabilities in the
13 tort system over the next three years?
14 A.   I didn't see anything in writing,
15 nor did I do it.
16 Q.   All right.  And you are not aware
17 of any evaluation that was performed -- you,
18 the CFO of LTL, are not aware of any
19 evaluation that was performed to ascertain
20 what the expected cash flow demands would be
21 of returning these cases to the tort system.
22      Fair?
23 A.   That is fair, Mr. Ruckdeschel.
24      MR. RUCKDESCHEL:  All right.
25 And I have no further questions.