# EXHIBIT A

**Duro Dyne Bench Ruling**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE: | . | Case No. 18-27963 (MBK) |
| | . | |
| | . | |
| DURO DYNE NATIONAL | . | United States Courthouse |
| CORP., et al. | . | 402 East State Street |
| | . | Trenton, NJ 08608 |
| Debtors. | . | |
| | . | October 16, 2018 |
| . . . . . . . . . . . . .. | | 1:56 p.m. |

TRANSCRIPT OF COURT DECISION ON DEBTORS' MOTION
BEFORE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:

For the Debtors:          Lowenstein Sandler
                          By:  JEFFREY D. PROL, ESQ.
                          One Lowenstein Drive
                          Roseland, NJ 07068

For the U.S. Trustee:     Office of the United States Trustee
                          By:  JEFFREY M. SPONDER, ESQ.
                               ROBERT SCHNEIDER, ESQ.
                          One Newark Center
                          Newark, NJ 07102



Audio Operator:           Kathleen Feeley



Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

```
TELEPHONIC APPEARANCES (Cont'd):

For Official Committee          Caplin & Drysdale, Chartered
of Asbestos Claimants:          By:  JAMES WEHNER, ESQ.
                                     JEFFREY LIESEMER, ESQ.
                                One Thomas Circle, N.W.
                                Washington, DC 20005

For Lawrence Fitzpatrick,       Young, Conway, Stargett & Taylor
Proposed Futures                By:  ED HARRON, ESQ.
Representative:                 Rodney Square,
                                1000 North King Street,
                                Wilmington, DE 19801

For Federal Insurance Co.:      Crowell & Moring
                                By:  MARK S. LICHTENSTEIN, ESQ.
                                590 Madison Avenue
                                20th Floor
                                New York, NY 10022

For Hartford Accident and       Shipman & Goodwin LLP
Indemnity Co.:                  By:  JOSHUA D. WEINBERG, ESQ.
                                400 Park Avenue, Fifth Floor
                                New York, NY 10022

For The North River            Ifrah PLLC
Insurance Company:              By:  GEORGE R. CALHOUN, ESQ.
                                1717 Pennsylvania Ave., NW
                                Washington, DC 20006

For 4 Site, LLC:                Rabinowitz, Lubetkin & Tully, LLC
                                By:  JEFFREY A. COOPER, ESQ.
                                293 Eisenhower Parkway, Suite 100
                                Livingston, NJ 07039


                           - - -
```

1        THE COURT:  The Duro Dyne National Corp. matters from

2   yesterday, these were two matters, Numbers -- Document Number

3   92, a motion for stay relief to proceed in state court, and

4   Document 44, the motion for an order appointing a legal

5   representative for future asbestos personal injury claimants.

6   CourtCall operator, can you just confirm that the lines are

7   open?

8        COURTCALL OPERATOR:  They are, Your Honor.

9        THE COURT:  All right.  Thank you.  I am not taking a

10  roll call, needless to say because it is my intent simply to

11  place on the record my decisions in these two pending motions.

12  I have also asked my court recorder to tag the hearing this

13  afternoon for ease in ordering transcripts, if appropriate.

14       Let me start, for Mr. Calhoun's benefit, Number 92,

15  the motion for relief from the automatic stay to proceed in

16  state court.  It's the far less complicated matter.  With

17  respect to the motion, the Court is neither denying or granting

18  the motion, but carrying the hearing to December 17th at -- of

19  2018 at 1 -- I'm sorry, at 2 p.m.

20       The Court, for the reasons that will follow,

21  determines that the automatic stay does indeed apply to the New

22  York litigation, and the Court deems it appropriate that the

23  movants and the Asbestos Committee and the future claims

24  representative have an opportunity to address the issues that

25  are involved with respect to the plan and disclosure statement

1 and trust documents, that the breathing spell afforded under 11

2 U.S.C. Section 362(a)(1) and (a)(3) is necessary and

3 appropriate to allow this debtor to focus on restructuring and

4 negotiating its outstanding obligations to pre -- to existing

5 and future claimants.

