# EXHIBIT D

**Excerpts of April 18, 2023 Hearing Transcript**

```
              IN THE UNITED STATES BANKRUPTCY COURT
                   FOR THE DISTRICT OF NEW JERSEY

IN RE:                          .    Case No. 23-12825(MBK)
                                .
LTL MANAGEMENT LLC,             .
                                .    U.S. Courthouse
            Debtor.             .    402 East State Street
                                .    Trenton, NJ 08608
. . . . . . . . . . . . . . . . .
                                .
LTL MANAGEMENT LLC,             .    Adv. No. 23-01092(MBK)
                                .
            Plaintiff,          .
                                .
     v.                         .
                                .
THOSE PARTIES LISTED ON         .
APPENDIX A TO COMPLAINT AND     .
JOHN AND JANE DOES 1-1000,      .
                                .
            Defendants.         .    Tuesday, April 18, 2023
. . . . . . . . . . . . . . . . .    10:00 a.m.
```

TRANSCRIPT OF HEARING ON
MEMORANDUM OF LAW IN SUPPORT OF MOTION BY MOVANT ANTHONY
HERNANDEZ VALADEZ FOR AN ORDER (I) GRANTING RELIEF FROM THE
AUTOMATIC STAY, SECOND AMENDED EX PARTY TEMPORARY RESTRAINING
ORDER, AND ANTICIPATED PRELIMINARY INJUNCTION, AND (II) WAIVING
THE FOURTEEN-DAY STAY UNDER FEDERAL RULE OF BANKRUPTCY
PROCEDURE 4001(a)(3) [DOCKET 71]; AND DEBTOR'S MOTION FOR AN
ORDER (I) DECLARING THAT THE AUTOMATIC STAY APPLIES OR EXTENDS
TO CERTAIN ACTIONS AGAINST NON DEBTORS OR (II) PRELIMINARILY
ENJOINING SUCH ACTIONS AND (III) GRANTING A TEMPORARY
RESTRAINING ORDER EX PARTE PENDING A HEARING ON A PRELIMINARY
INJUNCTION [ADVERSARY DOCKET 2]; AND MOTION TO SEAL; AND
SERVICE PROCEDURES MOTION

**BEFORE THE HONORABLE MICHAEL B. KAPLAN
UNITED STATES BANKRUPTCY COURT JUDGE**

Audio Operator:                      Kiya Martin

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
_____

**J&J COURT TRANSCRIBERS, INC.
268 Evergreen Avenue
Hamilton, New Jersey 08619
E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

14

1  appropriate.  We have a concern we won't get done without the
2  time limits, but obviously we recognize that's up to Your
3  Honor.
4           THE COURT:  All right.  Thank you.
5           MR. GORDON:  Thank you.
6           THE COURT:  Ms. Richenderfer?
7           MS. RICHENDERFER:  Your Honor, I hate to arise again,
8  but I was not on for most of Mr. Molton's deposition last
9  night.  I was on for only a very small portion of it because I
10 was preparing for today's hearing.  I don't know the basis of
11 the common interest privilege.
12          Let me tell you this.  I have entered into no common
13 interest agreement with the TCC.  And the Office of the United
14 States Trustee remains open to hear from all parties, and we do
15 get calls from all parties.  I don't know again what the basis
16 was.  And if I recall correctly the little bit that's been
17 reported to me and that I heard, I don't think the questions
18 even went to the issue of the preliminary injunction and
19 questions that there may have been with the U.S. Trustee
20 conversations.
21          So I do take exception to that.  It's been a very
22 contentious week.  And they're trying to drag the U.S. Trustee
23 into it, and we object to that, Your Honor.  And I just needed
24 to address that.  Thank you, Your Honor.
25          THE COURT:  All right.  Thank you.

