# JONES DAY

2727 NORTH HARWOOD STREET • DALLAS, TEXAS  75201.1515

TELEPHONE: +1.214.220.3939 • JONESDAY.COM

Direct Number: 2149693759
gmgordon@jonesday.com

May 1, 2023

**VIA ECF**
Honorable Michael B. Kaplan
United States Bankruptcy Court for the District of New Jersey
402 East State Street Courtroom #8
Trenton, New Jersey 08608

    Re:  In re LTL Management LLC, Case No. 23-12825 (MBK)

Dear Chief Judge Kaplan:

    As proposed counsel for the Debtor, we write in response to Mr. Stolz's letter of April 28, 2023.  Mr. Stolz's letter raises three issues:  (1) the schedule for adjudicating the various motions to dismiss and the TCC's position that it "will not consent to the extension of the deadlines set forth in Section 1112(b)(3)"; (2) forecasted motion practice over the Debtor's and J&J's assertion of common-interest protection concerning termination and replacement of the 2021 Funding Agreement; and (3) the TCC's request that the Court address matters relating to the Debtor's confidentiality designations.  We also write to raise the Debtor's concern over the TCC's inappropriate assertion of common-interest protection for communications between the TCC and the United States Trustee.  The U.S. Trustee disavowed in open court any common-interest undertaking between these parties.

    **Scheduling.**  Compelling circumstances call for an extension of the 30-day deadline to commence a hearing on the five motions thus far filed to dismiss this bankruptcy case.[1]  A reasonable time frame is required to address the panoply of challenges the TCC and other interested parties have advanced in response to the Debtor's filing, which implicate both fact and expert disclosure, discovery, and presentation.

    The TCC's motion stresses that it is the Debtor's burden to establish good faith, including on the issue of financial distress (the TCC's motion says so at least 23 times).  The TCC argues, for example, that the Debtor has "failed to present this Court with any meaningful analysis of the potential talc liabilities."  TCC Mot. to Dismiss at 2; *see also id.* at 22-23 ("back-of-the-envelope forecasts," including as to increases in potential claimants since the filing of LTL's first

---

[1] Motions to dismiss have been filed by the TCC (Dkt. 286, April 24); an Ad Hoc Group of Mesothelioma Claimants (Dkt. 335, April 27); Paul Crouch (Dkt. 346, April 28); an Ad Hoc Committee of States Holding Consumer Protection Claims (Dkt. 350, April 28); and the MRHFM's Plaintiffs (Dkt. 358, April 28).  A joinder to the TCC's motions to dismiss has been filed by certain Mesothelioma Claimants (Dkt. 352, April 28).  The Debtor expects that additional parties, including potentially the United States Trustee, may also file (or join) a motion to dismiss and request to be heard at the hearing.

AMSTERDAM • ATLANTA • BEIJING • BOSTON • BRISBANE • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS
DETROIT • DUBAI • DÜSSELDORF • FRANKFURT • HONG KONG • HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID
MELBOURNE • MEXICO CITY • MIAMI • MILAN • MINNEAPOLIS • MUNICH • NEW YORK • PARIS • PERTH • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SÃO PAULO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Honorable Michael B. Kaplan
May 1, 2023
Page 2

bankruptcy, are insufficient).  The TCC argues that, "[d]espite every opportunity, LTL [has] failed to present to this Court even the most summary evidence that it cannot meet its liabilities as they come due for the foreseeable future." *Id.* at 3.[2]

The TCC's motion also makes sweeping and inaccurate attacks on the support the Debtor has gathered for a plan to resolve its talc liability in this second bankruptcy proceeding.  *See, e.g., id.* at 16-21 (arguing, *inter alia*, that no claimants actually support the Debtor's proposed settlement and that the Debtor's figure of 60,000 supporting claimants is "unreliable" because it includes unfiled cases, claims that "could never be proven," potential duplicate claims, and claims for which plaintiff firms may lack engagement letters, pathology reports, and medical records).

The Debtor will address these issues through its briefing and the introduction of fact and expert testimony and related evidentiary submissions at the hearing on the motions to dismiss.  But a fair opportunity to respond to the multiple challenges leveled at the Debtor's good faith necessitates sufficient time to marshal the evidence through meaningful discovery, expert analytical work, and the other pretrial tasks required in any complex matter.

