# EXHIBIT B

Nos. 22-2003, 22-2004, 22-2005, 22-2006, 22-2007,
22-2008, 22-2009, 22-2010, 22-2011

IN THE

# United States Court of Appeals
# for the Third Circuit

---

IN RE: LTL MANAGEMENT LLC,

*Debtor*

---

\*OFFICIAL COMMITTEE OF TALC CLAIMANTS,

*Appellant*

\*(Amended per Court's Order dated 06/10/2022)

---

On direct appeal from the United States Bankruptcy Court
for the District of New Jersey, No. 21-30589, Adv. Proc. No. 21-3023

---

## MOTION TO STAY THE MANDATE

---

GREGORY M. GORDON
BRAD B. ERENS
DAN B. PRIETO
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201

C. KEVIN MARSHALL
DAVID S. TORBORG
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

NEAL KUMAR KATYAL
SEAN MAROTTA
WILLIAM E. HAVEMANN
JO-ANN TAMILA SAGAR
PATRICK C. VALENCIA
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5600
neal.katyal@hoganlovells.com

March 22, 2023                    *Counsel for LTL Management LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... ii

INTRODUCTION ............................................................................1

ARGUMENT ................................................................................3

    I.    LTL's Certiorari Petition Will Present Substantial
        Questions For Supreme Court Review ..................................................3

        A.    LTL's petition for certiorari will present a substantial
                question regarding the standard for good faith ...............................4

        B.    LTL's petition for certiorari will present a substantial
                question regarding the standard of review that an
                appellate court applies to a bankruptcy court's good-
                faith findings ...............................................................13

    II.    Staying The Mandate Will Avoid Chaos In The
        Bankruptcy Court And Mass-Tort Proceedings If The
        Supreme Court Grants Review And Reverses And Will
        Prevent Irreparable Harm To LTL ..................................................17

CONCLUSION................................................................................22

CERTIFICATION OF BAR MEMBERSHIP

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

Cases:

*Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*,
  87 S. Ct. 1 (1966) ................................................................ 2

*Bartenwerfer v. Buckley*,
  142 S. Ct. 2675 (2022) ......................................................... 7

*Bartenwerfer v. Buckley*,
  143 S. Ct. 665 (2023) ...................................................... 7, 11

*Carolin Corp. v. Miller*,
  886 F.2d 693(4th Cir. 1989)............................... 1, 2, 4, 6, 12

*In re 15375 Mem'l Corp. v. BEPCO, L.P.*,
  589 F.3d 605 (3d Cir. 2009)................................................ 4, 13

*In re Aldrich Pump LLC*,
  No. 20-30608, 2021 WL 3729335 (Bankr. W.D.N.C. Aug. 23, 2021) ................ 5

*In re Bartenwerfer*,
  860 F. App'x 544 (9th Cir. 2021) ....................................... 7

*In re Bestwall LLC*,
  605 B.R. 43 (Bankr. W.D.N.C. 2019)................................... 5

*In re Cedar Shore Resort, Inc.*,
  235 F.3d 375 (8th Cir. 2000)........................................... 2, 14

*In re Coughlin*,
  33 F.4th 600 (1st Cir. 2022)............................................... 7

*In re C-TC 9th Ave. P'ship v. Norton Co.*,
  113 F.3d 1304 (2d Cir. 1997)............................................. 4

*In re DBMP LLC*,
  No. 20-30080, 2021 WL 3552350 (Bankr. W.D.N.C. Aug. 11, 2021) ................ 5

*In re Great N. Paper, Inc.*,
  299 B.R. 1 (D. Me. 2003)................................................. 18

TABLE OF AUTHORITIES—Continued

*In re Integrated Telecom Express, Inc.*,
  384 F.3d 108 (3d Cir. 2004) ................................................................. 11

*In re Integrated Telecom Express, Inc.*,
  No. 04-2411 (3d Cir. Dec. 6, 2004) ................................................. 8, 17

*In re Little Creek Dev. Co.*,
  779 F.2d 1068 (5th Cir. 1986) ............................................................ 1, 4

*In re Marsch*,
  36 F.3d 825 (9th Cir. 1994) ............................................................... 2, 14

*In re Owens Corning*,
  419 F.3d 195 (3d Cir. 2005) .................................................................. 11

*In re Premier Auto. Servs., Inc.*,
  492 F.3d 274 (4th Cir. 2007) .......................................... 1, 2, 4, 6, 14

*In re SGL Carbon Corp.*,
  200 F.3d 154 (3d Cir. 1999) ............................................................. 1, 10

*In re Village at Lakeridge, LLC*,
  814 F.3d 993 (9th Cir. 2016) ................................................................ 16

*In re W.R. Grace & Co.*,
  386 B.R. 17 (Bankr. D. Del. 2008) ...................................................... 21

*Kearney v. Standard Ins. Co.*,
  175 F.3d 1084 (9th Cir. 1999) .............................................................. 15

*Lac du Flambeau Band v. Coughlin*,
  143 S. Ct. 645 (2023) ............................................................................. 7

*Laguna Assocs. L.P. v. Aetna Cas. & Sur. Co.*,
  30 F.3d 734 (6th Cir. 1994) ................................................................... 5

