# EXHIBIT A

**Berkovich Certification**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** <br><br> **WOLLMUTH MAHER & DEUTSCH LLP** <br> Paul R. DeFilippo, Esq. <br> 500 Fifth Avenue <br> New York, New York 10110 <br> Telephone: (212) 382-3300 <br> Facsimile: (212) 382-0050 <br> pdefilippo@wmd-law.com <br><br> **JONES DAY** <br> Gregory M. Gordon, Esq. <br> Brad B. Erens, Esq. <br> Dan B. Prieto, Esq. <br> Amanda Rush, Esq. <br> 2727 N. Harwood Street <br> Dallas, Texas 75201 <br> Telephone: (214) 220-3939 <br> Facsimile: (214) 969-5100 <br> gmgordon@jonesday.com <br> bberens@jonesday.com <br> dbprieto@jonesday.com <br> asrush@jonesday.com <br> (Admitted *pro hac vice*) <br><br> *PROPOSED ATTORNEYS FOR DEBTOR* | **WEIL, GOTSHAL & MANGES LLP** <br> Diane Sullivan, Esq. <br> Ronit Berkovich, Esq. <br> Theodore Tsekerides, Esq. <br> Matthew P. Goren, Esq. <br> 767 Fifth Avenue <br> New York, NY 10153 <br> Telephone: (212) 310-8000 <br> Facsimile: (212) 310-8007 <br> Diane.Sullivan@weil.com <br> Ronit.Berkovich@weil.com <br> Theodore.Tsekerides@weil.com <br> Matthew.Goren@weil.com <br><br><br> *PROPOSED SPECIAL COUNSEL FOR DEBTOR* |
| In re: <br><br> LTL MANAGEMENT LLC,[1] <br><br>       Debtor. | Chapter 11 <br><br> Case No.:  23-12825 (MBK) <br><br> Judge:  Michael B. Kaplan |

### CERTIFICATION OF RONIT J. BERKOVICH IN SUPPORT OF APPLICATION FOR RETENTION OF WEIL, GOTSHAL & MANGES LLP AS SPECIAL COUNSEL TO THE DEBTOR AS OF APRIL 4, 2023

I, Ronit J. Berkovich, being of full age, certify as follows:

1.  Weil, Gotshal & Manges LLP ("Weil") is seeking authorization to be retained as special counsel to the above-captioned debtor and debtor in possession (the "Debtor") in the above-captioned case (the "Chapter 11 Case"), effective as of April 4, 2023 (the "Petition Date").  I submit this certification

---

[1]  The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

(the "<u>Certification</u>") in connection with the application submitted on the date hereof (the "<u>Application</u>"),[2] by the Debtor.

2.      My professional credentials include: I am a member in good standing of the New York State Bar. I am admitted to practice law in the State of New York and before the United States Court of Appeals for the Third Circuit and the United States District Courts for the Southern and Eastern Districts of New York.

3.      I am a partner with the law firm of Weil, an international law firm with principal offices at 767 Fifth Avenue, New York, New York 10153; regional offices in Washington, D.C.; Houston and Dallas, Texas; Miami, Florida; Boston, Massachusetts; Princeton, New Jersey; and Redwood Shores, California; and foreign offices in London, United Kingdom; Frankfurt and Munich, Germany; Paris, France; Brussels, Belgium; and Beijing, Hong Kong, and Shanghai, China.  I am duly authorized to make this certification on behalf of Weil.

4.      The Debtor seeks to retain and employ Weil as special counsel in the above-captioned case (the "<u>Chapter 11 Case</u>") for its expertise and familiarity with the chapter 11 cases of *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS) (Bankr. D. Del.) (the "<u>Imerys Case</u>") and *In re Cyprus Mines Corporation*, Case No. 21-10398 (LSS) (Bankr. D. Del.) (the "<u>Cyprus Case</u>"), as well as talc-related litigation in which it served as trial counsel prior to April 4, 2023 (the "<u>Petition Date</u>").  The Debtor is a creditor of the debtors in the Imerys Case and the Cyprus Case and holds valuable claims against those debtors' estates.  In addition, the debtors in the Imerys Case and Cyprus Case have asserted significant indemnification claims against the Debtor.  The Debtor requires Weil's expertise and familiarity with the Imerys Case and Cyprus Case to prosecute and defend against such claims.  Weil is uniquely situated to serve as the Debtor's special counsel in this Chapter 11 Case because of its long-standing representation of the Debtor and its predecessor, Johnson & Johnson Consumer Inc. ("<u>Old JJCI</u>"), in the Imerys Case and Cyprus Case, as well as Weil's experience serving as special counsel to the Debtor in the Debtor's prior chapter 11 case (the "<u>2021 Chapter 11 Case</u>").

5.      As set forth in the Application, the Debtor does not propose to employ Weil as general bankruptcy counsel pursuant to section 327(a) of the Bankruptcy Code, but instead as special counsel pursuant to section 327(e) of the Bankruptcy Code, primarily to represent and advise the Debtor and J&J in matters related to the Imerys Case and the Cyprus Case and as needed in connection with the defense and resolution

---

[2]    Capitalized terms used but not otherwise defined herein have the same meanings ascribed to them in the Application.

of certain talc claims.  *See* Application, ¶ 5.  The interests of the Debtor and J&J are aligned in the Imerys Case and the Cyprus Case.

5.       Weil does not have any retention agreements with the Debtor, Old JJCI, or J&J concerning this Chapter 11 Case, the Imerys Case, the Cyprus Case, or the talc litigation.  As set forth in the Application, the engagement terms between the Debtor and Weil are governed by the certain *Outside Counsel Management and Billing Guidelines for North America & Global IP and Litigation Guidelines* (the "Outside Counsel Guidelines").[3]  *See* Application, ¶ 6.  Weil understands Old JJCI's retention of Weil pursuant to the Outside Counsel Guidelines was allocated to the Debtor in connection with the corporate restructuring on October 12, 2021 described in the *Declaration of John K. Kim in Support of First Day Pleadings* (Dkt. 4), ¶ 24.

6.       The proposed arrangement for compensation, including hourly rates, if applicable, is as follows:

Subject to the Court's approval of this Application, Weil intends to:  (a) charge for its legal services on an hourly basis in accordance with the following blended rate ranges depending on the number of years of practice: $1,225.00 to $1,550.00 for partners, $1,150.00 to $1,175.00 for counsel, and $605.00 to $1,080.00 for associates; and (b) seek reimbursement of actual and necessary out-of-pocket expenses[4].  Weil's hourly rates may change from time to time in accordance with Weil's established billing practices and procedures, as contemplated by the Outside Counsel Guidelines.[5]  Weil's hourly fees are comparable to those charged by attorneys of similar experience and expertise for engagements of similar scope and complexity and, with the discount, are less than the fees Weil charges for most matters.

Weil also intends to seek reimbursement for expenses incurred in connection with its representation of the Debtor in accordance with Weil's normal reimbursement policies, subject to any modifications to such policies that Weil may be required to make to comply with orders of this Court, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Fee Guidelines.  Weil's disbursement policies pass through all out-of-pocket expenses at actual cost or an estimated actual cost when the actual cost is difficult to determine.  For example, with respect to duplication charges, Weil will charge $.10 per printed

---

[3]     A copy of the Outside Counsel Guidelines are annexed hereto as Appendix 1.

[4]     This payment structure is a discount off of Weil's standard hourly 2023 rates, which went into effect on January 1, 2023.  Weil's current customary hourly rates are $1,375.00 to $2,095.00 for partners and counsel, $750.00 to $1,350.00 for associates, and $295.00 to $530.00 for paraprofessionals.

[5]     Weil adjusts its billing rates annually.

black and white page and $.50 per color page because the actual cost is difficult to determine. Similarly, as it relates to computerized research, Weil believes that it does not make a profit on that service as a whole, although the cost of any particular search is difficult to ascertain. Other reimbursable expenses (whether the service is performed by Weil in-house or through a third-party vendor) include overtime, deliveries, court costs, cost of food at meetings, transcript fees, travel fees, and clerk fees.

In addition, except as set forth below in regards to the compensation prior to the Petition Date, to the extent that Weil represents both the Debtor and J&J in a matter, including the Imerys Case and the Cyprus Case, Weil will allocate 50% of its fees and expenses incurred in such joint representation to the Debtor and 50% to J&J. In matters in which Weil represents solely the Debtor or J&J, Weil will allocate 100% of the fees and expenses to the entity represented.

With regards to compensation prior to the Petition Date, the Debtor paid Weil for its services in connection with the 2021 Chapter 11 Case pursuant to the interim compensation order entered in that case throughout the pendency of the 2021 Chapter 11 Case. See also Disclosure of Compensation attached to the Application as Exhibit B.

On April 4, 2023, following the entry of the Dismissal Order and prior to the commencement of this Chapter 11 Case, Weil received payment from the Debtor of all unpaid actual and estimated fees and expenses incurred through the commencement of this Chapter 11 Case. See Disclosure of Compensation, attached to Application as Exhibit B.

In particular, following the entry of the Dismissal Order, on April 4, 2023, the Debtor paid Weil $270,548.02 via wire transfer (the "Payment"). This amount comprises (a) $229,548.02 on account of actual and estimated fees and expenses for which the Debtor was responsible and that were incurred but not yet paid in the 2021 Chapter 11 Case through the entry of the Dismissal Order (the "Pre-Dismissal Amounts"),[6] and (b) $41,000.00 for Weil's estimated fees and expenses incurred following dismissal of the 2021 Chapter 11 Case and prior to the commencement of this Chapter 11 Case (the "Post-Dismissal Amounts"). The Payment was applied to the Pre-Dismissal Amounts and the Post-Dismissal Amounts prior to the commencement of this Chapter 11 Case.[7] Accordingly, to the best of the Debtor's knowledge and

---

[6]   This amount also included outstanding actual and estimated fees and expenses owed to Weil by J&J for services provided during the pendency of the 2021 Chapter 11 Case prior to the entry of the Dismissal Order. Weil subsequently received payments directly from J&J for the fees and expenses attributable to J&J that were included in the Payment by LTL. Weil applied the payments received directly from J&J to the amounts owed by J&J and added the duplicate payment from LTL to the Retainer (as defined below).

[7]   Weil did not hold a retainer (a "Retainer") as of the Petition Date. Weil expects to: (a) complete its reconciliation of the fees and expenses actually incurred prior to the Petition Date no later than the filing of its first interim fee

belief, as of the Petition Date, Weil was not owed any amounts by the Debtor.

No promises have been received by Weil, or any partner, counsel, or associate of Weil, as to payment or compensation in connection with this Chapter 11 Case other than in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and the Fee Guidelines. Furthermore, Weil has no agreement with any other entity to share compensation received by Weil or by such entity.

The Application requests approval of Weil's retention on rates, terms, and conditions consistent with what Weil charges non-chapter 11 debtors, namely, prompt payment of Weil's hourly rates as adjusted from time to time, subject to the discount described herein, and reimbursement of out-of-pocket disbursements at cost or based on formulas that approximate the actual cost where the actual cost is not easily ascertainable. Subject to these terms and conditions, Weil will maintain detailed, contemporaneous time records in six-minute intervals and apply for allowance of compensation for professional services rendered in this Chapter 11 Case and for reimbursement of actual and necessary expenses relating thereto, in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Fee Guidelines, the Interim Compensation Order, and any additional procedures that may be established by the Court in the Chapter 11 Case. In addition, Weil understands that interim and final fee awards are subject to approval by this Court.

☐ Pursuant to D.N.J. LBR 2014-3, I request a waiver of the requirements of D.N.J. LBR 2016-1

7.    To the best of my knowledge, after reasonable and diligent investigation, my connection with the debtor(s), creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, is as follows:

☐ None

---

application in the Chapter 11 Case, and will separately reconcile the Payment made with respect to Pre-Dismissal Amounts and the Post-Dismissal Amounts; (b) make a corresponding adjustment to the amount of the Retainer on or about that date as described below; and (c) disclose such adjustment in its first interim fee application. If, following reconciliation, any estimated amounts included in either the Pre-Dismissal Amounts or the Post-Dismissal Amounts, respectively, exceeded Weil's unbilled actual fees and expenses incurred in the respective periods, the balance will be added to Retainer and applied by Weil consistent with the terms of the Interim Compensation Order. Weil will not apply any portion of the Retainer to fees and expenses incurred from and after the Petition Date unless and until authorized to do so by a further order of this Court, including an Interim Compensation Order. Weil agrees to waive all actual fees and expenses, if any, owed by the Debtor that were unpaid by the Payment.

☒    Describe connection: *See* no. 8 below and Schedule 2 attached hereto.

8.    To the best of my knowledge, after reasonable and diligent investigation, the connection of my firm, its members, shareholders, partners, associates, officers and/or employees with the debtor(s), creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee, is as follows:

☐    None

☒    Describe connection:

To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, Weil does not represent nor hold any interest adverse to the Debtor or its estate with respect to the matters on which Weil is to be employed, as required by section 327(e) of the Bankruptcy Code, in that, except as set forth herein:  (a) Weil has no connection with the Debtor, its affiliates,[8] its creditors, the Office of the United States Trustee for Region 3 (the "U.S. Trustee"), any person employed by the U.S. Trustee or any other party in interest in the Chapter 11 Case or their respective attorneys or accountants; (b) Weil is not a creditor, equity security holder, or insider of the Debtor; (c) no Weil partner, associate or other professional is, or was within two years of the Petition Date, a director, officer, or employee of the Debtor; and (d) none of the matters in which Weil represents a party in interest are adverse to the Debtor or its estate with respect to matters on which Weil is to be employed.

Weil, which employs approximately 1,100 attorneys, has a large and diversified legal practice that encompasses the representation of many financial institutions and commercial corporations.  Weil has, in the past, represented, currently represents, and may, in the future, represent entities (or their affiliates) that are claimants or interest holders of the Debtor as described below, in matters unrelated to this Chapter 11 Case, the Debtor, and the matters on which Weil is to be employed.  Some of those entities are, or may consider themselves to be, creditors or parties in interest in this Chapter 11 Case or otherwise have interests in this case.

In preparing this Certification, Weil used a set of procedures developed by Weil to ensure compliance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local

---

[8]    As described herein, Weil has represented, and represents, certain non-debtor affiliates of the Debtor in matters unrelated to the Chapter 11 Case as well as in the Imerys Case.

Bankruptcy Rules regarding the retention of professionals by a debtor under the Bankruptcy Code (the "Firm Disclosure Procedures").  Pursuant to the Firm Disclosure Procedures, I caused to be performed the following actions to identify the parties relevant to this Certification and to ascertain Weil's connection to such parties:

a.    On April 6, 2023 and April 26, 2023, Weil received from the Debtor's counsel, Jones Day, a list of the names of entities that may be parties in interest in this Chapter 11 Case (the "Potential Parties in Interest") attached hereto as Schedule 1.

b.    Weil maintains a master client database as part of its conflict clearance and billing records.  The master client database includes the names of the entities for which any attorney time charges have been billed since the database was first created (the "Client Database").  The Client Database includes the names of all current and former clients, the names of the parties who are or were related or adverse to such current and former clients, and the names of the Weil personnel who are or were responsible for current or former matters for such clients.  Weil's policy is that no new matter may be accepted or opened within the Firm without completing and submitting to those charged with maintaining the conflict clearance system the information necessary to check each such matter for conflicts, including the identity of the prospective client, the name of the matter, adverse parties, and, in some cases, parties related to the client or to an adverse party.  Accordingly, the database is updated for every new matter undertaken by Weil.  The accuracy of the system is a function of the completeness and accuracy of the information submitted by the attorney opening a new matter.

c.    Weil compared the names of each of the Potential Parties in Interest to client matters in the Client Database for which professional time was recorded during the two years prior to the comparison.  Any matches to names in the Client Database generated by the comparison were compiled, together with the names of the respective Weil personnel responsible for the identified client matters (the "Client Match List").

d.    A Weil attorney then reviewed the Client Match List and deleted obvious name coincidences and individuals or entities that were adverse to Weil's clients in both this matter and the matter referenced on the Client Match List.

e.      Using information in the Client Database concerning entities on the Client Match List and making general and, if applicable, specific inquiries of Weil personnel, Weil verified that it does not represent and has not represented any entity on the Client Match List in connection with this Chapter 11 Case.

f.      In addition, a general inquiry was sent by electronic mail to all Weil personnel (attorneys and staff) to determine whether any such individuals or any members of their households (i) own any debt or equity securities of the Debtor; (ii) hold a claim against or interest adverse to the Debtor; (iii) are or were officers, directors, or employees of the Debtor or any of the affiliates or subsidiaries; (iv) are related to or have any connections to Bankruptcy Judges in the District of New Jersey; or (v) are related to or have any connections to the U.S. Trustee, or any person employed in the office of the U.S. Trustee.

Weil compiled responses to the foregoing inquiries for the purpose of preparing this Certification. Responses to the inquiry described in paragraph 8(f) above reflect that, as of the Petition Date, no Weil personnel or member of the household of any Weil personnel holds any claims against, stock of, or other interests in the Debtor and that no such individuals held significant employment with the Debtor.

Either I, or an attorney working under my supervision, reviewed the connections between Weil and the clients identified on the Client Match List, and the connections between those entities and the Debtor. After such review, either I, or an attorney working under my supervision, determined, in each case, that Weil does not hold or represent an interest that is materially adverse to the Debtor or its estate with respect to the matters on which Weil is to be employed.

An entity is described as a "Current Client" if Weil has any open matters for such entity or a known affiliate of such entity and attorney time charges have been recorded on any such matters within the past two years.  An entity is described as a "Former Client" if Weil represented such entity or a known affiliate of such entity within the past two years based on recorded attorney time charges on a matter, but all matters for such entity or any known affiliate of such entity have been formally closed.  Because the Firm Disclosure Procedures only reflect client activity during the past two years, matches to client matters outside that timeframe are not reflected in this Certification.

Disclosures relating to all other categories on the Potential Parties in Interest, attached hereto as Schedule 2, are the product of implementing the Firm Disclosure Procedures (the "Disclosure Schedule").

8

Weil currently represents certain of the Debtor's non-debtor affiliates. Weil also represents and represented other clients in matters unrelated to the Debtor's Chapter 11 Case involving certain of the Debtor's non-debtor affiliates, including the predecessor to the Debtor, Old JJCI. Weil also currently represents certain of the Debtor's significant co-defendants in matters unrelated to the Debtor's Chapter 11 Case as set forth in the Disclosure Schedule. In all instances, Weil has not represented, and does not and will not represent, any of these entities in matters adverse to the Debtor or to the estate with respect to matters on which Weil is to be employed.

To the best of my knowledge and information, the annual fees for each of the last two years paid to Weil by any party on the Client Match List or its affiliates did not exceed 1% of the Firm's annual gross revenue.

In addition to the foregoing, through diligent inquiry, I have ascertained no connection, as such term is used in section 101(14)(C) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and Bankruptcy Rule 2014(a), between Weil and (i) the U.S. Trustee or any person employed in the office of the U.S. Trustee, (ii) any attorneys, accountants, or financial consultants in this Chapter 11 Case, or (iii) any investment bankers who represent or may represent the Debtor, claimants, or other parties in interest in this Chapter 11 Case, except as set forth herein and on the Disclosure Schedule. As part of its practice, Weil appears in cases, proceedings, and transactions involving many different attorneys, accountants, financial consultants, and investment bankers, some of whom now, or may in the future, represent claimants and other parties in interest in this case. Weil has not represented, and will not represent, any such parties in relation to the Debtor or this Chapter 11 Case. Weil does not have any relationship with any such attorneys, accountants, financial consultants, or investment bankers that would be adverse to the Debtor or the Debtor's estate.

