**EXHIBIT A**

**Engagement Letter**

# AlixPartners

Mr. John J. Kim  
Chief Legal Officer  
LTL Management LLC  
501 George Street  
New Brunswick, NJ 08933  

April 5, 2023

**Re:   Agreement for Financial Advisory and Consulting Services**

Dear Mr. Kim:

This letter, together with the attached Schedules and General Terms and Conditions, sets forth the agreement ("Agreement") between AlixPartners, LLP ("AlixPartners") and LTL Management LLC and certain of its affiliates and subsidiaries (the "Company") for the engagement of AlixPartners to provide consulting services to the Company.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedules and General Terms and Conditions. The Company and AlixPartners are each a "party," and together the "parties."

AlixPartners understands that the Company commenced a new reorganization case (the "Bankruptcy Case") under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on April 4, 2023 (the "Petition Date") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

**Objectives and Tasks**

The responsibilities of AlixPartners will be as follows:

- Assist in coordinating and providing administrative support in connection with the Bankruptcy Case and developing the Company's Plan of Reorganization or other appropriate Bankruptcy Case resolution, if necessary.

- Assist with the preparation of the Company's statement of financial affairs, schedules of assets and liabilities and other regular reports required by an order of the Bankruptcy Court, the Bankruptcy Code or other applicable rules or guidelines, and provide assistance with testimony before the Bankruptcy Court on matters that are within AlixPartners' areas of expertise.

- Assist in obtaining and responding to due diligence requests of the Company's professionals and other parties in interest in the Bankruptcy Case including official committees and claimant representatives appointed by the Bankruptcy Court, and the Bankruptcy Court itself.

- Provide assistance as requested by management in connection with the Company's development of any forecasts as may be required, including by creditor constituencies in the Bankruptcy Case or by the Company for other corporate purposes.

- Assist as requested in managing any litigation support that may be brought against the Company in the Bankruptcy Court where appropriate.

- Assist as requested in managing any claims resolution process.

**AlixPartners**

LTL Management LLC
Page 2 of 10

- Assist with such other matters as may be requested that fall within AlixPartners' expertise and that are mutually agreeable.

**Staffing**

John Castellano will be the partner and managing director responsible for the overall engagement, assisted by a staff of consultants at various levels who have a wide range of skills and abilities related to this type of assignment. In addition, AlixPartners has relationships with, and may periodically use, independent contractors with specialized skills and abilities to assist in this engagement.

We will periodically review the staffing levels to determine the proper mix for this assignment. We will only use the necessary staff required to complete the requested or planned tasks.

**Timing and Fees**

AlixPartners commenced this engagement on the Petition Date, pending receipt of a copy of the executed Agreement.

The Company will promptly apply to the Bankruptcy Court to obtain approval of AlixPartners' retention, and the application of the Retainer effective as of the Petition Date. AlixPartners acknowledges that its retention and the terms thereof are subject to Bankruptcy Court approval.

The Company shall compensate AlixPartners for its services, and reimburse AlixPartners for expenses, as set forth on Schedule 1.

Exhibit A    Page 4 of 12

**AlixPartners**

LTL Management LLC
Page 3 of 10

* * *

If these terms meet with your approval, please sign and return a copy of this Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP

*John R. Castellano*

John Castellano
Partner & Managing Director

Acknowledged and Agreed to:

LTL MANAGEMENT LLC

By:

Its:

Dated:

**AlixPartners**

LTL Management LLC
Page 3 of 10

\* \* \*

If these terms meet with your approval, please sign and return a copy of this Agreement.

We look forward to working with you.

