**TERM SHEET**

This TERM SHEET sets forth the Terms of the AGREEMENT to be implemented via a Bankruptcy Reorganization Plan ("Plan") for the resolution of all current and future claims brought by or on behalf of individuals ("Claimants") against Debtor Johnson & Johnson Consumer Inc. ("JJCI" or any other company holding JJCI's talc liability) and Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc. ("JJCI") (herein collectively "Payors") for or related to any personal injury, lien indemnity or governmental penalty or any other monetary liability allegedly arising as a result of talc exposure ("Talc Claims"). This Term Sheet is agreed to by Debtor, Payors, the attorneys for holders of Talc Claims that are signatories to this Agreement (each a "Consenting Talc Claimant Professional") and the Future Claims Representative appointed by the Bankruptcy Court.

**AGREEMENT**

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

The undersigned Talc Claimant Professional(s) has executed a Plan Support Agreement ("PSA") on behalf of all of their clients in support of a bankruptcy filing intended to resolve all Johnson & Johnson-related talc liability for all time. The Term Sheet shall govern the scope of the resolution contemplated by the Plan that Claimants intend to support. The qualification and payment terms contemplated below and attached are contingent on: (1) the resolution and/or discharge of all present and future talc liability for all debtor-related parties, including a channeling injunction permanently enjoining claims against such parties; and (2) the grant or continuation of a preliminary injunction/stay as to all debtor-related parties until the effective date of the Plan; and

HIGHLY CONFIDENTIAL                                                                                                          LTLMGMT-00002628

(3) the Future Claims Representative's agreement that she will not assign more than 1/3 of the Trust corpus to qualifying future claims.

1. **Payments.**

(a) The Payment Obligation shall only be required to be made if Debtor emerges from Bankruptcy with a confirmed Plan of Reorganization ("Plan Confirmation"), which includes a channeling injunction for all any and all Talc Claims, whether presently existing or to be made in the future. Payments shall be made according to the below:

(b) Within thirty (30) days of Plan Confirmation, the Debtor and Payors shall deliver Three Billion Dollars ($3,000,000,000.00) into the JJCI Talc Trust Fund (the "Talc Trust").

(c) On the first anniversary of Plan Confirmation, the Debtor and Payors shall deliver Two Billion, Nine-Hundred Million Dollars ($2,900,000,000.00) into the Talc Trust.

(d) On second, seventh, twelfth, seventeenth and twenty-second anniversaries of Plan Confirmation, the Debtor and Payors shall deliver One Billion Dollars, ($1,000,000,000.00) into the Talc Trust.

(e) On the twenty-fifth anniversary of Plan Confirmation, the Debtor and Payors shall deliver One Billion, One-Hundred, Eighty Million Dollars, ($1,180,000,000.00) into the Talc Trust.

(f) Neither Debtor nor Payors shall have any other financial obligation pursuant to the Plan after the Payment Obligation is satisfied.

(g) All fees and expenses involved in (1) administering the Trust, (2) administering claims made to the Trust, (3) resolving and satisfying liens with respect to those claims resolved by the Trust, shall be paid by the Claimants and/or the Trust.

HIGHLY CONFIDENTIAL                                                                                                    LTLMGMT-00002629

**2.**     **Allocation of Proceeds[1] Paid into the Trust.**

**(a)**     **Existing and Future Ovarian Cancer Claims.**

(1)     Subject to minimum Ovarian qualification provisions (annexed hereto as Exhibit A), all Ovarian Cancer Claimants with claims not otherwise barred by applicable statutes of limitations with ovarian cancer diagnoses prior to April 1, 2023, and if retained by counsel, having executed a retention agreement with their lawyer prior to April 1, 2023, shall be considered "Existing Ovarian Cancer Claimants," and shall be eligible to make claims to the Trust.

(2)     All Ovarian Cancer Claimants presenting claims to the OC Trust for ovarian cancer diagnoses after April 1, 2023 shall be considered "Future Ovarian Cancer Claimants," and shall be eligible to make claims to the Trust.

(3)     A minimum of Six Billion Five Hundred Million Dollars ($6,500,000,000.00) of the Funds Delivered to the Talc Trust, subject to Trust fees and expenses, shall be allocated amongst the Existing and Future Ovarian Cancer Claimants who qualify for compensation under the Trust rules and thereby become "Qualifying Ovarian Cancer Claimants."

