**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>Gregory S. Kinoian, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>gkinoian@genovaburns.com<br>110 Allen Road, Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 467-2700<br>Fax: (973) 467-8126<br>*Proposed Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Michael S. Winograd, Esq.<br>dmolton@brownrudnick.com<br>mwinograd@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Jeffrey L. Jonas, Esq.<br>Sunni P. Beville, Esq.<br>Eric R. Goodman, Esq.<br>jjonas@brownrudnick.com<br>sbeville@brownrudnick.com<br>egoodman@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **OTTERBOURG PC**<br>Melanie L. Cyganowski, Esq.<br>Adam C. Silverstein, Esq.<br>Jennifer S. Feeney, Esq.<br>mcyganowski@otterbourg.com<br>asilverstein@otterbourg.com<br>jfeeney@otterbourg.com<br>230 Park Avenue<br>New York, NY 10169<br>Tel: (212) 905-3628<br>Fax: (212) 682-6104<br>*Proposed Co-Counsel for the Official Committee of Talc Claimants* | **MASSEY & GAIL LLP**<br>Jonathan S. Massey, Esq.<br>Rachel S. Morse, Esq.<br>jmassey@masseygail.com<br>rmorse@masseygail.com<br>1000 Maine Ave. SW, Suite 450<br>Washington, DC 20024<br>Tel: (202) 652-4511<br>Fax: (312) 379-0467<br>*Proposed Special Counsel for the Official Committee of Talc Claimants* |
| In re:<br><br>**LTL MANAGEMENT LLC**,[1]<br><br>                  Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Honorable Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**THE OFFICIAL COMMITTEE OF TALC CLAIMANTS'
MOTION TO DE-DESIGNATE EXHIBIT A OF TERM SHEET**

The Official Committee of Talc Claimants (the "TCC"), by and through its proposed undersigned counsel, hereby moves (the "Motion"), on an expedited basis, for the entry of an order de-designating as non-confidential Exhibit A to the Term Sheet (Ex. 4 in the Apr. 18, 2023 Preliminary Injunction hearing).  In support hereof, the TCC respectfully states as follows:

1.      J&J seeks to maintain its confidential designation of Exhibit A to the Term Sheet that Mikal Watts, counsel for purported unfiled claimants, negotiated with James Murdica, counsel for J&J, and used in an effort to solicit support for a potential plan as outlined in the Term Sheet. J&J has agreed to de-designate the body of the Term Sheet, but insists that its sole exhibit, which sets forth the "Agreed Injury Criteria & Discount Percentages" that dictate which illnesses would receive compensation and in what amounts, remain confidential.

2.      According to counsel for LTL, in addressing Exhibit A:  "And that's never been made public. It's never been talked about in court. We view that public disclosure of that at this point as potentially damaging to further negotiations at this point in time." 5/3/23 H'rng Tr. 155:8-12.  Not so.  Exhibit A should be de-designated for a number of independent reasons.

3.      *First*, Exhibit A is not "Confidential."  Under the Protective Order in LTL 1.0 (which in all parts relevant here has been proposed by Debtor to be used in LTL 2.0), "Confidential Information" means "confidential, proprietary or commercially sensitive information, including, but not limited to, (a) trade secrets, (b) confidential, proprietary business information and (c) information implicating an individual's legitimate expectation of privacy, including medical information and social security numbers."  *In re LTL Management LLC*, 21-30589-MBK ("LTL 1.0") at Dkt. 948 § A(7).  But the proposed "Agreed Injury Criteria & Discount Percentages" to be used for tens of thousands of victims of J&J's misconduct is none of those.  The non-

confidential nature of Exhibit A is underscored by the fact that it sets forth key terms of a potential

plan that is being actively marketed to lawyers representing tens of thousands of members of the

public.  LTL argues only that public disclosure of Exhibit A would be "potentially damaging to

further negotiations at this point in time." 5/3/23 H'rng Tr. 155:8-12.  That defies logic.  Marketing

a plan to victims (and to the public at large, as discussed below) is not undermined by disclosing

the actual payment formulas in that plan (unless, of course, those payment terms are not

reasonable).

4.      *Second*, there is no dispute that the Term Sheet, including Exhibit A, was shared by

J&J with third party plaintiffs' lawyers (and LTL) during efforts to solicit execution of Plan

Support Agreements ("PSAs").  J&J alleges confidentiality was preserved through the purported

execution of Non-Disclosure Agreements ("NDAs") by the third party plaintiffs' lawyers with

whom the Term Sheet with Exhibit A was shared.  But despite the TCC's repeated requests for

their production, J&J continues (improperly) to refuse to produce the set of signed NDAs or even

a list of the firms that signed them.  J&J may not assert the existence of signed NDAs as the basis

for its confidentiality designation and then refuse to produce those NDAs.  On that basis alone, the

Term Sheet must be de-designated.

