| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br><br>**WOLLMUTH MAHER & DEUTSCH LLP**<br>Paul R. DeFilippo, Esq.<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Facsimile: (212) 382-0050<br>pdefilippo@wmd-law.com<br><br>**JONES DAY**<br>Gregory M. Gordon, Esq.<br>Brad B. Erens, Esq.<br>Dan B. Prieto, Esq.<br>Amanda Rush, Esq.<br>2727 N. Harwood Street<br>Dallas, Texas 75201<br>Telephone: (214) 220-3939<br>Facsimile: (214) 969-5100<br>gmgordon@jonesday.com<br>bberens@jonesday.com<br>dbprieto@jonesday.com<br>asrush@jonesday.com<br>(Admitted *pro hac vice*)<br><br>*PROPOSED ATTORNEYS FOR DEBTOR* | |
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No.: 23-12825 (MBK)<br><br>Judge: Michael B. Kaplan<br>**Hearing Date and Time:**<br>May 16, 2023 at 11:30 a.m. |

**DEBTOR'S OBJECTION TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS' CROSS-MOTION TO TEMPORARILY SUSPEND THE CHAPTER 11 CASE**

LTL Management LLC, the debtor in the above-captioned case (the "Debtor"),

files this objection (the "Objection") to *The Official Committee of Talc Claimants Cross-Motion*

*for Entry of an Order (I) Temporarily Suspending the Debtor's Chapter 11 Case Pursuant to 11*

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

*U.S.C. 105 and 305* [Dkt. 414] (the "Motion") filed by the Official Committee of Talc Claimants (the "TCC").[2] In support of this Objection, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

The Motion is yet another attempt by the TCC, comprised of plaintiff firms representing a minority of the talc claimants, to block the Debtor and the Ad Hoc Committee of Supporting Claimants Counsel from moving forward with a plan of reorganization that is supported by plaintiff firms representing the substantial majority of claimants in this Chapter 11 Case. It seeks relief that is against the interests of the TCC's own constituency, is contrary to the unequivocal direction of this Court, and would, if successful, only cause delay to the detriment of all parties in interest. The suspension request, which seeks only to promote the TCC's multi-pronged litigation strategy to deprive claimants of their right to vote on the proposed plan, also lacks any grounding in section 305 of the Bankruptcy Code. For these reasons, among others set forth below, the Motion should be denied.

## OBJECTION

**I.    The Court Can and Should Establish a Dual-Track Path Forward in this Chapter 11 Case.**

The Court has already conveyed its intention to move ahead with both the plan process and dismissal motions. Recognizing that litigating plan confirmation and dismissal may each be a lengthy process, the Court stated that both should move forward. See May 3, 2023 Hr'g Tr.

---

[2] Contemporaneously herewith, the Debtor is filing a reply (the "Reply") to the objections (the "Scheduling Objections") to the Debtor's *Motion for an Order (I) Scheduling Hearing on Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline; and (III) Granting Related Relief* [Dkt. 240] (the "Scheduling Motion"). As set forth in the Reply, several of the parties objecting to the Scheduling Motion seek to delay a hearing on the adequacy of the Debtor's disclosure statement until after the pending motions to dismiss are decided. Although the other objecting parties do not seek to suspend the case pursuant to section 305 of the Bankruptcy Code as the TCC does, the Debtor similarly objects to the requests to delay advancement of the plan solicitation and confirmation process while the motions to dismiss are pending.

121:21-25 ("I suggest counsel take a realistic approach going forward as to how best to move the plan process forward and how best to move the dismissal motions forward."); id. 121:9-20 ("I am going forward with this case, addressing it the way I would any Chapter 11 proceeding, which means I do not intend to engage in beat-the-clock on either side, on the dismissal motions or on the plan process.").

The Court also appointed co-mediators to assist the parties in achieving a consensus and stated that delaying mediation past the motions to dismiss would not benefit the parties. See May 3, 2023 Hr'g Tr. 122:5-10, 12-18 (appointing co-mediators and ruling that it is appropriate to move forward with mediation -- "talking serves a purpose in trying to come to a consensus"); id. 124:8-11("It is not my intention to delay mediation past motions to dismiss or the plan process, because, as we've seen, they take on lives of their own. And I don't think any day that goes by benefits by not having people starting to talk."); *see Order (I) Approving Co-Mediators and (II) Establishing Mediation Protocol* [Dkt. 459] ¶ 2 (authorizing the co-mediators to work towards a "comprehensive resolution of issues in the Chapter 11 Case.").

