| **UNITED STATES BANKRUPTCY COURT** <br> **DISTRICT OF NEW JERSEY** | |
|---|---|
| **GENOVA BURNS LLC** <br> Daniel M. Stolz, Esq. <br> Donald W. Clarke, Esq. <br> Gregory S. Kinoian, Esq. <br> dstolz@genovaburns.com <br> dclarke@genovaburns.com <br> gkinoian@genovaburns.com <br> 110 Allen Road, Suite 304 <br> Basking Ridge, NJ 07920 <br> Tel: (973) 467-2700 <br> Fax: (973) 467-8126 <br> *Proposed Local Counsel for the Official Committee of Talc Claimants* | **BROWN RUDNICK LLP** <br> David J. Molton, Esq. <br> Michael S. Winograd, Esq. <br> Eric R. Goodman, Esq. <br> Susan Sieger-Grimm, Esq. <br> Kenneth J. Aulet, Esq. <br> dmolton@brownrudnick.com <br> mwinograd@brownrudnick.com <br> egoodman@brownrudnick.com <br> ssieger-grimm@brownrudnick.com <br> kaulet@brownrudnick.com <br> Seven Times Square <br> New York, NY 10036 <br> Tel: (212) 209-4800 <br> Fax: (212) 209-4801 <br> And- <br> Jeffrey L. Jonas, Esq. <br> Sunni P. Beville, Esq. <br> jjonas@brownrudnick.com <br> sbeville@brownrudnick.com <br> One Financial Center <br> Boston, MA 02111 <br> Tel: (617) 856-8200 <br> Fax: (617) 856-8201 <br> *Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| **OTTERBOURG PC** <br> Melanie L. Cyganowski, Esq. <br> Jennifer S. Feeney, Esq. <br> Michael R. Maizel, Esq. <br> mcyganowski@otterbourg.com <br> jfeeney@otterbourg.com <br> mmaizel@otterbourg.com <br> 230 Park Avenue <br> New York, NY 10169 <br> Tel: (212) 905-3628 <br> Fax: (212) 682-6104 <br> *Proposed Co-Counsel for the Official Committee of Talc Claimants* | **MASSEY & GAIL LLP** <br> Jonathan S. Massey, Esq. <br> Rachel S. Morse, Esq. <br> jmassey@masseygail.com <br> rmorse@masseygail.com <br> 1000 Maine Ave. SW, Suite 450 <br> Washington, DC 20024 <br> Tel: (202) 652-4511 <br> Fax: (312) 379-0467 <br> *Proposed Co-Counsel for the Official Committee of Talc Claimants* |
| In re: <br><br> LTL MANAGEMENT, LLC,[1] <br><br>                     Debtor. | Chapter 11 <br><br> Case No.: 23-12825 (MBK) <br><br> Honorable Michael B. Kaplan |

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

**THE OFFICIAL COMMITTEE OF TALC CLAIMANTS'
REPLY IN SUPPORT OF ITS CROSS-MOTION FOR ENTRY OF AN
ORDER (I) TEMPORARILY SUSPENDING THE DEBTOR'S CHAPTER 11 CASE
PURSUANT TO 11 U.S.C. §§ 105 AND 305, AND (II) GRANTING RELATED RELIEF**

The Official Committee of Talc Claimants (the "TCC" or the "Committee") appointed in the above-captioned case of LTL Management, LLC (the "Debtor" or "LTL"), hereby submits this reply in support of *the Official Committee of Talc Claimants' Cross-Motion* to *Debtor's Motion for an Order (I) Scheduling Hearing on Approval of Disclosure Statement; (II) Establishing Disclosure Statement Objection Deadline; and (III) Granting Related Relief* [Dkt. 414] (the "Cross-Motion")[2] and in response to the objections to the Cross-Motion (collectively, the "Objections") filed by: (a) the Ad Hoc Committee of Supporting Counsel (the "Counsel Committee") [Dkt. 497]; and (b) the Debtors [Dkt. 501].

**REPLY**

1. The TCC asks this Court to reject the Debtor's desperate and flagrant misrepresentation that the TCC is "comprised of plaintiff firms representing a minority of claimants," a mantra that appears once again in their Objection. *See* [Dkt. 501 at p. 2]. The TCC is comprised of a third-party payor and actual cancer victims or their estate representative (for the deceased) of Johnson and Johnson's ("J&J") ovarian cancer causing and mesothelioma causing talc products. The TCC has a fiduciary duty for *all* Talc Claimants and is exercising that fiduciary duty when it urges this Court to eject LTL and J&J from this Court and terminate this second bad faith bankruptcy.

