**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**WOLLMUTH MAHER & DEUTSCH LLP**
Paul R. DeFilippo, Esq.
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*

| In re: | Chapter 11 |
|---|---|
| LTL MANAGEMENT LLC,[1] | Case No.: 23-12825 (MBK) |
| Debtor. | Judge: Michael B. Kaplan |
| | **Hearing Date and Time:**<br>May 16, 2023 at 10:00 a.m. |

# DEBTOR'S OBJECTION TO THE OFFICIAL COMMITTEE OF TALC CLAIMANTS' MOTION TO COMPEL

LTL Management LLC, the debtor in the above-captioned case (the "Debtor" or "LTL"), submits this objection to the *Motion to Compel* [Dkt. 441] (the "Motion") filed by the Official Committee of Talc Claimants (the "TCC"). The Debtor also submits the *Declaration of Mark W.*

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

1

*Rasmussen in Support of the Debtor's Objection to the Official Committee of Talc Claimants' Motion to Compel* (the "Counsel Declaration"), filed contemporaneously herewith. In support of this Objection, LTL respectfully states as follows:

## PRELIMINARY STATEMENT

The motion to compel LTL to "immediately produce all communications between LTL and J&J concerning the termination, or putative voidness or voidability of the 2021 Funding Agreement," Mot., 3, should be denied.

Affiliated companies can share—and commonly do share—privileged communications and work product under a common interest without waiving any privileges or protections that exist for those materials. Here, the common-interest doctrine protects any privileged communications between LTL and Johnson & Johnson ("J&J") concerning the unenforceability and termination of the 2021 Funding Agreement. LTL and J&J shared those communications under their common legal interest: to resolve all current and future talc-related claims through a bankruptcy filing and the funding of a section 524(g) trust and to effectuate the fundamental purpose of the parties' original funding arrangements in aid of that broader goal. The TCC provides this Court no basis for breaching common-interest protection, much less for imposing at-issue waiver or any other exception to privilege protection.

## ARGUMENT

**I. THE COMMON-INTEREST DOCTRINE PROTECTS THE INFORMATION SOUGHT BY THE MOTION.**

1. Courts routinely hold that sharing privileged information among corporate affiliates does not waive privilege. See In re Teleglobe Commc'ns Corp., 493 F.3d 345, 369 (3d Cir. 2007); see also Am. Airlines, Inc. v. Travelport Ltd., NO. 4:11-CV-244-Y, 2012 WL 12884822, at *5 (N.D. Tex. July 16, 2012); see also Wright & Miller, Federal Practice and

Procedure, § 5505 (1st ed. 2022) ("A corporate conglomerate has been treated as the joint clientship of the parent and its subsidiaries."); In re JP Morgan Chase & Co. Sec. Litig., 2007 WL 2363311, at *6 (N.D. Ill. Aug. 13, 2007) ("[C]onfidential documents shared between members of a corporate family do not waive the attorney-client privilege."); see also Holquin v. Celebrity Cruises, Inc., No. 10–20215–CIV, 2010 WL 6698221, at *2 (S.D. Fla. July 22, 2010) ("It is well settled that [the] attorney-client privilege is not waived merely because the communications involved extend across corporate structures to encompass parent corporations, subsidiary corporations, and affiliated corporations.") (quoting Crabb v. KFC Nat'l Mgmt. Co., 952 F.2d 403 (6th Cir. 1992)).

2.  The protection of the common-interest doctrine applies to unaffiliated parties, as well, and "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." Teleglobe Commc'ns, 493 F.3d at 364. The doctrine applies when: (1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not otherwise been waived. See id.; In re Leslie Controls, Inc., 437 B.R. 493, 496 (Bankr. D. Del. 2010). The "parties need not be in complete accord" for the common-interest doctrine to apply; they need only share "at least a substantially similar legal interest." Leslie Controls, 439 B.R. at 496; Teleglobe Commc'ns, 493 F.3d at 365. The parties' interests "may even be adverse in some respects." Andritz Sprout-Bauer, Inc. v. Beazer E., Inc., 174 F.R.D. 609, 634 (M.D. Pa. 1997).

