**<u>Exhibit A – Agreement</u>**



*Personal and Confidential*

April 14, 2023

The Official Committee (the "Committee") of Talc Claimants
of LTL Management LLC (the "Debtor")
in care of the Proposed Co-Chairs of the Committee

Michelle Parfitt, Esq., as specifically authorized by committee co-chair Rebecca Love
c/o Ashcraft & Gerel, LLP
1825 K Street, NW, Suite 700
Washington, DC 20006

Leigh O'Dell, Esq., as specifically authorized by committee co-chair Alishia Landrum
c/o Beasley Allen Law Firm
PO Box 4160
Montgomery, AL 36103

Lisa Nathanson Busch Esq., as specifically authorized by committee co-chair Patricia Cook
c/o Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10083

Dear Ladies and Gentlemen:

This letter agreement (this "Agreement") confirms the terms under which the Committee has engaged Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), effective as of the date indicated above (the "Effective Date"), to provide financial advisory and investment banking services to the Committee in connection with the Debtor's Chapter 11 case (the "Case"), which are pending in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

1.    **Services**.  Pursuant to its engagement by the Committee, Houlihan Lokey's services will consist of, if appropriate and if requested by the Committee:

   a)    Preparing financial analyses relating to the Case, the Debtor and non-debtor affiliates;

As of April 14, 2023
Page 2

    b)    Supporting the Committee and its advisors in litigation efforts relating to the Debtor and non-debtor affiliates, including preparation of Committee witnesses, review of discovery documents, attending court hearings, depositions, and other meetings, and other litigation support;

    c)    Providing testimony in court on behalf of the Committee, if necessary;

    d)    Analyzing business plans and forecasts of the Debtor;

    e)    Evaluating the assets and liabilities of the Debtor;

    f)    Assessing the financial issues and options concerning the Debtor;

    g)    Providing such financial analyses as the Committee may require in connection with the Case;

    h)    Analyzing strategic alternatives available to the Committee and the Debtor;

    i)    Evaluating the Debtor's and its affiliates capacity to pay;

    j)    Assisting the Committee in identifying potential alternative sources of liquidity in connection with any debtor-in-possession financing, any Chapter 11 plan(s) or otherwise;

    k)    Representing the Committee in negotiations with the Debtor and third parties with respect to any of the foregoing; and

    l)    Providing such other financial advisory and investment banking services as may be agreed upon by Houlihan Lokey and the Committee, subject to Bankruptcy Court approval.

2.    **Committee Engagement**.  Neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee ("Committee Counsel")), shall be liable for the fees, expenses or other amounts payable to Houlihan Lokey hereunder.  Houlihan Lokey is providing its services as the investment banker to the Committee, and is not providing any services on behalf of the individual members of the Committee.  To the extent any issue arises as to the scope, nature or substance of Houlihan Lokey's analysis, Houlihan Lokey and the Committee, with the advice of Committee Counsel, shall in good faith work to mutually resolve such issue. At the direction of Committee Counsel, certain communications and correspondence from Houlihan Lokey, and work product and analyses prepared by Houlihan Lokey for the Committee in connection with this matter, will be considered in preparation for litigation over the restructuring of the Debtor and, accordingly, will be subject to the attorney-client privilege and work-product doctrine.

3.    **Fees and Expenses**.  In consideration of Houlihan Lokey's acceptance of this engagement, the Debtor shall pay the following:

    (i)    *Monthly Fees*:  Houlihan Lokey shall be paid in advance a nonrefundable monthly cash fee (each being a "Monthly Fee") of: (i) $400,000 on each of the Effective Date, the first, second and third monthly anniversary of the Effective Date; and (ii) $175,000.00 on each monthly anniversary of the Effective Date thereafter. The first payment shall be made upon the approval of this Agreement by the Bankruptcy Court and shall be in respect of the period as from the Effective Date through the month in which payment is made. Thereafter, payment of the Monthly Fee shall be made on every monthly anniversary of the Effective Date during the term of this Agreement. Each Monthly Fee shall be earned upon Houlihan

As of April 14, 2023
Page 3

        Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein.

