**EXHIBIT 16**

```
                    UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF NEW JERSEY

IN RE:                         .    Case No. 21-30589(MBK)
                               .
LTL MANAGEMENT LLC,            .
                               .
          Debtor.              .
. . . . . . . . . . . . . . . .
LTL MANAGEMENT, LLC,           .    Adversary No. 21-03032(MBK)
                               .
          Plaintiff,           .
                               .    Clarkson S. Fisher U.S.
v.                             .      Courthouse
                               .    402 East State Street
THOSE PARTIES LISTED ON        .    Trenton, NJ 08608
APPENDIX A TO THE              .
COMPLAINT, ET AL.,             .
                               .    Friday, February 18, 2022
          Defendants.          .    9:01 a.m.
. . . . . . . . . . . . . . . .

                   TRANSCRIPT OF TRIAL DAY FIVE
                BEFORE THE HONORABLE MICHAEL B. KAPLAN
                 UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor:           Jones Day
                          By:  GREGORY M. GORDON, ESQ.
                               DANIEL B. PRIETO, ESQ.
                               AMANDA RUSH, ESQ.
                          2727 North Harwood Street, Suite 500
                          Dallas, TX 75201

                          Jones Day
                          By:  ROBERT W. HAMILTON, ESQ.
                          325 John H. McConnell Blvd., Suite 600
                          Columbus, Ohio  43215-2673


Audio Operator:           Wendy Romero

Proceedings recorded by electronic sound recording, transcript
             produced by transcription service.
```

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjCourt@jjCourt.com**
**(609) 586-2311    Fax No. (609) 587-3599**

Case 23-01092-MBK    Doc -17    Filed 05/26/23    Entered 05/26/23 23:11:45    Desc
Exhibit 16 to Declaration of Daniel J. Merrett    Page 3 of 4

57

1   as a start here just to not even have to argue about this issue
2   of whether there's undercapitalization or unfairness or harm.
3   We just wanted to be past that issue.  We want to get to the
4   guts of this case, which is to negotiate an agreement on a
5   resolution of the talc claims.
6           Now the funding agreement, I want to spend a little
7   time on this because it's obviously extremely important to
8   understanding what the situation is.  But, again, you have two
9   payors here.  You have not only JJCI, but you have J&J.  And
10  part of the reason for that, Your Honor, is that in the other
11  cases, we heard complaints about, w ell, but we're worried that
12  the entity, the obligor, the payor in those cases is going to
13  be dividending assets away -- dividending assets up to the
14  parent.  At the end of the day, we're going to be left with an
15  empty bag.
16          And, you know, we try to learn from the other cases.
17  And so we thought let's take that issue off the table.  We'll
18  actually have an obligation from the ultimate parent.  So that
19  was based on learning that we had received from the North
20  Carolina cases, and frankly, you know, we've been criticized
21  greatly for forum shopping and filing in North Carolina.  But
22  part of the thinking was that we have a jurisdiction that's
23  actually confronted some of these issues.  We tried to learn
24  from those issue and actually address some of those issues in
25  how things were designed in connection with the restructuring.

Case 23-01092-MBK   Doc -17   Filed 05/26/23   Entered 05/26/23 23:11:45   Desc
Exhibit 16 to Declaration of Daniel J. Merrett   Page 4 of 4

58

```
 1              Also, I should just point out because of all the time
 2   that was spent trying to suggest some nefarious connection
 3   between the corporate restructuring and the spinoff, the fact
 4   that J&J is now including as a payor or isn't included as a
 5   payor in this funding agreement should eliminate any concern
 6   about that because it doesn't matter.  If assets are spun out,
 7   if that actually occurs, a transaction like that occurs,
 8   there's full protection because J&J is sitting there with an
 9   obligation to pay up to the value of Old JJCI.
10              And what's important, unlike the other cases, this
11   funding agreement sets the floor on the value.  It sets a
12   floor.  So whatever the value was basically the day because the
13   restructuring, that value is locked in.  So it can only go up.
14   It can't go down.  That's unlike other cases where it's
15   potentially the payor based on developments with its business
16   operations or what have you, you know, could suffer some
17   diminution in value.  That can't happen here.
18              There's another reason for doing this, again, to try
19   to eliminate some of the objections and concerns that we heard
20   with respect to the earlier funding agreements.
21        THE COURT:  Mr. Gordon, you said value of Old JJCI.
22   It's the value of New JJCI, is it not, under the funding
23   agreement?
24        MR. GORDON:  Well, no, it's the value of Old JJCI.
25   Actually, whatever that -- I hope I'm getting this right.  It's
```