# **EXHIBIT J**

Marc E. Wolin, Esq.
mwolin@saiber.com
John M. August, Esq.
jaugust@saiber.com
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
Tel: (973) 622-8401

-and-

Joseph D. Satterley, Esq.
jsatterley@kazanlaw.com
Denyse F. Clancy, Esq.
dclancy@kazanlaw.com
KAZAN, McCLAIN, SATTERLEY & GREENWOOD
A Professional Law Corporation
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Tel: (510) 302-1000

*Counsel for Mesothelioma victims*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| LTL MANAGEMENT LLC, | : | Case No. 23-12825 (MBK) |
| | : | |
| Debtor. | : | |
| | : | |

**KAZAN, MCCLAIN, SATTERLEY & GREENWOOD'S
RESPONSES TO DEBTOR'S FIRST SET OF
<u>INTERROGATORIES AND REQUEST FOR PRODUCTION</u>**

Kazan, McClain, Satterley & Greenwood ("KMSG") files the following Objections and Responses to Debtor's Interrogatories and Request for Production of Documents and states as follows.

**OBJECTIONS**

KMSG objects to the discovery requests sent to it on behalf of LTL Management. This proceeding is an abuse of process and a bad-faith manipulation of the Bankruptcy Code over which the subject matter jurisdiction of the Court has not been established.

KMSG is not a party to or "claimant" in this proceeding. KMSG is counsel for several mesothelioma plaintiffs, with claims against non-debtor Johnson & Johnson and bad faith debtor LTL Management. Service of discovery upon counsel for a plaintiff seeking the mental impressions, thought processes of counsel, or otherwise attempting to learn legal strategies are improper absent a showing that such discovery would lead to admissible evidence. No such showing has been made here.[1]

The only issue before the Court is the Debtor's good faith at the time of filing of this Petition. None of the information sought in the Debtor's discovery requests is relevant to that inquiry. The matter before the Court in the Motions to Dismiss relate to the financial situation of the Debtor at the time of filing of the Petition, the Debtor's conduct in *LTL1* after the Third Circuit's decision in *LTL1*, and the Debtor's improper collaboration Johnson & Johnson and Holdco.

---

[1] For example, it would be relevant for creditors here to serve discovery upon Jones Day regarding the Debtor's claim that "nobody could have foreseen" that *LTL1* might be dismissed for lack of good faith. That claim directly implicates whether LTL board, Skadden Arps or Jones Day—the Debtor's lawyer— could have foresaw LTL 1.0 being dismissed as not being in financial distress. Similarly, Jones Day involvement in the LTL board meetings when they made the decision to terminate the 2021 Funding Agreement and create the largest fraudulent transfer in U.S. history would and should be subject to discovery. No such circumstances exist with respect to KMSG and its representation of its clients.

While the conduct of the Debtor, Johnson & Johnson and its collaborating Ad Hoc Committee of Supporting Counsel after the filing of the Petition can and does shed light on the lack of good faith of the Debtor, the information sought from KMSG in the Interrogatories and Requests for Production are irrelevant to the question of good faith or lack of good faith of the Debtor in filing this Petition.

The discovery requests neither relate to, nor are reasonably calculated to lead to discovery of admissible evidence about, the question before the Court. The discovery requests are an attempt to harass KMSG and its dying mesothelioma clients. Accordingly, directing discovery at KMSG is improper.

The harassing nature of the discovery is further demonstrated by, among other things, the fact that it seeks information that:

(a) Debtor knows the claims filed by KMSG in the past and was given notice of new claims.. Allison Brown used a Power Point before the Court on April 18, 2023 to argue the small number of claims KMSG has against the non-debtors and presumably against the debtor;

(b) Invades attorney client and work product privileges of each mesothelioma victim;

(c) Seeks to invade the thought processes of counsel (what KMSG "believes");

(d) Is irrelevant and based upon a deliberately false construction of the lawyer-client relationship (contrary to the premise of the discovery requests, clients, not lawyers, decide what settlement offers are "adequate");

(e) Implicitly mischaracterizes the PSAs and Term Sheet as being a settlement offer capable of acceptance;

(f) Ignores the fact that the only Debtor in this case is LTL Management yet seeks information regarding not only the Debtor but also its non-debtor, massively solvent and non-distressed corporate parent Johnson & Johnson and any other corporate affiliates;

(g) Improperly attempts to use discovery requests as a method of beginning negotiations (what amount would be acceptable).

Many of the KMSG clients litigated for months or years and have been through court required mediation in state courts wherein J&J and their subsidiaries insulting low settlement offers for causing the deaths via mesothelioma of these men and women.

The discovery requests further implicitly mischaracterize the legal standard for evaluating settlement offers for clients to lawyers. The law requires individual clients to be able to make individual decisions about offers made to them. Accordingly, there is no such thing as an "average payment" that would be acceptable for all clients and asking questions that effectively seek to elicit a statement of the opinion of a lawyer, is improper.