6       The New York litigation has been pending for five

7 years without any meaningful discovery.  It is hard for the

8 Court to believe that a 60-day period in which the debtors and

9 other parties can focus on the needs of this Chapter 11 will

10 prejudice the interests of the insurers of this matter, rather

11 the Court certainly does not want to see the time and resources

12 dedicated to that litigation, which at some point must go

13 forward, as opposed to addressing the concerns that have been

14 raised to date with the debtors' proposed plan of

15 reorganization.

16       With respect to whether or not the automatic stay

17 applies, I believe that this issue has been addressed and

18 answered at least in two decisions within this circuit, Judge

19 Wizmur's decision in the matter of GB Holdings in 2006, 2006

20 Westlaw 4457350, where in Footnote 7 Judge Wizmur states, it is

21 also recognized that an act to diminish future recoveries from

22 the debtor's insurance policies may be violative of the

23 automatic stay under 11 U.S.C. Section 362(a)(3).  The Third

24 Circuit recently so held in ACandS. The possession or control

25 language of Section 362(a)(3) has consistently been interpreted

1  to prevent acts that diminish future recoveries from a debtor's

2  insurance policies.  That's a cite to <u>ACandS</u>, 435 F.3d 261.

3      In <u>ACandS</u>, an arbitration award entered after the

4  debtor filed a bankruptcy petition, which reduced substantially

5  the extent of coverage available to the debtor under its

6  insurance policies, was vacated on the ground the award was

7  entered in violation of the automatic stay.

8      The -- so in looking to <u>ACandS v. Travelers</u>, 435 F.3d

9  252, I also see language that reads, Subsection 362(a)(1) and

10  Subsection 362(a)(3) differ in that the stay of actions and

11  proceedings provided for and by Section 362(a)(1) applies only

12  to actions brought against the debtor.  The statute does not

13  address actions brought by the debtor, such as the

14  counterclaims at issue in the New York litigation, which would

15  ensure -- which would inure to the benefit of the bankruptcy

16  estate, and they cite to <u>St. Croix</u>, 682 F.2d at 448.

17      Section 362(a)(3), on the other hand, applies to

18  actions against third parties, as well as actions against the

19  debtor.  And further on the third Circuit has stated, we agree

20  that the automatic stay applied to the arbitration and that the

21  panel should have halted the arbitration once it became

22  apparent that the proceeding further could negatively impact

23  the bankruptcy estate.

24      In the pending motion movants have admitted and

25  acknowledged that the counterclaim by the debtors, in essence,

1  are equivalent to the movant's claims and that at issue would

2  be the breath and scope and availability of insurance funds.

3  Those policies and funds are property of the bankruptcy estate

4  and, therefore, 362(a)(3) would apply.

5       So, in sum, the Court does find that the automatic

6  stay applies under 362(a)(3) to the entire action, and rather

7  than deny the motion, I'm going to carry it to December 17th,

8  again at 2 p.m., at which time the Court will certainly have a

9  better handle on whether or not the Chapter 11 proceedings are

10 at a stage where it makes sense to allow this litigation to go

11 forward.  I'll enter the appropriate order.

12      Moving to the motion with respect to the appointment

13 of a legal representative for future asbestos personal injury

14 claimants, I hope you all are sitting comfortably with soda or

15 coffee or anything else while I read my thoughts into the

16 record.

17      Before the Court is the motion filed on behalf of the

18 debtors seeking to appoint Lawrence Fitzpatrick as the legal

19 representative of the future asbestos claimants, FCR for

20 purposes of this opinion, pursuant to 11 U.S.C. Section

21 524(g)(4)(B)(i).

22      This court has jurisdiction over this matter pursuant

23 to 28 U.S.C. Section 1334, and this is a core proceeding under

24 28 U.S.C. Section 157(b)(2).  Venue is properly placed in this

25 court under 28 U.S.C. Section 1408.

1  The Court makes the following findings of facts and

2  conclusions of law consistent with Federal Rule of Bankruptcy

3  Procedure 7052. On September 7th of 2018 debtors and these

4  administratively consolidated cases each filed for relief under

5  Chapter 11 of the Bankruptcy Code, and on that same date the

6  debtors filed a pre-negotiated plan of reorganization and

7  disclosure statement.

8  The purposes of the bankruptcy filings were to

9  preserve the debtors' remaining assets and confirm a plan of

10  reorganization that would allow the debtors to satisfy present

11  and future asbestos personal injury claims through the use of a

12  channeling injunction available under 11 U.S.C. Section 524(g).