1  remuneration, compensation, reward, advantage, or promise
2  thereof, for acting or forbearing to act in any case under
3  Title 11, are you aware of that law?
4          MS. BROWN:  Your Honor, I object to this question for
5  numerous reasons, including that it's argumentative.
6          THE COURT:  Overruled.  Are you -- can you answer
7  that question?
8          THE WITNESS:  So this is -- no, I'm not aware; it
9  makes sense to me, but I'm not aware.
10 BY MR. JONAS:
11 Q   Okay.  And, after you filed the second bankruptcy case on
12 April 4th, you filed a motion to have Ms. Ellis, the claims
13 administrator under your term sheet, to be reappointed as FCR;
14 correct?
15 A   Correct.  And, again, she's not claims administrator under
16 the term sheet.  This is a placeholder put in place because Mr.
17 Murdica thought she'd make a good claims administrator.  My
18 understanding is that, you know, ==there was no offer or==
19 ==discussion about this==.  This is a placeholder and subject to
20 negotiation.
21 Q   Well, when the plaintiffs' lawyers show the PSA and the
22 term sheet to their 60-odd-thousand, according to you, clients,
23 they're going to think Ms. Ellis is the claims administrator;
24 right?
25 A   Yeah.  I'm not sure they're going to care about that at

Kim - Cross/Jonas 91

1 all.
2 Q    I know, sir, and maybe they won't care, but we're in a
3 formal legal proceeding and there are rules that have to be
4 abided by.  Do you understand that?
5 A    Yeah, I don't think there's a rule about putting a
6 placeholder name in a document.
7 Q    Okay.  You're aware that Ms. Ellis filed a declaration in
8 support of the motion to have her appointed, reappointed as
9 FCR; correct?
10 A    I think I heard that at the last hearing; I don't think
11 I've ever seen it.
12 Q    You've never seen it.  So you don't know whether Ms. Ellis
13 disclosed her role as claims administrator in her declaration?
14 A    I would say that assumes that she has a role as claims
15 administrator, which she doesn't.
16 Q    Well, let me ask it this way:  Did she disclose she might
17 be the claims administrator?
18 A    She might or she might not.  I don't think -- I don't even
19 really know that -- I don't believe Ms. Ellis even knows that
20 her name appears in this.  You'd have to ask her.
21 Q    How do you know that, sir?  How do you know that?
22 A    Because my understanding is that, at least from our
23 perspective, Mr. Murdica never talked to Ms. Ellis about
24 putting this -- about this and he had put her name is a
25 placeholder.

                        Kim - Cross/Maimon                        144

1  A     Yeah.  That's the filing of the case, yes.
2  Q     Well, let's just read what it actually says.  "FCR has
3  agreed to sign and submit a declaration in support of a new
4  Chapter 11 case."  Those are the words, right?
5  A     That's exactly right.  The filing of a new Chapter 11
6  case.
7  Q     Well, it doesn't say "filing."  It says what it says.  Can
8  we agree on that?
9  A     Sure.  Yes, we can.
10 Q     Okay.  And this is phrased in the past tense, that she
11 already has agreed, right?
12 A     Which, yeah, did not turn out to be true.
13 Q     And then -- well, this is what was reported to the board,
14 right?
15 A     Correct.
16 Q     Okay.
17 A     And it was later reported that it was not happening.
18 Q     And then, later it was reported that she was unwilling to
19 sign a declaration, right?
20 A     That she chose not to, yeah, sign a declaration.
21 Q     In addition to a declaration, there's a discussion here
22 about discussions are ongoing to obtain a plan support
23 agreement from the FCR, correct?
24 A     Yes.  Yes, I see that.
25 Q     ==And the FCR, Ms. Ellis, chose not to execute that as well,==

                        WWW.JJCOURT.COM

```
                       Kim - Cross/Maimon                    145
 1  correct?
 2  A     Correct.  Any plan support agreement?  She did not
 3  choose -- she did not submit any plan support agreement.
 4  Q     It has the words "Plan Support Agreement."  The first
 5  letter of each word is in capitals, correct?
 6  A     It is.
 7  Q     Okay.  Thank you.
 8        And the only -- withdrawn.
 9        Now, the same day that that meeting took place of the
10  board of LTL Management, we saw that LTL Management filed its
11  monthly operating report for the period ending February 28,
12  2023.  That's Exhibit 3, correct?
13  A     Yeah, I'm not -- I can check the dates.  I take your word
14  for it.
15  Q     That's Exhibit 3.  Please take it up.  I just want to make
16  sure that we have accurate testimony.
17  A     I do see that.
18  Q     Okay.  And that was one week before the dismissal of the
19  first bankruptcy and the filing of the second, right?
20  Remember, February only has 28 days this year.
21  A     I believe that's correct, yes.
22  Q     Okay.  Now, during this time period and these discussions
23  and these board meetings that you were having, I think you told
24  Mr. Jonas that there was a discussion about terminating the old
25  funding agreement and having a new one in place, right?
```