For its part, the Debtor anticipates that it will call six to eight fact witnesses and two to three experts.  The TCC has indicated that it will depose each witness identified by the Debtor; the Debtor, likewise, plans to depose any fact or expert witness identified by the TCC or other movants (the TCC has stated that it expects two to three experts to testify in addition to at least four fact witnesses).  The Debtor expects to serve written discovery (document requests and interrogatories) upon the TCC, law firms representing members of the TCC, and the Ad Hoc Committee of States Holding Consumer Protection Claims.  These requests will seek information that is relevant to matters these parties have raised in their motions to dismiss.

On Friday, April 28, 2023, and as amended on Sunday, April 30, 2023, the Debtor proposed to the TCC the following schedule for adjudicating the motions to dismiss:

> **Tuesday, May 2:**  Service of written discovery requests and simultaneous identification of fact witnesses, including statement of topics of testimony and

---

[2] The TCC's motion appears to suggest that the one-day, April 18, 2023 hearing on the Debtor's motion for a preliminary injunction somehow presents the entire evidentiary record pertinent to the motions to dismiss.  But no party requested or agreed that the evidentiary record for the motions to dismiss would be limited to the record submitted to the Court in connection with the motion for preliminary injunction, nor would such an agreement have made sense in light of the different issues, standards, and requests for relief presented by the motions.

JONES DAY

Honorable Michael B. Kaplan
May 1, 2023
Page 3

>   whether the party currently expects a witness will be presented live or by deposition designation
>
>   **Friday, May 12:** Simultaneous identification of expert witnesses, including CVs and subjects of anticipated opinions
>
>   **Friday, May 19:** Discovery responses and productions due
>
>   **Wednesday, May 24:** Objections to motions to dismiss due (Debtor intends to file a single opposition brief and reserves the right to seek a later response date pending any new motions to dismiss filed)
>
>   **Tuesday, May 30:** Expert reports served
>
>   **Tuesday, June 6:** Fact discovery complete
>
>   **Tuesday, June 20:** Expert discovery complete
>
>   **One week before hearing:** Designations of deposition or prior-hearing testimony and exhibits proffered, including any testimony or exhibits admitted in LTL 1
>
>   **Hearing:** Subject to Court's availability for 4-5 day hearing

The Debtor's proposed schedule presents a time-to-hearing that is similar to the schedule the parties agreed to in adjudicating the motions to dismiss filed in LTL's first bankruptcy. (In LTL 1, the previously appointed TCC filed its motion to dismiss on December 1, 2021, and the Court commenced the hearing on February 14, 2022.)

Apart from deadlines to disclose witnesses and serve discovery, the TCC has not proposed any case-management deadlines. Providing detail, like the Debtor has above, would demonstrate the unreasonableness of the TCC's demand that the hearing commence on May 22, 2023, and that the motions be decided within 15 days thereafter. The TCC's insistence on completing a complex evidentiary record in less than a month's time for what it has repeatedly characterized as high-stakes issues of public importance is a transparent effort to undermine unfairly the Debtor's ability to carry its burden of demonstrating good faith.

The circumstances presented here are of a kind with the compelling circumstances courts have found appropriate to relax the "flexible" timing requirements found in 11 U.S.C.

JONES DAY

Honorable Michael B. Kaplan
May 1, 2023
Page 4

§ 1112(b)(3). *In re Orange Cnty. Bail Bonds, Inc.*, 638 B.R. 137, 149 n.8 (B.A.P. 9th Cir. 2022) (further noting that "§ 1112(b)(3) is not self-effectuating; the statute does not provide for a specific consequence for either party if the bankruptcy court does not conduct the hearing or decide the motion within the time limits"). In assessing whether compelling circumstances exist, courts have considered the complexity of the issues presented in the motions to dismiss, whether dismissal will have significant consequences for interested parties, the need for discovery and the volume of evidence, the impact of other developments in the bankruptcy case, and the Court's calendar.[3] Consideration of these factors show that compelling circumstances exist here.

There can be no reasonable dispute that the issues raised in the motions—including the fact and degree of the Debtor's financial distress, the termination and replacement of the 2021 Funding Agreement, and the TCC's various challenges to the Debtor's support for its proposed chapter 11 resolution—are complex and call for "comprehensive analysis," including from multiple experts. *Wolper*, 2009 WL 2882824, at * 2. The impact of the Court's ruling will be significant and affect many, including tens of thousands of claimants the Debtor reasonably believes will support the plan (support which continues to grow). Based on the number of witnesses discussed among the parties to date, the number of parties who have filed or joined motions to dismiss, and the number of interested parties likely to participate at the hearing, a hearing on the motions to dismiss will likely require at least four, and likely more, continuous days of the Court's calendar. The Court has witnessed first hand the amount of time the claimants' attorneys are capable of consuming (*see, e.g.*, the April 18 hearing, in which claimants monopolized the available hearing time); here, there are at least five separate movants seeking dismissal. It is difficult to conceive how attempting to squeeze the required discovery and hearing dates on the multiplicity of motions could be accomplished within the timing requirement of Section 1112(b)(3). The Debtor believes it is neither feasible nor efficient to conduct the hearing over several non-consecutive days. The burden on counsel and witnesses, many of whom travel to court from significant distance, of a hearing on non-consecutive days is unreasonable.