*Marrama v. Citizens Bank of Mass.*,
  549 U.S. 365 (2007) .............................................................................. 13

*Miller v. Fenton*,
  474 U.S. 104 (1985) .............................................................................. 14

# TABLE OF AUTHORITIES—Continued

Page

*Nara v. Frank,*
   494 F.3d 1132 (3d Cir. 2007) ......................................... 2, 3, 6, 10, 14, 20

*Phillip Morris USA Inc. v. Scott,*
   561 U.S. 1301 (2010) .................................................................. 21

*Phoenix Piccadilly, Ltd. v. Life Ins. Co. (In re Phoenix Piccadilly, Ltd.),*
   849 F.2d 1393 (11th Cir.1988) .................................................... 4

*Rostker v. Goldberg,*
   448 U.S. 1306 (1980) .................................................................. 21

*Salve Regina Coll. v. Russell,*
   499 U.S. 225 (1991) ................................................................... 14

*Toibb v. Radoff,*
   501 U.S. 157 (1991) ................................................................... 12

*U.S. Bank Nat'l Assn. v. Village at Lakeridge, LLC,*
   137 S. Ct. 1372 (2017) ............................................................... 16

*U.S. Bank Nat'l Assn. v. Village at Lakeridge, LLC,*
   138 S. Ct. 960 (2018) ................................................................. 15

*U.S. ex rel. Chandler v. Cook County,*
   282 F.3d 448 (7th Cir. 2002) ....................................................... 7

*United States v. Whiting Pools, Inc.,*
   462 U.S. 198 (1983) ................................................................... 21

**STATUTES:**

11 U.S.C. § 103(g) ......................................................................... 18

11 U.S.C. § 524(g) ................................................................. 6, 9, 12

11 U.S.C. § 1112(b) ...................................................................... 10

11 U.S.C. § 1112(b)(1) .................................................................. 11

11 U.S.C. § 1112(b)(4) .................................................................. 11

11 U.S.C. § 1129(a)(3) .................................................................. 13

**TABLE OF AUTHORITIES—Continued**

<u>Page</u>

11 U.S.C. § 1325(a)(3) ........................................................... 13

28 U.S.C. § 158(d)(2)(A) ....................................................... 8

**RULES:**

Fed. R. App. P. 41(d) ............................................................ 1

Fed. R. App. P. 41(d)(1) ........................................................ 3

Fed. R. App. P. 41(d)(2) ........................................................ 2

S. Ct. R. 10(a) ....................................................................... 7

S. Ct. R. 10(c) ....................................................................... 7

**OTHER AUTHORITIES:**

Anthony J. Casey & Joshua C. Macey, *In Defense of Chapter 11 for
    Mass Torts*, 90 U. Chi. L. Rev. ___ (forthcoming 2023) ..................... 10

James Nani & Alex Wolf, *J&J Bankruptcy Ruling Knocks Money
    Deal in 'Texas Two-Step'*, Bloomberg Law (Jan. 31, 2023),
    *available at* https://news.bloomberglaw.com/bankruptcy-law/j-j-
    bankruptcy-ruling-undercuts-central-move-in-texas-two-step ............. 9

Samir D. Parikh, *The New Mass Torts Bargain*,
    91 Fordham L. Rev. 447 (2022) ....................................................... 9, 10

**MOTION TO STAY THE MANDATE PENDING THE FILING AND
DISPOSITION OF A PETITION FOR A WRIT OF CERTIORARI**

Debtor LTL Management LLC intends to seek certiorari of the Court's

judgment.  To avoid the chaos that would occur if LTL's petition were dismissed

by the Bankruptcy Court then reinstated by the Supreme Court, LTL respectfully

requests the Court stay the mandate pending LTL's filing of its petition and until

the Supreme Court's final disposition.  *See* Fed. R. App. P. 41(d).  Appellants all

oppose the motion.

## INTRODUCTION

"Courts have not been unanimous about what constitutes 'good faith' in the

Chapter 11 filing context."  *In re SGL Carbon Corp.*, 200 F.3d 154, 165 (3d Cir.

1999).  The Court found that LTL's petition did not meet this standard, Op. 54, but

acknowledged that LTL had "[g]ood intentions" and a "sincerely held" belief that

bankruptcy was justified, Op. 18, 56.

All of that would have forced a different outcome in the Fourth Circuit

where "a lack of good faith" requires both " 'objective futility' and 'subjective bad

faith.' "  *In re Premier Auto. Servs., Inc.*, 492 F.3d 274, 279-280 (4th Cir. 2007)

(quoting *Carolin Corp. v. Miller*, 886 F.2d 693, 700-701(4th Cir. 1989)); *see also*

*In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) (considering both

"financial condition[s]" and "motives").  And while the Court treated good faith as

"essentially[]" a question of law reviewed de novo, Op. 33 (citation omitted), its

1

sister circuits review a bankruptcy court's good-faith finding under "the clearly

erroneous standard," *Premier Auto. Servs.*, 492 F.3d at 279 (quoting *Carolin*

*Corp.*, 886 F.2d at 702); *accord In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 379

(8th Cir. 2000); *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994).