Weil also represents numerous entities in unrelated matters that may buy and/or sell distressed debt, claims, or equity interests of chapter 11 debtors. Similarly, as a large firm, Weil may represent creditors/investors of or parties interested in investing in one or more parties in interest in this case. Weil does not believe these relationships represent interests adverse to the estate.

A party in interest in this Chapter 11 Case is a member of an ad hoc committee represented by Weil in Nordic Aviation Capital DAC, a matter unrelated to this Chapter 11 Case. In such instance, Weil only represents the committee and does not represent the creditor in its individual capacity, and no attorney client relationship exists or existed between Weil and such party in interest unless specifically noted. Weil does not and will not represent this party with respect to the matters on which Weil is to be employed.

Additionally, subsequent to the commencement of the 2021 Chapter 11 Case, an associate at Weil, who began working as an attorney at the firm in October 2021, informed Weil that he had learned that a relative of the associate who does not reside with the associate, Jonathan S. Massey of Massey & Gail LLP, represented several plaintiffs' firms in the 2021 Chapter 11 Case.  The associate had worked briefly on matters relating to J&J, Old JJCI, and the Debtor from approximately October 11, 2021 until October 25, 2021; however, upon disclosure of such connection and out of an abundance of caution, the associate was removed from the Weil team working on matters for J&J, Old JJCI, and the Debtor.  Subsequently, the Official Committee of Talc Claimants appointed Massey & Gail LLP as one of its special counsel in the 2021 Chapter 11 Case with Jonathan S. Massey as the lead attorney at the firm responsible for the engagement.  At the request of the U.S. Trustee, on December 9, 2021, Weil implemented an ethical wall to prevent information from passing from the attorneys that represent J&J, Old JJCI, and the Debtor in such matters to the associate.  The associate has since left Weil.

Despite the efforts described above to identify and disclose connections with parties in interest in this case, because the Debtor is part of a large enterprise and has thousands of creditors and other relationships, and because Weil is an international firm with approximately 1,100 attorneys in sixteen offices around the world, Weil is unable to state with certainty that every client representation or other connection of Weil has been disclosed.  In this regard, if Weil discovers additional information that requires disclosure, Weil will file supplemental disclosures with the Court.

In addition, it is my understanding that if a conflict of interest with respect to a party set forth on Schedule 2 or another party in interest later identified in this case should arise, the Debtor will use the services of other conflicts counsel in connection with that matter.

9.      To the best of my knowledge, my firm, its members, shareholders, partners, associates, officers and/or employees and I (check all that apply):

☐  do not hold an adverse interest to the estate.

☐  do not represent an adverse interest to the estate.

☐  are disinterested under 11 U.S.C. § 101(14).

☒  do not represent or hold any interest adverse to the debtor or the estate with respect to the matter for which I will be retained under 11 U.S.C. § 327(e).

☐  Other.  Explain: _____

10.      If the professional is an auctioneer: N/A

11.      If the professional is an auctioneer, appraiser or realtor, the location and description of the
property is as follows: N/A

I certify under penalty of perjury that the above information is true to the best of my knowledge.

Date: May 4, 2023                                */s/ Ronit Berkovich*
                                                 Ronit J. Berkovich
                                                 Weil, Gotshal & Manges LLP

# **APPENDIX 1**

### **Outside Counsel Guidelines**

# Outside Counsel Management and Billing Guidelines for North America & Global IP and Litigation Guidelines

*This document contains:*

- *Outside Counsel Management and Billing Guidelines applicable to outside counsel located in the U.S.;*

- *Global IP and Litigation Guidelines applicable to all outside counsel and;*

- *For all other work including EMEA, APAC, and LATAM, region-specific Guidelines apply.*

2020
Revision

*Johnson & Johnson*

Copyright 1999-2011.  Johnson & Johnson.  All Rights Reserved.

Revised November 2020

# Table of Contents

REFERENCE GUIDE OF NON-BILLABLE FEES/EXPENSES ................................................................4

INVOICE COMPLIANCE GUIDANCE AND EXAMPLES ..................................................................5

I.    INTRODUCTION....................................................................................................................10

II.   NATURE OF RELATIONSHIP.............................................................................................10

    A.    Relationship between Inside and Outside Counsel ................................................10
    B.    Conflicts .................................................................................................................10
    C.    Attorney-Client Privilege ......................................................................................11
    D.    Diversity Policy and Focus ....................................................................................12
    E.    Media and Public Relations ...................................................................................12
    F.    Code of Business Conduct .....................................................................................12
    G.    Termination ............................................................................................................12
    H.    Performance ...........................................................................................................12

III.  MANAGEMENT OF LEGAL MATTERS:  GUIDING PRINCIPLES .........................12

    A.    Matter Strategy and Assessment ...........................................................................12
    B.    Engagement and Commencement of Work ............................................................13
    C.    Matter Numbers .....................................................................................................13
    D.    Communications and Matter Status Updates .........................................................13
    E.    Disposition of Documents ......................................................................................13
    F.    Data Loss ...............................................................................................................14

IV.   FEES AND STAFFING ..........................................................................................................14

    A.    General ...................................................................................................................14
    B.    Timekeeper Approval ............................................................................................14
    C.    Payment of Third Party Expenses .........................................................................15

V.    LITIGATION-SPECIFIC GUIDELINES ............................................................................15

    A.    Strategy ..................................................................................................................16
    B.    Budgeting and Planning .........................................................................................16
    C.    Medicare Reporting Requirements .........................................................................17
    D.    Matter Resolution Strategy ....................................................................................17
    E.    Optimized UTBMS Code Set .................................................................................17
    F.    Discovery ...............................................................................................................18
    G.    Adverse Events Reporting ......................................................................................19

VI.   PATENT-SPECIFIC GUIDELINES.....................................................................................19

    A.    Estimate ..................................................................................................................19
    B.    Matter Numbers .....................................................................................................20
    C.    Communications .....................................................................................................20
    D.    Document Information and Power of Attorney ......................................................21
    E.    Preparation and Filing of U.S. Applications .........................................................21
    F.    Prosecution of U.S. Applications ..........................................................................22
    G.    Maintenance of Issued U.S. Patents ......................................................................23
    H.    Preparation and Filing of Foreign Applications ....................................................23
    I.    Prosecution of Foreign Applications .....................................................................24
    J.    Maintenance of Foreign Patents and Foreign Patent Applications ........................24
    K.    Translation Services, Sequence Listings, File Histories, Searches and Drawings ...........24

VII.  TRADEMARK-SPECIFIC GUIDELINES .........................................................................25

VIII. LITIGATION AND GENERAL (CORPORATE/REGULATORY) BILLING GUIDELINES .............25

    A.    Electronic Billing ..................................................................................................25
    B.    Fee and Rate Agreements ......................................................................................25
    C.    Submission of Invoices ..........................................................................................26

D.   INVOICE REVIEW, ADJUSTMENTS AND APPEALS ................................................................28
E.   TERMS OF PAYMENT ...............................................................................................................28
F.   YEAR-END BILLING ................................................................................................................29

**IX.   INTELLECTUAL PROPERTY BILLING GUIDELINES** ..............................................**29**

**APPENDIX A:  J&J PREFERRED THIRD-PARTY VENDORS** ............................................**30**

- COURT REPORTERS ...............................................................................................................30
- DRAWING SERVICES ..............................................................................................................30
- FILE HISTORIES .....................................................................................................................30
- DOCUMENT COPYING & SCANNING SERVICES ........................................................................30
- eDISCOVERY ..........................................................................................................................30
- DATA PROCESSING, HOSTING & PRODUCTION .......................................................................31
- MANAGED DOCUMENT REVIEW & DOCUMENT COLLECTION ..................................................31
- JURY CONSULTANT ................................................................................................................31
- MEDICAL RECORDS COLLECTION ...........................................................................................31
- MEDICAL RECORDS REVIEW AND CHRONOLOGIES .................................................................31
- OVERNIGHT COURIER SERVICES ............................................................................................31
- MESSENGER SERVICES – DOCUMENT LEGALIZATION ..............................................................31
- SEARCHES .............................................................................................................................31
- SEQUENCE LISTINGS FOR DNA ..............................................................................................32
- TEMPORARY STAFFING ..........................................................................................................32
- TRANSLATION SERVICES ........................................................................................................32
- TRIAL GRAPHICS ...................................................................................................................32

**APPENDIX B:  J&J UTBMS TASK CODES** ...........................................................................**33**

**APPENDIX C:  J&J STANDARD BUDGET FORM & BUDGET SUMMARY SPREADSHEET** ...........**38**

**APPENDIX D:  AUTOMATED BUDGET PROCESS INSTRUCTIONS** .................................**39**

**APPENDIX E:  ACCRUAL PROCESS INSTRUCTIONS** ......................................................**40**

**APPENDIX F:  RATE CHANGE FORM** ..................................................................................**41**

**APPENDIX G:  MEDICARE REPORTING REQUIREMENTS** ...........................................**42**

**APPENDIX H:  ADVERSE EVENT REPORTING** .................................................................**43**

# Reference Guide of <u>Non-Billable</u> Fees/Expenses

This reference guide highlights common non-reimbursable fees and expenses. Other categories not listed within may be deemed non-reimbursable at the discretion of the J&J attorney. Where conflicts arise between this condensed view and the US Outside Counsel Guidelines, the US Outside Counsel Guidelines become the controlling document.

Please note: in general, any fee/expense exceeding $10,000 must be approved by the responsible J&J attorney. Outside counsel is required to provide line item descriptions for each expense reimbursement and to attach corresponding receipts for all expenses in excess of $25. Finally, all billable travel expenses are to be itemized separately when invoicing J&J. For further definition and instructions regarding the below chart, please refer to the Invoice Compliance Guidance and Examples document shown on the following page.

| Non-Billable Fees | Non-Billable Expenses |
|---|---|
| • Vague description (100% adjustment) | • Inadequate description of expenses. (100% adjustment) |
| • Block billing | • Any expense over $25 for which no receipt is provided. (100% adjustment) |
| • Administrative and/or clerical work (100% adjustment) | • Third-party expenses and costs associated with non-preferred vendors. (100% adjustment) |
| • Deposition Transcript Summaries (100% adjustment) | • Costs associated with non-preferred vendors. (100% adjustment) |
| • Unproductive travel time for lawyers or paralegals (100% adjustment) | • Data Hosting. (100% adjustment) |
| • Inappropriate task assignments (e.g., work level staffing) (25% adjustment) | • Electronic legal research charges. (100% adjustment) |
| • Excessive staffing on the file (duplicative and inefficient work), time spent reviewing/revising the work of another timekeeper, file review by multiple timekeepers. (adjusted at discretion of reviewer) | • Costs associated with firm systems and technology. (100% adjustment) |
| • Firm members "educating" or "getting up to speed" on a case. (100% adjustment) | • Overhead including office supplies, HVAC, IT support and internet fees, phone charges and faxes or special binding/collection of documents (e.g., velobinding). (100% adjustment) |
| • "Training" or "apprenticeship" time. (100% adjustment) | • Library materials, periodicals or other subscriptions purchased by the firm. (100% adjustment) |
| • Time spent on basic legal research. (100% adjustment) | • Photocopies, printing and scanning. (100% adjustment) |
| • In-Firm Conferences. (100% adjustment) | • Overtime (e.g., administrative, secretarial, clerical, paralegal). (100% adjustment) |
| • Multiple attendees at meetings (e.g., depositions). (100% adjustment) | • Meals and transportation related to overtime work. (100% adjustment) |
| • Fees older than 120 days. (adjusted at discretion of reviewer) | • Annual bar dues or other professional development expenses. (100% adjustment) |
| • Attendance at seminars, CLE courses, and conferences. (100% adjustment) | • Extension fees or late fees paid to any patent office. (100% adjustment) |
| • Time incurred for learning J&J specific technology or process requirements. (100% adjustment) | • Long distance travel not arranged through J&J Travel Department. (100% adjustment) |
| • Time spent complying with these practices and procedures, and any audit of bills and expenses. (100% adjustment) | |

# Invoice Compliance Guidance and Examples

J&J reviews outside counsel invoices for compliance with the US Outside Counsel Guidelines. This appendix provides additional guidance and examples of specific fees, expenses and time entries. Violations will be rejected due to non-compliance during invoice review.

I.   **Fees**

| Non-Billable Fees | Additional Guidance/Example |
|---|---|
| **Block billing** | Block billing is defined as a time entry that contains tasks falling under more than one UTBMS code.<br><br>• Work within different task codes should be in separate entries so the hours for each task can be accounted for properly. *Example: Revise SJ and Company Worth MIL. (Should be 2 separate entries SJ = L210 and MIL = L400)*<br>• Work within the same task code, but on separate assignments such as different witnesses or briefs should be in individual entries as well.  *Example: Prepare experts John Smith and Lewis Chodosh for trial. (Should be 2 separate L400 entries)*<br>• Describing multiple activities within one entry would not be considered a block entry as long as it was clear that it all related to the one task.  *Example: Revise outline, review medical record chronology and key medical records in preparation for plaintiff Mary Smith's deposition.* |
| **Vague description** | Time entries should contain a **substantive description** along with the **purpose of the work** involved and its relevance to the J&J matter.<br><br>• Include witness *names*, rather than "plaintiff" or "expert."<br>• Include the *titles* of briefs or documents rather than "pre-trial" or "discovery."  Partial names are fine as long as it is enough to be distinguishable.<br>• Be mindful of the verb being used to describe the service. Rather than using words like "work, attention to and attend to" use words that provide more clarity like "research, draft, edit and write" to more precisely describe what is actually being done. |
| **Administrative/Clerical work** | J&J understands that outside counsel paralegals play a major role in the handling of its matters. However, payment for paralegal time is limited to those activities requiring their legal/matter expertise and does not extend to administrative or clerical tasks. Administrative tasks include but are not limited to:<br><br>• Any task that can be completed without legal expertise or does not require legal knowledge of the matter.<br>• Document indexing or filing, downloading, printing, posting, scanning, uploading, saving, organizing.<br>• File creation, organization, and maintenance.<br>• Distribution of documents<br>• Other routine administrative tasks incidental to an engagement. |

| Non-Billable Fees | Additional Guidance/Example |
|---|---|
| **Unproductive travel time** | J&J will pay **only for** time spent working on J&J matters during travel with customary itemization of the actual work performed. Work performed while traveling should be described in detail without mention of the travel itself and billed using the correct UTBMS codes.  J&J will not pay for non-working travel time, defined as time spent traveling where J&J work is not able to be done. |
| **Inappropriate task assignments (e.g., work level staffing)** | J&J encourages the efficient staffing of its matters. Tasks should be assigned to the minimum level timekeeper required. (Please note that "Of Counsel" are included in the Partner group.)  Examples of *inappropriate* task assignments that may be reduced include:<br><br>• Partners completing research assignments.<br>• Partners completing the bulk of drafting.<br>• Attorney's completing cite checking.<br>• Attorney's completing medical record summaries.<br>• Attorney's mining medical records. |
| **Inefficient staffing on the file: duplicative and inefficient work, time spent reviewing/revising the work of another timekeeper, file review by multiple timekeepers.** | We expect firms to work with the J&J responsible attorney to determine appropriate staffing levels and to manage matters in an efficient manner. J&J will not pay for duplicative work, including time spent reviewing or revising the work of other timekeepers or for the review of the same file by multiple timekeepers. The responsible attorney should be contacted with any concerns. |
| **Firm members "educating" or "getting up to speed" on a case.** | J&J will not pay for staff members to learn substantive areas of law or to ramp up/familiarize themselves if they are replacing another staff member. |
| **"Training" or "apprenticeship" time.** | Team members must have the appropriate level of experience and expertise.  J&J will not pay for staff members to learn substantive areas of law or otherwise train on a matter. |
| **Time spent on basic legal research.** | Team members must have the appropriate level of experience and expertise.  J&J does not pay for staff members to learn substantive areas of law or to conduct general or background legal research.<br><br>Any proposed major legal research projects (over four hours) must be discussed with and approved by the responsible J&J attorney before commencing the work and results of which discussed before opinions are drafted.<br><br>Copies of all research memoranda (without additional "polishing" unless specifically requested) shall be forwarded to the responsible J&J attorney after the research is completed. |
| **In-Firm Conferences.** | Regular trial team meetings should be discussed with the J&J attorney and are generally considered compensable. J&J will not reimburse for excessive meeting attendance where attendance does not serve an explicit value added purpose within the time entry. |

| Non-Billable Fees | Additional Guidance/Example |
|---|---|
| **Multiple attendees at meetings (e.g., depositions).** | J&J expects that only core team members attend meetings. Only one attorney is permitted to bill for time spent at a deposition. If a second attorney is needed at a deposition, please contact the responsible J&J attorney. |
| **Deposition Transcript Summary** | J&J does not pay for the preparation of deposition transcript summaries. Outside counsel should pursue a reasonable number of depositions for standard litigation matters and include the deponent's name in deposition related time entries. |
| **Fees older than 120 days.** | J&J encourages the prompt submission of invoices. Fees submitted after more than 120 will be flagged for the responsible attorney and are subject to adjustment or rejection. |
| **Complying with J&J Practices** | J&J will not pay for time spent preparing invoices, discussing or resolving billing inquiries or disputes, utilizing the electronic invoice system, forecasting and budgeting tasks. |
| **Attendance at seminars, CLE courses, and conferences.** | Professional development time is not billable to J&J. |
| **Time incurred for learning J&J specific technology or process requirements.** | J&J will not pay for time spent learning J&J specific technology such as: Ascent, Relativity, matter management systems, ebilling, technology demos, etc. |

## II.    Expenses

| Non-Billable Expenses | Additional Guidance/Example |
|---|---|
| Any expense for which no receipt is provided. | Expenses over $25 without an accompanying receipt will be rejected.  Documentation should be uploaded to Ascent with the invoice. |
| Inadequate description of expenses. | Expenses lacking sufficient explanation of their applicability to the J&J matter may be reduced. Expenses will be rejected during invoice review and sent back to counsel for further detail or documentation. |
| Third-party expenses | J&J will not reimburse your firm for any third party retained by your firm not approved in advance. J&J expects outside counsel to directly pay all third-party expenses. The only instances where outside counsel should not directly pay for 3rd party expenses are: (1) An expense item is more than $10K; (2) a preferred vendor is used; (3) local counsel is used; or (4) certified women owned and/or minority vendors are used. |
| Costs associated with non-preferred vendors (for the categories listed in the non-billable fees/expenses chart) | J&J will not pay for any costs associated with non-preferred vendors. If you need an exception, then please contact Procurement. |
| eDiscovery Vendors | J&J requires the use of J&J preferred legal eDiscovery vendors. Please refer to Appendix A. |
| Data Hosting (eDiscovery) | Outside counsel costs related to legal discovery services such as database hosting and maintenance will not be reimbursed by J&J unless preapproved by the responsible J&J attorney and the responsible J&J eDiscovery team member. |
| Electronic legal research charges. | J&J expects that legal research will be considered as a routine cost of business for our firms and therefore will not be included in invoices as disbursements or pass-through items. J&J does not pay for online electronic legal research or database costs, such as Westlaw and LexisNexis. The only exception is that J&J will reimburse for PACER. |
| Systems and Technology | J&J encourages the use of shared portals, case management systems and other technology-related tools to enhance the quality of work provided to J&J. However, J&J considers those costs to be overhead for the firm and does not pay for fees and expenses related to the maintenance or upkeep of the outside counsel firm's systems and technology. |
| Patent extension fees or late fees. | J&J will not reimburse for extension fees or late fees paid to any patent office, unless counsel sought and obtained the consent of the responsible J&J Attorney to seek an extension of time well in advance of the original due date. |

| Non-Billable Expenses | Additional Guidance/Example |
|---|---|
| **Outside counsel overhead** | It is J&J's expectation that hourly rates should include all overhead charges, none of which should be included in disbursements. Overhead including office supplies, HVAC, IT support and internet fees, conference calls, phone charges, special binding/collection of documents (e.g., velobinding) and faxes is not billable to J&J. |
| **Library materials, periodicals or other subscriptions purchased by the firm.** | These types of services are considered part of the standard cost of doing business. If there are matter specific resources are required, there must be a documented preapproval by the J&J attorney for reimbursement that is uploaded to Ascent with the expense documentation. |
| **Long distance travel not arranged through J&J Travel Department** | J&J requires firms to adhere to the travel policies set forth within the J&J travel policy guide. Air travel and hotel accommodations relating to J&J matters should be reserved by calling 1-669-272-1386. Alternatives to travel, such as conference calls or video conferences are strongly encouraged and should be used by outside counsel whenever practicable. Please adhere to the following business meals limits: <br><br> • Breakfast ≤ $25.00/meal <br> • Lunch ≤ $35.00/meal <br> • Dinner ≤ $65.00/meal <br> • Snack < $15.00/meal <br><br>  Global Travel Meetings and Exper     JJ Hotel Rate Caps.pdf |
| **Photocopies, printing and scanning.** | J&J will not reimburse for routine copy, printing and scanning expenses. A preferred copy vendor (please refer to Appendix A) is to be used for outside copies, which is the only exception. |
| **Overtime (e.g., administrative, secretarial, clerical, paralegal).** | Any items of overhead expenses (e.g. staff overtime, meals, local transportation, conference rooms, calendaring, rental fees, etc.) are non-billable. |
| **Meals and transportation related to overtime work.** | As per above, any items of overhead expenses are non-billable including meals and transportation. |

## I.   INTRODUCTION

The J&J Outside Counsel Management and Billing Guidelines ("Guidelines") are applicable to any legal matter handled for the Johnson & Johnson Family of Companies including, but not limited to, any and all domestic and international subsidiaries ("J&J" or the "Company") by outside counsel ("you," "law firm," "firm") located in the U.S and include Global IP and Litigation Guidelines applicable to all outside counsel.  For all other work including EMEA, APAC, and LATAM, region-specific Guidelines apply.