Sincerely yours,

ALIXPARTNERS, LLP



John Castellano
Partner & Managing Director

Acknowledged and Agreed to:

LTL MANAGEMENT LLC

By: *[signature]*

Its: Chief Legal Officer

Dated: 5/4/23

**AlixPartners**

## Schedule 1

### Fees and Expenses

1. **Fees:** AlixPartners' fees will be based on the actual hours spent by AlixPartners personnel at AlixPartners' standard hourly rates, which are:

   | | |
   |---|---|
   | Partner & Managing Director | US $1,140 – US $1,400 |
   | Partner | US $1,115 |
   | Director | US $880 – US $1,070 |
   | Senior Vice President | US $735 – US $860 |
   | Vice President | US $585 – US $725 |
   | Consultant | US $215 – US $565 |
   | Paraprofessional | US $360 – US $380 |

   AlixPartners generally reviews and revises its billing rates semi-annually.

2. **Success Fee:** AlixPartners does not seek a success fee in connection with this engagement.

3. **Retainer:** Following a reconciliation of estimated and actual payment amounts that were received prior to the commencement of the Bankruptcy Case and satisfied all outstanding amounts owed by the Debtor in the prior chapter 11 proceeding as well as any amounts incurred following the dismissal of that proceeding and prior to the commencement of the Bankruptcy Case, AlixPartners, in aggregate, holds $35,215.00 in advanced payments. This amount will be held as retainer (the "Retainer") and applied to future fees and expenses incurred in the Bankruptcy Case.

4. **Expenses:** In addition to the Fees set forth in this Schedule, the Company shall pay directly, or reimburse AlixPartners upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals.

5. **Payment:** Notwithstanding anything to the contrary in the General Terms and Conditions, AlixPartners acknowledges that payment of its professional fees and reimbursement of its expenses will be subject to compliance with sections 330 and 331 of the Bankruptcy Code, any order establishing procedures for interim compensation and reimbursement of expenses of retained professionals entered in the Bankruptcy Case, and any other relevant local rules, guidelines, or orders of the Bankruptcy Court.

![AlixPartners]

**Data Protection Schedule**

**Description of Transfer**

1. **Categories of Data Subjects**

   <u> X </u>  Employees / Members / Contractors of Data Controller

   <u>   </u>  Clients of Data Controller

   <u>   </u>  Other:

2. **Types of Personal Data**

   <u>   </u>  Background Check Data (Criminal History, Drug Test Results, References, etc.)

   <u>   </u>  Biometric Data (Facial Recognition, Fingerprints, Voice Recording, etc.)

   <u>   </u>  Browsing Data (Cookies, Website History, IP Address, etc.)

   <u> X </u>  Contact Information (Contact Details, Address, Email Address, Phone Numbers, etc.)

   <u>   </u>  Education and Skills (Academic Transcripts, Educational Degrees, Languages, Training, etc.)

   <u> X </u>  Employment Information (Compensation, Job Title, Personnel Number, Workers Comp, Office Location, etc.)

   <u>   </u>  Family Information (Children, Parents, etc.)

   <u> X </u>  Financial Personal Information (Bank Accounts, Credit Card Numbers, etc.)

   <u>   </u>  Genetic Information (Genetic Sequence)

   <u> X </u>  Government Identifiers (National Identification Number, SSN, Driving License, etc.)

   <u>   </u>  Personal Identifiers (Name, Age, Date of Birth, Race, Video/Photo, Signature, etc.)

   <u>   </u>  Professional Experience & Affiliations (Trade Union Membership, Qualifications/Certifications, etc.)

   <u>   </u>  Social Media Data (Social Media Accounts, Social Media History, etc.)

   <u> X </u>  Travel and Expense (Travel History, Expense Details, etc.)

   <u>   </u>  User Account Information (Account Age, Account Number, Account Password, etc.)

   <u>   </u>  Workplace Welfare (Harassment Reports, Disciplinary Action, etc.)

   <u>   </u>  Other:

3. **Frequency of Data Transfers**

   The frequency of the transfer will be continuous (multiple transfers).

4. **Processing by AlixPartners**

   4.1. <u>Nature of processing</u>: The nature of processing will include receiving, storing, analyzing, transmitting to appropriate parties, and disposing of Personal Data.