**(b)**     **Existing and Future Mesothelioma Claimants.**

(1)     Subject to minimum Mesothelioma qualification provisions (annexed hereto as Exhibit A) all Mesothelioma Claimants with claims not otherwise barred by applicable statutes of limitations voting during Plan Confirmation shall be considered "Existing Mesothelioma Claimants," and shall be eligible to make claims to the Trust.

(2)     All Mesothelioma Claimants presenting claims to the Talc Trust for mesothelioma diagnoses after Plan Confirmation shall be considered "Future Mesothelioma Claimants," and shall be eligible to make claims to the Trust.

---

[1] To the extent Debtor and/or its counsel are able to negotiate the addition or contribution of funds from the Imerys bankruptcy trust, such monies shall be added to the Talc Trust for the benefit of all qualifying claimants.

HIGHLY CONFIDENTIAL                                                                                                              LTLMGMT-00002630

(3) A minimum of Two Billion Dollars ($2,000,000,000.00) of the Funds Delivered to the Talc Trust, subject to Trust fees and expenses, shall be allocated amongst the Existing and Future Mesothelioma Claimants who qualify for compensation under the Trust rules and thereby become "Qualifying Mesothelioma Claimants."

**(c)   Existing and Future Governmental Claims.**

(1) All Governmental Claimants with claims not otherwise barred by applicable statutes of limitations voting during Plan Confirmation shall be considered "Existing Governmental Claimants," and shall be eligible to make claims to the Trust.

(2) All Governmental Claimants presenting claims to the Talc Trust after Plan Confirmation shall be considered "Future Governmental Claimants," and shall be eligible to make claims to the Trust.

(3) Four Hundred Million Dollars ($400,000,000.00) of the Funds Delivered to the Talc Trust to satisfy Existing Claimants Payment Obligation, subject to Trust fees and expenses, shall be allocated amongst the Existing and Future Governmental Claimants who qualify for compensation under the Trust rules and thereby become "Qualifying Governmental Claimants."

**3.    Trustee, Claims Administrator and Lien Resolution & QSF Administrator.**

**(a)   Trustee.**

(1) Scott Freeman of ARCHER SYSTEMS LLC shall serve as Trustee of the Talc Trust for purposes of designing Trust rules and claims procedures to be utilized by Claimants in making claims on the Eight Billion Nine Hundred Million Dollars in the Talc Trust.

(2) The Trustee shall be responsible for investing proceeds paid into the Talc Trust, and ensuring that such funds, and the interest earned thereon, after Trust Fees and Expenses, shall be available to be distributed amongst Qualifying Claimants to the Talc Trust.

HIGHLY CONFIDENTIAL                                                                                         LTLMGMT-00002631

**(b)    Claims Administrator.**

(1)    Randi Ellis shall serve as Claims Administrator of the Talc Trust for purposes of qualifying Claimants and allocating proceeds to be distributed amongst all existing and future Qualifying Claimants.  Ms. Ellis shall utilize and supervise ARCHER SYSTEMS LLC in the qualification and allocation of talc claims.

(2)    The Claims Administrator shall be responsible for evaluating claims submitted to the Trust, determining whether they satisfy the Qualification Criteria, and the amount of compensation allocated to the Qualifying Claimants.

(3)    Debtor shall have the right—but not obligation—via Barnes and Thornburg to audit up at random up to 10% of the qualification and allocation decisions of the Claims Administrator.

**(c)    Lien Resolution & QSF Administrator.**

(1)    ARCHER shall also be appointed as the Lien Resolution Administrator.

(2)    Awards to Qualified Claimants from the Talc Trust shall be paid into a Qualified Settlement Fund ("QSF") administered by ARCHER (the "QSF Administrator"), pending the satisfaction of liens and other administrative issues, until final payment to each Claimant and her respective attorney is made.

(3)    Immediately upon submission of all the Existing Claimant Submissions, the Lien Resolution Administrator shall begin work on the satisfaction of any and all known medical liens/claims arising from or related to the Talc Claim of each Qualifying Existing Claimant, with the goal of negotiating the satisfaction of such liens by the time the Trustee has adjudicated all appeals of award determinations made by the Claims Administrator.

(4)    The Lien Resolution Administrator shall be responsible for the satisfaction of any and all known medical liens/claims arising from or related to the Talc Claim of each

HIGHLY CONFIDENTIAL                                                                                                                                          LTLMGMT-00002632

Qualifying Existing and Future Claimant and Debtor shall receive verification from ARCHER of the same prior to distribution of the trust award.