5.      *Third*, on information and belief, the TCC understands that, in an effort to persuade

other plaintiffs' lawyers to sign PSAs, certain third party plaintiffs' lawyers, including Mikal

Watts, shared and discussed the Term Sheet and Exhibit A with lawyers who did not sign NDAs

(or ultimately PSAs).  On April 24, 2023, counsel for the TCC emailed Mr. Watts (using the same

email with which counsel previously had communicated with Mr. Watts) and requested

confirmation of whether Mr. Watts discussed the terms of the Term Sheet with any plaintiffs'

lawyers or other third parties who had not signed an NDA.  Ex. A.  To date, Mr. Watts, who

yesterday was listed by LTL as a witness for the MTD Hearing, still has not responded.  Such a

public disclosure alone defeats any purported confidentiality designation.  LTL 1.0 P.O. § D ("Confidential Information does not include any information that . . . is or becomes generally available to the public").

6.      *Fourth*, the Term Sheet, with Exhibit A, was marked as an Exhibit, and the criteria set forth in Exhibit A themselves were addressed, in open court during the Preliminary Injunction Hearing in these proceedings.  All of that was without any objection or confidentiality reservation whatsoever by J&J, LTL or anyone else.  The Term Sheet (with Exhibit A) was later admitted into evidence.  4/20/23 Tr. 4:13-21.

7.      "A strong presumption in favor of public accessibility attaches to judicial records." *Fair Lab'y Pracs. Assocs. V. Riedel*, 666 F. App'x 209, 211-12 (3d Cir. 2016).  The presumption in favor of public access extends to bankruptcy courts and is "codified in § 107 of the Bankruptcy Code."  *In re A C & S Inc.*, 775 F. App'x 78, 79 (3d Cir. 2019).  The "status of a document as a 'judicial record' . . . depends on whether a document has been filed with the court, or otherwise somehow incorporated or integrated into a . . . court's adjudicatory proceedings."  *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001) (citations omitted; emphasis added).  Moreover, it is "well established that the release of information in open court is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use."  *Littlejohn v. Bic Corp.*, 851 F.2d 673, 680 (3d Cir. 1988).

8.      Here, the Term Sheet with Exhibit A is indisputably a judicial record.  It was both admitted into evidence (4/20/23 Tr. 4:13-21) and integrated into the Preliminary Injunction hearing.  In fact, at that Hearing, Mr. Jonas marked the Term Sheet as Exhibit 4 during his examination of Mr. Kim without any objection (or any other effort to maintain confidentiality).  4/18/23 PI H'rng Tr. 85:25-86:13.  Further, in addition to discussion of the terms of the Term Sheet itself, the formulas set forth in Exhibit A were specifically implicated in discussion in open court.

4

In his closing argument, Mr. Satterley stated:  "Well, you know how much Mr. Valadez would be entitled to under this plan . . . ?  Mr. Valadez would be entitled to $50,000 under this plan. $50,000. So I would say to Your Honor that this is a manufacturing attempt to cram-down."  *Id.* 314:15-20.

9.      Again, the marking of Exhibit A (as part of the Term Sheet) and Mr. Satterley's statement came and went without so much as a peep from J&J's or Debtor's counsel.  In fact, just the opposite.  J&J's own counsel told the Court in her closing argument that "some of the terms of the offer that Mr. Birchfield made to resolve all of the current and future ovarian claims back in 2020," — counsel then went ahead and stated the specific purported offer amount — "tracks almost perfectly with some of the provisions put forth in the plan support agreement and the term sheet." *Id.* 245:25-246:7.  The admission of Exhibit A into evidence (without a Motion to Seal) and its discussion in open court at the Preliminary Injunction hearing (without objection) constitutes yet another independent reason the Debtor's efforts to keep it under wraps should be rejected.

10.     *Fifth*, and perhaps most stunning, is the fact that after having repeatedly touted to the public (in court and in the media) the support they purportedly have for the terms set forth in the Term Sheet, J&J and the Debtor now refuse to let the public know what some of those key terms are.  Setting aside the facial unseemliness of that maneuver, in the attorney-client privilege context, the "disclosure rule . . . prevents clients from engaging in strategic selective disclosure." *In re Teleglobe Communications Corp.*, 493 F.3d 345, 361 (3d Cir. 2007) ("When one party takes advantage of another by selectively disclosing otherwise privileged communications, courts broaden the waiver as necessary to eliminate the advantage.").  That principle applies here as well.

11.     J&J has obtained the benefit (both in and outside of court) from publicly touting (both in and outside of court) the support it purportedly has garnered for its potential plan.  It has even de-designated the PSAs, which attach the Term Sheet, as it and LTL continue to waive them around.  Yet it now attempts to selectively carve out a single portion of the Term Sheet, the very

portion that explains who would get paid and in what amounts.  Such selective disclosure should not be allowed.

12.    For each and all of the reasons set forth above, the TCC respectfully requests that the Court grant the Motion and order the de-designation of Exhibit A to the Term Sheet (consistent with the current non-confidential designation of the Term Sheet itself), and grant such other and further relief as is just and equitable under the circumstances.

Dated:  May 5, 2023

Respectfully submitted,

**GENOVA BURNS, LLC**

By:___*Daniel M. Stolz*_____
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Road, Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 533-0777
Facsimile: (973) 467-8126
Email: dstolz@genovaburns.com
Email: dclarke@genovaburns.com

*Proposed Local Counsel to the Official Committee of Talc Claimants*