Notwithstanding this clear direction from the Court, the TCC seeks to halt the plan process by preventing consideration of the Debtor's disclosure statement and procedures for solicitation and tabulation of votes the Debtor's plan—the material terms of which are supported by counsel to tens of thousands of talc claimants.[3] The TCC's proposal would benefit no one, including the TCC's own constituents.[4]

---

[3] See *Initial Statement of Ad Hoc Committee of Supporting Talc Claimants* [Dkt. 253] ("AHC Statement"); *Verified Statement of Paul Hastings LLP, Cole Schotz P.C. and Parkins & Rubio LLP Pursuant to Bankruptcy Rule 2019* ("AHC Rule 2019") [Dkt. 470].

[4] On May 9, 2023, the Third Circuit entered an order denying the TCC's petition for writ of mandamus, therefore allowing the Chapter 11 Case to "continue on the expedited basis set by the Bankruptcy Court for the District of New Jersey." *Order*, In re: Official Committee of Talc Claimants, No. 23-1826 (3d Cir. May 9, 2023), Dkt. 13-1 ("In order to allow the Chapter 11 proceedings of LTL Management, LLC, No. 23-

**II.     The TCC's Proposal is Improper Under § 305(a)(1).**

    **A.     The TCC's Selective Suspension Proposal Is Inappropriate.**

Not only is the TCC's proposed selective suspension inconsistent with the Court's direction that the Chapter 11 Case proceed on dual tracks, section 305(a)(1) of the Bankruptcy Code does not permit piecemeal suspension of select substantive matters pending in a bankruptcy case. Instead, section 305(a)(1) permits suspension of an entire bankruptcy case on an all-or-nothing basis. See 11 U.S.C. § 305(a)(1) ("[t]he court . . . may . . . suspend **all** proceedings in a case . . .") (emphasis added); see also 2 Collier on Bankruptcy P 305.01 (16th 2023) ("abstention under this section [305(a)] is of the entire case and reflects Congress's recognition that there may be situations where creditors and the debtor would be better served outside of bankruptcy.") As one court observed:

> [S]ection 305 abstention[] is abstention from the entire bankruptcy. 11 U.S.C. § 305. It is applicable on an all-or-nothing basis to the bankruptcy "case," i.e. the umbrella bankruptcy action that is created by the filing of a petition for relief under the Bankruptcy Code and that normally terminates either by dismissing or by closing the case. ***The court cannot rely on section 305 abstention to pick and choose proceedings within the case***.

In re Bellucci, 119 B.R. 763, 771 (Bankr. E.D. Cal. 1990) (emphasis added).

The TCC cites no authority under section 305 that would support suspension of matters that it deems unfavorable while permitting its chosen substantive matters to proceed. The TCC cites Picacho Hills Util. Co., Inc. for the proposition that a court has discretion to shape the contours of suspension under section 305. See TCC Mot. ¶ 13 (citing In re Picacho Hills Util. Co., Inc., Case No. 13-10742 TL7, 2017 WL 1067754, *6 (Bankr. D.N.M. Mar. 21, 2017)). But,

---

12825, to continue on the expedited basis set by the Bankruptcy Court for the District of New Jersey, and recognizing that the writ of mandamus is a drastic and extraordinary remedy and there are other adequate means for the petitioner to obtain the relief it seeks, the Public Petition for Writ of Mandamus of Talc Claimants is hereby denied.").

in that case, the court suspended the entire bankruptcy case on the petition date to permit a state court appointed receiver to complete a sale of assets, commenced prior to the petition date, that were under the receiver's control as of the petition date. In re Picacho Hills Util. Co., Inc., 2017 WL 1067754 at *2-3. The court then held that the closing of the receiver's sale after the petition date could not be avoided as an unauthorized transfer of property of the estate. Id. at *5-6.