---

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Cross-Motion.

2. The Motion to Dismiss is a gating issue. Either LTL filed this bankruptcy case in good faith, or it did not. Either the **actual and reasonably foreseeable circumstances** changed so significantly in the 131-minute period that LTL existed outside of this Court's supervision to warrant obviating the Third Circuit's determination that LTL is not an eligible bankruptcy debtor, or they did not.

3. The dismissal hearing should be focused on the answer to these questions. The factual "questions" that are relevant are either undisputed (*e.g.*, the Debtor willingly destroyed its most valuable asset, but still retains access to tens of billions of dollars of value—over three times the corpus offered in the Debtor's pot plan) or objectively resolvable under the Third Circuit's decision dismissing LTL 1.0 (*e.g.*, that tens of thousands of "unfiled" claims, regardless of their legitimacy, do not cause **immediate** financial distress, especially when the Debtor testifies that only several dozen can be tried in any given year).

4. The Motion to Dismiss is simple—it is obvious what went on between the Debtor, J&J, and the members of the Counsel Committee. A Debtor's attempt to manufacture financial distress by destroying its most valuable asset is not good faith—it is fraud. Entry into Plan Support Agreements with law firms representing claims that did not litigate previously and likely would not do so now with respect to many of these claims (because of the *Daubert* decision and dim general causation picture) in the tort system, is not good faith. It is bad faith.

5. The Debtor's proposed plan would use the "votes" of men and women who did not litigate and could not successfully litigate their "gynecological" and other disease claims in the tort system **to operate to prevent** men and women with ovarian cancer and mesothelioma resulting from J&J's products from litigating against one of the most solvent and liable (including

3

independently liable) corporations. Coupling the Debtor's attempt at manufacturing distress with such a proposed plan is not a legitimate bankruptcy purpose. It is collusive and bad faith.

6. The Debtor and the Counsel Committee's prostrations before the Court aimed at unnecessarily complicating the dismissal proceedings and delaying the proceedings are a brash attempt—even against this Court's admonition that it did "not intend to engage in beat-the-clock"[3]—to run through its plan process and hope to achieve the fraud it started in October 2021. But even if that Plan process were to proceed, it is not yet out of the gates – solicitation cannot begin and must be suspended until the fundamental questions posed by this Court to an independent estimator in LTL 1.0 are finalized and made public. *See e.g.*, *In re LTL Management, LLC*, Case No. 21-30589, Hr'g Tr. July 28, 2022, 5:7-9 (appointing Mr. Feinberg as an independent Rule 706 estimation expert, and stating that "[t]he Court believes strongly that all creditors and claimants have a right to have this information, again, before voting on any plans.").

7. Answering whether the Debtor can be a debtor in bankruptcy under the Third Circuit's precedential decision is a pre-requisite to any plan process. Women and men with ovarian cancer and mesothelioma were unduly delayed over 18 months by the Debtor's first bad faith bankruptcy case. These women and men deserve the fastest resolution of the motions to dismiss. They do not deserve to be bound up for months or years in a plan process that will fail of its own accord or be mooted by an appellate court's decision on dismissal.

8. The Cross Motion should be granted. A dual-track approach is wasteful of this Court's and the parties' time and effort. The TCC expects the Debtor to file its Plan and Disclosure Statement today. But proceeding forward with it will put the cart before several horses—all of

---

[3] *In re LTL Management, LLC* Case No. 23-12825 (MBK) May 3, 2023 Hearing Transcript, 121:9-20.

which will be hotly contested, investigated and litigated. None of which would be necessary if the outcome determinative dismissal proceedings are resolved adversely to the Debtor on a final basis.

9. First, and before solicitation, this Court will have to decide appropriate classification of claims. Relatedly, under the circumstances of this case, this Court will also need to lay out an appropriate estimation proceeding and estimation expert for voting purposes should the Debtor's Plan proceed to solicitation.[4] A one-dollar-one-vote-one-class paradigm would be inappropriate if the Debtor's Plan proceeds to solicitation because of the significant differences between the categories of talc claims at issue here. These are critical issues that must be investigated, litigated and resolved before a Disclosure Statement for the Debtor's Plan could be approved.

10. Second, if the Debtor's Plan proceeds, this Court must also supervise an estimation expert and proceeding to determine what the Debtor's Plan actually purports to provide to claimants—in their appropriate classes. In LTL 1.0, this Court already found that "the work of such an expert is especially critical in dealing with complex mass tort problems," reasoning that "Courts cannot proceed towards a just and equitable result without some reasonably firm data projecting the numbers and volume of claims at issue and that all parties have a strong and conflicting interest in the character of the data." *In re LTL Management, LLC*, Case No. 21-30589, Hr'g Tr. July 28, 2022, 7:22-8:2.