3.  The common-interest doctrine can apply to transactions, to matters in anticipation of litigation, and in litigation itself. See Teleglobe Commc'ns, 493 F.3d at 364; La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp., 253 F.R.D. 300, 310 (D.N.J. 2008) ("Defendant has

3

established that pre-transaction they anticipated the same claims and shared a common-interest in defending against those claims. Thus, Defendants have established that the common-interest privilege precludes the discovery sought.").

4. The common-interest doctrine's application in bankruptcy is equally well established. Some examples of its application include debtors sharing a common interest with (a) an ad hoc committee, (b) a prepetition future asbestos claims representative, (c) a creditors committee, and (d) an affiliate company. See In re Cherokee Simeon Venture I, LLC, No. 12-12913 (KG), 2012 WL 12940975, at *3 (Bankr. D. Del. May 31, 2012); In re Tribune Co., No. 08-13141 KJC, 2011 WL 386827, at *4 (Bankr. D. Del. Feb. 3, 2011); Leslie Controls, 437 B.R. at 496; Kaiser Steel Corp. v. Frates, 84 B.R. 202, 205 (Bankr. D. Colo. 1988).

5. Applied here, the common-interest doctrine protects any privileged or protected communications or work product shared between LTL and J&J concerning the termination, voidness, or voidability of the 2021 Funding Agreement. LTL and J&J shared and continue to share a common legal interest in effectuating the fundamental purpose of their original funding arrangements in aid of resolving all current and future talc-related claims through a bankruptcy filing and the funding of a section 524(g) trust. These communications occurred as LTL and J&J considered the legal impact of the Third Circuit's decision in LTL's first bankruptcy and whether and the extent to which its longstanding goal of an equitable talc-claim resolution could be achieved through a second filing.[2]

---

[2] Mr. Kim testified that counsel for LTL and counsel for J&J discussed the potential unenforceability of the 2021 Funding Agreement immediately after the Third Circuit issued its opinion. See Apr. 18, 2023 Hr'g Tr. 63:23-64:3, 75:11-19, 81:21-82:1, Counsel Decl., Ex. A; see also Dep. of John Kim, Apr. 14, 2023 ("Kim Dep."), 190:1-191:8, Counsel Decl., Ex. B. The relief sought in the Motion would include disclosure of counsels' discussions immediately in the wake of the Third Circuit's opinion, which would obviously disclose counsels' mental impressions.

NAI-1536839707

6.  John Kim explained this common interest in his declaration in support of first day pleadings [Dkt. 4] (the "First Day Declaration"), ¶ 77 ("The Debtor continues to believe, as do Holdco and J&J, that chapter 11 proceedings are the only method through which the Debtor and talc claimants can fully, equitably and permanently resolve all current and future talc-related claims."); ¶ 78 (the Third Circuit's "determination defeated the fundamental purpose" of the 2021 Funding Agreement, "which purpose was to facilitate the Debtor's goal of resolving all current and future talc claims pursuant to section 524(g) of the Bankruptcy Code").  Mr. Kim explained that common interest again in his testimony at the preliminary injunction hearing.  See Apr. 18, 2023 Hr'g Tr. 64:20-65:10 (describing how the purpose of the original funding agreement was frustrated and subsequent decision to find a solution to achieve the original purpose); 65:15-25 (stating LTL did not give up original funding agreement, it was void or voidable, and so new agreement avoided this risk); 66:13-17 (describing J&J's commitment to fund up to the fair market of JJCI under the 2021 Funding Agreement); 78:10-14 (describing J&J's $8.9 billion commitment under the new agreement); 81:21-82:1 (describing ongoing discussions amongst lawyers, including the option of a new funding agreement, in light of Third Circuit decision), Counsel Decl., Ex. A.

7.  LTL and J&J have protected their commonly interested communications from disclosure during the depositions that preceded the preliminary injunction hearing, instructing Mr. Kim, Debtor's Chief Legal Officer, and other witnesses not to disclose the shared privileged communications.  See Kim Dep., 83:17-84:4, 86:20-24, Counsel Decl., Ex. B; Apr. 18, 2023 Hr'g Tr. 68:7-14, Counsel Decl., Ex. A.