(ii)   *Deferred Fee*: The Debtor shall pay Houlihan Lokey a fee (the "Deferred Fee") to be paid in cash of $3,000,000. The Deferred Fee shall be earned and payable upon the consummation of a Chapter 11 plan of reorganization with respect to the Debtor; and

(iii)   *Discretionary Fee:* In addition to the other fees provided for herein, at any time the Committee, based upon the Committee's business judgement, and Houlihan Lokey may, in good faith and subject to approval by the Bankruptcy Court, agree on additional compensation to be paid (the "Discretionary Fee"). The Committee shall file a motion seeking Court approval of the Discretionary Fee, which may be objected to by any party in interest including, but not limited to, the Court, U.S. Trustee and Fee Examiner.

        In the event that a Discretionary Fee is paid, 50% of the Monthly Fees received by Houlihan Lokey and approved by the final order of the Bankruptcy Court shall be credited against the Discretionary Fee (as defined above) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), except that, in no event, shall such Discretionary Fee be reduced below zero.

For the avoidance of doubt and notwithstanding anything to the contrary herein, Houlihan Lokey shall be entitled to receive no less than $1,200,000 in aggregate fees under this Agreement (the "Minimum Fee"). In the event this Agreement expires or is terminated prior to payment of Monthly Fees that are, in the aggregate, equal to or greater than the Minimum Fee, then the Debtor shall be required to pay to Houlihan Lokey any difference between the Minimum Fee and such aggregate amounts previously paid as Monthly Fees.

4.     **Term and Termination.** In the event that (a) the Committee's application for employment of Houlihan Lokey under Sections 328(a) and 1103 of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") is not granted by the Bankruptcy Court or (b) the form of the order entered by the Bankruptcy Court granting such employment application is not acceptable to Houlihan Lokey in its sole discretion, this Agreement shall terminate immediately. Otherwise, following the third monthly anniversary of the Effective Date, this Agreement may be terminated at any time by either Houlihan Lokey or the Committee upon thirty days prior written notice of termination to the other party. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 and 3 and (ii) Houlihan Lokey's right to receive, and the Debtor's obligation to pay, any and all fees, expenses and other amounts due hereunder, as more fully set forth in this Agreement.

        In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Debtor of the Deferred Fee described in this Agreement so long as the conditions set forth in Section 3(ii) hereunder causing such Deferred Fee to be due and payable are satisfied during the term of this Agreement or within 18 months after termination of this Agreement.

5.     **Reasonableness of Fees.** The Committee acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and of the industry in which the Debtor operates, financing skills and merger and acquisition capabilities will inure to the benefit of the Committee, that the value to the Committee of Houlihan Lokey's services derives in substantial part from that experience, expertise, knowledge, skills and capabilities and that, accordingly, the structure and

As of April 14, 2023
Page 4

amount of Houlihan Lokey's compensation hereunder (and any modifications thereto which are agreed between Houlihan Lokey and the Committee) is reasonable, regardless of the number of hours to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder.

The parties also acknowledge that this engagement will require a substantial professional commitment of time and effort by Houlihan Lokey. Moreover, the amount of time and effort may vary substantially during different periods of the engagement, thereby creating potential "peak load" issues. As a result, in order to ensure the availability of all necessary professional resources, whenever required, Houlihan Lokey may be foreclosed from pursuing other alternative engagement opportunities. In light of the foregoing, and given: (i) the numerous issues which can currently be anticipated in engagements such as this, (ii) Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, (iii) the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and (iv) the market rate for professionals of Houlihan Lokey's stature and reputation for services of this nature, whether in-court or out-of-court, the parties agree that (x) the fee and expense reimbursement arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Debtor and the Committee and (y) none of the fees hereunder shall be considered to be "bonuses" or fee enhancements under applicable law. The parties further agree and acknowledge that: (a) additional issues and developments, not currently anticipated, may arise and have an impact upon the services to be rendered by Houlihan Lokey hereunder, and may result in substantially more work and/or services being performed by Houlihan Lokey than is anticipated at this time; and (b) as a result of such unanticipated issues and/or developments, the results of Houlihan Lokey's services under this Agreement may also be substantially more beneficial than anticipated at this time.

6.     **Expenses**.  In addition to all of the other fees and expenses described in this Agreement, the Debtor shall, upon Houlihan Lokey's request, reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed-fee arrangements made with, travel agents, airlines or other vendors, and (ii) research, database and similar information charges paid to third party vendors, and reprographics expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Debtor for the fees and expenses of Houlihan Lokey's legal counsel incurred in connection with (i) the negotiation and performance of this Agreement and the matters contemplated hereby.