This highlights a particular distinction between settlements of mass-tort claims outside of bankruptcy—which allow individual clients to decline participating in a mass-negotiated settlement, and to maintain their rights in the tort system—and those in bankruptcy, where the rights of the objectors can potentially be overridden and limited. The alleged Plan Support Agreements have been expressly disavowed as final or binding by their chief proponent, Mr. Mikal Watts. The Debtor, through Mr. Kim, disavowed any intention to ever seek to enforce the terms of the alleged PSAs and their Term Sheet.

Indeed, the Debtor has desperately sought to keep these terms a secret from the public. These discovery requests refer to the PSAs (and therefore the Term Sheet and its Exhibit A) yet the Debtor still contends that that information must not be discussed publicly. There is no legal or factual basis for that position. *See* TCC Motion to De-Designate Exhibit A, Dkt. 440.

## ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify the total number of KMSG Talc Claims, filed and unfiled.

**RESPONSE:** *See* **OBJECTIONS above. Calls for work product and attorney client privileged information. Without waiving said objection, on April 20, 2023 KMSG sent correspondence to Alex Calfo at King Spaulding and Allison Brown at Skadden Arps a listing of cases wherein lawsuits would be filed against non-debtor pursuant to Judge Kaplan's order on April 20, 2023. (attached).**

**INTERROGATORY NO. 2:** Identify any settlement demands, including without limitation any statutory demands, that KMSG has made with respect to any individual or group of KMSG Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above. Without waiving said objections, Offers to resolve were made pursuant to CCP 998 and Debtor and non-debtor, received copies of each offer at the time they were made.**

**INTERROGATORY NO. 3:** Identity the amounts KMSG believes would be adequate to provide fair compensation to any, all, or any subset of the KMSG Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

**INTERROGATORY NO. 4:** Identity the average per-claim settlement amount that KMSG believes would be adequate to provide fair compensation to any, all, or any subset of the KMSG Talc Claims and the basis for such an average.

**RESPONSE:** *See* **OBJECTIONS above.. Further objecting, this also seeks information protected by attorney work product & invades the attorney-client privilege.**

**INTERROGATORY NO. 5:** Identify any estimates KMSG has developed, shared, or discussed concerning the dollar-value of the aggregate liability attributable to the KMSG Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

**INTERROGATORY NO. 6:** Identify any estimates KMSG has developed, shared, or discussed concerning the dollar-value of the aggregate liability attributable to all or any subset of the KMSG Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

**INTERROGATORY NO. 7:** Identify any estimates KMSG has developed, shared, or discussed concerning the dollar amount required to defend all or any subset of Talc Claims in the tort system.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege. Subject to these objections, NONE.**

**INTERROGATORY NO. 8:** Identify any estimates KMSG has developed, shared, or discussed concerning the dollar amount required to resolve all or any subset of Talc Claims in the tort system.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege. Subject to these objections, NONE.**

**INTERROGATORY NO. 9:** Identify any estimates KMSG has developed, shared, or discussed concerning the number of Talc Claims that will be filed in the future.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege. Subject to these Objections NONE**

**INTERROGATORY NO. 10:** Identify any estimates KMSG has developed, shared, or discussed concerning the dollar-value attributable to Talc Claims asserted by government units.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege. Subject to these Objections NONE**

**INTERROGATORY NO. 11:** Identify any estimates KMSG has developed, shared, or discussed concerning the dollar value attributable to Talc Claims asserted by third-party payors.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege. Subject to these Objections NONE**

**INTERROGATORY NO. 12:** Identify the number of KMSG Talc Claims you expect to be set for trial within the next two years as well as the jurisdictions where you expect trial settings.

**RESPONSE:** *See* **OBJECTIONS above. This request invades work product privilege, calls for speculation and improper opinion testimony.**

**INTERROGATORY NO. 13:** Identify any witness that KMSG expects or may call to provide fact or expert testimony at the hearing on the motions to dismiss.

**RESPONSE:** *See* **OBJECTIONS above. Call for work product privileges. Without waiving said objections, the Debtor has the burden to demonstrate entitlement to Chapter 11 relief. Movants represented by KMSG may call witnesses including but not limited to Jim Murdica, John Kim, Erik Haas, Richard Dickinson, Russell Deyo, Brad Erns, Dan Prieto, Troy Lewis, David Torberg, Robert Weustoff, Randi Ellis, Adam Pulaski, Jim Onder, Mikal Watts, and/or other witnesses who were present during the LTL board meetings on March 16, March 28, April 2, 2023. Also, any witness who conspired to terminate the funding agreement and/or hatched up the LTL 2.0 fraudulent filing of April 4, 2023.**

**KMSG reserves the right to identify additional witnesses when the Debtor files its opposition to the motions to dismiss or otherwise produces the witnesses listed above for depositions.**

## RESPONSES TO REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1: Documents sufficient to show the total number of KMSG Talc Claims, filed and unfiled.