13  As noted by the U.S. Trustee, Section 524(g)

14  injunction is unique in the Bankruptcy Code because it binds

15  not only present creditors, but also potential future asbestos

16  victims in whom harm from the debtors' products have not

17  manifested as of the filing. Section 524(g) injunction

18  discharges the rights of future victims to recover against the

19  reorganized debtors, its insurers and related parties, while

20  assuring that a post-bankruptcy trust is adequately funded to

21  address all current and future claims on an equal basis.

22  Prior to establishing -- I'm sorry, prior to

23  establishing the channeling injunction, Section 524(g)(4)(B)

24  requires that the Court appoint a legal representative for the

25  purposes of protecting the rights of victims that may in the

1  future assert asbestos claims.

2         In July of 2015 the debtors began negotiations with

3  counsel for asbestos personal injury plaintiffs, who eventually

4  formed an ad hoc committee to represent all asbestos present

5  claimants.  The focus of the negotiations was the feasability

6  of a pre-negotiated Chapter 11 plan of reorganization that

7  would include an asbestos personal injury trust for present and

8  future claimants, as well as a channeling injunction under

9  524(g).

10        In order to satisfy the requirements under

11 524(g)(4)(B) the debtors retained in June of 2017 Lawrence

12 Fitzpatrick to serve as a pre-petition FCR, and ultimately Mr.

13 Fitzpatrick, the ad hoc committee and the debtors agreed upon

14 the terms of a plan of reorganization, a disclosure statement,

15 an asbestos personal injury trust, the trust distribution

16 procedures, which is TDP, and other related documents.

17        On September 26th of 2018 the U.S. Trustee appointed

18 an Official Committee of Asbestos Claimants.  The debtors

19 thereafter filed the within motion to appoint Mr. Fitzpatrick

20 as the representative for future asbestos claimants, again FCR,

21 and objections to his appointment were filed by the U.S.

22 Trustee, Federal Insurance Company, North River Insurance

23 Company, Hartford Accident and Indemnity, as well -- which

24 objections contend that Mr. Fitzpatrick does not satisfy either

25 of the posited applicable standards, that those being

1  disinterestedness or the appearance of impropriety.

2          And the objector sought additional discovery into
3  areas such as the circumstances which gave rise to Mr.
4  Fitzpatrick's hiring, his ongoing and prior relationships with
5  members of the ad hoc committee, his financial incentives in
6  accepting the position as FCR, his actions taken as a pre-
7  petition FCR, and the impact of his current roles as post-
8  confirmation FCR in several other asbestos bankruptcies.

9          At the initial hearing held on October 1st of this
10 year the Court directed that Mr. Fitzpatrick and the debtors'
11 representative appear for depositions and provide additional
12 discovery on these issues.  The Court also ruled that the
13 insurers were parties in interest entitled to be heard and
14 inquire on these issues that are pending in this motion.

15         Finally, this Court acknowledged that Section 524(g)
16 does not explicitly state the standards that the FCR must
17 satisfy to be eligible for appointment.  The Court followed the
18 approach taken nearly universally by other courts in applying
19 the disinterested person standard set forth in 11 U.S.C.
20 Section 101(14) as the correct disqualification standard for
21 assessing the appointment of a legal representative under
22 Section 524(g), and the Court referred to the decisions of W.R.
23 Grace and In re Leslie Control and In re Thorpe Insulation.

24         The Court specifically noted how incongruous it would
25 be to demand that Mr. Fitzpatrick satisfy a higher appearance

1 of impropriety standard, where under Section 1104, for example,

2 Congress demanded less from a Chapter 11 Trustee who serves as

3 a fiduciary and representative for all creditors and their

4 constituencies and not a small subset such as future claimants.

5       After a period of limited discovery and a plenary

6 hearing held on October 15th, at which Mr. Fitzpatrick was

7 examined by all parties, the Court heard additional legal

8 argument and now makes the following additional findings and

9 rulings.

10       Mr. Fitzpatrick has been working in the field of

11 asbestos personal injury and property claims recovery for

12 approximately 38 years through claims facilities with

13 participating manufacturers and insurers, including as an

14 officer of the Asbestos Claims Facility, as well as an officer

15 of the Center for Claims Resolutions.