---

[3] *See, e.g., id.*; *In re Roman Cath. Church of Archdiocese of New Orleans*, 632 B.R. 593, 597 (Bankr. E.D. La. 2021); *In re Sagecrest II LLC*, 2010 WL 5372426 (Bankr. D. Conn. Dec. 22, 2010); *In re Wolper Const. Co., Inc.*, 2009 WL 2882824, at *2 (Bankr. D. Utah Sept. 2, 2009); *In re DCNC North Carolina I, LLC*, 407 B.R. 651, 654 n.5 (Bankr. E.D. Pa., 2009); *In re Kent*, 2008 WL 5047799, *1 n.2 (Bankr. D. Ariz. 2008); *In re AmeriCERT, Inc.*, 360 B.R. 398, 400 n.2 (Bankr. D.N.H. 2007). Courts addressing whether compelling circumstances exist have usually done so in connection with the bankruptcy court's 15-day deadline for issuing a ruling, which is unsurprising because the parties in complex cases often consent to an extension of the requirement to commence a hearing within 30 days (as they did in LTL 1). There is no reason to believe that the same factors cited in those decisions would not likewise apply to the 30-day requirement.

JONES DAY

Honorable Michael B. Kaplan
May 1, 2023
Page 5

      For all of these reasons, the Debtor believes that compelling circumstances warrant the adoption of the proposed schedule the Debtor has set forth above.

      **Confidentiality.**  The Debtor will be sending to the TCC and other interested parties, by close of business today, a proposal that hopefully will resolve all or most of the confidentiality concerns raised in Mr. Stolz's letter.  The proposal will pare back the information for which confidential treatment is requested and will ask the TCC and other interested parties to execute a revised protective order that the Debtor circulated on April 17, 2023, which proposed order, among other things, requires that any documents produced and deposition testimony given in the Bankruptcy Proceedings shall not be used for any purpose other than in connection with the Bankruptcy Proceedings.

      **Common-Interest (Termination and Replacement of the 2021 Funding Agreement).** The Debtor disagrees with the TCC's claim that there can be no common-interest protection for privileged communications between the Debtor and J&J relating to termination and replacement of the 2021 Funding Agreement.  Nor is it true, as the TCC asserts, that the termination "was plainly bad for LTL and good for J&J."

      In any event, the issue should not be considered at the May 3, 2023 hearing.  If the TCC desires to challenge the protection of the common-interest doctrine for privileged communications or documents shared between the Debtor and J&J, the TCC should file a motion and provide the Debtor and J&J an opportunity to respond.

      **TCC Assertion of a Common-Interest with the United States Trustee.**  During his deposition, Mr. Molton, following instructions from counsel, repeatedly refused to answer questions about his communications with the United States Trustee based on an alleged common-interest with the United States Trustee.  *See* Molton Dep. Tr. at 48:5-9, 48:17-20, 48:23-49:3, 51:11-53:24, 54:13-22, 56:7-8, 57:15-22, 99:15-101:24.  The following day, at the hearing on April 18, 2023, counsel for the U.S. Trustee denied that any common-interest agreement ever existed between the parties.  *See* Apr. 18, 2023 Hr'g Tr., 14:12-13 ("Let me tell you this.  I have entered into no common-interest agreement with the TCC.").  Given the United States Trustee's express disavowal of any common-interest with the TCC, the Debtor submits there is no need for formal motion practice or briefing on this issue.  We intend to depose Mr. Molton in connection with the motions to dismiss and, therefore, ask that the Court direct him to answer questions regarding his communications with the United States Trustee.

      Thank you for your consideration of this letter.

JONES DAY

Honorable Michael B. Kaplan
May 1, 2023
Page 6

                                           Respectfully submitted,

                                           */s/ Gregory M. Gordon*
                                           Gregory M. Gordon

cc:  Counsel of Record (via ECF)