Because, as the Bankruptcy Court put it, one "cannot help but ponder how a

bankruptcy filing, which took place in North Carolina and most likely satisfied the

good faith standards under the applicable law in that jurisdiction, suddenly morphs

post-petition into a bad faith filing simply because the case travels 400 miles up I-

95 to Trenton, New Jersey," A13, there is a very real possibility the Supreme Court

will grant certiorari to reverse the panel's decision and provide much-needed

clarity regarding the good-faith standard.  *See* Fed. R. App. P. 41(d)(2); *see also*

*Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007).  The Court obviously believes

in the correctness of its decision.  But it should nonetheless stay the mandate

because the issues here are important, unsettled, and subject to reasonable

"debat[e]."  *American Mfrs. Mut. Ins. Co. v. American Broad.-Paramount*

*Theatres, Inc.*, 87 S. Ct. 1, 2 (1966) (Harlan, J., in chambers).

Finally, if the mandate issues, and then the Supreme Court reviews and

reverses, chaos and confusion will ensue.  The Bankruptcy Court will have to pick

up where it left off after having dismantled the infrastructure that supported the

bankruptcy case.  The Bankruptcy Court will dissolve the TCC, who then will not

have the opportunity to respond to LTL's certiorari petition; will approve final fee arrangements; and will discharge the fee examiner and future claims representative, all for naught. Meanwhile in courts across the country, claimants and LTL will need to move cases forward once more at the risk that they could be stayed again, this time mid-trial. This bankruptcy is large and affects a lot of people in a lot of ways. The Court should preserve the status quo until the Supreme Court has its say.

## ARGUMENT

This Court will stay the mandate pending the filing of a petition for a writ of certiorari if the movant "show[s] that the petition would present a substantial question and that there is good cause for a stay." Fed. R. App. P. 41(d)(1). This case qualifies. LTL's petition will present substantial questions regarding the good-faith standard and the standard of review that applies to it, and the potential chaos from the mandate issuing and the Supreme Court then reversing is good cause to hold the mandate until the Supreme Court weighs in.

## I. LTL'S CERTIORARI PETITION WILL PRESENT SUBSTANTIAL QUESTIONS FOR SUPREME COURT REVIEW.

A certiorari petition will present a "substantial question"—and thus warrants a stay of the mandate pending its disposition—if there is "a reasonable probability that the Supreme Court will grant certiorari," and "a reasonable possibility that at least five Justices would vote to reverse this Court's judgment." *Nara*, 494 F.3d at

1133.  By both entrenching a longstanding circuit split regarding the content of the

good-faith standard, and also creating a split regarding the standard of review

applicable to a bankruptcy court's good-faith analysis, the panel's decision tees up

two substantial questions for review.  *See* Dkt. 155, *Brief of Washington Legal*

*Foundation as* Amicus Curiae at 1-6 (explaining that "forum-shopping will

skyrocket" unless the Supreme Court resolves the panel's split from the Fourth

Circuit).

### A. LTL's petition for certiorari will present a substantial question regarding the standard for good faith.

1.  There is an longstanding division of authority over the test for good faith.

Some courts consider only whether the debtor has a real chance at rehabilitation.

*See, e.g.*, *In re C-TC 9th Ave. P'ship v. Norton Co.*, 113 F.3d 1304 (2d Cir. 1997).

Others consider "subjective bad faith" alongside objective futility.  *Premier Auto.*

*Servs.*, 492 F.3d at 279-280 (quoting *Carolin Corp.*, 886 F.2d at 700-701); *see*

*also, e.g.*, *In re Little Creek Dev. Co.*, 779 F.2d at 1072; *Phoenix Piccadilly, Ltd. v.*

*Life Ins. Co. (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394-95 (11th

Cir.1988).  And still others, like this Court, raise the bar even higher, determining

the debtor's bad faith objectively by broadly considering "whether the petition

serves a valid bankruptcy purpose" and "whether the petition is filed merely to

obtain a tactical litigation advantage."  *In re 15375 Mem'l Corp. v. BEPCO, L.P.*,

589 F.3d 605, 618 (3d Cir. 2009) (citation omitted); *see also Laguna Assocs. L.P.*

*v. Aetna Cas. & Sur. Co.*, 30 F.3d 734, 738 (6th Cir. 1994).

This division of authority was outcome determinative in this case.  The panel

concluded that LTL's petition must be dismissed because "[o]ur precedents show a

debtor who does not suffer from financial distress cannot demonstrate its Chapter

11 petition serves a valid bankruptcy purpose supporting good faith," Op. 35, and,

in the panel's view, "LTL was not in financial distress," Op. 53-54.  Yet this

petition would satisfy the good-faith standard in courts on the other side of the

split—a fact the Bankruptcy Court recognized, A13, and the panel effectively

conceded, *see* Op. 28 n.8.  LTL's bankruptcy petition is not objectively futile and

the panel did not dispute LTL's "sincerely held" belief that bankruptcy was

justified.  Op. 56.  Unsurprisingly, then, bankruptcy courts in the Fourth Circuit

have upheld similar bankruptcies, *see, e.g.*, *In re Bestwall LLC*, 605 B.R. 43, 49

(Bankr. W.D.N.C. 2019), and determined that attempts to obtain dismissal would

be futile because of the Fourth Circuit's standard, *see, e.g.*, *In re DBMP LLC*, No.