The Guidelines describe the policies and procedures to be followed by outside counsel to ensure timely and cost-effective resolution of matters. Unless otherwise modified by J&J, the Guidelines represent the terms of your engagement by the J&J Law Department on J&J matters.  Acceptance of an assignment from J&J constitutes agreement to abide by the Guidelines.

Litigation, patent-specific and trademark-specific guidelines can be found in Section V, Section VI and Section VII, respectively, and have been included to provide supplemental guidance to standard J&J policies.

## II.   Nature of Relationship
### A.  Relationship between Inside and Outside Counsel

A J&J attorney will be responsible for the management of each matter even though outside counsel may also be retained to assist in representing of the Company. Unless you have been notified otherwise, the J&J attorney who retained you to work on the matter is the "responsible J&J attorney" for the work requested of you.

Pursuant to Company policy, all legal work must originate with and through the Law Department. Outside counsel should inform the responsible J&J attorney if anyone from the business contacts you directly. If you receive instructions to perform work from anyone other than the responsible J&J attorney, you should inform the responsible J&J attorney of the request before beginning such work.

- The same lawyer or lawyers should handle the matter from beginning to end and use the most appropriate individual for assignments and provide the most cost effective method of staffing.

- Strategic and tactical decisions about the conduct of the matter are to be made only after consultation with the responsible J&J attorney and/or paralegal. Unless the responsible J&J attorney and/or paralegal directs otherwise, an in-house J&J attorney and/or paralegal should be present whenever outside counsel meets with J&J employees, contractors or agents. All work product must be submitted to the responsible J&J attorney and/or paralegal with reasonable time to review and approve, except as otherwise directed by the responsible J&J attorney and/or paralegal.

- J&J prefers that each law firm designate a billing coordinator to serve as the primary point of contact for J&J when issues arise.

### B.  Conflicts

J&J is a holding Company with more than 250 operating companies conducting business in virtually all countries of the world. You can locate the names of all J&J companies by going to:  https://johnsonandjohnson.gcs-web.com/financial-information/sec-filings  and reviewing the most recent exhibit of significant subsidiaries. Prior to accepting your engagement, outside counsel should carefully review for any actual and/or potential

conflict(s) and bring them to the attention of the responsible J&J attorney. Likewise, any conflicts that arise during the course of the engagement should be promptly disclosed to the responsible J&J attorney. All such conflicts must be resolved to the satisfaction of J&J. Violations of the conflicts section may result in termination of your services.

Any requests for conflict waivers must be in writing. J&J will not provide blanket or prospective waivers.  Rather, conflicts will be addressed on a case-by-case basis and must be waived by the Head of the Practice Group. When considering a waiver request the below process is to be followed.

- Any waiver goes to the group leader for approval;
- Effort should be made to get input from the J&J lawyer for whom there is potential adversity and to determine the extent of any litigation with the adverse party;
- If more than one litigation group is involved, relevant practice group leaders should be consulted;
- Group leaders may approve waivers; however, if group leaders (i) have any doubt about whether a waiver request should be granted or (ii) a waiver request is out of the ordinary or complex because it involves competitors, non-transactional matters, raises positional conflicts, etc., WWVP of litigation must approve.  Approval should be documented in an e-mail.
- All waivers must be in writing and minimally contain (i) an agreement not to litigate against J&J on the matter being waived and (ii) an ethical wall; and
- All waivers stored electronically in one place.

Unless the consent of the Head of the Practice Group has been obtained, it would be inappropriate for outside counsel to:

- Represent any third party (especially a competitor of any J&J Company) or its associates in a claim against, or matter adverse to, a different J&J Company, however unrelated it may seem.

- Simultaneously represent J&J or any J&J operating Company in a matter adverse to a Non-J&J third-party entity and accept an assignment from that third-party entity or an affiliate.

- Serve any role during which any other client or relative of the firm's members may benefit in the course of the representation of J&J, which could introduce conflicts of interest.

- Take on positions before administrative and regulatory agencies and bodies as well as administrative and regulatory issues before other tribunals that, to the firm's knowledge, may be adverse, harmful, or otherwise prejudicial to the interests of J&J or another J&J matter.

- Perform "personal" legal services for individual members of our management, either without cost or at a fee below the usual and customary fee, as this could be deemed a "gratuity," which may be prohibited by J&J's code of conduct.

## C.  Attorney-Client Privilege

Outside counsel must meet the highest level of professional conduct and comply with all applicable ethical requirements. Your firm must also hold all information, documentation and communication relating to J&J matters in the strictest confidence. The responsible

J&J attorney must approve any public disclosure, whether written or oral, regarding any J&J matter.

### D.  Diversity Policy and Focus

As part of our commitment to Diversity & Inclusion, J&J expects all vendors to focus on the recruitment, retention, and development of underrepresented persons, including women, persons of color, LGBTQIA persons, persons with disabilities, first generation professionals and veterans. By working with diverse vendors, our goal is to increase opportunities for underrepresented persons within the legal profession. When selecting outside counsel, our primary objective is to engage the best counsel for a particular matter. In addition to expertise (and cost), J&J also will consider a firm's diversity profile. Outside counsel will be asked to provide data in relation to the firm's population, hours and fee spend of underrepresented timekeepers. On a reoccurring basis, these reports will be reviewed by the J&J responsible attorney to ensure the data meets our diverse expectations.  Additionally, J&J will confer with outside counsel on a periodic basis to discuss the measures taken to meet and maintain such expectations.

### E.  Media and Public Relations

Outside counsel shall not make statements to the media without securing advance approval from the responsible J&J attorney. In urgent matters where the responsible J&J attorney is unreachable, then contact the leader of the applicable practice group at J&J.

J&J does not permit outside counsel to advertise or promote your relationship with J&J in your marketing efforts unless we specifically agree otherwise.  If such consent is given, it will be limited to a listing solely of the affiliate for whom work was done and may not include any J&J or affiliate Company graphics.

J&J's logo and trademarks should not be used or copied without the advance consent of your primary J&J Legal Department attorney.

### F.  Code of Business Conduct

J&J's Law Department expects that outside counsel and outside counsel staff working on J&J matters adhere to J&J's "Code of Business Conduct" when providing services to J&J. J&J's Code of Business Conduct is available at: https://www.jnj.com/code-of-business-conduct.

### G.  Termination

In J&J's sole discretion, the responsible J&J attorney may terminate the engagement of outside counsel at any time, in accordance with any applicable laws of the relevant jurisdiction. Terminated outside counsel shall reasonably assist J&J in transferring the file to another law firm or to J&J in-house attorneys.

### H.  Performance

J&J may perform periodic reviews and performance evaluations of outside counsel firms based on their work performed on various matters.

## III.    MANAGEMENT OF LEGAL MATTERS:  GUIDING PRINCIPLES

### A.  Matter Strategy and Assessment

For all matters, outside counsel must work with the responsible J&J attorney to develop an overall strategy for conduct of the matter.

For additional information regarding the strategy and planning for a matter, refer to the litigation, patent-specific and trademark-specific guidelines.

## B.  Engagement and Commencement of Work

As a matter of practice, J&J does not sign engagement letters; rather, acceptance of these Guidelines acknowledges outside counsel's engagement by J&J to perform work on J&J matters.

Work should only begin once a matter-level budget is submitted to and approved by J&J, unless otherwise approved by the responsible J&J attorney.  All work performed on matters (including patent matters) prior to the approval of a matter-level budget may be subject to non-payment.

## C.  Matter Numbers

Outside counsel should ensure that every work assignment has been assigned a unique J&J matter number.  Each document is stamped with the JJL number; please reference the document sent to you. If a J&J matter number has not been provided to you, then contact the responsible J&J paralegal or attorney to obtain one.

Matter numbers will be provided for every work assignment for patent-related and trademark-related matters.

## D.  Communications and Matter Status Updates

### Communications:  Electronic

Any electronic communications with J&J will at all times comply with all security and/or confidentiality policies communicated to you from time to time. The policies may require use of encryption and other security technologies to safeguard communications. Not all communications are appropriate for email, voicemail, or other electronic means, and you must use your best judgment in deciding which forms of communication should be used depending on context.

### Matter Status Updates

Outside counsel should provide a simple, periodic status report via email or verbally, as directed, to the responsible J&J attorney and paralegal with respect to all outstanding J&J matters. These reports should outline the general activity on the file since the last report, refer to matters that remain outstanding, and provide a date the matters are expected to be completed. All matters should receive a report on at least a quarterly basis, including those matters that have not have not had significant developments.

## E.  Disposition of Documents

Final versions of all substantive work product produced on the Company's behalf are the property of the Company and are to be submitted to the responsible J&J attorney (unless that attorney indicates otherwise).

Examples of work product include, but are not limited to, the following:

- internal research memoranda
- court filings
- executed definitive agreements
- due diligence reports
- government filings
- all correspondence with attachments sent to/received from:

    - J&J attorneys
    - government agencies
    - USPTO
    - foreign patent and trademark offices

Without limiting the foregoing, the copyright in all such created materials shall belong to J&J as works made for hire.

Following completion of a matter, outside counsel should gather final versions of all documents and discuss with the responsible J&J attorney the best process for transferring them to J&J or storing them on behalf of J&J. This may include transferring hard copies in addition to electronic (PDF and/or Microsoft Word) copies. Copies of documents kept in outside counsel's case files, storage or within an electronic document management system should not be destroyed or deleted without prior notice to the responsible J&J attorney.

### Patent-Related and Trademark-Related Work Product

For patent-related and trademark-related work product, all material must be e-mailed to the attorney/paralegal directly and to J&J's Intellectual Property Information Management group in a timely manner as detailed in the patent-specific and trademark-specific sections of this document. Each document should be submitted as an attachment in Microsoft Word (.doc or .docx) or Adobe (PDF) format, and each document must be attached to the e-mail separately from the others. Do not send confirmation copies by U.S. Mail unless requested to do so by the responsible attorney. Further, please refrain from faxing documents unless they are of such urgency and e-mail is not available.

### F.  Data Loss

In the event of data loss of a laptop, thumb drive or mobile device on which J&J data is available or stored, the responsible J&J attorney should be immediately notified.

## IV.    Fees and Staffing

### A.  General

Outside counsel will identify one lead attorney/compliance partner, who is ultimately responsible for making recommendations and being accountable to the responsible J&J attorney for a staffing plan, invoicing, and other decisions for each matter on which your firm is engaged.

### B.  Timekeeper Approval

Outside counsel firms utilizing Ascent, are required to add necessary timekeepers to the firm's profile in Ascent, before work is started. Although timekeepers will be approved by J&J at the firm level in Ascent, in no way does this approval indicate acceptance of the timekeeper at the matter level.

Please refer to [Section VIII Litigation and General (Corporate/Regulatory) Billing Guidelines](#) and [Section IX Intellectual Property Billing Guidelines](#) for further instructions.

**Maximum and Minimum Hours**

J&J will scrutinize any line item or combination of line items that are more than 10 hours in a single day as well as non-partner level timekeepers who have billed less than 5 percent of total time billed by all timekeepers on the matter. Both instances require a detailed explanation in the billing narrative and should not be a routine occurrence.

There may be exceptions where outside counsel timekeepers may be required to work greater than 10 hours in a day: when in trial or when on a transaction requiring time intensive work.  Billing narratives in both exceptions should provide a detailed explanation of the work performed.

### C.  Payment of Third Party Expenses

J&J will not reimburse your firm for any third party retained by your firm not approved in advance. The responsible J&J Attorney must have an opportunity to approve all third parties, such as experts, local counsel, vendors and consultants that are engaged to work on a particular J&J matter by outside counsel.

J&J expects, within reason, up to outside counsel's ability to pay, outside counsel to directly pay all third party expenses. The only instances where outside counsel should not directly pay for 3rd party expenses are: (1) An expense item is more than $10K; (2) a preferred vendor is used; (3) local counsel is used; or (4) certified women owned and/or minority vendors are used.

When requiring services from third party providers, outside counsel should consult J&J's Preferred Vendor list at [Appendix A.](#)

Outside counsel is responsible for ensuring that all third party business partners have a copy of and comply with the Guidelines.

As a general rule, all outside vendor expenses must be submitted as a pass through expense item on the law firm invoice without any mark-up or multiplier.  Outside counsel must submit all relevant supporting documentation for the third party invoice as an attachment when submitting the invoice.

## V.    LITIGATION-SPECIFIC GUIDELINES

It is expected that outside counsel be quickly engaged on a litigation matter to prepare a strategy so that J&J can experience a host of benefits, including, but not limited to:

- Identifying problem cases early when options for resolution are greatest.

- Providing feedback to the J&J operating Company regarding any lessons learned from the filing of the case or the initial strategy review.

- Creating an opportunity to collect pertinent facts and interview key witnesses before memories fade or employees are unavailable.

- Saving the Company time and money.

## A.  Strategy

J&J expects outside counsel to be proactive in providing the J&J responsible attorney with their assessment of the matter from the onset.  Frequent communication is expected to minimize elements of surprise on J&J litigation matters.

## B.  Budgeting and Planning

J&J requires that for all litigation matters, a current year and a next year budget be provided to J&J within 30 days of engagement. Budgets will be reviewed, compared against benchmarks, and evaluated for their alignment with J&J's strategic objectives. Budgets that are not aligned with J&J's objectives will be set aside for further discussion.

### Manual Budget Updates

Budget information can either be submitted on the Standard Budget Form or via a Budget Summary Spreadsheet, both found in Appendix C, for those firms that manage a significant number of matters for J&J.  Completed budget information may be submitted to RA-JJCUS-LitBud@its.jnj.com. After 60 days of engagement, invoices from the law firm will be rejected for matters that are missing current year and/or next year budget information. Invoices will also be rejected if the matter is over budget.

For cases projecting $200K or more in current year spending, we request additional budget information detailing the timekeepers and third-party expenditures (including all discovery providers) in sections B and C of the Standard Budget Form in Appendix C.

It is the lead firm's responsibility to include and update the case budget estimates of third-party costs.

At any point, if there is any change to any of the budgets, outside counsel should notify the responsible J&J attorney and RA-JJCUS-LitBud@its.jnj.com as soon as possible.

### Automated Budget Updates in Ascent

On a quarterly basis, Johnson & Johnson will utilize ASCENT to electronically manage matter budgets using budget worksheets. For those law firms listed as primary counsel, an email from ASCENT will be generated to all system users for that firm. At such time, the firm will be required to go into the system and complete the budget worksheets assigned.  If a current year budget estimate will be $200K or more, a Standard Budget Form, found in Appendix C, will need to be completed in its entirety and attached to the matter in the worksheet.  Once submitted, Johnson & Johnson will review the information and approve/reject.  If the worksheet is approved, the system will auto update the following business day.  If a rejection occurs, the firm will be required to update the necessary information and resubmit.  Automated budget process instructions can be found in Appendix D.

### Accruals

J&J performs a world-wide accrual collection every quarter. We are required to record the cost of services rendered in the period in which they were incurred. Since payments for those services do not often coincide with the date the services are performed, an accrual is necessary. We will request this information on a quarterly basis. The accrual process is now automated through ASCENT. The accrual request is sent to the primary law firm assigned to specific matters. The primary law firm is responsible for providing estimates for all parties billing to the matter. Co-lead counsel matters require estimates for their

individual firm in addition to estimates for any other parties under their direction. Not all matters are included in the accrual request. J&J identifies those matters requiring accruals based on materiality, risk, activity and other metrics.

When calculating an accrual estimate, an evaluation should be performed on the work that has truly been rendered and not yet billed. For example, determining the fourth quarter accrual estimate by taking the full year budget estimate less year-to-date billings may not yield an accurate accrual estimate. An analysis of actual work to be performed should be done when calculating your accrual estimate.

Instructions on how to electronically provide your accruals via ASCENT when requested are located in Appendix E.

## C.  Medicare Reporting Requirements

J&J is required to report any settlement and judgment payments made on Product Liability, as well as specific types of Employment matters.  More information about our reporting requirements is located in Appendix G.

## D.  Matter Resolution Strategy

J&J desires to settle, at the earliest possible time, those matters that it believes will eventually be settled. No settlement discussions or alternative dispute processes should be engaged in without the responsible J&J attorney's specific prior approval.

### Alternative Dispute Resolution

J&J mandates a cost/benefit approach to litigation/arbitration. J&J promotes the use of alternative dispute resolution (ADR) to minimize the expense and delays inherent in litigation. Outside counsel should consider and foster the use of private dispute resolution techniques such as mediation in their strategic plan. If outside counsel believes that ADR is not appropriate based on the circumstances of the matter, then outside counsel must include an analysis of the reasons why ADR would not be appropriate.

### Settlement

Out-of-court settlement strategies should also be addressed and outside counsel should continuously consider techniques and strategies to resolve disputes. Outside counsel should not engage in settlement discussions without the prior approval of the responsible J&J attorney.

## E.  Optimized UTBMS Code Set

For all litigation, the UTBMS codes have been reduced to 11 Task Codes and no Activity Codes.  The Expense Task Codes remain the same, except for the addition of Medical Literature expenses to E124 Other.  Detailed instructions on the use of the selected UTBMS codes are provided in Appendix B.  Compliance with these codes is expected.

These rules do not apply to the eDiscovery ("L600") Codes.  Any applicable eDiscovery work should use the correct L600 code.

## F. Discovery

### General

At the outset of a matter, outside counsel should work closely with the responsible J&J attorney/paralegal and Legal eDiscovery contact to review the document hold notice language and corresponding custodian(s) and non-custodial data source(s) for the particular matter, and to recommend modification and/or further initial diligence as necessary to effect adequate preservation.