   4.2. <u>Purpose of the data transfer and further processing</u>: The purpose of processing is to provide the services described in the agreement above.

   4.3. <u>The period for which the personal data will be retained, or if the period is not known, the criteria used to determine the period</u>: AlixPartners will process Personal Data for the duration of the engagement.

   4.4. <u>Transfer to Sub-processors</u>: Sub-processors may process Personal Data for the duration of the engagement life cycle and for the purposes specified above. See https://www.alixpartners.com/policies/subprocessors/ for a list of sub-processors.

| AlixPartners, LLP |
| General Terms and Conditions |

These General Terms and Conditions ("Terms") are incorporated into the Agreement to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

**Section 1. Company Responsibilities**

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by AlixPartners in connection with this Agreement.

AlixPartners' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management.

**Section 2. Retainer, Billing, Payments, and Taxes**

**Retainer.** Invoices shall be offset against the Retainer as set forth on Schedule 1.

**Billing and Payments.** All payments to be made to AlixPartners shall be due and payable upon delivery of invoice via check or wire transfer to AlixPartners' bank account, as shown on the invoice. All amounts invoiced are based on services rendered and expenses incurred to date, and are not contingent upon future services or Work Product (as defined below), or the outcome of any case or matter. "Fees," as used in this Agreement, shall include all amounts payable by the Company to AlixPartners in accordance with Schedule 1, including any success fee or break fee, but excluding reimbursable expenses.

**Taxes.** AlixPartners' fees are exclusive of taxes or similar charges, which shall be the responsibility of the Company (other than taxes imposed on AlixPartners' income generally). If AlixPartners' fees are subject to any taxes, such as State sales tax, Goods and Services Tax/Harmonized Sales Tax or Value Added Tax, then AlixPartners will include such taxes on its invoices as separate line items.

**Section 3. Relationship of the Parties**

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, AlixPartners will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Employees of AlixPartners will not be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. AlixPartners will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business. Nothing in this Agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between AlixPartners and the Company.

AlixPartners is providing advisory and consulting services only, and will not make management decisions for the Company. While AlixPartners may from time to time suggest options that may be available to the Company, the ultimate decision as to such options rests with the Company, and AlixPartners makes no promise or guarantee about the outcome of the Company's matters.

AlixPartners is not an accounting firm and does not give accounting advice or guidance. While AlixPartners' work may involve analysis of accounting, business and other related records, this engagement does not constitute an audit in accordance with either generally accepted auditing standards or the standards of the Public Company Accounting Oversight Board or any other similar governing body.

AlixPartners is not authorized to practice law or provide legal advice. No services provided under this Agreement are intended to be, nor should be construed to be, legal services.

**Section 4. Confidentiality**

Each party shall use reasonable efforts, but in no event less effort than it would use to protect its own confidential information, to keep confidential all non-public confidential or proprietary information obtained from the other party during the performance of AlixPartners' services hereunder (the "Confidential Information"), and neither party will disclose any Confidential Information to any other person or entity. "Confidential Information" includes the terms of this Agreement, non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of either party, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, AlixPartners from making such disclosures of Confidential Information that AlixPartners reasonably believes are required by law or any regulatory requirement or authority to clear client conflicts. AlixPartners may also disclose Confidential Information to its partners, directors, officers, employees, independent contractors and agents who have a need to know the Confidential Information as it relates to the services being provided under this Agreement, provided AlixPartners is responsible for any breach of these confidentiality obligations by any such

| AlixPartners, LLP |
| --- |
| General Terms and Conditions |

parties. AlixPartners may make reasonable disclosures of Confidential Information to third parties, such as the Company's suppliers and/or vendors, in connection with the performance of AlixPartners' obligations and assignments hereunder, provided AlixPartners reasonably believes that such third party is bound by confidentiality obligations. In addition, AlixPartners will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company. The obligations of the parties under this Section 4 shall survive the end of any engagement between the parties for a period of three (3) years.