(5) The QSF Administrator shall distribute Claimants net proceeds (the trust award, minus attorneys' fees and satisfaction of lien amounts) within sixty (60) days of the Trustee resolving the final appeal of the Claims Administrator's noticed awards.

(6) After its payment of the Payment Obligation, neither Debtor nor any Payor shall bear any responsibility for payment of any Claimant's liens.

**4.     Submission of Claims to the Trust.**

**(a)     Deadline for Distribution of Trust Rules and Submission Procedures.** The Talc Trust shall distribute its rules and submission procedures to all Existing Claimants within sixty (60) days of Plan Confirmation.

**(b)     Deadline to Submit Claims to the Trust Concerning Existing Claims.** Existing Talc Claimants must submit their claims to the Talc Trust within one-hundred, twenty (120) days of the distribution by the Talc Trust of its rules and submission procedures.

**(c)     Single Recovery.** A Claimant may recover only once from the Talc Trust, based on the Qualifying claim(s) that the Claimant has at the time of claim submission.

**5.     Non-Qualifying Claimants.**

(a) Claimants whose submissions do not satisfy the Qualification Criteria shall not be eligible to receive any funds from the Talc Trust.

(b) After a final determination that a Claimant does not satisfy the Qualification Criteria, the Claims Administrator shall provide formal notice to the Claimant of same by the date set forth below.

HIGHLY CONFIDENTIAL                                                                                                                LTLMGMT-00002633

**6.** **Notice and Appeal Rights.**

(a) **Notice to Existing Claimants**. Within sixty (60) days of receiving all Existing Claimant Submissions, the Claims Administrator shall provide notice to each Existing Claimant regarding its determination as to the qualification status and valuation of such claim.

(b) **Appeal Rights**. Existing Claimants shall have fifteen (15) days to appeal the Claim Administrator's determination regarding their Claim to the Trustee, who upon receipt of a Five-Hundred Dollar ($500) Appeal Fee, shall conduct an independent evaluation of the Claim. In the event there is no appeal filed to the Trustee within fifteen (15) days, the Claim Administrator's initial determination shall become final and non-appealable. The Trustee's decision, to be issued within fifteen (15) days of the Appeal, shall be binding and non-appealable. If the Trustee affirms the Claims Administrator's initial determination, the Appeal Fee shall not be reimbursed to the appealing claimant. If the Trustee increases the Claims Administrator's initial determination upon a finding that the appeal is meritorious, the Appeal Fee shall be reimbursed to the appealing claimant.

(c) **Post-Appeal Litigation.** The Trust's TDP will include typical provisions that permit a claimant to file a lawsuit against the trust in the tort system, subject to standard limitations and payment procedures. Among other things, under no circumstances shall the trust pay exemplary or punitive damages or interest under any statute on any judgments obtaining in the tort system.

**7.** **Release of Claims Prior to Payment.**

(a) As part of the submission of each claim made to the Talc Trust, each Qualifying Claimant shall be required to execute a Release of all Claims against Debtor, which is discharged, and each Payor, as well as Other Released Entities identified in the Release, which

HIGHLY CONFIDENTIAL                                                                                                                    LTLMGMT-00002634

includes all debtor-related parties in both the Imerys[2] and LTL bankruptcies. A Release template consistent with the same, shall be attached as an exhibit to the Plan.

(b) Each Qualifying Claimant must also produce, if applicable, copies of the Claimant's death certificate and documentation establishing the Claimant's authority to resolve a decedent's Talc Claim.

(c) The Release may be signed via DocuSign.

## 8. Distribution of Funds.

(a) Each Qualifying Claimant's final claim amount shall be held escrow in the Trust pending the final resolution of administrative issues involving the Claimant's settlement, including, but not limited to issues related to probate, guardianship, bankruptcy filings, lien resolution and duplicate sign-up issues.

(b) The applicable Trustee shall determine the initial payment percentage applied to the trust award and all subsequent payment percentages, if any, applicable to the payment of awards.

(c) The Funds Shall be Paid by the QSF Administrator to Qualifying Claimants after deduction of attorneys' fees and litigation expenses born by each Claimant's selected attorney.

(d) No attorneys' fees or expenses shall be paid by the QSF Administrator to any Court, any fund established thereby, or to any attorney not specifically identified on the Claimant's client retention agreement.

(e) J&J, JJCI and each Consenting Talc Claimant Professional agree that attorneys for Claimants shall have the right to enter into deferral arrangements with third parties.

---

[2] With respect to the Imerys release, see footnote 1 herein.

HIGHLY CONFIDENTIAL                                                                                                    LTLMGMT-00002635