Indeed, the TCC cites cases in which a court permitted only limited administrative functions and routine matters to continue during a suspension. See TCC Mot. ¶ 20; Gabriel Techs. Corp., Case No. 13-30341, 2013 WL 5550391, at *6 (Bankr. N.D. Cal. Oct. 7, 2013) (permitting already-pending hearing to approve settlement agreement, retention applications, continued filing of monthly operating reports, payment of quarterly United States Trustee fees and other unforeseen but routine matters on a case-by-case basis); In re Duratech Industries, Inc., 241 B.R. 291, 300 (Bankr. E.D.N.Y. 1999), aff'd, 241 B.R. 283 (E.D.N.Y. 1999) (permitting continued monthly operating reports and compliance with United States Trustee guidelines); In re Modell's Sporting Goods Inc., Case No. 20-14179 (Bankr. D.N.J. Mar. 11, 2020) [Dkts. 166, 294, 371] (at the onset of the COVID-19 pandemic deferring all debtor payments except for certain "essential expenses" and continuation of lease rejection process).

Relief under section 305(a)(1) is properly characterized as complete abstention—it is not a tool for the TCC to selectively postpone actions the Debtor and law firms representing the substantial majority of claimants want to take while advancing actions its minority group of firms favor.

    **B.    The Relief Requested by the TCC Is Not in the Best Interests of the Debtor and Its Creditors.**

Separate and apart from the fact that the TCC has sought relief that section 305(a) does not permit, the TCC's suspension request also does not satisfy the standard for suspension—that

-5-

NAI-1536780768

it be in the best interests of both the Debtor and creditors.  And the standard is not a balancing test – both the debtor and the creditors must be better served.  See In re Short Hills Caterers, Inc., No. 08-18604 (DHS), 2008 Bankr. LEXIS 1726, at *10 (Bankr. D.N.J. June 4, 2008) (test for statutory relief under section 305(a) is not a balancing test, it is whether both the debtor and the creditors would be better served).

The Debtor seeks to move forward with the process to confirm a plan that is supported by counsel representing tens of thousands of talc claimants.  As the party seeking relief under section 305(a), the TCC bears the burden of showing that the interests of the debtor and the claimants would benefit from suspension or dismissal.  In re RHTC Liquidating Co., 424 B.R. 714, 720-21 (Bankr. W.D. Pa. 2010).  Here, the TCC has failed to do so; to the contrary, the TCC's proposal to suspend the plan process would decidedly harm talc claimants.

Consistent with the terms of the plan support agreements entered into with counsel for tens of thousands of claimants, the Debtor is working diligently to finalize and file a plan by May 14, 2023, together with a disclosure statement and a motion for approval of the disclosure statement and procedures for the solicitation and tabulation of votes on the plan.  As the TCC and other parties have indicated in the Scheduling Objections, the Debtor anticipates that there will be significant opposition and litigation before solicitation may be permitted to commence, including challenges to the adequacy of the Debtor's disclosure statement.[5]  It would benefit, not harm, claimants to make as much progress as possible on issues related to approval of a disclosure statement, solicitation and confirmation of a plan.  The TCC fails to explain its position that "the Committee's litigation cannot proceed in parallel to a Plan solicitation process

---

[5] See Objection of Arnold & Itkin LLP to Debtor's Motion for an Order (I) Scheduling Hearing on Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline; and (III) Granting Related Relief [Dkt. 443] ¶¶ 2-4, 7.

NAI-1536780768

without severe prejudice to talc claimant rights." TCC Scheduling Obj. ¶¶ 28-29. A lengthy suspension of select matters related to plan confirmation would stall progress towards a consensual resolution of the Chapter 11 Case, benefitting no one.

### C.  The Remaining § 305 Considerations Do Not Support the TCC's Proposal

The TCC asserts that selective suspension will promote two factors that courts consider in evaluating relief under section 305(a)(1): (i) economy and efficiency and (ii) the availability of an alternative forum to resolve the primary dispute. TCC Mot. ¶ 11.[6] Both contentions are wrong.