11. The Court stated that it "is a big ask, I believe, to have this Court approve the solicitation of one or more plans and to confirm a plan with the requisite findings as to good faith

---

[4] The TCC appointed in LTL 1.0 noted to the Court that estimation under 502(c) and Rule 3018 could be used under appropriate circumstances and in connection with, among other things, plan solicitation and voting. *See In re LTL Management, LLC*, Case No. 21-30589 (Bankr. D.N.J. July 15, 2022) [Dkt. 2722].

under 1129(a)(3) and fair and equitable treatment without a meaningful record evidencing the amounts needed to satisfy the claims, the amounts intended to be paid out, and the available funding." *Id.* 4:4-10. The Court noted that this is critical information before the solicitation process even begins, stating that it "believes strongly that all creditors and claimants a right to this information, again, before voting on any plans" and that it was necessary to determine whether the "funding agreement . . . will actually be operational[.]" *Id.* 5:1-17. This Court concluded that "these factors alone and in combination point to the necessity of a neutral expert providing assistance under the auspices of the Court." Hr'g Tr. July 28, 2022, 8:2-4. In staging LTL 1.0, the Court explained that the estimation report from the estimation expert was not only critical information for disclosure statement purposes but also for plan negotiation and mediation purposes stating that the Court had "not turned around on the road to mediation . . . [and that the] fixing [of] an estimate of the aggregate volume and liability of the claims, both present and future, will facilitate the plan negotiation process and, hopefully, even settlement in advance of that through continued mediation efforts." *Id.* 5:10-17.

12. The Court's rightfully viewed an independent estimation report as a necessary pre-condition to a disclosure statement in LTL 1.0. If, as the TCC suspects, the Debtor puts forth a pot plan, it will be virtually impossible for any talc claimants to determine with any degree of certainty how much he or she will be paid and when. It would be improper for the Debtor to solicit votes on a Plan that, on its face, promises substantial payments to talc claimants within the next few years when, in reality, that Plan delivers nothing more than pennies on the dollar over a decade from now. Bait and switch tactics simply have no place in chapter 11.

13. These issues must be resolved prior to a Disclosure Statement for the Debtor's Plan being approved. There are of course many additional disclosure statement issues that will need to

be litigated ahead of its issuance. Judicial resources and equity weigh in favor of permitting the Motion to Dismiss to proceed to final adjudication prior to engaging in these lengthy and complex matters.

14. This Court has two independent sources of authority from which it can appropriately organize proceedings in this Case. Nothing cited or argued in the Objections strip this Court of this authority. First, this Court can utilize Bankruptcy Code section 305(a) to suspend the cases and permit administrative matters as well as the dismissal hearing and standing motion to proceed. The cases cited in the Cross-Motion for the authority to allow certain matters to proceed in the Court's discretion are unrebutted. That authority extends to allowing substantive, non-administrative matters to proceed while the case is suspended. *See In re Modell's Sporting Goods Inc.*, Case No. 20-14179 (Bankr. D.N.J. Mar. 11, 2020) (permitting a Debtor requested lease rejection process to continue). Arguing the merits, the Debtor states that the federal and state tort systems do not provide them forums where their interests are protected. But that argument, apart from being false, was specifically rejected by the Third Circuit in rendering its decision dismissing LTL 1.0.

15. Second, this Court can look to its inherent authority to control its docket as well as Rule 1 of the Federal Rules of Civil Procedure as augmented by Bankruptcy Code section 105(a). By launching its Plan, the Debtor and the Counsel Committee are demanding that this Court embark on a series of contentious litigations on an unlawful plan that seeks to discharge independent non-debtor liability. None of this litigation is necessary now. The Motion to Dismiss is a gating issue, and its final resolution will frame the next steps in the case, if any. Proceeding with disclosure statement and plan issues now is premature, costly and a waste of judicial and party resources, until the pre-requisite dismissal litigation is resolved on a final basis.

## **CONCLUSION**

16. WHEREFORE, the TCC respectfully requests that this Court overrule the Objections and grant the Cross-Motion.

/s/Daniel M. Stolz

Dated: May 15, 2023

Daniel M. Stolz, Esq.
GENOVA BURNS LLC
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
Telephone: (973) 230-2095
Email: DStolz@genovaburns.com

*Proposed Local Counsel to the Official Committee of Talc Claimants*