8.  The TCC now asks the Court to disregard the obvious and longstanding common interest between LTL and J&J.  It argues that when LTL and J&J communicated in the days

5

before the termination and substitution agreement, their interests diverged so completely as to defeat common-interest protection. But the record is all to the contrary. As Mr. Kim testified and the second funding agreement reflects, LTL and J&J formed a "consensus" that the original agreement had failed of its essential purpose and chose to terminate and replace it with a new funding agreement. See Apr. 18, 2023 Hr'g Tr. 63:23-64:3, 75:11-19, 79:16, Counsel Decl., Ex. A; see also Kim Dep. 144:16-21, 190:1-20, Counsel Decl., Ex. B; see also First Day Decl., Annex D, Recitals K, L; see also id., Annex E, Recital A. That new agreement served the same common purpose as the original.[3]

9.    That LTL and J&J are counterparties to the funding agreements does not bar application of the common-interest doctrine. See Sealed Air Corp., 253 F.R.D. at 310 ("[T]he fact that . . . parties may be on adverse sides of a business deal . . . does not compel the conclusion that the parties did not share a common legal interest, such as when the parties may face the possibility of joint litigation in which they would share a common interest."). LTL and J&J share a common interest in upholding the fundamental purpose and intent of the parties' original funding arrangements and resolving all current and future talc-related claims through a bankruptcy filing. The TCC has not shown any adversity sufficient to set this common interest aside.

10.    The parties' mutual acknowledgment of the risk of unenforceability of the original funding agreement and their efforts to address that risk through its replacement with the second funding agreement present no divergence of interest, much less adversity that could

---

[3]    The TCC mischaracterizes John Kim's testimony when it asserts that the change in the funding agreement was "orchestrated by J&J and agreed to by LTL." Mot., 3. Mr. Kim stated that the parties' lawyers communicated on the issue and mutually worked to achieve the common interest in an equitable resolution. See Kim Dep. 83:1-85:5, 85:23-86:24, 190:1-191:8, Counsel Decl., Ex. B. As Mr. Kim also testified, the parties had discussions through their counsel, which was appropriate on a legal issue. See id. 86:8-12.

6

defeat common-interest protection. In light of the material risk to the enforceability of the original funding agreement—and despite the TCC's rhetoric—the amended funding arrangement could not have "stripp[ed]" LTL of any value that it was otherwise entitled to under the original agreement. Equally unfounded is the TCC's accusation that the new funding arrangements deprived LTL of "more than $60 billion." The value of the prior funding agreement was the amount of the liability (minus the value of Debtor), not "more than $60 billion," and that has not changed. See Apr. 18, 2023 Hr'g Tr. 77:24-78:14, Counsel Decl., Ex. A; see also First Day Decl. ¶¶ 80-81; id., Annex D, ¶¶ 1-2; id., Annexes E, F. LTL received a new funding agreement with Johnson & Johnson Holdco (NA) Inc. ("Holdco") that provides an estimated $30 billion in value. See Apr. 18, 2023 Hr'g Tr. 62:23-25, Counsel Decl., Ex. A; see also Kim Dep. 67:25-68:6, Counsel Decl., Ex. B. The Motion advances no argument, much less any evidence, that this is insufficient or that LTL was rendered insolvent as a result of the termination and replacement of the original funding agreement. Accordingly, there is no basis on this record to vitiate the common-interest protection. See, e.g., Teleglobe Commc'ns, 493 F.3d at 367; cf. Sealed Air Corp., 253 F.R.D. at 310 (all interests need not coincide when parties to transaction anticipated asbestos litigation and shared substantially similar legal interest in defending against it); Leslie Controls, 437 B.R. at 502 (recognizing parties' common legal interest against "common enemy" insurers, regardless of parties' ongoing plan negotiations); Cherokee Simeon, 2012 WL 12940975, at *3 (protecting communications made in furtherance of common effort to prosecute and defend litigation, and holding that "privilege still applies even where parties' interests are adverse in substantial respects, but aligned with respect to others").

NAI-1536839707

11. For good reason, courts have repeatedly recognized that the common-interest doctrine protects parties against the forcible disclosure of privilege that the TCC seeks. For equally good reason, the Court should deny the Motion.