7.     **Invoicing and Payment**.  All amounts payable to Houlihan Lokey shall be made in lawful money of the United States, in accordance with the payment instructions set forth on the invoice provided with this Agreement, or to such accounts as Houlihan Lokey shall direct, and the Debtor shall provide contemporaneous written notice of each such payment to Houlihan Lokey. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

8.     **Information**.  The Committee shall use all reasonable efforts to cause the Debtor (i) to provide Houlihan Lokey with access to management and other representatives of the Debtor and other participants in a transaction, as reasonably requested by Houlihan Lokey and (ii) to furnish all data, material and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial

As of April 14, 2023
Page 5

condition and prospects of the Debtor that Houlihan Lokey reasonably requests in connection with the services to be performed for the Committee hereunder. With respect to financial forecasts and projections that may be furnished to or discussed with Houlihan Lokey by the Debtor or any other entity, Houlihan Lokey will be entitled to assume that such financial forecasts and projections have been or will be reasonably prepared in good faith on bases reflecting the best currently available estimates and judgments of the Debtor's or such other entity's management, as the case may be, as to the matters covered thereby. The Committee shall, or will use reasonable efforts to cause the Debtor to, promptly notify Houlihan Lokey in writing of any material inaccuracy or misstatement in, or material omission from, any information previously delivered to, or discussed with, Houlihan Lokey, or any materials provided to any interested party. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Debtor or the Committee or otherwise reviewed by, or discussed with, Houlihan Lokey. The Committee understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and shall not be liable for any inaccuracies or omissions therein. The Committee acknowledges that Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Debtor or any other party or to evaluate the solvency of any party under any applicable laws relating to bankruptcy, insolvency or similar matters. The Committee acknowledges that Houlihan Lokey's ability to render the services hereunder will depend upon the extent of cooperation that it receives from the Debtor and the Debtor's advisors. Houlihan Lokey's role in reviewing any information is limited solely to performing such a review as it shall deem necessary to support its own advice and analysis and shall not be on behalf of any other party. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Committee in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or entity or used for any other purpose. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey.

9. **Limitations on Services as Advisor.** Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing, by Houlihan Lokey and the Committee. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, profitability or liquidity improvements or similar activities. Houlihan Lokey makes no representation or warranty about the Debtor's ability to (i) successfully improve its operations, (ii) maintain or secure sufficient liquidity to operate its business or (iii) successfully complete any transaction(s). The parties understand that Houlihan Lokey is being engaged hereunder as an independent contractor to provide the services hereunder solely to the Committee, and that Houlihan Lokey is not acting as an agent or fiduciary of the Debtor, the Committee or any other person or entity in connection with this engagement, and the Committee agrees that it shall not make, and hereby waives, any claim based on an agency or fiduciary relationship or the assertion thereof. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Committee's or the Debtor's decision on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any transaction(s).

10. **Bankruptcy Court Approval.** The Committee shall, as soon as practicable following the execution of this Agreement by the Committee, seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Sections 328(a) and 1103 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders, and Houlihan Lokey's

employment hereunder shall not be subject to any other standard of review, including under Section 330 of the Bankruptcy Code. In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges the reasonableness of Houlihan Lokey's fee and expense reimbursement arrangement (as set forth more fully in Section 5 hereof). The Committee shall use its best efforts to cause Houlihan Lokey's employment application to be considered on the most expedited basis. The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of their filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion. Following entry of the order authorizing the employment of Houlihan Lokey, the Debtor shall pay all fees and expenses due pursuant to this Agreement, as approved by the Bankruptcy Court, as promptly as possible in accordance with the terms of this Agreement and applicable orders of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses (including, without limitation, interim fees and final fees) with the Bankruptcy Court.