**RESPONSE:** *See* **OBJECTIONS above. Subject to these Objections the public lawsuits filed against Johnson & Johnson by KMSG's clients.**

REQUEST FOR PRODUCTION NO. 2: All Documents and Communications relating to any settlement demands, including without limitation any statutory demands, that KMSG has made with respect to any individual or group of KMSG Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege. Subject to these Objections, KMSG has made individual demands under CCP 998 in certain cases and served them on the non-debtor and debtors attorneys at the time of the attempt to settle.  Thus, each offer to resolve is in the possession of Debtor's counsel.**

REQUEST FOR PRODUCTION NO. 3: All Documents and Communications concerning any settlement offers or proposals to resolve to resolve any, all, or any subset of the KMSG Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

REQUEST FOR PRODUCTION NO. 4: All Documents and Communications relating to amounts KMSG believes would be adequate to provide fair compensation for any, all, or any subset of the KMSG Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege**

REQUEST FOR PRODUCTION NO. 5: All Documents and Communications relating to the average per-claim settlement amount that KMSG believes would be adequate to provide fair compensation for any, all, or any subset of the KMSG Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

REQUEST FOR PRODUCTION NO. 6: All Documents and Communications relating to estimates KMSG has developed, shared, or discussed concerning the dollar-value of the aggregate liability attributable to any, all, or any subset of the KMSG Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

REQUEST FOR PRODUCTION NO. 7: All Documents and Communications relating to estimates KMSG has developed, shared, or discussed concerning the dollar-value of the aggregate liability attributable to any, all, or any subset of the Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above.  Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

REQUEST FOR PRODUCTION NO. 8: All Documents and Communications relating to estimates KMSG has developed, shared, or discussed concerning the dollar amount required to defend and resolve all or any subset of Talc Claims in the tort system.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

REQUEST FOR PRODUCTION NO. 9: All Documents and Communications relating to estimates KMSG has developed, shared, or discussed concerning the number of Talc Claims that will be filed in the future.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

REQUEST FOR PRODUCTION NO. 10: All Documents and Communications relating to KMSG has developed, shared, or discussed concerning the dollar-value attributable to Talc Claims asserted by government units.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

REQUEST FOR PRODUCTION NO. 11: All Documents and Communications relating to estimates KMSG has developed, shared, or discussed concerning dollar value attributable to Talc Claims asserted by third-party payors.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege.**

REQUEST FOR PRODUCTION NO. 12: All draft or final agreements concerning the acquisition, purchase, sale, transfer, trade, or other transaction concerning any expected value of, or recovery from, any Talc Claim.

**RESPONSE:** *See* **OBJECTIONS above. Subject to these objections, this request is incomprehensible. But without waiving the objection, NONE.**

REQUEST FOR PRODUCTION NO. 13: All Documents and Communications between KMSG, on the one hand, and any law firm or claimant, on the other hand, concerning the proposed Plan Support Agreement or the Proposed $8.9 billion Settlement.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this seeks information protected by the attorney-client privilege and work product doctrine.**

REQUEST FOR PRODUCTION NO. 14: Documents sufficient to show the existence and terms of any financing arrangements with third parties that are secured, in whole or part, by the KMSG's contingency fees on Talc Claims.

**RESPONSE:** *See* **OBJECTIONS above. Without waiving said objection, NONE EXISTS.**

REQUEST FOR PRODUCTION NO. 15: All Documents and Communications concerning whether the Debtor is in financial distress.

**RESPONSE:** *See* **OBJECTIONS above. Without Waving these Objections, KMSG states that the 2021 funding agreement, documents produced by J&J and the debtor in Leavitt and Prudencio trials on its ability to pay, the deposition of Kevin Neat in Prudencio, and potentially all documents in Debtor's opposition to the motions to dismiss may be responsive to this request. These documents are already in Debtor's possession. Also see Johnson & Johnson's SEC filings, dividend increase announcements.**

REQUEST FOR PRODUCTION NO. 16: All Documents and Communications that KMSG expects to use at the hearing on the motions to dismiss.

**RESPONSE:** *See* **OBJECTIONS above. Further objecting, this also seeks information protected by attorney work product and the attorney-client privilege. KMSG will use any documents produced by the Debtor or J&J or any other party, including those on the TCC's Exhibit List.**

REQUEST FOR PRODUCTION NO. 17: All Documents and Communications relating to or considered in preparing KMSG's response to the Debtor's First Set of Interrogatories.

**RESPONSE:** *See* **OBJECTIONS and RESPONSES above and ANSWERS above.**

Dated: May 15, 2023
**Kazan, McClain, Satterley & Greenwood**

*/s/ Joseph D. Satterley*
Joseph D. Satterley
jsatterley@kazanlaw.com