16       He has received ongoing court appointments as FCRs in

17 several asbestos bankruptcies including Durabla, ACandS,

18 Pittsburgh Corning, Global Industries, NARCO, which is North

19 American Refractories, Metex, as well as Kaiser Gypsum. He is

20 presently involved in pending unconfirmed Chapter 11 asbestos

21 cases, such as Kaiser Gypsum and Sepco. These bankruptcies

22 have been pending in Ohio, New York, Pennsylvania, Delaware and

23 North Carolina.

24       Mr. Fitzpatrick was first contacted by his attorney,

25 Mr. Harron, inquiring as to his interest in becoming a pre-

1 petition FCR for the debtor on or about May 23rd of 2017.  He

2 first spoke with the debtor by phone on May 24th through a call

3 with the debtors' CEO, their respective attorneys, as well as

4 his counsel.

5        Mr. Fitzpatrick had no prior contact with the debtor

6 or any individuals associated with the debtor.  He had no prior

7 contact with the Law Firm of Caplin Drysdale as attorneys for

8 the ad hoc committee and never spoke with the ad hoc committee

9 members directly with respect to this case, the Duro Dyne

10 matter.

11        Mr. Fitzpatrick has had no social contact with the

12 asbestos personal injury counsel and his interactions have been

13 limited to court appearances and periodic trust meetings.

14        Throughout the course of his pre-petition

15 negotiations Mr. Fitzpatrick worked and spoke through his

16 counsel.  The engagement letter with the debtors was negotiated

17 between his attorney and Mr. Prol representing the debtors.

18 Mr. Fitzpatrick testified that he required indemnification

19 language to ensure that his independence would exist in the

20 event of litigation.

21        Mr. Fitzpatrick's hourly fee of approximately $520

22 was not capped, apart from a notice requirement, and in the

23 event his fees and those of his professionals exceeded $25,000

24 in any one month, he would give notification.

25        In his engagement letter there were provisions for

1    termination upon the finding of cause and such cause would

2    include a change in the direction by the debtors, a decision

3    not to pursue the Chapter 11, or failure to pursue the

4    negotiations in a productive manner.

5           In providing services Mr. Fitzpatrick did not act at

6    the direction of the debtors, did not receive salary or

7    benefits and his billings averaged approximately $2,000 per

8    month.

9           Mr. Fitzpatrick testified and the Court finds

10   credible that at the time he was retained there were -- there

11   was no deal in place with the debtors and the ad hoc committee

12   and that he engaged in substantial negotiations and worked

13   towards modifications of the existing and initial term sheet

14   that had been presented. He further testified that he would

15   never accept an assignment in which he was brought in at the

16   last moment to rubberstamp prior concluded negotiations. The

17   term sheet presented to him did not obligate Mr. Fitzpatrick to

18   support any specific plan.

19          During an eight-month period following his retention

20   Mr. Fitzpatrick undertook due diligence on the debtors'

21   insurance and financial resources through the professionals

22   retained by the ad hoc committee. These were Gilbert and

23   Charter Oaks. In his view this made sense to share these

24   professionals given the interest of the future claimants and

25   the present claimants were aligned at this juncture.

1        Indeed, in ruling today this Court determines that

2 during the plan negotiation process the interest of the future

3 and present claimants were sufficiently aligned in efforts to

4 secure the highest level of funding from the debtor and its

5 insurers.  As the Court in <u>Thorpe Insulation</u> noted, it was not

6 a problem for the FCR to engage in aligned representation as

7 part of the pre-petition negotiations.

8        Testimony confirms that Mr. Fitzpatrick through

9 counsel negotiated changes to the proposed draft plan,

10 disclosure statement, trust agreement and TDP.  Mr. Fitzpatrick

11 confirmed that his retention by the debtors required that he

12 need only support a plan to which he consented and which

13 complied with the dictates of Section 524(g).

14        In reviewing the draft plan and trust documents, he

15 was given a black lined draft which referenced and compared

16 terms to documents previously used in prior cases in which he

17 was involved.

18        Importantly to this Court, in his testimony Mr.

19 Fitzpatrick confirms that his consent to the currently filed

20 plan and disclosure statement does not tie his hands or

21 preclude his consideration of any objections or proposed

22 modifications.