20-30080, 2021 WL 3552350, at *4, *23 (Bankr. W.D.N.C. Aug. 11, 2021) (noting

that "dismissal would be difficult to obtain" at an early stage because the "Fourth

Circuit's exacting *Carolin* standard" means such a challenge would "likely fail");

*In re Aldrich Pump LLC*, No. 20-30608, 2021 WL 3729335, at *3, *26 (Bankr.

W.D.N.C. Aug. 23, 2021) (similar).

Contrary to Claimants' suggestions, *Carolin*'s two-prong bad-faith standard is alive and well in the Fourth Circuit. *Compare* TCC Rehearing Opp. 12 (discussing *Premier Auto. Servs.*, 492 F.3d at 280), *with Premier Auto. Servs.*, 492 F.3d at 280-281 (citing, discussing, and applying *Carolin*). The Fourth Circuit in *Premier Automobile Services* noted the debtor's lack of financial difficulty as part of discussing the debtor's subjective bad faith; the Fourth Circuit also observed that the debtor had "no unsecured creditors and few, if any, secured creditors," and reasoned that each of these facts showed that the bankruptcy filing's sole purpose was to forestall an eviction. 492 F.3d at 280. These facts also meant the debtor's petition was objectively futile, as any hope for reorganization was "wholly illusory." *Id.* In those circumstances, lack of financial distress "alone" might lead to dismissal because that evidence "overlaps" with and satisfies both *Carolin* prongs—subjective bad faith *and* objective futility—just as *Carolin* expected could happen. 886 F.2d at 701 ("Evidence of subjective bad faith in filing may tend to prove objective futility, and *vice versa*."). Here, of course, LTL has tens of thousands of unsecured creditors and a realistic path to reorganization under 11 U.S.C. § 524(g). And because of that reality, LTL's petition was not objectively futile. *See* Op. 28 n.8, 56.

2. There is a "reasonable probability that the Supreme Court will grant certiorari" to resolve this division for two independent reasons. *Nara*, 494 F.3d at

1133.  *First*, as the law stands, a debtor's access to Chapter 11 hinges more on a

case's venue than its facts.  And the Supreme Court routinely grants review to

resolve divisions among the courts of appeals in how to interpret a federal statute.

*See* S. Ct. R. 10(a).  Indeed, the Court has granted certiorari to resolve circuit splits

regarding the Bankruptcy Code in the recent past.  *See, e.g.*, *In re Coughlin*, 33

F.4th 600, 608 (1st Cir. 2022), *cert. granted sub nom. Lac du Flambeau Band v.

Coughlin*, 143 S. Ct. 645 (2023) (certiorari granted where circuits disagreed on

proper application of the Bankruptcy Code); *In re Bartenwerfer*, 860 F. App'x 544

(9th Cir. 2021), *cert. granted sub nom. Bartenwerfer v. Buckley*, 142 S. Ct. 2675

(2022) (same), *aff'd*, 143 S. Ct. 665 (2023).  Underscoring the urgency of review,

this Court is on the short side of the split.  Although the Court may believe that it

has reached the correct result, its sister circuits' disagreement indicates that a stay

is appropriate.

*Second*, the issues in this case easily qualify as "important."  S. Ct. R. 10(c);

*see also, e.g.*, *U.S. ex rel. Chandler v. Cook County*, 282 F.3d 448, 450 (7th Cir.

2002) (Ripple, J., in chambers) (granting a stay based on the importance of the

issue and the disagreement among other judges, even though the panel was

"unanimous" and "[n]o judge . . . requested a vote for rehearing en banc").  This

Court has already recognized the importance of this case by first certifying it for

direct review and then by calling for a response to LTL's rehearing petition.  *See*

Dkt. 12-1 in No. 22-8015; *see also* 28 U.S.C. § 158(d)(2)(A)(i)-(ii) (providing for

direct appeal where, among other things, the bankruptcy court's decision "involves

a matter of public importance" or "a question of law requiring resolution of

conflicting decisions"). *Cf. In re Integrated Telecom Express, Inc.*, No. 04-2411

(3d Cir. Dec. 6, 2004) (granting stay of mandate until filing and disposition of

petition for writ of certiorari).

This case will determine whether other companies in LTL's shoes—facing

mass-tort liability, "which can entail a seemingly infinite number of present and

future claims that could impose enterprise-ending liability"—are allowed to use an

"important mechanism" under the Code "to achieve widespread resolution of

mass-tort liability in a single forum, preserving the debtor's assets so that creditors

(both past and future) may receive equitable recovery and the business debtor may

have a hope of achieving the 'fresh start' that bankruptcy promises." Dkt. 111,

*Brief for National Association of Manufacturers and Product Liability Advisory*

*Council, Inc. as* Amici Curiae at 5, 26. Although many entities face mass-tort

claims and have successfully used the Bankruptcy Code to reach a fair and

equitable resolution of mass tort claims, *see* Dkt. 118, *Brief for the Chamber of*

*Commerce and American Tort Reform Association as* Amici Curiae at 5-9, the

panel's decision takes that "fresh start" off the table for LTL and creates

uncertainty for other entities buckling under the weight of similar suits.