J&J expects outside counsel to pursue an assertive defensive posture towards most discovery requests. Outside counsel should be familiar with applicable discovery/disclosure rules and case law; and should be prepared to consider particularized assertions relating to proportionality in managing both its offensive and defensive discovery recommendations to J&J. Review discovery requests prior to sending them to J&J, and identify those items to which you recommend J&J object to and those which outside counsel recommend J&J answer to, along with your rationale.  Outside counsel should be prepared to seek sanctions, protective orders and motions to compel to protect J&J employees, witnesses, documents, etc., during this process.

J&J has adopted a model ESI Protocol as well as a Protective Order. Please make sure to consult with the responsible J&J eDiscovery team member at the onset of a matter to ensure that the appropriate J&J protocols are utilized.

### Costs

Because document discovery costs comprise a substantial portion of litigation budgets, J&J requires that you partner with the responsible J&J attorney, the responsible J&J eDiscovery team member and the Legal Procurement Group in connection with any document discovery project to aid in the strategic retention of high quality/cost competitive vendors in this area.

*Scope:*  Services encompassing but not limited to the following processes fall within the scope of discovery services:

- physical and electronic document collection
- imaging and coding documents
- processing of data
- hosting of data
- document review services
- document production services (including documents produced to J&J)

*Planning & Budgeting:*  Based on the needs of the matter, outside counsel should develop an estimated budget for third party services described above with the J&J internal case team (responsible J&J attorney and the responsible J&J eDiscovery team member).  In some matters, outside counsel may be asked to prepare and monitor budget to actuals on a periodic basis.

### Preferred Vendors

J&J has developed a preferred vendor program for services, including eDiscovery services, listed in Appendix A.  Outside counsel may not engage a vendor without consultation of procurement and prior written consent from the responsible J&J attorney. If the supplier is an eDiscovery vendor, J&J's eDiscovery Team must be engaged.

### G. Adverse Events Reporting

When you have been retained on a matter, or if you are assigned as counsel for a mass tort, all legal cases that you get directly that allege personal injury from the product related to that matter as well as product quality complaint must be reported.

Please refer to Appendix H for the Adverse Event Reporting Instruction Sheet.

## VI.    PATENT-SPECIFIC GUIDELINES

These patent-specific guidelines have been prepared to provide outside counsel with guidance and direction in certain areas while assisting J&J on patent-related matters.

In general, outside counsel's primary responsibility is to ensure that J&J does not lose rights in any of the inventions in your care. Therefore, in the absence of any instructions from the J&J attorney, you are authorized and expected to take any appropriate actions or pay any appropriate fees necessary to preserve these rights.  J&J utilizes a database to track and maintain their patent matters.  It is required that outside counsel immediately notify J&J regarding any change in patent status.  All filing, publication and grant particulars should be sent immediately to the J&J attorney and to J&J's Intellectual Property Information Management team.

### A. Estimate

All proposed estimates must be submitted to the responsible J&J attorney for approval. These budgets are critical to the J&J Patent Law Department's ongoing requirements to report to management about the costs associated with each assignment and allow J&J operating companies to forecast their expenses. Estimates will be reviewed, compared against benchmarks, and evaluated for their alignment with J&J's strategic objectives. Estimates that are not aligned with J&J's objectives will be set aside for further discussion.

J&J expects to be charged no more than the lowest billable rate for the same volume of work available to any of the firm's clients. Rates should not be increased during the course of an assignment without discussion and agreement by the responsible J&J attorney. Hourly rates should include all overhead charges none of which should be included in disbursements.

J&J expects that all disbursements for which it is charged will be at the cost to the law firm. Without consultation with the responsible J&J attorney, no overhead charges should be allocated to those disbursements and J&J expects to be given the benefit on an appropriate basis of all discounts or rebates received by the firm. J&J believes that computer research should be considered an overhead expense. Because most firms pay flat rates for such research, if J&J is charged for such research, the rationale for those charges must be explained and agreed to by the responsible J&J attorney.

Extension fees or late fees paid to any patent office will not be reimbursed unless you sought and obtained the consent of the responsible J&J Attorney to seek an extension of time well in advance of the original due date.

For every case, life-of-case estimates must be prepared by outside counsel and submitted in e-mail format to the responsible J&J attorney for approval before the work begins. Failure to obtain such approval may result in denial of payment for such expenses.

For all matters, an estimate must be prepared at the outset of each assignment.  Where appropriate, outside counsel's estimate should include:

- Type of work and description of work including relevant technology.
- The Patent Law Department's Matter Number/Case Reference Number and outside counsel's Reference Number.
- The total estimated cost and not-to-exceed amount, including fees, disbursements and other costs (including patent drawing estimated costs) expected to be incurred as a result of completing the assignment.
- Outside counsel's name and address.
- The names of all non-clerical persons who will be working on the assignment.
- The hourly billing rate for each attorney and associate and the AIPLA (American Intellectual Property Law Association) area survey rate.
- Estimated date of completion.

The estimate should not include foreign agent fees. J&J preferred foreign agents should bill J&J directly. At any point, if there is a change to any of the estimates, such as change in scope of work, increase cost or new completion date, outside counsel should notify the responsible J&J attorney before proceeding with the work.  A revised work estimate should be submitted to the responsible J&J attorney for approval. The cost for any work exceeding the not-to-exceed amount will be disallowed unless approval for a revised not-to-exceed is given prior to the work being performed.

See above sections entitled "Reference Guide of Non-Billable Fees/Expenses" and "Fees and Staffing" for additional billing-related information.

## B.  Matter Numbers

For all work that is not directly related to preparation and prosecution of Patent Applications, after the work is approved, a Matter Number/Case Reference Number will be issued to outside counsel at the value of the not-to-exceed amount.  Invoices that are submitted that exceed the budgeted amount will be rejected.  Prior to filing any patent application, including continuations, divisionals and continuation-in-part applications, a Matter Number/Case Reference Number must be provided to you by the J&J attorney or paralegal.

## C.  Communications

All communications between you and anyone in J&J, in relation to patent matters, shall be by e-mail. The responsible J&J attorney shall be copied on such e-mail as well as J&J's Intellectual Property Information Management Team, whose address is stated below.

Communication by Regular, Express, or other types of Courier mail should be discontinued unless a formal document must be executed and such formal document cannot be scanned, e-mailed, and printed.

Communication by Fax should cease unless a matter of such urgency arises and e-mail is not available.

Please refer to the attached Electronic Communication Guidelines document for details regarding patent electronic communications.



JNJ - Electronic
Communication Gui

**U.S. Applications**

All documents prepared by you in regard to U.S. patent applications shall be sent in Microsoft Word (.doc or .docx) or Adobe (PDF) format to the responsible J&J attorney at such attorney's J&J e-mail address. A copy shall also be e-mailed to J&J's Intellectual Property Information Management Team's US Mailbox at jnjuspatent@corus.jnj.com.

See attached JNJ – Electronic Communication Guidelines document for specific instructions regarding electronic communications.

**Non-U.S. Applications**

All documents prepared by you in regard to non-U.S. patent applications shall be sent in Microsoft Word (.doc or .docx) or Adobe (PDF) format to the responsible J&J attorney at such attorney's J&J e-mail address.  A copy shall also be e-mailed to J&J's Intellectual Property Information Management Team's International Mailbox at jnjintlpatent@corus.jnj.com.

See attached JNJ – Electronic Communication Guidelines document for specific instructions regarding electronic communications.

## D.  Document Information and Power of Attorney

Keep in mind that, while your main contact will be with the J&J Patent Law Department, the work assignment will, in most instances, be performed on behalf of a subsidiary Company in the J&J Family of Companies.  These companies are incorporated in different states, and any formal documents you prepare for filing must identify the correct name and address of the legal entity.  Before filing any document, ask the responsible J&J attorney to supply the information. In addition to yourself and members of your firm, any Power of Attorney you may prepare should also include preferably a shared outside counsel/J&J Customer Number for the USPTO and/or designate the responsible J&J attorneys as well as the following group leaders: Ellen Ciambrone Coletti, Paul Coletti, Kiera Mathey, Myra McCormack, Jeremy McKown, Joseph Shirtz, Brian Tomko and Todd Volyn. Finally, should any document you prepare require the signature of a person within J&J, you must ensure that such person clearly understands and complies with all statutory obligations pertinent to that document.

When utilizing an outside counsel/J&J shared USPTO Customer Number, please associate the following attorneys in addition to the J&J attorney you are working with: Ellen Ciambrone Coletti, Paul Coletti, Kiera Mathey, Myra McCormack, Jeremy McKown, Joseph Shirtz, Brian Tomko and Todd Volyn.  Outside Counsel must continue to send all emails with USPTO correspondence to the jnjuspatent@corus.jnj.com mailbox as outlined in Paragraph C above.

## E.  Preparation and Filing of U.S. Applications

If you are engaged to prepare and/or file a patent application, you should work directly with the primary inventor, or any other specified designee, with the responsible J&J attorney, to ensure that the applications you prepare and file adequately protect J&J's interest in the subject inventions.  Where possible, you should provide the responsible J&J attorney with ample time to review and comment on draft applications in advance of the proposed filing date.  Once a final draft, suitable for filing either by outside counsel or J&J, has been prepared, e-mail all documents in Microsoft Word (.doc or .docx) or Adobe (PDF) format to the responsible J&J attorney and J&J's Intellectual Property Information

Management Team at jnjuspatent@corus.jnj.com.  Prior to filing any patent application, including continuations, divisionals and continuation-in-part applications, a Matter Number/Case Reference Number must be provided to you by the J&J attorney or paralegal.  If you are responsible for filing the application, you should also provide the responsible J&J attorney with the original Filing Receipt as soon as you receive it from the USPTO.

Your detailed description of the invention should be concise and, if you have been instructed to prepare drawings, the drawings should be limited to those drawings that are absolutely necessary to illustrate the claimed invention.  Further, we have found that we can generally do a good job of protecting an invention using twenty or fewer claims.

In preparing patent applications for J&J, use your discretion in deciding which embodiments of the invention to include in the application.  You must, of course, comply with all of the requirements of any applicable law, statute or regulation.  In particular, you must ensure that your application fully complies with all of the requirements of 35 USC 112 and 35 USC 113.  However, it is unnecessary and undesirably costly from our perspective to include every possible embodiment of the invention.  You should work with the responsible J&J attorney to determine which embodiments to claim in addition to the "best mode."

If you are responsible for filing an application, it is your responsibility to ensure that all relevant prior art is cited to the USPTO, including any prior art cited in any foreign counterpart applications.  If you are unaware of the art known by the responsible J&J attorney or of the art cited in related applications, please ask.  While the IDS and Form 1449 should be filed with the application, absent compelling circumstances, you must file the IDS and 1449 as soon as possible.

## F.  Prosecution of U.S. Applications

If you are engaged to prepare and file documents pursuant to the prosecution of a patent application, such documents should be prepared in a timely manner.  If the documents are to be filed by the responsible J&J attorney, they should be prepared allowing sufficient time for a review prior to the filing deadline.  If you are to file the documents, they should be prepared allowing sufficient time for a review and a return to you for corrections prior to the filing deadline.  Whenever you receive communications and official documents from the USPTO, you should promptly email copies to the responsible J&J attorney and to J&J's Intellectual Property Information Management Team at jnjuspatent@corus.jnj.com.

Once a final draft, suitable for filing either by outside counsel or J&J, has been prepared, you should e-mail a copy of all documents in Microsoft Word (.doc or .docx) or Adobe (PDF) format to the responsible J&J attorney and to J&J's Intellectual Property Information Management Team.  If you were responsible for filing the documents, you should e-mail a copy of all documents as submitted to the Patent Office including the e-filing acknowledgment or receipt in Microsoft Word (.doc or .docx) or Adobe (PDF) format to the responsible J&J attorney and to J&J's Intellectual Property Information Management Team at jnjuspatent@corus.jnj.com.

In connection with developing strategies for responding to outstanding Office Actions and other matters, you should continue to receive input from the primary inventor, or other specified designee, and from the responsible J&J attorney.  If personnel changes occur and you are uncertain whom you should contact for input, call the responsible J&J attorney.  In order to solicit suggestions from J&J for revising any proposed response, you should provide the responsible J&J attorney with drafts of the proposed response well before the due date.  You may include a deadline for receiving a response from the

responsible J&J attorney.  If you do not hear from the responsible J&J attorney by your deadline date, you may assume that the proposed response is acceptable for filing.

If you are responsible for filing a Response to an Office Action, it is your responsibility to ensure that all relevant prior art is cited to the USPTO, including any prior art cited in any foreign counterpart applications.  If you are unaware of the art known by the responsible J&J attorney or of the art cited in related applications, please ask.  While the IDS and 1449 should be filed with the application, absent compelling circumstances, you must file the IDS and 1449 as soon as possible.

## G.  Maintenance of Issued U.S. Patents

In connection with issued U.S. patents, you will not need to docket these for the payment of maintenance fees as this responsibility will be assumed by J&J.  Outside counsel should promptly notify the responsible J&J attorney and J&J's Intellectual Property Information Management Team at jnjuspatent@corus.jnj.com as soon as you receive a Notice of Allowance from the USPTO.  In addition to providing a copy of the Notice of Allowance, you must forward the original Issue Fee Payment Form as soon as you receive it from the USPTO.  Further, upon receipt of a Notice of Allowance, provide a clean copy of the allowed claims in Microsoft Word (.doc or .docx) or Adobe (PDF) format.  When prosecution is completed, the J&J Attorney will request that you file an appropriate Change of Address form with the USPTO so that future maintenance fee reminders can be directed to J&J.  In the event that you receive a Maintenance Fee Reminder from the USPTO, you should immediately email it to the J&J attorney and to J&J's Intellectual Property Information Management Team at jnjuspatent@corus.jnj.com.

## H.  Preparation and Filing of Foreign Applications

If you have been engaged to file or prosecute a non-US application, use the full J&J Matter Number/Case Reference Number in any correspondence with foreign agents who are responsible for prosecuting these applications.  In addition, you should ensure that the foreign agents are aware of the appropriate assignee and that they use the full J&J Matter Number/Case Reference Number on all correspondence.

If the application is to be foreign filed, you should work with the responsible J&J attorney to identify 10 claims to be filed and prosecuted.  Absent express instructions from the responsible J&J attorney, no foreign application is to be filed with more than 10 claims.  It is J&J standard procedure that our in-house foreign filing paralegals will handle sending all foreign filing instructions to our preferred foreign agents.  The responsible J&J attorney will discuss any alternate foreign filing arrangement in the event such an unusual situation arises.

Once a foreign counterpart application has been filed, e-mail the documents to the responsible J&J attorney and to J&J's Intellectual Property Information Management Team's international e-mail address at jnjintlpatent@corus.jnj.com. The e-mail should include a copy of the specification, claims and drawings of the application as it was filed, in Microsoft Word (.doc or .docx) or Adobe (PDF) format, along with copies of all transmittal and formal documents associated with the application.  Each document must be attached separately from the others.  In order to ensure that our files are accurate and complete, instruct the foreign agents that they should forward all communications by e-mail according to the instructions in section VI, Paragraph C.  You should also provide the responsible J&J attorney and J&J's Intellectual Property Information Management Team

with the filing date, application number and a copy of the Filing Receipt as soon as you receive it from the Patent Office.

## I.   Prosecution of Foreign Applications

If you are engaged to help prepare and/or file a response during prosecution of a non-U.S. application, prepare and file all correspondence with foreign agents to secure timely international protection of the subject invention.  Outside counsel should promptly e-mail a copy of all correspondence sent to or received from any foreign patent office or agent in Microsoft Word (.doc or .docx) or Adobe (PDF) format to the responsible J&J attorney and to J&J's Intellectual Property Information Management Team's international e-mail address jnjintlpatent@corus.jnj.com.

In connection with responding to outstanding Office Actions and other matters, it is our expectation that, absent compelling circumstances, the claims of any foreign application will closely track the claims of the corresponding U.S. application or patent (allowing for variations in form resulting from local law).  Accordingly, unless you hear otherwise from the responsible J&J attorney, you are authorized to amend the foreign claims to conform to the U.S. claims. Furthermore, you should utilize the arguments presented during the U.S. prosecution to overcome cited prior art in the corresponding foreign prosecution to the maximum extent possible in order to use consistent arguments.  In order to solicit input from J&J personnel and provide you with any suggestions for revising any proposed response, you should provide the responsible J&J attorney with drafts of the proposed responses well before the due date.  You may include a deadline for receiving a response from the responsible J&J attorney.  If you do not hear from the responsible J&J attorney by your deadline date, you may assume that the proposed response is acceptable for filing.

Once a document for a foreign counterpart application has been filed, email a copy in Microsoft Word (.doc or .docx) or Adobe (PDF) format to the responsible J&J attorney and to J&J's Intellectual Property Information Management Team's international e-mail address jnjintlpatent@corus.jnj.com.  In order to ensure that our files are accurate and complete, instruct the foreign agents you use that they should forward all communications by e-mail according to the instructions in Section VI, Paragraph C.

## J.   Maintenance of Foreign Patents and Foreign Patent Applications

In connection with foreign patent applications, J&J typically handles all post-grant patent annuities/maintenance fees.  However, you will be responsible for the payment of any applicable maintenance fees or accumulated annuities until you are specifically informed or receive confirmation from the responsible J&J attorney or paralegal that J&J has assumed responsibility for payment of such fees.  As soon as you or your foreign agents receive notice that any foreign maintenance fees are due, contact the responsible J&J attorney and arrange for the transfer of responsibility for such payments.  Regardless whether J&J has assumed responsibility for payment of maintenance fees, the foreign agents must promptly forward copies of all maintenance fee reminders directly to the responsible J&J attorney and to the J&J Intellectual Property Information Management Team's international email address jnjintlpatent@corus.jnj.com.

## K.   Translation Services, Sequence Listings, File Histories, Searches and Drawings

J&J has established contract rates with diverse vendors based on volume discount pricing. You are required to utilize these vendors when they can fulfill your requirements.  When

requesting translation services, sequence listings, file histories, searches or drawings, you must indicate that the services are for a J&J matter.

For a full list of preferred vendors for translation services, sequence listings, file histories, searches and drawings, refer to Appendix A.

## VII.   TRADEMARK-SPECIFIC GUIDELINES

These trademark-specific guidelines have been prepared to provide outside counsel with guidance and direction in certain areas while assisting J&J on trademark-related matters.

In general, outside counsel's primary responsibility is to ensure that J&J does not lose rights in any of the trademarks in your care. Therefore, in the absence of any instructions from the J&J attorney or J&J paralegal, you are authorized and expected to take any appropriate actions or pay any appropriate fees necessary to preserve these rights.  J&J utilizes a database to track and maintain their trademark matters.  It is required that outside counsel immediately notify J&J regarding any change in trademark status.  All filing, publication, registration and renewal particulars should be sent immediately to the J&J attorney or J&J paralegal and to J&J's Intellectual Property Information Management team.

The details related to trademark-specific procedures and policies are outlined in the attached OUTSIDE TRADEMARK COUNSEL GUIDELINES document.



0A_2020 exUS
Outside Trademark (

## VIII.   LITIGATION AND GENERAL (CORPORATE/REGULATORY) BILLING GUIDELINES

### A.  Electronic Billing

J&J currently uses Ascent e-billing tool to collect and manage electronic invoices. It is expected that all outside counsel use Ascent to submit invoices, unless otherwise approved by J&J.

If your firm is not currently registered on Ascent, please contact Melissa Sykes (msykes2@its.jnj.com) for more information regarding the setup and process requirements for submission of invoices.

All electronic invoices must be coded using the correct UTBMS task codes and expense codes.  Activity codes need not be used.