Work Product (as defined in Section 5) may contain AlixPartners proprietary information or other information that is deemed to be Confidential Information for purposes of this Agreement, and the parties may not want to make public. Therefore, the parties acknowledge and agree that (i) all information (written or oral), including advice and Work Product (as defined in Section 5), generated by AlixPartners in connection with this engagement is intended solely for the benefit and use of the Company in connection with this Agreement, and (ii) no such information shall be used for any other purpose or disseminated to any third parties, or, quoted or referred to with or without attribution to AlixPartners at any time in any manner or for any purpose without AlixPartners' prior approval (not to be unreasonably withheld or delayed), except as required by law. The Company may not rely on any draft or interim Work Product.

**Section 5. Intellectual Property**

All analyses, final reports, presentation materials, and other work product (other than any Engagement Tools, as defined below) that AlixPartners creates or develops specifically for the Company and delivers to the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Company Confidential Information as defined above. AlixPartners may retain copies of the Work Product and any Confidential Information necessary to support the Work Product subject to its confidentiality obligations in this Agreement.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, templates, models, utilities and other intellectual property that AlixPartners has created, acquired or developed or will create, acquire or develop (collectively, "Engagement Tools"), are, and shall be, the sole and exclusive property of AlixPartners. The Company shall not acquire any interest in the Engagement Tools other than a limited worldwide, perpetual, non-transferable license to use the Engagement Tools to the extent they are contained in the Work Product.

The Company acknowledges and agrees, except as otherwise set forth in this Agreement, that any Engagement Tools provided to the Company are provided "as is" and without any warranty or condition of any kind, express, implied or otherwise, including, implied warranties of merchantability or fitness for a particular purpose.

**Section 6. Framework of the Engagement**

The Company acknowledges that it is retaining AlixPartners solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

**Section 7. Indemnification and Other Matters**

The Company shall indemnify, hold harmless and defend AlixPartners and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "AlixPartners Parties") from and against all claims, liabilities, losses, expenses and damages, including reasonable legal fees and disbursements of counsel (collectively "Losses") arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement, other than Losses finally determined or otherwise agreed by the parties to be the direct result of gross negligence, fraud, willful misconduct, bad faith or self-dealing of any AlixPartners Party. The Company shall not be liable for indirect, special and consequential damages, lost profits, lost data, reputational damages, punitive damages or any other similar damages under any circumstances, even if the Company has been advised of the possibility of such damages. Any request for indemnification shall be subject to application to and approval of the Bankruptcy Court. If, in the opinion of counsel, representing more than one party in a matter subject to indemnification in this Section 7 creates a potential conflict of interest, the applicable AlixPartners Parties may engage separate counsel to represent them at the Company's expense.

AlixPartners shall indemnify, hold harmless and defend the Company and its affiliates and its and their partners, directors, officers, employees and agents (collectively, the "Company Parties") from and against all claims, liabilities, losses, expenses and damages arising out of or in connection with the engagement of AlixPartners that is the subject of the Agreement that are finally determined or otherwise agreed by the parties to be the direct result of (i) personal injury or damages to or losses of any equipment or other Company tangible personal property caused by AlixPartners in connection with this engagement, (ii) the gross negligence, bad faith, self-dealing, fraud or willful misconduct of any of the AlixPartners Parties, or (iii) any actual or alleged infringement, violation or misappropriation of the intellectual property rights of any third person in connection with the Work Product provided by AlixPartners.

The Company's indemnification obligations in this Section 7 shall be primary to, and without allocation against, any similar indemnification obligations that AlixPartners may offer to its personnel generally.