*First*, suspension will not promote economy or efficiency, it will do the opposite. It will permit the TCC to proceed with costly and lengthy dismissal litigation and its just-filed request for derivative standing to file and prosecute a 21-count adversary proceeding against 33 named defendants, while halting a *consensual* plan process favored by the substantial majority of claimants. This relief is inconsistent with the authority the TCC cites on this point. In Gabriel Technologies, for example, the debtor would only be able to fund recoveries to creditors under a plan if it succeeded in litigation seeking to reverse a fee awarded in favor of its primary creditor. See 2013 WL 5550391 at *3 (observing that even if debtor's plan was confirmed, no meaningful recovery other creditors unless debtor successfully overturned primary creditor's multi-million-dollar fee award). Similarly, in Duratech, the debtor's ability to pay creditors would be determined by litigation against a counterparty that had caused the debtor to lose 90% of its sales, which precipitated the debtor's bankruptcy filing. Duratech Industries, Inc., 241 B.R. at 298 (successful prosecution of action by debtor against significant claimant would determine ability to pay other creditors). Here, the Debtor has sufficient resources to fund the proposed

---

[6]    See n.3 (identifying seven factors applicable under § 305(a)(1), but only addressing two).

plan of reorganization and the requested suspension to permit the TCC's favored litigation to proceed would not, like the situations in these cases, remove potential barriers to reorganization but instead create them.

*Second*, there is no alternative forum where the Debtor can comprehensively resolve all current and future talc-related claims against the Debtor. See In re Sapphire Development, LLC, 523 B.R. 1, 14 (D. Conn. 2014) ("Bankruptcy provides the benefit of settling all of one's debts in a single, orderly process. Especially where the debtor itself has initiated the bankruptcy, terminating that process and forcing a debtor to settle its debts elsewhere will rarely be in the debtor's interest."); Gabriel Techs. Corp., 2013 WL 5550391 at *5 ("[t]he Federal Circuit is not an alternative forum to the bankruptcy court for a solution to Debtors' financial woes" but it would permit the Debtor to resolve action against one litigation counterparty).[7] Outside of bankruptcy, the Debtor would face a deluge of litigation for years to come as there is no other forum where the Debtor can permanently resolve both current and future talc claims by means of a settlement trust like that established pursuant to section 105 or section 524(g) of the Bankruptcy Code. Instead, there are tens of thousands of lawsuits asserting personal injuries allegedly caused by exposure to talc-containing products that are pending in numerous jurisdictions throughout the country. And litigating piecemeal a tiny percentage of the total claims for years would not benefit future claimants—a very large constituency in this case.

In support of its proposal, the TCC cites a number of innaposite dismissal cases—rather than suspension cases—in which a court dismissed a chapter 11 case under section 305(a)(1)

---

[7] This fact also demonstrates that additional factors "whether there is an alternative means of achieving an equitable distribution of assets" and "whether federal proceedings are necessary to reach a just and equitable solution" weigh against the TCC's proposal. See TCC Mot. ¶11 n.3.

based on abstention principles to permit a foreign insolvency proceeding to continue.[8] The other cases cited by the TCC similarly are inapplicable because they arise in specific contexts not relatable to the present case, such as suspending all substantive proceedings in a bankruptcy case to permit the resolution of what amounted to a two-party dispute[9] or granting exceptional relief in recognition of the exigencies of the COVID-19 pandemic.[10]

### III. Suspension of the Confirmation Process Under § 105(a) Is Inappropriate

For many of the reasons stated above, the Court should not entertain the TCC's alternative request to suspend the confirmation process pursuant to section 105(a) of the Bankruptcy Code or pursuant to Rule 1 of the Federal Rules of Civil Procedure. Not only has the Court already demonstrated its ability to manage the docket of this Chapter 11 Case, the cases cited by the TCC on this point are readily distinguishable. See supra, Duratech Industries, Inc., 241 B.R. at 296 (outcome of a district court action commenced by the debtor would determine its ability to fund recovery of other creditors); In re Schueller, 126 B.R. 354 (D. Colo.