## II. LTL HAS NOT PLACED ITS PRIVILEGED COMMUNICATIONS OR WORK PRODUCT AT ISSUE, AND NO EXCEPTION TO PRIVILEGE APPLIES.

12. The attorney-client privilege is "placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication." Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863–64 (3d Cir. 1994). The Third Circuit in Rhone-Poulenc distinguished between cases where a litigant affirmatively places its attorney's advice at issue (e.g., by filing a malpractice action against its attorney, or by asserting defenses premised on reliance on attorney advice), from cases where the litigant's state-of-mind or opinion and belief may be merely relevant. See id. at 864. The former may waive privilege; the latter does not. "Relevance," the Third Circuit held, "is not the standard for determining whether or not evidence should be protected from disclosure as privileged, and that remains the case even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue." Id.

13. The TCC suggests that LTL cannot establish the propriety of the LTL second bankruptcy filing without proffering its privileged communications shared with J&J under their common interest. Mot., 3. The TCC is wrong. LTL has neither withheld the fact that the parties communicated about the termination of that agreement nor when they did so. But LTL has not used and will not use any privileged communications in opposing the motions to dismiss or otherwise in pursuing chapter 11 relief. Rather, LTL will establish that the original funding agreement had failed of its essential purpose through the words of the agreement and other non-privileged facts. The Third Circuit's decision, the terms of the original funding agreement

8

and those of the termination and substitution agreement, and the case law on frustration of purpose and like doctrines themselves establish the failure of purpose and the material risk to the enforceability of the original funding agreement. LTL has no need to use privileged communications to prove or disprove any issue in this case.

14. The TCC cannot force LTL to put its privileged communications at issue by asking questions that invade the privilege. See Jorjani v. N.J. Inst. of Tech., No. CV 18-11693 (WJM), 2023 WL 2986694, at *11 (D.N.J. Apr. 18, 2023) (collecting cases), appeal docketed, No. 2:18-CV-11693 (D.N.J. May 2, 2023); Noonan v. Kane, No. CV 15-6082, 2019 WL 5722213, at *2 (E.D. Pa. Nov. 5, 2019) (rejecting argument that party put advice of counsel at issue when she merely answered opposing counsel's question at deposition; clarifying that "[o]therwise, opposing counsel by artful questioning of a witness could easily thwart her attorney-client privilege and the work-production protection"); N.J. Mfrs. Ins. Co. v. Brady, No. 3:15-CV-02236, 2017 WL 264457, at *13 (M.D. Pa. Jan. 20, 2017) ("The mere fact that a party states that it relied on the advice of counsel in making a decision, standing alone, does not show that the party took an 'affirmative step' to place that advice in issue. . . . This is especially true when the deposition testimony on which an alleged waiver is based was elicited in response to questions posed by defense counsel.").

15. The TCC, in a passing parenthetical in a citation to In re Chevron Corp., 633 F.3d 153, 166 (3d Cir. 2011), and without argument, notes that the "crime-fraud exception to the attorney-client privilege applies and communications made in furtherance of the anticipated crime or fraud are not protected from disclosure." Mot., 3-4. There is no basis to apply the crime-fraud exception to this case. The TCC does not assert, nor attempt to substantiate, any element of the crime-fraud exception in its Motion. Nor could it.

9

## **CONCLUSION**

For these reasons, the TCC's motion to strip the Debtor and J&J of the common interest doctrine's protection for shared privileged communications and work product should be denied.

Dated: May 15, 2023                             **WOLLMUTH MAHER & DEUTSCH LLP**

*/s/ Paul R. DeFilippo*
Paul R. DeFilippo, Esq.
James N. Lawlor, Esq.
Joseph F. Pacelli, Esq. (admitted *pro hac vice*)
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
pdefilippo@wmd-law.com
jlawlor@wmd-law.com
jpacelli@wmd-law.com

**JONES DAY**
Gregory M. Gordon, Esq.
Brad B. Erens, Esq.
Dan B. Prieto, Esq.
Amanda Rush, Esq.
2727 N. Harwood Street
Dallas, Texas 75201
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
gmgordon@jonesday.com
bberens@jonesday.com
dbprieto@jonesday.com
asrush@jonesday.com
(Admitted *pro hac vice*)

*PROPOSED ATTORNEYS FOR DEBTOR*