The Committee agrees that Houlihan Lokey's post-petition compensation as set forth herein and payments made pursuant to the expense reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under sections 503(b)(l)(A), 503(b)(2) and 507(a)(2) of the Bankruptcy Code, and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses (which carve-outs shall be adequate to enable the Debtor to pay Houlihan Lokey's fees and expenses, fully and promptly) in effect pursuant to one or more financing or cash collateral orders entered by the Bankruptcy Court in accordance with the terms thereof, provided, however, that the form of documentation to be used to satisfy the foregoing obligations of the Debtor shall be acceptable to Houlihan Lokey in its sole discretion. The Committee will use its best efforts to ensure that any sale order, debtor-in-possession financing order, cash collateral order, adequate protection order and/or similar order entered in any bankruptcy case involving the Debtor (i) permits the use of sale, financing and cash collateral proceeds for the full and prompt payment of all of Houlihan Lokey's fees and expenses contemplated hereby and (ii) contains the agreements by the Debtor's lenders (or parties whose cash collateral is being used) that Houlihan Lokey's fees and expenses will be paid at the times and from the sources specified herein. If such orders and carve-outs are or become insufficient to provide the foregoing assurances, Houlihan Lokey shall then have no obligation to provide further services under this Agreement.

Houlihan Lokey shall have no obligation to provide services under this Agreement unless the foregoing authorizations, including authorization to employ Houlihan Lokey under Section 328(a) of the Bankruptcy Code, are granted by final order of the Bankruptcy Court that is no longer subject to appeal, rehearing, reconsideration or petition for certiorari and is acceptable to Houlihan Lokey in all respects. If such an order is not obtained, or is later reversed, vacated, stayed or set aside for any reason, Houlihan Lokey may terminate this Agreement, and the Debtor shall reimburse Houlihan Lokey for all fees and reasonable expenses incurred prior to the date of such termination, subject to any requirements of the Bankruptcy Code, the Bankruptcy Rules, applicable orders of such Bankruptcy Court and applicable local rules and orders.

The Committee will use its best efforts to ensure that, to the fullest extent permitted by law, any confirmed plan in the Case contains typical and customary release provisions (both from the Debtor and from third parties) and exculpation provisions releasing, waiving and forever discharging the HL Parties (as defined below) from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities related to the Debtor or the engagement described in this Agreement. The terms of

this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

11.     **Credit**.  Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Debtor's logo or other identifying marks) describing its services in connection with this engagement.

12.     **Choice of Law; Jury Trial Waiver; Jurisdiction**.  THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK.  THIS AGREEMENT AND ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS.  EACH OF HOULIHAN LOKEY AND THE COMMITTEE IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT.  REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) SHALL BE BROUGHT AND MAINTAINED IN THE BANKRUPTCY COURT.

13.     **Indemnification and Exculpation.**  As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services to the Committee under this Agreement, the Debtor shall (i) indemnify and hold harmless each HL Party, to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, and (ii) reimburse each HL Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling, compromising or otherwise becoming involved in any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person or entity (including, without limitation, any shareholder or derivative action or any claim to enforce this Agreement), arising out of or related to the formulation of any plan of reorganization for the Debtor or Houlihan Lokey's engagement under, or any matter referred to in, this Agreement.  However, the Debtor shall not be liable under the foregoing indemnification provision for any loss, claim, damage or liability which arises out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of the Committee) and is finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such HL Party.

If for any reason the foregoing indemnification or reimbursement is unavailable to any HL Party or insufficient to fully indemnify any HL Party or hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in subsections (i) or (ii) of such indemnification or reimbursement provisions, then the Debtor shall contribute to the amount paid or payable by such HL Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Committee and the Debtor, on the one hand, and Houlihan Lokey, on the other hand, in connection with the services rendered by Houlihan Lokey. If, however, the allocation

provided by the immediately preceding sentence is not permitted by applicable law, then the Debtor shall contribute to such amount paid or payable by such HL Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Committee and Debtor (and their respective affiliates, and their respective directors, employees, agents and other advisors), on the one hand, and such HL Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the HL Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Debtor pursuant to this Agreement. Relative benefits received by the Committee and the Debtor, on the one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Debtor, and their respective security holders, creditors (including members of the Committee), and other affiliates, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement. Neither the Committee nor any of the Debtor shall settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement (whether or not an HL Party is an actual or potential party thereto), or participate in or otherwise facilitate any such settlement, compromise, consent or termination by or on behalf of any person or entity, unless such settlement, compromise, consent or termination contains a release of the HL Parties reasonably satisfactory in form and substance to Houlihan Lokey.