23        As to his pecuniary interest in being appointed, Mr.

24 Fitzpatrick confirms and the Court again finds credible that he

25 never demanded nor requested appointment as a post-confirmation

1  FCR, the practice was just followed in a way that had been done

2  in the past in prior cases, and that he has been and is willing

3  to serve as the FCR in this case without any such commitment

4  for post-confirmation employment.  However, the Court notes Mr.

5  Fitzpatrick testified that he believes it is in the best

6  interest of claimants given his case knowledge to serve in a

7  future capacity.

8          According to Mr. Fitzpatrick, it is offensive to him

9  to suggest that the $2,000 in monthly income is sufficient to

10 persuade him to undercut or sell out his obligation to future

11 claimants.

12         As to his concurrent work as an FCR in other pending

13 cases, he notes that the conflicts will not arise given that

14 the FCR does not manage or oversee the trusts and that that

15 responsibility is held by independent trustees.

16         Against this factual backdrop the U.S. Trustee and

17 the previously identified insurers contend that this Court

18 should elect not to appoint Mr. Fitzpatrick as he is not

19 disinterested and cannot establish that he has neither been nor

20 can be effective in protecting the interest of future

21 claimants.

22         In general, the objector suggests that his pre-

23 petition selection payments by the debtors and relationships

24 with the ad hoc committee members, along with his concurrent

25 role as FCR in other asbestos bankruptcy matters, serve as

1  disqualifying factors precluding his appointment.

2          Specifically and in no intended order, objectors

3  posit that the following should be disqualifying factors:

4          His selection and payment by an adversary, meaning

5  the debtors, with the approval by other adversaries, meaning

6  the present claimants.

7          The failure of the debtor to conduct a comprehensive

8  search for an FCR or to undertake a conflict review.  Moreover,

9  the fact that the debtor did not retain Mr. Fitzpatrick's

10 services until two years into the negotiations after the

11 decision to file Chapter 11 had been made.

12         The fact that Mr. Fitzpatrick did not participate in

13 drafting the initial term sheet presented to him upon his

14 retention.

15         The fact that Mr. Fitzpatrick has asserted in

16 discovery the joint defense and common interest privilege with

17 respect to draft documents.

18         The fact that under his engagement with the debtor

19 Mr. Fitzpatrick was constrained and limited in his

20 consideration of avenues apart from a Chapter 11 plan which

21 would include a 524(g) injunction and that he was hired after

22 preparation of a term sheet.

23         The fact that Mr. Fitzpatrick was also constrained

24 because he could be terminated by the debtor for cause.

25         The fact that there was a lack of evidence that Mr.

1  Fitzpatrick substantially participated in the formulation of

2  the plan.

3       And probably most critical to the list put forward by

4  the U.S. Trustee and insurers is the fact that Mr. Fitzpatrick

5  has allegedly failed to challenge certain plan and trust

6  provisions in the -- and TDP provisions which have been

7  identified in studies and by parties in interest as being

8  improvident and the foundation for fraud and abuse.

9       Finally, objectors challenge Mr. Fitzpatrick's

10  independence given the carrot held out under the plan that he

11  serve as the future claims rep for the trust on a post-

12  confirmation basis.

13       The U.S. Trustee and insurers ask this Court to deny

14  appointment of Mr. Fitzpatrick contending that the debtors have

15  not established that he's disinterested, alternatively that he

16  can effectively represent future claimants due to his prior

17  role in pre-petition negotiations, and that he cannot provide

18  the fresh unbiased analysis of the plan or provide future or --

19  of the plan or future iterations of the plan.

20       Based on the existing record, this Court disagrees

21  and finds that the debtor have indeed established that Mr.

22  Fitzpatrick's disinterestedness as laid out in 11 U.S.C.

23  Section 101(14).

24       Moreover, this Court finds that the Mr. Fitzpatrick

25  has during the pre-petition period negotiated effectively and

can effectively represent the interest of the future claimants going forward.

Indeed, this Court questions whether an inquiry into a proposed representative or professional's ability to be effective is appropriate at all. The term effective does not appear either in the definition of disinterested under 101(14) or the provisions of the 524(g)(4).