The panel's decision is in particular tension with Congress's policy in 11

U.S.C. § 524(g), its enactment for resolving asbestos mass-tort liability.  That

provision addresses the need "to deal equitably with claims and future demands"

and to form a trust that "will value, and be in a financial position to pay, present

claims and future demands."  11 U.S.C. § 524(g)(2)(B).  The panel's stringent

financial-distress requirement neglects the interests of future claimants, the very

group that Congress acted to protect.

Commentators and legal scholars have expressed concerns about the panel

decision's effects on bankruptcy law.  The panel's groundbreaking decision will

produce "increased litigation costs as courts attempt to determine 'financial

distress' for each individual case."  James Nani & Alex Wolf, *J&J Bankruptcy*

*Ruling Knocks Money Deal in 'Texas Two-Step'*, Bloomberg Law (Jan. 31, 2023),

*available at* https://news.bloomberglaw.com/bankruptcy-law/j-j-bankruptcy-

ruling-undercuts-central-move-in-texas-two-step.  Dismissal of LTL's bankruptcy

will preclude mass-tort debtors and claimants from using Chapter 11's most

powerful tools—including centralization of claims, the automatic stay, bankruptcy

jurisdiction's broad reach, claims estimation, extensive disclosure requirements,

appointment of a future claims representative with fiduciary duties, and the

Chapter 11 plan process—to reach an equitable resolution for present *and future*

claimants.  *See* Samir D. Parikh, *The New Mass Torts Bargain*, 91 Fordham L.

Rev. 447, 485-493 (2022).  Claimants must instead turn back to the traditional tort

system, where massive collective-action and hold-out problems exist,

"encourag[ing] claimants who are worried about available recoveries to race to the

courthouse to collect ahead of others."  Anthony J. Casey & Joshua C. Macey, *In

Defense of Chapter 11 for Mass Torts*, 90 U. Chi. L. Rev. ___ (forthcoming 2023).

This race "can destroy going concern value and lead to the dismemberment of

valuable firms."  *Id.*  And these real-word consequences confirm that LTL's

forthcoming petition will be a strong candidate for Supreme Court review.

3.  Although LTL need not show that this Court's standard is wrong in order

to secure a stay, the standard's shaky textual foundation underscores the need for

Supreme Court review.  *See Nara*, 494 F.3d at 1133 (a stay is warranted when

there is "a reasonable possibility that at least five Justices would vote to reverse

this Court's judgment.").  The good-faith requirement is a judicially created gloss

on the Bankruptcy Code that the Supreme Court is likely to view with skepticism.

And considering whether a petition has a valid "bankruptcy purpose" or whether a

debtor experiences "financial distress" is a further gloss on the already judicially

created gloss that is "good faith."  The panel's focus on a financial-distress

requirement loses sight of 11 U.S.C. § 1112(b)'s goal of preventing abuse of the

bankruptcy process, *SGL Carbon*, 200 F.3d at 161-162, and thereby risks

"miss[ing] the forest for the trees," *In re Owens Corning*, 419 F.3d 195, 211 (3d Cir. 2005).

The Supreme Court will start with the text. *See, e.g.*, *Bartenwerfer v. Buckley*, 143 S. Ct. 665, 671 (2023). This Court roots its good-faith doctrine in 11 U.S.C. § 1112(b)(1), which permits a bankruptcy court to dismiss a Chapter 11 petition "for cause." *SGL Carbon*, 200 F.3d at 160. But the words "good faith" do not appear in § 1112(b)(1). "For cause" is illuminated by the factors defining "cause" in that provision, but the enumerated factors that would permit dismissal of a bankruptcy case for cause bear no relationship to the good-faith standard crafted by this Court. *Compare, e.g.*, 11 U.S.C. § 1112(b)(4) (explaining that "the term 'cause' includes," among other things, "diminution of the estate," "failure to maintain appropriate insurance," and "failure timely to pay taxes owed"), *with In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119-121 (3d Cir. 2004) (explaining that the "good faith" inquiry looks at whether the debtor was experiencing "financial distress," "whether the petition serves a valid bankruptcy purpose," and whether the petition seeks "merely to obtain a tactical litigation advantage"). This Court has admitted that the "for cause" standard in § 1112(b)(1) "neither requires nor prohibits imposition of a 'good faith' requirement on Chapter 11 petitions." *SGL Carbon*, 200 F.3d at 160. And Congress prescribed

11

requirements in 11 U.S.C. § 524(g) for debtors seeking to confirm a plan handling mass-tort liabilities.

The Supreme Court has rejected similar efforts to inject new language into the Bankruptcy Code.  In *Toibb v. Radoff*, 501 U.S. 157, 159-160 (1991), for example, the bankruptcy court had dismissed the individual nonbusiness debtor's petition, reasoning that a debtor not engaged in an ongoing business may not reorganize under Chapter 11.  The Supreme Court canvassed the Code for an ongoing-business requirement in Chapter 11.  Noting that various provisions in the Code created exclusions from eligibility, yet no section required an ongoing business, the Court reached the obvious conclusion that "Congress knew how to restrict recourse to the avenues of bankruptcy relief; it did not place Chapter 11 reorganization beyond the reach of a nonbusiness individual debtor." *Id.* at 161.