An unapproved timekeeper or a timekeeper with an effective date that falls after the date of the invoice would receive a rejection.  The rejection related directly to the timekeeper would be "Unknown timekeeper" and/or "Timekeepers rates" not within tolerance. Where the system will read the timekeeper rate as 0 instead of the unit rate given.

### B.  Fee and Rate Agreements

General

J&J prefers that outside counsel exercise alternative fee arrangements (AFAs) but conducts business with outside counsel on an hourly rate plus expenses basis, if necessary.  All AFAs must be agreed to in writing with the approval of the J&J Legal Procurement team.

For hourly-based engagements, J&J pays for legal services based on the approved J&J rate for the individuals performing the services, which has most recently been communicated to and accepted by J&J.  J&J expects to be charged no more than the lowest billable rate for the similar volume of work available to any of the law firm's clients. Hourly rates should include all overhead charges, none of which should be separately on invoices.

J&J may approach outside counsel at any point to renegotiate rates and provide outside counsel with the opportunity to competitively bid on J&J work through alternative fee arrangements or competitive hourly-based fees.  It is encouraged that outside counsel be proactive and approach J&J if there is potential opportunity for making their cost structure more competitive.

### Rate Increase Requests

J&J requires that outside counsel timekeeper rates for the year 2021 be submitted by January 30, 2021.  Requests submitted after January 30th may not be considered. J&J expects defined hourly rates and/or other agreed upon billing terms to remain in effect for the agreed upon term.  Rate change requests may be submitted, at maximum, no more than once in 12 months.

The effective date of rate increase requests may not be back-dated more than 30 days.

All rate change requests for the year must be submitted electronically using J&J's attached Rate Change Form, which can be found in Appendix F.

Requests will be evaluated for reasonableness and either approved or set aside for further discussion with the Legal Procurement Group. Official confirmation of approved rates will come from Legal Procurement.

If, at any point, during the life of a matter, the agreed upon rates need to be modified, the Legal Procurement Group in consultation with the responsible J&J attorney and appropriate J&J associate general counsel may approve the new rates. If an invoice is submitted with rates that do not match the agreed upon rates, the invoice will be rejected and sent back to the outside counsel firm for correction and re-submission.  In addition, rate changes instituted without the written approval of J&J will be deemed overbillings, and a refund will be requested.

Where a rate increase request has been submitted, law firms should NOT hold back invoices until the request is approved. Rather, they should continue to bill at old rates until approval is granted and at that point in time, a true-up can be made.

## C.  Submission of Invoices

### General

Outside counsel is responsible for making sure they understand and adhere to the Guidelines set forth related to the submission of invoices.  Adherence to the Guidelines is

not discretionary and each J&J responsible attorney as well as outside counsel is held to the strictest accountability in relation to these requirements.

In general, submission of invoices should adhere to the following overall requirements:

- Invoices should be submitted on a monthly basis promptly after month's end. Invoices submitted more than 120 days from the date the work was performed are subject to adjustment or rejection.

  Note that an exception to this rule exists for: (a) patent-related matters, for which invoices should be submitted within 120 days of project closure or (b) if an invoice is less than $500.00, the firm should wait until the next billing cycle, unless the invoice is a final bill.

- Each matter should be invoiced separately. Invoices containing multiple matters will be automatically rejected and requested to be resubmitted.

- The invoice itself should include a chronological listing of professional time billed, specifying the name of each lawyer and paralegal, the hourly rate, and the work performed by category by each such professional. All charges for services by attorneys and paralegals must be recorded daily based upon their actual time.

**<span style="color:red">Paper Invoices</span>**

Invoices must reference the J&J matter ID (e.g. JJL2011xxxxxx or JJG2011xxxxxx) to ensure correct processing and should be submitted as follows:
For Litigation matters: RA-JJCUS-LitInvoice@ITS.JNJ.com
For General (Corporate and Regulatory): GenLegalInv@its.jnj.com

The invoice should include a chronological listing of professional time billed, specifying the name of each timekeeper, the hourly rate, and the work performed by category (avoid "block billing") in not more than .1 hour increments.

Invoices that are not submitted in the requested format will be rejected and required to be resubmitted.

**<span style="color:red">Discounts</span>**

    *i.*    *Standard Hourly Rate Discounts*

Once a firm has agreed to an approved J&J billing rate that is discounted off standard rates, please bill at the J&J approved rate for each timekeeper rather than providing a line-item discount. Outside counsel should never utilize the standard rates when billing J&J unless those are the rates that were agreed upon.

    *ii.*    *Volume Discounts and Write Downs*

Where an additional volume discount has been agreed to beyond the J&J approved rate discount or a write down has been agreed to, please provide a line item discount on your invoice (i.e. if the volume discount is 5% on spend beyond $5M, once $5M has been sent for payment, all subsequent invoices should reflect a 5% credit). The line item credit approach is preferred over the approach of further lowering the firm's hourly rates below the J&J approved rate to reflect the higher discount.

    *iii.*    *Expense Discounts*

For discounted expenses, it is the responsibility of outside counsel to provide the original expense rate, the applied discount, and the net expense amount for each expense line item submitted to J&J.

If a blanket discount (i.e., 10 percent off of total costs) needs to be applied to an invoice, outside counsel should bill all fee line items at the discounted rate and follow the discount expense instructions provided above for all discounted expense line items.  When applied together, the invoice should reflect an overall discount of approximately 10 percent.

### Analytics

Different types of analytics are continually being used for management of cases.  Spend is analyzed on an ongoing basis by several departments and consultants.  Law firm invoices are the basis of the underlying data and the time narratives and coding are a component of that.

## D.  Invoice Review, Adjustments and Appeals

J&J may write down the bills and pay the written-down amount without first discussing the matter with the firm.  However, outside counsel may receive e-mail notification when an invoice reviewer provides external notes related to adjustments that have been made to the invoice.  Adjustments can still be written down and sent for payment without outside counsel's consent. However, if outside counsel does wish to dispute a write down or adjustment, it is their responsibility, either upon receipt of e-mail confirmation or payment, to contact J&J to discuss their concerns.

Where appropriate, we will work with your firm to identify the root causes of your adjustments and resolve them.

Additionally, firms who are registered with Ascent can view the status of their invoice in relation to the review process.  Invoices that are still pending approval will be identified as that, and invoices that have been approved and posted should represent a "posted" status.  If an invoice has been rejected, the invoice should represent a "rejected" status.  Finally, paid invoices will show a "paid" status.

The document below contains the appeals process instructions.  Please note that only paid invoices can be appealed and firms have 60 days to appeal upon receipt of invoice.



Invoice Appeal
Process

## E.  Terms of Payment

Upon approval of an invoice within J&J's matter management system, the invoice will be electronically routed for payment to J&J's Accounts Payable Department. It is the policy of J&J Accounts Payable to pay invoices within 60 days of the invoice date.

While the new standard payment terms in the US will be 90 days from receipt of a valid undisputed invoice, Legal invoicing managed outside of ARIBA (web invoicing) will operate under different terms.  Specifically, invoices billed to litigation and IP (Patent and Trademark) matters will be subject to 60-day payment terms from the invoice date.  Non-

litigation and non-IP invoices (e.g. Regulatory and Business Development) will be subject to 90-day terms from the date of invoice.

Payment frequency will remain as it currently exists today and you will not be subject to proposed bi-weekly payment policy.  You will be paid on whatever day falls on the calculated number of days (60 or 90) from the date of the invoice.

In the past, some expert witnesses and vendors have encountered conflicts between the J&J payment terms and the terms they discussed with outside counsel.  As of April 1, 2018, the 60-day payment terms for litigation and IP invoices will supersede any existing agreements if J&J is being asked to pay the vendor directly.  In addition, any new agreements need to reflect Johnson & Johnson's new payment terms.

### F.  Year-End Billing

We strongly encourage outside counsel to invoice J&J for all time and expenses incurred through November by the beginning of December. However, receipt of invoices does not guarantee payment before the end of December.

## IX.   INTELLECTUAL PROPERTY BILLING GUIDELINES

The Intellectual Property Law Department uses Ascent, a Web invoicing system.  Refer to Trademark-Specific Guidelines section for additional information related to trademark-related billing/invoices.

For non-patent prosecution US matters (example: patent opinions etc.), once the estimate and Not-To-Exceed for the work has been submitted and the budget approved,  an automated email from Ascent will be sent to the ebilling contact on file, confirming your firm is assigned to the J&J matter number.   If ever the  matter budget or deadline needs to be extended, please submit a revised estimate in advance to the responsible J&J attorney to be review or approved.  Invoices that go over budget or deadlines will be auto rejected.

To submit invoices:

Go to the Ascent web link and follow the instructions provided to you by Ascent for invoice submission in either LEDES format or other defined format contained in Ascent's instructions. No paper invoices and no paper statements should be sent to the Intellectual Property Law Department in New Brunswick, New Jersey USA.  You will receive electronic invoicing instructions from Ascent.  Please note that under no circumstances should prosecution documents or prosecution-related communications be included with invoices that are electronically submitted via Ascent.

Please utilize the Johnson & Johnson Accounts Payable website (www.ap.jnj.com) to check the status of your invoices.   Questions related to J&J Matter Numbers/Case Reference Numbers can be sent to PatentBillling@corus.jnj.com for patent matters or TMBilling@corus.jnj.com for trademark matters.

For questions regarding billing, contact: Melissa Sykes, 732-524-1788, msykes2@its.jnj.com.

## APPENDIX A:  J&J PREFERRED THIRD-PARTY VENDORS

- **Court Reporters**

  - The MCS Group, Katie Bean Tallon, Katie.Tallon@themcsgroup.com or 215-405-8108

  - Golkow Court Reporting, Joanne Redican, joanne@golkow.com or 877-370-3377, One Liberty Place, Suite 5150, Philadelphia, PA 19103. http://www.golkow.com

  - Henderson Legal Services, Nan Marshall,  NMarshall@hendersonlegalservices.com or calendar@hendersonlegalservices.com, 202-220-4158, 1560 Wilson Boulevard, Suite 750, Arlington, VA 22209. www.hendersonlegalservices.com

  - Veritext Court Reporting, Una Elias at 212-983-5387 or 800-362-2520, or uelias@veritext.com.  Services may also be scheduled online at www.veritext.com.  Contact Una Elias to register or link to J&J.

- **Drawing Services**

  - NB GRAPHICS, 9960 Lake Forest Way, Suite B, Roswell, GA 30076, Contact: Paulina Jezierska- Accounting@nbgraphics.com

  - QUINN JAY PATENT, LLC, 5780 Highland Lane, Sunderland, MD  20689, Contact:  Mary Quinn Jaensch, mquinn@quinnjaypatent.com, phone: 410-286-3970, fax: 410-286-3972

  - MARK GULICK ILLUSTRATION, 7 Prospect Street, Fort Edward, NY  12828, 518-746-9506, Patentillustration96@gmail.com

  - SCOTT MOSCONI ILLUSTRATION, 822 Salem Drive, Ballston Spa, NY 12020, 518-316-6408, Patentillustration96@gmail.com

- **File Histories**

  - Schellin & Associates Ltd, Eric Schellin, 2000 Duke Street, Suite 300, Alexandria, VA 22314, 703-330-6011, schellin@schellin.com

  - Discount Patent Service Inc., 4900 South 31st Street, 2nd Floor, Arlington, VA 22206, Contact:  Thomas Lupo, 800-741-3117, orders@dpsfiles.com

  - Megapat, 5810 Kingstowne Center Drive, Suite 120-278, Alexandria, VA  22315, Contact:  Joseph M. Kwiatkowski, Jr., phone: 703-626-0386, fax: 703-519-8661, jk@megapat.com

- **Document Copying & Scanning Services**

  - DTI., Terence Herlihy, Director, Legal Solutions, Terence.herlihy@epiqglobal.com, phone: 212-225-9233, mobile: 516-582-4253

  - Ricoh USA Inc., David Wilson, 215-678-9028, Dave.Wilson@ricoh-usa.com

- **eDiscovery**

  - Outside counsel costs related to legal discovery services such as database hosting and maintenance will not be reimbursed by J&J unless preapproved by the responsible J&J attorney and the responsible J&J eDiscovery team member.

- **Data Processing, Hosting & Production**
  - Lighthouse eDiscovery - Please contact responsible J&J eDiscovery team member for engagement of this vendor.

- **Managed Document Review & Document Collection**
  - UnitedLex - Please contact responsible J&J eDiscovery team member for engagement of this vendor.

- **Jury Consultant**

  - Litigation Insights, Christina Marinakis, cmarinakis@litigationinsights.com, 913-339-9885

  - Trial Partners, Inc., Lee Meihls, lee@trial-partners.com, 323-663-3330, 5670 Wilshire Blvd. Suite 850 Los Angeles, CA 90211

  - Tsongas Litigation Consulting, Chris Dominic, Chris.Dominic@tsongas.com, 503-225-0321 One SW Columbia Street, Suite 600, Portland, Oregon 97258

- **Medical Records Collection**

  - Litigation Management Inc., Sonya S. Virant, Sonya.Virant@lmiweb.com or 440-484-2032, 6000 Parkland Boulevard, Mayfield Heights, OH 44124

  - The MCS Group, Katie Bean Tallon, Katie.Tallon@themcsgroup.com or 215-405-8108

  - The Marker Group, Hillary Johnson, HillaryJohnson@marker-group.com or 713-934-2586, 13105 Northwest Freeway, Suite 300 | Houston, TX 77040

- **Medical Records Review and Chronologies**

  - Litigation Management Inc., Sonya S. Virant, Sonya.Virant@lmiweb.com or 440-484-2032, 6000 Parkland Boulevard, Mayfield Heights, OH 44124

- **Overnight Courier Services**

  - Federal Express, Bill Hutton, william.hutton@fedex.com, Federal Express Worldwide Account Manager for J&J, FedEx Healthcare Solutions, Mobile  (443) 454-1980, Office (410) 295-1008  http://fedex.com/us/findsupport, http://www.fedex.com/us/healthcare/. Provide your law firm's complete name, address, phone number and the name of the law firm contact person.

- **Messenger Services – document legalization**

  - Kay's Transport Inc., Ralf Zafarana, rznj57@gmail.com, 54 Dunham Ave. Toms River, New Jersey  08753, 732-572-2884

- **Searches**

  - Global Prior Art, Inc., 21 Milk Street, 6th Floor, Boston, MA   02109-0000, Contact:  Elizabeth Rossolimo, phone: 617-574-9574, fax: 617-574-9559, erossolimo@globalpriorart.com

  - United States Patent and Trademark Office, 800-786-9199, www.uspto.gov

  - Patent and Trademark Professional Services, 2111 Eisenhower Ave., Suite 404, Alexandria, VA 22314, 703-299-8500

- S S.C. Pellegrino Research, Inc., 10204 Carol Street, Great Falls, VA  22066, Contact:  Stephen C. Pellegrino, phone: 703-759-9605, fax: 703-759-2055, steve@scpellegrino.com

- Taylor Consulting Group LLC, 131 Tsataga Ct., Brevard, NC  28712-0000, Contacts:  Tom and Martha Taylor, phone: 828-883-3119, fax: 828-883-3119, Martha@tcgpatentsearch.com

- **Sequence Listings for DNA**

  - Harbor Consulting IP Services, 1500A Lafayette Road, #262, Portsmouth, NH 03801, 800-318-3021, Finance@seqidno.com, ctenore@seqidno.com

- **Temporary Staffing**

  - Tower Legal Solutions, Leslie Firtell, 212-430-6303, lfirtell@towerls.com

  - HIRECounsel, Amy Doering, 646-356-0553, adoering@hirecounsel.com

  - KLDiscovery (formerly, Strategic Legal Solutions), Patricia Colon, 646-949-2158, pat.colon@krolldiscovery.com, www.kldiscovery.com

- **Translation Services**

  - Transperfect - Joseph Previtera, Director, Strategic Accounts, jprevitera@transperfect.com, Legal Solutions, Centre Square West, Suite 2720, 1500 Market Street, 27th Floor Philadelphia, PA 19102-2186, phone: 215-972-0404, fax: 646-607-4429, mobile: 856-693-2962 http://transperfectlegal.com  (used for non-patent matters)

  - Questel, 180 N. University Avenue, 6th Floor, Provo, UT 84601 USA,  Toll-Free (USA) 1-888-960-7827; Phone:  1-801-396-8134; Fax:  1-801-377-7085; Email:  Jnj-translations@questel.com (formerly known as MultiLing Corporation)

- **Trial Graphics**

  - Core Legal Concepts, Kim Levine, 917-566-9829 or kim.levine@corelegal.com

  - FTI, Margaret Lindsay, 312-630-4801 or margaret.lindsay@fticonsulting.com

## APPENDIX B:  J&J UTBMS TASK CODES


Improved JNJ
Litigation Task Code


J&J Litigation Code
Guidelines.docx

| Code | Description |
|---|---|
| LITIGATION | |
| OC FEES | |
| L110 | Fee:outside counsel Fees: Litigation Code Set: Company/Product & General Factual Information |
| L120 | Fee:outside counsel Fees: Litigation Code Set: Strategy |
| L130 | Fee:outside counsel Fees: Litigation Code Set: Experts & Science |
| L140 | Fee:outside counsel Fees: Litigation Code Set: Database & Document Management |
| L210 | Fee:outside counsel Fees: Litigation Code Set: Pleadings, Briefing, and Related Research, etc. |
| L300* | Fee:outside counsel Fees: Litigation Code Set: Plaintiff Information |
| L320 | Fee:outside counsel Fees: Litigation Code Set: Document Collection & Production |
| L330 | Fee:outside counsel Fees: Litigation Code Set: Depositions (includes experts) |
| L400 | Fee:outside counsel Fees: Litigation Code Set: Trial (includes all trial briefing and hearings) |
| L450 | Fee:outside counsel Fees: Litigation Code Set: Court Conferences & Hearings |
| L500 | Fee:outside counsel Fees: Litigation Code Set: Appeals & Mandamus |
| | |
| BANKRUPTCY | |
| B100 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration |
| B110 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration:B110 Case Administration |
| B120 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration:B120 Asset Analysis and Recovery |
| B130 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration:B130 Asset Disposition |
| B150 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration:B150 Meetings of and Communications with Creditors |
| B160 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration:B160 Fee/Employment Applications |
| B170 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration:B170 Fee/Employment Objections |
| B180 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration:B180 Avoidance Action Analysis |
| B185 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration:B185 Assumption/Rejection of Leases and Contracts |
| B190 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration:B190 Other Contested Matters |
| B195 | Fee:outside counsel Fees:Bankruptcy Code set:B100 Administration:B195 Non-Working Travel |
| B200 | Fee:outside counsel Fees:Bankruptcy Code set:B200 Operations |
| B210 | Fee:outside counsel Fees:Bankruptcy Code set:B200 Operations:B210 Business Operations |
| B220 | Fee:outside counsel Fees:Bankruptcy Code set:B200 Operations:B220 Employee Benefits/Pensions |