AlixPartners is not responsible for any third-party

**AlixPartners, LLP**
General Terms and Conditions

products or services separately procured by the Company. The Company's sole and exclusive rights and remedies with respect to any such third party products or services are against the third-party vendor and not against AlixPartners, whether or not AlixPartners is instrumental in procuring such third-party product or service.

**Section 8. Governing Law and Arbitration**

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof.

Notwithstanding the foregoing, either party may proceed directly to a court of competent jurisdiction to enforce the terms of this Agreement for any claim in connection with (i) the non-payment of Fees or expenses due under this Agreement, or (ii) the non-performance of obligations under Section 7. For the purposes of this paragraph, the parties expressly consent to the jurisdiction of all Federal and state courts located in New York, New York.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

**Section 9. Termination and Survival**

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination AlixPartners will be entitled to any Fees and expenses due under the provisions of the Agreement (for fixed fee engagements, fees will be pro rata based on the amount of time completed). Such payment obligation shall inure to the benefit of any successor or assignee of AlixPartners.

Additionally, unless the Agreement is terminated by the Company due to AlixPartners' material breach (and such material breach continues after 30 days' written notice thereof and opportunity to cure) AlixPartners shall remain entitled to the success fee(s), if any, that otherwise would be payable during the 12 months after the date of termination of the Agreement.

Sections 2, 4, 5, 7, 8, 9, 10, 11, 12, 13 and 14 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

**Section 10. Non-Solicitation of Employees**

The Company acknowledges and agrees AlixPartners has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the final invoice is rendered by AlixPartners with respect to this engagement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of AlixPartners' Partner & Managing Directors, Partners, Directors, or other employees/ contractors the Company or its affiliates had interactions with or gained knowledge about as a result of the services provided under this Agreement.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of AlixPartners' Partner & Managing Directors, Partners, Directors, or other employees/contractors in violation of the preceding paragraph, the Company agrees to pay to AlixPartners as liquidated damages and not as a penalty the sum total of: (i) for a Partner & Managing Director, $1,000,000; (ii) for a Partner or Director, $500,000; and (iii) for any other employee/contractor, $250,000. The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse AlixPartners for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that AlixPartners has made in its Partner & Managing Directors, Partners, Directors, and other employees/ consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The provisions of this Section shall apply except to the extent the provisions conflict with applicable law.

**Section 11. Limitation of Liability**

THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE TO THE COMPANY, OR ANY PARTY ASSERTING CLAIMS ON BEHALF OF THE COMPANY, EXCEPT FOR DIRECT DAMAGES FOUND IN A FINAL DETERMINATION TO BE THE DIRECT RESULT OF THE GROSS NEGLIGENCE, BAD FAITH, FRAUD, SELF-DEALING OR INTENTIONAL MISCONDUCT OF ALIXPARTNERS. THE ALIXPARTNERS PARTIES SHALL NOT BE LIABLE FOR INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES, LOST PROFITS, LOST DATA, REPUTATIONAL DAMAGES, PUNITIVE DAMAGES OR ANY OTHER SIMILAR DAMAGES UNDER ANY CIRCUMSTANCES, EVEN IF THEY HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE ALIXPARTNERS PARTIES' AGGREGATE LIABILITY, WHETHER IN TORT, CONTRACT, OR OTHERWISE, IS LIMITED TO TWO TIMES THE AMOUNT OF FEES PAID TO ALIXPARTNERS FOR SERVICES UNDER THIS AGREEMENT (OR IF THE CLAIM ARISES FROM AN ADDENDUM TO THIS

|  |
|---|
| **AlixPartners, LLP**<br>General Terms and Conditions |

AGREEMENT, UNDER THE APPLICABLE ADDENDUM) (THE "LIABILITY CAP"). The Liability Cap is the total limit of the AlixPartners Parties' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by AlixPartners pursuant to this Agreement. Any such claimants shall allocate any amounts payable by the AlixPartners Parties among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the Liability Cap. Notwithstanding the foregoing, the Liability Cap shall not limit the liability of AlixPartners from claims directly resulting from AlixPartners' gross negligence, fraud, self-dealing or willful misconduct or other liabilities that cannot be disclaimed under applicable law.