---

[8] In re North Shore Mainland Services, Inc., 537 B.R. 192, 205-08 (Bankr. D. Del. 2015) (dismissing chapter 11 cases of foreign debtors in light of a foreign insolvency proceeding based on considerations of comity and abstention); In re Compania de Alimentos Fargo, 376 B.R. 427, 434 (Bankr. S.D.N.Y. 2007) (granting involuntary debtor's motion to dismiss pursuant to § 305(a)(1) because debtor had limited ties to the United States; had all business operations, customers, and employees in Argentina; and because deference would be given to a procedurally and substantively fair insolvency proceeding pending in Argentina for several years before creditors filed an involuntary chapter 11); In re Monitor Single Lift I, Ltd., 381 B.R. 455, 464-71 (Bankr. S.D.N.Y. 2008) ("[w]here there is a pending foreign insolvency proceeding, concerns of comity must be taken into account and deference must be given to the foreign proceedings;" declining to dismiss chapter 11 case of foreign debtor in light of foreign insolvency proceeding against non-debtor subsidiary where debtor demonstrated that it would be harmed by dismissal).

[9] In re Bus. Info. Co., Inc., 81 B.R. 382 (Bankr. W.D. Pa. 1988).

[10] *Order Temporarily Suspending the Debtors' Chapter 11 Cases Pursuant to §§ 105 and* 305, In re Modell's Sporting Goods Inc., Case No. 20-14179 (Bankr. D.N.J. Mar. 11, 2020) [Dkt. 166 at 6] ("should COVID-19 abate before the [one month] Bankruptcy Suspension has expired, the Debtors may file a notice with the Bankruptcy Court informing it of the termination of the Bankruptcy Suspension."); *Order (I) Establishing Temporary Procedures and (II) Granting Related Relief*, In re CraftWorks Parent, LLC, No. 20-10475 (BLS) (Bankr. D. Del. Mar. 30, 2020) [Dkt. 217 at 2] (finding cause to suspend based on "the unprecedented and unforeseen outbreak of COVID-19, the national state of emergency declared by President Trump on March 13, 2020 pursuant to the Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak and the numerous state orders that limit or preclude the Debtors' operations . . . .").

NAI-1536780768

1991) (outcome of a state court action commenced by the debtor would determine whether a claimant had standing to propose a competing plan based on its counterclaim against the debtor); In re CraftWorks Parent, LLC, No. 20-10475 (BLS) (Bankr. D. Del. Mar. 30, 2020) (temporary suspension under section 105(a) of the Bankruptcy Code was emergency measure taken at the onset of the COVID-19 pandemic).

The Debtor respectfully submits that the Court should continue to move this case forward expeditiously, including the plan confirmation process supported by plaintiff firms representing tens of thousands of claimants.  See May 3, 2023 Hr'g Tr 121:9-20 (If the Third Circuit does not intervene based on the recent application for writ of mandamus, "I am going forward with this case, addressing it the way I would any Chapter 11 proceeding.").

## IV. The Chapter 11 Case Is Valid

As with the TCC's other pleadings, the premise underlying the Motion is that the Chapter 11 Case is a "sham" that should proceed on a single-track to dismissal.  TCC Scheduling Obj. ¶ 1.  But this unsupported belief, without more, does not warrant the one-sided, prejudicial relief the TCC seeks in the Motion.

## CONCLUSION

For all of the foregoing reasons, the Motion should be denied.

| | |
|---|---|
| Dated:  May 12, 2023 | **WOLLMUTH MAHER & DEUTSCH LLP** |
| | */s/ Paul R. DeFilippo*<br>Paul R. DeFilippo, Esq.<br>James N. Lawlor, Esq.<br>Joseph F. Pacelli, Esq. (admitted *pro hac vice*)<br>500 Fifth Avenue<br>New York, New York 10110<br>Telephone: (212) 382-3300<br>Facsimile: (212) 382-0050<br>pdefilippo@wmd-law.com<br>jlawlor@wmd-law.com<br>jpacelli@wmd-law.com |
| | **JONES DAY**<br>Gregory M. Gordon, Esq.<br>Brad B. Erens, Esq.<br>Dan B. Prieto, Esq.<br>Amanda Rush, Esq.<br>2727 N. Harwood Street<br>Dallas, Texas 75201<br>Telephone: (214) 220-3939<br>Facsimile: (214) 969-5100<br>gmgordon@jonesday.com<br>bberens@jonesday.com<br>dbprieto@jonesday.com<br>asrush@jonesday.com<br>(Admitted *pro hac vice*) |
| | *PROPOSED ATTORNEYS FOR DEBTOR* |

NAI-1536780768