Neither Houlihan Lokey nor any other HL Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Committee, the Debtor or any person or entity asserting claims arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, except for losses, claims, damages or liabilities incurred by the Committee and/or the Debtor which arise out of any action or failure to act by such HL Party (other than an action or failure to act undertaken at the request or with the consent of the Committee) and are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such HL Party, and no HL Party shall have any liability whatsoever to Committee Counsel, any individual member of the Committee, or any other person or entity. The indemnity, reimbursement, and other obligations and agreements of the Committee and the Debtor set forth herein (i) shall, for the avoidance of doubt, apply to any activities or actions arising out of or related to Houlihan Lokey's engagement under, or any matter referred to in, this Agreement, prior to the Effective Date, and to any modifications of this Agreement, and (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any HL Party. The parties agree that Houlihan Lokey would be irreparably injured by any breach of any such obligations or agreements, that money damages alone would not be an adequate remedy for any such breach and that, in the event of any such breach, Houlihan Lokey shall be entitled, in addition to any other remedies, to injunctive relief and specific performance.

For purposes of this Agreement, the term "HL Parties" shall mean Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (each, an "HL Party").

14.     **Miscellaneous.**  This Agreement shall be binding upon the parties hereto, the Debtor and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed in the Case.

As of April 14, 2023
Page 9

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the Committee, the HL Parties and each of their respective successors, heirs and assigns, any rights or remedies (directly or indirectly as a third party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by Houlihan Lokey and the Chair or other authorized representative of the Committee and approved by the Bankruptcy Court.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, each of the parties hereto will provide Houlihan Lokey upon request (i) certain information regarding the identities of all individuals who, directly or indirectly, own 25% or more of the Debtor's equity interests as well as the Debtor's executive officers and other control persons, and (ii) certain identifying information necessary to verify such party's identity, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement, or trust instrument. By executing this Agreement, the Committee confirms that all such information provided to Houlihan Lokey is accurate and complete.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

In order to enable Houlihan Lokey to bring relevant resources to bear on its engagement hereunder from among its global affiliates, the Committee agrees that Houlihan Lokey may share information obtained from the Committee, the Debtor and other parties hereunder with certain of its affiliates, and may perform the services contemplated hereby in conjunction with such affiliates.

The Committee has all requisite power and authority to enter into this Agreement. This Agreement has been duly and validly authorized by all necessary action on the part of the Committee and has been duly executed and delivered by the Committee and constitutes a legal, valid and binding agreement of the Committee, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Committee understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Committee confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

As of April 14, 2023
Page 10

       The Committee understands and acknowledges that Houlihan Lokey and its affiliates (collectively, the "Houlihan Lokey Group") engage in providing investment banking, securities trading, financing, financial advisory, and consulting services and other commercial and investment banking products and services to a wide range of institutions and individuals. In the ordinary course of business, the Houlihan Lokey Group and certain of its employees, as well as investment funds in which they may have financial interests or with which they may co-invest, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Debtor or any other party that may be involved in the matters contemplated by this Agreement or have other relationships with such parties.  With respect to any such securities, financial instruments and/or investments, all rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion.  In addition, the Houlihan Lokey Group may in the past have had, and may currently or in the future have, financial advisory or other investment banking or consulting relationships with parties involved in the matters contemplated by this Agreement, including parties that may have interests with respect to the Debtor, a transaction or other parties involved in a transaction, from which conflicting interests or duties may arise.  Although the Houlihan Lokey Group in the course of such other activities and relationships or otherwise may have acquired, or may in the future acquire, information about the Debtor, a transaction or such other parties, or that otherwise may be of interest to the Committee, the Houlihan Lokey Group shall have no obligation to, and may not be contractually permitted to, disclose such information, or the fact that the Houlihan Lokey Group is in possession of such information, to the Committee or to use such information on the Committee's behalf.

All of us at Houlihan Lokey thank you for choosing us to advise the Committee, and look forward to working with you on this engagement.

Very truly yours,

**HOULIHAN LOKEY CAPITAL, INC.**

By: _____
**Saul E. Burian**
**Managing Director**

Accepted and agreed to as of the Effective Date:

**OFFICIAL COMMITTEE OF TALC**
**CLAIMANTS OF LTL MANAGEMENT, LLC**

By:    _____, **Co-Chair of the Committee**

By:    _____, **Co-Chair of the Committee**

By:    _____, **Co-Chair of the Committee**