Demanding proof of effectiveness can become a dangerous and slippery slope for all professionals in a bankruptcy proceeding. This Court is not anxious to go down that road.

Moreover, the Court is at a loss to understand just how at the inception of a case any court can ever be assured of the effectiveness of any professional or representative. As acknowledged by the Office of the U.S. Trustee at oral argument, when asked how the Court could be assured of any applicant's effectiveness at the early stage of the proceeding, the obvious answer to the Court was that the Court must look to the applicant's experience and knowledge. Well, then Mr. Fitzpatrick's 38 years and vast experience in pending cases involving the asbestos industry should end the discussion.

As this Court stated, the standard applicable to appointment of an FCR is whether he is disinterested under 11 U.S.C. 101(14). That section defines a disinterested person as one who (a) is not a creditor, an equity security holder or an

1 insider, (b) is not and was not within two years before the

2 date of the filing of the petition a director, officer or

3 employee of the debtor, and (c) does not have an interest

4 materially adverse to the interest of the estate or of any

5 class of creditors or equity security holders by reason of any

6 direct or indirect relationship to, connection with or interest

7 in the debtor or for any other reason.

8       As to the burden of proof in this matter, clearly the

9 burden of persuasion rests with the debtor throughout the

10 motion from the outset as the proponent of the application to

11 establish that Mr. Fitzpatrick satisfies the disinterested

12 requirement. Notwithstanding, the burden of producing evidence

13 shifts to the objectors when they seek to establish the

14 existence of a materially adverse interest.

15       No one questioned that Mr. Fitzpatrick is not a

16 creditor, an equity security holder or an insider pursuant to

17 101(14)(A). The true inquiry focuses on whether Mr.

18 Fitzpatrick is also disinterested under both Sections

19 101(14)(B) and 101(14)(C).

20       The argument that Mr. Fitzpatrick is not

21 disinterested because his engagement constituted employment is

22 nonsensical and a nonstarter. His retention had none of the

23 traditional attributes of employment. His fees -- he received

24 no salary or benefits. His fees certainly were not capped.

25       The mere fact that he could be terminated if he

19

1 wasn't productive or if the debtor chose another direction is

2 not determinative.  As in virtually all consulting

3 relationships, there must be an end or shelf life.  Only kings,

4 queens and Article 3 judges have lifetime jobs.

5        The fact that he was paid by the debtor is likewise

6 not dispositive since this is consistent with the manner in

7 which all professionals in a bankruptcy, such as committee

8 counsel, financial advisors, investment bankers, are

9 compensated, whether or not they were engaged pre-petition.

10        As I've noted, Mr. Fitzpatrick's fees were not capped

11 and the agreement specifically provided that there would be no

12 employment relationship created, nor did Mr. Fitzpatrick

13 receive a promise of future employment.  Indeed, in this

14 regard, Mr. Fitzpatrick testified and this Court accepts that

15 the future employment as an FCR post-confirmation was not and

16 is not a requirement, that the plan provides for such a role

17 for Mr. Fitzpatrick post-confirmation was not determinative in

18 his acceptance of the engagement, and that the Court accepts

19 his testimony that such process was simply the practice in

20 prior cases that was followed and in his view likewise serves

21 the interest of future claimants.

22        Mr. Fitzpatrick does not hold a material interest

23 adverse to the future claimants as defined under 11 U.S.C.

24 101(14)(C).  Nothing about Mr. Fitzpatrick's service as the

25 pre-petition FCR gives rise to a relationship to, connection

1 with or interest in the debtors that poses a material interest

2 adverse to the future claimants.

3         Likewise, nothing about his service as a pre-petition

4 FCR for the debtors or his service as an FCR in other matters

5 gives rise to a material adverse interest for another reason,

6 as reflected in the Code.

7         The "or for any other reason" at the end of Section

8 101(14)(C) is a catchall clause that is sufficiently broad to

9 include any professional with an interest or relationship that

10 would even faintly color the independence or impartial attitude

11 required by the Code, and I'm citing to In re LTHM Houston -

12 Operations, LLC, 2014 WL 5449737 (Bankruptcy Southern District

13 of Texas 2014). This requires a fact-based inquiry based on

14 the totality of the circumstances and take into account all of

15 the facts of a particular bankruptcy case and the overall

16 objective of the bankruptcy system, and that's a cite to In re

17 Barnes, 2013 WL 3760570 (Bankruptcy District of Oregon, July

18 16th of 2013).