The same is true here.  Given the express textual requirements in § 1112 and § 524(g), courts should be reluctant to add further requirements that cause early dismissal.  The Fourth Circuit's standard appropriately "contemplates that it is better to risk proceeding with a wrongly motivated invocation of Chapter 11 protections whose futility is not immediately manifest than to risk cutting off even a remote chance that a reorganization effort so motivated might nevertheless yield a successful rehabilitation." *Carolin Corp.*, 886 F.2d at 701.  The Supreme Court has similarly expressed reluctance to dismiss for lack of good faith in the Chapter

12

13 context, noting that limiting such dismissals to "extraordinary cases is

particularly appropriate" given that lack of good faith is an express statutory

ground for later denying plan confirmation in Chapter 13, *see* 11 U.S.C.

§ 1325(a)(3), and Chapter 11, *see id.* § 1129(a)(3), both. *Marrama v. Citizens*

*Bank of Mass.*, 549 U.S. 365, 375 n.11 (2007). Bankruptcy courts "should be more

reluctant to dismiss a petition for lack of good faith than to reject a plan for lack of

good faith." *Id.* (citation omitted). Even if the Supreme Court does not entirely

jettison the good-faith requirement, it is likely to be persuaded that this Court's

standard is a bridge too far.

> **B. LTL's petition for certiorari will present a substantial question regarding the standard of review that an appellate court applies to a bankruptcy court's good-faith findings.**

The panel decision also creates a split regarding the standard of review that

an appellate court applies in assessing good faith. The panel treated good faith as

"essentially[] a conclusion of law" reviewed de novo without any deference to the

Bankruptcy Court. Op. 33 (quoting *BEPCO*, 589 F.3d at 616). It "likewise"

treated the Bankruptcy Court's finding of financial distress the same, giving it a

"fresh look." Op. 33. The panel "[w]eigh[ed] the totality of facts and

circumstances" itself, leading it to reject the Bankruptcy Court's conclusion that

Old JJCI—rather than LTL—was the proper focus of the financial-distress analysis

even though the funding agreement was part of the bankruptcy-driven

13

restructuring, and the restructuring was a "single integrated transaction" to resolve

Old JJCI's talc liabilities.  Op. 43-44.  And the panel "evaluate[d] the financial

condition of LTL" for itself, concluding it would "not accept [the bankruptcy

court's] projections of future liability."  Op. 45-46.  By contrast, other courts of

appeals review a bankruptcy court's good-faith finding under "the clearly

erroneous standard."  *Premier Auto. Servs.*, 492 F.3d at 279; *see also In re Brazos

Emergency Physicians Ass'n, P.A.*, 471 F. App'x 393, 394 (5th Cir. 2012); *In re

Cedar Shore Resort, Inc.*, 235 F.3d at 379;  *In re Trident Assocs. Ltd. P'ship*, 52

F.3d 127, 132 (6th Cir. 1995); *In re Marsch*, 36 F.3d at 828.

Here, again, the Court's analysis is likely wrong and there is a reasonable

possibility it will be reversed by the Supreme Court.  *See Nara*, 494 F.3d at 1133.

The instances in which the Supreme Court has "articulated a standard of deference

for appellate review of district-court determinations reflect an accommodation of

the respective institutional advantages of trial and appellate courts."  *Salve Regina

Coll. v. Russell*, 499 U.S. 225, 233 (1991).  "[A] federal appellate court [has the]

primary function as an expositor of law," *Miller v. Fenton*, 474 U.S. 104, 114

(1985), and is therefore best-suited to resolve questions that "contribute to the

clarity of legal doctrine," *Salve Regina*, 499 U.S. at 233.  But a second (and in

many cases, third) round of de novo consideration imposes added costs on judges

and litigants alike, and it is ill-suited to occasions when an appellate court's

14

application of a legal standard to particular facts "will not much clarify legal
principles or provide guidance to other courts resolving other disputes." *U.S. Bank
Nat'l Assn. v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 968 (2018).  These "case-
specific factual issues" are better resolved by the bankruptcy court, which "has
both the closest and the deepest understanding of the record." *Id.* at 967-968.  An
appellate court reviewing those factual findings should place "a serious thumb on
the scale for the bankruptcy court." *Id.* at 966.

A "change[]" in "authority on review,"—"from de  novo review . . . to
clearly erroneous review"—can be "outcome determinative." *Kearney v. Standard
Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999).  It certainly was here.  The panel's
reversal would not have been possible but for the panel's decision to reweigh the
facts to reach a different conclusion than the Bankruptcy Court.  The panel, for
example, faulted the Bankruptcy Court for failing to account for "the possibility of
meaningful settlement."  Op. 49.  But the Bankruptcy Court *did* account for that
possibility.  The court acknowledged that since 2014 "there have been
approximately 6,800 cases which have settled," but explained that this "number is
dwarfed" by the "projected 10,000 new cases to be filed each year going forward,"
A20, and that no "meaningful settlement" discussions had taken place since the
global Imerys settlement discussions fell apart, A24.