| | |
|---|---|
| B230 | Fee:outside counsel Fees:Bankruptcy Code set:B200 Operations:B230 Financing/Cash Collections |
| B240 | Fee:outside counsel Fees:Bankruptcy Code set:B200 Operations:B240 Tax Issues |
| B250 | Fee:outside counsel Fees:Bankruptcy Code set:B200 Operations:B250 Real Estate |
| B260 | Fee:outside counsel Fees:Bankruptcy Code set:B200 Operations:B260 Board of Directors Matters |
| B300 | Fee:outside counsel Fees:Bankruptcy Code set:B300 Claims and Plan |
| B310 | Fee:outside counsel Fees:Bankruptcy Code set:B300 Claims and Plan:B310 Claims Administration and Objections |
| B320 | Fee:outside counsel Fees:Bankruptcy Code set:B300 Claims and Plan:B320 Plan and Disclosure Statement |
| B400 | Fee:outside counsel Fees:Bankruptcy Code set:B400 Bankruptcy-Related Advice |
| B410 | Fee:outside counsel Fees:Bankruptcy Code set:B400 Bankruptcy-Related Advice:B410 General Bankruptcy Advice/Opinions |
| B420 | Fee:outside counsel Fees:Bankruptcy Code set:B400 Bankruptcy-Related Advice:B420 Restructurings |
| COUNSELING | |
| C100 | Fee:outside counsel Fees:Counseling Code set:C100 Fact Gathering |
| C200 | Fee:outside counsel Fees:Counseling Code set:C200 Researching Law |
| C300 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice |
| C310 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice:C310 Client Counsel – Agreements |
| C311 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice:C311 Client Counsel - Company Policy |
| C312 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice:C312 Client Counsel - Stat/Reg/Judicial |
| C320 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice:C320 Infringement/Validity/Survey Studies |
| C330 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice:C330 Tort Reform/Lobbying/Govt Affairs |
| C340 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice:C340 Situation Management |
| C341 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice:C341 Business Disputes |
| C350 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice:C350 Contract/Form Development |
| C360 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice:C360 Legal Awareness Training |
| C361 | Fee:outside counsel Fees:Counseling Code set:C300 Analysis and Advice:C361 Policy/Program Development |
| C400 | Fee:outside counsel Fees:Counseling Code set:C400 Third-Party Communication |
| PROJECT VENDORFEES | |
| P100 | Fee:outside counsel Fees: Project Code set:P100 Project Administration |
| P200 | Fee:outside counsel Fees: Project Code set:P200 Fact Gathering/Due Diligence |
| P210 | Fee:outside counsel Fees: Project Code set:P200 Fact Gathering/Due Diligence:P210 Corporate Review |

| | |
|---|---|
| P220 | Fee:outside counsel Fees: Project Code set:P200 Fact Gathering/Due Diligence:P220 Tax |
| P230 | Fee:outside counsel Fees: Project Code set:P200 Fact Gathering/Due Diligence:P230 Environmental |
| P240 | Fee:outside counsel Fees: Project Code set:P200 Fact Gathering/Due Diligence:P240 Real and Personal Property |
| P250 | Fee:outside counsel Fees: Project Code set:P200 Fact Gathering/Due Diligence:P250 Employee/Labor |
| P260 | Fee:outside counsel Fees: Project Code set:P200 Fact Gathering/Due Diligence:P260 Intellectual Property |
| P270 | Fee:outside counsel Fees: Project Code set:P200 Fact Gathering/Due Diligence:P270 Regulatory Reviews |
| P280 | Fee:outside counsel Fees: Project Code set:P200 Fact Gathering/Due Diligence:P280 Other |
| P300 | Fee:outside counsel Fees: Project Code set:P300 Structure/Strategy/Analysis |
| P400 | Fee:outside counsel Fees: Project Code set:P400 Initial Document Preparation/Filing |
| P500 | Fee:outside counsel Fees: Project Code set:P500 Negotiation/Revision/Responses |
| P600 | Fee:outside counsel Fees: Project Code set:P600 Completion/Closing |
| P700 | Fee:outside counsel Fees: Project Code set:P700 Post-Completion/Post-Closing |
| P800 | Fee:outside counsel Fees: Project Code set:P800 Maintenance and Renewal |
| | Fee:outside counsel Fees: Project Code set |
| | Fee: Vendor/Expert Fees |

EXPENSES

| | |
|---|---|
| E100 | Expense: outside counsel Expenses:E100 Expenses |
| E102 | Expense: outside counsel Expenses:E100 Expenses:E102 Preferred copy vendor for outside copies |
| E106 | Expense: outside counsel Expenses:E100 Expenses:E106 Pacer |
| E107 | Expense: outside counsel Expenses:E100 Expenses:E107 Delivery services, Messengers & Shipping |
| E108 | Expense: outside counsel Expenses:E100 Expenses:E108 Postage |
| E109 | Expense: outside counsel Expenses:E100 Expenses:E109 Local travel |
| E110 | Expense: outside counsel Expenses:E100 Expenses:E110 Out-of-town travel (Uber, Taxi, Hotel, Meals) |
| E111 | Expense: outside counsel Expenses:E100 Expenses:E111 Meals |
| E112 | Expense: outside counsel Expenses:E100 Expenses:E112 Court fees |
| E113 | Expense: outside counsel Expenses:E100 Expenses:E113 Subpoena fees |
| E114 | Expense: outside counsel Expenses:E100 Expenses:E114 Witness fees |
| E115 | Expense: outside counsel Expenses:E100 Expenses:E115 Depositions |
| E116 | Expense: outside counsel Expenses:E100 Expenses:E116 Trial transcripts |
| E117 | Expense: outside counsel Expenses:E100 Expenses:E117 Trial exhibits |
| E118 | Expense: outside counsel Expenses:E100 Expenses:E118 Litigation support vendors |
| E119 | Expense: outside counsel Expenses:E100 Expenses:E119 Experts |
| E120 | Expense: outside counsel Expenses:E100 Expenses:E120 Private investigators |

| | |
|---|---|
| E121 | Expense: outside counsel Expenses:E100 Expenses:E121 Arbitrators/mediators |
| E122 | Expense: outside counsel Expenses:E100 Expenses:E122 Local counsel |
| E123 | Expense: outside counsel Expenses:E100 Expenses:E123 Other professionals |
| E124 | Expense: outside counsel Expenses:E100 Expenses:E124 Other |
| E125 | Translation fees including preparation and keyboarding (typing) of documentation |
| E126 | Drawings prepared by external draftsman |
| E127 | Patent and trademark records including patent copies, priority documents, file histories and other intellectual property records obtained through third party vendors |
| E128 | Searching and Monitoring |
| E129 | Official Fees, excluding postissuance patent maintenance, trademark renewal fees and late fees. Official fees not otherwise identified above which are paid to governmental and quasi-governmental entities in connection with a pending application, including those paid to Patent and Trademark Offices, the World Intellectual Property, Notaries, consulates, and embassies. |
| E130 | Post-Issuance Patent Maintenance and Trademark Renewal Fees. Official fees paid to a government agency in order to maintain an issued patent or trademark in force. |
| E131 | Late Fees. Official surcharge fees paid to a government agency in order to have a document entered into the record past an initial deadline, including Petition for Extension of Time and Information Disclosure Statement fees in the U.S. |
| E132 | Medical Literature |
| E133 | Medical Record Collection & Chronology Vendors |
| E134 | Trial Vendors (Jury Consultants, Core, LCI. Would include trial site furniture, equipment, and trial site office supplies.) |

EDISCOVERY

| | |
|---|---|
| L600 | Fee:outside counsel Fees: eDiscovery Code set:L600 Identification (NOS) |
| L601 | Fee:outside counsel Fees: eDiscovery Code set:L600 Identification (NOS): L601 Discovery planning |
| L602 | Fee:outside counsel Fees: eDiscovery Code set:L600 Identification (NOS): L602 Interviews |
| L609 | Fee:outside counsel Fees: eDiscovery Code set:L600 Identification (NOS): L609 Quality assurance and control |
| L610 | Fee:outside counsel Fees: eDiscovery Code set:L610 Preservation (NOS) |
| L611 | Fee:outside counsel Fees: eDiscovery Code set:L610 Preservation (NOS): L611 Preservation order |
| L612 | Fee:outside counsel Fees: eDiscovery Code set:L610 Preservation (NOS): L612 Legal hold |
| L619 | Fee:outside counsel Fees: eDiscovery Code set:L610 Preservation (NOS): L619 Quality assurance and control |
| L620 | Fee:outside counsel Fees: eDiscovery Code set:L620 Collection (NOS): |
| L621 | Fee:outside counsel Fees: eDiscovery Code set:L620 Collection (NOS): L621 Collection/Recovery |
| L622 | Fee:outside counsel Fees: eDiscovery Code set:L620 Collection (NOS): L622 Media costs |
| L623 | Fee:outside counsel Fees: eDiscovery Code set:L620 Collection (NOS): L623 Media/ESI Transfer, Receipt, Inventory |
| L629 | Fee:outside counsel Fees: eDiscovery Code set:L620 Collection (NOS): L629 Quality assurance and control |

| | |
|---|---|
| L630 | Fee:outside counsel Fees: eDiscovery Code set:L630 Processing (NOS) |
| L631 | Fee:outside counsel Fees: eDiscovery Code set:L630 Processing (NOS): L631 ESI stage, preparation and process |
| L632 | Fee:outside counsel Fees: eDiscovery Code set:L630 Processing (NOS): L632 Scanning – Hard Copy |
| L633 | Fee:outside counsel Fees: eDiscovery Code set:L630 Processing (NOS): L633 Foreign language translation |
| L634 | Fee:outside counsel Fees: eDiscovery Code set:L630 Processing (NOS): L634 Exception handling |
| L639 | Fee:outside counsel Fees: eDiscovery Code set:L630 Processing (NOS): L639 Quality assurance and control |
| L650 | Fee:outside counsel Fees: eDiscovery Code set:L650 Review (NOS) |
| L651 | Fee:outside counsel Fees: eDiscovery Code set:L650 Review (NOS): L651 Hosting costs |
| L693 | Fee:outside counsel Fees: eDiscovery Code set:L690 Project Management (NOS): L693  Review Planning & Training |
| L652 | Fee:outside counsel Fees: eDiscovery Code set:L650 Review (NOS): L652 Objective and Subjective Coding |
| L653 | Fee:outside counsel Fees: eDiscovery Code set:L650 Review (NOS): L653 First pass document review |
| L654 | Fee:outside counsel Fees: eDiscovery Code set:L650 Review (NOS): L654 Second pass document review |
| L655 | Fee:outside counsel Fees: eDiscovery Code set:L650 Review (NOS): L655 Privilege review |
| L656 | Fee:outside counsel Fees: eDiscovery Code set:L650 Review (NOS): L656 Redaction |
| L659 | Fee:outside counsel Fees: eDiscovery Code set:L650 Review (NOS): L659 Quality assurance and control |
| L660 | Fee:outside counsel Fees: eDiscovery Code set:L660 Analysis (NOS) |
| L670 | Fee:outside counsel Fees: eDiscovery Code set:L670 Production (NOS) |
| L671 | Fee:outside counsel Fees: eDiscovery Code set:L670 Production (NOS): L671 Conversion of ESI to production format |
| L679 | Fee:outside counsel Fees: eDiscovery Code set:L670 Production (NOS): L679 Quality assurance and control |
| L680 | Fee:outside counsel Fees: eDiscovery Code set:L680 Presentation (NOS) |
| L690 | Fee:outside counsel Fees: eDiscovery Code set:L690 Project Management (NOS) |

## PATENTS

Patent task codes are shown in the attached Patent Billing Codes document.



UTBMS-Patent-Billin
g-Codes.pdf

## TRADEMARKS

Trademark task codes are shown in the attached Trademark Billing Codes document.



UTBMS-Trademark-
Billing-Codes.pdf

# APPENDIX C:  J&J STANDARD BUDGET FORM & BUDGET SUMMARY SPREADSHEET



JJ 2021 Standard
Budget Form.xls



JJ 2021 Budget
Summary Spreadshe

## APPENDIX D:  AUTOMATED BUDGET PROCESS INSTRUCTIONS



JNJ_BudgetWorksh
eetInstructions.pdf

## APPENDIX E:  ACCRUAL PROCESS INSTRUCTIONS



JNJ Accruals Vendor
Reference Guide - U

## APPENDIX F:  RATE CHANGE FORM



2021_ Rate Increase
Request Package.dc

## APPENDIX G:  MEDICARE REPORTING REQUIREMENTS



Summary of
changes for JJ Medi·



MMSEA Section
111_memo.docx

# APPENDIX H:  ADVERSE EVENT REPORTING



AE Reporting
Outside Counsel Gu

**<u>SCHEDULE 1</u>**

**Potential Parties in Interest**

**LTL Management LLC**
**Potentially Interested Parties**

**Debtor**
LTL Management LLC

**Direct Equity Owner of Debtor**
Johnson & Johnson Holdco (NA) Inc.

**Debtor's Direct Non-Debtor Subsidiary**
Royalty A&M LLC

**Other Non-Debtor Affiliates**
3Dintegrated ApS
ABD Holding Company, Inc.
ABIOMED R&D, Inc.
ABIOMED, Inc.
Acclarent, Inc.
Actelion Ltd
Actelion Pharmaceuticals Ltd
Actelion Pharmaceuticals Trading
    (Shanghai) Co., Ltd.
Actelion Pharmaceuticals US, Inc.
Actelion Treasury Unlimited Company
Albany Street LLC
ALZA Corporation
Alza Land Management, Inc.
AMO (Hangzhou) Co., Ltd.
AMO (Shanghai) Medical Devices
    Trading Co., Ltd.
AMO ASIA LIMITED
AMO Australia Pty Limited
AMO Canada Company
AMO Denmark ApS
AMO Development, LLC
AMO France
AMO Germany GmbH
AMO Groningen B.V.
AMO International Holdings
    Unlimited Company
AMO Ireland
AMO Italy SRL
AMO Japan K.K.
AMO Manufacturing USA, LLC
AMO Netherlands BV
AMO Nominee Holdings, LLC

AMO Norway AS
AMO Puerto Rico Manufacturing, Inc.
AMO Sales and Service, Inc.
AMO Singapore Pte. Ltd.
AMO Spain Holdings, LLC
AMO Switzerland GmbH
AMO United Kingdom, Ltd.
AMO Uppsala AB
Anakuria Therapeutics, Inc.
AorTx, Inc.
Apsis SAS
Aragon Pharmaceuticals, Inc.
Asia Pacific Holdings, LLC
Atrionix, Inc.
AUB Holdings LLC
Auris Health, Inc.
Backsvalan 6 Handelsbolag
Beijing Dabao Cosmetics Co., Ltd.
BeneVir BioPharm, Inc.
Berna Rhein B.V.
BioMedical Enterprises, Inc.
Biosense Webster (Israel) Ltd.
Biosense Webster, Inc.
Breethe, Inc.
C Consumer Products Denmark ApS, n/k/a
Coloplast Konsumerntvarer A/S
Carlo Erba OTC S.r.l.
Centocor Biologics, LLC
Centocor Research & Development, Inc.
Cerenovus, Inc.
ChromaGenics B.V.
Ci:z. Labo Co., Ltd
Cilag AG
Cilag GmbH International
Cilag Holding AG
Cilag Holding Treasury Unlimited Company
Cilag-Biotech, S.L.
Coherex Medical, Inc.
ColBar LifeScience Ltd.
Consumer Test Entity
Cordis de Mexico, S.A. de C.V.
Corimmun GmbH
CoTherix Inc.

CRES Holdings, Inc.
CrossRoads Extremity Systems, LLC
CSATS, Inc.
Debs-Vogue Corporation
    (Proprietary) Limited
DePuy Hellas SA
DePuy International Limited
DePuy Ireland Unlimited Company
DePuy Mexico, S.A. de C.V.
DePuy Mitek, LLC
DePuy Orthopaedics, Inc.
DePuy Products, Inc.
DePuy Spine, LLC
DePuy Synthes Institute, LLC
DePuy Synthes Products, Inc.
DePuy Synthes Sales, Inc.
DePuy Synthes, Inc.
Dutch Holding LLC
ECL7, LLC
EES Holdings de Mexico,
    S. de R.L. de C.V.
EES, S.A. de C.V.
EIT Emerging Implant Technologies GmbH
Ethicon Endo-Surgery (Europe) GmbH
Ethicon Endo-Surgery, Inc.
Ethicon Endo-Surgery, LLC
Ethicon LLC
Ethicon Sarl
Ethicon US, LLC
Ethicon Women's Health & Urology Sarl
Ethicon, Inc.
Ethnor (Proprietary) Limited
Ethnor del Istmo S.A.
Ethnor Farmaceutica, S.A.
Finsbury (Development) Limited
Finsbury (Instruments) Limited
Finsbury Medical Limited
Finsbury Orthopaedics International Limited
Finsbury Orthopaedics Limited
FMS Future Medical System SA
GATT Technologies B.V.
GH Biotech Holdings Limited
Global Investment Participation B.V.
GMED Healthcare BV
Guangzhou Bioseal Biotech Co., Ltd.
Hansen Medical Deutschland GmbH

Hansen Medical International, Inc.
Hansen Medical UK Limited
Hansen Medical, Inc.
Healthcare Services (Shanghai) Ltd.
I.D. Acquisition Corp.
Innomedic Gesellschaft für innovative
    Medizintechnik und Informatik mbH
J & J Company West Africa Limited
J&J Argentina S.A.
J&J Pension Trustees Limited
J&J Productos Medicos & Farmaceuticos
    del Peru S.A.
J.C. General Services BV
Janssen Biologics (Ireland) Limited
Janssen Biologics B.V.
Janssen BioPharma, LLC
Janssen Biotech, Inc.
Janssen Cilag Farmaceutica S.A.
Janssen Cilag S.p.A.
Janssen Cilag SPA
Janssen Cilag, C.A.
Janssen Development Finance Unlimited
    Company
Janssen Egypt LLC
Janssen Farmaceutica Portugal Lda
Janssen France Treasury Unlimited
    Company
Janssen Global Services, LLC
Janssen Holding GmbH
Janssen Inc.
Janssen Irish Finance Unlimited Company
Janssen Japan Treasury Unlimited Company
Janssen Korea Ltd.
Janssen Mexico Treasury
    Unlimited Company
Janssen Oncology, Inc.
Janssen Ortho LLC
Janssen Pharmaceutica
    (Proprietary) Limited
Janssen Pharmaceutica NV
Janssen Pharmaceutica S.A.
Janssen Pharmaceutical K.K.
Janssen Pharmaceutical Sciences
    Unlimited Company
Janssen Pharmaceutical Unlimited Company
Janssen Pharmaceuticals, Inc.

2

Janssen Products, LP
Janssen R&D Ireland Unlimited Company
Janssen Research & Development, LLC
Janssen Sciences Ireland
    Unlimited Company
Janssen Scientific Affairs, LLC
Janssen Supply Group, LLC
Janssen Vaccines & Prevention B.V.
Janssen Vaccines Corp.
Janssen-Cilag
Janssen-Cilag (New Zealand) Limited
Janssen-Cilag A/S
Janssen-Cilag AG
Janssen-Cilag Aktiebolag
Janssen-Cilag AS
Janssen-Cilag B.V.
Janssen-Cilag d.o.o. Beograd
Janssen-Cilag de Mexico S. de R.L. de C.V.
Janssen-Cilag Farmaceutica Lda.
Janssen-Cilag Farmaceutica Ltda.
Janssen-Cilag GmbH
Janssen-Cilag International NV
Janssen-Cilag Kft.
Janssen-Cilag Limited
Janssen-Cilag Manufacturing, LLC
Janssen-Cilag NV
Janssen-Cilag OY
Janssen-Cilag Pharma GmbH
Janssen-Cilag Pharmaceutical S.A.C.I.
Janssen-Cilag Polska, Sp. z o.o.
Janssen-Cilag Pty Ltd
Janssen-Cilag S.A.
Janssen-Cilag s.r.o.
Janssen-Cilag, S.A.
Janssen-Cilag, S.A. de C.V.
Janssen-Pharma, S.L.
J-C Health Care Ltd.
Jevco Holding, Inc.
JJ Surgical Vision Spain, S.L.
JJC Acquisition Company B.V.
JJHC, LLC
JJSV Belgium BV
JJSV Manufacturing Malaysia SDN. BHD.
JJSV Norden AB
JJSV Produtos Oticos Ltda.
JNJ Global Business Services s.r.o.