**Section 12. General**

**Equitable Remedies.** Each party acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of the Agreement. Each party agrees that the non-breaching party shall have the right to seek a restraining order and/or an injunction for any breach of the Agreement. If any provision of the Agreement is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** This Agreement, including the letter, the Terms and the schedule(s), contains the entire understanding of the parties relating to the services to be rendered by AlixPartners and supersedes any other communications, agreements, understandings, representations, or estimates among the parties (relating to the subject matter hereof) with respect to such services. The Agreement, including the letter, the Terms and the schedule(s), may not be amended or modified in any respect except in a writing signed by the parties. AlixPartners is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties.

**Related Matters.** If an AlixPartners Party is required by applicable law, legal process or government action to produce information or testimony as a witness with respect to this Agreement, the Company shall reimburse AlixPartners for any professional time and expenses (including reasonable external and internal legal costs and e-discovery costs) incurred to respond to the request, except in cases where an AlixPartners Party is a party to the proceeding or the subject of the investigation.

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several. In addition, in the event more than one entity is included in the definition of Company under this Agreement, the Company shall cause each other entity which is included in the definition of Company to be jointly and severally liable for the Company's liabilities and obligations set forth in this Agreement.

**Third-Party Beneficiaries.** The AlixPartners Parties shall be third-party beneficiaries with respect to Section 7 hereof.

**Notices.** All notices required or permitted to be delivered under the Agreement shall be sent, if to AlixPartners, to:

> AlixPartners, LLP
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to AlixPartners. All notices under the Agreement shall be sufficient only if delivered by overnight mail. Any notice shall be deemed to be given only upon actual receipt.

**Section 13. Bankruptcy Related Matters**

Notwithstanding anything to the contrary in these Terms, the following provisions will prevail:

The Company shall promptly apply to the Bankruptcy Court for approval of the Company's retention of AlixPartners under the terms of the Agreement. The form of retention application and proposed order shall be reasonably acceptable to AlixPartners. AlixPartners shall have no obligation to provide any further services if the Company becomes a debtor under the Bankruptcy Code unless AlixPartners' retention under the terms of the Agreement is approved by a final order of the Bankruptcy Court reasonably acceptable to AlixPartners. The Company shall assist, or cause its counsel to assist, with filing, serving and noticing of papers related to AlixPartners' fee and expense matters.

The Company and AlixPartners agree that the Bankruptcy Court shall have exclusive jurisdiction over any and all matters arising under or in connection with this Agreement.

AlixPartners will have the right to obtain independent legal counsel to obtain advice with respect to its services under this engagement. The Company will reimburse AlixPartners' for the reasonable fees and expenses of such independent legal counsel.

AlixPartners acknowledges that, during the pendency of any Bankruptcy Court approved retention, the indemnification provisions and Liability Cap set forth above may be subject to modification as stated within the Bankruptcy Court's retention order.

If AlixPartners finds it desirable to augment its consulting staff with independent contractors (an "I/C")

| **AlixPartners, LLP** |
| General Terms and Conditions |

in this case, (i) AlixPartners will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that AlixPartners is involved in providing services on behalf of the Company; and (iii) the I/C must represent that he/she will not work for the Company or other parties in interest in this case during the time AlixPartners is involved in providing services to the Company. AlixPartners' standard practice is to charge for an I/C's services at the rate equal to the compensation provided by AlixPartners to such I/C.

**Section 14. Data Protection**

To the extent applicable, the Company and AlixPartners shall comply with the terms of the AlixPartners Data Protection Addendum (located at: https://www.alixpartners.com/policies/processor-data-protection-addendum/), which form part of the Agreement. The Data Protection Schedule of this Agreement shall apply to the Data Protection Addendum.