19         In evaluating the facts present in this case and with

20 a special regard for the congressional rehabilitative and

21 remedial objectives underlying Section 524(g), this Court does

22 not find that the objectors have come forward and produced

23 evidence of sufficient other reasons to disqualify Mr.

24 Fitzpatrick.

25         This Court has serious concerns that implementing the

1  standards and employing the disqualifying criteria espoused by

2  the U.S. Trustee and the insurers would for all practical

3  purposes render a pre-negotiated plan impossible for those

4  seeking a channeling injunction.

5       The pre-petition selection of, negotiations with and

6  payment to any pre-petition FCR is critical for a successful

7  pre-negotiated asbestos case.  As made clear in the <u>Congoleum</u>

8  case, the Third Circuit continues to regard pre-negotiated

9  asbestos cases as a valid and valuable tool for expeditious and

10  effective employment to serve the needs of debtors and all

11  claimants alike.  This Court is not prepared to second guess

12  Congress in its implementation or the Third Circuit in its

13  positive assessment of the process.

14       Have the recent studies, academic articles and

15  judicial examinations of the prepackaged and ordinary Chapter

16  11 asbestos cases raised valid concerns for this Court?

17  Absolutely.  Does this Court take the Third Circuit's directive

18  in <u>Congoleum</u> to heart in mandating enhanced scrutiny of the

19  process?  Again, absolutely.  This Court intends to fulfill its

20  role as a gatekeeper by holding the debtor and Mr. Fitzpatrick

21  to their commitments to negotiate and review the objections

22  raised.

23       Once again this Court accepts Mr. Fitzpatrick's

24  testimony that he is under no constraints or restrictions from

25  considering or agreeing to modification of the plan or the

1 trust documents.

2       This Court will not however imperil this company's

3 reorganization, add layers of additional administrative

4 expenses, place at risk the jobs of hundreds of employees, or

5 unnecessarily jeopardize the recoveries for present and future

6 claimants by delaying this reorganization through the

7 appointment of a new future rep, who must retain professionals,

8 engage in his or her own due diligence, only to reach the same

9 point of review to which Mr. Fitzpatrick assents at this

10 present time.

11       It is this Court's hope and expectation that through

12 continued negotiation the parties here will reach an accord on

13 a plan, trust and TDP documents which address valid criticisms

14 and concerns and serve as a protocol for future cases and for

15 use by future FCRs.  This Court will strive to ensure that such

16 efforts are undertaken.

17       Finally, as to the issues relative to Mr.

18 Fitzpatrick's failure to previously raise certain objections or

19 on -- as to issues in the current plan and trust documents, I

20 note the obvious, no court previously has mandated the changes

21 proffered in the objections raised to date, and it is

22 unsurprising that professionals have continued to use

23 approaches which they regard as successful and appropriate.

24 This Court does not view such positions taken by Mr.

25 Fitzpatrick or his counsel as necessarily disqualifying him as

1   the FCR in this case.

2          That being said, the debtor, the committee and Mr.

3   Fitzpatrick should understand that there can be value and valid

4   reasons to -- I'm sorry, to challenge and reconsider the status

5   quo.  However, the Court likewise recognizes that academic

6   articles and studies by think tanks may often be bottomed on

7   inaccurate assumptions or specific agendas.

8          In sum, the Court commits to according the issues

9   heightened scrutiny, but sees no reason to retard the process

10  by appointing a different FCR.

11         For these reasons the motion filed by the debtors to

12  retain Mr. Fitzpatrick as an FCR will be granted.  The Court

13  will enter the order that was annexed to the original motion.

14  Thank you, all.  See you at the next hearing.  The matter --

15         UNIDENTIFIED ATTORNEY:  Your Honor.

16         THE COURT:  Yes?

17         UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

18         UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

19         THE COURT:  All right.  Thank you.

20                     *  *  *  *  *

21

22

23

24

25

# C E R T I F I C A T I O N

       I, COLETTE MEHESKI, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Colette Meheski

COLETTE MEHESKI

J&J COURT TRANSCRIBERS, INC.   DATE:   October 17, 2018