Similarly, the panel faulted the Bankruptcy Court for failing to account for the likelihood of "successful defense" in litigation. Op. 49. But the Bankruptcy Court readily acknowledged that JJCI "ultimately prevailed in most of the talc cases it tried," A26 n.15, while recognizing that even a very low plaintiff success rate could ruin the company, A36. The panel also suggested that the Bankruptcy Court failed to justify its finding that future litigation costs would be higher than the "$4.5 billion" JJCI had incurred over the previous five years. Op. 50. But the Bankruptcy Court again reasonably concluded that recent events—the collapse of the Imerys settlement, the Supreme Court's decision not to review the *Ingham* verdict, and damaging reports by the FDA and its Canadian equivalent—meant that "[n]either the settlements nor verdicts which predated these events" were "dependable guideposts for expectations going forward." A41.

In sum, after hearing the evidence presented during a five-day trial, the Bankruptcy Court was better situated than the panel to weigh the evidence and make credibility judgments. Yet the panel applied a de novo standard of review to create a do-over and reach a different conclusion. As cases like *Premier Automobile Services* underscore, this Court is the only jurisdiction in which this could have happened. It is reasonable to expect that the Supreme Court will grant certiorari to bring the circuits into alignment. *Cf., e.g.*, *In re Village at Lakeridge, LLC*, 814 F.3d 993, 997 (9th Cir. 2016), *cert. granted in part sub nom. U.S. Bank*

*Nat'l Ass'n v. Village at Lakeridge, LLC*, 137 S. Ct. 1372 (2017) (certiorari granted where circuits disagreed on standard of review applicable to issue in bankruptcy proceedings).

## II.    STAYING THE MANDATE WILL AVOID CHAOS IN THE BANKRUPTCY COURT AND MASS-TORT PROCEEDINGS IF THE SUPREME COURT GRANTS REVIEW AND REVERSES AND WILL PREVENT IRREPARABLE HARM TO LTL.

LTL seeks to maintain the status quo for a short period while it seeks a writ of certiorari. The stay will be temporary: Certiorari briefing will be completed over the summer, and the Supreme Court would likely rule on the petition no later than the first Monday in October. Thus, if certiorari is ultimately denied, a stay would last only about six months. *See, e.g.*, *In re Integrated Telecom Express, Inc.*, No. 04-2411 (3d Cir. Dec. 6, 2004) (this Court granted stay of mandate pending certiorari petition and stay was dissolved six months later after certiorari denied). If review is granted, however, that further weighs in favor of staying the mandate pending the Supreme Court's final disposition of this case.

Without a stay, LTL and courts across the country will be thrust into chaos. Moreover, the bankruptcy process will be dismantled, and time, effort, and money expended, all for naught if the Supreme Court ultimately reverses this Court. The panel recognized LTL's good intentions in filing its bankruptcy petition and LTL's financial means to effectuate its planned reorganization. Op. 18, 55. Those good intentions apply to LTL's certiorari petition, too.

17

1.  Allowing the mandate to take effect will create chaos in the Bankruptcy Court and across mass-tort proceedings nationwide if the Supreme Court reverses this Court.

The Bankruptcy Court has noted that upon the mandate issuing, it will dismiss the petition and retain jurisdiction over only administrative matters, like fees.  Dismissal of the bankruptcy brings with it dissolution of the TCC and discharge of its retained professionals, meaning claimants represented by the TCC would lack representatives to respond to LTL's petition for certiorari.  *See* 11 U.S.C. § 103(g); *In re Great N. Paper, Inc.*, 299 B.R. 1, 5 (D. Me. 2003) ("When the statutory basis of the case is changed, either through dismissal or . . . conversion, the statute under which the Committee was created no longer applies and the committee is automatically dissolved.") (quotation marks omitted). In addition, dismissal will result in the discharge of the Bankruptcy Court's retained professionals, such as the mediators, the fee examiner, and the future claims representative.  Then, if the Supreme Court reverses, the Bankruptcy Court would have to rewind all its efforts and rebuild the significant infrastructure that it had just dismantled.

Moreover, in the absence of a stay, there would be significant chaos and confusion across the mass-tort proceedings.  Approximately 1,000 individually set ovarian-cancer claims are pending in various state courts outside of the federal

18

MDL and consolidated state proceedings in California and New Jersey.  That

means there are roughly 1,000 ovarian-cancer claims that are not subject to

deliberate and measured docket-wide coordination procedures, and each will

require state court judges and their staff to expend resources to "on track" the cases

back into the system.  Moreover, an additional 470 mesothelioma claims are

pending in state courts across the country, none of which are coordinated, and

many of which are filed on specialized, asbestos-specific accelerated dockets.

Each of these cases would suddenly spring back into activity and proceed towards

trial absent a stay.

In the mesothelioma docket alone makes the point.  The currently pending

mesothelioma claims would return to 44 different courts across 25 different States.

Many of the cases have proceeded in the interim against other defendants and

without LTL's involvement, but suddenly LTL would be thrown into the mix—

potentially significantly impacting the progress, scope, and nature of the cases.

Worse, there are at least 20 mesothelioma cases now on the eve of trial or which

could be set for trial in the next 60 days, each of which would demand significant

investment in expedited, catch-up discovery; expert-witness engagement; trial-

lawyer time; and other resources.