JNJ Holding EMEA B.V.
JNJ International Investment LLC
JNTL (APAC) HoldCo 2 LLC
JNTL (APAC) HoldCo 3 Pte. Ltd.
JNTL (APAC) HoldCo LLC
JNTL (APAC) HoldCo Pte. Ltd.
JNTL (Japan) HoldCo Inc.
JNTL (Malaysia) Sdn. Bhd.
JNTL (Middle East) HoldCo LLC
JNTL (Puerto Rico) HoldCo GmbH
JNTL (Shanghai) Investment Co., Ltd.
JNTL (Switzerland) HoldCo GmbH
JNTL (Thailand) HoldCo LLC
JNTL (UK) HoldCo Limited
JNTL Consumer Health (Belgium) BV
JNTL Consumer Health (Brazil) Ltda.
JNTL Consumer Health
    (Czech Republic) s.r.o.
JNTL Consumer Health
    (Dominican Republic), S.A.S.
JNTL Consumer Health (Finland) Oy
JNTL Consumer Health (France) SAS
JNTL Consumer Health (Hungary) Kft
JNTL Consumer Health (India)
    Private Limited
JNTL Consumer Health
    (New Zealand) Limited
JNTL Consumer Health (Norway) AS
JNTL Consumer Health (Philippines) Inc.
JNTL Consumer Health (Poland) sp. z o.o.
JNTL Consumer Health (Portugal) Limitada
JNTL Consumer Health (Services) LLC
JNTL Consumer Health (Slovakia), s.r.o.
JNTL Consumer Health (Spain), S.L.
JNTL Consumer Health (Taiwan) Limited
JNTL Consumer Health (Vietnam) Co. Ltd.
JNTL Consumer Health General
    Services BV
JNTL Consumer Health I (Ireland) Limited
JNTL Consumer Health I
     (Switzerland) GmbH
JNTL Consumer Health II
    (Switzerland) GmbH
JNTL Consumer Health LLC
JNTL Consumer Health Mexico,
    S. de R.L. de C.V.

JNTL Consumer Health Middle
    East FZ-LLC
JNTL HoldCo 2 LLC
JNTL HoldCo 3 LLC
JNTL HoldCo 4 LLC
JNTL HoldCo 5 LLC
JNTL HoldCo 6 LLC
JNTL HoldCo 7 LLC
JNTL HoldCo 8 LLC
JNTL HoldCo LLC
JNTL Holdings 2, Inc.
JNTL Holdings 3, Inc.
JNTL Holdings B.V.
JNTL Holdings, Inc.
JNTL Ireland HoldCo 2 B.V.
JNTL Netherlands HoldCo B.V.
JNTL Turkey Tüketici Sağlığı
    Limited Şirketi
Johnson & Johnson
Johnson & Johnson - Societa' Per Azioni
Johnson & Johnson (Angola), Limitada
Johnson & Johnson (Australia) Pty Ltd
Johnson & Johnson (Canada) Inc.
Johnson & Johnson (China) Investment Ltd.
Johnson & Johnson (Ecuador) S.A.
Johnson & Johnson (Egypt) S.A.E.
Johnson & Johnson (Hong Kong) Limited
Johnson & Johnson (Ireland) Limited
Johnson & Johnson (Jamaica) Limited
Johnson & Johnson (Kenya) Limited
Johnson & Johnson (Middle East) Inc.
Johnson & Johnson (Mozambique),
    Limitada
Johnson & Johnson (Namibia)
    (Proprietary) Limited
Johnson & Johnson (New Zealand) Limited
Johnson & Johnson (Philippines), Inc.
Johnson & Johnson (Private) Limited
Johnson & Johnson (Singapore)
    Holdco LLC
Johnson & Johnson (Thailand) Ltd.
Johnson & Johnson (Trinidad) Limited
Johnson & Johnson (Vietnam) Co., Ltd
Johnson & Johnson AB
Johnson & Johnson AG
Johnson & Johnson Bulgaria EOOD

Johnson & Johnson China Ltd.
Johnson & Johnson Consumer
    (Hong Kong) Limited
Johnson & Johnson Consumer
    (Thailand) Limited
Johnson & Johnson Consumer B.V.
Johnson & Johnson Consumer
    Holdings France
Johnson & Johnson Consumer Inc.
Johnson & Johnson Consumer NV
Johnson & Johnson Consumer
    Saudi Arabia Limited
Johnson & Johnson Consumer Services
    EAME Ltd.
Johnson & Johnson d.o.o.
Johnson & Johnson de Argentina S.A.C. e. I.
Johnson & Johnson de Chile S.A.
Johnson & Johnson de Colombia S.A.
Johnson & Johnson de Mexico, S.A. de C.V.
Johnson & Johnson de Uruguay S.A.
Johnson & Johnson de Venezuela, S.A.
Johnson & Johnson del Ecuador, S.A.
Johnson & Johnson Del Paraguay, S.A.
Johnson & Johnson del Peru S.A.
Johnson & Johnson do Brasil Industria E
    Comercio de Produtos Para Saude Ltda.
Johnson & Johnson Dominicana, S.A.S.
Johnson & Johnson Enterprise
    Innovation Inc.
Johnson & Johnson European Treasury
    Unlimited Company
Johnson & Johnson Finance Corporation
Johnson & Johnson Finance Limited
Johnson & Johnson Financial
    Services GmbH
Johnson & Johnson for Export and
    Import LLC
Johnson & Johnson Gateway, LLC
Johnson & Johnson Gesellschaft m.b.H.
Johnson & Johnson GmbH
Johnson & Johnson GT, Sociedad Anónima
Johnson & Johnson Guatemala, S.A.
Johnson & Johnson Health and Wellness
    Solutions, Inc.
Johnson & Johnson Health Care
    Systems Inc.

Johnson & Johnson Hellas Commercial and
Industrial S.A.
Johnson & Johnson Hellas
Consumer Products
Commercial Societe Anonyme
Johnson & Johnson Hemisferica S.A.
Johnson & Johnson Holdco (NA) Inc.
Johnson & Johnson Holding GmbH
Johnson & Johnson Holdings
(Austria) GmbH
Johnson & Johnson Inc.
Johnson & Johnson Industrial Ltda.
Johnson & Johnson Innovation - JJDC, Inc.
Johnson & Johnson Innovation Limited
Johnson & Johnson Innovation LLC
Johnson & Johnson International
Johnson & Johnson International
(Singapore) Pte. Ltd.
Johnson & Johnson International Financial
Services Unlimited Company
Johnson & Johnson Irish Finance
Company Limited
Johnson & Johnson K.K.
Johnson & Johnson Kft.
Johnson & Johnson Korea Selling &
Distribution LLC
Johnson & Johnson Korea, Ltd.
Johnson & Johnson Limited
Johnson & Johnson LLC
Johnson & Johnson Luxembourg Finance
Company Sarl
Johnson & Johnson Management Limited
Johnson & Johnson Medical (China) Ltd.
Johnson & Johnson Medical
(Proprietary) Ltd
Johnson & Johnson Medical (Shanghai) Ltd.
Johnson & Johnson Medical (Suzhou) Ltd.
Johnson & Johnson Medical B.V.
Johnson & Johnson Medical Devices &
Diagnostics Group - Latin America,
L.L.C.
Johnson & Johnson Medical GmbH
Johnson & Johnson Medical Greece
Single Member S.A.
Johnson & Johnson Medical Korea Ltd.
Johnson & Johnson Medical Limited

Johnson & Johnson Medical Mexico,
S.A. de C.V.
Johnson & Johnson Medical NV
Johnson & Johnson Medical
Products GmbH
Johnson & Johnson Medical Pty Ltd
Johnson & Johnson Medical S.A.
Johnson & Johnson Medical S.p.A.
Johnson & Johnson Medical SAS
Johnson & Johnson Medical
Saudi Arabia Limited
Johnson & Johnson Medical Taiwan Ltd.
Johnson & Johnson Medical, S.C.S.
Johnson & Johnson Medikal Sanayi ve
Ticaret Limited Sirketi
Johnson & Johnson MedTech
(Thailand) Ltd.
Johnson & Johnson Medtech
Colombia S.A.S.
Johnson & Johnson Middle East FZ-LLC
Johnson & Johnson Morocco
Societe Anonyme
Johnson & Johnson Nordic AB
Johnson & Johnson Pacific Pty Limited
Johnson & Johnson Pakistan
(Private) Limited
Johnson & Johnson Panama, S.A.
Johnson & Johnson Personal Care
(Chile) S.A.
Johnson & Johnson Pharmaceutical Ltd.
Johnson & Johnson Poland Sp. z o.o.
Johnson & Johnson Private Limited
Johnson & Johnson Pte. Ltd.
Johnson & Johnson Pty. Limited
Johnson & Johnson Romania S.R.L.
Johnson & Johnson S.E. d.o.o.
Johnson & Johnson S.E., Inc.
Johnson & Johnson Sante Beaute France
Johnson & Johnson SDN. BHD.
Johnson & Johnson Services, Inc.
Johnson & Johnson Surgical Vision India
Private Limited
Johnson & Johnson Surgical Vision, Inc.
Johnson & Johnson Taiwan Ltd.
Johnson & Johnson UK Treasury
Company Limited

Johnson & Johnson Ukraine LLC

Johnson & Johnson Urban
　　Renewal Associates

Johnson & Johnson Vision Care
　　(Australia) Pty Ltd

Johnson & Johnson Vision Care
　　(Shanghai) Ltd.

Johnson & Johnson Vision Care Ireland
　　Unlimited Company

Johnson & Johnson Vision Care, Inc.

Johnson & Johnson Vision Korea, Ltd.

Johnson & Johnson, Lda

Johnson & Johnson, S.A.

Johnson & Johnson, S.A. de C.V.

Johnson & Johnson, s.r.o.

Johnson & Johnson, s.r.o.

Johnson and Johnson (Proprietary) Limited

Johnson and Johnson Sihhi Malzeme Sanayi
　　Ve Ticaret Limited Sirketi

Johnson Y Johnson de Costa Rica, S.A.

JOM Pharmaceutical Services, Inc.

Kenvue Inc.

La Concha Land Investment Corporation

McNeil AB

McNeil Consumer Pharmaceuticals Co.

McNeil Denmark ApS

McNeil Healthcare (Ireland) Limited

McNeil Healthcare (UK) Limited

McNeil Healthcare LLC

McNeil Iberica S.L.U.

McNeil LA LLC

McNEIL MMP, LLC

McNeil Nutritionals, LLC

McNeil Panama, LLC

McNeil Products Limited

McNeil Sweden AB

Medical Device Business Services, Inc.

Medical Devices & Diagnostics
　　Global Services, LLC

Medical Devices International LLC

Medos International Sarl

Medos Sarl

MegaDyne Medical Products, Inc.

Menlo Care De Mexico, S.A. de C.V.

Mentor B.V.

Mentor Deutschland GmbH

Mentor Medical Systems B.V.

Mentor Partnership Holding
　　Company I, LLC

Mentor Texas GP LLC

Mentor Texas L.P.

Mentor Worldwide LLC

Middlesex Assurance Company Limited

Momenta Ireland Limited

Momenta Pharmaceuticals, Inc.

NeoStrata Company, Inc.

NeoStrata UG (haftungsbeschränkt)

Netherlands Holding Company

Neuravi Limited

NeuWave Medical, Inc.

Novira Therapeutics, LLC

NuVera Medical, Inc.

Obtech Medical Mexico, S.A. de C.V.

OBTECH Medical Sarl

OGX Beauty Limited

OMJ Holding GmbH

OMJ Pharmaceuticals, Inc.

Omrix Biopharmaceuticals Ltd.

Omrix Biopharmaceuticals NV

Omrix Biopharmaceuticals, Inc.

Ortho Biologics LLC

Ortho Biotech Holding LLC

Orthospin Ltd.

Orthotaxy SAS

Patriot Pharmaceuticals, LLC

Peninsula Pharmaceuticals, LLC

Percivia LLC

Pharmadirect Ltd.

Pharmedica Laboratories
　　(Proprietary) Limited

preCARDIA, Inc.

Princeton Laboratories, Inc.

Productos de Cuidado Personal y
　　de La Salud de Bolivia S.R.L.

Proleader S.A.

Prosidyan, Inc.

PT Integrated Healthcare Indonesia

PT Johnson & Johnson Indonesia

PT Johnson and Johnson Indonesia Two

Pulsar Vascular, Inc.

Regency Urban Renewal Associates

RespiVert Ltd.

Review Manager Test Entity 2
Royalty A&M LLC
Rutan Realty LLC
Scios LLC
Serhum S.A. de C.V.
Shanghai Elsker Mother & Baby Co., Ltd
Shanghai Johnson & Johnson Ltd.
Shanghai Johnson & Johnson
    Pharmaceuticals Ltd.
Sodiac ESV
Spectrum Vision Limited Liability Company
Spectrum Vision Limited Liability
    Partnership
SterilMed, Inc.
Surgical Process Institute
    Deutschland GmbH
Synthes Costa Rica S.C.R., Limitada
SYNTHES GmbH
Synthes GmbH
Synthes Holding AG
Synthes Holding Limited
SYNTHES Medical Immobilien GmbH
Synthes Medical Surgical Equipment &
    Instruments Trading LLC
Synthes Produktions GmbH
Synthes Proprietary Limited
Synthes S.M.P., S. de R.L. de C.V.
Synthes Tuttlingen GmbH
Synthes USA Products, LLC
Synthes USA, LLC
Synthes, Inc.
TARIS Biomedical LLC
TearScience, Inc.
The Anspach Effort, LLC
The Vision Care Institute, LLC
Tibotec, LLC
Torax Medical, Inc.
UAB "Johnson & Johnson"
Vania Expansion
Verb Surgical Inc.
Vision Care Finance Unlimited Company
Vogue International LLC
WH4110 Development Company, L.L.C.
Xian Janssen Pharmaceutical Ltd.
XO1 Limited
Zarbee's, Inc.

**Managers and Officers of the Debtor**
John Kim
Richard Dickinson
Robert Wuesthoff
Russell Deyo

**Major Current Business Affiliations of Debtor's Managers**
American Foundation for Opioid
    Alternatives
Migration Policy Institute
Miller Center for Community Protection &
    Reliance, Eagleton Institute of Politics,
    Rutgers University
National Center for State Courts
National Council, McLean Hospital
One Mind

**Depository and Disbursement Banks**
Bank of America, N.A.

**Major Sureties**
Chubb
Federal Insurance Company
Liberty Mutual Insurance Company
Travelers Casualty and Surety Company
    of America

**Parties to Material Contracts With the Debtor**
Johnson & Johnson
Johnson & Johnson Holdco (NA) Inc.
Johnson & Johnson Services, Inc.

**Significant Co-Defendants in Talc-Related Litigation**
3M Company
A.O. Smith Corporation
Albertsons Companies, Inc.
Avon Products, Inc.
Barretts Minerals, Inc.
BASF Catalysts LLC
Block Drug Company, Inc.
Borg Warner Morse Tec, Inc.
Brenntag North America
Brenntag Specialties, Inc.

Bristol-Myers Squibb Company
Carrier Corporation
Chanel, Inc.
Charles B. Chrystal Co., Inc.
Chattem, Inc.
Colgate-Palmolive Company
Conopco Inc.
Costco Wholesale Corporation
Coty, Inc.
Crane Co.
CVS Health Corporation
CVS Pharmacy, Inc.
Cyprus Amax Minerals Company
Cyprus Mines Corporation
Dana Companies, LLC
DAP Products, Inc.
Dollar General Corporation
Duane Reade Inc.
Eaton Corporation
Eli Lilly and Company
Elizabeth Arden, Inc.
Estee Lauder Inc.
Family Dollar Stores Inc.
Flowserve US, Inc.
FMC Corporation
Food 4 Less of California, Inc.
Ford Motor Company
Foster Wheeler, LLC
Gardner Denver, Inc.
General Electric Company
Genuine Parts Company
Goodyear Tire & Rubber Co.
Goulds Pumps, LLC
Grinnell LLC
Honeywell International, Inc.
Imerys Talc America, Inc.
Imerys USA, Inc.
IMO Industries Inc.
John Crane, Inc.
K&B Louisiana Corporation
Kaiser Gypsum Company, Inc.
Kmart Corporation
Kolmar Laboratories
Longs Drug Stores California
L'Oreal USA, Inc.
Lucky Stores, Inc.

Macy's, Inc.
Mary Kay Inc.
Maybelline LLC
Metropolitan Life Insurance Company
Noxell Corporation
Personal Care Products Council
Pfizer, Inc.
Pharma Tech Industries, Inc.
Pneumo Abex, LLC
PTI Royston, LLC
Publix Super Markets, Inc.
R.T. Vanderbilt Holding Company, Inc.
Ralphs Grocery Company
Revlon Consumer Products Corporation
Revlon, Inc.
Rite Aid Corporation
Safeway, Inc.
Sanofi-Aventis U.S. LLC
Shulton, Inc.
Specialty Minerals Inc.
Target Corporation
The Dow Chemical Company
The Estee Lauder Companies, Inc.
The Kroger Co.
The Procter & Gamble Company
Thrifty Payless, Inc.
Unilever Home & Personal Care USA
Union Carbide Corporation
Vanderbilt Minerals, Inc.
ViacomCBS, Inc.
Walgreen Co.
Walmart, Inc.
Warren Pumps, LLC
Whittaker Clark & Daniels, Inc.
Wyeth Holdings LLC
Yves Saint Laurent America, Inc.

**Debtor's Proposed Professionals and
Claims Agent**
AlixPartners LLP
Bates White LLC
Blake, Cassels & Graydon LLP
Epiq Corporate Restructuring LLC
Hogan Lovells
Jones Day
King & Spalding LLP

McCarter & English, LLP
Orrick, Herrington, & Sutcliffe, LLP
Shook, Hardy & Bacon L.L.P.
Skadden, Arps, Slate, Meager & Flom LLP
Weil Gotshal & Manges LLP
Wollmuth Maher & Deutsch LLP

**Debtor's Proposed Significant Ordinary Course Professionals, Consultants and Service Providers**
Adler Pollock & Sheehan PC
Barrasso Usdin Kupperman
Freeman & Sarver, L.L.C.
Blank Rome LLP
Butler Snow LLP
Carlton Fields, P.A.
Chehardy, Sherman, Williams,
    Recile, & Hayes
Damon Key Leong Kupchak Hastert
Davis Hatley Haffeman & Tighe
Dechert LLP
Elliott Law Offices, PA
Faegre Drinker Biddle & Reath LLP
Foliart, Huff, Ottaway & Bottom
Gibson, Dunn & Crutcher LLP
Goldman Ismail Tomaselli Brennan &
    Baum
Hartline Barger
HeplerBroom LLC
Irwin Fritchie Urquhart & Moore LLC
Johnson & Bell Ltd.
Jones, Skelton & Hochuli, P.L.C.
Kaplan, Johnson, Abate & Bird LLP
Kelley Jasons McGowan Spinelli
Hanna & Reber, LLP
Kirkland & Ellis LLP
Kitch Drutchas Wagner
Valitutti & Sherbrook
Lewis Brisbois Bisgaard & Smith, LLP
Manion Gaynor & Manning LLP
Manning Gross + Massenburg
Miles & Stockbridge
Milligan & Herns
Morgan Lewis
Nelson Mullins Riley & Scarborough, LLP
Nutter McClennen & Fish LLP

Patterson Belknap Webb & Tyler LLP
Proskauer Rose LLP
Quattlebaum, Grooms & Tull PLLC
Schnader Harrison Segal & Lewis
Schwabe Williamson & Wyatt
Sills Cummis & Gross P.C.
Stoel Rives LLP
Sullivan Whitehead & Deluca LLP
Swartz Campbell LLC
The Weinhardt Law Firm
Tucker Ellis LLP
Willcox & Savage, P.C.