In other words, the complex mass-tort machinery could swiftly spring to life

in dozens upon dozens of courts across the country, requiring unexpected time and

resources from not just LTL but also court personnel, only to potentially grind to a

halt (again)—possibly even in the middle of multiple trials—if the Supreme Court

were to grant review.  And to be clear, this machinery does not run itself.  From

just LTL's perspective, prior to the bankruptcy petition, 30 firms and 40 experts

were retained to handle the mesothelioma cases referenced above.  Reconstituting

this complex operation would be for naught if the Supreme Court decides to hear

the case.  This Court can—and should—avoid this chaos by maintaining the status

quo while LTL seeks certiorari.

2.  LTL will also suffer irreparable harm absent a stay pending certiorari.

*See Nara*, 494 F.3d at 1133 (an applicant can demonstrate good cause by showing

"a likelihood of irreparable injury absent a stay.").  The purpose of LTL's

bankruptcy petition was to channel into post-confirmation trusts all present and

future asbestos-related tort claims against it, permitting compensation to be paid in

a manner that ensures fair and equitable treatment of present and future claimants.

As LTL explained in defending the automatic stay, its efforts to reorganize would

be irreparably harmed if the mandate issues before final review of this case.  *See*

Dkt. 104, LTL Response Br. 76-99.

Furthermore, if the mandate issues, LTL will be forced to resume litigation

of the tens of thousands of stayed claims.  *See supra* pp. 18-20.  Before

bankruptcy, defense costs alone ran upwards of $10-20 million per month, A458, a

number that is sure to increase as the number of claims filed against LTL and its

affiliates soars.  *See Phillip Morris USA Inc. v. Scott*, 561 U.S. 1301, 1304 (2010)

("If expenditures cannot be recouped, the resulting loss may be irreparable.").

Claimants would not lose any rights during an approximately six-month stay, nor

could they reasonably expect to start receiving payments if their lawsuits proceed

in that same period.  Although LTL will not become insolvent in the time it takes

the Supreme Court to review this case, the sheer cost of restarting LTL's talc-

litigation apparatus plus the monthly defense costs thereafter is sure to begin

depleting the funds available for claimants with no offsetting benefits for anyone.

      The harm to LTL and its ability to create a trust to benefit present and future

claimants, if the Supreme Court reverses, also outweighs any harm the present

claimants would suffer as a result of the stay.  *See Rostker v. Goldberg*, 448 U.S.

1306, 1308 (1980) (Brennan, J., in chambers) ("[I]n a close case, it may be

appropriate to 'balance the equities'—to explore the relative harms to applicant

and respondent, as well as the interests of the public at large.").  Courts

consistently recognize the public interest in a successful reorganization.  *See, e.g.*,

*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983).  That is particularly

so in the mass-tort context, where "completing the reorganization process . . . [will]

resolv[e] thousands of claims in a uniform and equitable manner."  *In re W.R.*

*Grace & Co.*, 386 B.R. 17, 36 (Bankr. D. Del. 2008).  And here, as the Bankruptcy

Court explicitly found, A29, and the panel did not dispute, Op. 54-55, a trust that is

ultimately established by a confirmed plan of reorganization for LTL would allow

for more efficient recoveries for claimants than generally are possible in the tort

system.  "Refusing a stay," at bottom, "may visit an irreversible harm on [LTL],

but granting it will apparently do no permanent injury to" Claimants.  *Philip*

*Morris*, 561 U.S. at 1305.

## CONCLUSION

For these reasons, the Court should stay the mandate pending the filing and

disposition of a petition for writ of certiorari.

Respectfully submitted,

/s/ Neal Kumar Katyal

| | |
|---|---|
| Gregory M. Gordon | Neal Kumar Katyal |
| Brad B. Erens | Sean Marotta |
| Dan B. Prieto | William E. Havemann |
| JONES DAY | Jo-Ann Tamila Sagar |
| 2727 North Harwood Street | Patrick C. Valencia |
| Dallas, Texas 75201 | HOGAN LOVELLS US LLP |
| (214) 220-3939 | 555 Thirteenth Street, N.W. |
| | Washington, D.C. 20004 |
| C. Kevin Marshall | (202) 637-5600 |
| David S. Torborg | neal.katyal@hoganlovells.com |
| JONES DAY | |
| 51 Louisiana Avenue, N.W. | |
| Washington, D.C. 20001 | |
| (202) 879-3939 | |
| | |
| March 22, 2023 | *Counsel for LTL Management LLC* |

# CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Local R. 28.3(d) and Local R. 46.1(e), I certify that I, Neal Kumar

Katyal, am admitted as an attorney and counselor of the United States Court of

Appeals for the Third Circuit.

/s/ Neal Kumar Katyal
NEAL KUMAR KATYAL
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
neal.katyal@hoganlovells.com

March 22, 2023

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), I certify the following:

1. This petition complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,165 words, excluding those parts exempted by Fed. R. App. P. 32(f).

2. This petition complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the petition has been prepared in Times New Roman 14-point font using Microsoft Word 2010.

/s/ Neal Kumar Katyal
NEAL KUMAR KATYAL
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
neal.katyal@hoganlovells.com

March 22, 2023

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk using the appellate CM/ECF system on March 22, 2023. All counsel of record are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

/s/ Neal Kumar Katyal
NEAL KUMAR KATYAL
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, DC 20004
(202) 637-5600
neal.katyal@hoganlovells.com

March 22, 2023