**Known Professionals for Certain Non-Debtor Parties in Interest**
Barnes & Thornburg, LLP
Cravath, Swaine & Moore
White & Case LLP

**Proposed Future Claimants' Representative and Her Proposed Professional**
Randi S. Ellis
Walsh Pizzi O'Reilly Falanga LLP

**Material Potentially Indemnified Parties**
Bausch Health Companies Inc.
Cyprus Mines Corporation
Cyprus Talc Corp.
Imerys Talc America, Inc.
Imerys Talc Vermont, Inc.
Luzenac America, Inc.
Pharma Tech Industries, Inc.
PTI Royston, LLC
Rio Tinto America, Inc.
RTZ America, Inc.
Valeant Pharmaceuticals International, Inc.
Windsor Minerals Inc.
Costco Wholesale Corporation
Publix Super Markets, Inc.
Rite Aid Corporation
Safeway Inc.
Walmart Inc.

## Parties Who Have Entered Into Plan Support Agreements

Andres Pereira Firm
Ferrer, Poirot & Wansbrough
Johnson Law Group
Liakos Law, APC
Linville Law Group
McDonald Worley
Nachawati Law Group
OnderLaw, LLC
Pulaski Kherkher PLLC
Rueb Stoller Daniel, LLP
Seeger Weiss LLP
Slater Slater Schulman LLP
Trammell PC
Watts Guerra LLP
Wisner Baum, LLP

## Law Firms with Significant Representations of Talc Claimants

Andres Pereira Firm
Arnold & Itkin LLP
Aylstock, Witkin, Kreis & Overholtz, PLLC
Beasley Allen Law Firm
Childers, Schlueter & Smith LLC
Ferrer, Poirot & Wansbrough
Johnson Law Group
Linville Law Group
McDonald Worley
Miller Firm, LLC
Nachawati Law Group
Napoli Shkolnik PLLC
OnderLaw, LLC
Pulaski Kherkher PLLC
Robinson Calcagnie
Rueb Stoller Daniel, LLP
Sanders, Phillips, Grossman, LLC
Seeger Weiss LLP
Slater Slater Schulman LLP
Trammell PC
Wagstaff Law Firm
Watts Guerra LLP
Wisner Baum, LLP

## Key Parties in *Imerys Talc America, Inc. and Cyprus Mines Corp.* Chapter 11 Cases

Cyprus Amax Minerals Company
Cyprus Mines Corporation
Cyprus Talc Corporation
Imerys S.A.
Imerys Talc America, Inc.
Imerys Talc Vermont, Inc.
   (fka Windsor Minerals Inc.)
James L. Patton
Luzenac America, Inc.
Official Committee of Tort Claimants
   (*In re Imerys Talc America, Inc.*)
Official Committee of Tort Claimants
   (*In re Cyprus Mines Corp.*)
Roger Frankel

## Debtor's Insurers

A.G. Securitas
ACE Property & Casualty Insurance Company
Aetna Casualty and Surety Company
Affiliated FM Ins. Company
AIG Europe S.A.
AIG Property and Casualty Company
AIU Ins. Company
Allianz Global Risks US Insurance Company
Allianz Ins. Company
Allstate Insurance Company
American Centennial Ins. Company
American Motorists Ins. Company
American Re-Insurance Company
Arrowood Indemnity Company
ASR Schadeverzekering N.V.
Assurances Generales De France
Assurantiekantoor VanWijk & Co.
Atlanta International Insurance Company, n/k/a Wellfleet New York Insurance Company
Birmingham Fire Ins. Company of Pennsylvania
Central National Ins. Company of Omaha
Century Indemnity Company
Champion Dyeing Allocation Year
Chubb

City Ins. Company
Colonia Versicherungs AG, Koln
Company of N.Y.
Continental Insurance Company
Darag Deutsche Versicherungs-Und
Drake Ins. Company of New York
Employers Ins. Company of Wausau
Employers Ins. of Wausau
Employers Mutual Casualty Company
Eurinco Allgemeine
Everest Reinsurance Company
Fireman's Fund Ins. Company
First State Ins. Company
GAP
Gibraltar Casualty Company
Granite State Ins. Company
Great American
Great Northern Ins. Company
Great Southwest Fire Ins. Company
Groupe Drouot
Harbor Ins. Company
Hartford Accident and Indemnity Company
Home Ins. Company
Ideal Mutual Ins. Company
Industrial Indemnity Company
Ins. Company of North America
Ins. Company of the State of Pennsylvania
Ins. Corporation of Singapore Limited
Integrity Ins. Company
International Ins. Company
International Surplus Lines Ins. Company
Lexington Ins. Company
London Guarantee and Accident
L'Union Atlantique S.A. d'Assurances
Maas Lloyd
Mead Reinsurance Corporation
Middlesex Assurance Company
Midland Ins. Company
Midstates Reinsurance Corp.
Mission Ins. Company
Mission National Ins. Company
Munich Reinsurance America, Inc.
Mutual Fire, Marine, & Inland Ins.
    Company
N.V. De Ark
N.V. Rotterdamse Assurantiekas

N.V. Schadeverzekeringsmaatschappij
National Casualty Company
National Union Fire Ins. Company of
    Pittsburgh, PA
Nationwide
New Hampshire Ins. Company
North River Ins. Company
Northbrook Excess and Surplus
    Ins. Company
Northeastern Fire Ins. Company
    of Pennsylvania
Pacific Employers Ins. Company
ProSight
Prudential Reinsurance Company
Puritan Insurance Company
Republic Indemnity Company of America
Republic Ins. Company
Republic Western Ins. Company
Repwest Insurance Company
Resolute Management Inc.
Rheinland Versicherungen
Rheinland Verzekeringen
Riverstone Insurers
Royal Belge I.R., S.A. d'Assurances
Royal Indemnity Company
Royal Ins. Company
Rückversicherungs-AG
Safety Mutual Casualty Corporation
Safety National Casualty Corporation
Seguros La Republica SA
Sentry Insurance A Mutual Company
Southern American Ins. Company
Starr Indemnity & Liability Company
TIG Insurance Company
Transamerica Premier Insurance Company
Transit Casualty Company
Travelers Casualty and Surety Company
UAP
Union Atlantique d'Assurances S.A.
Union Indemnity Ins. Company
    of New York
Versicherungs AG, Dusseldorf
Westchester Fire Insurance Company
Westport Insurance Corporation
XL Ins. Company

11

**Potential Parties in Canadian Proceeding**
Cassels Brock & Blackwell LLP
Ernst & Young Inc.

**States/Federal District With Consumer Protection Investigations/Actions**
Alabama
Alaska
Arkansas
Arizona
Colorado
Connecticut
Delaware
Florida
Georgia
Hawaii
Idaho
Illinois
Iowa
Kansas
Kentucky
Maine
Maryland
Massachusetts
Michigan
Minnesota
Mississippi
Montana
Nebraska
Nevada
New Hampshire
New Jersey
New Mexico
New York
North Carolina
North Dakota
Ohio
Oklahoma
Oregon
Rhode Island
South Dakota
Texas
Utah
Vermont

Virginia
Washington
Washington, D.C.
West Virginia
Wisconsin

**The Office of the United States Trustee – Region 3 – District of New Jersey**
Adam Shaarawy
Adela Alfaro
Alexandria Nikolinos
Angeliza Ortiz-Ng
Daniel C. Kropiewnicki
David Gerardi
Fran B. Steele
Francyne D. Arendas
James Stives
Jeffrey Sponder
Joseph C. Kern
Kirsten K. Ardelean
Lauren Bielskie
Maggie McGee
Martha Hildebrandt
Michael Artis
Neidy Fuentes
Peter J. D'Auria
Robert J. Schneider, Jr.
Tia Green
Tina L. Oppelt
William J. Ziemer

**Bankruptcy Judges for the District of New Jersey**
Judge Andrew B. Altenburg, Jr.
Judge Christine M. Gravelle
Judge Jerrold N. Poslusny, Jr.
Judge John K. Sherwood
Judge Kathryn C. Ferguson
Judge Michael B. Kaplan
Judge Rosemary Gambardella
Judge Stacey L. Meisel
Judge Vincent F. Papalia

**Bankruptcy Rule 2002 Appearances**[1]

AIG Europe S.A. (as successor in interest to
Union Atlantique d'Assurances S.A.)
AIG Europe S.A.,
AIG Property Casualty Company
AIG Property Casualty Company (f/k/a
Birmingham Fire Insurance Company of
Pennsylvania)
Aishia Landrum
AIU Insurance Company
Albertsons Companies, Inc..
April Fair
Archer & Greiner, P.C
Arnold & Itkin LLP
ASR Schadeverzekering N.V.
ASR Schadeverzekering N.V. (as successor
in interest to Assurantiekoor Van Wijk &
Co.)
Atlanta International Insurance Company
Atlanta International Insurance Company
Bausch Health Americas, Inc. f/k/a Valeant
Pharmaceuticals International
Bausch Health Companies Inc. f/k/a Valeant
Pharmaceuticals International, Inc.
Bausch Health US, LLC f/k/a Valeant
Pharmaceuticals North America LLC
BCBS of Massachusetts
Blue Cross Blue Shield of Massachusetts
Brown Rudnick LLP (Ad Hoc Committee of
Certain Talc Claimants.)
Catherine Forbes, individually and as
personal representative of the Estate of
Kimberly Naranjo
Certain Plaintiffs Represented by Maune
Raichle Hartley French & Mudd LLC
Counsel for Atlanta International Insurance
Company (as successor in interest to Drake
Insurance Company)
Counsel to DeSanto Canadian Class Action
Creditors
Cyprus Mines Corporation
Employers Insurance Company of Wausau

Estate of Melissa Fleming
Genova Burns LLC
Gimigliano Maurielo & Maloney (Travelers
Casualty and Surety Company) (f/k/a the
Aetna Casualty and Surety Company)
Granite State Insurance Company
Katherine Tollefson
Kellie Brewer
Kristie Doyle
Law Offices Of Mitchell J. Malzberg, LLC
Levy Konigberg, LLP
Lex Nova Law LLC
Lexington Insurance Company
Motley Rice
N.V. Schadeverzekeringsmaatschappij Maas
Lloyd
N.V. Schadeverzekeringsmaatschappij Maas
Lloyd (individually & as successor in
interest to policies subscribed in favor of
Johnson & Johnson by N.V. Rotterdamse
Assurantiekas, n/k/a De Ark)
National Casualty Company
National Union Fire Insurance Company of
Pittsburgh, Pa.
New Hampshire Insurance Company
New Jersey Coverage Action Plaintiff-
Insurers
Otterbourg P.C
Pachulski Stang Ziehl & Jones LLP
Pashman Stein Walder Hayden, P.C
(Counsel to Various Talc Personal Injury
Claimants)
Patricia Cook
Paul Crouch
Philadelphia, Granite State Insurance
Company
Randy Derouen
Rebecca Love
Republic Indemnity Company of America
RheinLand Versicherungen
RheinLand Versicherungen (as successor in
interest only to the subscriptions of the

---

[1]    Where a Bankruptcy Rule 2002 appearance was filed by counsel on behalf of clients, the clients have been listed
herein to the extent identified and where certain clients have not been identified, the filing counsel is listed, to the
extent not otherwise listed herein.

former Dutch company Rheinland
Verzekeringen)

RheinLand Versicherungen, N.V.
Schadeverzekeringsmaatschappij Maas
Lloyd
Robert Gendelman, Executor of the Estate
of Sherri Gendelman, and Robert
Gendelman, in the New Jersey MDL
Roger Frankel, as the Future Claimants
Representative in the Cyprus Mines Chapter
11 Case
Ross Feller Casey, LLP
Saiber LLC (Local Counsel for Various Talc
Claimants)
Simon Greenstone Panatier, PC (Attorneys
for Various Mesothelioma Talc Claimants)
Simpson Thacher & Bartlett LLP (Travelers
Casualty and Surety Company (f/k/a the
Aetna Casualty and Surety Company).
Skadden, Arps, Slate, Meagher & Flom LLP
Starr Indemnity & Liability Company
Starr Indemnity & Liability Company (as
successor in interest to Republic Insurance
Company)
State of New Mexico
State of Mississippi
State of Texas, by and through the Office of
the Attorney General of Texas
The Blue Cross Blue Shield Association
The Continental Insurance Company
The Continental Insurance Company, as
successor in interest to Harbor Insurance
Company and London Guarantee and
Accident Company of New York
The Insurance Company of the State of
Pennsylvania
The Insurance Company of the State of
Pennsylvania, Philadelphia
The North River Insurance Company
The Shapiro Law Firm
Tonya Whetsel
Travelers Casualty and Surety Company
(f/k/a The Aetna Casualty and Surety
Company).
Trif & Modugno LLC

Various Mesothelioma Talc Claimants
Represented by Simon Greenstone Panatier
PC.
Watts and Guerra LLC (Counsel to Various
Talc Personal Injury Claimants)
White & Case LLP for & on behalf of
Johnson & Johnson and Johnson & Johnson
Holdco (NA)
William A. Henry
Womble Bond Dickinson (US) LLP (on
behalf of The Ad Hoc Committee of States
Holding Consumer Protection Claims)

**Debtor's Top 20 Unsecured Creditors**
Albert Schwenk c/o Bailey Cowan
Heckaman PLLC
Anderson Kill P.C.
Ashley Schmitz c/o Kazan, McClain,
Satterley & Greenwood
Berkeley Research Group LLC
Bernstein Shur Sawyer & Nelson P.A.
Brown Rudnick LLP
Cassels Brock and Blackwell LLP
Christina Prudencio c/o Kazan, McClain,
Satterley & Greenwood
CRA International, Inc.
Douglas Barden1 c/o Levy Konigsberg, LLP
FTI Consulting, Inc.
Genova Burns LLP
Houlihan Lokey Capital, Inc.
Lighthouse Technologies, Inc.
Massey & Gail LLP
Miller Thomson LLP
MoloLamken LLP
Otterbourg PC
Shawn Johnson c/o Weitz & Luxenberg
Walsh Pizzi O'Reilly Falanga LLP

**SCHEDULE 2**

**Disclosure Schedule**

Weil currently represents and formerly represented, in matters unrelated to this Chapter 11 Case, the following persons connected with the Debtor or parties in interest identified by the Debtor, based upon the list of parties in interest provided to Weil by electronic mail on April 6, 2023 and April 26, 2023, the list of parties who have filed a notice of appearance pursuant to Fed. R. Bankr. P. 2002, and the Debtor's list of its 20 largest non-insider unsecured creditors [Dkt. 207]:

| Matched Entity | Relationship to Debtor | Relationship to Weil |
|---|---|---|
| AIG Europe S.A.<br><br>AIG Property and Casualty Company<br><br>AIG Property Casualty Company (f/k/a Birmingham Fire Insurance Company of Pennsylvania)<br><br>AIU Insurance Company<br><br>Granite State Ins. Company<br><br>Lexington Ins. Company<br><br>New Hampshire Ins. Company<br><br>Ins. Company of the State of Pennsylvania<br><br>The Insurance Company of the State of Pennsylvania, Philadelphia<br><br>The Insurance Company of the State of Pennsylvania | Debtor's Insurers<br><br>Bankruptcy Rule 2002 Appearances | **Affiliate or Subsidiary of Current Client**<br><br>**Affiliate or Subsidiary of Former Client**<br><br>**Related to Current Client** |
| AlixPartners LLP | Debtor's Proposed Professionals and Claims Agent | **Current Client** |
| Bank of America, N.A. | Depository and Disbursement Banks | **Former Client**<br><br>**Affiliate or Subsidiary of Current Client**<br><br>**Current Client or Affiliate or Subsidiary of Current Client**<br><br>**Related to Current Client** |
| BASF Catalysts LLC | Significant Co-Defendants in Talc-Related Litigation | **Affiliate or Subsidiary of Current Client** |

| Matched Entity | Relationship to Debtors | Relationship to Weil |
|---|---|---|
| Chattem, Inc. | Significant Co-Defendants in Talc-Related Litigation | **Related to Current Client** |
| Continental Insurance Company (the), as successor in interest to Harbor Insurance Company and London Guarantee and Accident Company of New York | Debtor's Insurers<br><br>Bankruptcy Rule 2002 Appearances | **Affiliate or Subsidiary of Current Client** |
| Dow Chemical Company (the) | Significant Co-Defendants in Talc-Related Litigation | **Current Client**<br><br>**Related to Current Client** |
| Eli Lilly and Company | Significant Co-Defendants in Talc-Related Litigation | **Current Client** |
| Epiq Corporate Restructuring LLC | Debtor's Proposed Professionals and Claims Agent | **Affiliate or Subsidiary of Current Client**<br><br>**Related to Current Client** |
| Ernst & Young Inc. | Potential Parties in Canadian Proceedings | **Affiliate or Subsidiary of Current Client**<br><br>**Affiliate or Subsidiary of Former Client** |
| Estee Lauder Inc.<br><br>The Estee Lauder Companies, Inc. | Significant Co-Defendants in Talc-Related Litigation | **Current Client** |
| Faegre Drinker Biddle & Reath LLP | Debtor's Proposed Significant Ordinary Course Professionals, Consultants and Service Providers | **Related to Former Client** |
| First State Ins. Company | Debtor's Insurers | **Affiliate or Subsidiary of Current Client** |
| FTI Consulting, Inc. | Debtor's Top 20 Unsecured Creditors | **Current Client** |
| General Electric Company | Significant Co-Defendants in Talc-Related Litigation | **Current Client** |
| Hartford Accident and Indemnity Company | Debtor's Insurers | **Affiliate or Subsidiary of Current Client** |

| Matched Entity | Relationship to Debtors | Relationship to Weil |
|---|---|---|
| | | |
| Honeywell International, Inc. | Significant Co-Defendants in Talc-Related Litigation | **Related to Current Client** |
| Kmart Corporation | Significant Co-Defendants in Talc-Related Litigation | **Current Client** |
| Kroger Co. (The) | Significant Co-Defendants in Talc-Related Litigation | **Current Client** |
| L'Oreal USA, Inc. | Significant Co-Defendants in Talc-Related Litigation | **Current Client** |
| National Union Fire Ins. Company of Pittsburgh, P.A. | Debtor's Insurers<br><br>Bankruptcy Rule 2002 Appearances | **Current Client** |
| New York | States/Federal District with Consumer Protection Investigations/Actions | **Affiliate or Subsidiary of Former Client** |
| Pfizer, Inc. | Significant Co-Defendants in Talc-Related Litigation | **Related to Former Client** |
| Procter & Gamble Company (The) | Significant Co-Defendants in Talc-Related Litigation | **Current Client** |
| ProSight | Debtor's Insurers | **Related to Current Client** |
| Sanofi-Aventis U.S. LLC | Significant Co-Defendants in Talc-Related Litigation | **Affiliate or Subsidiary of Current Client** |
| Target Corporation | Significant Co-Defendants in Talc-Related Litigation | **Current Client** |
| ViacomCBS, Inc. | Significant Co-Defendants in Talc-Related Litigation | **Affiliate or Subsidiary of Current Client**<br><br>**Affiliate or Subsidiary of Former Client** |
| Walgreen Co. | Significant Co-Defendants in Talc-Related Litigation | **Affiliate or Subsidiary of Current Client** |
| Walmart, Inc. | Significant Co-Defendants in Talc-Related Litigation | **Current Client** |

| Matched Entity | Relationship to Debtors | Relationship to Weil |
|:---:|:---:|:---:|
| Walmart Inc. | Material Potentially Indemnified Parties | |